1 | LAEL D. ANDARA (SBN 215416)
2 | MICHELLE G. TREVINO (SBN 315304)
   | ROPERS, MAJESKI, KOHN & BENTLEY
3 | 1001 Marshall Street, Suite 500
   | Redwood City, CA  94063-2052
4 | Telephone:    (650) 364-8200
   | Facsimile:    (650) 780-1701
5 | Email:  lael.andara@rmkb.com
   |          michelle.trevino@rmkb.com

KELIANG ZHU (SBN 305509)
CHRISTOPHER HOGAN (SBN 191546)
MERIDAR LAW FIRM, PC
7901 Stoneridge Drive, No. 208
Pleasanton, CA 94588
Telephone:  (925) 399-5856
Facsimile:  (925) 397-1976
Email:  zhu@meridar.com
         chogan@meridar.com

Attorneys for Plaintiff
SINCO TECHNOLOGIES PTE, LTD.

Attorneys for Defendant
NG CHER YONG aka CY NG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SINCO TECHNOLOGIES PTE, LTD,

Plaintiff,

v.

SINCO ELECTRONICS (DONGGUAN)
CO., LTD.; XINGKE ELECTRONICS
(DONGGUAN) CO., LTD; XINGKE
ELECTRONICS TECHNOLOGY CO.,
LTD.; SINCOO ELECTRONICS
TECHNOLOGY CO., LTD.; MUI LANG
TJOA (an individual); NG CHER YONG
aka CY NG (an individual);  and LIEW
YEW SOON AKA MARK LIEW (an
individual),

Defendants.

CASE NO. 3:17CV5517 EMC

**JOINT CASE MANAGEMENT
STATEMENT**

Date:         **April 26, 2018**
Time:         **9:30 a.m.**
Courtroom:    **5, 17th Floor**

[Sec. Amend. Complaint: **February 23, 2018**]

Plaintiff SINCO TECHNOLOGIES PTE, LTD. ("SinCo") and Defendant Ng Cher Yong aka Cy Ng ("Mr. Ng") (collectively, "Parties") jointly submit this Joint Case Management Statement and Proposed Order in accordance with Court's Minute Entry of **January 4, 2018** (Dkt.  No. 21), **January 17, 2017** Standing Order for All Judges of the Northern District of California, and Civil Local Rule ("LR") 16-9.

The Parties previously appeared before the Court on Defendant Mr. Ng's Motion to Dismiss on **January 4, 2018**. Since that hearing Mr. Ng was deposed in Singapore.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

## I.   JURISDICTION, VENUE, AND SERVICE

This Court has subject matter jurisdiction over SinCo's Lanham Act claims under 15 U.S.C. §1051, *et seq*.  This Court has jurisdiction over the subject matter of this action under the Judicial Code, 28 U.S.C. §§1331 (a federal question) and 1338(a) and (b) (Acts of Congress relating to trademarks), the Lanham Act, 15 U.S.C. §1121, et seq., and principles of supplemental jurisdiction.  Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2), (c) and §1400(a). The nucleus of facts giving rise to Plaintiff's claims occurred in this jurisdiction and the United States.

This is the second action brought by SinCo; the first action was brought on **October 28, 2016** in the Superior Court of California, County of Santa Clara, Case No. 16-cv-301867 (the "State Action"). The State Action is based on breach of contract and trade secret claims.

The initial Complaint was filed on **September 22, 2017** and amended on **November 7, 2007** after being reassigned to Judge Edward M. Chen.  (Dkt. 1, 13, 14.)  Defendant Mr. Ng was served on **November 7, 2017**, and moved to dismiss the First Amended Complaint on **November 27, 2018**. (Dkt.  15, 16)  On **January 5, 2018**, the Court granted the motion to dismiss with leave to amend. (Dkt.  22)  On **February 12, 2018**, the parties traveled to Singapore for the deposition of Cy Ng, noticed in the State Action. SinCo filed the Second Amended Complaint on **February 23, 2018,** and Mr. Ng answered **March 16, 2018**.   (Dkt. Nos. 23, 33.)  The remaining defendants are subject to service pursuant to the Hague Convention. The papers and translations thereto have been translated and submitted to the central authority in the People's Republic of China (P.R.C.) and SinCo anticipates they will be served within 18-24 months.

## II.   FACTS

***Sinco's statement:***  This is case arising out of Defendant Cher Yong Ng ("Mr. Ng"), and defendants entities SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS (DONGGUAN) CO., LTD; XINGKE ELECTRONICS TECHNOLOGY CO., LTD.; SINCOO ELECTRONICS TECHNOLOGY CO., LTD. ("Electronics DG") conspiring to steal Plaintiff SINCO TECHNOLOGIES PTE LTD.,'s ("SinCo") United States ("U.S.")

customers by falsely and deceptively using SinCo's U.S. trademarks and employees to divert business.   Cy Ng defined SINCO ELECTRONICS (DONGGUAN) CO., LTD. as "Electronics DG," in his declaration of **March 22, 2017,** in the state action.

**TRADEMARK USE**. SinCo began operations in Singapore in 1995 and began using the SinCo word mark and logo within a year. SinCo contracted with the factory that later became Electronics DG to do the manufacturing of electronic components and parts it helped develop and design for U.S. customers. SinCo provided Electronics DG a limited license to use of its trademark on packaging and for other uses in the scope of the work being done for SinCo, for example, to facilitate drop shipping and other logistical issues (as is common in the industry).

**LICENSE.** As the years progressed SinCo's founder and owner, recognizing that Electronics DG did the majority of SinCo's manufacturing, personally invested as a minority owner in the entity. Thereafter, in 2000-2003 SinCo decided the volume of production at Electronics DG and the frequency of U.S. customers requests to visit the facility required on-site oversight and interface capabilities by SinCo. Stationing SinCo engineers on site at the contract manufacturer, SinCo could more readily make changes and address customers concerns, as SinCo maintained the relationship. To help facilitate and capitalize on this on-sight presence, SinCo expanded the scope of the license to Electronics DG to use the SinCo name on the factory so that U.S. Customers visiting the SinCo embedded employees would see uniformity between the development and manufacturing aspects of SinCo. The license for Electronics DG to use the SinCo mark never extended beyond the PRC. SinCo continued to maintain the U.S. relationships and would receive purchase orders from U.S. customers directly. Thereafter, SinCo would negotiate separately with Electronics DG to have the parts made under a separate purchase order.

**MR. NG'S DOCUMENTS.** Mr. Ng's claim that he was an employee of Electronics DG is contradicted by documents he signed. Mr. Ng repeatedly acknowledged his employment with SinCo: on **April 28, 2006,** Mr. Ng entered into a loan agreement for $30,000 with Mr. Lim agreeing to have his payments be withdrawn from his SinCo salary; on **March 6, 2009** Mr. Ng entered into a Nondisclosure Agreement with SinCo where he acknowledged his obligations as SinCo's employee; and a legal affidavit Mr. Ng signed and was filed on **January 5, 2011** with the

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Court in Singapore wherein he swore he was the Engineering Director of SinCo Technologies PTE Ltd. since 2003. This sworn and notarized affidavit makes clear he understood SinCo employed him.  Mr. Ng's deposition testimony confirms that he was accepting salary (in Singapore dollars from SinCo), benefits, and travel from SinCo. Mr. Ng admits that he was the supervisor of senior engineers hired by SinCo. Furthermore, multiple resignation letters by SinCo embedded engineers to Mr. Ng were addressed to Mr. Ng as management for SinCo.

**SINCO ENGINEERS IN PRC.** SinCo and Mr. Ng were able to hire engineers with better qualifications than Electronics DG given SinCo's reputation in the market and relationships with substantial U.S. companies. These employment contract indicated SinCo was the employer and Electronics DG was only referenced under section 4, Location of Work: "*You will be required to work in DongGuan, Sinco Electronics Technologies Co. Ltd.*" Mr. Ng confirmed in his testimony that Electronics DG maintained their own staff of engineers from the PRC. When U.S. customers visited the factory they met with SinCo employees, not Electronics DG engineers (who did not speak English). SinCo's embedded engineers communicated with U.S. customers, not Electronics DG's engineers. SinCo directed Mr. Ng job activities in the PRC. The PowerPoint slides presented to U.S. customers at the factory indicated Mr. Ng was a SinCo employee.

**CHINA TRADEMARK.** Unknown to SinCo until the State Action, Electronics DG filed for a trademark on the SinCo word mark and logo in PRC. Electronics DG attempted a similar strategy after SinCo initiated the State Action, filing no less than 15 applications in the USPTO for the SinCo word mark and logo in the U.S., which SinCo has opposed. At this time only four applications remain pending as the others have been abandoned or suspended in light of SinCo's trademarks. SinCo also challenged the PRC trademark wherein Electronics DG perjured itself by claiming to have first designed the SinCo Logo before SinCo, who began using the mark in 1996. The perjury was revealed by the design contract between  Electronics DG and Dongguan Humen Yuan Su Computer Graphic Design Service Business which was dated **July 1, 2015**.

**CONSPIRACY**. In 2015-2016, U.S. customers brought up safety and quality concerns in the form of audits.  At that time SinCo considered an outright acquisition of Electronics DG, provided they could address the quality and working conditions. Electronics DG in an attempt to

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

avoid the significant cost of addressing these concerns began conspiring with Mr. Ng and Mr. Liew to divert SinCo's business to Electronics DG and planned to sell the company out from under SinCo. Electronics DG and Mr. Ng were able to steal accounts from SinCo leveraging the SinCo trademarks as early as **August 21, 2015**, and with this success sold KOTL a majority interest in November of 2015. After Electronics DG's conspiracy was revealed they changed the name on the factory from SinCo to XingKe and then Mr. Ng directed SinCo's remaining engineers to join him in resigning from SinCo and switch to employees of Electronics DG. Electronics DG and Mr. Ng's prior use of the trademark has a context that they wish to disavow.

**INFRINGEMENT**. On **January 5, 2017,** Mr. Ng traveled to the U.S. for the first time to meet with SinCo's customers, fully aware SinCo had valid U.S. trademarks, doing so without SinCo's knowledge or consent. On **June 1, 2017**, SinCo obtained a preliminary injunction against Mark Liew in the State Action.  Mr. Ng resigned on **June 29, 2017**, after that the remaining SinCo engineers also resigned to join Electronics DG. Mr. Ng's second trip to the United States occurred on **August 5, 2017**, and just like his first trip his target was to meet with SinCo customers. Although according to Mr. Ng, his new employer stopped using the SinCo mark in PRC on or about **March 15, 2017**, Mr. Ng continued to use his SinCo business card and email address communicating with SinCo's U.S. customers, even though he claimed he was XingKe.

Mr. Ng, was able to steal SINCO's U.S customers by at least three illegal means: (1) using SinCo's trademarks beyond the scope of his employment; (2) falsely and inaccurately suggesting that Electronics DG in fact was one and the same as SINCO; and (3) capitalizing on the customers association of Mr. Ng as a SinCo employee to give credibility to the deception. Electronics DG could not have succeeded without the facilitation of Mr. Ng and his subordinate Mr. Liew, as they leveraged the fact that SINCO's U.S. clients knew them as SinCo employees.

Mr. Ng feigns ignorance and disavows facts to avoid liability: (1) the distinction between Electronics DG and SinCo and the use of the SinCo trademark; (2) the validity of his employment agreement and the employment agreement of the SinCo engineers that report to him; (3) the difference between commercial discussions and technical ones; and (4) the multiple resignation letter submitted to him as the engineering director for SinCo. Contrast this to the calculating and

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

treachery of Mr. Ng's self serving claims: (1) he had absolute certainty he was an employee of Electronics DG and not SinCo which he understands are distinct in that context; (2) he needed to resign from SinCo and direct his senior engineers that report to him to also resign within a 30 day period to then join Electronics DG; (3) he had no requirement to use the SinCo trademark to the benefit of anyone but Electronics DG; and (4) SinCo maintained a Human Resources department to hire engineers for Electronics DG and pay them in Singapore dollars for Electronics DG.

**Mr. Ng's statement**:  Plaintiff Sinco Technologies PTE LTD ("Sinco Singapore") and defendant Sinco Electronics (Dongguan) ("Sinco China") have remarkably similar names.  This is because these two companies had an intertwined corporate history for approximately 13 years thanks to common shareholders (e.g. Bryan Lim) and a closely coordinated business strategy.

Both companies' main products are electronic components and parts used in computers and other equipment. However, Sinco Singapore did mostly marketing and sales, while Sinco China focused on manufacturing. In the 13-year period before this lawsuit, Sinco Singapore consistently advertised that Sinco Singapore was not a middle person but had its own manufacturing facility (i.e. Sinco China) so that customers could get the best pricing and products. Accordingly, besides sharing customers in the same industry, these two companies did a consistent job of blurring the lines between themselves for 13 years, including but not limited to the following:

- Both companies used the name "Sinco" and the same Sinco logo in their business cards, product brochures, marketing materials, purchase orders, websites, and other materials, without making any distinction between these two companies;

- Despite the fact that Sinco Singapore allegedly registered the Sinco logo as its trademark in the U.S., Sinco Singapore has allowed Sinco China to use the same trademark in numerous occasions for over a decade so as to market both companies as one common enterprise in front of customers;

- Sinco China also registered the same Sinco logo as its own trademark in China as early as in 2009 with no objection from Sinco Singapore, another indication of the shared use of the same trademark/logo;

- Whenever a customer required technical support regarding a specific product, Sinco Singapore routinely asked and allowed Sinco China personnel to contact the customer directly without making any distinction between Sinco Singapore and Sinco China; and

- Sinco Singapore also helped Sinco China in personnel recruiting to hire people such as Mr. Ng in Singapore.

This business model worked fantastically for both companies for 13 years. However, **these two companies never agreed that this was an exclusive relationship.** As a matter of fact, it is common knowledge that Sinco China was free to and did develop its own clients in addition to fulfilling manufacturing orders from Sinco Singapore. Now, because the relationship between these two companies recently soured, Sinco Singapore has brought this meritless lawsuit trying to claim that Sinco China and its employees infringed its trademark and stolen its customers.

When Sinco China wanted to hire experienced people in Singapore for its manufacturing facility in PRC, it had trouble attracting local talents because it was an unknown Chinese factory. Thus, Sinco Singapore helped Sinco China in recruiting, which includes the hiring of Mr. Ng. Even though Mr. Ng signed some papers showing somehow that Sinco Singapore hired Mr. Ng, but here Sinco Singapore acted only on behalf of Sinco China. The fact that Mr. Ng was an employee of Sinco China is unmistakable, considering the following factors:

- Mr. Ng was supervised by and received work assignments from Sinco China only, not Sinco Singapore;

- All compensation paid to Mr. Ng came from Sinco China, not Sinco Singapore;

- All services performed by Mr. Ng were for Sinco China, not Sinco Singapore;

- The location where Mr. Ng performed his job duties was at Sinco China, not Sinco Singapore; and

- Sinco Singapore never reported Mr. Ng as its own employee to the tax authorities in Singapore and never paid any employment-related tax obligations for Mr. Ng in Singapore.

Mr. Ng is now the "Vice President of Engineering." For the benefit of the Court, this is

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    not to be confused with a corporate vice president, or other high ranking corporate officer. But it

2    is a nice title.

3        So Mr. Ng, who merely helps oversee the quality of the manufactured products, and who

4    is not involved in corporate decisions, not a corporate officer, not involved in marketing, and does

5    not have a good understanding of how the owners of the various Sinco companies have bought

6    and sold those companies, finds himself in as a defendant in this lawsuit.

7        There are documents (like pay stubs) that show Mr. Ng worked for the factory in China.

8    Others show that Mr. Ng worked for Sinco Singapore.  As Mr. Ng eloquently stated at his

9    deposition, he understood all of it to be part of Sinco Holdings. As such, if his boss (Bryan Lim,

10   who was the common shareholder of both Sinco Singapore and Sinco China for more than a

11   decade), who was involved in various litigation matters, wanted Cy Ng to sign documents to help

12   out his boss, then Mr. Ng believed in good faith that he could sign them. Some of these

13   documents indicate Mr. Ng's employer as Sinco Singapore. As noted above, other documents are

14   to the contrary. If we look at who truly controlled and paid for Mr. Ng's work, it is clear that he

15   was employee only of Sinco China, and the employment papers he signed with Sinco Singapore

16   had no legal force in the manner Sinco Singapore seeks to use them.

17        State Trade Secret Case

18        The *customers* at issue here, a few of the largest and most famous technology companies

19   in the world, are somehow trade secrets according to Sinco Singapore. Those company names

20   will not be placed here so as not to be accused of inappropriate disclosure, but the court will know

21   shortly which companies are involved.

22        Sinco Singapore and Sinco China, in their joint operations, have worked with the same

23   customers for as much as 13 years. There are no customer trade secrets between them. There is no

24   agreement of *exclusivity* regarding customers. The trade secret claims are a sham.

25        Federal Trademark Case

26        The court need not look further than page 42 of the Second Amended Complaint. There sit

27   photographs of the China factory, the name Sinco emblazoned there for all the world to see. Sinco

28   China has used that name openly for more than 15 years. It has the right to use that name as much

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

as Sinco Singapore does. Due to a recent falling out (see below), Sinco Singapore has suddenly decided that it doesn't want Sinco China to use the name. And Sinco Singapore, in the ultimate bait and switch, wants damages for trademark infringement. The most basic law of protecting trademarks is fatal to any of these claims by Sinco Singapore, no matter how the claims are phrased.

<u>Comment</u>

The court should know why we are here. The two companies- Sinco China and Sinco Singapore- worked just fine together for more than 10 years. This was to be expected given the joint ownership interests of the 2 primary founders (one of whom is Bryan Lim). Sadly, one of the founders became ill and quite properly sold his interest to another company (that company is referred to as KOTL). Sinco Singapore does not like KOTL since it sees it as a competitor. It is apparent that Sinco Singapore has gone into decline, is angry about the sale, and intends to pursue this meritless lawsuit in an attempt to exert some form of financial pressure on the defendants. Ultimately, both the state and federal cases will lead to a summary judgment sought by Mr. Ng, and likely by Sinco China.

## III.   LEGAL ISSUES

### SinCo's Issues:

Although there is a dispute as to Mr. Ng's Employment status, given the evidence and testimony, Sinco believes it is a question of law. Mr. Ng does not agree.

Assuming Mr. Ng was an employee of SinCo what was the scope of his license to use the trademark? Was it limited to the scope of his employment?

### Mr. Ng's Issues:

How can Sinco Singapore, after more than a decade of taking no steps to protect its claimed trademarks, expect to rely on them now?

## IV.   MOTIONS

### SinCo's Potential Motions:

SinCo will move for Preliminary Injunction against Mr. Ng as to use of the SinCo

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

trademark unless a stipulation is reached. There is a pending motion in the State Court action for Preliminary Injunction based on his employment agreement, that may moot this motion, set for **May 31, 2018**.

SinCo will mover for Default Judgment under the Hague Convention Article 15 six months after the Complaint and translation were lodged with the Central Authority in PRC. Mr. Ng's counsel made a special appearance on behalf of Electronics DG in state Court and the testimony of Mark Liew and Mr. Ng confirm that defendant entities have actual notice of both lawsuits. SinCo has also sent a request for Waiver of Service under FRCP 4 with translations of the First Amended Complaint and exhibits several months ago.

*Mr. Ng's Potential Motions*:

As set forth above, Sinco China will seek summary judgment of the case in its entirety.

## V.   AMENDMENT OF PLEADINGS

No further amendments are anticipated.  There may be amendments required once the PRC entities are served with the Second Amended Complaint.

## VI.    EVIDENCE PRESERVATION

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and counsel for SinCo and Mr. Ng met and conferred on by phone under Rule 26(f) of the Federal Rules of Civil Procedure.

*Sinco's statement*:  There has been an offer to avoid duplicate of discovery by using the Bates numbered evidence exchanged in the State Action. This trademark litigation was in part initiated based on information produced in those records.  There doesn't seem to be some disconnect in terms of the obligations of Mr. Ng who testified that he no longer has the Dell Vostro computer he was using during the timeframe of many of the complained of incidents. Mr. Ng gave the computer to his current employer, Electronics DG or XingKe, and claims that he does not have possession and control of the device. Furthermore, he testified that he has been provided a new computer that he has been using since **October of 2017**, but to date no responsive information has been produced in response to written discovery propounded in the State Action.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

The current deposition excerpts illustrates SinCo's concern as it relates to preservation and discovery issues in the State Action, which will be equally applicable in this case:

Q.      Is that something you would be willing to produce?

A.      ***I will search my cabinet again and go through the details. <u>Relevant one I'll just submit.</u>***

Q.      How do you determine if a document is relevant for you to produce in this litigation?

A.      *There are many documents I go through.*

Q.      Yes.

A.      ***So those very immediate that has a – related to this case, I put one sides. Then I have time, I go through again.***

Q.      Yes.

A.      ***So I will spend my time to go through many times.***

Q.      And do you know what the definition of relevance is for US litigation?

A.      ***I don't understand this term.***

* * *

Q.      You explained to me how you gathered the documents in this litigation, and my concern, the red flag that came up, is it sounded like what you were saying is that you would go through a pile of documents, you would determine if it was relevant, and then you would send them to your counsel who would produce them to me. Is that correct? Did I misunderstood?

A.      *No.* ***I honestly look at all the documents and retrieve whatever I can retrieve.***

Q.      Uh-huh.

A.      *And then* ***I will go through again to look at all the documents again a few times to submit to my counsel.***

Q.      So are all the documents -- all the documents that you have, did you submit all of those to counsel, or you only produced a subset of the documents that you found?

A.      ***To my honest searching, I produced to my counsel.***

Q.      Did you produce all of the documents that you found?

A.      ***To my honest effort, I produce.***

Q.      To be clear, I'm just at a loss as to why you would review the documents multiple times to determine if they're relevant if you're giving all of the documents to your counsel.

A.      *Normally --*

MR. HOGAN: Misstates testimony. Vague and ambiguous. Go ahead and answer if you can. And overbroad.

A.      *I have one stacks of documents.* ***So I will go through those relevant to the case -- to the case for this to submit what my counsel asks. I just <u>gather quickly</u> as much as possible and submit to my counsel.***

Q.      So you have stacks of documents in your cabinet that you have maintained based on your employment with Electronics DG; is that correct?

A.      ***Yes.***

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Q.   Approximately how many documents do you have? Are we talking a banker box like we have here today or more than that?

A.   **It's about that**.

Q.   It's about that. And how many of the banker box of documents have you produced to your counsel?

A.   **I think I've submitted something like <u>50-over pages</u>**.

*See* Cy NG **February 12, 2018**, deposition 313:22 -316:25

**Mr. Ng's statement**:

The state trade secret case is based on the claim that customers were improperly contacted. The federal trademark case is based on the claim that business cards with the "Sinco" name were given to those customers, and emails with the "Sinco" name were sent to those customers.

The difference between the two cases is barely perceptible.

The proposal to use the discovery for both cases goes well beyond the truckload of documents already produced by the parties, but also to the avalanche of written discovery propounded by Sinco Singapore. If the endless interrogatories and admissions from the state case are simply repeated, then the matter will be brought to this Court for consideration.

As for the Cy Ng deposition, perhaps the questioner might have inquired about "responsive" documents, instead of "relevant," since the latter term was confusing to Mr. Ng. The problem raised by Sinco Singapore is easily resolved, though, since Mr. Ng has been asked to provide all those documents to his counsel for review and production as appropriate.

## VII.   DISCLOSURES

SinCo provided initial disclosures on **April 11, 2018**. Mr. Ng will exchange Initial Disclosures on **April 20, 2018**.

## VIII.   DISCOVERY

SinCo and Mr. Ng discussed the preservation and production of ESI at the Rule 26(f) conference. SinCo provided a specific proposal about the form of ESI production.

The parties agree that the presumptive discovery limits set forth in the Federal Rules of Civil Procedure should apply. With respect to depositions, SinCo proposes that:

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

- The side taking a deposition requiring an interpreter shall hire an official interpreter.  The other side may hire its/their own interpreter to verify the translation by the official interpreter.

- Depositions under Rule 30 of the Federal Rules of Civil Procedure shall be limited to eighty (80) hours per side, but not limited to ten (10) depositions under Rule 30(a)(2)(A)(i).

- An individual's deposition shall be limited to seven (7) hours; the parties shall meet and confer if a party believes more time is needed. If the parties are unable to agree, a motion seeking court determination may be filed.

- Individual and Rule 30(b)(6) depositions count against the total time, but third- party and expert depositions do not.

- Depositions requiring an interpreter count as half time.

## IX.    CLASS ACTIONS

This case is not a class action.

## X.    RELATED CASES

This is the second action brought by SinCo; the first action was brought on **October 28, 2016** in the Superior Court of California, County of Santa Clara, Case No. 16-cv-301867 (the "State Court Action"). On **January 11, 2018**, SinCo's Motion to Amend the Complaint was granted, wherein asserting (1) Breach of Contract, (2) Breach of the Covenant of Good Faith and Fair Dealing, (3) Unfair Business Practices, (4) Intentional Interference with Contractual Relations, (5) Misappropriation of Trade Secrets, and (6) Civil Conspiracy.

## XI.    RELIEF

*SinCo's statement*:   SinCo seeks the relief requested in its Second Amended Complaint, including:

- Entry of judgment holding Defendants liable for infringing SinCo's trademarks;

- An order preliminarily and permanently enjoining Defendants and any other persons or entities acting in concert with Defendants from engaging in future acts of infringement, contributory infringement, or induced infringement of SinCo's trademarks;

- An order that all packaging or other business records using the SinCo trademark in violation of SinCo's trademarks, and all means by which such copies may be reproduced, be impounded and destroyed or otherwise reasonably disposed of;

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

- Damages adequate to compensate SinCo for Defendants' acts of trademark infringement, including actual and exemplary damages, lost profits, infringer's profits, or statutory damages in amounts to be proven at trial;

- An award of SinCo's attorneys' fees, costs of suit, and pre-judgment and post-judgment interest; and

- Any available legal or equitable relief that the Court may deem proper.

*Mr. Ng's statement*:

Defendant Ng Cher Yong does not seek affirmative relief beyond that set forth in his affirmative defenses and costs of suit as allowed by law.

## XII.   SETTLEMENT AND ADR

*SinCo's statement*:   SinCo would agree to a settlement conference before a magistrate judge if Mr. Ng is in attendance.

*Mr. Ng's statement*:   Mr. Ng, who resides in Singapore, has asked for a clarification of where a settlement conference is to take place, and asserts that the numerous other defendants will need to be in the case in order for their to be a reasonable chance of resolution.

## XIII.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

SinCo declined to proceed before a Magistrate Judge. (Dkt. 11.)

## XIV.   OTHER REFERENCES

This case is unsuitable for reference to binding mediation, a special master, or the Judicial Panel on Multidistrict Litigation.

## XV.   NARROWING OF ISSUES

The parties currently have no proposals to narrow the issues.

## XVI.   EXPEDITED TRIAL PROCEDURE

The parties do not agree to handling via the Expedited Trial Procedure of General Order 64, Attachment A.

## XVII.  SCHEDULING

The parties do not have proposed scheduling dates at this time based on the delay in the China to have the defendants with this action. The name defendants have actual notice of the

litigation and have made a special appearance in the state action to oppose a motion for default pursuant to article 15 of the Hague convention. Requests for waivers of service have been sent out and either rejected or ignored.

**XVIII. Trial**

   SinCo expects that a jury trial in this action would take four to five days.

**XIX.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

   SinCo filed its Certification of Interested Entities or Persons under Civil Local Rule 3-15 and FRCP 7.1 on **November 30, 2017**. (Dkt. No. 18)  Mr. Ng filed his Certifications on **March 21, 2018**. (Dkt. No. 35)   The parties certified that there are no other parties to identify under Civil Local Rule 3-15.


Dated:  April 18, 2018                          ROPERS, MAJESKI, KOHN & BENTLEY


                                                By:  _/s/ Lael D. Andara_
                                                    LAEL D. ANDARA
                                                    Attorneys for Plaintiff
                                                    SINCO TECHNOLOGIES PTE LTD

Dated:  April 18, 2018                          MERIDAR LAW FIRM, PC


                                                By:  _/s/ Christopher Hogan_
                                                    Christopher Hogan
                                                    Attorneys for Defendant
                                                    NG CHER YONG aka CY NG

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City