UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO

HONORABLE EDWARD M. CHEN, U.S. DISTRICT JUDGE

- - -

SINCO TECHNOLOGIES PTE, LTD,        )
                                    )
                    PLAINTIFF,      )   Case No.
                                    )
          vs.                       )   3:17CV5517-EMC
                                    )
SINCO ELECTRONICS (DONGGUAN) CO.,   )
LTD.; XINGKE ELECTRONICS (DONGGUAN) )
CO., LTD; XINGKE ELECTRONICS        )
TECHNOLOGY CO., LTD.; SINCO         )
ELECTRONICS TECHNOLOGY CO., LTD.;   )
MUI LANG TJOA (an individual);      )
NG CHER YONG aka CY NG              )
(an individual); and LIEW YEW SOON  )
AKA MARK LIEW (an individual),      )
                                    )
                    DEFENDANTS.     )
_____ )


*TRANSCRIPT OF THE OFFICIAL*
*ELECTRONIC SOUND RECORDING 9:59 A.M. - 10:37 A.M.*
*CASE MANAGEMENT CONFERENCE*
*APRIL 26, 2018*
*SAN FRANCISCO, CALIFORNIA*

*APPEARANCES:*

*FOR THE PLAINTIFF:*     ROPERS, MAJESKI, KOHN & BENTLEY
                         Attorneys at Law
                         BY:  Lael D. Andara, Esq.
                         1001 Marshall Street, Suite 500
                         Redwood City, California 94063
                         650-364-8200   Fax:  650-780-1701


          (APPEARANCES CONTINUED ON PAGE 2)


TRANSCRIBED BY:          VICTORIA L. VALINE, CSR 3036, RMR, CRR
                         VictoriaValineCSR@gmail.com


UNITED STATES DISTRICT COURT

APPEARANCES:   (CONTINUED)


*FOR THE DEFENDANTS*:        HANSON LAW FIRM, P.C.
                            Attorneys at Law
                            BY:  Christopher J. Hogan, Esq.
                            300 Montgomery Street, Suite 1121
                            San Francisco, California 94104-1902
                            415-362-9181   Fax:  877-733-3574

UNITED STATES DISTRICT COURT

SAN FRANCISCO, CALIFORNIA; APRIL 26, 2018

9:59 A.M.

--oOo--

(TRANSCRIBER'S NOTE:  Due at times to counsels' failure to identify themselves when speaking, certain speaker attributions are based on an educated guess.)

--oOo--

THE CLERK:  Calling case C17-5517 SinCo Technologies versus SinCo Electronics.

Counsel please come to the podium and state your name for the record.  And please state your name before you speak.

MR. ANDARA:  Good morning, your Honor.  Lael Andara for the plaintiff SinCo Technologies Limited.

THE COURT:  All right.  Thank you, Mr. Andara.

MR. HOGAN:  Good morning, your Honor.  Christopher Hogan for defendant Ng Cher Yong.

THE COURT:  All right.  Thank you, Mr. Hogan.

So how many remaining -- how many defendants are there that need -- still need to be served?

MR. ANDARA:  So, we have two individuals and we have -- I think there are three to four entities.  The entities are basically variations of the same company which we refer to as the G electronics.  They're all at the same location.  They all have common ownership or direction.

THE COURT:  And your forecast is to, when service can

UNITED STATES DISTRICT COURT

be effected, you say you anticipate it will take 18 to 24 months because of the Hague Convention?

MR. ANDARA:  That's what we're being informed by the process company that we're using that -- in terms of what they're measuring, how long it takes once it's submitted to the central authority and the PRC and it's actually going out, that's what their current projections are.  They could be wrong.  It could -- I've been told it could happen sooner than that.  We would hope that it would, but given the fact that, you know, we filed this case in the state court action under the same protocol and they still haven't been served, I don't think that's necessarily inconsistent with our -- with what we've experienced.

THE COURT:  So who is the party to the state court action?

MR. ANDARA:  The party in the state court action is the defendant that's currently before the Court his subordinate, Mr. Liew -- Mark Liew, and then the company that they both work for, Electronics DG, and as I mentioned there's now iterations or variations of that company that have been specifically named in this case.

THE COURT:  They are before the state court?

MR. ANDARA:  None of them are, no.

THE COURT:  Oh.

MR. ANDARA:  The only parties in the state court are

UNITED STATES DISTRICT COURT

Mr. Liew and Mr. Ng, both individuals have been in the United States meeting with our customers.

THE COURT: Right. So the company has been named, but not --

MR. ANDARA: Correct.

The central authority -- those papers have been lodged with the central authority for the state action and those are still pending.

We did seek a motion for default with the state court judge. The state court directed us to file a request for judgment with the clerk, which we filed, I want to say four or five months ago and it's still pending.

So we are anticipating we will be renewing the default motion in the state court action.

THE COURT: So remind me what is -- what is involved in the state court action compared to what is involved here.

MR. ANDARA: Sure. So what's -- what's -- in the state court action the issue is, we had contracts with the contract manufacturer, Electronics DG and our two employees Mark Liew and Mr. Ng, who is the defendant who is here today.

Both Mr. Ng and Mark Liew were served. Mark Liew we sought a preliminary injunction based on his employment agreement because he violated it by using our trade secrets and using our customers. The Court granted that preliminary injunction. We have a pending motion for preliminary

injunction against Mr. Ng in the state court action that's set for May 31.

THE COURT:  For trademark violation.

MR. ANDARA:  No. No. Not trademark violation but for -- well, I should take that back.  The thrust of the claims are the breach of contract and the violation of the trade secret.

In the facts we obviously state the fact that they're using our trade name, and that's part of the employment agreement that the individuals entered into is that they wouldn't use our trade name.

THE COURT:  Essentially that results in a trademark violation.

MR. ANDARA:  That's correct.  That's right.

THE COURT:  And a similar claim against Mr. Ng or N-G?

MR. ANDARA:  Correct.  That's right.

THE COURT:  Preliminary injunction motion pending?

MR. ANDARA:  Pending to be heard on May 31.

THE COURT:  So how is this case different?

MR. ANDARA:  Well, the -- we didn't allege the trademark infringements in the state court action is the federal question, that's why it was brought in this case.

We weren't even aware that they were using the SinCo mark until we brought the state court action and took depositions and found out that they continued to represent themselves as SinCo, used business cards, continued using the company's

e-mail addresses --

THE COURT:  But the underlying conduct is largely the same?

MR. ANDARA:  Absolutely.  Yes.  That's right.

THE COURT:  It's just that here you have the extra twist of federal trade mark violation --

MR. ANDARA:  Right.

THE COURT:  -- in the process of their breach and their use of trade secrets, et cetera, in the execution of their the alleged plan is the trademark violation.

MR. ANDARA:  Correct.

THE COURT:  So -- well, does that suggest -- and the state court action has been pending since?

MR. ANDARA:  I believe it's October of 2016 -- October 28.

THE COURT:  Besides the preliminary injunction is there a trial date on the horizon?

MR. ANDARA:  There is not because the state court is waiting for the appearance of Electronics DG.  Mr. Hogan represented them in opposing the default motion.  In the joint conference statement to this Court, he's foreshadowed that Electronics DG is going to move for summary judgment in this case.

So it may very well be that they're going to accept service and appear in this case, but I haven't got that

specifically stated to me.

We did send out requests for waivers of service in October, after we initially filed this case, and we've done so after we filed the Second Amended Complaint, none of which have been responded to.

THE COURT:  So, just stepping back then, what -- how do you think this case should proceed, given that there is a largely parallel action, although not exactly identical, but overlapping action in state court?

MR. ANDARA:  Well, fundamentally the issue for us in this case, and with this defendant, is he came here personally once, as an employee of our company, and then again later as not an employee of our company using our trade secrets.

We want to make sure that we get an injunction that stops him from using our trademarks in the future or referring to our company as -- he representing us or taking advantage of the goodwill we've created with our U.S. customers.  And so that's our main focus in this case, at this point, is to prevent the conduct.

THE COURT:  Is the preliminary injunction that's pending in the state court matter, will that address that conduct?

MR. ANDARA:  Well, here's -- essentially what we're asking the Court to do is enforce the employment agreement, which would require him not to -- to stop communicating with

our previous customers, but it doesn't necessary -- the agreement does say you're not allowed to use the -- it doesn't say trademarks, but trade names.  So it depends on how you read that.

THE COURT:  I -- but you might get the same relief --

MR. ANDARA:  That's why we indicated in the joint conference statement that we're not bringing a preliminary motion in this case because it might being redundant.

THE COURT:  When is that going to be heard?

MR. ANDARA:  The 31st of May.

THE COURT:  Now, if that relief is granted, what's sort of left of this case?

MR. ANDARA:  Well, we still have the underlying whether or not infringement occurred in the sense -- and what liability that individual would have on a personal level for Mr. Ng, because he's the only one currently here.  But it's -- it's very discrete at that point, and we can move forward with that, I think pretty quickly given the testimony that we've gotten to date and -- from Mr. Ng and his subordinate.

THE COURT:  All right.

So what do you propose I -- and I do want to talk about AER, but what do you propose happen in the next several months in this case?

MR. ANDARA:  Well, I'm speculating here, but I'm assuming that Mr. Hogan is going to want to depose our

UNITED STATES DISTRICT COURT

witnesses in Singapore, and I'm assuming he'd want to do that before filing for a motion for summary judgment that he alluded to in the joint conference statement.  Maybe he's not.  Maybe he's just going to go straight to a motion for summary judgment.

And I think -- and I think we discussed this the last time we were before the Court, is that might be a good opportunity, since we're all going to be in Singapore for those depositions, to have a settlement conference with a magistrate judge with the parties and the counsel being in Singapore and the judge being here by video conferencing.

THE COURT:  All right.  Your thoughts?

MR. HOGAN:  Hi, your Honor.

Boy, there was a lot there.  I'll just try to hit the high points.

I am, of course, going to oppose the motion for preliminary injunction.

I'm not going to spend too much time on the merits of the case.  There's a big dispute over just who Mr. Ng's employers is.

THE COURT:  Yeah.  I saw that.

MR. HOGAN:  I guess that goes without saying.

In order to accomplish ADR, the parties need to be here. I've met Mr. Ng.  He's just a guy with his family, working in China.  That's part of my argument is how can he possibly

resolve the case?  He barely understands the case.  And he's just an engineer who goes to work in China, comes back, and he's a bit confused by the whole thing.

THE COURT:  But he's located now --

MR. HOGAN:  He lives in Singapore, and he commutes to China to work at the factory, and then when he can, he gets back to Singapore to see his family.

And I think it's safe to say that the parties need to be sorted out.

The factory needs to weigh in on -- because it has so much more information than Mr. Ng would get, and I have to be careful, because Mr. Ng is not the factory.  He's not Electronics DG.  And I have to be mindful if a conflict is arising or something of that nature.

They don't always cooperate with Mr. Ng, and I have limited control over that.  So I'm doing what I can.

THE COURT:  Well, so what is your plan going forward?

I mean, there's this case here, you know, and it sounds like the plaintiff is not going to move for federal preliminary injunction until they see what happens with respect to the state preliminary injunction, but there is an anticipation that your client or you will move for summary judgment.

MR. HOGAN:  Yes.

The plaintiff's dispute on the merits.  I've given the

Court kind of a hint that since CY is just an engineer, he's not a corporate officer, he's not a decision-maker, he's a guy that got sent to work.  He got sent to do technical consulting and he got sued for it.

The interesting thing about this preliminary injunction is, I think he's trying to tell Mr. Ng he can't do his job anymore.

And so what happens to Mr. Ng when he goes to work and then his supervisor says to him well, this company has a technical question, send them an e-mail.  And then -- I don't know what to make of a possible preliminary injunction by which Mr. Ng --

THE COURT:  Well, all right.  You'll have a chance to argue all that.

MR. HOGAN:  Okay.  I gotcha.  Yeah.

THE COURT:  I'm asking you, are you planning to bring a summary judgment motion in this case this?

MR. HOGAN:  I do once discovery is completed.  They've produced --

THE COURT:  What discovery do you need to do?

MR. HOGAN:  Well, I have not commenced discovery yet. We have about 971,000 documents -- quite a bit -- from SinCo Technologies.  I did the math that's 323 Banker's boxes.

So I'm looking through them.

I need to take likely the depositions, once the document

review is finished.  I have a much bigger document review.

Now, the defendant in this --

THE COURT:  And the depositions of whom?

MR. HOGAN:  Well, John Chi (phonetic) would be the primary guy.  He's the son-in-law who's the driving force behind the lawsuit.  And he's Singapore based.

THE COURT:  Singapore?

MR. HOGAN:  Yeah.

THE COURT:  You would take -- you would take -- and who else?

How many other witnesses would you need to depose?

MR. HOGAN:  John Chi is the main one that I'm aware of right now.

I have a co-defendant, as Mr. Andara said, Mark Liew in the state case, so he would weigh in on it, too.

The discovery that I have in the state case was propounded by Mark Liew.  And the documents that we collected, that Mr. Andara's client produced were also in response to discovery responses from Mark Liew.  So it is quite a document review process, and it needs to be completed before depositions can be done.

Regardless of the discovery, I have always maintained that Mr. Ng, who is just an engineer, is not the right party in this case.  I think that, as a matter of law, I think the people who are making the decisions at the factory, the owners, the

UNITED STATES DISTRICT COURT

corporate officers, even the sales and marketing department, whoever does those kinds of things if they're appropriate defendants, they're going to know what's going on.

Mr. Ng is just going to say they took his deposition, you know, this is what I do.

THE COURT:  I understand that's your client's position.  Whether that holds out in the end, I don't know.

What I'm trying to figure out is have you propounded -- are you involved in the state court case?

MR. HOGAN:  I am.

THE COURT:  And is discovery -- what's the status of discovery there?

MR. HOGAN:  Mark Liew has conducted a bunch of written discovery, and that's where all those documents came from.

THE COURT:  How about you?

MR. HOGAN:  I have not propounded any discovery yet because I don't want to be redundant, and I want to finish the document review -- I don't want to give away all my secrets, but make sure that I can hit, you know, intelligent inquiries and not take a shotgun approach.

THE COURT:  Well, I guess I have a general question. Why -- whatever discovery needs to be done, why isn't that being taken in the state court case which is ahead of this case?

MR. HOGAN:  Well, it will be in the state court case

that's where it's going.

THE COURT:  All right.

MR. HOGAN:  I understand there is actually served discovery in this case, but I'm just working on the state court case right now, because I've been in it longer and this one is relatively new.

I -- my issue is, I think the damages have got to be the same in both the state and federal actions because it's basically the same conduct.

So obviously there can't be a double recovery for the same --

THE COURT:  No.  That's why I raised the question.  We have a parallel state action.  It may be that the actual federal remedy may be different if there's liability found, but there's probably going to be the collateral estoppel, you know, either way.

So I'm questioning whether a lot should happen in this case outside of -- because you've got a venue for discovery. You've got a venue for preliminary injunction.  You've got a venue for summary judgment motion.  You've got a venue for lot of things already in the state court case, and presumably the process serving is ahead of us in the federal case, so frankly, normally courts will often stay or abstain on federal matters until the parallel state action is -- comes to fruition.

MR. ANDARA:  Can I just mention one thing though?

There's a context to this which is we're playing Whack-A-Mole where he's saying, my client's not on the hook it's the company.  But the company is fully aware of both pieces of litigation.  Mr. Ng has been in the state since July of 2017, over a year.

And he misspoke when he said we've produced 971 documents. We've produced 971,000 documents.  They've produced 300.

So -- and yes, I think he's going to have a hard time drafting written discovery because we've given him everything relating to what's going to be relevant in this case and the state case.  So for purposes of discovery, he's got everything he needs to review.

The biggest frustration for a company like SinCo is they come to the United States.  They build customers.  They help engineer with the customers.  They oversee the manufacture, and then the company in China can send whoever they want to the U.S. with complete anonymity and they can use our trademarks, steal our contracts, go back to China, and because the company gets to stay out of the litigation, they can keep sending their employees to the U.S. while we continue to lose business.

If you stay this case, that gives them an unlimited license to send whoever they want to continue to come to the U.S. to continue to steal our customers.

THE COURT:  What is it that -- given the parties that

are involved -- they're almost identical parties -- what relief should this Court -- can this Court give that you couldn't seek from the state court?

MR. ANDARA:  To prevent them from using the federally registered trademarks in any capacity.

THE COURT:  Well, prevent whom, though?

MR. ANDARA:  Mr. Ng, who is before the Court, the company, and Mark Liew.

THE COURT:  All right.  But you're seeking essentially that --

MR. ANDARA:  Correct.

THE COURT:  -- through the state court.

So what --

MR. ANDARA:  Well, the state court -- just to give you some context.

We got the preliminary injunction in June of last year.  A month later Mr. Ng came to the United States for the first time to meet with our customers.  So we stop one guy, another guy shows up.

Then we find out through discovery and preparation for Mr. Ng's deposition in February, that it's been business as usual.

The injunction we got against Mr. Liew, he continued to communicate with our customers.  We have a motion for contempt on that.  That injunction had no teeth.

UNITED STATES DISTRICT COURT

THE COURT:  Well, I'm not going to issue another injunction just because you're not -- you're not able to enforce the state court injunction.  I'm not going to issue the same injunction.

MR. ANDARA:  No.  It's a separate injunction.  His injunction was based on an employment agreement.

We're coming to you to enforce the --

THE COURT:  But the actual relief sought, you're saying he violated the injunction -- Liew violated the injunction in state court --

MR. ANDARA:  Correct.

THE COURT:  -- that's a matter that you should seek remedies --

MR. ANDARA:  We are.

THE COURT:  -- in -- I don't -- you don't come to federal court and say well, the state court injunction didn't work, let's try the same -- you know, get the same relief on the federal side --

(Simultaneous cross-talk.)

MR. ANDARA:  I think there's a disconnect here.  There is the contracts and the trade secret case in state court, and the trademark is in the federal.

We aren't asserting --

THE COURT:  That's the theory of the case, but wouldn't -- if that relief were effective --

MR. ANDARA:  Yes.

THE COURT:  -- if you got the full injunction in force, would there still be a trademark conduct that constitutes a separate trademark violation that could proceed without violating the state court --

MR. ANDARA:  If employment agreements are enforced, then we wouldn't need the aid of this Court, correct.

THE COURT:  Right.

MR. ANDARA:  Because they agreed by -- but it's not based on trademark, it's based on the conduct they agreed to in their employment --

THE COURT:  I understand it's different theories.

You have the same thing in a copyright.  You know, you exceeded the license of the copyright, that then becomes a (inaudible), but it's still -- people bring it as both claims. You get the same relief at the end of the day, don't copyright anymore.  It could be a violation of the contract.  It could be a violation of the copyright law.

So I will say that right now, at this juncture, my inclination is to say -- I'm hesitant to do anything substantive -- entertain motions, or motions on either side unless I'm convinced that this is something that could not be obtained or enforced through the state court system where there's already a pending action.

MR. ANDARA:  So here's the scenario.  Mr. Ng decides

he's going to come to the U.S.  He obviously isn't going to tell us about it.  We're going to learn about it.  We're going to learn he's using our trademarks.

We can't get to the state court and force those -- prevent him from using our trademark names.  We'd have to come to this Court.

THE COURT:  Why -- why -- I thought the injunction you're seeking that's going to be heard in May --

MR. ANDARA:  Well, that's based on his employment agreement --

(Simultaneous cross-talk.)

THE COURT:  But that employment -- the employment agreement says he can't use it -- in other words, however you phrase the cause of action, what you're hoping for from the state court judge is an injunction to Mr. Ng, do not use plaintiff's trademark in the United States, because that would violate the -- right?

MR. ANDARA:  Correct.

THE COURT:  There would be an injunction.

Maybe the reason for it is one cause of action.  You've got another cause of action to back it up, but the state -- the injunction would be the same.  The ultimate act that he can't do --

MR. ANDARA:  Correct.

THE COURT:  -- would be enjoined.

UNITED STATES DISTRICT COURT

MR. ANDARA:  That's right.

The remedy is different, but the injunction would be the same.

THE COURT:  Well, all right.

I'm just tell you that before you bring a motion here, one of the things I'm going to look to is whether, you know, again, the normal criteria is, is there an adequate remedy of law?

Is there another remedy out there?

What happens if I don't issue it versus if I issue it?

How necessary is it?

And with an overlay of whether there's an abstention doctrine or stay doctrine that's lying out there, because I -- you know, I don't want to also step on the shoes of the state court.

If the state court's going to issue an injunction, the state court ought to be in a position to enforce that injunction.

MR. ANDARA:  If they don't issue the injunction -- let's say that they find that the employment agreement does not reach extended beyond what he's doing.  He still used our trademarks.  He still has indicated that at the deposition.

He can still do that in the future, and we have the right to --

THE COURT:  It's theoretically possible that a denial of the preliminary injunction might be due on a grounds that's

not inconsistent with this Court issuing, in which case, yeah -- that's all I'm saying is that in the first instance, my first question is going to be well, what's the state court doing?

So before you bring motions or anything else -- and the same thing with discovery.  You know, you've got discovery rights in that case, things are proceeding.

I don't know, you know -- it would have to be demonstrated to me why you need, for instance, a motion to compel in this Court as opposed to state court.  That's all I'm telling you at this point.

MR. ANDARA:  Well, the rules are significantly more protective of us in this Court than they would be --

THE COURT:  I have --

MR. ANDARA:  -- I mean --

(Simultaneous cross-talk.)

MR. ANDARA:  -- for example, an ESI liaison.  I mean, we have a situation where counsel's producing e-mails that he prints out on his letterhead that come right out of his mailbox.  There's no remedy for that in state court because that's okay.  In federal court that's not going to be allowed when you ask specifically that it be produced in native format.

THE COURT:  Well, all I'm saying is, whoever brings a motion to me is going to have to demonstrate a threshold question why I should get involved above and beyond what's

available in the state court.

So this is not your typical case where it's just going to be out of the box.

MR. ANDARA:  Right.

THE COURT:  So that being said, let me ask about the -- the idea -- one of the things you do want to invoke here, it sounds like, is the idea of a magistrate judge settlement conference is what --

MR. ANDARA:  Well, I mean, we're putting it out there. I mean, if they're opposed to it --

THE COURT:  Well, let me find out.

What is your view about -- and what settlement efforts have been made in the state courts?

Is there any ADR process going on under the auspices of the state court action?

MR. ANDARA:  No.  Because the shield that the -- the company has not been served has been used to try to avoid moving forward on those grounds.

THE COURT:  No ADR in state court?

MR. ANDARA:  Correct.

THE COURT:  But what's your view about any ADR process here, knowing that we don't have the cooperation of all the other defendants at this point?

MR. HOGAN:  Your Honor, the problem in the state case, I think, is the same in the federal, that without all the

parties here, certainly Mr. Ng is the only defendant in this case, the federal one, and he couldn't accomplish anything at a settlement conference at this time, he wouldn't know if he was coming or going.

So it is a case, I think -- there is a general reason why cases are at issue before they proceed to any kind of meaningful of ADR.  And so that's -- I think that's a reasonable position.

The same thing in the state court.  Without all the parties there, I think that's probably why ADR -- we haven't discussed ADR.  I think that's largely -- in the state case, largely because of getting all the parties into the case.

So at this time, as I said, everybody likes ADR.  It's always a great thing if it can end a case and save everybody time and money, but this case is not ready for that yet.

THE COURT:  Is there a way, if there's going to be depositions in Singapore, whether the other defendants would be willing to participate?

MR. HOGAN:  You know, I have no idea.

I have never had any contact with the factory.

What happens is, you kind of get a -- well, that's true.

We filed one motion because there was a motion for entry of default, and the firm owner, Clay, he does speak Chinese, sticks his head in my office and says, we need to file an opposition today.

You now know the entire history of my contacts with the factory. I don't know, for example, if Clay, the firm owner, can talk to them, whomever he contacts, and see if it he's something they would want to do. I don't know that, as I stand here today.

THE COURT: All right.

MR. HOGAN: I think when they're a defendant in the case and they -- I don't even know if we can represent them now. There may be a conflict. So I'm not sure -- I'm not saying that's true. We may be able to represent them. It's business, and I'd like to be able to. But until that sorts itself out, I really can't comment on what they might do.

THE COURT: So -- I don't know what I -- what's your view?

They're not willing to do -- engage in a mediation or a settlement conference without all the parties there, and all the parties aren't here.

MR. ANDARA: I just think it's a complete waste of opportunity. If we're all going to be in Singapore for a deposition, and all we have to do is turn on the TV screen and get a magistrate up there and have a conversation, I mean -- because I guarantee you when the Court says, I need you to appear in San Francisco, he's going to come back and say well, it's a hardship on my client. I can't come from Singapore.

So I don't know.

UNITED STATES DISTRICT COURT

THE COURT:  But that's not what I'm hearing -- at this point, their position they're not even in the case.  They haven't even made an appearance, so why --

MR. ANDARA:  Well, I'm stepping back, because I think you're going with his assumption that Mr. Ng we can't settle out with him separately, and we can't have a conversation with him.  He did separate acts.  He used the trademark in his individual capacity --

THE COURT:  Right.  So how do you propose we get from A to D?

You want -- obviously the magistrate judge just can't -- I can't assign this to a magistrate and have him go out and call the --

MR. ANDARA:  Yes.  I understand.

THE COURT:  So somebody's going to do something.  And if you can line up, do the groundwork --

MR. ANDARA:  Sure.

THE COURT:  -- then you can say, look I've got these -- you know, Electronics DG willing to participate, et cetera, et cetera if we're over there, can we get a magistrate judge to do this by video conference?  It's unusual, but given these circumstances, maybe we can do that.

So why don't we put it this way.  If you can get the groundwork established and get the parties to the table, even if it's a table in Singapore or China or somewhere, I will

approach one of the magistrate judges and see if they would be willing to host a video conference settlement conference.

MR. ANDARA:  Okay.

THE COURT:  It's a little harder because half the -- half the art is getting people to separate into different rooms, and so I'm not sure how logistically --

MR. ANDARA:  We have -- we have a law firm in Singapore that we did have video capabilities where we did the depo.  We can have that --

THE COURT:  And you had a different room --

MR. ANDARA:  -- that kind of stuff we can work out.

THE COURT:  All right.  So I'm -- so I'll leave it to you.

MR. ANDARA:  Fair enough.

THE COURT:  If you can convince the relevant parties that if they can voluntarily appear, I will see if we can get somebody to host that.

MR. ANDARA:  Okay.

THE COURT:  Or I'll wait to hear from you on that.

MR. ANDARA:  And just one point, your Honor.

So counsel is right.  We did serve discovery in this case, as you saw in our joint case management statement.  Mr. Ng signed multiple documents that evidence his employment with SinCo.

In one of their affirmative defenses they basically claim

UNITED STATES DISTRICT COURT

fraud that he was tricked into signing all of those documents.

So we've done discovery on that to potentially move to strike that affirmative defense.

I gather from -- well, I can't gather from the Court, but just to foreshadow, we were anticipating potentially bringing a motion along those lines.

We've done a similar motion for demurrers in the state court action on similar grounds, but we're awaiting the discovery to see if they have any facts that support this claim of fraud that he was tricked into signing all these agreements.

THE COURT:  Well, again, is that not an issue in the state court case?

I mean, it's -- it seems to me that's going to be an issue there.

MR. ANDARA:  Well, again, I mean, the issue becomes -- so in the state court more so, because in this case if he's not an employee, he still doesn't have the right to use our trademarks.  So it's a nonissue in that sense, but in the sense that it goes directly to his credibility and the fact that they don't have any claims to support this fraud claim, we'd want to get that resolved sooner than later.

THE COURT:  But the fraud claim, if that is raised, that would be relevant to the state -- wouldn't that be relevant to the state court action?

He if's able to prove that he was --

(Simultaneous cross-talk.)

THE COURT:  -- he was fraudulently induced into signing this, and one of the basis --

MR. ANDARA:  Well, I've already -- I agree with your Honor.  There's two points, though.

One -- the first point beings is whether or not he was an employee of SinCo, that goes directly to the state court action, but it -- and that doesn't really matter in the federal case, because whether or not he's an employee or not, he didn't have authority to use the trademark.

THE COURT:  Well, again, before you bring any motion I'm going to look at it through the lens, and you would have to address why this is a matter that is not going to be resolved or not likely to be resolved in the state court proceeding. It's a completely independent matter that won't be affected by the state court in order to get over my -- my -- you know, my test here.

MR. ANDARA:  Correct.

What I'm hearing is, we have the hearing in, I believe July, so once the Court's ruled on that, we'll await filing anything with this Court until the state court rules.  That's fair.

THE COURT:  All right.  So I'm not technically abstaining per se, but it's almost a quasi semi-extension kind

UNITED STATES DISTRICT COURT

of notion that the presumption is, this is a matter covered in state court action, and you demonstrate to me that some action is needed to advance the litigation that is not intersecting the state court, then under those circumstances I may entertain that, but otherwise my presumption is we're taking a second seat here.

MR. ANDARA:  We are going to proceed with discovery in this matter, and you're going to assign a magistrate or --

THE COURT:  Well, you have the right to proceed with discovery, but my -- my -- if you get into a dispute, the first question is going to be, well why isn't this being sought under the auspices of the state court discovery mechanism and resolved -- any dispute resolved therein.

So I'm not going to stop you from propounding, but make sure that you understand that I may not -- I'm not going to assign a discovery judge yet.  I'm going to keep it.

MR. ANDARA:  Okay.

THE COURT:  But I don't expect to see much, because the only discovery I think that should come here is something that could not, as a matter of law, be obtained through the state court system.

What I don't want to do is if it's been denied or relief has been denied in state court, somebody gets a second bite of the Apple here.  We're not going to -- we're not going to do that obviously.

UNITED STATES DISTRICT COURT

MR. HOGAN:  If I may add, the Court has challenged something that I already raised with Mr. Andara, and when I see an opportunity, I'm going to mention it.

I have concerns.  We answered a ton of written discovery in the state court.  Production 1, 2, 3.

I don't want -- the Court's going to see this if I get the same things again.  I'm not saying that Mr. Andara is going to do that, but I did raise it on early with him that I don't want to answer -- because it goes to get a declaration for additional discovery and you get more, and more, and more, and more, and I think this is a good place to head it off right now that --

THE COURT:  Well, let's just say this, that any discovery that is obtained in the state court case is going to be applicable here.

MR. ANDARA:  Yes.  I think we've already agreed to that.

THE COURT:  Yes.

MR. ANDARA:  Yes.

THE COURT:  And so if you seek additional discovery, my first question is going to be well, why aren't you seeking it in state court?

And two, in light of the fact that discovery that's been produced has already been deemed produced here, is this over the top?

UNITED STATES DISTRICT COURT

MR. HOGAN:  Thank you.

THE COURT:  (Inaudible) personality applies.

So again, don't look to this Court as the first well to go to.

MR. ANDARA:  Well, okay.

So -- and this has already been framed in the joint statement to the Court.  We have a potential issue with preservation in deposition testimony about how computers were used.  It's going to be very different approaches in state court and federal court.

We're just -- we are to set aside the state court -- or the federal court mandates of preservation and those types of issues to the state court, is that what I'm understanding?

THE COURT:  Well, my question is going to be -- I mean, there are preservation rights in remedies in state court. It's not like --

MR. ANDARA:  But they're a much higher standard in federal --

THE COURT:  Well, I --

MR. ANDARA:  -- and they may have been met in state, but they're not being met in federal, and that's -- that's why we specifically had that --

THE COURT:  I am going to -- put it this way, it's like an exhaustion doctrine.  I want to see that whatever

rights you had in state court --

MR. ANDARA:  Fair enough.

THE COURT:  -- are exhausted.  You know, I'm just going to federal court because I like your rules better.

If you can't get it and it's been denied on grounds that would not create inconsistency --

MR. ANDARA:  Right.

THE COURT:  -- well, state courts don't require X, you know, but federal courts do require X and that's one gap, then that's an incremental difference that I might entertain.  But you're going to have to do, like I said, almost an exhaustion doctrine.

MR. ANDARA:  Okay.  So, for example, the specific point I brought up in the testimony of Mr. Ng referenced in the joint statement is that rather than produce the documents from his laptop, he said it was -- the hinge caught on fire so he produced it through his current employer who is our competitor, and at his deposition and working with counsel for months trying to get him to produce it saying we'd pay the cost of doing a forensic collection, we find that he can't get it back from his employer.  His employer is holding that laptop hostage, which is going to have data that's relevant to the state court action.

So basically what you're saying is, first go to a motion to compel in the state court, and then if there's better

grounds in federal court -- or if there's different grounds in federal court that would get you access to that information, you can come see me?

I just want to be clear.

THE COURT:  Yeah.

MR. ANDARA:  Okay.

THE COURT:  You have to go to state court first and seek your remedy, and if it's denied and you come here, I want to know why it was denied.

If it was denied on a ground that, you know, it wasn't relevant, for instance, or some ground that I don't want to contradict, but if it said well, state court remedies only go so far, we can't order this or this, you know, which leaves room for some federal intervention, then under those circumstances, but --

MR. ANDARA:  But to be clear, the preservation obligations are the Federal Rules apply to this case.  We're not deferring to the state case, there are basically --

THE COURT:  But a state court can -- I'm not as familiar with the state court rules, but if you make a certain showing, it's hard to believe that a state court, if it catches wind of something, could not, within its remedial powers, order something.

I'd have to be convinced that the state court found that its remedial powers were limited -- not just what it was

willing to do, but what it could do.

MR. ANDARA:  I appreciate that.

THE COURT:  If they say no, there's not enough of a showing here, the documents are not likely to be that important, or this other source is just going to be as good or whatever, then I don't want to hear that all again and hear all that argument.  It's going to have to be something that the state court could not have done.  Not will not do, but could not do.

MR. ANDARA:  But the federal court -- my point being is under Rule 26, for example, with preservation, you have certain obligations that are not -- you have to do them.  You're required to do them under federal law.  And I would argue that the preservation obligations and some of those obligations have a bigger footprint than state court.

I agree, and I think the state court does have overlapping remedies, but I think the federal is a little bit more encompassing.  We don't have ESI liaisons in state court, and there's a reason why the federal court did that, and I just want to be clear that --

THE COURT:  Yeah.  So if --

MR. ANDARA:  -- we're still using the same standard.

THE COURT:  If the federal standard requires something --

MR. ANDARA:  Right.

THE COURT:  -- that the state court does not, but if you're saying, federal judge, exercise your discretion in a way that the state judge was not willing to exercise his or her discretion, that I'm not willing to do.

MR. ANDARA:  Right.  I understand.

THE COURT:  So it's a pretty narrow window.

MR. ANDARA:  I understand.

THE COURT:  If it's something that's absolutely mandated by federal law and the state court refused to do it and you're entitled to it --

MR. ANDARA:  Right.

THE COURT:  -- you know, that's a different matter. Okay.

MR. HOGAN:  Your Honor, if I just may add one thing on the ADR.

Almost all my cases resolve through ADR, so I'm a fan of the process.  I think that's true with most civil litigators. But obviously an ADR before a magistrate judge in this case, I couldn't -- there's no way Mr. Ng could settle the federal case and not the state case.  The man would have a nervous breakdown if he had to do both cases.

THE COURT:  So you can agree to -- we do this often, everybody agrees by consent to have a global settlement.  It is often the case a magistrate judge will settle cases across the country.  Cases that are not even before this court in New York

UNITED STATES DISTRICT COURT

as a global settlement.  I mean, almost wearing the hat of a private mediator.

MR. HOGAN:  I just wanted to make sure I said it. That's all.

THE COURT:  Okay.

MR. ANDARA:  We're of the same mind.  It wouldn't make any sense to (inaudible).

THE COURT:  Okay.  So why don't we just schedule a further status conference six months out.

THE CLERK:  November 1 at 10:30.

MR. HOGAN:  Fine for the defendant, your Honor.

THE COURT:  All right.  So maybe we'll know more by then.

Thank you.

(Whereupon the matter concluded at 10:37 a.m. )

--oOo--

UNITED STATES DISTRICT COURT

CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

*/s/ VICTORIA L. VALINE*
_____
Victoria L. Valine, CSR 3036, RMR, CRR
May 25, 2018

UNITED STATES DISTRICT COURT