LAEL D. ANDARA (SBN 215416)
MICHELLE G. TREVINO (SBN 315304)
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street, Suite 500
Redwood City, CA 94063-2052
Telephone: (650) 364-8200
Facsimile: (650) 780-1701
Email: lael.andara@rmkb.com
       michelle.trevino@rmkb.com

Attorneys for Plaintiff
SINCO TECHNOLOGIES PTE, LTD.

KELIANG "CLAY" ZHU (SBN 305509)
CHRISTOPHER HOGAN (SBN 191546)
YI YAO (SBN 292563)
DEHENG LAW OFFICES, PC
7901 Stoneridge Drive, #208
Pleasanton, CA 94588
Telephone: (925) 399-5856
Facsimile: (925) 397-1976
Email: zhu@meridar.com
       chogan@meridar.com

Attorneys for Defendant
NG CHER YONG aka CY NG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SINCO TECHNOLOGIES PTE, LTD,<br><br>Plaintiff,<br><br>v.<br><br>SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS (DONGGUAN) CO., LTD; XINGKE ELECTRONICS TECHNOLOGY CO., LTD.; SINCOO ELECTRONICS TECHNOLOGY CO., LTD.; MUI LANG TJOA (an individual); NG CHER YONG aka CY NG (an individual);  and LIEW YEW SOON AKA MARK LIEW (an individual),<br><br>Defendants. | CASE NO. 3:17CV5517 EMC<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:        **October 25, 2018**<br>Time:        **1:30 p.m.**<br>Courtroom:   **5, 17th Floor**<br><br>[Sec. Amend. Complaint: **February 23, 2018**] |

Plaintiff SINCO TECHNOLOGIES PTE, LTD. ("SinCo") and Defendant Ng Cher Yong aka Cy Ng ("Mr. Ng") (collectively, "Parties") jointly submit this Joint Case Management Statement and Proposed Order in accordance with Court's Minute Entry of **January 4, 2018** (Dkt. No. 21), **January 17, 2017** Standing Order for All Judges of the Northern District of California, and Civil Local Rule ("L.R."), rule 16-9.

The Parties previously appeared before the Court on Defendant Mr. Ng's Motion to Dismiss on **January 4, 2018**. Since that hearing Mr. Ng was deposed in Singapore and Minh

1 Nguyen was deposed in San Jose, California on **August 24, 2018**.

## I.   JURISDICTION, VENUE, AND SERVICE

This Court has subject matter jurisdiction over SinCo's Lanham Act claims under 15 U.S.C. §1051, *et seq*. This Court has jurisdiction over the subject matter of this action under the Judicial Code, 28 U.S.C. §§1331 (a federal question) and 1338(a) and (b) (Acts of Congress relating to trademarks), the Lanham Act, 15 U.S.C. §1121, et seq., and principles of supplemental jurisdiction. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2), (c) and §1400(a). The nucleus of facts giving rise to Plaintiff's claims occurred in this jurisdiction and the United States.

This is the second action brought by SinCo; the first action was brought on **October 28, 2016** in the Superior Court of California, County of Santa Clara, Case No. 16-cv-301867 (the "State Action"). The State Action is based on breach of contract and trade secret claims.

The initial Complaint was filed on **September 22, 2017** and amended on **November 7, 2007** after being reassigned to Judge Edward M. Chen. (Dkt. 1, 13, 14.) Defendant Mr. Ng was served on **November 7, 2017**, and moved to dismiss the First Amended Complaint on **November 27, 2018**. (Dkt. 15, 16.) On **January 5, 2018**, the Court granted the motion to dismiss with leave to amend. (Dkt. 22.) On **February 12, 2018**, the parties traveled to Singapore for the deposition of Cy Ng, noticed in the State Action. SinCo filed the Second Amended Complaint on **February 23, 2018,** and Mr. Ng answered **March 16, 2018**. (Dkt. Nos. 23, 33.) The remaining defendants are subject to service pursuant to the Hague Convention. The papers and translations thereto had been translated and submitted to the central authority in the People's Republic of China (P.R.C.) and SinCo anticipates that they would have been served within 18-24 months of the date that SinCo submitted to the papers and translations to the central authority in the P.R.C.

SinCo filed a motion for entry of default with the clerk against Defendant Sinco Electronics (Dongguan) Co. Ltd. on **August 22, 2018**. On **August 24, 2018**, the court clerk entered a default against Defendant Sinco Electronics (Dongguan) Co. Ltd. (Dkt. No. 51.)

///

## II. FACTS

***Sinco's statement:*** This is case arising out of Defendant Cher Yong Ng ("Mr. Ng"), and defendants entities SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS (DONGGUAN) CO., LTD; XINGKE ELECTRONICS TECHNOLOGY CO., LTD.; SINCOO ELECTRONICS TECHNOLOGY CO., LTD. (collectively hereafter "Electronics DG") conspiring to steal Plaintiff SINCO TECHNOLOGIES PTE LTD.'s ("SinCo") United States ("U.S.") customers by falsely and deceptively using SinCo's U.S. trademarks and employees to divert business. Cy Ng defined SINCO ELECTRONICS (DONGGUAN) CO., LTD. as "Electronics DG," in his declaration of **March 22, 2017,** in the State Action.

**TRADEMARK USE.** SinCo began operations in Singapore in 1995 and began using the SinCo word mark and logo within a year. SinCo contracted with the factory that later became Electronics DG to do the manufacturing of electronic components and parts it helped develop and design for U.S. customers. SinCo provided Electronics DG a limited license to use of its trademark on packaging and for other uses in the scope of the work being done for SinCo, for example, to facilitate drop shipping and other logistical issues (as is common in the industry).

**LICENSE.** As the years progressed SinCo's founder and owner, recognizing that Electronics DG did the majority of SinCo's manufacturing, personally invested as a minority owner in the entity. Thereafter, in 2000-2003 SinCo decided the volume of production at Electronics DG and the frequency of U.S. customers requests to visit the facility required on-site oversight and interface capabilities by SinCo. Stationing SinCo engineers on site at the contract manufacturer, SinCo could more readily make changes and address customers concerns, as SinCo maintained the relationship. To help facilitate and capitalize on this on-sight presence, SinCo expanded the scope of the license to Electronics DG to use the SinCo name on the factory so that U.S. Customers visiting the SinCo embedded employees would see uniformity between the development and manufacturing aspects of SinCo. The license for Electronics DG to use the SinCo mark never extended beyond the P.R.C. SinCo continued to maintain the U.S. relationships and would receive purchase orders from U.S. customers directly. Thereafter, SinCo would

negotiate separately with Electronics DG to have the parts made under a separate purchase order.

**MR. NG'S DOCUMENTS.** Mr. Ng's claim that he was an employee of Electronics DG is contradicted by documents he signed. Mr. Ng repeatedly acknowledged his employment with SinCo: on **April 28, 2006**, Mr. Ng entered into a loan agreement for $30,000 with Mr. Lim agreeing to have his payments be withdrawn from his SinCo salary; on **March 6, 2009** Mr. Ng entered into a Nondisclosure Agreement with SinCo where he acknowledged his obligations as SinCo's employee; and a legal affidavit Mr. Ng signed and filed on **January 5, 2011** with the Court in Singapore wherein he swore he was the Engineering Director of SinCo Technologies PTE Ltd. since 2003. This sworn and notarized affidavit makes clear he understood SinCo employed him. Mr. Ng's deposition testimony confirms that he was accepting salary (in Singapore dollars from SinCo), benefits, and travel from SinCo. Mr. Ng admits that he was the supervisor of senior engineers hired by SinCo. Furthermore, multiple resignation letters by SinCo embedded engineers to Mr. Ng were addressed to Mr. Ng as management for SinCo.

**SINCO ENGINEERS IN P.R.C.** SinCo and Mr. Ng were able to hire engineers with better qualifications than Electronics DG given SinCo's reputation in the market and relationships with substantial U.S. companies. These employment contracts indicated SinCo was the employer and Electronics DG was only referenced under section 4, Location of Work: "*You will be required to work in DongGuan, Sinco Electronics Technologies Co. Ltd.*" Mr. Ng confirmed in his testimony that Electronics DG maintained their own staff of engineers from the P.R.C. When U.S. customers visited the factory they met with SinCo employees, not Electronics DG engineers (who did not speak English). SinCo's embedded engineers communicated with U.S. customers, not Electronics DG's engineers. SinCo directed Mr. Ng's job activities in the P.R.C. The PowerPoint slides presented to U.S. customers at the factory indicated Mr. Ng was a SinCo employee.

**CHINA TRADEMARK.** Unknown to SinCo until the State Action, Electronics DG filed for a trademark on the SinCo word mark and logo in P.R.C. Electronics DG attempted a similar strategy after SinCo initiated the State Action, filing no less than 15 applications in the United States Patent and Trademark Office ("USPTO") for the SinCo word mark and logo in the U.S.,

which SinCo has opposed. At this time only four applications remain pending, two of which are being opposed by SinCo as of **August 16, 2018**, as the others have been abandoned or suspended in light of SinCo's trademarks. On **October 15, 2018**, counsel for SinCo discovered that the listed domestic representative of the two marks being opposed, in opposition no. 91243086 with the USPTO, did not file or prosecute the marks. XinGke Electronics (DongGuan) Co. Ltd. has fraudulent used the identity of Miriam Paton (listed domestic representative) in filing and prosecuting application nos. 87/658,552 and 87/658,544.[1]

SinCo also challenged the P.R.C trademark wherein Electronics DG perjured itself by claiming to have first designed the SinCo Logo before SinCo, who began using the mark in 1996. The perjury was revealed by the design contract between Electronics DG and Dongguan Humen Yuan Su Computer Graphic Design Service Business which was dated **July 1, 2015**.

**CONSPIRACY**. In 2015-2016, U.S. customers brought up safety and quality concerns in the form of audits. At that time SinCo considered an outright acquisition of Electronics DG, provided they could address the quality and working conditions. Electronics DG in an attempt to avoid the significant cost of addressing these concerns began conspiring with Mr. Ng and Mr. Liew to divert SinCo's business to Electronics DG and planned to sell the company out from under SinCo. Electronics DG and Mr. Ng were able to steal accounts from SinCo leveraging the SinCo trademarks as early as **August 21, 2015**, and with this success sold KOTL a majority interest in November of 2015. After Electronics DG's conspiracy was revealed they changed the name on the factory from SinCo to XingKe and then Mr. Ng directed SinCo's remaining engineers to join him in resigning from SinCo and switch to employees of Electronics DG. Electronics DG and Mr. Ng's prior use of the trademark has a context that they wish to disavow.

**INFRINGEMENT**. On **January 5, 2017**, Mr. Ng traveled to the U.S. for the first time to meet with SinCo's customers, fully aware SinCo had valid U.S. trademarks, doing so without SinCo's knowledge or consent. On **June 1, 2017**, SinCo obtained a preliminary injunction against

---

[1] Further, it is not clear whether Xu Shugong has sold all his shares in Electronics DG since his signature is on the Answer to Opposition No. 91243086, as the Principal of XingKe Electronics (DongGuan) Co. Ltd.

Mark Liew in the State Action. Mr. Ng resigned on **June 29, 2017**, after that the remaining SinCo engineers also resigned to join Electronics DG. Mr. Ng's second trip to the United States occurred on **August 5, 2017**, and just like his first trip his target was to meet with SinCo customers. Although according to Mr. Ng, his new employer stopped using the SinCo mark in P.R.C. on or about **March 15, 2017**, Mr. Ng continued to use his SinCo business card and email address communicating with SinCo's U.S. customers, even though he claimed he was XingKe. On **July 25, 2018**, SinCo obtained a preliminary injunction against Mr. Ng in the State Action.

Mr. Ng, was able to steal SinCo's U.S customers by at least three illegal means: (1) using SinCo's trademarks beyond the scope of his employment; (2) falsely and inaccurately suggesting that Electronics DG in fact was one and the same as SinCo; and (3) capitalizing on the customers association of Mr. Ng as a SinCo employee to give credibility to the deception. Electronics DG could not have succeeded without the facilitation of Mr. Ng and his subordinate Mr. Liew, as they leveraged the fact that SinCo's U.S. clients knew them as SinCo employees.

Mr. Ng feigns ignorance and disavows facts to avoid liability: (1) the distinction between Electronics DG and SinCo and the use of the SinCo trademark; (2) the validity of his employment agreement and the employment agreement of the SinCo engineers that report to him; (3) the difference between commercial discussions and technical ones; and (4) the multiple resignation letter submitted to him as the engineering director for SinCo. Contrast this to the calculating and treachery of Mr. Ng's self serving claims: (1) he had absolute certainty he was an employee of Electronics DG and not SinCo which he understands are distinct in that context; (2) he needed to resign from SinCo and direct his senior engineers that report to him to also resign within a 30 day period to then join Electronics DG; (3) he had no requirement to use the SinCo trademark to the benefit of anyone but Electronics DG; and (4) SinCo maintained a Human Resources department to hire engineers for Electronics DG and pay them in Singapore dollars for Electronics DG.

***Mr. Ng's statement***: Plaintiff Sinco Technologies PTE LTD ("Sinco Singapore") and defendant Sinco Electronics (Dongguan) ("Sinco China") quite obviously have the same names. As Mr. Ng understands the complicated ownership structure of the Sinco entities, both were owned and controlled primarily by two Chinese businessmen, Bryan Lim and Xu Shugong, at

1   least in part through a parent company named Sinco Group Holdings.

2   Sinco Singapore is a business office that does marketing and arranges for production of
3   computer components. Sinco China (which is not called Xinkge Electronics, a change made likely
4   due to all the litigation by Sinco Singapore) does manufacturing, but also independently
5   manufactures for high techology clients.

6   Sinco China started out (or so Mr. Ng understands) as Sinco Silicon Rubber Company in
7   or about year 2001. This entity became Sinco China in or about 2009. According to Sinco
8   Singapore, Sinco Silicon Rubber Company was dissolved by Bryan Lim in 2006. What the
9   Chinese factory was called between 2006 and 2009 is somewhat mysterious.

10  Which is part of the document problem. Mr. Ng's pay stubs continued to say "Sinco
11  Silicon Rubber" into year 2017.

12  Why? The record keeping was sloppy because it was one big enterprise. But Bryan Lim
13  and Xu Shugong, like many businessmen, never saw the divorce coming and didn't plan for it.
14  When Mr. Shugong's health mandated a sale of his interest in Sinco China, Sinco Singapore was,
15  as Cy Ng understands it, under the guidance of CFO John Chee (Bryan Lim's son-in-law).

16  Sinco Singapore has an incredibly complicated conspiracy theory about why it did not buy
17  Mr. Shugong's shares. But is not really that complicated. Mr. Shugong had to sell to a company
18  (for short, referred to as KOTL) that offered him the most money.

19  Mr. Chee, the driving force behind this lawsuit, now had a big problem.  Sinco Singapore
20  does not manufacture. It has to rely on manufacturing in China, or Malaysia.

21  Sinco Singapore keeps griping about Cy Ng claiming that he worked for Sinco China. Mr.
22  Ng testified at deposition that he worked for Sinco China. When Mr. Ng was shown documents
23  (such as his affdavit to the Singapore Court), Mr. Ng explained that he understood Sinco China
24  and Sinco Singapore to be part of Sinco Group Holdings, which in turn were owned by his boss,
25  Bryan Lim. Mr. Ng signed several employment related documents at the request of Bryan Lim for
26  these reasons.

27  From a legal perspective, given the confusion created by Mr. Ng's superiors, which is no
28  fault of Mr. Ng, perhaps it can be said that Mr. Ng also worked for Sinco Singapore. And maybe

1   even for Sinco Group Holdings (the latter company name also shows up on some of his pay

2   documents). They all bear the Sinco name and have common ownership.

3         The crazy way that Bryan Lim and Xu Shugong intermingled these businesses was the

4   cause of all this ambiguity. But Sinco Singapore's lawyers need to say *something* now. So they

5   need to go through Herculean efforts to try and twist and bend the employment related documents

6   to say something other than what is plainly written there.

7         Also, and this is a huge part of this lawsuit, there was never a license agreement by which

8   Sinco Silicon Rubber's use of the "Sinco" name was granted with limited use. And there was

9   never a license agreement by which Sinco China's use of the "Sinco" name was granted with

10  limited use. If these documents existed, the dispute over the name between the entities would be

11  pretty easy to resolve.

12        Once again, Sinco Singapore needs to go through Herculean efforts to try and cobble

13  together documents try and create some kind of document compilation they will try to sell as

14  adding up to a license agreement.

15        Cy Ng might not be Sinco China, and he might not be Xingke China either, but he can

16  read the law. It is apparent that Sinco China had, and still has, every right to use the "Sinco"

17  name. The change to "Xingke" was unecessary. Sinco Singapore put no restriction on the use of

18  the "Sinco" mark, and would have had to move *promptly* to protect its mark if it believed there

19  was misuse. Sinco Singapore did not so move. For about a decade. The fact that Sinco Singapore

20  has trademarks is nice, but it is not the only entity with the right to use the name.

21        As a trademark case, then, this is a non-case. And the claimed damages- whatever those

22  are- are duplicative of the state case.

23        And the foregoing does not even consider the role of engineer Cy Ng. Apparently, Mr. Ng

24  handed out business cards in the United States with the "Sinco" trademark name on them, and

25  sent emails to clients in the United States using the Sinco name in the email address. If we are to

26  overlook the fact that it was the Sinco Singapore that set up and watched the China factory

27  employees (like Mr. Ng) use that email address constantly, it is a most dubious assertion that any

28  of this proximately caused Sinco Singapore's claimed massive losses.

As the court is aware, there is also a state trade secret case in the state court, that was first in time. Trade secrets are not in issue in this federal case, but Sinco Singapore keeps bringing up the subject anyway.

Any claimed confusion of the "marks," or of misleading customers who are "trade secrets," of Sinco Singapore, if any of this occurred, is a thing of the past. Sinco filed its state complaint in October 2016- more than 2 years ago. So it must have learned of the alleged claims earlier, presumably some time in year 2016. Surely, Sinco Singapore cleared up any confusion with its clients more than 2 years ago.

Which raises the issue of damages. The only cognizable claim that has arisen out of all this is an allegation that one or more product manfacturing lines were improperly obtained by Sinco China. As Sinco China has stated in its injunction motion, these product lines might have a run maybe a year. Maybe even 1.5 years. If Sinco Singapore can prove its case, it would get a discrete damages award for interference with a contractual relationship.

Backward looking damages like this diminish Sinco Singapore's case to what it really is: a breach of contract/interferenced claim. It is for these reasons that the forward looking injunction efforts are misplaced. The intent of the injunctions sought, massive in scope and with consequences beyond reckoning, is to effectively declare Sinco Singpaore the winner of the lawsuit without having to prove anything.

Cy Ng has no doubt that Sinco Singapore is struggling as a company. But it might want to look at its own business investment decisions- and to the preferences of customers who engage manufaturing services- rather than try to blame its wounds on one factory in far away China.

### III.   LEGAL ISSUES

*SinCo's Issues:*

Although there is a dispute as to Mr. Ng's Employment status, given the evidence and testimony, SinCo believes it is a question of law. Mr. Ng does not agree.

Assuming Mr. Ng was an employee of SinCo what was the scope of his license to use the trademark? Was it limited to the scope of his employment?

*Mr. Ng's Issues:*

How can Sinco Singapore, after more than a decade of taking no steps to protect its claimed trademarks, expect to rely on them now?

## IV.  MOTIONS

*SinCo's Potential Motions*:

SinCo has filed and obtained an entry of default by the clerk against Electronics DG on **August 24, 2018**. (Dkt. No. 51.) SinCo will move for a Default Judgment under the Hague Convention Article 15. Mr. Ng's counsel made a special appearance on behalf of Electronics DG in State Court and the testimony of Mark Liew and Mr. Ng confirm that defendant entities have actual notice of both lawsuits. SinCo has also sent a request for Waiver of Service under FRCP 4 with translations of the First Amended Complaint and exhibits several months ago.

Further, a hearing for a preliminary injunction is scheduled to be heard by Judge Chen on **October 25, 2018** in this action, same day as the case management conference.

*Mr. Ng's Potential Motions*:

Cy Ng will seek summary judgment of the case in its entirety. There is no valid infringement claim, and Mr. Ng otherwise did not cause any damages.

Further, Mr. Ng will consider a motion to dismiss the federal action as duplicative of the state action, or in the alternative for complete abstention of the federal action, to avoid such issues as injunction motions being filed and ruled upon in the state court, and then filed again in the federal court seeking to revise the decision of the state court judge.

## V.  AMENDMENT OF PLEADINGS

No further amendments are anticipated. There may be amendments required once the P.R.C. entities are served with the Second Amended Complaint.

## VI.  EVIDENCE PRESERVATION

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and counsel for SinCo and Mr. Ng met and conferred on by phone under Rule 26(f) of the Federal Rules of Civil Procedure.

***Sinco's statement***: The parties have agreed - and this Court approved - to avoid duplicate of discovery by using the bBates numbered evidence exchanged in the State Action. This trademark litigation was in part initiated based on information produced in those records. There doesn't seem to be some disconnect in terms of the obligations of Mr. Ng who testified that he no longer has the Dell Vostro computer he was using during the timeframe of many of the complained of incidents. Mr. Ng gave the computer to his current employer, Electronics DG or XingKe, and claims that he does not have possession and control of the device. Furthermore, he testified that he has been provided a new computer that he has been using since **October of 2017**, but to date no responsive information has been produced in response to written discovery propounded in the State Action.

The current deposition excerpts illustrates SinCo's concern as it relates to preservation and discovery issues in the State Action, which will be equally applicable in this case:

Q. Is that something you would be willing to produce?
A. *I will search my cabinet again and go through the details. <u>Relevant one I'll just submit.</u>*
Q. How do you determine if a document is relevant for you to produce in this litigation?
A. *There are many documents I go through.*
Q. Yes.
A. *So those very immediate that has a – related to this case, I put one sides. Then I have time, I go through again.*
Q. Yes.
A. *So I will spend my time to go through many times.*
Q. And do you know what the definition of relevance is for US litigation?
A. *I don't understand this term.*
* * *
Q. You explained to me how you gathered the documents in this litigation, and my concern, the red flag that came up, is it sounded like what you were saying is that you would go through a pile of documents, you would determine if it was relevant, and then you would send them to your counsel who would produce them to me. Is that correct? Did I misunderstood?
A. *No. I honestly look at all the documents and retrieve whatever I can retrieve.*
Q. Uh-huh.
A. *And then I will go through again to look at all the documents again a few times to submit to my counsel.*
Q. So are all the documents -- all the documents that you have, did you submit all of those to counsel, or you only produced a subset of the documents that you found?

| | |
|---|---|
| A. | ***To my honest searching, I produced to my counsel.*** |
| Q. | Did you produce all of the documents that you found? |
| A. | ***To my honest effort, I produce.*** |
| Q. | To be clear, I'm just at a loss as to why you would review the documents multiple times to determine if they're relevant if you're giving all of the documents to your counsel. |
| A. | Normally -- |

MR. HOGAN: Misstates testimony. Vague and ambiguous. Go ahead and answer if you can. And overbroad.

| | |
|---|---|
| A. | *I have one stacks of documents.* ***So I will go through those relevant to the case -- to the case for this to submit what my counsel asks. I just <u>gather quickly</u> as much as possible and submit to my counsel.*** |
| Q. | So you have stacks of documents in your cabinet that you have maintained based on your employment with Electronics DG; is that correct? |
| A. | ***Yes.*** |
| Q. | Approximately how many documents do you have? Are we talking a banker box like we have here today or more than that? |
| A. | ***It's about that.*** |
| Q. | It's about that. And how many of the banker box of documents have you produced to your counsel? |
| A. | ***I think I've submitted something like <u>50-over pages</u>.*** |

See Cy NG **February 12, 2018**, deposition 313:22 -316:25

**Mr. Ng's statement**:

Sinco Singapore's comments are a reiteration from the state court action. The issue of Dell Laptop (one of 4 or 5 laptops that had a short circuit problem that pre-dated Mr. Ng's involvement in this lawsuit) has been vetted in the state action *ad nauseum*. The documents Mr. Ng was referring to that were in his "cabinet" were also produced. This is an old issue in the state court and does not belong here.

**VII.   DISCLOSURES**

SinCo provided initial disclosures on **April 11, 2018**. Mr. Ng provided initial disclosures on **April 19, 2018**.

**VIII.   DISCOVERY**

SinCo and Mr. Ng discussed the preservation and production of ESI at the Rule 26(f) conference. SinCo provided a specific proposal about the form of ESI production.

The parties agree that the presumptive discovery limits set forth in the Federal Rules of Civil Procedure should apply. With respect to depositions, SinCo proposes that:

- The side taking a deposition requiring an interpreter shall hire an official interpreter. The other side may hire its/their own interpreter to verify the translation by the official interpreter.
- Depositions under Rule 30 of the Federal Rules of Civil Procedure shall be limited to eighty (80) hours per side, but not limited to ten (10) depositions under Rule 30(a)(2)(A)(i).
- An individual's deposition shall be limited to seven (7) hours; the parties shall meet and confer if a party believes more time is needed. If the parties are unable to agree, a motion seeking court determination may be filed.
- Individual and Rule 30(b)(6) depositions count against the total time, but third- party and expert depositions do not.
- Depositions requiring an interpreter count as half time.

## IX. CLASS ACTIONS

This case is not a class action.

## X. RELATED CASES

This is the second action brought by SinCo; the first action was brought on **October 28, 2016** in the Superior Court of California, County of Santa Clara, Case No. 16-cv-301867 (the "State Court Action"). On **January 11, 2018**, SinCo's Motion to Amend the Complaint was granted, wherein asserting (1) Breach of Contract, (2) Breach of the Covenant of Good Faith and Fair Dealing, (3) Unfair Business Practices, (4) Intentional Interference with Contractual Relations, (5) Misappropriation of Trade Secrets, and (6) Civil Conspiracy.

## XI. RELIEF

***SinCo's statement***:   SinCo seeks the relief requested in its Second Amended Complaint, including:

- Entry of judgment holding Defendants liable for infringing SinCo's trademarks;
- An order preliminarily and permanently enjoining Defendants and any other persons or entities acting in concert with Defendants from engaging in future acts of infringement, contributory infringement, or induced infringement of SinCo's trademarks;

- An order that all packaging or other business records using the SinCo trademark in violation of SinCo's trademarks, and all means by which such copies may be reproduced, be impounded and destroyed or otherwise reasonably disposed of;

- Damages adequate to compensate SinCo for Defendants' acts of trademark infringement, including actual and exemplary damages, lost profits, infringer's profits, or statutory damages in amounts to be proven at trial;

- An award of SinCo's attorneys' fees, costs of suit, and pre-judgment and post-judgment interest; and

- Any available legal or equitable relief that the Court may deem proper.

*Mr. Ng's statement*:

Defendant Ng Cher Yong is not a cross-complainant. Therefore, he does not seek affirmative relief beyond that set forth in his affirmative defenses and costs of suit as allowed by law.

## XII. SETTLEMENT AND ADR

*SinCo's statement*: SinCo would agree to a settlement conference before a magistrate judge if Mr. Ng is in attendance.

*Mr. Ng's statement*: Mr. Ng, who resides in Singapore, requires a clarification of where a settlement conference is to take place, and asserts that the numerous other defendants will need to be in the case in order for their to be a reasonable chance of resolution.

## XIII. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

SinCo declined to proceed before a Magistrate Judge. (Dkt. 11.)

## XIV. OTHER REFERENCES

This case is unsuitable for reference to binding mediation, a special master, or the Judicial Panel on Multidistrict Litigation.

## XV. NARROWING OF ISSUES

The parties currently have no proposals to narrow the issues.

## XVI. EXPEDITED TRIAL PROCEDURE

The parties do not agree to handling via the Expedited Trial Procedure of General Order 64, Attachment A.

## XVII. SCHEDULING

The parties do not have proposed scheduling dates at this time based on the delay in China to have the defendants with this action. The named defendants have actual notice of the litigation and have made a special appearance in the state action to oppose a motion for default pursuant to article 15 of the Hague convention. Requests for waivers of service have been sent out and either rejected or ignored. SinCo obtained an entry of default by the court clerk against Electronics DG on **August 24, 2018**. (Dkt. No. 51.)

## XVIII. Trial

SinCo expects that a jury trial in this action would take four to five days.

## XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

SinCo filed its Certification of Interested Entities or Persons under Civil Local Rule 3-15 and FRCP 7.1 on **November 30, 2017**. (Dkt. No. 18.) Mr. Ng filed his Certifications on **March 21, 2018**. (Dkt. No. 35.) The parties certified that there are no other parties to identify under Civil Local Rule 3-15.

Dated: October 18, 2018

ROPERS, MAJESKI, KOHN & BENTLEY

By: _____
LAEL D. ANDARA
MICHELLE G. TREVINO
Attorneys for Plaintiff
SINCO TECHNOLOGIES PTE LTD

Dated: October 18, 2018

DEHENG LAW OFFICES, PC

By: _____
CHRISTOPHER HOGAN
KELIANG "CLAY" ZHU
YI YAO
Attorneys for Defendant
NG CHER YONG aka CY NG