UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SINCO TECHNOLOGIES PTE LTD., <br><br> Plaintiff, <br><br> v. <br><br> SINCO ELECTRONICS (DONGGUAN) CO. LTD., et al., <br><br> Defendants. | Case No. 17-cv-05517-EMC <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** <br><br> Docket No. 54 |

The above-referenced case concerns trademark infringement and related federal and state torts. The plaintiff is SinCo Technologies Ptd, Ltd, a Singaporean company ("SinCo Singapore"). It initiated this lawsuit in September 2017, a year after filing a related lawsuit in state court. The following entities and persons were sued:

- SinCo Electronics (Dongguan) Co., Ltd., a Chinese company, which also appears to use the name XingKe Electronics (Dongguan) Co., Ltd. ("SinCo China")[1];
- Ng Cher Yong, an employee of SinCo China and allegedly a former employee of SinCo Singapore; and
- Mark Liew, an employee of SinCo China and allegedly a former employee of SinCo Singapore.

In a second amended complaint, SinCo Singapore added more defendants to the case, namely, XingKe Electronics Technology Ltd. and Sincoo Electronics Technology Co., Ltd. (both companies affiliated with SinCo China[2]) and Mui Lang Tjoa (the CEO of SinCo China). For

---

[1] *See* SAC ¶ 19 (alleging that the two companies are actually the same entity).
[2] Although the SAC does not clearly identify XingKe Electronics Technology Ltd. and Sincoo Electronics Technology Co., Ltd. as the same company, SinCo Singapore claims such in its motion. *See* Mot. at 5 (asserting that the companies "are identical and share the same Chinese

convenience, SinCo China and the affiliated companies shall hereinafter be collectively referred to as the "SinCo China entities."

Currently pending before the Court is SinCo Singapore's motion for a preliminary injunction. SinCo Singapore asks that *all* Defendants (both the SinCo China entities and the individuals) and those acting in concert with them be prohibited from: (1) using SinCo Singapore's trademarks or trademarks confusingly similar; (2) using the words "SinCo," "Sincoo," or "XingKe" and/or using a certain "SinCo" or "XingKe" logo and/or using "any variations of phonetic equivalent, color, capitalization, or color use"; and (3) from transferring, encumbering, or disposing of any interest in certain real property located in San Jose, California – a place that appears to be used by SinCo China and/or the SinCo China entities to do business. Docket No. 54 (Prop. Order at 1).

Only Mr. Ng filed an opposition to SinCo Singapore's motion. He was also the only defendant to attend the hearing on SinCo Singapore's motion on October 25, 2018.

Having considered the papers submitted, as well as the oral argument of counsel and all other evidence of record, the Court hereby **GRANTS** the motion for a preliminary injunction.

## I.     FACTUAL & PROCEDURAL BACKGROUND

A.   SinCo Singapore's Version of Events

SinCo Singapore's version of events is as follows: SinCo Singapore is a company "with recognized expertise in the development, design, and sourcing of electronic components to U.S. companies." Andara Decl., Ex. C (Chee Decl. ¶ 4). It provides to its customers "a wide selection of quality silicone rubber keypads and components." Andara Decl., Ex. C (Chee Decl. ¶ 4). At one point in time, SinCo Singapore contracted with SinCo China "to manufacture components which SinCo [Singapore] had contracted and/or designed for U.S. customers." Andara Decl., Ex. C (Chee Decl. ¶ 8).

SinCo Singapore has registered trademarks for the word "SinCo" and the "SinCo" logo. *See* Andara Decl., Ex. C (Chee Decl. ¶ 6); Andara Decl. ¶ 14. SinCo Singapore initially allowed

---

name").

SinCo China to use its word mark and logo because SinCo China was "a contract manufacturer for [SinCo Singapore's] projects" and "because it helped provide [a] uniform appearance to foreign customers. The license [to Singapore China] was limited to the scope of work as a contract manufacturer [for SinCo Singapore]." Andara Decl., Ex. C (Chee Decl. ¶ 7).

The relationship between SinCo Singapore and SinCo China fell apart when the majority shareholder of SinCo China decided to sell his shares in SinCo China. "SinCo [Singapore] initially was interested in purchasing" the shares but, during due diligence,

> discovered multiple quality and health violations. When SinCo [Singapore] asked [SinCo China] to rectify these problems, it did not, and instead, by majority vote, the shares were sold to [a company by the name of] KOTL. No further contracts were entered into between SinCo [Singapore] and [SinCo China], who are now competitors on the open market, competing for the same or similar business in the U.S.

Andara Decl., Ex. C (Chee Decl. ¶ 10); *see also* Mot. at 4 (noting that the SinCo China shares were sold to KOTL in November 2015). After KOTL took over SinCo China, it purchased certain real property in San Jose, *see* Andara Decl., Ex. YY (grant deed, dated June 2016), which – apparently – was later used by SinCo China and/or the SinCo China entities to do business. *See, e.g.*, Andara Decl., Ex. I (Liew Depo. at 17-18) (in deposition taken as part of state court proceeding, Mr. Liew testifying that he was staying at the San Jose property while he was in the United States); Andara Decl., Ex. K (Ng Depo. at 106) (in deposition taken as part of state court proceeding, Mr. Ng testifying that he stayed at the San Jose property when he traveled to California).

Two of the individual defendants, Mr. Liew and Mr. Ng were, at one point in time, employees of SinCo Singapore. *See* Andara Decl. ¶ 27 *et seq.* (addressing Mr. Liew's employment with SinCo Singapore; testifying that Mr. Liew's employment began in June 2013); Andara Decl. ¶ 19 *et seq.* (addressing Mr. Ng's employment with SinCo Singapore; testifying that Mr. Ng's employment began in June 2003). While Mr. Liew and Mr. Ng were working for SinCo Singapore, they began to try to steal SinCo Singapore's U.S. customers for SinCo China. They also continued to try to steal customers after leaving SinCo Singapore's employment (in March

3

and June 2017). *See* Andara Decl. ¶¶ 42-43 (asserting that Mr. Liew resigned in March 2017 and Mr. Ng resigned in June 2017). Both before and after they were employed by SinCo Singapore, Mr. Liew and Mr. Ng – as well as the other individual defendant, Mr. Tjoa – falsely claimed to customers that they were representatives of SinCo Singapore when in fact they were working for the benefit of SinCo China.[3] *See, e.g.*, Andara Decl., Ex. C (Chee Decl. ¶ 19).

Starting in January 2017, SinCo China began to file trademark applications with the USPTO, trying to get trademarks for the word "SinCo" and the "SinCo" logo.[4] These applications were largely abandoned; others were suspended. *See* Andara Decl. ¶ 15. SinCo China also began to file trademark applications trying to get trademarks for the word "XingKe" and the "XingKe" logo. Some of the applications were abandoned but some are still "live."[5] *See* Andara Decl. ¶ 15.

B.  Mr. Ng's Version of Events

Mr. Ng's version of the events, not surprisingly, differs. His version of the events is as follows: SinCo Singapore and SinCo China were "two highly intertwined companies that operated for many years sharing the same core name ('Sinco')." Opp'n at 1. The companies even had some common ownership, at least indirectly. *See* Opp'n at 1; *see also* Mot. at 4 (noting that SinCo China is owned in part by a Hong Kong entity (SinCo Holdings Groups Pt Ltd.) and that the Hong Kong entity has three individual shareholders, one of whom (Bryan Lim) owns SinCo Singapore); SAC ¶¶ 12, 16 (indicating the same).

Although the companies were intertwined, they were also separate. For example, while SinCo Singapore had certain U.S. companies as customers, some of those companies were also independently customers of SinCo China. *See* Opp'n at 1-2. Also, even though Mr. Ng had, *e.g.*, paystubs using the "SinCo" core name, he was an employee of SinCo China, and not SinCo

---

[3] According to SinCo Singapore, Mr. Liew and/or Mr. Ng made multiple trips to the United States to steal SinCo Singapore customers, including in July 2016, December 2016, January 2017, and August 2017. *See* Mot. at 4, 6, 8-9.

[4] KOTL applied for a U.S. trademark for "SINCO" even earlier – in September 2016. *See* Mot. At 9.

[5] Apparently, SinCo China successfully registered trademarks for the "SinCo" logo in *China*, but SinCo Singapore was able to get these trademarks nullified in April and May 2018. *See* Mot. at 10.

4

Singapore. *See* Opp'n at 3.

SinCo Singapore and SinCo China began to have a dispute after "Xu Shugong sold his majority of shares [in SinCo China] to a company called KOTL [a SinCo Singapore competitor] in 2015." Opp'n at 1.

SinCo China now no longer uses the "SinCo" core name and instead uses the name "XingKe." *See* Opp'n at 1 n.1 (noting that "[m]ost of the key events in this lawsuit occurred when [SinCo China] operated under the SinCo Electronics (Dongguan) name"); Andara Decl. ¶ 10 (testifying that, in March 2017, SinCo China began to notify its customers that it would be operating as XingKe).

The Court notes that SinCo Singapore takes issue with much of Mr. Ng's version of the events – *e.g.*, that Mr. Ng was never a SinCo Singapore employee, that SinCo China had an independent relationship with the U.S. customers of SinCo Singapore, etc. However, for purposes of the pending motion, the disputed facts are not that material. That is, the disputed facts – while they might ordinarily go to the likelihood of success on the merits – are not that significant because Mr. Ng's opposition is not predicated on the disputed facts and/or likelihood of success on the merits but rather is based on other grounds (*e.g.*, issue preclusion, abstention, vague and overbroad preliminary injunction, lack of irreparable harm, etc.).

C. <u>State Court Proceedings</u>

Based on its version of the events, SinCo Singapore brought the instant action in September 2017. The main claims asserted are trademark infringement and related claims.

However, about a year before SinCo Singapore initiated this lawsuit, it filed a lawsuit against SinCo China, Mr. Ng., and Mr. Liew in state court for, *inter alia*, breach of contract and trade secret misappropriation. More specifically, the state court action was filed in October 2016.

In the state court action, SinCo Singapore successfully obtained a preliminary injunction against Mr. Liew in June 2017. *See* Andara Decl., Ex. A (Liew preliminary injunction).

Approximately a later, in August 2018, SinCo Singapore successfully obtained a preliminary injunction against Mr. Ng. *See* Andara Decl., Ex. B (Ng preliminary injunction). The preliminary injunction against Mr. Ng prohibited him:

- From "using or disclosing the prices charged by [SinCo Singapore] to customers located in California" (until February 28, 2019, the last day of any relevant eighteen-month purchase cycle);
- From "representing himself as [SinCo Singapore's] employee," a restriction applicable to "all communications directed to, and all interactions with, employees or contractors of companies located in California";
- From "sending any electronic mail communications with the word 'Sinco' in the message or in any electronic mail addresses";
- From "using business cards that include the word 'Sinco'";
- From using SinCo Singapore's trademarks registered in the United States, a restriction applicable to "all communications directed to, and interactions with, employees or contractors of companies located in California."

Andara Decl., Ex. B (Order at 8). The state court's preliminary injunction order expressly stated that that "[n]othing in this preliminary injunction shall prevent [Mr. Ng] from identifying his employer as Xingke Electronics." Andara Decl., Ex. B (Order at 8).

## II. DISCUSSION

A. Notice

Federal Rule of Civil Procedure 65(a) provides that a "court may issue a preliminary injunction *only on notice to the adverse party*." Fed. R. Civ. P. 65(a) (emphasis added). In the instant case, SinCo Singapore seeks a preliminary injunction against all Defendants; at the hearing, the Court questioned SinCo Singapore as to whether it had given notice of the preliminary injunction motion to all Defendants. Based on the then-existing record, it appeared that notice had been given to Mr. Ng (the only defendant who has appeared in this action) but there was no indication that notice had been given to any other defendant, including SinCo China.[6]

At the hearing, SinCo Singapore represented that it had given some form of notice to all

---

[6] The Court acknowledges that SinCo Singapore secured an entry of default against SinCo China prior to filing the motion for a preliminary injunction. Nevertheless, that does not mean that SinCo Singapore was relieved of its obligation to give notice of the motion to SinCo China.

6

Defendants – *e.g.*, by email. The Court ordered SinCo Singapore to provide evidence to support its claim of notice.

SinCo Singapore has now provided a declaration to support its claim of notice. *See* Docket No. 84 (Trevino Decl.). The declaration reflects that SinCo Singapore gave email notice to SinCo China (on September 28, 2018, and October 19, 2018, *i.e.*, prior to the hearing on the preliminary injunction motion). Although there is no indication that notice of the preliminary injunction motion was given specifically to Mr. Tjoa or the SinCo China entities, the Court finds that the email notice on SinCo China constitutes sufficient notice on Mr. Tjoa and the SinCo China entities – the former because he is the CEO of SinCo China and the latter because of their close relationship with SinCo China. However, at this juncture, there is an insufficient basis to impute notice on Mr. Liew. There is no indication that he is a high-level employee of SinCo China such that notice on SinCo China would fairly be known by him. That being said, as a practical matter, any lack of notice on Mr. Liew is not significant because the Court is ordering a preliminary injunction that will cover the above defendants, as well as those acting in concert with them, which would naturally include Mr. Liew.

B. State Court Preliminary Injunction

According to Mr. Ng, the Court should deny SinCo's motion for a preliminary injunction (at least as to him) based on preclusion grounds. More specifically, Mr. Ng notes that, in the state court action, the state court already issued a preliminary injunction against him in August 2018. *See* Andara Decl., Ex. B (Ng preliminary injunction).

This argument, however, is not compelling because, among other things, the preliminary injunction issued by the state court is clearly directed to conduct in California only, and, here, SinCo Singapore seeks a broader injunction – implicitly applicable nationwide. Although it appears that most of the U.S. customers that SinCo China allegedly tried to steal are based in California, one seems to be based in Massachusetts and, presumably, SinCo Singapore also has other non-California-based customers.

C. Traditional Preliminary Injunction Test

> A party seeking a preliminary injunction must meet one of two variants of the same standard. Under the original *Winter* standard, a party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). Under the "sliding scale" variant of the *Winter* standard, "if a plaintiff can only show that there are 'serious questions going to the merits' – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied."

*All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017).

        1.      <u>Likelihood of Success on the Merits/Serious Questions Going to the Merits</u>

Regarding the likelihood of success on the merits, Mr. Ng does not really challenge SinCo Singapore's position that, at the very least, there are serious questions going to the merits. At most, he seems to assert that a preliminary injunction is not necessary because SinCo China no longer uses "SinCo" anymore and uses "XingKe" instead, which is a sufficiently different term that there will be no consumer confusion. Mr. Ng underscores that even the state court's preliminary injunction order allowed him to still use "XingKe."

Mr. Ng's position has some merit. That is, even if the Chinese characters for "SinCo" and "XingKe" are exactly the same, this case was not filed in China and is focused on U.S. customers of SinCo Singapore. There is no concrete evidence that the U.S. customers have knowledge of Chinese and, therefore, the question is whether a U.S. customer would find the English words "SinCo" and "XingKe" confusingly similar. While there may be some phonetic similarities between the words, the similarities are minor from the perspective of an English speaker, *cf.* Mot. at 15 (asserting that "the words 'Sin' and 'Xing' sound identical when pronounced by a *Chinese* speaker, despite the different spelling") (emphasis added); also, the English spellings are sufficiently different that customer confusion seems unlikely. This same analysis applies to the "SinCo" and "XingKe" logos, even taking into account that the logos bear some similarities (*e.g.*, the first syllable in green and the second in red).

At the hearing, SinCo Singapore argued that allowing Mr. Ng to use "XingKe" would, in fact, cause consumer confusion because the Court must consider the context in which Mr. Ng has used and would continue to use "XingKe," as well as the context in which SinCo China and the

8

other defendants have used and would continue to use the term. For example, SinCo Singapore contends that, if one of its customers were to look at SinCo China's website as it currently stands, the customer would likely think that "XingKe" (as the company is now named) is the same company as SinCo Singapore, or at least is related to SinCo Singapore, based on, *e.g.*, the pictures displayed on the website and the way that the company describes its history. SinCo Singapore also contends that some of its U.S. customers have Chinese-speaking employees.

SinCo Singapore's concerns, however, can easily be addressed by having Mr. Ng – as well as the remaining defendants – use a disclaimer. That is, Mr. Ng and the remaining defendants may use "XingKe" (as well as the "XingKe" logo) so long as they include a disclaimer that XingKe is not affiliated in any way with SinCo Singapore. Such a disclaimer should be included on, *e.g.*, websites and written communications to customers; moreover, a disclaimer should also be provided in oral communications.[7] Notably, at the hearing, SinCo Singapore acknowledged that a disclaimer would largely address its concerns, and Mr. Ng made no claim that a disclaimer would be unduly burdensome. (He simply questioned how effective a disclaimer would be, at least if given only by him.)

While the Court, therefore, shall permit use of "XingKe" (as well as the "XingKe" logo) on the condition described above, it shall enjoin Mr. Ng and the remaining defendants from using "SinCo" and "Sincoo" (or "SinCoo"). The use of "SinCo" would clearly engender consumer confusion and, as it appears that SinCo China and the related entities no longer use the word "SinCo," a preliminary injunction barring use of the term should not be any burden on the Defendants.[8] As for "Sincoo" (or "SinCoo"), because the term is extremely similar to "SinCo," both in spelling and phonetically, the Court also finds a reasonable likelihood of consumer confusion to justify a preliminary injunction.

---

[7] For *oral* communications, the Court requires a disclaimer only where reasonable. For example, once a customer is orally informed that Defendants have no affiliation with SinCo Singapore, the Court does not expect Defendants to repeatedly make the disclaimer to the same customer in subsequent oral communications.

[8] Of course, Defendants are only barred from identifying or describing themselves (or their products or services) as being "SinCo." They may still use "SinCo" as part of the disclaimer described above. Also, they may still refer to "SinCo" if they are identifying or describing SinCo Singapore itself (or SinCo Singapore's products or services).

### 2. Irreparable Injury/Balance of Hardships

As for irreparable injury, Mr. Ng's basic argument is that damages are an adequate remedy for SinCo Singapore because any injury is all in the past – *i.e.*, because SinCo China no longer uses "SinCo" and uses "XingKe" instead. However, it is not clear that SinCo China and/or the remaining defendants do not still use the confusingly similar word "Sincoo" or "SinCoo" (*e.g.*, in a website name) and it is possible that use of "XingKe" may in context be confusing (absent a disclaimer). That being the case, SinCo Singapore has sufficiently established a likelihood of irreparable injury (*e.g.*, loss of goodwill and/or reputation), or at least a balance of hardships that tips strongly in its favor.

### 3. Summary

For the foregoing reasons, a preliminary injunction against Defendants is warranted but not to the extent sought by SinCo Singapore. Defendants are barred from using the terms "SinCo" and "Sincoo" (or "SinCoo") to identify or describe themselves or their products or services. However, to the extent SinCo Singapore has asked that the preliminary injunction also cover any variations of, *e.g.*, phonetic equivalent, that is premature as there is no indication that Defendants are using any additional terms that might be phonetic equivalents. To the extent SinCo Singapore has asked that the preliminary injunction also cover any variations of color, capitalization, or color use, that is not necessary as Defendants are barred from using "SinCo" and "Sincoo" (or "SinCoo").

The Court shall not require SinCo Singapore to post a bond as the limited preliminary injunction being ordered by the Court poses no real burden on the defendants at issue.

### D. Fraudulent Transfer

Finally, the Court addresses SinCo Singapore's request that, as part of the preliminary injunction, the Court enjoin all Defendants from transferring, encumbering, or disposing of any interest in certain real property located in San Jose, California – a place that appears to be used by SinCo China and/or the SinCo China entities to do business. Docket No. 54 (Prop. Order at 1); *see also Harley-Davidson Credit Corp. v. Monterey Motorcycles, Inc.*, No. 5:12-cv-01864 EJD, 2012 U.S. Dist. LEXIS 53192, at *7 (N.D. Cal. Apr. 16, 2012) (stating that, "[a]lthough pure

10

economic loss alone is not normally sufficient to the issuance of a TRO, the possibility that a defendant will dissipate assets which could satisfy a judgment can constitute irreparable harm").

That request for relief is denied for several reasons.

First, there is no indication that any defendant owns the real property at issue. Although it appears that SinCo China's majority shareholder, KOTL, owns the property, KOTL is not a part to this lawsuit.

Second, "[a] party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009). Here, SinCo Singapore has failed to adequately show a likelihood of dissipation of the claimed assets or other inability to recover monetary damages. In its brief, SinCo Singapore states that "[t]he Ninth Circuit has cited the 'international aspect' of a defendant's business as a factor in favor of a finding that a defendant will dissipate assets." Mot. at 23 (citing *Reebok Int'l, Ltd. v. Marnatech Enters.*, 970 F.2d 552, 560 (9th Cir. 1992)). But that is not clear from the Ninth Circuit opinion, as opposed to the district court opinion. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 737 F. Supp. 1521, 1527 (S.D. Cal. 1990) ("Due to the international aspect of the defendants['] business, the Court is concerned that unless the assets are frozen, defendants may hide their allegedly ill-gotten funds."). And in any event, even if Defendants' "international status" was a factor, it could hardly be the *sole* reason to support an asset freeze as otherwise asset freezes would be routine in cases once there is an international defendant.

///
///
///
///
///
///
///
///

11

### III. CONCLUSION

For the foregoing reasons, the Court grants SinCo Singapore's preliminary injunction. Defendants, as well as those acting in concert with them, are barred from using the terms "SinCo" or "SinCoo" (including in any logo) to identity or otherwise describe themselves or their products or services. Defendants, in addition to those acting in concert with them, are permitted to use the term "XingKe" (including in any logo) so long as they include a disclaimer that Defendants are not affiliated in any way with SinCo Singapore. As discussed above, written disclaimers are required as well as reasonable oral disclaimers.

**SinCo Singapore shall immediately serve a copy of this order on all Defendants and, within a week of the date of this order, file a proof of service establishing how service was effected on each Defendant.**

This order disposes of Docket No. 54.

**IT IS SO ORDERED**.

Dated: October 30, 2018

_____
EDWARD M. CHEN
United States District Judge