LAEL D. ANDARA (SBN 215416)
MICHELLE G. TREVINO (SBN 315304)
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street, Suite 500
Redwood City, CA 94063-2052
Telephone:   (650) 364-8200
Facsimile:   (650) 780-1685
Email: lael.andara@rmkb.com
       michelle.trevino@rmkb.com

*Attorneys for Plaintiff*
SINCO TECHNOLOGIES PTE, LTD.

JEFFREY L. FAZIO (SBN 146043)
YI YAO (SBN 292563)
DEHENG LAW OFFICES, PC
7901 Stoneridge Drive, No. 208
Pleasanton, CA 94588
Telephone: (925) 399-5856
Facsimile: (925) 397-1976
Email: jfazio@dehengsv.com
       yyao@dehengsv.com

*Attorneys for Defendant*
NG CHER YONG AKA CY NG, MUI LIANG TJOA, and XINGKE ELECTRONICS (DONGGUAN) CO., LTD.

JAMES CAI (SBN 200189)
BRIAN A. BARNHORST (SBN130292)
SAC ATTORNEYS LLP
1754 Technology Dr., Suite 122
San Jose, California 95110
Telephone: (408) 436-0789
Facsimile: (408) 436-0758
Email: jcai@sacattorneys.com
       bbarnhorst@sacattorneys.com

*Attorneys for Defendant*
Liew Yew Soon aka **Mark Liew**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SINCO TECHNOLOGIES PTE LTD., <br><br> Plaintiff, <br><br> v. <br><br> SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS TECHNOLOGY CO., LTD.; SINCOO ELECTRONICS TECHNOLOGY CO., LTD.; MUI LIANG TJOA (an individual); NG CHER YONG AKA CY NG (an individual); and LIEW YEW SOON AKA MARK LIEW (an individual), <br><br> Defendants. | CASE NO. 3:17CV5517 EMC <br><br> **UPDATED JOINT CASE MANAGEMENT STATEMENT** <br><br> Date:      **March 28, 2019** <br> Time:     **10:30 a.m.** <br> Courtroom: **5, 17th Floor** <br><br> [Sec. Amend. Complaint: **February 23, 2018**] |

Plaintiff SINCO TECHNOLOGIES PTE, LTD. ("SinCo") and Defendants Ng Cher Yong aka Cy Ng ("Mr. Ng"), Mui Liang Tjoa ("Mr. Tjoa"), Mark Liew ("Mr. Liew") and Xingke Electronics (Dongguan) Co., Ltd. ("Xingke")[1] (collectively, "Parties") jointly submit this updated Joint Case Management Statement and Proposed Order in accordance with Court's Minute Entry of **October 25, 2018** (Dkt. No. 83), **January 17, 2017** Standing Order for All Judges of the Northern District of California, and Civil Local Rule ("L.R."), rule 16-9. The Parties previously appeared before this Court for Case Management Conference on **October 25, 2018**.

I.   **JURISDICTION, VENUE, AND SERVICE**

This Court has subject matter jurisdiction over SinCo's Lanham Act claims under 15 U.S.C. §1051, *et seq*. This Court has jurisdiction over the subject matter of this action under the Judicial Code, 28 U.S.C. §§1331 (a federal question) and 1338(a) and (b) (Acts of Congress relating to trademarks), the Lanham Act, 15 U.S.C. §1121, et seq., and principles of supplemental jurisdiction. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2), (c) and §1400(a). The nucleus of facts giving rise to Plaintiff's claims occurred in this jurisdiction and the United States ("U.S").

This is the second action brought by SinCo; the first action was brought on **October 28, 2016** in the Superior Court of California, County of Santa Clara, Case No. 16-cv-301867 (the "State Action"). The State Action is based on breach of contract and trade secret claims.

The initial Complaint was filed on **September 22, 2017** and amended on **November 7, 2017** after being reassigned to Judge Edward M. Chen. (Dkt. 1, 13, 14.) SinCo filed the Second Amended Complaint on **February 23, 2018**, and Mr. Ng answered **March 16, 2018**. (Dkt. Nos. 23, 33.) On **November 1, 2018**, Mr. Tjoa filed its Answer to SinCo's Second Amended Complaint. (Dkt. No.87.) On **November 16, 2018**, Mr. Liew filed its Answer and Counterclaims to SinCo's Complaint. (Dkt. No.99.) On **January 29, 2019**, Xingke Electronics (Dongguan) Co. Ltd. filed its Answer and Counterclaims to SinCo's Second Amended Complaint. (Dkt. No.135.)

---

[1] Sinco Electronics (Dongguan) Co. Ltd. changed its name to Xingke Electronics (Dongguan) Co. Ltd. in March of 2017.

On **February 13, 2019**, Defendants declined SinCo's offer to stipulate to SinCo's proposed Third Amended Complaint. On **February 19, 2019** Plaintiff filed Motion for Leave to File Third Amended Complaint. (Dkt.No.143.) This motion is set for hearing on **March 28, 2019**.

On **December 7, 2018**, Plaintiff filed a Motion to Dismiss Defendant Mark Liew's Answer and Counterclaim to Complaint. (Dkt No. 105.) That motion is reset for hearing on **April 16, 2019** before Judge Edward M. Chen.

On **February 7, 2019**, before Judge Laporte, an unsuccessful settlement conference in this Action was held at the USDC Northern District of California, San Francisco Courthouse that had been ordered on **November 15, 2018.** (Dkt. No.97.)

On **November 14, 2018**, Judge Chen issued an Order of Reference to Magistrate Judge for Discovery. (Dkt. No. 96.) On **November 30, 2018** Discovery Hearing was set in San Francisco, Courtroom G, 15th Floor before Chief Magistrate Judge Joseph C. Spero. (Dkt. No.100.)

On **January 9, 2019** Judge Joseph C. Spero issued an Order Regarding Protocol for Discovery of Electronically Stored Information in Civil Litigation. (Dkt. No. 122.) On **January 11, 2019** Judge Joseph C. Spero issued an Order re Amending Stipulated Protective Order. (Dkt. No. 124.)

On **January 14, 2019**, Judge Joseph C. Spero issued SinCo Technologies Pte. Ltd.'s Order: Re Amending Stipulated Protective Order ("Amended Stipulated Protective Order") with some revisions made by the Court. (Dkt. No.124.)

On **March 20, 2019,** Judge Joseph C. Spero issued an Order Granting In Part and Denying In Part Motion For Sanctions and Vacating March 29, 2019 Motion Hearing. (Dkt. No.163.)

## II.   FACTS

*Sinco's statement:*  This is case arising out of Defendant Cher Yong Ng ("Mr. Ng"), Defendant Mark Liew ("Mr. Liew"), Defendant Mui Liang Tjoa ("Mr. Tjoa") and defendants entities SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS

1  (DONGGUAN) CO., LTD; XINGKE ELECTRONICS TECHNOLOGY CO., LTD.; SINCOO

2  ELECTRONICS TECHNOLOGY CO., LTD. ("Electronics DG")[2] conspiring to steal Plaintiff

3  SINCO TECHNOLOGIES PTE LTD.'s ("SinCo") United States ("U.S.") customers by falsely

4  and deceptively using SinCo's U.S. trademarks, tradesecrets and employees to divert business.

**TRADEMARK USE**. SinCo began operations in Singapore in 1995 and began using the SinCo word mark and logo within a year. SinCo contracted with the factory that later became Electronics DG to do the manufacturing of electronic components and parts it helped develop and design for U.S. customers. SinCo provided Electronics DG a limited license to use of its trademark on packaging and for other uses in the scope of the work being done for SinCo, for example, to facilitate drop shipping and other logistical issues (as is common in the industry).

**LICENSE.** As the years progressed SinCo's founder and owner, recognizing that Electronics DG did the majority of SinCo's manufacturing, personally invested as a minority owner in the entity. Thereafter, in 2000-2003 SinCo decided the volume of production at Electronics DG and the frequency of U.S. customers' requests to visit the facility required on-site oversight and interface capabilities by SinCo. Stationing SinCo engineers on site at the contract manufacturer, SinCo could more readily make changes and address customers concerns, as SinCo maintained the relationship. To help facilitate and capitalize on this on-sight presence, SinCo expanded the scope of the license to Electronics DG to use the SinCo name on the factory so that U.S. Customers visiting the SinCo embedded employees would see uniformity between the development and manufacturing aspects of SinCo. The license for Electronics DG to use the SinCo mark never extended beyond the P.R.C. SinCo continued to maintain the U.S. relationships and would receive purchase orders from U.S. customers directly. Thereafter, SinCo would negotiate separately with Electronics DG to have the parts made under a separate purchase order. After Electronics DG's conspiracy was revealed, Electronics DG changed the English name on the factory from SinCo to XingKe (phonetic equivalent). As confirmed in Mr. Ng's and Mr.

---

[2] Cy Ng defined SINCO ELECTRONICS (DONGGUAN) CO., LTD. as "Electronics DG," in his declaration of **March 22, 2017,** in the state action.

Tjoa's testimony, the Chinese characters for the company SINCO ELECTRONICS (DONGGUAN) CO., LTD. and XINGKE ELECTRONICS (DONGGUAN) CO., LTD. are identical. XINGKE ELECTRONICS (DONGGUAN) CO., LTD. is the same entity as Electronics DG doing business under the phonetic equivalent of its English name in an attempt to sidestep U.S. trademark laws, while keeping the same colors as SinCo's trademark to deceive and divert SinCo's customers. The Trademark office in the P.R.C also invalidated Electronics DG's attempt to use SinCo's trademarks beyond the scope as a contract manufacturer.

**PASSING OFF BY DEFENDANTS.** Electronics DG, Mr. Tjoa, Mr. Liew and Mr. Ng have used three variations of SinCo's trademarks, all at the same address: (SinCo/SinCoo/XingKe). The addition of an "o" to SinCo, contradicts Defendants' assertion that Electronics DG ever had the right to the mark "SinCo," beyond the scope of work. And when contacted Sincoo admitted this was an improper use.



**P.R.C. TRADEMARK.** Unknown to SinCo until the State Action, Electronics DG filed for a trademark on the SinCo word mark and logo in P.R.C. Electronics DG attempted a similar strategy after SinCo initiated the State Action, filing no less than 15 applications in the United States Patent and Trademark Office ("USPTO") for the SinCo word mark and logo in the U.S., which have all been abandoned or suspended. Two of the applications are suspended due to fraud[3] on the USPTO in Opposition No. 91243086. It was revealed to the USPTO that Electronics DG filed two applications for the mark "xingke" in which Electronics DG fraudulently used the identity of Miriam Paton in the filing and prosecution of the two "xingke" marks, and forged Xu Shugong's signature in Electronics DG's Answer to SinCo's Opposition, which SinCo was led to

---

[3] On **October 26, 2018**, Michelle G. Trevino (counsel for SinCo) filed a declaration detailing the discovery that: (1) applications nos. 87/658,522 and 87/658,544 falsely indicated as being filed by Miriam Paton (Ex. A – Miriam Paton's Declaration confirming improper use of her identity), and forgery of Xu Shugong's signature on Electronics DG's Answer to SinCo's Opposition, filed on **September 26, 2018** (Ex. B is USPTO's Order requesting DG explain the fraudulent use of Miriam Paton's identity and Xu Shugong's capacity to sign on behalf of DG). (ECF 84.)

believe was both ill and had no role in Electronics DG since at or around 2016. SinCo also challenged the P.R.C trademark wherein Electronics DG perjured itself by claiming to have first designed the SinCo Logo before SinCo, who began using the mark in 1996. The perjury was revealed by the design contract between Electronics DG and Dongguan Humen Yuan Su Computer Graphic Design Service Business which was dated **July 1, 2015**. On **April 26, 2018** and **May 4, 2018**, Electronics DG's P.R.C. trademarks (Registration Nos. 8607396 and 8607476) were nullified pursuant to Article 31, Paragraphs 1 and 2 of Article 45 and Article 46 of the P.R.C. pre-amended Trademark Law based on "[Electronics DG's] misappropriation, registration and use of the trademark "SinCo (with device)" without authorization from [SinCo] have severely infringed the prior copyright and other legitimate rights and interests of the [SinCo]."

**CONSPIRACY**. In 2015-2016, U.S. customers brought up safety and quality concerns in the form of audits. At that time SinCo considered an outright acquisition of the factory and land, provided they could address the quality and working conditions and obtained certain documents. Electronics DG in an attempt to avoid the significant cost of addressing these concerns began conspiring with Mr. Ng and Mr. Liew to divert SinCo's business to Electronics DG and planned to sell the company out from under SinCo. Electronics DG and Mr. Ng were able to steal accounts from SinCo leveraging the SinCo trademarks as early as **August 21, 2015**, and with this success sold Jinlong Machinery & Electronics Co., Ltd. ("KOTL") a majority interest in Electronics DG through a holding company. Mr. Tjoa (president of KOTL and Xingke) and KOTL's purchase price was not limited to the factory and related assets, but was in substantial part focused on the acquisition of SinCo's: marks, trade secret information, customers and embedded employees.

Mr. Tjoa (as the new CEO of Electronics DG) and Mr. Ng directed Mr. Liew to travel to the U.S. in July of 2016 to capture the SinCo business for Electronics DG. Mr. Liew falsely told SinCo he was traveling to the U.S. on vacation, a fact contradicted by his VISA application. SinCo's U.S. customers having never met with Mr. Liew or Mr. Ng in the U.S., questioned SinCo as to this change in protocol. SinCo began to investigate. After meeting with several U.S. customers as "SinCo," Mr. Liew and Mr. Tjoa were successful in converting business to

1  Electronics DG. SinCo initiated this lawsuit.

2  **INFRINGEMENT**. While employees of SinCo and without their knowledge or consent,
3  Mr. Liew and Mr. Ng first entered the United States on **July 18, 2016** and **January 5, 2017,**
4  respectively. Mr. Liew and Mr. Ng had never traveled to the U.S. previously in the scope of their
5  employment as SinCo maintained sales staff stationed in the U.S. and Singapore that facilitated
6  those relationships. Mr. Liew and Mr. Ng were accompanied not by SinCo sales representatives,
7  but by *sales representatives of Electronics DG (Now Xingke.)* Mr. Tjoa and Mr. Ng were in
8  California meeting with SinCo's U.S. customers, on or about **August 6, 2017**. Although
9  according to Mr. Ng, his new employer stopped using the SinCo mark in P.R.C. on or about
10 **March 15, 2017**, Mr. Ng continued to use his SinCo business card and email address
11 communicating with SinCo's U.S. customers, even though he claimed he was XingKe.Even
12 before this action was filed, and while still employed by SinCo, Electroncis DG, Mr. Tjoa and
13 Mr. Liew converted an existing legacy project with SinCo and a Mountain View company worth
14 tens of millions in annual revenue away from SinCo. It is no surprise that Mr. Liew had been
15 previously working on that project months as an employee of SinCo, as was the case with another
16 SinCo customer out of the Boston area that also switched to Electonics DG. The tooling that
17 SinCo had purchased from Electrocnis DG was never returned, but was instead used to support
18 and impoperly retain the diverted U.S. contracts to Electronics DG.

19 Electronics DG and Mr. Tjoa could not have succeeded without the facilitation of Mr. Ng
20 and his subordinate Mr. Liew, as they leveraged the fact that SINCO's U.S. clients knew them as
21 SinCo employees.

22 *Defendants' statement*:

23 **1.  Statements by Defendants CY Ng, ML Tjoa, Mark Liew and Xingke**
24 **Electronics (Dongguan) Co Ltd ("Xingke")**

25 *(i) The Creation of the Joint Venture*

26 Plaintiff Sinco Technologies Pte Ltd ("Sinco Singapore") was founded by Bryan Lim in
27 1995 in Singapore and served as a supplier of various electronic components to many western
28 firms. Sinco Singapore itself was and is primarily a sales and marketing company without any

manufacturing facility. Since the very beginning, after obtaining purchase orders from customers, Sinco Singapore would outsource to different manufacturing factories in Asia including China.

Defendant Sinco Electronics (Dongguan) ("Sinco China"), now known as XINGKE ELECTRONICS (DONGGUAN) CO., LTD ("Xingke"), was one of such manufacturing factories that Sinco Singapore used since early 2000s.

As a separate legal entity, Sinco China was registered in China in around 2005 by three individuals, including Bryan Lim as a minority shareholder and another gentleman (Mr. Xu) as a majority shareholder. Even though Sinco Singapore did not own any interest in Sinco China, they worked closely because Bryan Lim was a shareholder behind both.

Since the very beginning, the relationship between Sinco Singapore and Sinco China was intertwined, which was intentionally designed by Bryan Lim. In fact, Bryan Lim deliberated turned Sinco Singapore, Sinco China, and several other companies affiliated with Bryan Lim into a "joint venture", and even gave a name to the joint venture called "Sinco Group".

Since the very beginning, Bryan Lim and Sinco Singapore held themselves out to be a large, capable and sophisticated enterprise called the Sinco Group. The Sinco Group had multiple locations around the globe, including a headquarter sales office in Singapore (*i.e.* Sinco Singapore), companies in Hong Kong, Samoa, Taiwan, and manufacturing factories in China (*i.e.* Sinco China) and Malaysia. In reality, there was never a legal entity called the Sinco Group who served as the parent company or had the controlling ownership of the member companies. The grouping of so many different companies together was to create the joint venture that the Sinco Group was a world-wide leader in the industry and more importantly, it had its own manufacturing facilities. In this way, customers would feel that they were dealing with manufacturing factories directly without going through some middlemen, which was good for quality control and cost savings.

When the joint venture was operating, members including Sinco Singapore and Sinco China had joint control over the venture, they shared profits of the undertaking, and both of them had ownership interest in the joint venture. As a result, customers were led to believe that the Sinco Group was a top-tier enterprise in the industry with its own manufacturing facilities.

*(ii) The Signs and Consequences of the Joint Venture*

Bryan Lim and Sinco Singapore went to great lengths to ensure that Sinco China would always appear as part of the joint venture or the Sinco Group, including but not limited to:

- Sinco China was only a Chinese company and had an official Chinese name registered with the Chinese government. But when communicating with outside customers, its official English name became "Sinco Electronics (Dongguan) Co. Ltd." This name was used for more than ten years (from 2005 until 2017). The word "Sinco" was intentionally used to signal that Sinco China was part of the Sinco Group as Bryan Lim intended.
- For more than ten years since 2005, Sinco China used the "@sincocn.cn" email address and used "sincocn.cn" as its company website, further indicating that Sinco China was part of the Sinco Group.
- For more than ten years since 2005, Sinco Singapore required Sinco China and its employees to use Sinco Singapore's "Sinco" trademarks and logos for all internal or external purposes without any restrictions, making Sinco China appear as part of the Sinco Group.
- For more than ten years since 2005, Sinco Singapore's marketing materials including websites consistently listed Sinco China as its manufacturing facility under the common and joint name of "Sinco".
- For more than ten years since 2005, Sinco Singapore repeatedly informed customers that Sinco China was the manufacturing facility of the Sinco Group, and Sinco Singapore arranged frequent customer visits to Sinco China's factory in China and told customers that they were actually visiting the manufacturing facility of the Sinco Group.

As a result of this joint relationship, from the very beginning Sinco Singapore and Sinco China shared resources, technologies, and customers. For example, Sinco Singapore and Sinco China shared customers in a way that customers always believed that there was no distinction between Sinco Singapore and Sinco China. More importantly, Sinco Singapore gave an open-ended and free license to Sinco China to use the Sinco trademarks since 2005.

As a result, the "Sinco" trademark and the customers belonged to the joint venture, not

Sinco Singapore. Because Sinco China was a member of the joint venture, it had the full right to use the trademarks and develop customers. Consequently, Sinco China neither infringed Sinco Singapore's trademarks nor stole trade secrets from Sinco Singapore.

*(iii) Mr. Cy and Mr. Liew as Employees of the Joint Venture*

As part of the joint venture, both companies acted together to hire engineers. For example, when Sinco China had trouble hiring qualified engineers, and Sinco Singapore stepped in and tried to recruit and hire local Singapore engineers for Sinco China. Defendants Mr. Ng and Mr. Liew were hired in this manner. The initial employment agreements were executed between these engineers and Sinco Singapore, making them appearing as employees of Sinco Singapore. However, they were stationed in Sinco China's factories, controlled by Sinco China, and paid by Sinco China. Because Sinco Singapore and Sinco China acted in concert closely, the hired engineers could not tell the distinction between Sinco Singapore and Sinco China.

Because of the intertwined relationship where the two companies extensively shared technical information, customers, and employment recruitment, and formed a joint venture, any "trade secret" that was allegedly stolen by Mr. Ng and Mr. Liew belonged to the joint venture, not Sinco Singapore. Accordingly, these two engineers did not breach any employment terms with Sinco Singapore.

*(iv) The End of The Joint Venture*

The joint venture continued on till Sinco China's ownership experienced a change in 2016 when the majority shareholder (Mr. Xu Shugong) of Defendant became very ill and wanted to retire. Eventually all shares of Sinco China – including Bryan Lim's minority shares – were sold to Jinlong Machinery & Electronics Co. Ltd (also known as KOTL) in around 2016.

After the ownership change, Sinco China decided to shift its business strategies by spending more effort on developing and serving its own customers, and to reduce the reliance on the business from Sinco Singapore. Sinco China always had the freedom to go after its own clients and indeed had its independent business since the very beginning. This means that Sinco China became a major competitor of Sinco Singapore in many markets, which was the reason for the two ongoing lawsuits in the U.S.

As a result, the relationship between them has deteriorated since 2016. Sinco Singapore

for the first time started to allege that Sinco China was infringing its trademarks, stealing its customers, breaching various agreements, and engaging in unfair competition.

Despite that Sinco Singapore already started legal actions against Sinco China which signaled the end of the joint venture, Sinco Singapore still had some unfinished orders with Sinco China. Because Sinco Singapore could not find a replacement factory in time, Sinco China agreed to honor its promise and completed the orders for Sinco Singapore.

In early 2017, because of the lawsuits, Sinco China decided to disassociate itself with Sinco Group and to rebrand itself. Sinco China in 2017 changed its company English name from "Sinco Electronics (Dongguan) Co. Ltd." to "Xingke Electronics (Dongguan) Co. Ltd." Sinco China also filed a trademark application for the "Xingke" trademark.

Because the joint venture began to disintegrate in 2016 and 2017 due to the ownership change in Sinco China, Sinco Singapore started to take a wide range of unfair and illegal actions as an attempt to tarnish Sinco China's reputation and interfere with Sinco China' relations with its customers, by making false reports about Sinco China's violations of environmental regulations to Sinco China's customers as well as Chinese governmental authorities. In 2017 Sinco Singapore also brought a lawsuit in China against Sinco China but voluntarily dismissed its lawsuit because it lacked evidence to continue its frivolous case against Snco China. Sinco Singapore also chose to file two separate lawsuits in the U.S. including the present one.

Xingke Electronics (Dongguan) Co. Ltd ("Xingke") filed an Answer and Counterclaims in the federal action on January 29, 2019 in response to Sinco Singapore's Second Amended Complaint, including counterclaims against Sinco Singapore for unfair business practices, commercial defamation, and interference with economic interest.

Mr. Liew incorporates much of the foregoing statement by his co-defendants. The history of the relationship between Sinco Singapore and Sinco China (aka "Electronics DG") is complicated, but the essence is this: Originally, Sinco China was a manufacturer for Sinco Singapore and other companies, and operated under another name. Mr. Lim, the owner of Sinco Singapore, acquired a controlling interest in Sinco China; the apparent purpose was to control the quality (and, presumably, cost) of goods being manufactured for Sinco Singapore. Sinco

Singapore affixed the name "Sinco" to Sinco China; Sinco China's email domain name was "sincocn.cn". Sinco Singapore affirmatively sought to lead its customers to believe that Sinco China and Sinco Singapore were one and the same so that, as Plaintiff states above, "U.S. Customers visiting the SinCo embedded employees would see uniformity between the development and manufacturing aspects of SinCo." Mr. Lim subsequently sold his controlling interest in Sinco China. At that time or soon thereafter, the relationship between Sinco Singapore and Sinco China soured. Mr. Liew (and Mr. Ng) have been caught in the crossfire.

Like Mr. Ng, Mr. Liew was and is an engineer working for Sinco China at its factory in China. Although his employment agreement was nominally with Sinco Singapore, Mr. Liew understood that he was actually employed by Sinco China; being employed through Sinco Singapore merely allowed him to be eligible for the country of Singapore's retirement plan. He worked in China, not in Singapore; he was placed there—embedded—by Sinco Singapore. Mr. Liew's employment agreement specifically provides, "You will be required to work in DongGuan, Sinco Electronics Technologies Co. Ltd." His supervisor there was Mr. Ng. Mr. Liew's understanding had always been that Sinco Singapore and Sinco China were part of the whole, and he did not meaningfully distinguish between the two entities; they were part of the Sinco Group.

Plaintiff asserts above that "Mr. Liew . . . used three variations of SinCo's trademarks"; however, the only example shown with Mr. Liew's name is a business card for Sinco China provided to him by Sinco Singapore. Mr. Liew denies that he ever misled anyone regarding whom he worked for, and denies that he conspired with Mr. Ng or Mr. Tjoa as described above.

## III.   LEGAL ISSUES

*SinCo's Issues:*

Although there is a dispute as to Mr. Ng's and Mr. Liew's Employment status, given the evidence and testimony, SinCo believes it is a question of law. Mr. Ng and Mr. Liew does not agree.

Assuming Mr. Ng and Mr. Liew was an employee of SinCo what was the scope of their

license to use the trademark? Was it limited to the scope of their employment?

Mr. Tjoa (as the new CEO of Electronics DG) with Mr. Ng and Mr. Liew travelled to the U.S. to capture the SinCo business for Electronics DG.

*Defendant's Issues:*

The main legal issue is whether the actions taken by Sinco Singapore and Sinco China created a "joint venture". When the trademarks and related claims are viewed in the context of the joint venture, Sinco China and other individual defendants should not be held liable for the alleged wrongdoings.

## IV.   MOTIONS

*SinCo's Potential Motions*:

SinCo has filed and obtained an entry of default by the clerk against Electronics DG on **August 24, 2018.** (Dkt. No. 51.) and against SinCoo on December 7, 2018 .[Dkt No 104.] SinCo will move for Default Judgment under the Hague Convention Article 15. Mr. Ng's counsel made a special appearance on behalf of Electronics DG in State Court and the testimony of Mark Liew and Mr. Ng confirm that defendant entities have actual notice of both lawsuits. A hearing for a Motion for Leave to File Third Amended Complaint is scheduled to be heard by Judge Chen on **March 28, 2019** in this action, same day as the case management conference.

*Defendant's Potential Motions*:

Defendants plan to file a motion seeking relief from a recent discovery order by Judge Spero mandating that Sinco China must offer any employees to be deposed by Sinco Singapore.

## V.   AMENDMENT OF PLEADINGS

Sinco's statement

No further amendments are anticipated.  There may be amendments required once the P.R.C. entities are served with the Second Amended Complaint.

## VI.   EVIDENCE PRESERVATION

*Sinco's statement*:

The parties have reviewed the Guidelines Relating to the Discovery of Electronically

Stored Information ("ESI Guidelines") Counsels for Mr. Tjoa and SinCo filed a Joint Stipulation and Order Re: Discovery Hearing on January 4 2019 Re: Defendant Tjoa Discovery and was granted by the court on **January 9, 2019**. (Dkt No. 123.) However, on **February 7, 2019**, the parties participated in a settlement conference in the Federal Action and no resolution had been agreed upon in the Federal Action, or part thereof. Representatives of SinCo and Electronics DG have agreed to meet informally to discuss resolution of this matter.

There has been an offer to avoid duplicate of discovery by using the Bates numbered evidence exchanged in the State Action. This trademark litigation was in part initiated based on information produced in those records. There doesn't seem to be some disconnect in terms of the obligations of Mr. Ng who testified that he no longer has the Dell Vostro computer he was using during the timeframe of many of the complained of incidents. Mr. Ng gave the computer to his current employer, Electronics DG or XingKe, and claims that he does not have possession and control of the device. Furthermore, he testified that he has been provided a new computer that he has been using since **October of 2017**, but to date no responsive information has been produced in response to written discovery propounded in the State Action.

SinCo anticipates a motion to compel to be forthcoming in the Federal Action. SinCo continues to meet and confer with counsel for Mr. Tjoa as to previous requests.

*Defendant's statement*:

On March 19, 2019, Mr. Ng filed a Declaration with the court explaining the status involving a previously used but now dead Dell computer. An independent vendor was hired in December 2017 to recover data from the computer, and documents with their original metadata from the recovered Dell computer were produced on March 6, 2019. Mr. Tjoa also complied with a discovery stipulation, and completed his production of documents on March 20, 2019.

**VII. DISCLOSURES**

SinCo provided initial disclosures on **April 11, 2018**. Mr. Ng provided initial disclosures on **April 19, 2018**.

///

## VIII. DISCOVERY

The parties agree that the presumptive discovery limits set forth in the Federal Rules of Civil Procedure should apply.

- Individual and Rule 30(b)(6) depositions count against the total time, but third- party and expert depositions do not.
- Depositions requiring an interpreter count as half time.

## IX. CLASS ACTIONS

This case is not a class action.

## X. RELATED CASES

This is the second action brought by SinCo; the first action was brought on **October 28, 2016** in the Superior Court of California, County of Santa Clara, Case No. 16-cv-301867 (the "State Court Action"). On **January 11, 2018**, SinCo's Motion to Amend the Complaint was granted, wherein asserting (1) Breach of Contract, (2) Breach of the Covenant of Good Faith and Fair Dealing, (3) Unfair Business Practices, (4) Intentional Interference with Contractual Relations, (5) Misappropriation of Trade Secrets, and (6) Civil Conspiracy.

## XI. RELIEF

***SinCo's statement***:   SinCo seeks the relief requested in its Second Amended Complaint, including:

- Entry of judgment holding Defendants liable for infringing SinCo's trademarks;
- An order preliminarily and permanently enjoining Defendants and any other persons or entities acting in concert with Defendants from engaging in future acts of infringement, contributory infringement, or induced infringement of SinCo's trademarks;
- An order that all packaging or other business records using the SinCo trademark in violation of SinCo's trademarks, and all means by which such copies may be reproduced, be impounded and destroyed or otherwise reasonably disposed of;
- Damages adequate to compensate SinCo for Defendants' acts of trademark infringement, including actual and exemplary damages, lost profits, infringer's profits, or statutory damages in amounts to be proven at trial;
- An award of SinCo's attorneys' fees, costs of suit, and pre-judgment and post-judgment interest; and

- Any available legal or equitable relief that the Court may deem proper.

*Defendants' statement*:

XII. Defendants seek to deny all claims and reliefs sought by Sinco Singapore. In addition, Defendants seek declaratory judgments that the "Xingke" trademark be registered under Sinco China's name. Defendants also seek damages and reliefs from Sinco Singapore for its unfair business practices, commercial defamation, interference with economic interests, and any other available legal and equitable relief that the Court may deem proper.

**SETTLEMENT AND ADR**

*SinCo's statement*:

On **February 7, 2019**, the parties participated in a settlement conference in the Federal Action and no resolution had been agreed upon in the Federal Action, or part thereof.

XIII. **CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

SinCo declined to proceed before a Magistrate Judge. (Dkt. No. 11.)

XIV. **OTHER REFERENCES**

This case is unsuitable for reference to binding mediation, a special master, or the Judicial Panel on Multidistrict Litigation.

XV. **NARROWING OF ISSUES**

The parties currently have no proposals to narrow the issues.

XVI. **EXPEDITED TRIAL PROCEDURE**

The parties do not agree to handling via the Expedited Trial Procedure of General Order 64, Attachment A.

XVII. **SCHEDULING**

Sinco states that all the parties under this action are either has been served of a Default has been entered by the Court clerk. The case has to be proceeded for Trial.

Defendants state that either the default against several defendants are defective, or service of process on the foreign defendants have not been achieved according to the requirements of the Hague Convention. Moreover, substantial discovery needs to be completed due to the long history and complicated issued concerning the companies and individuals. This is why the parallel state action is now being designated as a "Complex" case.

### XVIII. Trial

SinCo expects that a jury trial in this action would take four to five days.

Defendants expect that a jury trial in this action would take ten to fifteen days.

### XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

SinCo filed its Certification of Interested Entities or Persons under Civil Local Rule 3-15 and FRCP 7.1 on **November 30, 2017**. (Dkt. No. 18)  Mr. Ng filed his Certifications on **March 21, 2018**. (Dkt. No. 35.)   The parties certified that there are no other parties to identify under Civil Local Rule 3-15.

Dated:  March 21, 2019                              ROPERS, MAJESKI, KOHN & BENTLEY

By: */s/ Lael D. Andara*
   LAEL D. ANDARA
   Attorneys for Plaintiff
   SINCO TECHNOLOGIES PTE LTD

Dated:  March 21, 2019                              DEHENG LAW OFFICES, PC

By: */s/ Jeffrey L. Fazio*
   JEFFREY L. FAZIO
   *Attorneys for Defendant*
    NG CHER YONG aka CY NG, MUI
    LIANG TJOA and Xingke

Dated:  March 21, 2019                              SAC ATTORNEYS LLP

By:    */s/ Brian Barnhorts*
   JAMES CAI
   *Attorneys for Defendant*
   LIEW YEW SOON aka MARK LIEW