

**DeHeng Law Offices**

<u>**BY ECF**</u>

April 15, 2019

The Honorable Joseph C. Spero
United States Magistrate Judge
United States District Court
Northern District of California
450 Golden Gate Avenue, Courtroom G
San Francisco, CA 94102

    Re:   *SinCo Technologies Pte Ltd. v. Sinco Electronics (Dongguan) Co. Ltd.*
      No. 17-cv-5517-ECM-JCS

Dear Judge Spero:

   As I was leaving the office last Friday afternoon, I was surprised to receive an ECF notice indicating that counsel for Plaintiff SinCo Techologies Pte Ltd. ("Sinco"), Lael Andara, had sought leave to file a motion for reconsideration of Your Honor's order dated April 9, 2019. After skimming the letter in which Mr. Andara made that request (the "Letter"), it appeared one more of many complaints to which I had already grown accustomed to seeing in this litigation, despite having been involved with it for just over a month. Accordingly, I decided not to respond to it.

   Having read the Letter more carefully over the weekend, I stand by that decision with respect to most of the Letter. There is, however, another aspect of the Letter to which I must respond. Near the end, Mr. Andara makes the following claim:

    On **April 3, 2019**, counsel for the parties met to discuss several discovery issues that were the subject of the Joint Letter that encouraged the Court as to cooperation. [ECF 185] That meeting was attended by my paralegal Manali Shah and DEFENDANTS' counsel Mr. Zhu, Mr. Yao, and Mr. Fazio. At one point we were discussing the designation of materials pursuant to the protective order and I brought up Mr. Tjoa's deposition transcript. Mr. Fazio asked if we had asked for

Silicon Valley Office address: 7901 Stoneridge Dr #208, Pleasanton, CA 94588
http://www.dehenglaw.com/    Phone: (925) 399 5856    Fax: (925) 397 1976

Beijing  Shanghai  Shenzhen  Guangzhou  Tianjin  Jinan  Dalian  Changchun  Shenyang  Changsha  Xi'an
Chongqing  Hangzhou  Wuhan  Zhengzhou  Nanjing  Fuzhou  Taiyuan  Urumqi  Hefei  Chengdu  Kunming
Zhuhai  Suzhou  Wenzhou  Wuxi  Dongguan  Sanya  Paris  New York  The Hague  Brussels  Dubai  Silicon Valley

the re-designations before filing our Motion for Sanctions and I replied we had on several occasions. I indicated that I had specifically asked Leslie Williams on several occasions on the status of the designations. ***Mr. Fazio then began discussing that he had reviewed the Tjoa deposition transcript and indicated that it shouldn't have been designated Attorney's Eyes only. I then asked why he would submit a declaration to the Court indicating that it was. [ECF 167-1.] Mr. Fazio who had already been hostile and rude leading up to this point, was visibly angry, hurled profanity at me directly, I will not repeat here. I had a concern that Mr. Fazio was going to escalate this matter into a physical altercation, so the subject was changed and we moved on***. When I spoke to my paralegal after the meet and confer she was also concerned that the hostility in the room may have escalated to a physical altercation.

Letter at 5 (emphasis added).

Mr. Andara's story is both false and misleading. At ***no*** time did I "hurl[] profanities"—at Mr. Andara or anyone else—nor did I do ***anything*** that would give ***any*** reasonable person a basis for believing that I would "escalate this matter into a physical altercation." The very notion is completely and utterly ridiculous—not only because I have litigated for nearly three decades without anyone ever leveling such an accusation, but because the parties achieved more during that 90-minute meet-and-confer session than they have since this litigation began more than two years ago, which is hardly consistent with the portrait Mr. Andara paints of me being a hair's breadth away from physically assaulting him. As discussed below, five attorneys representing both sides and their clients attended that meeting, which resulted in numerous agreements that constituted more progress regarding discovery in this case than has been made for quite some time—which were memorialized in a stipulation that was adopted by the Court that is wholly inconsistent with the false portrayal that appears in the Letter.

The omission of important facts from the is also misleading. On March 22, 2019—two days after Your Honor issued an order requiring the highest-ranking officers of Sinco and Xingke to attend in-person meet-and-confer sessions—Mr. Andara requested that counsel and their respective clients attend such a session to discuss Xingke's interrogatory responses and its production of documents on April 5, 2019. I explained that the date Mr. Andara selected conflicted with the pre-existing dates the parties had agreed upon for the depositions of Jon Chee and Bryan Lim, Sinco's Chief Operating Officer and Chief Executive Officer, on April 4 and 5, respectively. I also explained that there were several other issues that the parties needed to discuss, including

The Honorable Joseph C. Spero — April 15, 2019 — Page 3

> **(1)** the amount of attorney fees and costs Sinco is attributing to the actual research and drafting of its motion for sanctions; **(2)** Sinco's responses to Defendants' written discovery requests (which were not timely served and fail to comply with Sinco's obligations to respond fully and in good faith); and **(3)** Sinco's improper designation of materials as Confidential and Attorneys' Eyes Only ("AEO") (e.g., marking every page of its discovery responses as AEO – including General Statements and General Objections).

*See* email exchange between L. Andara and J. Fazio dated Mar. 26-29, 2019 (attached hereto as **Exhibit A**) at 5.

Ultimately, the parties agreed to meet and confer with their respective clients on April 3, the day before the Chee deposition was scheduled to begin. *See id.* at 1-3. Accordingly, my colleagues (Messrs. Zhu and Yao) met with Mr. Andara and his paralegal, Ms. Shah, at Mr. Andara's office from 5:00 to 6:00 p.m. on April 3, and from 6:00 to 6:30 p.m. with our respective clients (Messrs. Tjoa, Chee, and Lim) for the purpose of having them confirm or disaffirm the agreements counsel had reached during the first hour of the session.

The meeting was productive ***and*** quite contentious at times, but not for the reason Mr. Andara claims in his letter. Mr. Andara began by asking whether Defendants agreed with the dollar amount set forth in Mr. Andara's most recent declaration in support of the award of attorney fees Your Honor ordered them to pay: **$24,907.50**. *See* Dkt. No. 175 ¶ 17. I explained that Defendants did not agree with that amount for two related reasons: **(1)** Your Honor's order states that Sinco was to "only include those fees and costs incurred by the actual research and drafting of the Motion, and associated costs," Dkt. No. 163 ¶ 6; and **(2)** the amount Mr. Andara claimed he had incurred as of the date the motion was filed on February 15, 2019, was **$6,080.00**, Dkt. No. 140-1 ¶ 51, which ***increased*** by **$10,940.50**—to **$16,984.50** for the ***same period*** (*i.e.,* through February 15, 2019), *see* Dkt. No. 175 ¶ 14 ***plus*** an additional **$7,923.00** for the period between March 1 and March 7, 2019 (the date on which he filed Sinco's reply in support of the motion), *see id.* ¶15.

When asked to explain how he could have been nearly $11,000 ***more*** than the $6,080 he claimed to have incurred as of February 15 under penalty of perjury, Mr. Andara pointed to paragraph 51 of his original declaration (Dkt. No. 140-1), which says "[t]he cost to draft this motion was in excess of **$6,080** USD" and claimed that the words "in excess of" justified the additional $10,904.50 he claimed for the same billing period when he filed his second declaration (Dkt. No. 175). In other words, Mr. Andara contended that "in excess of **$6,090**" actually meant ***$16,984.50*** and that he incurred an ***additional $7,923.00*** while drafting the reply brief, for a total of ***$24,907.50.***

The Honorable Joseph C. Spero — April 15, 2019 — Page 4

Although the position Mr. Andara had taken was incredible, we ultimately resolved the matter informally for the sole purpose of avoiding further expenditures of time, money, and judicial resources on it.[1]

We then turned to the next issue: Mr. Andara's claim that Xingke had included duplicates in its production of documents to make it seem as though Xingke had produced a larger volume of documents than it actually had.

I explained that there was nothing sinister about the existence of duplicates in Defendants' production. Sinco had requested the same documents from each Defendant and, as I understood it, duplicates had been produced because they were found on the computer used by Mr. Ng and on the computer used by Mr. Liew because their separate existence had independent evidentiary significance.

Mr. Andara became annoyed, insisting that the "MD5 hash codes" that were included in Defendants' production "proved" that the duplicates were the same documents that Messrs. Ng and Liew had produced from their laptop computers. Mr. Yao explained that he had produced a set with Xingke Bates numbers because Sinco had requested the same documents from Xingke, and that he believed Defendants were obligated to produce them in response to those requests as well.

When I realized what had happened, I immediately agreed that duplicates should not have been included with separate Bates numbers unless they had been found in a separate location maintained by Xingke, and that duplicates would not be included in future productions unless the same document actually was found in more than one location.

Nonetheless, Mr. Andara became needlessly argumentative again when the subject turned to Sinco's designation of entire documents as "Highly Confidential—Attorneys' Eyes Only," such as discovery responses, including the caption pages, instructions, and general objections. Mr. Andara sought to brush aside the issue, stating repeatedly that Sinco had marked portions of documents that were truly confidential with yellow highlighting and that should be enough to resolve the matter. I asked whether he was taking the position that the Stipulated Protective Order allows designating as confidential any portion of a document that is not actually confidential, and Mr. Andara reluctantly admitted that it does not. Yet he became even more annoyed when I asked that he remove improper designations and refrain from doing so in the future.

---

[1] Three days later, the parties agreed to a total of **$9,750.00**, which was memorialized in the Stipulation and Order Re: In-Person Meet and Confer of April 3, 2019 (with Clients). *See* Dkt. No. 188 at 4:20-24.

The Honorable Joseph C. Spero — April 15, 2019 — Page 5

Rather than simply agreeing to comply with the Stipulated Protective Order, Mr. Andara pointed to the materials he moved to place under seal in connection with Sinco's motion for sanctions in an attempt to equate them with the materials he had designated improperly as confidential. I began to explain that I would not have designated those materials had the of the of the customers than the parties had deemed them confidential, but Mr. Andara interrupted me repeatedly, arguing that I should not have sought to maintain their confidentiality if I did not believe they actually were confidential. Each time I tried to finish what I was trying to say, Mr. Andara continued to interrupt, insisting that he knew what I was going to say before I said it.

The situation was truly vexing, but it did not even remotely resemble the portrait Mr. Andara paints in his Letter. Rather, as the Stipulation and Order pertaining to the April 3 meet-and-confer session reflects, we moved on to resolve issues pertaining to the Xingke employee depositions, the data on Mr. Ng's laptop computer, and Mr. Tjoa's responses to interrogatories, and agreed to review other matters as wel. And when the clients joined the meeting a few minutes later, the parties confirmed the terms of their agreement—except for one issue: Mr. Andara sought a stipulation by which the Court would appoint a Special Master to take over all discovery-related matters in this litigation and Mr. Andara advised us that his client had vetoed his idea.

In addition, after the meet-and-confer session Defendants resolved other issues about which Mr. Andara had been complaining. For example, although Mr. Andara has been unable to effectuate service on Xingke pursuant to the Hague Convention, Xingke has offered to appear in the parallel state-court action voluntarily and to withdraw the counterclams against Sinco in this action that are not directly related to trademark infringement.

Despite all this, Mr. Andara has chosen to focus on my decision to take lunch during the deposition of Sinco's COO, Mr. Chee. According to Mr. Andara's version of the story, after I asked him whether he would like to break for lunch, he

> turned to the witness and asked if he wanted to continue or break for lunch and he indicated he was good to proceed. I advised Mr. Fazio we are good to proceed further. Mr. Fazio responded that we were taking lunch now. I asked why did he inquire if we wanted to break from lunch then? In response he again hurled an explicative noun at me directly, I will not repeat here. . . .

Letter at 5.

In actuality, when I asked whether it was a good time to take lunch, Mr. Andara indicated that we would continue with the deposition without

taking a break, notwithstanding that, in addition to Mr. Yao and me, the court reporter and the videographer would have to continue for at least four more hours before the examination would conclude. That was not acceptable. But when I explained that we had to take lunch, Mr. Andara shot back angrily that I should not have asked the question if I was going to take lunch anyway.

Mr. Andara can be quite exasperating, apparently because he does not understand that litigation is inherently confrontational and contentious, which may be why he appears to perceive any disagreement as a personal affront. But there appears to be another reason Mr. Andara is so difficult to get along with, which became evident during the Chee deposition.

At the outset of his deposition, Mr. Chee appeared to be a bit nervous, but he was cooperative. As the deposition went on, however, Mr. Chee became uncooperative to the point of being obstreperous, and Mr. Andara only encouraged his behavior in an apparent attempt to trade on patently false claims that the examination was "unfair" and "abusive."

At the outset of the deposition I asked whether Mr. Chee had ever been involved in any judicial proceedings other than the present litigation.  He admitted that he had been in some trouble in his youth, which resulted in a two-year sentence. When asked again about involvement in any other judicial proceeding, Mr. Chee denied any such involvement and testified that he had not only been a student at Stanford University, but had done so well at Sinco after his father-in-law (Sinco CEO, Bryan Lim) had appointed him COO in 2014, that he took over day-to-day management of the company in 2017.

When pressed further about his experience at Stanford, however, Mr. Chee stated that he had not received a degree from the university; rather, he had received a "certificate" after purportedly attending for nearly a decade. When asked about a news report that mentioned community college, but not Stanford, however, Mr. Chee began to complain that the questioning was becoming "abusive" and that he felt that he was being "mocked"—assertions with which Mr. Andara was quick to agree.

I then asked Mr. Chee why the news report stated that he had been sentenced to five and a half years in prison—not two years, as he had testified earlier—for defrauding four individuals out of approximately $1 million. Although he admitted that the report was accurate, Mr. Chee continued to complain that he was being "harassed" because he had already testified about

the matter. Again, Mr. Andara agreed with his client and threatened to call Your Honor if I continued the purported "harassment."[2]

Yet, when asked why he had not mentioned that he had petitioned for bankruptcy when asked whether he had been involved in any other judicial proceedings, Mr. Chee testified that the bankruptcy proceedings were somehow a part of the criminal proceedings and vehemently denied that he had filed the petition to prevent his victims from recovering the money he obtained from them, claiming that he did not repay them because he simply did not have the money. When asked about documents establishing that he had spent nearly $10,000 to rent a Ferrari in Los Angeles at the time his victims were suing him and that he petitioned for bankruptcy years before the criminal proceedings, Mr. Chee complained that the *questions* were somehow unfair and amounted to harassment.

Finally, when asked about being appointed as COO in 2014 notwithstanding that Singapore law makes it a crime punishable by a two-year term in prison and a $10,000 fine for an undischarged bankrupt to become a director, officer, or directly or indirectly manage a Singapore company, *see* Singapore Companies Act § 148(1), Mr. Chee claimed that the law did not apply to him because he was simply "helping his father-in-law." And when I pressed further for answers to straightforward questions, Mr. Chee either claimed not to understand the question or would deliberately answer a different question—all the while complaining that he was being "harassed," which Mr. Andara not only endorsed, but threatened to call Your Honor about. Again, however, he never did.

As frustrating as all of this was, had Mr. Andara not submitted the Letter last Friday, I would not have brought any of this to Your Honor's attention—at least not unless and until there was a legally significant reason for doing so. Because Mr. Andara has chosen to complain about being "forced" to take a lunch break and to claim with a straight face that I am putting him at risk of assault and battery, however, the record simply had to be set straight.

---

[2] At one point, Mr. Andara stood up and proclaimed that he was going to call Your Honor and proceeded to walk out of the deposition with his client. I responded by reminding Mr. Andara that he was free to contact Your Honor, but *not* on an *ex parte* basis. I repeated that admonition each time Mr. Andara stated his intention to contact the Court about the supposed "abuse" Mr. Chee was forced to endure. As far as I know, however, Mr. Andara made no actual contact.

**The Honorable Joseph C. Spero — April 15, 2019 — Page 8**

At bottom, I have worked hard to put this litigation on track again so the parties can focus on the merits of this litigation (or the lack thereof) rather than on childish bickering and complaints that litigators sometimes have disagreements with their adversaries. Those efforts appear to be working, despite the difficulties I have encountered with Mr. Andara. Indeed, as my experience with Mr. Andara's colleagues has demonstrated, not every encounter needs to involve an argument or a disagreement. *See generally* **Exhibit B** (email messages with J. Acheson of Ropers firm). And although I am certainly not suggesting that civility can or should be abandoned when disagreements do arise, it appears that Mr. Andara has submitted his Letter to Your Honor in an effort to use ordinary disagreements to gain a tactical advantage.

Sincerely,

Jeffrey L. Fazio



EXHIBIT A

**Subject:**    RE: Meet and confer
**Date:**    Friday, March 29, 2019 at 10:43:52 AM Pacific Daylight Time
**From:**    Andara, Lael D.
**To:**    Jeffrey L. Fazio
**CC:**    Trevino, Michelle G., Shah, Manali, Clay Zhu, Yi Yao, Riedell, Roxana
**Attachments:** image001.jpg, image002.jpg, image003.jpg, image004.jpg

Counsel,

Absolutely, that had been my hope when we were in person at Court yesterday.  I think that makes perfect sense.

**Lael Andara**
**Ropers Majeski Kohn & Bentley PC**
**Partner**
(650) 780-1714

**From:** Jeffrey L. Fazio [mailto:jfazio@dehengsv.com]
**Sent:** Friday, March 29, 2019 10:42 AM
**To:** Andara, Lael D.
**Cc:** Trevino, Michelle G.; Shah, Manali; Clay Zhu; Yi Yao; Riedell, Roxana
**Subject:** Re: Meet and confer

I think you've misunderstood my message. I'm not proposing that you ask your clients to change their travel plans. I proposed that *counsel* meet from 5:00 to 6:00 pm for the purpose of discussing all the issues to be addressed in the meet-and-confer session, *then* have our respective clients join at 6:00 pm to either approve or disapprove various aspects of our solutions (assuming we're able to reach agreement on any).

**Jeffrey L. Fazio**
Senior Attorney

Silicon Valley Office: 7901 Stoneridge Drive #208, Pleasanton, CA 94588
Tel: (+1) 925 399 5856  Fax: (+1) 925 397 1976  Web: www.dehenglaw.com

 DeHeng Law Offices

**From:** "Andara, Lael D." <lael.andara@rmkb.com>
**Date:** Friday, March 29, 2019 at 10:39 AM
**To:** "Jeffrey L. Fazio" <jfazio@dehengsv.com>
**Cc:** "Trevino, Michelle G." <michelle.trevino@rmkb.com>, "Shah, Manali" <manali.shah@rmkb.com>, Clay Zhu <czhu@dehengsv.com>, Yi Yao <yyao@dehengsv.com>, "Riedell, Roxana" <roxana.riedell@rmkb.com>
**Subject:** RE: Meet and confer

Counsel,

It is now 1:40 a.m. in the morning in Singapore, so I can't get a confirmation from my client, but I think we should be able to make the 5:00 p.m. time work.  We had discussed changing travel plans last night to try to start at 4:30 for the same reasons you articulated below, but I hadn't received confirmation.

**Lael Andara**
**Ropers Majeski Kohn & Bentley PC**
**Partner**
(650) 780-1714

---

**From:** Jeffrey L. Fazio [mailto:jfazio@dehengsv.com]
**Sent:** Friday, March 29, 2019 10:25 AM
**To:** Andara, Lael D.
**Cc:** Trevino, Michelle G.; Shah, Manali; Clay Zhu; Yi Yao; Riedell, Roxana
**Subject:** Re: Meet and confer

Counsel,

When you proposed April 3 we assumed that we would have time to accomplish our respective objectives. Scheduling a meet-and-confer at 6:00 pm poses a problem for two reasons. First, just two days ago, you complained about my sending you a draft of a Joint Letter to Judge Spero because your office ***closes*** at 6:00 pm. Second, Mr. Tjoa's schedule is very tight and must leave by 6:30 pm to attend to other matters.

We're willing to work with you on this, but we need to ensure that we get through ***all*** the issues to be discussed, including those I described in the email message I sent to you a couple of days ago.

Assuming we can agree on that, if we start the meet-and-confer session at around 5:00 pm so that we have addressed all the issues by 6:00 pm, leaving our respective clients to either approve or disapprove our proposed solutions, that may work.

Let me know if you agree and we will proceed accordingly.

Thank you.

**Jeffrey L. Fazio**
Senior Attorney

Silicon Valley Office: 7901 Stoneridge Drive #208, Pleasanton, CA 94588
Tel: (+1) 925 399 5856   Fax: (+1) 925 397 1976   Web: www.dehenglaw.com



---

**From:** "Andara, Lael D." <lael.andara@rmkb.com>
**Date:** Thursday, March 28, 2019 at 7:52 PM
**To:** "Jeffrey L. Fazio" <jfazio@dehengsv.com>
**Cc:** "Trevino, Michelle G." <michelle.trevino@rmkb.com>, "Shah, Manali" <manali.shah@rmkb.com>, Clay Zhu <czhu@dehengsv.com>, Yi Yao <yyao@dehengsv.com>, "Riedell, Roxana" <roxana.riedell@rmkb.com>
**Subject:** Re: Meet and confer

We can confirm for 6 pm at my office on April 3rd.

Sent from my iPhone

On Mar 28, 2019, at 6:22 PM, Jeffrey L. Fazio <jfazio@dehengsv.com> wrote:

> Counsel,
>
> As I mentioned as we were leaving today's hearing, Mr. Tjoa will be available for a meet-and-confer session on April 3, the date you proposed below. To ensure that Mr. Tjoa remains available on that date, and to allow him to make travel arrangements, please let us know at your first opportunity whether Sinco's highest-ranking officer will be available for the meet-and-confer session on April 3 as well.
>
> Thank you.
>
>
> **Jeffrey L. Fazio**
> Senior Attorney
>
> Silicon Valley Office: 7901 Stoneridge Drive #208, Pleasanton, CA 94588
> Tel: (+1) 925 399 5856   Fax: (+1) 925 397 1976   Web: www.dehenglaw.com



---

**From:** "Andara, Lael D." <lael.andara@rmkb.com>
**Date:** Wednesday, March 27, 2019 at 11:03 AM
**To:** "Jeffrey L. Fazio" <jfazio@dehengsv.com>, "Trevino, Michelle G." <michelle.trevino@rmkb.com>, "Shah, Manali" <manali.shah@rmkb.com>

**Cc:** Clay Zhu <czhu@dehengsv.com>, Yi Yao <yyao@dehengsv.com>, "Riedell, Roxana" <roxana.riedell@rmkb.com>
**Subject:** RE: Meet and confer

Counsel,

### Attorney's Fees

The Court's Order of **March 20, 2019** [ECF 163] stated:

> In light of the improper instructions not to answer and the refusals to answer, Mr. Tjoa is ordered to pay the reasonable attorney fees and costs incurred by Plaintiff in making this Motion. This will only include those fees and costs incurred in the actual research and drafting of the Motion, and associated costs. Plaintiff shall submit to the Court a declaration detailing such fees and costs, including time sheets, within ten days of this order. ***The parties shall meet and confer in an attempt to agree on the amount of attorney fees and costs. If they are unable to do so Mr. Tjoa may submit objections to the amount of the fee and cost bill within ten days of Plaintiff's filing of the fee and cost declaration.*** No further sanctions are warranted.

I have attempted to meet and confer with you prior to filing, but if you are refusing to do so this week, as is implied by your correspondence below, we will simply submit to the Court and advise accordingly.

### Meet and Confer

The Court's Order of March 20, 2019, added the requirement that the parties client's need to appear, but it did not otherwise displace the standing order that sets forth the following protocol:

> After attempting other means to confer on the issue (i.e. letter, phone call, e-mail) **any party may demand such a meeting on five (5) business days' notice**. The location of the meeting will alternate with the first location selected by counsel for Plaintiff, the second by counsel for Defendant, etc. Within five (5) business days of the lead trial counsels' meet-and-confer session, the parties shall provide a detailed Joint Letter to the Court, not to exceed five (5) pages without leave of Court. This Joint Letter shall include a description of every issue in dispute and, with respect to each such issue, a detailed summary of each party's final substantive position and their final proposed compromise on each issue. Upon receipt of the Joint Letter the Court will determine what future proceedings are necessary.

I requested this meet and confer on **March 22, 2019**, with two weeks' notice keeping in mind that we will have a Court reporter available on that day to create a record. Please be prepared to meet and confer on **April 5, 2019** after the deposition.  We can begin the proceedings earlier if you so need.  We can also conduct the meet and confer on **April 3, 2019,** after 3:00 p.m. at our office in Redwood City.

As for the issues you have added:

**(1)** the amount of attorney fees and costs Sinco is attributing to the actual research and drafting of its motion for sanctions;
That is addressed above.
**(2)** Sinco's responses to Defendants' written discovery requests (which were not timely served and fail to comply with Sinco's obligations to respond fully and in

good faith); and
Please identify the specific request and the issue as we did in our letter of **March 22, 2019**.
**(3)** Sinco's improper designation of materials as Confidential and Attorneys'
Eyes Only ("AEO") (*e.g.,* marking every page of its discovery responses as AEO –
including General Statements and General Objections).

See email of March 19, 2019 stating: As has been our practice in State and Federal Court we
highlight the customer name, contacts, projects, etc., that are AEO.  If these <mark>highlighted sections
are redacted the document can be shared with your client</mark>. This was also what we were referring
to in the **March 1, 2019** meet and confer that we filed as properly redacted in our Reply to the
Motion for Leave to Amend.


**Lael Andara**
**Ropers Majeski Kohn & Bentley PC**
**Partner**
(650) 780-1714

---

**From:** Jeffrey L. Fazio [mailto:jfazio@dehengsv.com]
**Sent:** Wednesday, March 27, 2019 10:45 AM
**To:** Andara, Lael D.; Trevino, Michelle G.; Shah, Manali
**Cc:** Clay Zhu; Yi Yao; Riedell, Roxana
**Subject:** Re: Meet and confer

Counsel,

Given that (a) the depositions of Messrs. Chee and Lim are being deposed on
April 4 and 5, respectively, we are unable to participate in a meet-and-confer
session on April 5 (which you requested less than a week ago, on March 22) for
two reasons. First, in light of the number of issues that must be addressed in
those depositions and the amount of preparation required for both, I am unable
to prepare for and participate in a meet-and-confer session the same day that
the Lim deposition will occur. Second, our client is unable to attend on April 5.
We are available, however, for an in-person meet-and-confer session during the
week of April 15.

In addition to the issues you have enumerated in your message (below), the
parties need to meet and confer about **(1)** the amount of attorney fees and costs
Sinco is attributing to the actual research and drafting of its motion for sanctions;
**(2)** Sinco's responses to Defendants' written discovery requests (which were not
timely served and fail to comply with Sinco's obligations to respond fully and in
good faith); and **(3)** Sinco's improper designation of materials as Confidential
and Attorneys' Eyes Only ("AEO") (*e.g.,* marking every page of its discovery
responses as AEO – including General Statements and General Objections).

There may be other issues about which the parties must meet and confer as well. If so, we will advise you of those issues as soon as we make that determination.

Please advise whether Sinco is available to meet and confer during the week of April 15 and, if so, the date and time Sinco proposes to begin the session.

As for the depositions of the Xingke employees, I will articulate Defendants' position in a separate message in a final effort to resolve the matter informally, and request that Sinco make a good-faith effort to do the same.

Thank you.


**Jeffrey L. Fazio**
Senior Attorney

Silicon Valley Office: 7901 Stoneridge Drive #208, Pleasanton, CA 94588
Tel: (+1) 925 399 5856   Fax: (+1) 925 397 1976   Web: www.dehenglaw.com
<image002.jpg>

---

**From:** "Andara, Lael D." <lael.andara@rmkb.com>
**Date:** Tuesday, March 26, 2019 at 9:16 AM
**To:** "Jeffrey L. Fazio" <jfazio@dehengsv.com>, Clay Zhu <czhu@dehengsv.com>, Yi Yao <yyao@dehengsv.com>
**Cc:** "Shah, Manali" <manali.shah@rmkb.com>, "Trevino, Michelle G." <michelle.trevino@rmkb.com>, "Riedell, Roxana" <roxana.riedell@rmkb.com>
**Subject:** Meet and confer

Counsel,

**<u>Meet & Confer</u>**

In my correspondence of **March 22, 2019**, I requested an in person meet and confer with our clients as mandated by the Court Order of **March 20, 2019**:

*Accordingly, in the event that there are any future discovery disputes in this case (other than disputes over attorney client privilege or attorney work product), lead trial counsel for the disputing parties, along with their clients (which, for the entity clients, shall be the highest-ranking officer in the company), shall meet and confer in person. The location of the meeting shall alternate, with the first meeting place to be chosen by the Plaintiff.*

The meet and confer requested on **March 22, 2019**, was requested for **April 5, 2019**, here in the United States.  The subject of the meet and confer was directed to the XingKe production and XingKe's responses to Interrogatories 1-8, 10-11, and 14-19.  A more detailed analysis of the issue is set out in the correspondence of March 22, 2019.  As previously mentioned Mr. Chee

will be appearing on behalf of SinCo.  Can you advise as to who will appear for Xingke?

**XingKe Depositions**

Pursuant to the Court's Order of **March 20, 2019**, we are required to provide the Court with a schedule of the depositions of the XingKe witnesses by no later than **March 27, 2019**.  [ECF 164] Can you advise on the status of the schedule so we can confirm our calendar?

Our correspondence of **March 22, 2019**, explained in great detail that after contacting the U.S. Consulate General and your reference to Planet Depo, the depositions cannot proceed in Hong Kong without violating local law, as none of the witnesses are U.S. citizens.  We would prefer to have these depositions conducted in the U.S. rather than Singapore if at all possible.  As a compromise, would you consider making the witnesses available in Hawaii, as it approximately the same flight as Singapore for the witnesses.

**Lael Andara**
**Ropers Majeski Kohn & Bentley PC**
**Partner**
1001 Marshall Street, Suite 500 • Redwood City • CA • 94063-2052
Office: (650) 364-8200 • Direct: (650) 780-1714
lael.andara@rmkb.com •Click for My BIO.





EXHIBIT B

**Subject:**      RE: SinCo v Liew et al
**Date:**         Tuesday, April 9, 2019 at 6:17:05 PM Pacific Daylight Time
**From:**         Acheson, Jennifer E.
**To:**           Jeffrey L. Fazio
**Attachments:** image001.jpg, image002.jpg, image003.jpg, image004.jpg, image005.jpg, image006.jpg,
               image007.jpg, image008.jpg, image009.jpg, image010.jpg

No problem. Thanks for your cooperation.

---

**From:** Jeffrey L. Fazio [mailto:jfazio@dehengsv.com]
**Sent:** Tuesday, April 09, 2019 4:47 PM
**To:** Acheson, Jennifer E.
**Cc:** Andara, Lael D.; Clay Zhu; Yi Yao
**Subject:** Re: SinCo v Liew et al

Hi Jennifer,

Sounds good. Thanks for taking care of the stip.

Best,


**Jeffrey L. Fazio**

Silicon Valley Office: 7901 Stoneridge Drive #208, Pleasanton, CA 94588
Tel: (+1) 925 399 5856   Fax: (+1) 925 397 1976   Web: www.dehenglaw.com

 DeHeng Law Offices


---

**From:** "Acheson, Jennifer E." <jennifer.acheson@rmkb.com>
**Date:** Tuesday, April 9, 2019 at 4:44 PM
**To:** "Jeffrey L. Fazio" <jfazio@dehengsv.com>
**Cc:** "Andara, Lael D." <lael.andara@rmkb.com>, Clay Zhu <czhu@dehengsv.com>, Yi Yao
<yyao@dehengsv.com>
**Subject:** RE: SinCo v Liew et al

Hi, Jeffrey,

Thanks for your prompt response. As we just discussed, I will prepare a stipulation for a date then.  Judge
Chen is not available to June 4-6 so your date range works.

Best,

Jennifer

**Jennifer E. Acheson**
**Ropers Majeski Kohn & Bentley PC**
Partner
☎ Office: (650) 364-8200 ☎ Direct: (650) 780-1750
🖶 Fax: (650) 780-1701 ✉ Email: jennifer.acheson@rmkb.com • Web Site: www.rmkb.com • My Profile



**San Francisco • Redwood City • San Jose • Los Angeles • New York • Boston**

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).
CONFIDENTIALITY NOTICE: This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 USC 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This communication may contain confidential and privileged material for the sole use of the intended recipient and receipt by anyone other than the intended recipient does not constitute a loss of the confidential or privileged nature of the communication. Any review or distribution by others is strictly prohibited. If you are not the intended recipient please contact the sender by return electronic mail and delete all copies of this communication.

**From:** Jeffrey L. Fazio [mailto:jfazio@dehengsv.com]
**Sent:** Tuesday, April 09, 2019 4:20 PM
**To:** Acheson, Jennifer E.
**Cc:** Andara, Lael D.; Clay Zhu; Yi Yao
**Subject:** Re: SinCo v Liew et al

Hi Jennifer,

I just tried to reach you, but got your voicemail. Just about any date between June 10 and 28 work for me, but it may be moot in any event. As we explained to Judge Chen recently, we are planning to amend Xingke's counterclaim and will likely do the same with Mark Liew's counterclaim – if we don't dismiss it entirely.

If you'd like to discuss it, let me know.

Best,

**Jeffrey L. Fazio**

Silicon Valley Office: 7901 Stoneridge Drive #208, Pleasanton, CA 94588
Tel: (+1) 925 399 5856  Fax: (+1) 925 397 1976  Web: www.dehenglaw.com

 DeHeng Law Offices

---

**From:** "Acheson, Jennifer E." <jennifer.acheson@rmkb.com>
**Date:** Tuesday, April 9, 2019 at 4:00 PM
**To:** "Jeffrey L. Fazio" <jfazio@dehengsv.com>
**Cc:** "Andara, Lael D." <lael.andara@rmkb.com>
**Subject:** SinCo v Liew et al

Mr. Fazio,

I don't think we've spoken yet.  I am assisting Lael Andara in this matter and left you a voicemail message re a stipulation to continue the new date the Court has assigned – April 18, 2019 – to our Motion to Dismiss.

Neither Lael nor I is available that day. The court has advised that I need to clear a new date with you.  Can I please speak with you about possible dates early June?

Please give me a call at 650-780-1750 at your earliest convenience.

Thank you,

Jennifer

**Jennifer E. Acheson**
**Ropers Majeski Kohn & Bentley PC**
Partner
☎ Office: (650) 364-8200 ☎ Direct: (650) 780-1750
🖷 Fax: (650) 780-1701 ✉ Email: jennifer.acheson@rmkb.com • Web Site: www.rmkb.com • My Profile

---



San Francisco • Redwood City • San Jose • Los Angeles • New York • Boston

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).
CONFIDENTIALITY NOTICE: This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 USC 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This communication may contain confidential and privileged material for the sole use of the intended recipient and receipt by anyone other than the intended recipient does not constitute a loss of the confidential or privileged nature of the communication. Any review or distribution by others is strictly prohibited. If you are not the intended recipient please contact the sender by return electronic mail and delete all copies of this communication.