LAEL D. ANDARA (SBN 215416)
MICHELLE G. TREVINO (SBN 315304)
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street, Suite 500
Redwood City, CA 94063-2052
Telephone: (650) 364-8200
Facsimile: (650) 780-1685
Email: lael.andara@rmkb.com
       michelle.trevino@rmkb.com

*Attorneys for Plaintiff*
SINCO TECHNOLOGIES PTE LTD.,

JEFFREY L. FAZIO (SBN 146043)
YI YAO (SBN 292563)
DEHENG LAW OFFICES, PC
7901 Stoneridge Drive, No. 208
Pleasanton, CA 94588
Telephone: (925) 399-5856
Facsimile: (925) 397-1976
Email: jfazio@dehengsv.com
       yyao@dehengsv.com

*Attorneys for Defendants*
NG CHER YONG AKA CY NG, MUI LIANG TJOA, LIEW YEW SOON AKA MARK LIEW, AND XINGKE ELECTRONICS (DONGGUAN) CO., LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SINCO TECHNOLOGIES PTE LTD.,<br><br>Plaintiff,<br><br>v.<br><br>SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS TECHNOLOGY CO., LTD.; SINCOO ELECTRONICS TECHNOLOGY CO., LTD.; MUI LIANG TJOA (an individual); NG CHER YONG AKA CY NG (an individual); and LIEW YEW SOON AKA MARK LIEW (an individual),<br><br>Defendants. | CASE NO. 3:17CV5517 EMC<br><br>**JOINT STATUS CONFERENCE STATEMENT**<br><br>Date: **April 26, 2019**<br>Time: **9:30 a.m.**<br>Courtroom: **5, 17th Floor**<br><br>[Sec. Amend. Complaint: February 23, 2018] |

Plaintiff SINCO TECHNOLOGIES PTE, LTD. ("SinCo") and Defendants Ng Cher Yong AKA Cy Ng ("Mr. Ng"), Mui Liang Tjoa ("Mr. Tjoa"), Liew Yew Soon AKA Mark Liew ("Mr. Liew") and Xingke Electronics (Dongguan) Co., Ltd. ("Xingke")[1] (collectively, "Parties") jointly

---

[1] Sinco Electronics (Dongguan) Co. Ltd. changed its name to Xingke Electronics (Dongguan) Co. Ltd. in March of 2017.

submit this Joint Status Conference Statement in accordance with the Court's Minute Entry of **April 1, 2019** [ECF 178], The Parties previously appeared before Judge Chen for a Case Management Conference on **March 28, 2019**.

I.  **FACTS**

The above-referenced case concerns trademark infringement and related federal and state torts. The plaintiff is SinCo Technologies Pte, Ltd., a Singaporean company. It initiated this lawsuit on **September 22, 2017**, a year after filing a related lawsuit in State Court. [ECF 1.] The following entities and persons were sued:

> **Sinco Electronics (Dongguan) Co., Ltd.,** a Chinese company, which also appears to use the name XingKe Electronics (Dongguan) Co., Ltd. ("DG"). A default was entered by the Clerk in the Action on **August 24, 2018**, and later set aside by stipulation on **December 19, 2018** [ECF 111] followed by an Answer and Counterclaims to the Second Amended Complaint filed by DG on **January 29, 2019** [ECF 135];
>
> **Mr. Ng**, an employee of DG and a former employee of SinCo appeared in this Action on **March 16, 2018** [ECF 33]; and
>
> **Mr. Liew**, an employee of DG and a former employee of SinCo who filed an answer with counterclaims against SinCo on **November 16, 2019** [ECF 99.]

In it's Second Amended Complaint, filed on **February 23, 2018**, SinCo added the following defendants to this case [ECF 23]:

> **XingKe Electronics Technology Ltd.,** a Chinese company, which is the renamed entity of SinCo Electronics (Dongguan) Co., Ltd., ("DG") who filed its answer counterclaim against SinCo on **January 29, 2019** [ECF 135];
>
> **Sincoo Electronics Technology Co., Ltd.**, (also alleged to be affiliated with SinCo China) thereafter a default was entered by the Clerk on **December 17, 2018 [ECF 110]**; and
>
> **Mr.Tjoa** (the CEO of XingKe) who filed an answer on **November 1, 2018** [ECF 87].

SinCo filed for leave to file its Third Amended Complaint to consolidate the state claims with this action based on the Defendants' counterclaims and add additional defendants on **February 19, 2019** [ECF 143.]  The matter is under submission to Judge Chen.

*SinCo's statement:*  This is a case arising out of Defendant Mr. Ng, Defendant Mr. Liew, Defendant Mr. Tjoa and Defendant entities XingKe [2] conspiring to steal Plaintiff SinCo's United States ("U.S.") customers by falsely and deceptively using SinCo's U.S. trademarks, tradesecrets and embedded employees to divert business.

Defendants Mr. Liew and Mr. Ng are former SinCo employees who, by virtue of their employment with and former association with SinCo, had specific knowledge of the value and goodwill of the SinCo Marks. DG was previously the contract manufacturer for SinCo under contract and was provided limited license to use the SinCo Marks within the scope of that work in addition to certain aspects of SinCo's trade secrets. Defendants are unlawfully using this knowledge by devising and operating an illegal scam to exploit for their personal benefit SinCo's name, trademarks, and business opportunities.

First, Defendants have brazenly approached existing SinCo customers in this judicial district, representing themselves as SinCo using the SinCo name, status as SinCo employees and trademarks to pass themselves off as Plaintiff and sell and displace existing projects that were developed by SinCo previously and upon which Defendants had worked at the direction of SinCo. This was initially done while Mr. Liew and Mr. Ng were still employees of SinCo, which facilitated the initial conversion of SinCo's U.S. customers, employees and trademarks. As a result of these unlawful activities, Defendants have succeeded in deceiving consumers into believing that they are the new management of SinCo and diverted SinCo's business.

*Defendants' statement*:

**All the preceding text was prepared by Sinco, not Defendants. Because of time constraints involved with the preparation of this Joint Status Conference Statement**

---

[2] Cy Ng defined SINCO ELECTRONICS (DONGGUAN) CO., LTD. as "Electronics DG," in his declaration of **March 22, 2017**, in the State Action.

**(Defendants did not receive Sinco's draft until the afternoon of April 17), Defendants have refrained from revising Sinco's text in favor of presenting the following statement of facts on behalf of Defendants**:

Sinco Singapore was founded by Bryan Lim, its Chief Executive Officer, in 1995 in Singapore and served as a supplier of electronic components for a number of large technology companies in the United States. Sinco Singapore itself was, and still is, primarily a sales and marketing company without sufficient facilities to manufacture the products itself. From the very beginning, Sinco Singapore would outsource the orders it received to specific companies that specialized in the manufacture of the products. Defendant Sinco Electronics (Dongguan) ("Sinco China"), which was founded in or about 1998 by two other companies—SinCo Holdings Group PTE, Ltd. (of which Mr. Lim owned approximately 18%) and Grand Fortune Electronics Technologies Co., Ltd., which also appears to have been owned by Mr. Lim—was one of the principal factories that worked with Sinco Singapore since the early 2000s.

Thus, although Sinco Singapore itself had no direct ownership interest in Sinco China, Sinco's founder and CEO (Mr. Lim) owned a substantial stake in the company and had a seat on its Board of Directors until the dispute that led to the present litigation arose in late 2016—after Mr. Lim's bid to buy Sinco China was rejected as too low and another company, Jinlong Machinery & Electronics Co, Ltd. (of which Mr. Tjoa is the Chief Executive Officer), bid successfully on the remaining shares.

Although Sinco and Sinco China were two distinct companies, for nearly 20 years they worked together on a variety of projects as part of the "Sinco Group." As the sales and marketing member of this group, Sinco Singapore had the initial contact with customers. The principal purpose of the Sinco Group was to create an impression that the "Sinco Group" was a worldwide leader in the industry that had its own manufacturing facilities, thereby quality control and cost savings. Thus, as part of its sales and marketing efforts, Sinco Singapore touted the Sinco Group as a large, sophisticated global operation whose headquarters was in Singapore and had thousands of employees in offices and factories in around the world.

In actuality, the Sinco Group was a loose network of several independently-owned and

operated companies whose operations and finances were separate and independent from one another, but shared profits and control of the Sinco Group as an enterprise. And although the aggregate number of employees reached into the thousands, Sinco Singapore had only a small fraction of that number of employees and had no real presence outside of Asia.

As a result, Sinco Singapore grew its business over the years by portraying itself as the face of the "Sinco Group" to customers. Once an order was secured by Sinco Singapore, the order was then outsourced to Sinco China or other manufacturing factories that were members of the Sinco Group. To ensure that customers understood that Sinco China was part of the Sinco Group, Sinco Singapore insisted that Sinco China use the name "Sinco" and to use the marks that were developed during the course of their joint venture. Among the efforts that were made to ensure that a unified, global image was projected to customers were the following:

- Sinco China was a Chinese company and had an official Chinese name, but when communicating with customers, its official English name was "Sinco Electronics (Dongguan) Co. Ltd."
- Sinco China used "@sincocn.cn" as its email address;
- Sinco Chine used "sincocn.cn" as its company website;
- Sinco Singapore insisted that Sinco China and its employees use Sinco trademarks and logos in all communications, including customers, and on its signage, including large signs on Sinco China's facilities;
- Sinco Singapore's marketing materials, including its website, consistently listed Sinco China as one of the Sinco Group's manufacturing facilities;
- Sinco Singapore repeatedly and consistently informed customers that Sinco China was one of the Sinco Group's manufacturing facilities and arranged frequent customer visits to Sinco China's facilities in China; and
- Sinco Singapore and affiliated companies hired employees who worked at the companies comprising the Sinco Group, including Sinco China, but the work those employees performed was at the direction of Sinco China, which is the entity that actually paid for their work (Sinco Singapore issued paychecks so the employees would qualify for Singapore pension benefits that were not otherwise available to

employees in China).

As a result of this long-term, ongoing joint venture, Sinco Singapore and Sinco China shared information and customers. For example, Sinco Singapore would take a customer's order and discuss the nature of the product(s) involved in a specific project, and Sinco China would develop techniques to manufacture the product in a manner that ensured speed, consistency, and quality.[3]

After years of success operating as a joint venture, the Sinco Group became fractured as a result of a dispute that arose in late 2016, when Sinco China's majority shareholder, Xu Shugong, became very ill and had to retire. Mr. Lim made a bid to purchase Mr. Xu's share of Sinco China, which was rejected because it was far too low. Eventually, all shares of Sinco China—including those owned by Mr. Lim—were sold to Jinlong Machinery & Electronics Co. Ltd ("Jinlong") in late 2016.

Before the sale was finalized, however, Mr. Lim used his position as a member of Sinco China's Board of Directors to cause Jinlong to withdraw from the transaction. After well over a decade without any major problem, Mr. Lim (and his son-in-law, Sinco COO, Jonathan Chee) began accusing Sinco China of "serious" legal violations that included alleged breaches of environmental regulations, health and safety laws, and laws that protected employees. According to Mr. Lim, the other members of Sinco's Board of Directors had prevented him and his representatives from obtaining information about these "serious violations." Nonetheless, Mr. Lim and his representatives reported these "serious violations" to Sinco Group customers and to the Chinese authorities.

In actuality, some of the "serious violations" about which Mr. Lim was ostensibly concerned were the subject of a routine audit conducted by a customer. For example, the "health and safety violation" was actually an issue over who would pay for health inspections, not that inspections were not conducted. And although Mr. Lim had complained about not receiving

---

[3] These are among the "trade secrets" Sinco Singapore claimed Sinco China "stole" after Mr. Lim lost his bid to own Sinco China outright.

sufficient information about this issue, the customer actually provided it directly to Sinco before and after the audit was completed.

Similarly, the so-called "environmental" issue was ostensibly discovered during the "due diligence" Mr. Lim performed in connection with his decision to purchase Sinco China (not as a result of a customer audit). In short, Mr. Lim claimed that Sinco China had no license to operate the anodizing machines at its manufacturing facility, and although he claimed he lacked sufficient information about the matter, that did not prevent him from reporting this ostensible "violation" to the customers whose products were manufactured with the anodizing equipment. Nor did the purported lack of information about this issue prevent Mr. Lim's representatives from reporting the "violation" to the Chinese authorities—who, not surprisingly, determined that a license did exist and did nothing in response to Mr. Lim's claims.

Undaunted, Mr. Lim brought a lawsuit in China in which he made many of the same claims Sinco Singapore has made in the litigation he initiated in the U.S. in late 2016. Mr. Lim voluntarily dismissed that suit a year later.

Put bluntly, Mr. Lim made these claims in a brazen effort to persuade Jinlong not to proceed with its purchase of Sinco China, which failed. As a result of frustration that he lost the opportunity to purchase Sinco China and his desperation in the wake of losing a key member of the Sinco Group and the manufacturing facilities it possesses, Sinco filed an action in Santa Clara County Superior Court in October 2016, claiming that Sinco China "stole" Sinco Singapore's trade secrets and had passed itself off as Sinco Singapore in an effort to fool Sinco Group customers into believing Sinco China was Sinco Singapore—notwithstanding that those customers were well aware that Sinco China was an independent entity that had recently been purchased by Jinlong. Sinco then initiated a parallel federal action (*i.e.,* the present case), alleging that Sinco China had infringed engaged in trademark infringement and other violations by using the Sinco name and trademarks—the same ones that Sinco Singapore Sinco China and other members of the Sinco Group use to ensure that customers would believe they were dealing with a sophisticated global operation instead of the small sales and marketing company that Sinco Singapore is without the Sinco Group behind it.

Defendants are confident that they will demonstrate that Sinco's claims are factually and legally baseless and that Sinco and its two principal officers—CEO Bryan Lim and his son-in-law, COO Jonathan Chee—are liable for defaming Xingke and its executives and for abusing the legal process in this litigation and in the parallel state action.[4]

On January 29, 2019, Xingke filed an Answer and Counterclaims in the present action on in response to Sinco's Second Amended Complaint. In its counterclaims Xingke sought declaratory relief and monetary damages. Sinco responded to Xingke's counterclaims by seeking leave to file a Third Amended Complaint that would include the same claims Sinco has been prosecuting in the present action.

Xingke opposed Sinco's motion on the ground that Sinco could have pursued its trademark infringement claims in the present action (over which state and federal courts have concurrent jurisdiction) and that allowing the amendment Sinco had proposed would effectively replicate the state proceedings in the context of the federal trademark action, thereby duplicating discovery on every issue in both actions.

During the hearing he conducted on March 28, 2019, Judge Chen proposed a solution: that Sinco would dismiss the state-court action if Xingke would stipulate to the enforcement of that court's preliminary injunction by the federal court. After discussing the matter internally, Xingke advised Sinco that it would stipulate to the federal court's enforcement of this Court's preliminary injunction on the condition that the Parties simultaneously entered into another stipulation Sinco had proposed several days earlier, by which the federal court would appoint a Special Master to handle all discovery matters. Sinco responded by stating that it had decided against the latter stipulation (notwithstanding that it had just proposed it), but urged Xingke to proceed with the other stipulation anyway.

---

[4] Shortly after Sinco Singapore initiated the parallel actions in state and federal court, Sinco China decided to disassociate itself from Sinco Singapore and rebrand itself as "Xingke Electronics (Dongguan) Co. Ltd." Judge Chen has ruled that Xingke's trademarks are substantially different than the trademarks used by the Sinco Group and has permitted Xingke to use them notwithstanding the preliminary injunction.

Instead, Xingke advised Judge Chen that it would dismiss the counterclaims that were not directly related to trademark infringement in the present action and voluntarily submit to the state court's jurisdiction in the state-court action, thereby mooting the need for Sinco to file a Third Amended Complaint. Judge Chen discussed the matter further with the Parties' counsel during the hearing of Sinco's motion to dismiss Mr. Liew's counterclaims on April 18, 2019. There, Sinco's counsel argued that the federal action is far more advanced than the present action and urged the Court to grant Sinco's motions to prevent *Defendants* from engaging in "gamesmanship."

Judge Chen advised counsel that he was not persuaded. On April 19, 2019, Judge Chen issued an order denying Sinco's motion, in which he explained the rationale that informed his decision as follows:

> It makes more sense for the federal and state cases to continue as they were originally framed by Sinco Singapore rather than trying to convert the federal action into one all-inclusive action. ***The Court notes that Sinco Singapore made the choice to bring its claims against Defendants in two different fora – i.e., to file the federal action rather than bring the trademark infringement claims in the already existing state action***. See RBCI Holdings, Inc. v. Drinks Ams. Holdings, Ltd., No. 07 Civ. 2877 (DC), 2008 U.S. Dist. LEXIS 26122, at *5 (S.D.N.Y. Mar. 20, 2008) (stating that "[f]ederal courts have original but not exclusive – jurisdiction over 'any civil action arising under any act of Congress relating to . . . trademarks'"). ***Having made that decision, Sinco Singapore can hardly complain now that it makes more sense for all claims to be before this Court***. Cf. American International Underwriters, Inc. v. Continental Ins. Co., 843 F.2d 1253, 1260 (9th Cir. 1988) (stating that it is clear that the rationale that prohibits plaintiffs from removing cases to federal court under 28 U.S.C. § 1441 . . . bars [the plaintiff] from bringing this repetitive lawsuit in federal court"). 3 Furthermore, ***contrary to what Sinco Singapore argues, the instant case is not markedly more advanced in litigation compared to the state action***.

Dkt. No. 195 at 2:7-21 (emphasis added).

Accordingly, Xingke will dismiss the non-trademark claims in the present action and file an answer and counterclaims in the state-court action, including claims against Messrs. Lim and Chee individually, for which Xingke will seek damages, equitable relief, and an award of attorney fees and costs.

///

///

## II. DISCOVERY

*SinCo's statement:*

**PROTECTIVE ORDER**

On and before **September 18, 2018**, the parties negotiated and submitted a proposed stipulated protective order to the Court [ECF 62.] That proposed order was entered as an Order by Judge Chen on **September 19, 2018** [ECF 63.] On **January 7, 2019**, the parties submitted competing amended protective orders. [ECF 120 and 121.] On **January 9, 2019**, the Court entered the Order and Stipulation of the Parties Regarding Protocol for Discovery or Electronically Stored Information [ECF 122]. On **January 14, 2019**, this Court issued an Amended Protective Order. [ECF 124.]

On **November 9, 2018**, the parties submitted a Joint Discovery Brief pursuant to Judge Chen's standing order as to the adequacy of responses by Defendant Mr. Ng to Request for Production served by SinCo on **April 12, 2018** [ECF 95]. Judge Chen reassigned the discovery issues to your Honor by random assignment on **November 14, 2018** [ECF 96 and 98.]

**DEFENDANT MR. NG'S RESPONSES TO SINCO'S DISCOVERY REQUESTS**

On **November 30, 2018**, counsel for SinCo and Defendant Mr. Ng met in-person and arrived at a compromise as to the responses by Defendant Mr. Ng to Request for Production of Documents ("RFP") Nos. 12- 19 served by SinCo on **April 12, 2018.** [ECF 103.]

Specifically, it was agreed that responsive information on Mr. Ng's Dell and Microsoft laptops would be produced within "a sixty (60) to ninety (90) day timeframe,[5]" and "Mr. Ng's counsel will then notify counsel for SinCo of a date certain by which Mr. Ng's counsel has received and began review of the information from Xingke Electronics (Dongguan) Co., Ltd., prior to production to Plaintiff." [ECF 103.]

*Defendants' Statement*: The issues Sinco has raised regarding the laptop computers that Messrs. Ng and Liew used in connection with their employment were the subject of two meet-

---

[5] 60 Days from November 30, 2018 is **January 29, 2019**, and 90 days from November 30, 2018 is **February 27, 2019**.

and-confer sessions (one on March 1 and the other on April 3, 2019). Defendants have since provided Sinco with the data from both computers, a declaration pertaining to the information on those computers, instructions about how to access metadata and documents with parent-child relationships, such as attachments to email messages. It is not clear why Sinco is raising these issues again, so Defendants are unable to respond to Sinco's statements.

**DEFENDANT MR. TJOA'S RESPONSES TO SINCO'S DISCOVERY REQUESTS**

*Sinco's Statement:* On **December 20, 2018**, the parties met and conferred in person as to RFPs Nos. 1-42 and Interrogatories ("ROGS") 2-5, and 7 served on Defendant Mr. Tjoa on **November 2, 2018** [ECF 113.] On **January 4, 2018**, the parties again met and conferred in person as to RFP's Nos. 1-42 and Interrogatories ("ROGS") 2-5, and 7 served on Defendant Tjoa on **November 2, 2018** [ECF 119.] Thereafter the parties submitted a proposed Order and stipulation as to compromises that had been reached. [ECF 119.]

*Defendants' Statement*: The Parties' counsel have also met and conferred about Mr. Tjoa's responses to Sinco's written discovery requests and he has either provided supplemental responses already or is in the process of doing so now (*e.g.,* supplemental responses to Sinco's first set of interrogatories will be served today (April 19, 2019)).

**DEFENDANTS' RESPONSES TO SINCO'S DISCOVERY REQUESTS**

*Sinco's Statement:* On **March 1, 2019**, the parties met and conferred in person as to: (1) responses to SinCo's written discovery of Defendant Mr. Ng as to RFP; (2) Mr. Tjoa's production in response to SinCo's RFP Set One served on **November 2, 2018**, specifically as to compliance with the Court's **January 9, 2019** Order Regarding Protocol For Discovery of Electronically Stored Information in Civil Litigation; (3) SinCo's request for Defendant Xingke Electronics (Dongguan) Co., Ltd.'s ("XINGKE") employee (XINGKE's factory in China depositions) [Eric Pang; Gao Bingyi; Gouki Gao; Larry Sim Teck, Jerry Darui; Quek Seow Eng; Lim Chin Huan; and Ng Yi Ming]; and (4) scope of a stipulation that was executed on **January 8, 2019**, regarding a two-week extension as to which parties to this litigation it applied; (5) the depositions of several individuals (i.e., the third examination of Mr. Liew the second examination of Mr.Tjoa, and the initial examinations of the factory employees and SinCo executives Jon Chee and Bryan Lim; and

(6) the need for guidelines to govern responses to written discovery and the scheduling of depositions. [ECF 154.]. A transcript of that meet and confer was partially submitted to the Court on **March 5, 2019** [ECF 150-1 at pg. 171.]

Pursuant to Judge C. Spero's Revised Civil Standing Order of **March 11**, **2019**, the parties submitted a Joint Letter Re the Meet and Confer of **March 1**, **2019** that memorialized their unresolved discovery disputes. [ECF 154.]

On **March 13, 2019**, the Court issued an Order as to several issues referenced in the Joint Letter. [ECF 155.]  Specifically the Order stated that: Mr. Ng provide, within seven (7) calendar days of the **March 13, 2019** order a declaration describing in detail the forensic search conducted on the two computers in question; that Defense counsel would provide technical assistance to Plaintiff to view the documents, including all metadata, attachments, and all parent-child relationships among the documents and/or attachments.  In addition, the court ordered that the parties shall meet and confer and agree upon a schedule for any Xingke employee depositions sought by SinCo, and file it with the court on or before **Monday**, **March 18**, **2019**. [ECF 155-1 at Pg. 1-2.]

***Defendants' Statement:*** Once again, each of these issues has been discussed during meet-and-confer sessions and the Parties have reached agreement as to each of them. Defendants do not understand why Sinco is raising them again here.

**XINGKE EMPLOYEE DEPOSITIONS**

***Sinco's Statement:*** On **March 14**, **2019**, counsel for Defendants filed a Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge. [ECF 156.] On **March 1, 2019**, at 10:28 a.m. this Court issued the Order Denying Defendants' Motion for Relief from Dispositive Pretrial Order of Magistrate Judge. [ECF 157.]

On **March 18**, **2019**, counsel for Defendants' sent the following email correspondence to Plaintiff's counsel "Defendants hereby comply with the Order Re Joint Letter by agreeing to make the following witnesses available for deposition in **Hong Kong** during the last week of June or the first week of July 2019"

**LOCATION**: **HONG KONG**

On **March 20**, **2019,** the parties submitted a joint letter regarding the depositions of certain employees of the defendants (the "Deposition Joint Letter"). [ECF 159.]  The Court ordered Defendants to make the Employee Witnesses available for deposition in **Singapore** in addition to again setting the time that it not occur later than **May 31**, **2019**.

On **April 16, 2019**, Defendants notified SinCo that Lim Chin Huan had tendered his resignation on **April 15, 2019**. When SinCo had initially requested these depositions last year, they were similarly informed that the General Manager of the factory Gao Bingyi had also recently resigned and was unavailable for deposition. It is essentially impossible to subpoena deposition testimony of Chinese residents. Defendants also sought the deposition of SinCo employees and *proposed the following deposition schedule* from May 28, 2019 to June 7, 2019:

| | |
|---|---|
| *May 28, 2019* | *Quek Seow Eng* |
| *May 29, 2019* | *Jerry Darui* |
| *May 30, 2019* | *Gouki Gao* |
| *May 31, 2019* | *Eric Pang* |
| *June 4, 2019* | *Jennifer Tan* |
| *June 6, 2019* | *Cynthia Chua* |
| *June 7, 2019* | *Johnson Chu* |

On **March 27**, **2019,** Defendants' refused to use the revisions that SinCo's counsel provided to Defendants' letter pursuant to the court orders and filed a separate letter. [ECF 170 and 171.]  On **April 1, 2019,** based on the non-joint letters that the Defendants, this Court Ordered Defendants to produce the Employee Witnesses in Singapore on the following dates for deposition, and shall cooperate by taking all steps necessary to ensure that the Employee Witnesses' deposition can be taken in Singapore on these dates:

a. Jerry Darui **May 27, 2019**

b. Quek Seow Eng **May 28, 2019**

c. Lim Chin Huan **May 29, 2019**

d. Gouki Gao **May 30, 2019**

e. Eric Pang **May 31, 2019**

**SINCO NOT ALLOWED TO CREATE A RECORD OR DEFEND COUNSEL'S REPUTATION**

As part of the **April 1, 2019**, Order the Court stated, "Defendants shall show cause, within seven (7) days of this Order, why they should not be required to pay to Plaintiff, in addition to any other sanction that the Court may order on any other matter the amount of $1000 which the Court finds to be the reasonable attorney fee with respect to the exchange of non-joint letters." [ECF 178]

On **April 8, 2019,** Defendants filed a Response denying any culpability and claiming SinCo acted unreasonably. [ECF 186] On **April 9, 2019**, this Court issued an Order Expunging Order to Show Cause that stated, "Plaintiff's counsel unreasonably restricted both the time allowed for Defendants' counsel to review the "non-joint letter" and arbitrarily restricted the subject matter of that letter." [ECF 187] On **April 12, 2019**, SinCo filed a letter brief with the Court Requesting an opportunity to provide evidence defending the unfounded accusations that Defendants had made and the Court relied on in finding that SinCo's counsel acted unreasonably. [ECF 190] On **April 15, 2019**, the Court denied Sinco's Motion for Reconsideration and left the April 9, 2019 Order in tact. [ECF 191] On **April 16, 2019**, Defendants' counsel in this action submitted a pleading in the related State action before Judge Kuhnle quoting this Court's April 9, 2019 order: ""it is not lost on the Court that Plaintiff's counsel unreasonably restricted both the time allowed for Defendants' counsel to review the 'non-joint letter' and arbitrarily restricted the subject matter of that letter." This evidences the order of April 9, 2019 diminished the reputation of SinCo's counsel's reputation in the legal community without the ability to defend himself in any meaningful way, based on an original order to show cause directed at <u>Defendants' conduct</u>.

***Defendants' Statement***: Xingke has arranged to make the individuals who remain employed by Xingke available for deposition in Singapore in late May. Defendants have also noticed the depositions of three Sinco employees whose depositions were scheduled to be conducted on June 5 through 7, also in Singapore. Defendants recently became aware, however, that June 5 is a holiday in Singapore, and have requested that Sinco arrange for the deposition of one of the three Sinco employees to take place on June 4 (which is a Tuesday). Sinco's counsel

has responded by advising Defendants' counsel that the parties may be able to proceed with the deposition on June 5 after all, because it believes that a conference room will be available on that day. Despite asking Sinco's counsel to confirm that the conference room actually is available on June 4, however, Sinco's counsel has yet to respond.

As for Sinco's insistence on relitigating Your Honor's Order Expunging the OSC on April 9, 2019 (Dkt. No. 187), Defendants submit that they have already exhausted the subject in prior submissions. Should Your Honor wish Defendants to elaborate further, their counsel will be prepared to do so at the April 26 conference.

**MOTION FOR PROTECTIVE ORDER AS TO DEFENDANTS' LETTER BRIEF [ECF 192]**

*Sinco's Statement:* After the Court's order denying SinCo's request for reconsideration on **April 15, 2019**, Defendants filed a letter brief that was moot when filed. The issue however was that Defendants letter brief violated this Court's Order of **January 14, 2019**, by intentionally misrepresenting the substance of testimony from Jonathan Chee's deposition of **April 4, 2019**, as to his prior conviction which pursuant to the Order was deemed as confidential Attorney's Eyes Only under section 5.2 (b). SinCo immediately notified Defendants' counsel by email and advised that the material should be removed or redacted pursuant to the protective order. Defendants refused. SinCo again requested the information be removed and advised that this testimony would be designated as confidential when the transcript was made available for review as the testimony was private and embarrassing to the non-party witness and that the threat of current criminal penalties in Singapore was an attempt to intimidate the witness. Defendants refused.

Regardless of the violation of the Protective Order, this information about a criminal conviction of over 15 years ago is presumed inadmissible under the rules and given the Order of this Court addressing SinCo's letter brief there was no reasonable basis for filing and then maintaining in the public record the identified information.

SinCo is drafting a Motion for Protective Order, but must await the deposition transcript of Jonathan Chee to be provided by the Court reporter to evidence the willfully false characterization Defendant have made on the public record.

***Defendants' Statement***: Sinco's contention that the letter Defendants submitted to Your Honor somehow violated the Parties' Stipulated Protective Order is baselss. Indeed, despite Sinco's professed outrage over the purported breach of Mr. Chee's privacy rights as a result of the inclusion of his conviction for fraud, the bankruptcy petition he filed to prevent his victims from recovering the $1 million he obtained from them, and the term Mr. Chee served in prison as a result—which was reported in various news media well before Defendants raised it here—Sinco itself has presented the same information in the Joint Case Management Conference Statement it has prepared in advance of a CMC before Judge Kuhnle on April 26 (at 2:30 p.m.).

In any event, Mr. Chee's conviction for fraud, his bankruptcy petition, and his violations of Singapore law as a result of his appointment as Sinco's COO are facts that bear directly on Mr. Chee's credibility. Moreover, Defendants will show that Mr. Chee's conduct and his reputation have a direct bearing on the claims Sinco has made in this action and the state-court action.

Defendants' counsel has explained all this to Sinco's counsel. Yet, Sinco's counsel states that he intends to file a motion with this Court on the ground that Mr. Chee's criminal conviction, his five-and-a-half-year prison sentence, and his bankruptcy petition are facts that are somehow entitled to protection from disclosure by the Parties' Stipulated Protective Order—notwithstanding that all these facts are already in the public domain and are not protected by applicable law in any event. For that reason, Defendants' counsel has advised Sinco's counsel that Defendants will seek an award of sanctions if Sinco filed such a patently frivolous motion. If Sinco proceeds with its plan to file the motion anyway, Defendants will demonstrate that there is no basis for ***any*** good-faith assertion of confidentiality, and they will seek an award of sanctions to recover the wasted time and resources expended in responding to it.

**DEFENDANTS FURTHER RESPONSES TO SINCO'S DISCOVERY REQUESTS**

***Sinco's Statement:*** On **April 3, 2019,** at approximately 5:00 PM the parties counsel initiated a meet and confer, attended by SinCo's Counsel, Lael D. Andara, paralegal Manali Shah and Defendants' counsel: Jeffrey Fazio, Yi Yao, and Clay Zhu which was conducted in-person at 1001 Marshall Street Redwood City, California. At approximately 6:00 PM the corporate representatives of SinCo Jonathan Chee (COO) and Bryan Lim (CEO) along with Defendant

Mr.Tjoa were also present at the meet & confer between counsels. Pursuant to Judge C. Spero's Revised Civil Standing Order, the parties submitted a Joint Letter Re the Meet and Confer of **April 3 , 2019,** which memorialized the resolved and *unresolved* discovery dispute as to: (1) Mr. Ng responses to SinCo's RFP [Set One] served on **April 12, 2018**; (2) Defendant Xingke production in response to SinCo RFP Set One served on **February 5, 2019**, specifically as to compliance with the Court's **January 9, 2019**, Order Regarding Protocol For Discovery of Electronically Stored Information in Civil Litigation; (3) Xingke's employee depositions [Eric Pang; Gouki Gao; Jerry Darui; Quek Seow Eng; and Lim Chin Huan]; (4) Attorney's fees as to SinCo's Motion for Sanctions, (5) Mr. Tjoa's production in response to SinCo's RFP Set One served on **November 2, 2018**, and (6). Xingke's responses to Interrogatories Nos.1-8, 10-11, and 14-19.

**DEPOSITIONS TAKEN TO DATE:**

On **December 2**, **2016**, **February 21, 2017**, and **March 8, 2019**, Defendant Mr. Liew was deposed in the United States in the State action.

On **February 12, 2018,** Defendant Mr. Ng was deposed was deposed in Singapore in the State action.

On **August 24, 2018,** SinCo employee Minh Chi Nguyen was deposed in the United States in the State action.

On **January 17, 2019**, Defendant Mr. Tjoa was deposed was deposed in Singapore in the Federal action.

On **April 4, 2019,** SinCo employee Jonathan Chee was deposed in the United States in the Federal action.

On **April 5, 2019**, SinCo employee Bryan Lim was deposed in the United States in the Federal action.

///

///

///

**A.     SinCo's Discovery Yet to be Resolved:**

**XINGKE'S RESPONSES TO SINCO'S INTERROGATORIES** (SERVED 2/5/19)

*SinCo's statement:*

SinCo had requested a meet and confer as to Interrogatories Nos.1-8, 10-11, and 14-19 to Xingke on **March 22, 2019**, providing the specific issue for each. SinCo reiterated these identical issues on **April 2, 2019**, in a letter to Defendant's counsel.  Counsels for Xingke declined to discuss SinCo's Interrogatories Nos.1-8, 10-11, and 14-19 to Xingke, claiming they had only been made aware of them on **April 2, 2019**, and they were not prepared to address them.

*Defendants' Statement:* As Sinco is well aware, Defendants addressed this issue in a Stipulation and Proposed Order dated April 8, 2019, as fllows: "Xingke will review Sinco's April 2, 2019 letter, and will provide a proper response to the issues identified therein not later than April 22, 2019, and will continue the meet-and-confer process in an effort to resolve the differences between the parties." Nothing has changed since that time.

### REQUEST TO APPOINT SPECIAL MASTER

*Sinco's Statement:* SinCo requests that a neutral special master be appointed under Fed. R. Civ. Proc. 53, as a neutral observer to be present by phone during depositions (outside the U.S.) and in person during counsel's meet and confer meetings or depositions in the U.S. moving forward regarding all future Discovery matters.  The special master will be authorized to provide a neutral recommendation for disputes that may arise and to generally oversee that both parties counsel are conducting themselves appropriately under the rules of professional responsibility in the Northern District of California . SinCo proposes that both parties share any and all cost related to the special master executing their duties in this Action. SinCo would defer to the Court for the appointment of a special master.

*Defendants' statement:*  Defendants have no objection to the appointment of a special master for the purpose of addressing disputes that may arise in overseas depositions, as long as the costs are borne equally (*i.e.,* 50/50) between Sinco and Defendants. In the event Your Honor is not inclined to select the special master, Defendants propose that the parties propose several

candidates from JAMS and determine whether they can agree on the selection.

Finally, Defendants propose (as the have in the state-court action) that Your Honor require the parties to hire a court reporter to transcribe all future meet-and-confer sessions to preclude any dispute over what was said and what the Parties agreed or did not agree to do during those sessions, and that the Parties share the cost equally (*i.e.,* 50% by Sinco and 50% by Defendants).

Dated:  April 19, 2019         ROPERS, MAJESKI, KOHN & BENTLEY


By: /s/ Lael David Andara
    LAEL D. ANDARA
    *Attorneys for Plaintiff*
    SINCO TECHNOLOGIES PTE LTD

Dated:  April 19, 2019         DEHENG LAW OFFICES, PC


By:
    JEFFREY L. FAZIO
    *Attorneys for Defendant*
    NG CHER YONG AKA CY NG, MUI LIANG TJOA, LIEW YEW SOON AKA MARK LIEW and Xingke