UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SINCO TECHNOLOGIES PTE LTD., | Case No. 17-cv-05517-EMC (JCS) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SANCTIONS AND RULING ON ORDER TO SHOW CAUSE** |
| SINCO ELECTRONICS (DONGGUAN) CO. LTD., et al., | |
| Defendants. | Re: Dkt. No. 229, 242 |

## I.      INTRODUCTION

Plaintiff SinCo Technologies PTE Ltd. ("SinCo") brings a Motion for Sanctions ("Sanctions Motion") asking the Court to find that Defendants are in civil contempt for disclosing confidential information in a letter to the Court filed in the public record and to award monetary sanctions against Defendants and their former attorney, Jeffrey Fazio of the DeHeng Law Offices. Both Fazio and Defendants filed opposition briefs, but the opposition filed by Defendants was a week late.  The Court issued an Order to Show Cause why Defendants should not be sanctioned for their untimely filing, failure to request an extension of time and making false statements to the Court.  A hearing on the Sanctions Motion and Order to Show Cause was held on August 23, 2019 at 9:30 a.m.  For the reasons stated below, the Court GRANTS in part and DENIES in part SinCo's Motion and awards additional sanctions in connection with the Order to Show Cause.[1]

---

[1] Although the district judge has appointed a special master to handle discovery disputes going forward, the undersigned magistrate judge rules on the instant Motion because the issues raised in it are closely related to two previous discovery orders by the undersigned, docket nos. 187 and 191.  All further discovery motions should be submitted to the special master.

## II. BACKGROUND

This particular dispute began when counsel filed separate discovery letters, in violation of the Court's orders governing the procedures for seeking Court assistance in resolving discovery disputes. As the parties had already violated these orders on numerous occasions, the undersigned issued an Order to Show Cause Why Defendants Should Not Pay Sanctions Regarding Exchange of Non-Joint Letters. *See* Docket No.178. In the Order to Show Cause, the Court made clear that that *both* parties appeared to have acted unreasonably with respect to their handling of the discovery letters but that Defendants' conduct was more egregious. Nonetheless, after considering Defendants' written response to the Order to Show Cause, the undersigned concluded that Defendants' conduct was inadvertent and noted that SinCo's counsel bore some of the responsibility for the parties' violation of the Court's joint letter requirement because he "unreasonably restricted both the time allowed for Defendants' counsel to review the 'non-joint letter' and arbitrarily restricted the subject matter of that letter." Docket No. 187. The Court therefore expunged the Order to Show Cause in an order filed on April 9, 2019 (the "April 9 Order"). *Id.* No sanctions were imposed.

On April 12, 2019, SinCo attorney Lael Andara filed a letter asking the Court for leave to file a motion for reconsideration of the Court's April 9 Order. Docket No.190. Counsel wanted to share with the Court his side of the story with respect to the reasons for filing separate letters. The letter went far beyond that issue, however, setting forth a detailed description of what Andara considered to be misconduct on the part of Defendants' counsel with respect to the handling of various ongoing discovery disputes. *Id*. The Court denied the motion for reconsideration on April 15, 2019, stating that it would not revisit its previous decision but acknowledged that SinCo's counsel had raised "disturbing incidents reflecting the failure of counsel to work together to solve discovery problems that have been endemic in this case." *Id*.

At this point, both sides had offered accounts of why separate discovery letters had been filed and the Court had decided (twice) that it would not impose sanctions. Nonetheless, an hour after the Court had issued its order denying SinCo's motion for reconsideration, Fazio, who still represented Defendants, filed his own letter (the "April 15 letter") responding to the accusations of

1     SinCo's counsel with respect to his alleged discovery misconduct.  Docket No. 192.  Among other

2     things, Fazio described disputes that had arisen at the April 4, 2019 deposition of Jonathan Chee,

3     SinCo's former COO, referencing the content of that deposition.  *See* Docket No. 192.  It is

4     undisputed that at the time the letter was filed, the entire deposition transcript was still designated

5     as CONFIDENTIAL ATTORNEYS EYES ONLY under the protective order in this case.  *See*

6     Docket No. 124 ("Protective Order") § 5.2 (providing, in part, that "the Party or non-party that

7     sponsors, offers, or gives the testimony shall have up to ten (10) business days after receipt of the

8     transcript or thirty (30) days after the deposition, whichever comes first, to identify the specific

9     portions of the testimony as to which protection is sought.");  *see also* Motion at 4 (quoting

10    agreement between the parties' attorneys that entire deposition transcript would be treated as

11    confidential pending designations by Plaintiff's counsel).  Even though his letter contained

12    information from Chee's deposition, Fazio filed the April 15 letter in the public record, in

13    violation of the parties' agreement and the terms of the Protective Order.

14          SinCo brought a motion for protective order ("Protective Order Motion") on April 24,

15    2019, seeking an order protecting from disclosure information about Chee's past conviction

16    (which was addressed at Chee's deposition and in the April 15 letter) and also asking the Court to

17    prohibit Defendants from threatening Chee with criminal prosecution.  Docket No. 200. In the

18    Protective Order Motion, SinCo argued that the April 15 letter was filed in bad faith with the

19    intent to intimidate and harass Chee, that Defendants' counsel had mischaracterized Chee's

20    testimony in the April 15 letter, and that Chee had a right to privacy with respect to his past

21    conviction.  *Id*.   Defendants filed a statement of non-opposition and the Court granted the

22    Protective Order Motion in part, ordering that "the testimony by Mr. Chee regarding a fifteen (15)

23    year old prior conviction in Singapore [was] properly designated as confidential under the

24    Protective Order" and placing the April 15 letter under seal.  Docket No. 214.  In all other

25    respects, the Protective Order Motion was denied.

26          On July 3, 2019, SinCo brought its Sanctions Motion, asking the Court to hold Defendants

27    in civil contempt for violating the Protective Order in this case by filing the April 15 letter in the

28    public record and to award sanctions against Defendants and attorney Jeffrey Fazio for what it

3

1    contends is conduct aimed at "embarrass[ing] and harass[ing] Mr. Chee for the purpose of

2    coercing Mr. Chee not to testify at trial." Sanctions Motion at 5. Although many of the arguments

3    in the instant Motion had already been made (e.g., that Defendants' counsel had violated Rule 11

4    of the Federal Rules of Civil Procedure in filing the April 15 letter), this was the first time SinCo's

5    counsel expressly requested that the Court impose sanctions for Defendants' and Fazio's conduct

6    related to the Chee deposition and April 15 letter.

7        The Opposition brief on the Sanctions Motion was due on July 17, 2019. On July 18,

8    2019, Fazio – who no longer represented Defendants – filed an opposition brief on his own behalf,

9    arguing that the information about Chee's past conviction was publicly available and therefore

10   could not fall under the protective order; nor could its disclosure support the imposition of

11   sanctions. Docket No. 231. Fazio further asserted that SinCo's accusations of discovery

12   misconduct related to the Chee deposition and April 15 letter had already been raised in the

13   Protective Order Motion and rejected by the Court. *Id.* Finally, he argued that SinCo failed to

14   comply with the procedural requirements of bringing a motion for sanctions under Rule 11 of the

15   Federal Rules of Civil Procedure. *Id.* Fazio also supplied a declaration in support of his

16   opposition to which he attached news articles about Chee's past conviction to show that

17   information about Chee's conviction was already publicly available. Docket No. 232 ("Fazio

18   Opposition Decl."), Ex. A.

19       SinCo filed a reply to Fazio's opposition brief on July 23, 2019. It disputed Fazio's

20   version of events and argued that Defendants have a "pattern and practice" of blaming their

21   attorneys for misconduct from which they benefit. Docket Nos. 234. The reply was supported by

22   a declaration by Daniel Gaitan with documents attached reflecting what SinCo argued were

23   examples of such conduct. Docket No. 237. SinCo also argued that the Sanctions Motion is not a

24   Rule 11 motion and is distinct from its previous motion for a protective order. SinCo objected to

25   the news articles about Chee that were filed as an attachment to the Fazio Opposition Declaration,

26   arguing that by filing them in the public record Fazio was again harassing Chee. SinCo also

27   argued that while Fazio had filed an opposition brief, Defendants had not and therefore the Court

28   should consider the Sanctions Motion unopposed by Defendants.

4

1    Fazio filed an objection to the Reply evidence attached to the Gaitan Declaration on July

2    24, 2015.  Docket No. 235.  On the same date, Defendants filed an opposition to the Sanctions

3    Motion, one week past the date when it was due.  Docket No. 236.  Although Defendants had not

4    requested an extension of their briefing deadline, they represented to the Court in their brief and in

5    a supporting declaration by attorney Michael York that they were unable to file a timely reply

6    brief because Fazio and the DeHeng Law Offices had not provided their new counsel with

7    sufficient information about the underlying facts that were the basis of the Sanctions Motion.  *See*

8    York Dec., ¶ 2 ("Defendants's [sic] former attorneys have not been cooperative in providing

9    information regarding the events to be able to prepare opposition.  As a result, Defendants were

10   unable to prepare opposition until Defendants's [sic] former attorneys filed opposition and

11   Defendants had information regarding at least what Defendants's [sic] former attorneys claimed").

12   The next day, Fazio filed a declaration responding to York's declaration, stating that the

13   reasons offered by York for Defendants' late filing were false.  Docket No. 240 ("Fazio July 24

14   Declaration").  According to Fazio, he and Clay Zhu, also an attorney at the DeHeng Law Offices,

15   had spent significant time with Defendants' new counsel "helping WHGC attorneys prepare to

16   take over the defense of this litigation before DeHeng formally withdrew from its representation of

17   Defendants last May."  *Id*. ¶ 4.  Fazio described these efforts in detail in his declaration.  They

18   included several lengthy meetings between counsel and the provision to WHGC of all of the

19   litigation files in the case, in both electronic form and hard copy.  *Id*.

20   According to Fazio, since June 11, 2019, the only substantive communication between the

21   DeHeng Law Offices and WHGC was a brief exchange of emails on July 3, 2019, soon after the

22   Sanctions Motion was filed.  *See* Fazio July 24 Decl., Ex. A (July 3, 2019 email chain).  It began

23   with an inquiry from WHGC attorney Kathleen Alparce to Zhu and Fazio stating:  "Attached is

24   Sinco Technologies' Motion for Sanctions.  Please advise as to your response."  *Id*.  A few

25   minutes later, Zhu responded, stating:  "Hi Kathleen:  my office will file an opposition.  Thanks."

26   *Id*.  Approximately an hour later, WHGC's Michael York (who had been copied on the emails

27   described above) sent an email stating as follows:

28   To make sure there is no misunderstanding, first, you may oppose the

5

> motion on behalf of your office and your attorneys, but you are not
> authorized to oppose the motion on behalf of our clients. Second, in
> opposing the motion, you are not permitted to reveal anything
> privileged by attorney-client privilege or that is confidential.

*Id.* Fazio states that the only other communication with WHGC since the July 3 exchange related

to an unpaid bill, and that WHGC made "no request for assistance from WHGC regarding the

motion for sanctions or any other matter." Fazio July 24 Decl. ¶ 7.

In the meantime, SinCo filed a motion to strike Defendants' opposition on the basis that it

was untimely. Docket No. 238. Although it would have been well within the Court's discretion to

grant that motion, the Court decided instead to cure any prejudice associated with the untimely

filing by allowing SinCo to file a surreply and to consider awarding SinCo any additional

attorneys' fees and costs incurred as a result of the late filing. Therefore, on July 26, 2019 the

Court denied the motion to strike and set a deadline for SinCo's surreply, instructing SinCo to

provide documentation of the fees and costs associated with Defendants' failure to file their

opposition brief by the deadline. In light of Fazio's July 24 declaration, the Court also issued an

Order to Show Cause why Defendants should not be sanctioned for apparently misrepresenting the

facts regarding their late opposition and for failing to request an extension of the briefing

deadlines. Docket Nos. 241, 242.

On August 2, 2019, SinCo filed its Surreply, along with documentation of the expenses it

incurred in filing the motion to strike. Docket No. 243.

Defendants' new counsel filed a response to the Order to Show Cause ("OSC Response")

on the same date, with another declaration by York ("York OSC Decl."). Docket No. 244. They

again asserted that they had not been provided sufficient information by the DeHeng Law Offices

to file a timely opposition. In support of that assertion, they cited an email from May 29, 2019, in

which Zhu refused to provide WHGC with more legible copies of documents Defendants had

previously produced to SinCo on the basis that the DeHeng Law Offices had not been paid by the

clients. York OSC Decl., Ex. A. Zhu told WHGC that the DeHeng Law Offices had already

provided it with all of the documents in electronic format and the documents that WHGC was

looking for could be found there. *Id.* He concluded the email by stating, "[b]ecause the clients

1  have not paid my invoices, I am unable to assist you any further." *Id*. In the OSC Response,

2  Defendants rely on Zhu's email to show that the DeHeng Law Offices had already refused to

3  cooperate even before the Sanctions Motion was filed, implying that there would have been no

4  point in asking for DeHeng Law Offices for additional information in connection with

5  Defendants' opposition to the Sanctions Motion.

6  Second, Defendants contend that WHGC's email of July 3 asking Zhu and Fazio to

7  "[p]lease advise as to your response" to the Sanctions Motion *was* a request by WHGC for

8  information related to the Sanctions Motion and that Zhu's email response on the same date did

9  not provide that information, instead stating that DeHeng Law Offices would file an opposition

10  brief. York states in his OSC declaration that only when Fazio actually filed his opposition brief

11  did the WHGC attorneys realize that Fazio did not intend to oppose the motion on behalf of

12  Defendants but only on his own behalf. *See* York OSC Decl. ¶ 7. In support of this version of the

13  facts, WHGC provided as an attachment to the York OSC Declaration a copy of the July 3 email

14  exchange between Alperce and Zhu but omitted the third email, quoted above, in which York

15  instructed Zhu that the DeHeng Law Offices was not authorized to respond to the Sanctions

16  Motions on Defendants' behalf. York OSC Decl., Ex. B.

17  Finally, in response to the Court's order that Defendants explain why they did not request

18  an extension of the filing deadline, Defendants state that they sent an email to Andara on July 23

19  (the day before SinCo's reply was due and six days *after* their opposition was due) informing him

20  that they planned to file an opposition the next day and would not object if SinCo wanted

21  additional time to file its reply). OSC Response at p. 5 & Ex. C (email sent from Michael York to

22  Lael Andara giving SinCo's counsel a "heads up" that Defendants planned to file their opposition

23  brief the next day). SinCo filed its Reply to Fazio's brief a few hours later, one day before the

24  July 24 deadline.

25  On August 4, 2019, Fazio filed a response to WHGC's response to the Order to Show

26  Cause, asserting that Defendants' new counsel had again misrepresented the facts. In response to

27  York's representation that he had been "blindsided" when Fazio's opposition did not present

28  arguments on behalf of Defendants, Fazio pointed to the email from York that he had already put

7

1    in the record showing that York had specifically told him that he was not authorized to oppose the

2    Sanctions Motion on Defendants' behalf.  Docket No. 245.

3    **III.    ANALYSIS**

4        **A.    Legal Standards**

5        "Three primary sources of authority enable courts to sanction parties or their lawyers for

6    improper conduct: (1) Federal Rule of Civil Procedure 11, which applies to signed writings filed

7    with the court, (2) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and

8    vexatiously multiplies the proceedings, and (3) the court's inherent power."  *Fink v. Gomez*, 239

9    F.3d 989, 991 (9th Cir. 2001).  The sanctions at issue here involve the Court's inherent power.[2]

10       "The power to punish for contempt is inherent in all courts." *Chambers v. NASCO, Inc.*,

11   501 U.S. 32, 44 (1991) (internal quotation and citation omitted).  "Civil contempt . . . consists of a

12   party's disobedience to a specific and definite court order by failure to take all reasonable steps

13   within the party's power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10

14   F.3d 693, 695 (9th Cir. 1993).   Although the contempt "need not be willful, [ ] a person should

15   not be held in contempt if his action appears to be based on a good faith and reasonable

16   interpretation of the court's order." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130 (9th

17   Cir. 2006) (quoting *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d at 695).  A

18   party may be found in contempt when it is established "'(1) that [the alleged contemnor] violated

19   the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable

20   interpretation of the order, (4) by clear and convincing evidence.'" *Frankl v. HTH Corp.*, 832 F.

21   Supp. 2d 1179, 1186 (D. Haw. 2011) (quoting *United States v. Bright*, 596 F.3d 683, 694 (9th Cir.

22   2010) (internal quotations and citations omitted)).

23       Under its inherent power, a court also may impose sanctions on a party where it finds that

24   it has acted "'in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *Fink v. Gomez*, 239

25   F.3d at 991 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)).  In *Fink*, the court

26   explained that "bad faith" "includes a broad range of willful improper conduct," "including

27

28   ───────────────
     [2] Although the Sanctions Motion invokes Rule 11, SinCo makes clear in its Reply brief that it is
     not seeking Rule 11 sanctions but rather, is invoking the Court's inherent power. *See* Reply at 7.

     8

1   recklessness when combined with an additional factor such as frivolousness, harassment, or an

2   improper purpose." *Id.* at 994. "'Because of the potency of inherent powers and the limited

3   control of their exercise, however, they must be used with great restraint and caution.'" *Life*

4   *Techs. Corp. v. Biosearch Techs., Inc.*, No. C-12-00852 WHA JCS, 2012 WL 1600393, at \*9

5   (N.D. Cal. May 7, 2012) (quoting *Toon v. Wackenhut Corr. Corp.*, 250 F.3d 950, 952 (5th Cir.

6   2001) (internal quotation and citation omitted). The Supreme Court has explained that "when

7   there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the

8   Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the

9   informed discretion of the court, neither the statute nor the Rules are up to the task, the court may

10  safely rely on its inherent power." *Chambers v. NASCO, Inc*., 501 U.S. at 50.

11          **B.      The Sanctions Motion**

12          The Sanctions Motion is based on a breach of the Protective Order in this case, namely, the

13  disclosure of information from the Chee deposition in Fazio's April 15 Letter. Neither Fazio nor

14  Defendants dispute that the April 15 letter included information from the transcript of Chee's

15  deposition, that counsel had, on the record, designated the entire transcript as protected

16  ATTORNEYS' EYES ONLY information, and that the time allowed under the Protective Order

17  for SinCo's counsel to make its designations had not yet expired. Because Fazio represented

18  Defendants at the time he filed the letter, Defendants are "deemed bound" by his acts and are

19  considered to have "notice of all facts, notice of which can be charged upon the attorney.'" *Link v.*

20  *Wabash R. Co*., 370 U.S. 626, 633–34 (1962) (internal quotation and citation omitted). Therefore,

21  the Court finds that SinCo has established by clear and convincing evidence that Defendants and

22  Fazio violated an order of this Court. The Court further finds that Fazio's letter did not constitute

23  "substantial compliance" with the Protective Order; nor have Defendants or Fazio offered any

24  good faith and reasonable interpretation of the Protective Order that would excuse their disclosure

25  of information in the Chee deposition transcript after counsel's designation on the record of the

26  entire transcript as protected and before the time allotted to SinCo for making its designations had

27  expired. Rather, while representing Defendants Fazio repeatedly failed to abide by the rules that

28  govern the treatment of confidential information in this case, causing the Court to issue numerous

1  orders for Defendants to cure these errors. *See, e.g.,* Docket Nos. 161, 179, 198.

2  The Court further finds that the inclusion in the April 15 letter of detailed information

3  about disputes that arose between counsel at the Chee deposition was for an improper purpose.

4  When Fazio filed the April 15 letter, which was purportedly a response to SinCo's motion for

5  leave to file a motion for reconsideration of the Court's April 9 Order, the Court had not asked for

6  a response from Defendants, which was not required.[3] *See* Civil Local Rule 7-9(d). Indeed, by

7  the time Fazio filed the April 15 letter, the Court had already denied SinCo's motion for

8  reconsideration. Defendants' counsel nonetheless chose to file the letter, and to include in it a

9  lengthy description of issues that arose at the Chee deposition. As there was no pending discovery

10  motion related to these issues, Fazio's inclusion of this discussion was an attempt to gain the upper

11  hand with the Court in its ongoing discovery disputes even though (once again) he had not

12  followed the Court's procedures for addressing discovery disputes as to any disputes Defendants

13  may have had with SinCo regarding what transpired at the Chee deposition.

14  In addition, Fazio's inclusion of detailed information about his questioning of Chee in the

15  April 15 letter, which was entirely unnecessary to resolve any discovery dispute that was properly

16  before the Court, also lends credence to SinCo's allegation that Defendants' purpose was, in fact,

17  to intimidate Chee and discourage him from testifying. This conclusion finds further support in

18  the fact that Fazio filed in the public record *additional* news reports about Chee's conviction in

19  support of his opposition brief, even though SinCo did not dispute that information about Chee's

20  conviction was publicly available and the Court had already ruled that information about that

21  conviction was nonetheless covered by the Protective Order. Therefore, the Court concludes that

22  Defendants' conduct in filing the April 15 letter in the public record was for an improper purpose

23  for this reason as well. Based on Defendants' reckless conduct and improper purpose, the Court

24  finds that Defendants and Fazio acted in bad faith.

25  Therefore, the Court concludes that the filing of the April 15 letter in the public record

26

27  ---

28  [3] Fazio appears to have been aware that he was not required to respond to SinCo's motion, starting the April 15 letter by stating that when he first saw SinCo's motion, he "decided not to respond to it," but subsequently he changed his mind. Docket No. 192.

United States District Court
Northern District of California

1  warrants an exercise of the Court's civil contempt power.

2  A primary aspect of the Court's discretion in exercising its inherent powers "is the ability

3  to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v.*

4  *NASCO, Inc.*, 501 U.S. at 44-45. "[A] court may assess attorney's fees when a party has "acted in

5  bad faith, vexatiously, wantonly, or for oppressive reasons." *Id*. at 45-46. As that requirement has

6  been met, the undersigned concludes that an award of attorneys' fees and costs incurred as a result

7  of Defendants' violation of the Protective Order is appropriate. The Court declines, however, to

8  award the full amount sought by SinCo, which has requested $16,976.50 in fees and costs. *See*

9  Andara Decl. (Docket No. 229-1) ¶ 21. SinCo's request is based on the time spent on its response

10  to the April 15 letter, including the preparation and filing of its motion for a protective order.

11  SinCo prevailed only in part on that motion, however, as discussed above. Accordingly, the Court

12  awards sanctions in the amount of $5,000 to SinCo. Of this amount, $1,500 shall be paid by Fazio

13  personally; the remainder will be paid by Defendants.[4]

14  **C.    The OSC**

15  Given the extremely contentious relationship between the DeHeng Law Offices and

16  SinCo's counsel, the retention of new counsel by Defendants would seem to have offered an

17  opportunity for a fresh start. Instead, the attorneys at WHGC – and in particular, Michael York –

18  have flagrantly ignored the Court's rules and knowingly made false statements to the Court about

19  their actions not just once but twice.  In particular, the Court finds that Defendants' attorneys

20  knowingly made false statements when: 1) they represented to the Court that they were unable to

21

22  _____

[4] The Court notes that SinCo could have requested sanctions for violation of a discovery order
23  under Rule 37 of the Federal Rules of Civil Procedure. Sanctions are permissible under Rule 37
when a party fails to comply with a court order, regardless of the reasons. *See Societe*
24  *Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197,
208, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) ("[T]he willfulness or good faith of [a party], can
25  hardly affect the fact of noncompliance and [is] relevant only to the path which the District Court
might follow in dealing with [the party's] failure to comply."); *David v. Hooker, Ltd.*, 560 F.2d
26  412, 420 (9th Cir.1977) ("in view of the possibility of light sanctions, even a negligent failure [to
obey an order] should come within" Rule 37); *Chicult v. U.S.*, 4 F.3d 1322, 1320 n. 23 (5th
27  Cir.1993) (citing *Societe* for the proposition that "the type of conduct displayed by a party had no
bearing on whether sanctions should be imposed, but only on the type of sanctions imposed").
28  The Court finds that sanctions are warranted under Rule 37 and therefore awards the sanctions
discussed above on that ground as well.

11

1    file their opposition on time because the DeHeng Law Offices had been uncooperative in

2    providing the information necessary to respond to the Sanctions Motion; and 2) they represented

3    to the Court that they did not know until *after* Fazio filed his opposition brief that Fazio and the

4    DeHeng Law Offices would not be arguing in opposition to that motion on behalf of Defendants.

5    In fact, the declarations and documentary evidence submitted by the parties make it crystal clear

6    that Defendants did not ask for additional information from the DeHeng Law Offices in order to

7    prepare their opposition brief – *ever*. Their attempt to spin Zhu's response to their May 29 request

8    for more legible copies of documents that were already in their possession as a refusal to provide

9    *any* further assistance to Defendants' new counsel is an unreasonable reading of that email.

10   Similarly, their argument that their July 3 request that the DeHeng law Offices "advise as to [its]

11   response" constituted a request for the substantive *content* of their opposition brief is an

12   unreasonable interpretation of WHGC's email. As York's later email made clear, this exchange

13   was about *who* would respond to the motion, not a request for information about the facts on

14   which the Sanctions Motion were based. The lack of any follow-up email clarifying that WHGC

15   was seeking assistance in learning the facts further supports the Court's reading of these emails.

16        Even more disturbing than these tortured attempts to show that the DeHeng Law Offices

17   refused to provide the assistance necessary to file an opposition brief on Defendants' behalf is

18   Defendants' assertion, supported by a sworn declaration by Michael York, that they were

19   surprised when Fazio's opposition did not make arguments on Defendants' behalf. This

20   representation is clearly false. It is simply not credible that York (and by extension, Defendants)

21   believed Fazio and the DeHeng Law Offices intended to submit an opposition on Defendants'

22   behalf when York had explicitly told the attorneys at the De Heng Law Offices in his July 3 email

23   that they were not authorized to respond on Defendants behalf. The Court further concludes that

24   York's omission of this email from the exhibit containing the two other emails exchanged on July

25   3 was intentional and was aimed at creating a false impression that the DeHeng Law Offices had

26   told WHGC that they would oppose the sanctions motion on their behalf.

27        Finally, Defendants offered no explanation whatsoever for failing to request an extension

28   of their deadline to file their opposition brief.

12

1   The conduct of Defendants' current counsel is egregious and warrants the imposition of

2   monetary sanctions.  SinCo has supplied a declaration documenting the attorneys' fees that it

3   incurred as a result of Defendants' failure to file a timely opposition and failure to request that the

4   Court extend the briefing deadlines, in the amount of $4,654.00.  *See* Docket No. 243-1.  Although

5   these fees were for work on the motion to strike that the Court denied, the undersigned finds that it

6   is appropriate to award all of the fees requested by SinCo.  SinCo's motion to strike would not

7   have been filed if Defendants' counsel had followed the Court's rules and extended to opposing

8   counsel the basic courtesy that is expected of members of the bar who practice before this Court.

9   As that motion was a reasonable response to Defendants' late opposition brief, it is appropriate

10  that they recover from Defendants the fees incurred in connection with that motion.    Therefore,

11  the Court exercises its inherent authority to impose sanctions on Defendants in the form of an

12  award of attorneys' fees, in the amount of $4,654.00, payable to SinCo.

13  **IV.     CONCLUSION**

14      The Sanctions Motion is GRANTED in part and DENIED in part.  The Court awards

15  $5,000 in sanctions against Defendants and Fazio, payable to SinCo, on that motion.  Of the

16  $5,000, Fazio shall pay $1,500 from his personal funds.  In addition, the Court awards $4,654.00

17  against Defendants and WHGC, also payable to SinCo.

18      **IT IS SO ORDERED.**

19  Dated:  September 3, 2019

20  _____
                        JOSEPH C. SPERO
21                      Chief Magistrate Judge

22

23

24

25

26

27

28