UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Joseph C. Spero, Magistrate Judge

SINCO TECHNOLOGIES PTE LTD.,   )
                               )
          Plaintiff,           )
                               )
vs.                            )   No. C 17-05517-EMC (JCS)
                               )
SINCO ELECTRONICS (DONGGUAN)   )
CO., LTD., et al.,             )
                               )
          Defendants.          )
_____)

                               San Francisco, California
                               Friday, August 23, 2019

 TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
          RECORDING 9:32 - 10:04 = 32 MINUTES

APPEARANCES:

For Plaintiff:
                          Ropers Majeski Kohn & Bentley
                          1001 Marshall Street
                          Redwood City, California 94063
                     BY:  LAEL D. ANDARA, ESQ.
                     BY:  DANIEL E. GAITAN, ESQ.


For Defendants:
                          Law Office of Michael G. York
                          1301 Dove Street
                          Suite 1050
                          Newport Beach, California
                            92660
                     BY:  MICHAEL G. YORK, ESQ.
                     BY:  JEFFREY C. WANG, ESQ.

2

Transcribed by:                    Echo Reporting, Inc.
                                   Contracted Court Reporter/
                                   Transcriber
                                   echoreporting@yahoo.com

3

Friday, August 23, 2019                              9:32 a.m.

P-R-O-C-E-E-D-I-N-G-S

--oOo--

THE CLERK:  We're calling Case Number 17-cv-05517, Sinco Technologies versus Sinco Electronics.

Appearances, please.

MR. ANDARA:  Good morning, your Honor.  Lael Andara and Daniel Gaiten for the plaintiff.

THE COURT:  Welcome.

MR. YORK:  Good morning, your Honor.  Michael York and Jeffrey Wang for the defendants.

MR. WANG:  Good morning, your Honor.  We subbed in late May, May 28th.

THE COURT:  Okay.  So there's no appearance by Mr. Fazio (phonetic), I take it.

MR. YORK:  We haven't see him.

THE COURT:  Okay.  Well, good, because I really want to talk to Mr. York.

So, Mr. York, I was disturbed by -- as you can tell by the OSC, I was disturbed by the statements made in your declaration at docket 236, along with your way late opposition to sanctions.  And that's why I issued the OSC.

MR. YORK:  I understand, your Honor.

THE COURT:  You compounded the problem when you responded to the OSC, in which you said two things.

4

First, you said that current counsel was not aware that prior counsel would not address the facts and circumstances vis-a-vis the defendants in their opposition.  That's one of the things you said in your declaration.

That's demonstrably false because on July 3rd, before the opposition was even due -- given you filed it a week late -- new counsel, you, specifically instructed old counsel not to file an opposition on behalf of the defendants.  You instructed them to do that, number one.

And even more disturbingly, in your response to the OSC, when you put in the July 3rd email correspondence, you omitted the portion of the correspondence where you did that.

So not only was the statement false but one could interpret your failure to put in that particular piece of the email correspondence as a deliberate attempt to mislead the Court by cherry-picking the record, number one.

Number two, you stated in your declaration in response to the OSC that prior counsel refused to provide any further information about the motion or response to the motion. That's what you said in your declaration.

In fact, you never asked for any further information or for them to respond on your behalf to the motion for sanctions.  You never asked them for further information on the motion for sanctions specifically.

And the May 29th email that you talk about as sort of justifying this statement to the Court is -- was not on that topic at all.  It was a very limited topic.  The only question at issue was the legibility of certain documents and whether the old counsel was going to cooperate with you in getting new copies of those documents.

And the -- it has a statement at the end when counsel says "We already produced all this stuff.  We can't help you any further because we're not getting paid" -- to use that as a justification for telling the Court that they refused to provide you with any information about the sanctions motion is unbelievable.

So my question to you is why shouldn't I refer you to the Court's standing Committee on Professional Responsibility in light of these two blatantly false statements to the Court.  I've got to tell you, I've had a terrible problem in this case.  That's why we have a special master, which we're going to also talk about.  Remind me to talk about that.

Counsel have been -- predominantly defense counsel, although I've got to say I think Mr. Andara has been inflexible in ways that I would have been more flexible.  But he's never affirmatively misled the Court.

And I've had problems with prior counsel.  And you can tell, because of the sanctions motion, those problems.  And

I was hopeful that when we got new counsel, things would be better. And maybe they are better, I don't know, in some ways.

They're not going to be better if this is the kind of stuff that you think you can put in front of a United States District Court and get away with it. This is not just sloppiness, in my judgment.

You can't have read the correspondence on July 3rd, which you specifically put in the record, and say at the same time "We didn't know until he filed his opposition that Fazio wasn't going to stand up for the defendants." You can't say that because you put it in.

So I don't know exactly what to do. But my first thought, apart from awarding attorneys' fees against you, is to refer you to the Committee on Professional Responsibility. That is, I suppose, better than being referred to the Bar, because that's more of an organization that is designed to make sure that people live up to the standards of practice we want. But still it's not something I do lightly.

So I'm all ears. I'm happy to hear any explanation you have for this.

MR. YORK: All right. Your Honor, if I may.

Going back to the second point of not providing information. The email cannot be looked at in a vacuum.

Before that, we tried to get files from former counsel.  We had a very difficult time getting files.  We argued for weeks to get files.

We had documents that were produced in discovery at a document management service.  They were threatening to terminate the contract with that company, which would prevent us getting access.

We then had the email where we asked for information, and they said we're not going to provide you any more information, and I --

THE COURT:  Well --

MR. YORK:  -- I recognize that that --

THE COURT:  That's not what it says.  That's not what it says.  It's not what it says.  And by that time, you had the documents.  You may not have had legible copies of some of them, but you had the documents.

MR. YORK:  Your Honor, we had the files, but in terms of what happened with respect to the protective order, we did not have that information.

THE COURT:  I don't necessarily disagree with that.  I don't know that I agree with it or disagree with it.  But what you didn't say is "I need to" -- "This attacks conduct that is not included in the files that you sent us.  We need to know what happened.  So I'm going to call you up," or something like that.

8

Nothing like that happened whatsoever.  Nothing like that happened whatsoever.  In fact, all of this stuff you're talking about happened more than a month before this was -- it was about -- it was the last correspondence on the fuss to get the files that -- you know, Mr. Fazio has been difficult in Court.  I'm sure he was difficult with you.  I have no doubt he was difficult.  No doubt.

Nonetheless --

MR. YORK:  Well, if I --

THE COURT:  All I'm worried about is what you told me.

MR. YORK:  Okay.

THE COURT:  I'm not worried about what you told him.

MR. YORK:  If I may just add one more piece to it, if I may, your Honor.

THE COURT:  Sure.

MR. YORK:  My point is that you can't look at the emails in isolation.  You have to look at them in the context of what happened before the emails but also what happened after the emails.  Okay.

Now, this is an email that Mr. Zhu, Z-H-U, sent to our client on July 16th, which is before we're at the point where we're talking about opposition to the motion --

THE COURT:  No.  July 3rd, you instructed the

9

other side not to file an opposition.

MR. YORK:  No, your Honor.  That's -- if I may, that's a misinterpretation of the email.

They said they were going to take care of the opposition --

THE COURT:  Well, I don't know, but by July 3rd, you got the email -- you got the opposition and you're talking about what to do with the opposition.

MR. YORK:  Okay.  But what I'm trying -- what I'm trying to do, your Honor, is address this issue that we didn't ask for information.

THE COURT:  Okay.  But July 16th, which is after the motion for sanctions is filed, what happened?

MR. YORK:  Okay.  Mr. Zhu sent an email to our client, which would have been --

THE COURT:  Is this in the record?

MR. YORK:  It is not, your Honor, because it was in Chinese and I had to have it translated.

THE COURT:  Okay.  What does it say?

MR. ANDARA:  Well, is it privileged?  It's to the client.

MR. YORK:  This part is not.

THE COURT:  Well, I'm sorry, you're going to read -- well, I don't know.  This is -- you're -- fine, you're going to do whatever you're going to do.  If counsel

for the other side thinks it's a waiver of the privilege on a subject, he's going to ask for all the other communications and want to depose your client on it, but that's up to you.

MR. YORK:  Well, your Honor, here's the issue that I have.  The statements I made were made in the context of all of the information I had at the time, which was a series of events.

This email is part of the information that I had when I made the statement.

THE COURT:  Yeah, I appreciate that.  It's either privileged or it's not.  If it's not privileged, then there's no problem with you telling me.

MR. YORK:  Okay.  I don't think it's privileged, your Honor.

THE COURT:  It's up to you to make that decision.

MR. YORK:  All right.  This is the attorney's statement, and I'm going to paraphrase slightly because it's broken English.

THE COURT:  Why don't you read it explicitly as translated.

MR. YORK:  Okay.

THE COURT:  No paraphrasing.

MR. YORK:  All right.  "There is a key issue that I have been doing this case for two years and I am

11

controlling a lot of important information related to this case.  If Sinco deny" -- and that's the literal translation -- "deny to pay the legal fee, I will not assist your new lawyers and the possibility of winning this case will be lower."

THE COURT:  Okay.

MR. YORK:  That to me is a blanket statement they're not going to cooperate, not a statement where we're talking about documents that are illegible or anything else. That is a blanket statement they are not going to cooperate and provide us with information.

THE COURT:  It's not, but I can see how you would think that it would -- well, you didn't know about that.

MR. YORK:  No, I did know, your Honor.

THE COURT:  You knew about it?  It's in Chinese.

MR. YORK:  That's because it was communicated to me verbally --

THE COURT:  Yeah.

MR. YORK:  -- translated later.

THE COURT:  And your --

MR. YORK:  Translated in writing.

THE COURT:  So let me just look at -- that Fazio's -- yes.  This is what I want.

Okay.  That's July 16th.  Your opposition was filed on the 24th.  Got it.

12

MR. YORK:  Correct.  So this was part of the information.  And, again, I wasn't looking at one email in isolation.  I was looking at a pattern of behavior, a pattern of attitude and information --

THE COURT:  So at the very least, you overstated it when you said to the Court that he refused to provide any further information to the motion.

MR. YORK:  I don't think I did, your Honor.  I think it's broader than that.  He refused to provide further information regarding anything, not just the motion.

THE COURT:  Because your client got this threatening letter from him and you didn't call him up and say "I need something" -- I don't understand why you didn't just ask him for anything.  I mean I appreciate that he's difficult to talk to.  I mean I've made Mr. Andara sit in my little jury room with him -- you may have that opportunity someday -- over and over again.

But you didn't say -- you said he specifically -- he refused to provide any further information about the motion.

He didn't do that.  He had some broad statements and a couple of them about -- in that latest one, threatening your client, not actually saying but threatening your client that if they didn't pay, he wouldn't give them more information -- some unidentified information about the motion -- about the case, not about the motion.

13

To stretch that into a specific representation to the Court is overstating it by twice or three times.  When you do something like that and you're in front a federal judge who sits with your trial judge at lunch every other day down in the dining room, you get the reputation of being a liar, if not a liar someone who can't be trusted to give you accurate information.  It is way overstated.

So that's defense number one.  Okay.

What's the defense to prior counsel would not address the facts and -- we were aware they would not address the facts and circumstances vis-a-vis the defendants.  They said "We're going to file an opposition."  You said, "You're not authorized to file anything on behalf of defendants."

MR. YORK:  That's correct.

THE COURT:  How in the face of that, can you say "We expected them to take on all this stuff"?

MR. YORK:  Your Honor, I think the email is being misinterpreted.  It was their conduct that gave rise to the motion.  Our position was -- our expectation was that they would file a motion explaining what happened because they're the ones that have the information.  At the same time --

THE COURT:  So what did you mean by "They can't file anything on behalf of the defendants"?

MR. YORK:  They cannot file something as the attorney of record for our clients and bind our clients --

14

THE COURT:  Okay.

MR. YORK:  -- in terms of any stipulation or concession.

THE COURT:  Okay.

MR. YORK:  They were not our client's attorney of record.  But at the same time we expected them to provide all of the information regarding the facts and circumstances as to what exactly happened.

THE COURT:  And you -- there's a debate as to what that meant, but I don't understand how, in the face of an email that said -- basically instructs them not to do anything about the defendants, in which case they could have done nothing.

MR. YORK:  They already indicated that they would file an opposition.

THE COURT:  Just on their own behalf, right?  Not on behalf of the --

MR. YORK:  Well, they didn't say that.

THE COURT:  Oh, give me a break.  You told them.  You told them.  So they will only file an opposition on their own behalf.

You told them not to give it -- pardon for me for taking you on like this.  You told them not to file an file an opposition on behalf of defendants.  Therefore -- therefore, the only opposition they could file was one on

15

their own behalf, and that could be whatever it is.  It could be throwing themselves on the mercy of the Court, as far as they're concerned.

I don't understand why you wouldn't expect -- I don't see how you could tell me with a straight face, having instructed them not to file any opposition on behalf of defendants -- which essentially says if you're going to do, it, it's going to about your own -- that you expected something to happen.

Not only that, but it's not an excuse for being late.  It's not an excuse for being late.  It's a ridiculous excuse for being late, not to put too fine a point on it, because you told them they could not file something on behalf of the defendants.  Therefore, you undertook it.  You would have to file something on behalf of the defendants, in a timely fashion.  You didn't even try.

I just -- it's just amazing.  But I don't understand what the explanation is with you told them don't do it on behalf of the defendants, why you expected anything other than them to defend their own -- themselves.

MR. YORK:  I expected them to provide a complete version of what happened.

THE COURT:  What's --

MR. YORK:  The facts and circumstances.

THE COURT:  Why do you think that?

16

MR. YORK:  Because they were --

THE COURT:  Because you don't have any control over any of this, right?

MR. YORK:  That's true.

THE COURT:  And they're not speaking on behalf of the defendants, right?

MR. YORK:  That is true.

THE COURT:  And they're not allowed to put in a full defense of the defendants, right?  So they could do whatever they want, right?

MR. YORK:  Your Honor, if I may.  There's a difference --

THE COURT:  Will you answer my question?

MR. YORK:  Sure.

THE COURT:  They could do whatever they want, right?

MR. YORK:  Yes.

THE COURT:  They could defend it however they want.

MR. YORK:  Yes.

THE COURT:  And you guessed that they would put in a full defense of your -- the conduct involved?

MR. YORK:  To me, it wasn't a guess, for this reason --

THE COURT:  They told you that.

17

MR. YORK:  No.  For this reason, if I may, your Honor.

It's obvious from the paperwork that they are the ones that handled this issue.  Anything that they did it for which our client would be held liable, they are responsible for.

Given the fact that they would be responsible to our client for any consequences, I would expect them to put in all of the facts and circumstances in their opposition that were relevant to the motion, not defend our client in the sense of we are doing this on behalf of defendant so-and-so, not in the sense of up in the upper left-hand corner saying "Attorneys for defendants," but still to provide a complete picture of what happened because they would be liable to our client if they did not.

THE COURT:  Did you ask to see a draft?

MR. YORK:  They weren't cooperating, no.

THE COURT:  Did --

MR. YORK:  No.  The answer is no, because our perspective was they were not cooperating in anything.

THE COURT:  And why was this a good excuse for you not even asking for an extension on the timely filing of an opposition?

MR. YORK:  Well, in retrospect, we should have asked for an extension.

18

THE COURT:  What do you mean, in retrospect?

MR. YORK:  Well --

THE COURT:  How could it occur to a competent lawyer standing there when you've got a deadline and you've instructed somebody not to file your opposition, that you just let it go by?  What's the justification for that?

MR. YORK:  Because our expectation was that that opposition would at least be a complete opposition.  Even if it wasn't filed on behalf of our client, it would be a complete opposition because of the law firm's liability to our client --

THE COURT:  I see.  So he files a personal opposition saying "I didn't do anything wrong," but he doesn't defend the client.  He doesn't say on behalf of the client, therefore, don't sanction the client.  He doesn't say "Well, the client didn't know about all this.  It's the lawyer" or whatever you would say on behalf of the defendants.  He doesn't say any of that.  He just -- you expected a personal opposition to be -- really?

MR. YORK:  Yes, your Honor.

THE COURT:  That's bizarre.

Well, I'll tell you, I think what I'm going to do about this is I'm not going to refer you to the Committee on Professional Standing (sic) that we have here.

I am going to sanction you, because this kind of

slippery language with the Court will not be tolerated. These two statements were false. You had an argument inside your head as to why they might be in some measure true, but I'm not -- I'm not happy with the misleading the Court, misleading the Court. You've misled the Court, and I'm not happy with that.

And I've got to tell you, it's the kind of thing that -- especially in a case like this, where there's lots of fights about trivia, frankly, that can get you in serious trouble. So I'm -- you've convinced me that -- of this, something I already knew, which is dealing with Mr. Fazio is a pain. I appreciate that.

MR. WANG: My I address the Court?

THE COURT: Briefly.

MR. WANG: Thank you, your Honor. I'm Mr. Michael York's colleague.

So, your Honor, we subbed in the case late May with great reluctance. Your Honor, your message to the client was received. Your place -- your prior hearing on the public files, the audio files. And also you ordered our client with one appearance. She went back to the company delivering message that your Honor would like the client to know what their lawyer was doing. They heard you. They received the message.

THE COURT: Well, they didn't completely hear me

20

because they didn't even appear at one of the hearings where they were ordered to appear in person.  They weren't.

MR. WANG:  It was prior to our time, your Honor.

THE COURT:  I understand that.  So the client says to you they've heard these messages.  Okay.  Well, I hope so.

MR. WANG:  So in fact, in that hearing, they hired an independent San Francisco law firm to audit that hearing and to report back to them what they observed.

So they say that they found their lawyer's been disrespectful to the Court, interrupting the Court repeatedly.  Okay.  They said they're (indiscernible).

Therefore, they say you -- the message is that you needed to have a new law firm to work with opposing counsel like in a harmonious way and follow the Court's order.

So if I may, your Honor, it's all these -- like, for example, all these issues that your Honor addressed today have nothing to do with the case.  That's the frustrating part.

And our duty, your Honor, we only have the client's best interest in mind.  Okay.  So your Honor, you see that -- we working as to step in and sub out after two years.  Okay.  So -- and also at a critical time.

First, before we even heard this (indiscernible) was going on, I went with Mr. (indiscernible) to Singapore with

21

long deposition.  We actually work out perfectly.  I like opposing counsel.  I think he's fair.  You know, he's easy to work with.

So -- and also we had different thoughts about what this case is all about.  If plaintiff in fact was to sell -- sold this Chinese company to the investor, we are actually (indiscernible) this acquisition.

That's why Judge Chen ordered us to focus on, or shall I say, like discovery order, and we're complying with that.

Your Honor, we tried with great hardship to decipher what we inherited from prior counsel.  So it's so difficult, if I may, like it's a mess.  I think it's a mess.

So we made a deal.  We going to re-do all the production.

THE COURT:  So I don't want to get into everything else that's going on in the world here.

MR. WANG:  Sure.

THE COURT:  I'm focused on two very discrete representations that were made to the Court in the sworn declaration and nothing else.  I am focusing on that because I want to head off any problems that might start up in the future because of some inclination to embellish, exaggerate or misstate the facts.  That's all.

If you want to address -- and counsel has addressed those things.  If you want to add to that little piece, I'd

22

be happy to talk to you about that.  I don't want to talk about everything else that's going on.  That's in the hands of the special master.

MR. WANG:  Understood.  So I understand it's before Judge Ware.  So I'm standing here today -- and actually he brought up a very good point.

So we are -- we have -- we can only have our client's best interest in mind.  We have to take care of -- get the attorney-client privileged information, work product, whatever, with us and with the prior counsel.

So that's why -- so whether we can say without prejudicing the client, that's all that we are facing you today.

THE COURT:  So you're saying those things you can't tell me.

MR. WANG:  No, no, no.  We try in a most dedicated way without breaching the -- prejudicing the client --

THE COURT:  Yes, of course.

MR. WANG:  Okay.  But you know, we are new counsel in this case, your Honor.  We are trying our best.

THE COURT:  Good.

MR. WANG:  We really -- I promise you we are trying our best.  So we have a third -- we say that we don't even want to do, shall I say, to give shall I say, like (indiscernible) the Court and opposing counsel.  So we're

23

having third parties actually do all the production.

THE COURT:  No, no.  I know that.

MR. WANG:  Okay.  So --

THE COURT:  I don't want to go into all of that.

MR. WANG:  So that's the big picture, you see.

THE COURT:  Okay.

MR. WANG:  So we inherited a messy situation, you know.

THE COURT:  Yes.

MR. WANG:  In fact, what we saw, like prior counsel Mr. Fazio, we thought, hey, this is like a breach of fiduciary -- (indiscernible) order, the Court order.  So it was before our time and we didn't know why -- we asked the client "Did you know anything about this?"  They said no.  Not a word.  They didn't know anything about this.

So "Did you know that" actually -- so in the beginning --

THE COURT:  So stop.  You're going on and on about lots of things that happened --

MR. WANG:  Yes.

THE COURT:  -- and lots of things that are going on now.

I am not actually asking about any of those things.  So if you have something to say about these two very specific misstatements, I'm happy to hear from you.

24

I don't want to hear anything else.  Have you got anything else to say on that?

MR. WANG:  The --

THE COURT:  The two statements in the declaration.

MR. WANG:  I'm just trying to concur with what Mr. York said --

THE COURT:  Okay.  I --

MR. WANG:  We're facing a very difficult situation.

THE COURT:  I appreciate it.  I appreciate that.

So would anyone else like to be heard on the sanctions motion?

MR. ANDARA:  Your Honor, if I may.

THE COURT:  Yes.  Briefly.

MR. ANDARA:  Absolutely.  I agree completely.

The new law firm, their notice of appearance was May 16, 2019 at ECF 2:15.  That was the same day that the Court issued the order on the protective order.

We immediately engaged with new counsel and said we're going to bring a motion for sanctions.  We met in Singapore in May.  We said -- we tried to negotiate so we didn't have to bring this motion.  They were fully aware of this motion.

Mr. York even confirms in his brief to the Court that we provided him a copy of the full motion on June 17, 2019, weeks before we filed the motion.  I think that context is

25

also important.

THE COURT:  Okay.  Thank you.

It speaks to they knew your side of it.  Maybe not their side.

Okay.  Would anyone else like to be heard on the sanctions motion?

MR. YORK:  No, your Honor.

THE COURT:  Okay.  So has the special master's fees been paid?

MR. WANG:  Yes.

MR. YORK:  Yes.

THE COURT:  Okay.  Great.  Because the last thing I heard from them is they hadn't been.  So that's good.

All right.  So thank you very much.  I have nothing further.  We'll take it under --

Oh, yeah, one more thing.

So on the -- we have a pending protective order motion to seal deposition transcripts from the deposition of Joah (phonetic), Mr. Joe (phonetic).  And it's a 205 dash a number of things, but it's 205.

It's an administrative motion.  And prior counsel also put in a declaration which -- or someone put in a declaration which, after much pushing and shoving, we got counsel to put in what was necessary, which was a red -- a yellow -- a copy with the highlighted pieces that

26

required -- you ought to go look at that, because the highlighted pieces are obviously an effort, and I think properly so, to redact out the names of the clients of the company. And I won't say them out loud here but there are a number of them.

If I just granted the motion as it currently exists with those highlights, many of those clients' names would be exposed because the redactions do not include other places in the transcript where those names are exposed.

So I'd like you to go back in, and I'll give you one week from today to submit a revised yellow highlighted version of what you want redacted, and we'll take a judgment from there. Okay? And the reason I ask that is because then we're going to -- then there's an administrative motion on this motion. And so it snowballs from this.

But I think that you want to look at that to make sure that they actually caught all the names wherever they appear that you want to -- I mean I don't know what else there is, but from an outsider's point of view, my law clerk saw that. And so I thought you ought to look at that.

MR. WANG: Thank you, your Honor. We will do that.

THE COURT: Okay. Thank you.

MR. YORK: Thank you, your Honor.

MR. ANDARA: Thank you, your Honor.

27

THE COURT:  We're in recess.

(Proceedings adjourned at 10:04 a.m.)

28

<u>CERTIFICATE OF TRANSCRIBER</u>

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

Echo Reporting, Inc., Transcriber

Wednesday, September 4, 2019

*Echo Reporting, Inc.*