LAEL D. ANDARA (SBN 215416)
DANIEL E. GAITAN (SBN 326413)
MARIO ISKANDER (SBN 327025)
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street, Suite 500
Redwood City, CA  94063-2052
Telephone:    (650) 364-8200
Facsimile:     (650) 780-1685
Email:  lael.andara@rmkb.com
            daniel.gaitan@rmkb.com

**WHGC, P.L.C.**
JEFFREY C.P. WANG (SBN 144414)
JeffreyWang@WHGCLaw.com
JOHN E. GIUST (SBN196337)
JohnGiust@WHGCLaw.com
G.BRENT SIMS (SBN179397)
BrentSims@WHGCLaw.com
KATHLEEN E. ALPARCE (SBN 230935)
KathleenAlparce@WHGCLaw.com
JESSICA A. CRABBE (SBN 263668)
JessicaCrabbe@WHGCLaw.com
130 1 Dove Street, Suite 1050
Newport Beach, CA 92660
Telephone: (949) 833-8483
Facsimile: (866) 881-5007

*Attorneys for Plaintiff*
SINCO TECHNOLOGIES PTE LTD.

*Attorneys for Defendants*
XINGKE ELECTRONICS (DONGGUAN)
CO., LTD.
formerly known as SINCO ELECTRONICS
(DONGGUAN)
CO. LTD., MUI LIANG TJOA aka ML
TJOA, NG CHER
YONG aka CY NG, and LIEW YEW
SOON aka MARK LIEW

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SINCO TECHNOLOGIES PTE LTD.,<br><br>Plaintiff,<br><br>v.<br><br>SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS TECHNOLOGY CO., LTD.; SINCOO ELECTRONICS TECHNOLOGY CO., LTD.; MUI LIANG TJOA (an individual); NG CHER YONG AKA CY NG (an individual); and LIEW YEW SOON AKA MARK LIEW (an individual),<br><br>Defendants. | CASE NO. 3:17CV5517 EMC<br><br>**UPDATED JOINT STATUS CONFERENCE STATEMENT**<br><br>Date:          **November 14, 2019**<br>Time:          **10:30 a.m.**<br>Courtroom:   **5, 17th Floor**<br><br>**[Sec. Amend. Complaint: February 23, 2018]** |

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

UPDATED JOINT STATUS CONFERENCE
STATEMENT

Plaintiff SINCO TECHNOLOGIES PTE, LTD. ("SinCo") and Defendants Ng Cher Yong AKA Cy Ng ("Mr. Ng"), Mui Liang Tjoa ("Mr. Tjoa"), Liew Yew Soon, AKA Mark Liew ("Mr. Liew") and XingKe Electronics (Dongguan) Co., Ltd. ("XingKe ")[1] (collectively, "Parties") jointly submit this Updated Joint Status Conference Statement in accordance with the Court's Minute Entry of **June 13, 2019** [Dkt. No. 224.] The Parties previously appeared before this Court on **June 13, 2019** where the Court set a jury trial date for **June, 22, 2020**.

The above-referenced case concerns trademark infringement and related federal and state torts. The plaintiff is SinCo Technologies Pte, Ltd. ("SinCo"), a Singaporean company. It initiated this lawsuit on **September 22, 2017**, a year after filing a related lawsuit in State Court. [ECF 1.] The following entities and persons were sued:

**Sinco Electronics (Dongguan) Co., Ltd.,** a Chinese company, now known as XingKe Electronics (Dongguan) Co., Ltd. ("XingKe"). A default was entered by the Clerk in the Action on **August 24, 2018**, and later set aside by stipulation on **December 19, 2018** [ECF 111] followed by an Answer and Counterclaims to the Second Amended Complaint filed by DG on **January 29, 2019** [ECF 135];

**Mr. Ng**, an employee of DG and a former employee of SinCo appeared in this Action on **March 16, 2018** [ECF 33]; and

**Mr. Liew**, an employee of DG and a former employee of SinCo who filed an answer with counterclaims against SinCo on **November 16, 2019** [ECF 99.]

In it's Second Amended Complaint, filed on **February 23, 2018**, SinCo added the following defendants to this case [ECF 23]:

**XingKe Technology (Dongguan) Co., Ltd.,** a Chinese company, formerly known as SinCo Electronics (Dongguan) Co., Ltd., ("XingKe"), who filed its answer and counterclaim against SinCo on **January 29, 2019** [ECF 135];

**Sincoo Electronics Technology Co., Ltd.**, (also alleged to be affiliated with SinCo

---

[1] Sinco Electronics (Dongguan) Co. Ltd. changed its name to XingKe Electronics (Dongguan) Co. Ltd. in March of 2017.

UPDATED JOINT STATUS CONFERENCE STATEMENT

China) thereafter a default was entered by the Clerk on **December 17, 2018 [ECF 110]**; and

**Mr. Tjoa** (a former executive of XingKe and former President and CEO of Jinlong Machinery and Electronics Co., Ltd.) who filed an answer on **November 1, 2018** [ECF 87].

## I.   JURISDICTION, VENUE, AND SERVICE

This Court has subject matter jurisdiction over SinCo's Lanham Act claims under 15 U.S.C. §1051, et seq. This Court has jurisdiction over the subject matter of this action under the Judicial Code, 28 U.S.C. §§1331 (a federal question) and 1338(a) and (b) (Acts of Congress relating to trademarks), the Lanham Act, 15 U.S.C. §1121, et seq., and principles of supplemental jurisdiction. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2),(c) and §1400(a). The nucleus of facts giving rise to Plaintiff's claims occurred in this jurisdiction and the United States ("U.S"). This is the second action brought by SinCo; the first action was brought on **October 28, 2016** in the Superior Court of California, County of Santa Clara, Case No. 16-cv-301867 (the "State Action").

On **February 19, 2019** Plaintiff filed Motion for Leave to File Third Amended Complaint. (Dkt. No. 143.) On the hearing of said motion on **April 18, 2019**, Judge Chen directed the parties to limit the scope of this litigation to the trademark claims, directing that the employment and trade secret issues be litigated in the Santa Clara Superior action.  To facilitate that end the Defendant Liew agreed to withdraw his Counterclaims [Dkt. No. 99] in whole and XingKe agreed to make an appearance in the Santa Clara Superior Action and withdraw counterclaims. Specifically, on **April 18, 2019,** Judge Chen stated:

> *Accordingly, the Court conditionally DENIES Sinco Singapore's motion to amend. The denial is conditioned on Sinco China making an appearance in the state action and on Sinco China and Mr. Liew dismissing the counterclaims described above in this action (with the intent to pursue the counterclaims in the state action instead). Because Mr. Liew will be dismissing his counterclaims, Sinco Singapore's motion to dismiss his counterclaims is conditionally DENIED as moot.* [Dkt. No. 195 2:22-3:3]

UPDATED JOINT STATUS CONFERENCE
STATEMENT

SinCo completed the depositions of several XingKe employees and Defendant Tjoa in Singapore, from **May 28, 2019** to **June 3, 2019**. [Dkt. No. 188.]  Defendants retained new counsel in May, so the deposition of the SinCo Singapore employees ordered by the Court, were delayed until new counsel becomes more familiar with the case. Plaintiff's 30(B)(6) deposition was taken on **September 16, 2019**.  SinCo further took the deposition of Mr. Liu Deqiang on **November 1, 2019** for more than 7 hours, but Mr. Liu's deposition was not completed; however, pursuant to an agreement by the parties, the Defendants have stipulated to the return and complete Mr. Liu's deposition at a date yet to be determined.

On **August 29, 2019**, SinCo filed a Motion for Partial Summary Judgment.  [Dkt. No. 247.]  The Clerk reset this hearing for **December 19, 2019**. [Dkt. No. 277.]

## *SINCO'S STATEMENT:*

This is case arising out of Defendant Cher Yong Ng ("Mr. Ng"), Defendant Mark Liew ("Mr. Liew"), Defendant Mui Liang Tjoa ("Mr. Tjoa") and defendants entities SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS (DONGGUAN) CO., LTD; XINGKE ELECTRONICS TECHNOLOGY CO., LTD.; SINCOO ELECTRONICS TECHNOLOGY CO., LTD. ("XingKe") conspiring to steal Plaintiff SINCO TECHNOLOGIES PTE LTD.'s ("SinCo") United States ("U.S.") customers by falsely and deceptively using SinCo's U.S. trademarks, trade secrets and employees to divert business while in the U.S.

**TRADEMARK USE**. SinCo began operations in Singapore in 1995 and began using the SinCo word mark and logo within a year. SinCo contracted with the factory that later became Electronics DG to do the manufacturing of electronic components and parts it helped develop and design for U.S. customers. SinCo provided DG a limited license to use of its trademark on packaging and for other uses in the scope of the work being done for SinCo, for example, to facilitate drop shipping and other logistical issues (as is common in the industry). SinCo obtained U.S. trademarks beginning in 2006, Trademark Registration 3188537.

**LICENSE.** As the years progressed SinCo's founder and owner, recognizing that XingKe did the majority of SinCo's manufacturing, personally invested as a minority owner in the entity. Thereafter, in 2000-2003 SinCo decided the volume of production at XingKe and the frequency of U.S. customers' requests to visit the facility required on-site oversight and interface

UPDATED JOINT STATUS CONFERENCE
STATEMENT

capabilities by SinCo. Stationing SinCo engineers on site at the contract manufacturer, SinCo could more readily make changes and address customers concerns, as SinCo maintained the relationship. To help facilitate and capitalize on this on-sight presence, SinCo expanded the scope of the license to XingKe to use the SinCo name on the factory so that U.S. Customers visiting the SinCo employees would see uniformity between the development and manufacturing aspects of SinCo. The license for XingKe to use the SinCo mark never extended beyond the Republic of China ("P.R.C.") SinCo continued to maintain the U.S. relationships and would receive purchase orders from U.S. customers directly. Thereafter, SinCo would negotiate separately with XingKe to have the parts made under a separate purchase order. According to Mr. Tjoa, XingKe never knew the prices SinCo charged the U.S. customers.  Mr. Tjoa has since left the company.

   After XingKe's conspiracy was revealed, XingKe changed the English name on the factory from SinCo to XingKe (phonetic equivalent). As confirmed in Mr. Ng's and Mr. Tjoa's testimony, the Chinese characters for the company SINCO ELECTRONICS (DONGGUAN) CO., LTD. and XINGKE ELECTRONICS (DONGGUAN) CO., LTD. Are identical. XINGKE ELECTRONICS (DONGGUAN) CO., LTD. is the same entity as XingKe doing business under the phonetic equivalent of its English name in an attempt to sidestep U.S. trademark laws, while keeping the same colors as SinCo's trademark to deceive and divert SinCo's customers.

   **PASSING OFF BY DEFENDANTS.** DG, Mr. Tjoa, Mr. Liew and Mr. Ng have used three variations of SinCo's trademarks, all at the same address: SinCo/SinCoo/XingKe. The addition of an "o" to SinCo, contradicts Defendants' assertion that XingKe ever had the right to the mark "SinCo," beyond the scope of work. And when contacted Sincoo admitted this was an improper use.

  

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

**P.R.C. TRADEMARK.** Unknown to SinCo until the State Action, XingKe filed for a trademark on the SinCo word mark and logo in P.R.C. DG attempted a similar strategy after SinCo initiated the State Action, filing no less than 15 applications in the United States Patent and Trademark Office ("USPTO") for the SinCo word mark and logo in the U.S., which have all been abandoned or suspended. Two of the applications are suspended due to fraud[2] on the USPTO in Opposition No. 91243086. It was revealed to the USPTO that XingKe filed two applications for the mark "XingKe" in which DG fraudulently used the identity of Miriam Paton in the filing and prosecution of the two "XingKe" marks, and forged Xu Shugong's signature in XingKe's Answer to SinCo's Opposition, which SinCo was led to believe was both ill and had no role in XingKe since at or around 2016. SinCo also challenged the P.R.C trademark wherein XingKe perjured itself by claiming to have first designed the SinCo Logo before SinCo, who began using the mark in 1996. The perjury was revealed by the design contract between XingKe and Dongguan Humen Yuan Su Computer Graphic Design Service Business which was dated **July 1, 2015**. On **April 26, 2018** and **May 4, 2018**, DG's P.R.C. trademarks (Registration Nos. 8607396 and 8607476) were nullified pursuant to Article 31, Paragraphs 1 and 2 of Article 45 and Article 46 of the P.R.C. preamended Trademark Law based on "[XingKe's] misappropriation, registration and use of the trademark "SinCo (with device)" without authorization from [SinCo] have severely infringed the prior copyright and other legitimate rights and interests of the [SinCo]." The Trademark office in the P.R.C invalidated XingKe's attempt to use SinCo's trademarks beyond the scope as a contract manufacturer, just as the USPTO has rejected over a dozen trademark applications filed by XingKe for "SinCo," and "XingKe." Mr. Tjoa confirmed at his deposition that he submitted a perjured declaration to the USPTO in support of these applications

**CONSPIRACY**. In 2015-2016, U.S. customers brought up safety and quality concerns in the form of audits. At that time SinCo considered an outright acquisition of the factory and land, provided they could address the quality and working conditions and obtained certain documents. XingKe in an attempt to avoid the significant cost of addressing these concerns began conspiring with Mr. Ng and Mr. Liew to divert SinCo's business to XingKe and planned to sell the company

---

[2] On **October 26, 2018**, Michelle G. Trevino (counsel for SinCo) filed a declaration detailing the discovery that: (1) applications nos. 87/658,522 and 87/658,544 falsely indicated as being filed by Miriam Paton (Ex. A – Miriam Paton's Declaration confirming improper use of her identity), and forgery of Xu Shugong's signature on Electronics DG's Answer to SinCo's Opposition, filed on **September 26, 2018** (Ex. B is USPTO's Order requesting DG explain the fraudulent use of Miriam Paton's identity and Xu Shugong's capacity to sign on behalf of DG). (ECF 84.)

out from under SinCo. XingKe and Mr. Ng were able to steal accounts from SinCo leveraging the SinCo trademarks as early as **August 21, 2015**, and with this success sold Jinlong Machinery & Electronics Co., Ltd. ("JinLong") a majority interest in XingKe through a holding company. Mr. Tjoa (president of JinLong and XingKe) and JinLong's purchase price of $1.1B RMB was not limited to the factory and related assets, but was in substantial part focused on the acquisition of SinCo's: marks, trade secret information, customers and embedded employees. Mr. Tjoa (as the new CEO and President of XingKe) and Mr. Ng directed Mr. Liew to travel to the U.S. in **July of 2016** to capture the SinCo business for DG. Mr. Liew falsely told SinCo he was traveling to the U.S. on vacation, a fact contradicted by his VISA application. SinCo's U.S. customers having never met with Mr. Liew or Mr. Ng in the U.S., questioned SinCo as to this change in protocol. SinCo began to investigate. After meeting with several U.S. customers as "SinCo," Mr. Liew and Mr. Tjoa were successful in converting business to XingKe, by claiming to be SinCo.

**INFRINGEMENT**. While employees of SinCo and without their knowledge or consent, Mr. Liew and Mr. Ng first entered the United States on **July 18, 2016** and **January 5, 2017,** respectively. Mr. Liew and Mr. Ng had never traveled to the U.S. previously in the scope of their employment as SinCo maintained sales staff stationed in the U.S. and Singapore that facilitated those relationships. Mr. Liew and Mr. Ng were accompanied not by SinCo sales representatives, but by *sales representatives of SinCo DG (Now XingKe.)* Mr. Tjoa and Mr. Ng were in California meeting with SinCo's U.S. customers, on or about **August 6, 2017**. Although according to Mr. Ng, his new employer stopped using the SinCo mark in P.R.C. on or about **March 15, 2017**, Mr. Ng continued to use his SinCo business card and email address, communicating with SinCo's U.S. customers, even though he claimed he was XingKe. Even before this action was filed, and while still employed by SinCo, XingKe , Mr. Tjoa and Mr. Liew converted an existing legacy project with SinCo and a Mountain View company worth ten of millions in annual revenue away from SinCo. It is no surprise that Mr. Liew had been previously working on that project months as an employee of SinCo, as was the case with another SinCo customer out of the Boston area that also switched to XingKe. The tooling that SinCo had purchased from XingKe was never returned, but was instead used to support and improperly retain the diverted U.S. contracts to XingKe. XingKe and Mr. Tjoa could not have succeeded without the facilitation of Mr. Ng and his subordinate Mr. Liew, as they leveraged the fact that SINCO's U.S. clients knew them as SinCo employees.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1

**DEFENDANTS' STATEMENT:**

2

*(i) The Creation of a Joint Venture and Close Relationship of the Parties*

3      Plaintiff Sinco Technologies Pte Ltd was founded by Bryan Lim in 1995 in Singapore and

4    served as a supplier of various electronic components to many western firms.  SinCo itself was

5    and is primarily a sales and marketing company without any manufacturing facility. Since the

6    very beginning, after obtaining purchase orders from customers, SinCo would outsource to

7    different manufacturing factories in Asia including China.

8      Defendant Sinco Electronics (Dongguan), now known as XINGKE ELECTRONICS

9    (DONGGUAN) CO., LTD, was one of such manufacturing factories that SinCo used since early

10    2000s.  As a separate legal entity, Xingke was registered in China in around 2005 by three

11    individuals, including Bryan Lim as a minority shareholder and another gentleman (Mr. Xu) as a

12    majority shareholder. Even though SinCo did not own any interest in Xingke, the companies

13    worked closely because Bryan Lim was a shareholder behind both.

14      Since the very beginning, the relationship between SinCo and Xingke was intertwined,

15    which was intentionally designed by Bryan Lim. In fact, Bryan Lim deliberately turned SinCo,

16    Xingke, and several other companies affiliated with Bryan Lim into a "joint venture", and even

17    gave a name to the joint venture called "Sinco Group".  Since the very beginning, Bryan Lim and

18    SinCo held themselves out to be a large, capable and sophisticated enterprise called the Sinco

19    Group. The Sinco Group had multiple locations around the globe, including a sales office in

20    Singapore (i.e. SinCo Singapore), companies in Hong Kong, Samoa, Taiwan, and manufacturing

21    factories in China (i.e. Xingke) and Malaysia. In reality, there was never a legal entity called the

22    Sinco Group who served as the parent company or had the controlling ownership of the member

23    companies.

24      The grouping of so many different companies together was to create the impression that

25    the Sinco Group was a world-wide leader in the industry and more importantly, it had its own

26    manufacturing facilities. In this way, customers would feel that they were dealing with

27    manufacturing factories directly without going through some middlemen, which was good for

28    quality control and cost savings.

- 8 -

UPDATED JOINT STATUS CONFERENCE
STATEMENT

When the joint venture was operating, members including SinCo and Xingke had joint control over the venture, they shared profits of the undertaking, and both of them had ownership interest in the joint venture. As a result, customers were led to believe that the Sinco Group was a top-tier enterprise in the industry with its own manufacturing facilities.

*(ii) The Signs and Consequences of the Joint Venture*

Bryan Lim and SinCo went to great lengths to ensure that Xingke would always appear as part of the joint venture of the Sinco Group, including but not limited to the following:

· Xingke was only a Chinese company and had an official Chinese name registered with the Chinese government. But when communicating with outside customers, its official English name became "Sinco Electronics (Dongguan) Co. Ltd." This name was used for more than ten years (from 2005 until 2017). The word "Sinco" was intentionally used to signal that Xingke was part of the Sinco Group as Bryan Lim intended.

· For more than ten years since 2005, Xingke used the "@sincocn.cn" email address and used "sincocn.cn" as its company website, further indicating that Xingke was part of the Sinco Group.

· For more than ten years since 2005, SinCo required Xingke and its employees to use SinCo's "Sinco" trademarks and logos for all internal or external purposes without any restrictions, making Xingke appear as part of the Sinco Group.

· For more than ten years since 2005, SinCo's marketing materials including websites consistently listed Xingke as its manufacturing facility under the common and joint name of "Sinco".

· For more than ten years since 2005, SinCo repeatedly informed customers that Xingke was the manufacturing facility of the Sinco Group, and SinCo arranged frequent customer visits to Xingke's factory in China and told customers that they were actually visiting the manufacturing facility of the Sinco Group.

As a result of this joint relationship, from the very beginning SinCo and Xingke shared resources, technologies, and customers. For example, SinCo and Xingke shared customers in a way that customers always believed that there was no distinction between SinCo and Xingke.

UPDATED JOINT STATUS CONFERENCE
STATEMENT

1   More importantly, SinCo gave an open ended and free license to Xingke to use the "Sinco

2   trademarks" since 2005.

3          As a result, the "Sinco" trademark and the customers belonged to the joint venture, not

4   SinCo. Because Xingke was a member of the joint venture, it had the full right to use the

5   trademarks and develop customers. Consequently, Xingke neither infringed SinCo's trademarks

6   nor stole trade secrets from SinCo.  In fact, documents indicate that SinCo instructed Xingke to

7   use the "Sinco" Marks without restriction. (*See* Chee 30(b)(6) Deposition, Exhibit 3.)

8          *(iii) Mr. Cy and Mr. Liew as Employees of Xingke or the Joint Venture*

9          As part of the joint venture, both companies acted together to hire engineers. For example,

10  when Xingke had trouble hiring qualified engineers, and SinCo stepped in and tried to recruit and

11  hire local Singapore engineers for Xingke. Defendants Mr. Ng and Mr. Liew were hired in this

12  manner. The initial employment agreements were executed between these engineers and SinCo,

13  making them appearing as employees of SinCo. However, they were stationed in Xingke's

14  factories, controlled by Xingke, and paid by Xingke. Under the law they were therefore

15  "employees" of Xingke, not SinCo.  Because SinCo and Xingke acted in concert closely, the

16  hired engineers could not tell the distinction between SinCo and Xingke.

17         *(iv) The End of the Joint Venture*

18         The joint venture continued on till Xingke's ownership experienced a change in 2016

19  when the majority shareholder (Mr. Xu Shugong) of Defendant became very ill and wanted to

20  retire. Eventually all shares of Xingke – including Bryan Lim's minority shares – were sold to

21  Jinlong Machinery & Electronics Co. Ltd (also known as KOTL) in around 2016.

22         After the ownership change, Xingke decided to shift its business strategies by spending

23  more effort on developing and serving its own customers, and to reduce the reliance on the

24  business from SinCo. Xingke always had the freedom to go after its own clients and indeed had

25  its independent business since the very beginning. This means that Xingke became a major

26  competitor of SinCo in many markets, which was the reason for the present litigation.

27         As a result, the relationship between the parties has deteriorated since 2016. SinCo for the

28  first time started to allege that Xingke was infringing its trademarks, stealing its customers,

UPDATED JOINT STATUS CONFERENCE
STATEMENT

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

breaching various agreements, and engaging in unfair competition.

Despite this, SinCo still had some unfinished orders with Xingke. Because SinCo could not find a replacement factory in time, Xingke agreed to honor its promise and completed the orders for SinCo. But in early 2017, because of the lawsuits, Xingke decided to disassociate itself with Sinco Group and to rebrand itself. Xingke in 2017 changed its company English name from "Sinco Electronics (Dongguan) Co. Ltd." to "Xingke Electronics (Dongguan) Co. Ltd." Sinco China also filed a trademark application for the "Xingke" trademark.

Because the joint venture began to disintegrate in 2016 and 2017 due to the ownership change in Xingke, SinCo started to take a wide range of unfair and illegal actions as an attempt to tarnish Xingke's reputation and interfere with Xingke' relations with its customers, by making false reports about Xingke's violations of environmental regulations to Xingke's customers as well as Chinese governmental authorities. In 2017 SinCo also brought a lawsuit in China against Xingke but voluntarily dismissed its lawsuit because it lacked evidence to continue its frivolous case against Sinco China. SinCo also chose to file two separate lawsuits in the U.S. including the present action and a related State Court action.

*(v.) Summary*

It is no surprise that Xingke was using the same marks as SinCo, since this use was *intended and indeed required* by the entities, to indicate that Sinco Group was a vast enterprise. Shortly after Xingke was sold to a third party is when SinCo, alone, claimed ownership of the Sinco marks. Of note is that the unfettered permission to use the Sinco Marks over the last decade was not reflected in any written agreement, nor was there any oversight by Sinco Singapore over the use of its mark with associated products. Moreover, the customers of SinCo, as well as Xingke are highly sophisticated large corporations who were never misled as to the origin of the goods they were purchasing.

Like Mr. Ng, Mr. Liew was and is an engineer working for Xingke at its factory in China. Although his employment agreement was nominally with SinCo. For purposes of this case, the individual defendants were "employed," supervised and directed by Xingke or the venture.

UPDATED JOINT STATUS CONFERENCE
STATEMENT

## II.   DISCOVERY

*SinCo's Statement:*

On **May 31, 2019** at 12:00 PM Counsel agreed that the most efficient way to ameliorate all of Plaintiff's discovery concerns as to production, in the form of missing metadata, natives and attachments, was to allow Defendants to replace prior production rather than piecemeal each issue. SinCo agreed to a mutual cessation discussed in the meet and confer as to production issues for 60 days to allow new counsel to properly organize and produce responsive information consistent with the Court's **January 9, 2019** Order. [Dkt. No. 122.] Defendants promised to provide a rolling production of the compliant discovery no later than **September 1, 2019**, and provide an estimate at that time as to the time anticipated to complete the production to SinCo. [Dkt. No. 223][3] Defendant's counsel, Mr. Wang represented the new production protocol and rolling production to begin on **September 1, 2019**. Court adopted in his minutes. [Dkt. No. 224]

Defendants' production did not start to comply with the Court's ESI order until **September 24, 2019**, and only then as to a few test files. No substantive production began until **September 27, 2019**, over three weeks from the date agreed. Defendants' platitudes and friendly demeanor have been a welcome change to this litigation, its actual actions as it relates to discovery have actually been worse than that of prior counsel. For example, Prior counsel produced documents using Bates Numbers associated with the responding Defendant, current counsel has placed all documents under a single Bates Number that makes it impossible to discern which defendant is providing responsive information. SinCo provided Defendants three months to get it right, and even after assurances that their office was proficient in ESI and would avoid the issues that we identified in our efforts to meet and confer as to opposing counsel prior production;

---

[3]   **June 6, 2019** Updated Joint Status Conference Statement: On *May 31, 2019* at 12:00 PM Counsel for SinCo, Mr. Andara, agreed that the most efficient way for Defendant to ameliorate all of Plaintiff's discovery concerns as to production, in the form of missing metadata, natives and attachments, is to allow Defendants to scrap the prior production and start from scratch rather than piecemeal each issue. SinCo will agree to a mutual cessation discussed in the meet and confer as to production issues for 60 days to allow new counsel to properly organize and produce responsive information consistent with the Court's.

UPDATED JOINT STATUS CONFERENCE
STATEMENT

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   Defendants simply reproduced the very production they promised to replace.

2         At the recent settlement conference of **September 5, 2019**, Defendants' counsel, Mrs.

3   Alparce agreed to increase the frequency and provide productions as they became available. On

4   **August 30, 2019**, Defendants provided correspondence which stated:

5         *Defendants' re-production of documents set to commence on **September 1, 2019** is on
         schedule. Despite the issues with our predecessor, we worked diligently over the last few*
6         *months to collect **over 450,000 documents** to date. ... SinCo will be receiving Defendants'*
         *first production set from this collection and review process by or on September 1, 2019. ...*
7         *Nextpoint will continue to roll-out the subsequent productions, which we anticipate to*
         *complete in a reasonable and timely manner.*
8

9   Defendants first set was inadequate and simply a regurgitation of the prior firms production as

10  evidence.  Defendants have now delayed the discovery process by over 100 days. Plaintiff will advise

11  of the inadequate discovery by Defendants with the Special Master.

12        Discovery is set to close on **January 9, 2020**.

13  ***Defendants' Statement:***

14        Contrary to SinCo's statement, the rolling production commenced prior to the date

15  promised, specifically on August 30, 2019.  There were issues with the first production of

16  documents due to errors by Defendants' e-discovery vendor, but the errors were immediately

17  corrected for productions thereafter, and there have now been eight productions totaling 207,985

18  pages.  Defendants will continue to produce documents on a rolling basis as quickly as possible.

19        As to the issue regarding the numbering of the documents, after SinCo's counsel

20  complained about the way Defendants' prior counsel produced the documents, there was an

21  agreement that all of the documents would produced using only one series of numbers and that

22  information would be provided as to the source of  the documents.  SinCo's counsel now claims

23  that there was no such agreement.  Counsel have met and conferred in an effort to resolve the

24  issue, and Defendants believe the parties will be able to resolve the issue.

25        In the meantime, SinCo has raised these issues in the state court action, and the parties

26  will be discussing the issues with the state court on November 8, 2019 in an effort to resolve

27  them.  SinCo states that it also intends to raise the issues with the Special Master appointed in this

28

UPDATED JOINT STATUS CONFERENCE
STATEMENT

action.  Defendants submit that permitting SinCo to raise the issues in both actions will result in a waste of time, attorney's fees, and court resources, and that SinCo should directed that it may raise issues regarding the production of documents in only one of the actions, not both.

**III.    LEGAL ISSUES**

*SinCo's Issues:*

Although there is a dispute as to Mr. Ng's and Mr. Liew's Employment status, given the evidence and testimony, SinCo believes it is a question of law. Mr. Ng and Mr. Liew do not agree.

Assuming Mr. Ng and Mr. Liew were an employee of SinCo what was the scope of their license to use the trademark? Was it limited to the scope of their employment?

*Defendants' Issues:*

The most obvious legal issue is whether the actions taken by SinCo and Xingke created a "joint venture". When the trademarks and related claims are viewed in the context of the joint venture, Xingke and other individual defendants should not be held liable for the alleged wrongdoings.

There are, however a myriad of additional legal issues to be decided.  What legal standard governs whether the individual defendants or others impacted by this case are to be considered as employees of one entity or the other or the "joint venture": US law, Chinese law or the law of Singapore?

As SinCo states:  "Assuming Mr. Ng and Mr. Liew were an employee of SinCo what was the scope of their license to use the trademark? Was it limited to the scope of their employment? The further question that arises is whether the law of Singapore, China or the US governs these issues.  Moreover, since the "license" is (apparently) not in writing, what law governs the terms and conditions of the "license?"

What legal standard governs the decade or more of admittedly permissive use of SinCo's marks by entities such as Xingke?  Is it the legal standard of Singapore, China or the US?

Did SinCo exercise appropriate control over the use of the "Sinco" marks for over a decade by Xingke and other entities who had permission to use the marks or is  there a "naked license" to the Defendants.  Did SinCo wait too long to bring this case, knowing that Xingke was

UPDATED JOINT STATUS CONFERENCE
STATEMENT

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

using its marks?

Do Singapore or China present a forum that is more convenient for resolving the present dispute between a company of Singapore and a company of China over the acts of individuals residing in China and Singapore?

Were the highly sophisticated entities that are customers of Defendants confused by the source of the goods they were purchasing?

IV.   MOTIONS

*SinCo's Potential Motions:*

SinCo has filed and obtained an entry of default by the clerk against DG on **August 24, 2018.** (Dkt. No. 51) and against SinCoo on **December 7, 2018**. [Dkt No. 104.] All parties to this action have appeared and are before the Court. Pending before this court is SinCo's Motion for Partial Summary Judgment. [Dkt No. 248.]

*Defendant's Potential Motions:*

In the Court's Order (Docket No. 195), the Court denied a motion for leave to file a third amended Complaint by SinCo Singapore.  The Court stated that only Trademark related claims would be permitted in the present case, and ruled as follows:

> Accordingly, the Court conditionally DENIES Sinco Singapore's motion to amend. The denial is conditioned on Sinco China making an appearance in the state action and on Sinco China and Mr. Liew dismissing the counterclaims described above in this action (with the intent to pursue the counterclaims in the state action instead). Because Mr. Liew will be dismissing his counterclaims, Sinco Singapore's motion to dismiss his counterclaims is conditionally DENIED as moot.
> As a final point, the Court notes that, although it is denying Sinco Singapore's motion to amend, it is not barring Sinco Singapore from moving for leave to make a more limited amendment so long as the proposed amendment would be consistent with the Court's ruling above

Docket No. 195, at 2-3.

Since SinCo (apparently) does not intend to make a more limited amendment, Defendants intend to move to file an amended answer to comply with the Court's directive, dismissing non-Trademark counterclaims and raising issues pertinent to defending or counterclaiming against the operative Trademark claims.

UPDATED JOINT STATUS CONFERENCE
STATEMENT

In addition, Defendants are considering presenting a Letters Rogatory to the Court in order to seek compelled discovery (in Hong Kong) into the transaction that led defendants to acquire Xingke.

## V.   AMENDMENT OF PLEADINGS

### *SinCo's statement:*

The parties stipulated to allowing SinCo to file its Third Amended Complaint in State court given the new information learned in the deposition of Mr. Tjoa on **January 17, 2019**. There may be amendments required once the P.R.C. entities are served with the Third Amended Complaint.

### *Defendant's statement:*

As stated above, the Court has indicated it will not bar SinCo from filing a "more limited amendment," to its operative Complaint in this action.  (Docket No. 195, at 2-3).  SinCo does not indicate it will avail itself of this option.  Therefore, as also stated above, Defendants intend to move for leave to file an amended answer to comply with the Court's directive, dismissing non-Trademark counterclaims and raising issues pertinent to defending or counterclaiming against the operative Trademark claims.

## VI.   EVIDENCE PRESERVATION

### *Sinco's Statement:*

Defendants advised the Court at a recent hearing before Judge Kuhnle on **October 31, 2019**, in the related State action that they are displeased by the former work done by their e-discovery vendor NextPoint, as inherited by prior counsel and were considering replacing them. Defendants' counsel indicated this was the same information being used in the Federal action. The description caused SinCo to be concerned with the manner of collection by this prior vendor and lack of preservation based on the failure to provide Defendant Ng's data from the Dell and Microsoft computers to date, keeping in mind this was requested well over a year ago.  To date Defendants have produced eleven thousand documents (180K pages) since **June 1, 2019**, or 2% of the 450,000 referenced by counsel on **August 30, 2019**. SinCo has repeatedly asked for a date certain upon which production will be completed.

UPDATED JOINT STATUS CONFERENCE STATEMENT

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1

2   **Defendant's statement:**

3        As more fully stated above, there have now been eight productions totaling 207,985

4   pages, and Defendants will continue to produce documents on a rolling basis as quickly as

5   possible.

6        As also more fully stated above, SinCo has raised these discovery issues in the state court

7   action, the parties will be discussing the issues with the state court on November 8, 2019 in an

8   effort to resolve them, and SinCo should directed that it may raise issues regarding the production

9   of documents in only one of the actions, not both.

10  Dated:                                        ROPERS, MAJESKI, KOHN & BENTLEY

11

12                                                By:  /s/ Lael David Andara
                                                  _____
13                                                     Lael D. Andara
                                                       *Attorneys for Plaintiff*
14                                                     SINCO TECHNOLOGIES PTE LTD

15  Dated:  November 7, 2019                      WHGC, P.L.C.By:

16

17                                                By:  /s/Kathleen E. Alparce
                                                  _____
                                                       Kathleen E. Alparce
18                                                     *Attorneys for Defendants*
                                                  XINGKE ELECTRONICS (DONGGUAN) CO.,
19                                                LTD. formerly known as SINCO
                                                  ELECTRONICS (DONGGUAN) CO. LTD.,
20                                                MUI LIANG TJOA aka ML TJOA, NG CHER
                                                  YONG aka CY NG, and LIEW YEW SOON aka
21                                                MARK LIEW

22

23

24

25

26

27

28

UPDATED JOINT STATUS CONFERENCE
STATEMENT