LAEL D. ANDARA (SBN 215416)
MARIO A. ISKANDER (SBN 327025)
DANIEL E. GAITAN (SBN 326413)
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street, Suite 500
Redwood City, CA  94063-2052
Telephone:   (650) 364-8200
Facsimile:    (650) 780-1685
Email:  lael.andara@rmkb.com
        mario.iskander@ropers.com
        daniel.gaitan@ropers.com

*Attorneys for Plaintiff*
SINCO TECHNOLOGIES PTE LTD.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SINCO TECHNOLOGIES PTE LTD., | CASE NO. 3:17CV5517 EMC |
| Plaintiff, | **UPDATED JOINT STATUS CONFERENCE STATEMENT** |
| v. | Date: **January 16, 2020** |
| SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS TECHNOLOGY CO., LTD.; SINCOO ELECTRONICS TECHNOLOGY CO., LTD.; MUI LIANG TJOA (an individual); NG CHER YONG AKA CY NG (an individual); and LIEW YEW SOON AKA MARK LIEW (an individual), | Time: **1:30 a.m.** Courtroom: **5, 17th Floor** [Sec. Amend. Complaint: February 23, 2018] |
| Defendants. | |

Plaintiff SINCO TECHNOLOGIES PTE, LTD. ("SinCo") submit this Status Conference Statement in accordance with the Court's Minute Entry of **November 12, 2019** and **December 12, 2019** [Dkt. Nos. 295 and 303.] The Parties previously appeared before this Court on **June 13, 2019** where the Court set a jury trial date for **June, 22, 2020**.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

The above-referenced case concerns trademark infringement and related federal and state torts. The plaintiff is SinCo Technologies Pte, Ltd., a Singaporean company. It initiated this lawsuit on **September 22, 2017**, a year after filing a related lawsuit in State Court. [ECF 1.] The following entities and persons were sued:

> **Sinco Electronics (Dongguan) Co., Ltd.,** a Chinese company, which also appears to use the name XingKe Electronics (Dongguan) Co., Ltd. ("DG"). A default was entered by the Clerk in the Action on **August 24, 2018**, and later set aside by stipulation on **December 19, 2018** [ECF 111] followed by an Answer and Counterclaims to the Second Amended Complaint filed by DG on **January 29, 2019** [ECF 135];

> **Mr. Ng**, an employee of DG and a former employee of SinCo appeared in this Action on **March 16, 2018** [ECF 33]; and

> **Mr. Liew**, an employee of DG and a former employee of SinCo who filed an answer with counterclaims against SinCo on **November 16, 2019** [ECF 99.]

In it's Second Amended Complaint, filed on **February 23, 2018**, SinCo added the following defendants to this case [ECF 23]:

> **XingKe Electronics Technology Ltd.,** a Chinese company, which is the renamed entity of SinCo Electronics (Dongguan) Co., Ltd., ("DG") who filed its answer counterclaim against SinCo on **January 29, 2019** [ECF 135];

> **Sincoo Electronics Technology Co., Ltd.,** (also alleged to be affiliated with SinCo China) thereafter a default was entered by the Clerk on **December 17, 2018 [ECF 110]**; and

> **Mr.Tjoa** (the CEO of XingKe) who filed an answer on **November 1, 2018** [ECF 87].

On **January 8, 2019**, SinCo sent over a proposed updated Joint Case Management Statement to Defendants' counsel at 2:15 PM, and requested Defendants revisions again at 1:38 PM on **January 9, 2019**. SinCo again requested the revisions at 6:08 PM. At 6:17 PM opposing counsel responded as follows:

> *Dear Lael:*
>
> *As always, thank you for your email.  From the Clerk's Notice Rescheduling Hearing on Motion*

JOINT STATUS CONFERENCE STATEMENT

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

*for Partial Summary Judgment and Status Conference from December 19, 2019 to January 16, 2020 [DKT. 304 – see attached], there does not appear to be a requirement for the parties to resubmit the Joint Case Management Statement in the Federal Action.  If you have any information that indicates otherwise, we will be happy to provide you with our additions to a Joint Case Management Statement for filing.  Please advise.*

*Thank you,*

*Kathleen*

Based on Defendants Position See Prior Joint CMC Statement of **December 12, 2019**. ECF 303

The following is Sinco's Updated Case Management Statement:

## I.     JURISDICTION, VENUE, AND SERVICE

This Court has subject matter jurisdiction over SinCo's Lanham Act claims under 15 U.S.C. §1051, et seq. This Court has jurisdiction over the subject matter of this action under the Judicial Code, 28 U.S.C. §§1331 (a federal question) and 1338(a) and (b) (Acts of Congress relating to trademarks), the Lanham Act, 15 U.S.C. §1121, et seq., and principles of supplemental jurisdiction. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2),(c) and §1400(a). The nucleus of facts giving rise to Plaintiff's claims occurred in this jurisdiction and the United States ("U.S"). This is the second action brought by SinCo; the first action was brought on **October 28, 2016** in the Superior Court of California, County of Santa Clara, Case No. 16-cv-301867 (the "State Action").

On **August 29, 2019**, SinCo filed a Motion for Partial Summary Judgment.  [Dkt. No. 247.]  The Clerk reset this hearing for **December 19, 2019**. [Dkt. No. 277.] On **December 11, 2019** Defendants filed a Motion for Partial Summary Judgment [Dkt. No. 299.] The Clerk reset the hearing on the cross motions for **January 16, 2020**. [Dkt. No. 304.]

There is a settlement conference with Judge Beeler in this Action set for **March 13, 2020**

### SINCO'S STATEMENT:

This is case arising out of Defendant Cher Yong Ng ("Mr. Ng"), Defendant Mark Liew ("Mr. Liew"), Defendant Mui Liang Tjoa ("Mr. Tjoa") and defendants entities SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS (DONGGUAN) CO., LTD; XINGKE ELECTRONICS TECHNOLOGY CO., LTD.; SINCOO ELECTRONICS

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TECHNOLOGY CO., LTD. ("DG")[1] conspiring to steal Plaintiff SINCO TECHNOLOGIES PTE LTD.'s ("SinCo") United States ("U.S.") customers by falsely and deceptively using SinCo's U.S. trademarks, trade secrets and employees to divert business while in the U.S.

**TRADEMARK USE**. SinCo began operations in Singapore in 1995 and began using the SinCo word mark and logo within a year. SinCo contracted with the factory that later became Electronics DG to do the manufacturing of electronic components and parts it helped develop and design for U.S. customers. SinCo provided DG a limited license to use of its trademark on packaging and for other uses in the scope of the work being done for SinCo, for example, to facilitate drop shipping and other logistical issues (as is common in the industry). SinCo obtained U.S. trademarks beginning in 2006, Trademark Registration 3188537.

**LICENSE.** As the years progressed SinCo's founder and owner, recognizing that DG did the majority of SinCo's manufacturing, personally invested as a minority owner in the entity. Thereafter, in 2000-2003 SinCo decided the volume of production at DG and the frequency of U.S. customers' requests to visit the facility required on-site oversight and interface capabilities by SinCo. Stationing SinCo engineers on site at the contract manufacturer, SinCo could more readily make changes and address customers concerns, as SinCo maintained the relationship. To help facilitate and capitalize on this on-sight presence, SinCo expanded the scope of the license to DG to use the SinCo name on the factory so that U.S. Customers visiting the SinCo employees would see uniformity between the development and manufacturing aspects of SinCo. The license for DG to use the SinCo mark never extended beyond the Republic of China ("P.R.C.") SinCo continued to maintain the U.S. relationships and would receive purchase orders from U.S. customers directly. Thereafter, SinCo would negotiate separately with DG to have the parts made under a separate purchase order. According to Mr. Tjoa, DG never knew the prices SinCo charged the U.S. customers.  Mr. Tjoa has since left the company.

After DG's conspiracy was revealed, DG changed the English name on the factory from

---

[1] Cy Ng defined SINCO ELECTRONICS (DONGGUAN) CO., LTD. as "Electronics DG," in his declaration of **March 22, 2017,** in the state action.

JOINT STATUS CONFERENCE STATEMENT

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

SinCo to XingKe (phonetic equivalent). As confirmed in Mr. Ng's and Mr. Tjoa's testimony, the Chinese characters for the company SINCO ELECTRONICS (DONGGUAN) CO., LTD. and XINGKE ELECTRONICS (DONGGUAN) CO., LTD. Are identical. XINGKE ELECTRONICS (DONGGUAN) CO., LTD. is the same entity as DG doing business under the phonetic equivalent of its English name in an attempt to sidestep U.S. trademark laws, while keeping the same colors as SinCo's trademark to deceive and divert SinCo's customers..

**PASSING OFF BY DEFENDANTS.** DG, Mr. Tjoa, Mr. Liew and Mr. Ng have used three variations of SinCo's trademarks, all at the same address: SinCo/SinCoo/XingKe. The addition of an "o" to SinCo, contradicts Defendants' assertion that Electronics DG ever had the right to the mark "SinCo," beyond the scope of work. And when contacted Sincoo admitted this was an improper use.



**P.R.C. TRADEMARK.** Unknown to SinCo until the State Action, DG filed for a trademark on the SinCo word mark and logo in P.R.C. DG attempted a similar strategy after SinCo initiated the State Action, filing no less than 15 applications in the United States Patent and Trademark Office ("USPTO") for the SinCo word mark and logo in the U.S., which have all been abandoned or suspended. Two of the applications are suspended due to fraud[2] on the USPTO in Opposition No. 91243086. It was revealed to the USPTO that DG filed two applications for the mark "xingke" in which DG fraudulently used the identity of Miriam Paton in the filing and prosecution of the two "xingke" marks, and forged Xu Shugong's signature in Electronics DG's Answer to SinCo's Opposition, which SinCo was led to believe was both ill and had no role in DG since at or around 2016. SinCo also challenged the P.R.C trademark wherein DG perjured itself by claiming to have first designed the SinCo Logo before

---

[2] On **October 26, 2018**, Michelle G. Trevino (counsel for SinCo) filed a declaration detailing the discovery that: (1) applications nos. 87/658,522 and 87/658,544 falsely indicated as being filed by Miriam Paton (Ex. A – Miriam Paton's Declaration confirming improper use of her identity), and forgery of Xu Shugong's signature on Electronics DG's Answer to SinCo's Opposition, filed on **September 26, 2018** (Ex. B is USPTO's Order requesting DG explain the fraudulent use of Miriam Paton's identity and Xu Shugong's capacity to sign on behalf of DG). (ECF 84.)

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

SinCo, who began using the mark in 1996. The perjury was revealed by the design contract between DG and Dongguan Humen Yuan Su Computer Graphic Design Service Business which was dated **July 1, 2015**. On **April 26, 2018** and **May 4, 2018**, DG's P.R.C. trademarks (Registration Nos. 8607396 and 8607476) were nullified pursuant to Article 31, Paragraphs 1 and 2 of Article 45 and Article 46 of the P.R.C. preamended Trademark Law based on "[DG's] misappropriation, registration and use of the trademark "SinCo (with device)" without authorization from [SinCo] have severely infringed the prior copyright and other legitimate rights and interests of the [SinCo]." The Trademark office in the P.R.C invalidated DG's attempt to use SinCo's trademarks beyond the scope as a contract manufacturer, just as the USPTO has rejected over a dozen trademark applications filed by XingKe for "SinCo," and "XingKe." Mr. Tjoa confirmed at his deposition that he submitted a perjured declaration to the USPTO in support of these applications

**CONSPIRACY**. In 2015-2016, U.S. customers brought up safety and quality concerns in the form of audits. At that time SinCo considered an outright acquisition of the factory and land, provided they could address the quality and working conditions and obtained certain documents. DG in an attempt to avoid the significant cost of addressing these concerns began conspiring with Mr. Ng and Mr. Liew to divert SinCo's business to DG and planned to sell the company out from under SinCo. DG and Mr. Ng were able to steal accounts from SinCo leveraging the SinCo trademarks as early as **August 21, 2015**, and with this success sold Jinlong Machinery & Electronics Co., Ltd. ("JinLong") a majority interest in DG through a holding company. Mr. Tjoa (president of JinLong and Xingke) and JinLong's purchase price of $1.1B RMB not limited to the factory and related assets, but was in substantial part focused on the acquisition of SinCo's: marks, trade secret information, customers and embedded employees. Mr. Tjoa (as the new CEO and President of DG) and Mr. Ng directed Mr. Liew to travel to the U.S. in **July of 2016** to capture the SinCo business for DG. Mr. Liew falsely told SinCo he was traveling to the U.S. on vacation, a fact contradicted by his VISA application. SinCo's U.S. customers having never met with Mr. Liew or Mr. Ng in the U.S., questioned SinCo as to this change in protocol. SinCo began to investigate. After meeting with several U.S. customers as "SinCo," Mr. Liew and Mr. Tjoa were successful in converting business to DG, by claiming to be SinCo.

**INFRINGEMENT**. While employees of SinCo and without their knowledge or consent, Mr. Liew and Mr. Ng first entered the United States on **July 18, 2016** and **January 5, 2017,** respectively. Mr. Liew and Mr. Ng had never traveled to the U.S. previously in the scope of their

JOINT STATUS CONFERENCE STATEMENT

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

employment as SinCo maintained sales staff stationed in the U.S. and Singapore that facilitated those relationships. Mr. Liew and Mr. Ng were accompanied not by SinCo sales representatives, but by *sales representatives of DG (Now Xingke.)* Mr. Tjoa and Mr. Ng were in California meeting with SinCo's U.S. customers, on or about **August 6, 2017**. Although according to Mr. Ng, his new employer stopped using the SinCo mark in P.R.C. on or about **March 15, 2017**, Mr. Ng continued to use his SinCo business card and email address, communicating with SinCo's U.S. customers, even though he claimed he was XingKe. Even before this action was filed, and while still employed by SinCo, DG, Mr. Tjoa and Mr. Liew converted an existing legacy project with SinCo and a Mountain View company worth ten of millions in annual revenue away from SinCo. It is no surprise that Mr. Liew had been previously working on that project months as an employee of SinCo, as was the case with another SinCo customer out of the Boston area that also switched to DG. The tooling that SinCo had purchased from DG was never returned, but was instead used to support and improperly retain the diverted U.S. contracts to DG. DG and Mr. Tjoa could not have succeeded without the facilitation of Mr. Ng and his subordinate Mr. Liew, as they leveraged the fact that SINCO's U.S. clients knew them as SinCo employees.

II.   **<u>DISCOVERY</u>**

***<u>SinCo's statement:</u>***

On **May 31, 2019** at 12:00 PM Counsel agreed that the most efficient way to ameliorate all of Plaintiff's discovery concerns as to production, in the form of missing metadata, natives and attachments, was to allow Defendants to replace prior production rather than piecemeal each issue. SinCo agreed to a mutual cessation discussed in the meet and confer as to production issues for 60 days to allow new counsel to properly organize and produce responsive information consistent with the Court's **January 9, 2019** Order. [Dkt. No. 122.] Defendants promised to provide a rolling production of the compliant discovery no later than **September 1, 2019**, and provide an estimate at that time as to the time anticipated to complete the production to SinCo. [Dkt. No. 223][3] Defendant's counsel, Mr. Wang represented the new production protocol and

---

[3]   **June 6, 2019** Updated Joint Status Conference Statement: On ***May 31, 2019*** at 12:00 PM Counsel for SinCo, Mr. Andara, agreed that the most efficient way for Defendant to ameliorate all of Plaintiff's discovery concerns as to production, in the form of missing metadata, natives and attachments, is to allow Defendants to scrap the prior production and start from scratch rather

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

rolling production to begin on **September 1, 2019**. Court adopted in his minutes. [Dkt. No. 224]

Defendants' production did not start to comply with the Court's ESI order until **September 24, 2019**, and only then as to a few test files. No substantive production began until **September 27, 2019**, over three weeks from the date agreed. Defendants' platitudes and friendly demeanor have been a welcome change to this litigation, its actual actions as it relates to discovery have actually been worse than that of prior counsel. For example, Prior counsel produced documents using Bates Numbers associated with the responding Defendant, current counsel has placed all documents under a single Bates Number that makes it impossible to discern which defendant is providing responsive information. SinCo provided Defendants three months to get it right, and even after assurances that their office was proficient in ESI and would avoid the issues that we identified in our efforts to meet and confer as to opposing counsel prior production; Defendants simply reproduced the very production they promised to replace.

At the recent settlement conference of **September 5, 2019**, Defendants' counsel, Mrs. Alprace agreed to increase the frequency and provide productions as they became available. On **August 30, 2019**, Defendants provided correspondence which stated:

> *Defendants' re-production of documents set to commence on **September 1, 2019** is on schedule. Despite the issues with our predecessor, we worked diligently over the last few months to collect **over 450,000 documents** to date. ... SinCo will be receiving Defendants' first production set from this collection and review process by or on September 1, 2019. ... Nextpoint will continue to roll-out the subsequent productions, which we anticipate to complete in a reasonable and timely manner.*

Defendants first set was inadequate and simply a regurgitation of the prior firms production as evidence.  Defendants produced a recent production on **January 2, 2020** but have failed to indicate if this is a complete production or if they are continuing to review documents. Based on the volume it appears that Defendants' discovery production is wholly incomplete and SinCo still does not have a date certain as to when this information will be provided in full. Plaintiff will advise of the inadequate

than piecemeal each issue. SinCo will agree to a mutual cessation discussed in the meet and confer as to production issues for 60 days to allow new counsel to properly organize and produce responsive information consistent with the Court's.

JOINT STATUS CONFERENCE STATEMENT

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

discovery by Defendants with the Special Master upon completion of the review.

### Second 30(b)(6) Notice of Deposition

Defendants in violation of the FRCP Rules 5, 30, 34, Local Rule 30-1, and the Court's Scheduling Order, noticed a deposition at 3:50 PM on **December 31, 2019** for a deposition on **January 7, 2020,** i.e., in four (4) court days. Opposing counsel failed to comply with Local Rule 30-1, providing that the noticing party must first confer about the scheduling of the deposition with opposing counsel—opposing counsel did not. Further, the notice did not comply with the 30 days' notice required for a deposition demanding production of documents, specifically, 21 categories of documents where requested by Defendants. The topics relate to the state action and are unrelated to the trademark infringement claims even though, this Court has made it abundantly clear that the Federal Action is only handling "trademarks disputes." [ECF 194.]

### Motion to Modify the Court's Scheduling Order

In an effort to excuse their violations they submitted a notice then a motion to the court to modify the court's scheduling order to try to excuse and disguise their behavior in an attempt to extend discovery deadlines. [Dkt. No. 311 and 312.] Their justification that their office needed time to requests documentation from their client and depose SinCo employees is a tactic to delay proceedings. Opposing Counsel knew that they needed to depose SinCo's employees when they first appeared in this case. [Dkt. No. 206.]  On **May 21, 2019**, the parties met and conferred and agreed that since Opposing Counsel are still getting up to speed on the case, they could choose a different date for the depositions of Ms. Jennifer Tan and Ms. Cynthia Chua. *(Id.*at ¶ 3.) However, SinCo informed Defendants that it was ready, willing, and able to allow for the depositions of Ms. Jennifer Tan and Ms. Cynthia Chua to take place, once we receive their deposition notices.  Instead, Defendants sat on their hands for 6 months and now claim an urgent need to take these depositions. Mr. Wang stated that he needed the corporate formalities documents at the first hearing in front of you Honor on **June 13, 2019** and still to this day his office is complaining about their inability to identify, acquire and produce them. (Dkt. No. 311 and 312 at 7:1-4.) The Court should not reward Defendants for its own nonperformance in conducting timely and reasonable discovery, for its failure to maintain its own records, or its

JOINT STATUS CONFERENCE STATEMENT

failure to identify and produce its own documentation of its own corporate formalities.

Discovery is set to close on **January 9, 2020** any change to the scheduling order would only prejudiced SinCo since it has expended substantial sums of time and resources in meeting the scheduling order's deadlines and working with an expert to get the expert report complete within a timely basis. There is no shared need to delay these proceedings any further expect to reward Defendants' lackadaisical actions to date.

### III.   LEGAL ISSUES

*SinCo's Issues:*

Although there is a dispute as to Mr. Ng's and Mr. Liew's Employment status, given the evidence and testimony, SinCo believes it is a question of law. Mr. Ng and Mr. Liew do not agree.

Assuming Mr. Ng and Mr. Liew were an employee of SinCo what was the scope of their license to use the trademark? Was it limited to the scope of their employment?

*Defendant's Issues*:

Based on Defendants Position See Prior Joint CMC Statement of **December 12, 2019**. ECF 303

### IV.   MOTIONS

*SinCo's Potential Motions*:

SinCo has filed and obtained an entry of default by the clerk against DG on **August 24, 2018.** (Dkt. No. 51) and against SinCoo on **December 7, 2018**. [Dkt No. 104.] All parties to this action have appeared and are before the Court. Pending before this court are the parties' cross Motions for Partial Summary Judgment [Dkt No. 248 and 299.]

*Defendant's Potential Motions*:

Based on Defendants Position See Prior Joint CMC Statement of **December 12, 2019**. ECF 303

### V.   AMENDMENT OF PLEADINGS

*SinCo's statement*:

The parties stipulated to allowing SinCo to file its Third Amended Complaint in State court given the new information learned in the deposition of Mr. Tjoa on **January 17, 2019**. There may be amendments required once the P.R.C. entities are served with the Third Amended Complaint.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

*Defendant's statement:*

Based on Defendants Position See Prior Joint CMC Statement of **December 12, 2019**. ECF 303

## VI.    EVIDENCE PRESERVATION

*Sinco's statement*:

Defendants advised the Court at a recent hearing before Judge Kuhnle on **October 31, 2019**, in the related State action that they are displeased by the former work done by their ediscovery vendor NextPoint, as inherited by prior counsel and were considering replacing them. Defendants' counsel indicated this was the same information being used in the Federal action. The description caused SinCo to be concerned with the manner of collection by this prior vendor and lack of preservation based on the failure to provide Defendant Ng's data from the Dell and Microsoft computers to date, keeping in mind this was requested well over a year ago.  As of **December 31, 2019** SinCo has only received 18,000 (4%) documents as opposed to the 450,000 documents that Defendants stated would be produced and referenced by counsel on **August 30, 2019**. SinCo has repeatedly asked for a date certain upon which production will be completed.

*Defendant's statement:*

Based on Defendants Position See Prior Joint CMC Statement of **December 12, 2019**. ECF 303

Dated:                                                          ROPERS, MAJESKI, KOHN & BENTLEY


By: /s/ Lael David Andara
Lael D. Andara
Mario A. Iskander
*Attorneys for Plaintiff*
SINCO TECHNOLOGIES PTE LTD

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City