1   **WHGC, P.L.C.**
    JEFFREY C.P. WANG (SBN 144414)
2   JeffreyWang@WHGCLaw.com
    JOHN E. GIUST (SBN196337)
3   JohnGiust@WHGCLaw.com
    KATHLEEN E. ALPARCE (SBN 230935)
4   KathleenAlparce@WHGCLaw.com
    JESSICA A. CRABBE (SBN 263668)
5   JessicaCrabbe@WHGCLaw.com
    130l Dove Street, Suite 1050
6   Newport Beach, CA 92660
    Telephone: (949) 833-8483
7   Facsimile: (866) 881-5007

8   EDWIN K. PRATHER (CABN 190536)
    edwin@pratherlawoffices.com
9   **PRATHER LAW OFFICES**
    245 Fifth Street, Suite 103
10  San Francisco, California 94103
    Telephone:  (415) 881-7774

11

    *Attorneys for Defendants*
12  XINGKE ELECTRONICS (DONGGUAN) CO., LTD. formerly known as
    SINCO ELECTRONICS (DONGGUAN) CO. LTD., MUI LIANG TJOA aka
13  ML TJOA, NG CHER YONG aka CY NG, and LIEW YEW SOON aka
    MARK LIEW

14

15

16                          UNITED STATES DISTRICT COURT

17                        NORTHERN DISTRICT OF CALIFORNIA

18  SINCO TECHNOLOGIES PTE LTD.,              CASE NO. 3:17CV5517 EMC

19              Plaintiff,                    **DEFENDANTS' SUPPLEMENTAL
                                              UPDATED JOINT STATUS
20  v.                                        CONFERENCE STATEMENT**

21  SINCO ELECTRONICS (DONGGUAN)              Date:        **December 19, 2019**
    CO., LTD.; XINGKE ELECTRONICS             Time:        **1:30 PM**
22  (DONGGUAN) CO., LTD.; XINGKE              Courtroom:   **5, 17th Floor**
    ELECTRONICS TECHNOLOGY CO.,
23  LTD.; SINCOO ELECTRONICS
    TECHNOLOGY CO., LTD.; MUI LIANG
24  TJOA (an individual); NG CHER YONG        **[Sec. Amend. Complaint: February 23, 2018]**
    AKA CY NG (an individual); and LIEW
25  YEW SOON AKA MARK LIEW (an
    individual),
26
                Defendants.
27

28  AND RELATED COUNTER-CLAIMS.

DEFENDANTS' SUPPLEMENTAL JOINT
                                                          UPDATED STATUS CONFERENCE STATEMENT

1    Defendants Ng Cher Yong AKA Cy Ng ("Mr. Ng"), Mui Liang Tjoa ("Mr. Tjoa"), Liew

2    Yew Soon AKA Mark Liew ("Mr. Liew") and Xingke Electronics (Dongguan) Co., Ltd.

3    ("Xingke")[1] (collectively, "Parties") submit this Supplemental Updated Joint Status Conference

4    Statement to Plaintiff  SINCO TECHNOLOGIES PTE, LTD.'s ("SinCo") Updated Joint Status

5    Conference Statement [Dkt. 321] in accordance with the Court's Minute Entry of **November 12,**

6    **2019** and **December 13, 2019** [Dkt. 295 and 304.]

7    To note for the Court regarding the parties' separate filings, Defendants inquired from

8    SinCo as to whether a further updated status conference statement was necessary in light of the

9    parties recent filing of an Updated Joint Case Management Conference Statement on December

10    12, 2019 and no mention of such requirement as part of the Court's order to reset the Case

11    Management Conference from December 19, 2019 to January 16, 2020 [Dkt. 304], but inquired

12    as to whether SinCo believed such was necessary and if so, Defendants requested the courtesy of

13    SinCo providing the provisions of the requirement to do so.  Defendants did not receive a

14    response from SinCo but nonetheless were in the process of preparing their portions of the Status

15    Conference Statement when Defendants received notice of SinCo's filing.

16    To note further, the draft Joint Status Conference Statement provided by SinCo for

17    Defendants' revisions was not the most recent draft used in conjunction with the parties' Joint

18    Status Conference Statement of December 12, 2019 [Dkt. No. 303].  Therefore, with apologies to

19    the Court for the parties' separate submissions, Defendants supplement SinCo's filing as follows:

20    The above-referenced case concerns trademark infringement and related federal and state

21    torts. The plaintiff is SinCo Technologies Pte, Ltd. ("SinCo"), a Singaporean company. It

22    initiated this lawsuit on **September 22, 2017**, a year after filing a related lawsuit in State Court.

23    [Dkt. 1.] The following entities and persons were sued:

24    **Sinco Electronics (Dongguan) Co., Ltd.,** a Chinese company, now known as XingKe

25    Electronics (Dongguan) Co., Ltd. ("XingKe"). A default was entered by the Clerk

26

27    [1] Sinco Electronics (Dongguan) Co. Ltd. changed its name to Xingke Electronics (Dongguan) Co. Ltd. in March of 2019.

28

1  in the Action on **August 24, 2018**, and later set aside by stipulation on **December

2  19, 2018** [Dkt. 111] followed by an Answer and Counterclaims to the Second

3  Amended Complaint filed by DG on **January 29, 2019** [Dkt. 135];

4  **Mr. Ng**, an employee of DG and a former employee of SinCo appeared in this Action on

5  **March 16, 2018** [Dkt. 33]; and

6  **Mr. Liew**, an employee of DG and a former employee of SinCo who filed an answer with

7  counterclaims against SinCo on **November 16, 2019** [Dkt. 99.]

8  In its Second Amended Complaint, filed on **February 23, 2018**, SinCo added the

9  following defendants to this case [Dkt. 23]:

10  **XingKe Electronics (Dongguan) Co., Ltd.,** a Chinese company, formerly known as

11  SinCo Electronics (Dongguan) Co., Ltd., ("XingKe"), who filed its answer and

12  counterclaim against SinCo on **January 29, 2019** [Dkt. 135];

13  **Sincoo Electronics Technology Co., Ltd.**, (also alleged to be affiliated with SinCo

14  China) thereafter a default was entered by the Clerk on **December 17, 2018 [ECF

15  110]**; and

16  **Mr. Tjoa** (a former executive of XingKe and former President and CEO of Jinlong

17  Machinery and Electronics Co., Ltd.) who filed an answer on **November 1, 2018**

18  [Dkt. 87].

19  **I.      JURISDICTION, VENUE, AND SERVICE.**

20  This Court has subject matter jurisdiction over SinCo's Lanham Act claims under 15

21  U.S.C. §1051, et seq. This Court has jurisdiction over the subject matter of this action under the

22  Judicial Code, 28 U.S.C. §§1331 (a federal question) and 1338(a) and (b) (Acts of Congress

23  relating to trademarks), the Lanham Act, 15 U.S.C. §1121, et seq., and principles of supplemental

24  jurisdiction. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2),(c) and

25  §1400(a). The nucleus of facts giving rise to Plaintiff's claims occurred in this jurisdiction and the

26  United States ("U.S"). This is the second action brought by SinCo; the first action was brought on

27  **October 28, 2016** in the Superior Court of California, County of Santa Clara, Case No. 16-cv-

28

DEFENDANTS' SUPPLEMENTAL JOINT
                                 UPDATED STATUS CONFERENCE STATEMENT

1    301867 (the "State Action").

2         On **February 19, 2019** Plaintiff filed a Motion for Leave to File Third Amended

3    Complaint. (Dkt. 143.) On the hearing of said motion on **April 18, 2019**, Judge Chen directed the

4    parties to limit the scope of this litigation to the trademark claims, directing that the employment

5    and trade secret issues be litigated in the Santa Clara Superior action.  To facilitate that end the

6    Defendant Liew agreed to withdraw his Counterclaims [Dkt. 99] in whole and XingKe agreed to

7    make an appearance in the Santa Clara Superior Action and withdraw counterclaims. Specifically,

8    on **April 18, 2019,** Judge Chen stated:

9         *Accordingly, the Court conditionally DENIES Sinco Singapore's motion to amend. The*
10   *denial is conditioned on Sinco China making an appearance in the state action and on Sinco*
     *China and Mr. Liew dismissing the counterclaims described above in this action (with the intent*
11   *to pursue the counterclaims in the state action instead). Because Mr. Liew will be dismissing his*
     *counterclaims, Sinco Singapore's motion to dismiss his counterclaims is conditionally DENIED*
12   *as moot.* [Dkt. No. 195 2:22-3:3]

13
          On **August 29, 2019**, SinCo filed a Motion for Partial Summary Judgment.  [Dkt. 247.]
14
     The Clerk reset this hearing for **December 19, 2019**. [Dkt. 277.] On **December 11, 2019,** Xingke
15
     filed a Motion for Partial Summary Judgment [Dkt. 299.] The Clerk reset the hearing on the cross
16
     motions for **January 16, 2020**. [Dkt. 304.]  In addition, however, on **January 9, 2020**,
17
     Defendants CY Ng and Mark Liew filed their own Motion for Partial Summary Judgment [Dkt.
18
     319], which is factually and substantively related to the other motions for partial summary
19
     judgment but is set to be heard on **February 27, 2020**.

20        Defendants have also filed an Application to Revise the Case Management and Pretrial

21   Order for Jury Trial and Continue Final Pretrial Conference and Trial [Dkt. 311, Dkt. 312

     corrected] set to be heard on **February 6, 2020**.  Defendants have since filed a Motion to Shorten
22
     Time to Consider Motion for Administrative Relief [Dkt. 318] of its Application, which is
23
     currently pending for consideration before the Court.

24        The parties participated at a telephonic settlement conference scheduling call before

25   Magistrate Judge Beeler on December 12, 2019 [Dkt. 302] and, thereafter, agreed to a further

     settlement conference, this time before Magistrate Judge Beeler, on **March 13, 2020**.
26
          **SINCO'S STATEMENT:**
27
          Defendants respectfully request the Court refer to SinCo's statement, as provided in its
28

- 4 -    DEFENDANTS' SUPPLEMENTAL JOINT
UPDATED STATUS CONFERENCE STATEMENT

1    Updated Joint Status Conference Statement [Dkt. 321].

2              **DEFENDANTS' STATEMENT:**

3              *(i) The Creation of a Joint Venture and Close Relationship of the Parties.*

4              Plaintiff Sinco Technologies Pte Ltd. was founded by Bryan Lim in 1995 in Singapore

5    and served as a supplier of various electronic components to many western firms.  SinCo itself

6    was and is primarily a sales and marketing company without any manufacturing facility. Since the

7    very beginning, after obtaining purchase orders from customers, SinCo would outsource to

8    different manufacturing factories in Asia including China.

9              Defendant Sinco Electronics (Dongguan), now known as XINGKE ELECTRONICS

10   (DONGGUAN) CO., LTD, was one of such manufacturing factories that SinCo used since early

11   2000s.  As a separate legal entity, Xingke was registered in China in around 2005 by three

12   individuals, including Bryan Lim as a minority shareholder and another gentleman (Mr. Xu) as a

13   majority shareholder. Even though SinCo did not own any interest in Xingke, the companies

14   worked closely because Bryan Lim was a shareholder behind both.

15             Since the very beginning, the relationship between SinCo and Xingke was intertwined,

16   which was intentionally designed by Bryan Lim. In fact, Bryan Lim deliberately turned SinCo,

17   Xingke, and several other companies affiliated with Bryan Lim into a "joint venture", and even

18   gave a name to the joint venture called "Sinco Group".  Since the very beginning, Bryan Lim and

19   SinCo held themselves out to be a large, capable and sophisticated enterprise called the Sinco

20   Group. The Sinco Group had multiple locations around the globe, including a sales office in

21   Singapore (i.e. SinCo Singapore), companies in Hong Kong, Samoa, Taiwan, and manufacturing

22   factories in China (i.e. Xingke) and Malaysia. In reality, there was never a legal entity called the

23   Sinco Group who served as the parent company or had the controlling ownership of the member

24   companies.

25             The grouping of so many different companies together was to create the impression that

26   the Sinco Group was a world-wide leader in the industry and more importantly, it had its own

27   manufacturing facilities. In this way, customers would feel that they were dealing with

28   manufacturing factories directly without going through some middlemen, which was good for

DEFENDANTS' SUPPLEMENTAL JOINT
UPDATED STATUS CONFERENCE STATEMENT

1   quality control and cost savings.

2   　　　When the joint venture was operating, members including SinCo and Xingke had joint

3   control over the venture, they shared profits of the undertaking, and both of them had ownership

4   interest in the joint venture. As a result, customers were led to believe that the Sinco Group was a

5   top-tier enterprise in the industry with its own manufacturing facilities.

6   　　　*(ii) The Signs and Consequences of the Joint Venture.*

7   　　　Bryan Lim and SinCo went to great lengths to ensure that Xingke would always appear as

8   part of the joint venture of the Sinco Group, including but not limited to the following:

9   　　　　　· Xingke was only a Chinese company and had an official Chinese name registered

10   　　　with the Chinese government. But when communicating with outside customers, its

11   　　　official English name became "Sinco Electronics (Dongguan) Co. Ltd." This name was

12   　　　used for more than ten years (from 2005 until 2017). The word "Sinco" was intentionally

13   　　　used to signal that Xingke was part of the Sinco Group as Bryan Lim intended.

14   　　　　　· For more than ten years since 2005, Xingke used the "@sincocn.cn" email

15   　　　address and used "sincocn.cn" as its company website, further indicating that Xingke was

16   　　　part of the Sinco Group.

17   　　　　　· For more than ten years since 2005, SinCo required Xingke and its employees to

18   　　　use SinCo's "Sinco" trademarks and logos for all internal or external purposes without

19   　　　any restrictions, making Xingke appear as part of the Sinco Group.

20   　　　　　· For more than ten years since 2005, SinCo's marketing materials including

21   　　　websites consistently listed Xingke as its manufacturing facility under the common and

22   　　　joint name of "Sinco".

23   　　　　　· For more than ten years since 2005, SinCo repeatedly informed customers that

24   　　　Xingke was the manufacturing facility of the Sinco Group, and SinCo arranged frequent

25   　　　customer visits to Xingke's factory in China and told customers that they were actually

26   　　　visiting the manufacturing facility of the Sinco Group.

27   　　　As a result of this joint relationship, from the very beginning SinCo and Xingke shared

28   resources, technologies, and customers. For example, SinCo and Xingke shared customers in a

DEFENDANTS' SUPPLEMENTAL JOINT
UPDATED STATUS CONFERENCE STATEMENT

1    way that customers always believed that there was no distinction between SinCo and Xingke.

2    More importantly, SinCo gave an open ended and free license to Xingke to use the "Sinco

3    trademarks" since 2005.

4           As a result, the "Sinco" trademark and the customers belonged to the joint venture, not

5    SinCo. Because Xingke was a member of the joint venture, it had the full right to use the

6    trademarks and develop customers. Consequently, Xingke neither infringed SinCo's trademarks

7    nor stole trade secrets from SinCo.  In fact, documents indicate that SinCo instructed Xingke to

8    use the "Sinco" Marks without restriction. (*See* Chee 30(b)(6) Deposition, Exhibit 3.)

9           *(iii) Mr. Cy and Mr. Liew as Employees of  Xingke or the Joint Venture.*

10          As part of the joint venture, both companies acted together to hire engineers. For example,

11   when Xingke had trouble hiring qualified engineers, SinCo stepped in and tried to recruit and hire

12   local Singapore engineers for Xingke. Defendants Mr. Ng and Mr. Liew were hired in this

13   manner. The initial employment agreements were executed between these engineers and SinCo,

14   making them appearing as employees of SinCo. However, they were stationed in Xingke's

15   factories, controlled by Xingke, and paid by Xingke. Under the law they were therefore

16   "employees" of Xingke, not SinCo.  Because SinCo and Xingke acted in concert closely, the

17   hired engineers could not tell the distinction between SinCo and Xingke.

18          *(iv) The End of the Joint Venture.*

19          The joint venture continued on till Xingke's ownership experienced a change in 2016

20   when the majority shareholder (Mr. Xu Shugong) of Defendant became very ill and wanted to

21   retire. Eventually all shares of Xingke – including Bryan Lim's minority shares – were sold to

22   Jinlong Machinery & Electronics Co. Ltd (also known as KOTL) in around 2016.

23          After the ownership change, Xingke decided to shift its business strategies by spending

24   more effort on developing and serving its own customers, and to reduce the reliance on the

25   business from SinCo. Xingke always had the freedom to go after its own clients and indeed had

26   its independent business since the very beginning. This means that Xingke became a major

27   competitor of SinCo in many markets, which was the reason for the present litigation.

28          As a result, the relationship between the parties has deteriorated since 2016. SinCo for the

- 7 -                                    DEFENDANTS' SUPPLEMENTAL JOINT
                                              UPDATED STATUS CONFERENCE STATEMENT

1    first time started to allege that Xingke was infringing its trademarks, stealing its customers,

2    breaching various agreements, and engaging in unfair competition.

3         Despite this, SinCo still had some unfinished orders with Xingke. Because SinCo could

4    not find a replacement factory in time, Xingke agreed to honor its promise and completed the

5    orders for SinCo.  But in early 2017, because of the lawsuits, Xingke decided to disassociate itself

6    with Sinco Group and to rebrand itself. Xingke in 2017 changed its company English name from

7    "Sinco Electronics (Dongguan) Co. Ltd." to "Xingke Electronics (Dongguan) Co. Ltd." Sinco

8    China also filed a trademark application for the "Xingke" trademark.

9         Because the joint venture began to disintegrate in 2016 and 2017 due to the ownership

10   change in Xingke, SinCo started to take a wide range of unfair and illegal actions as an attempt to

11   tarnish Xingke's reputation and interfere with Xingke' relations with its customers, by making

12   false reports about Xingke's violations of environmental regulations to Xingke's customers as

13   well as Chinese governmental authorities. In 2017 SinCo also brought a lawsuit in China against

14   Xingke but voluntarily dismissed its lawsuit because it lacked evidence to continue its frivolous

15   case against Sinco China. SinCo also chose to file two separate lawsuits in the U.S. including the

16   present action and a related State Court action.

17        *(v.)  Summary.*

18        It is no surprise that Xingke was using the same marks as SinCo, since this use was

19   *intended and indeed required* by the entities, to indicate that Sinco Group was a vast enterprise.

20   Shortly after Xingke was sold to a third party is when SinCo, alone, claimed ownership of the

21   Sinco marks.  Of note is that the unfettered permission to use the Sinco Marks over the last

22   decade was not reflected in any written agreement, nor was there any oversight by Sinco

23   Singapore over the use of its mark with associated products.  Moreover, the customers of SinCo,

24   as well as Xingke are highly sophisticated large corporations who were never misled as to the

25   origin of the goods they were purchasing.

26        Like Mr. Ng, Mr. Liew was and is an engineer working for Xingke at its factory in China.

27   Although his employment agreement was nominally with SinCo.  For purposes of this case, the

28   individual defendants were "employed," supervised and directed by Xingke or the venture.

DEFENDANTS' SUPPLEMENTAL JOINT
UPDATED STATUS CONFERENCE STATEMENT

II.     **DISCOVERY.**

SinCo's Statement:

Defendants' respectfully request the Court to refer to SinCo's statement, as provided in its Updated Joint Status Conference Statement [Dkt. 321].

Defendants' Statement:

Contrary to SinCo's statement, the rolling production commenced prior to the date promised, specifically on August 30, 2019.  There were issues with the first production of documents due to errors by Defendants' e-discovery vendor, but the errors were immediately corrected for productions thereafter, and there have now been nine (9) productions totaling 257,620 pages.  Defendants have retained a second e-discovery vendor (Legility) to assist in the production of documents and to address the myriad of purported issues identified by SinCo and Defendants regarding the productions to-date.  These issues have been brought before the state court action and have been subject to informal discovery conferences with the state court. Defendants anticipate that these discovery issues may result in law and motion before the state court.  Notwithstanding, Defendants will continue to produce documents on a rolling basis as quickly as possible and will be working with Legility regarding a production schedule for anticipated completion.   In light of these discovery issues, relevant to both state and federal actions, Defendants have filed an Application to Revise the Case Management and Pretrial Order for Jury Trial and Continue Final Pretrial Conference and Trial [Dkt. 311, Dkt. 312 corrected].

Defendants have also advised SinCo of deficiencies in SinCo's production of documents, which will be addressed in the state court action before the Discovery Referee the Hon. William James Ware (Ret.), the Special Master appointed by this Court to preside over discovery issues as well [Dkt. 222].

III.    **LEGAL ISSUES.**

SinCo's Issues:

Defendants respectfully request the Court refer to SinCo's statement, as provided in its Updated Joint Status Conference Statement [Dkt. 321].

///

1    ***Defendants' Issues:***

2         The most obvious legal issue is whether the actions taken by SinCo and Xingke created a

3    "joint venture". When the trademarks and related claims are viewed in the context of the joint

4    venture, Xingke and other individual defendants should not be held liable for the alleged

5    wrongdoings.

6         There are, however a myriad of additional legal issues to be decided.  What legal standard

7    governs whether the individual defendants or others impacted by this case are to be considered as

8    employees of one entity or the other or the "joint venture": US law, Chinese law or the law of

9    Singapore?

10        As SinCo states: "Assuming Mr. Ng and Mr. Liew were an employee of SinCo what was

11   the scope of their license to use the trademark? Was it limited to the scope of their employment?

12   The further question that arises is whether the law of Singapore, China or the US governs these

13   issues.  Moreover, since the "license" is (apparently) not in writing, what law governs the terms

14   and conditions of the "license?"

15        What legal standard governs the decade or more of admittedly permissive use of SinCo's

16   marks by entities such as Xingke?  Is it the legal standard of Singapore, China or the US?

17        Did SinCo exercise appropriate control over the use of the "Sinco" marks for over a

18   decade by Xingke and other entities who had permission to use the marks or is  there a "naked

19   license" to the Defendants.  Did SinCo wait too long to bring this case, knowing that Xingke was

20   using its marks?

21        Do Singapore or China present a forum that is more convenient for resolving the present

22   dispute between a company of Singapore and a company of China over the acts of individuals

23   residing in China and Singapore?

24        Were the highly sophisticated entities that are customers of Defendants confused by the

25   source of the goods they were purchasing?

26   **IV.    MOTIONS.**

27        ***SinCo's Potential Motions:***

28        Defendants respectfully request the Court refer to SinCo's statement, as provided in its

DEFENDANTS' SUPPLEMENTAL JOINT
UPDATED STATUS CONFERENCE STATEMENT

1    Updated Joint Status Conference Statement [Dkt. 321].

2              **Defendants' Potential Motions:**

3           In the Court's Order (Docket No. 195), the Court denied a motion for leave to file a third

4    amended Complaint by SinCo Singapore.  The Court stated that only Trademark related claims

5    would be permitted in the present case, and ruled as follows:

6                    Accordingly, the Court conditionally DENIES Sinco Singapore's motion to
7            amend. The denial is conditioned on Sinco China making an appearance in the
             state action and on Sinco China and Mr. Liew dismissing the counterclaims
8            described above in this action (with the intent to pursue the counterclaims in the
             state action instead). Because Mr. Liew will be dismissing his counterclaims,
9            Sinco Singapore's motion to dismiss his counterclaims is conditionally DENIED
             as moot.
10                   As a final point, the Court notes that, although it is denying Sinco
             Singapore's motion to amend, it is not barring Sinco Singapore from moving for
11           leave to make a more limited amendment so long as the proposed amendment
             would be consistent with the Court's ruling above
12

13          Docket No. 195, at 2-3.

14          Since SinCo (apparently) does not intend to make a more limited amendment, Defendants

15   intend to move to file an amended answer to comply with the Court's directive, dismissing non-

16   Trademark counterclaims and raising issues pertinent to defending or counterclaiming against the

17   operative Trademark claims.

18          Further, Defendants have opposed Plaintiff's motion for partial summary judgment on

19   many grounds, including that the motion should be denied because a question of fact exists as to

20   whether Plaintiff can obtain relief or whether Plaintiff has abandoned its trademarks by licensing

21   Defendants to use the marks without controlling the quality of goods sold (a "naked license"

22   under trademark law).   Docket No. 268 at 18-22.

23          Defendant Xingke Electronics (Dongguan) Co. Ltd. has also filed its Motion for Partial

24   Summary Judgment, set to be heard on January 16, 2019. [Dkt. No. 299.]  This motion requests

25   judgement for XingKe based on the assertion that Plaintiff has abandoned its marks by permitting

26   Defendant to sell goods using the marks without controlling the quality of goods sold, a "naked

27   license."  [Dkt. No. 299.]  Defendants Cher Yong aka CY Ng and Liew Yew Soon aka Mark

28   Liew have filed their own Motion for Partial Summary Judgment [Dkt. No. 319] of no personal

DEFENDANTS' SUPPLEMENTAL JOINT
                                 UPDATED STATUS CONFERENCE STATEMENT

1   liability – issues of which are factually and substantively related to SinCo's and Xingke's

2   respective pending motions for partial summary judgment, set to be heard on February 27, 2020.

3         Defendants have also filed an Application to Revise the Case Management and Pretrial

4   Order for Jury Trial and Continue Final Pretrial Conference and Trial [Dkt. 311, Dkt. 312

5   corrected], set to be heard on February 6, 2020.  Defendants have since filed a Motion to Shorten

6   Time to Consider Motion for Administrative Relief [Dkt. 318] of its Application.

7         In addition, Defendants are working with Hong Kong counsel to present Letters Rogatory

8   to the Court in order to seek compelled discovery (in Hong Kong) into the transaction that led

9   Defendants to acquire Xingke.

10  ## V.   AMENDMENT OF PLEADINGS.

11  *SinCo's statement:*

12        Defendants respectfully request the Court refer to SinCo's statement, as provided in its

13  Updated Joint Status Conference Statement [Dkt. 321].

14  *Defendants' statement:*

15        As stated above, the Court has indicated it will not bar SinCo from filing a "more limited

16  amendment," to its operative Complaint in this action.  (Docket No. 195, at 2-3).  SinCo does not

17  indicate it will avail itself of this option.  Therefore, as also stated above, Defendants intend to

18  move for leave to file an amended answer to comply with the Court's directive, dismissing non-

19  Trademark counterclaims and raising issues pertinent to defending or counterclaiming against the

20  operative Trademark claims.

21

22  ## VII.  EVIDENCE PRESERVATION.

23  *Sinco's Statement:*

24        Defendants respectfully request the Court refer to SinCo's statement, as provided in its

25  Updated Joint Status Conference Statement [Dkt. 321].

26  *Defendants' Statement:*

27        As more fully stated above, there have now been nine productions totaling 257,620 pages,

28

DEFENDANTS' SUPPLEMENTAL JOINT
UPDATED STATUS CONFERENCE STATEMENT

1    and Defendants will continue to produce documents on a rolling basis as quickly as possible.

2         As also more fully stated above, SinCo has raised these discovery issues in the state court

3    action, and the parties have brought a myriad of discovery issues before the state court.  These

4    matters will be addressed before Hon. William James Ware (Ret.) the discovery referee in the

5    state court action in the near future.  To the extent that SinCo intends to bring the same or similar

6    issues before the Special Master in this action, the issues will also be before Judge Ware.

7    However, SinCo should be directed to raise issues regarding the production of documents in only

8    one of the actions, not both.

9

10   Dated:  January 9, 2020                                  WHGC, P.L.C.

11

12                                                       By:  /s/ Kathleen E. Alparce
                                                              Kathleen E. Alparce

13                                                       *Attorneys for Defendants*
                                                         XINGKE ELECTRONICS (DONGGUAN) CO.,
14                                                       LTD. formerly known as SINCO
                                                         ELECTRONICS (DONGGUAN) CO. LTD.,
15                                                       MUI LIANG TJOA aka ML TJOA, NG CHER
                                                         YONG aka CY NG, and LIEW YEW SOON aka
16                                                       MARK LIEW

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' SUPPLEMENTAL JOINT
                                                         UPDATED STATUS CONFERENCE STATEMENT

1

2

**CERTIFICATE OF SERVICE**

3

4

5

6

7

The undersigned hereby certify that a true and correct copy of **DEFENDANTS'**
**SUPPLEMENTAL JOINT UPDATED STATUS CONFERENCE STATEMENT** filed
through the ECF System will be sent electronically to the registered participants as identified on
the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated on non-
registered participants on **January 9, 2020**.

8

9

Executed on **January 9, 2020**, at Newport Beach, California.

10

11

12

*/s/ Kathleen E. Alparce*
KATHLEEN E. ALPARCE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' SUPPLEMENTAL JOINT
UPDATED STATUS CONFERENCE STATEMENT