UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SINCO TECHNOLOGIES PTE LTD., <br> Plaintiff, <br> v. <br> SINCO ELECTRONICS (DONGGUAN) CO. LTD., et al., <br> Defendants. | Case No. 17-cv-05517-EMC <br><br> **ORDER DENYING PLAINTIFF AND DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT** <br><br> Docket Nos. 248, 299, 319 |

Plaintiff SinCo Technologies Pte, Ltd. ("SinCo") filed suit against Defendants SinCo Electronics (Dongguan) Co., Ltd. ("SinCo Elec"); XingKe Electronics (Dongguan) Co., Ltd. ("XingKe"); Mui Liang Tjoa ("Mr. Tjoa"); Ng Cher Yong ("Mr. Ng"); and Liew Yew Soon ("Mr. Liew") (collectively, "Defendants")[1] for trademark infringement, false designation of origin, false advertising, trademark dilution, common law trademark infringement and unfair competition, and state statutory unfair competition. *See* Docket No. 23 ("SAC").

All parties, with the exception of Mr. Tjoa, have moved this Court for partial summary judgment in their favor. *See* Docket Nos. 248, 299, 319. As explained in further detail below, because there are disputed issues of material fact regarding all three pending motions, this Court **DENIES** issuing a summary-judgment order.

---

[1] XingKe is the same company as SinCo Elec; "XingKe" is simply the phonetic equivalent of "SinCo" in Hanyu Pinyin. *See* SAC ¶ 19. In 2016, SinCo Elec was renamed to XingKe. Unless necessary to refer to SinCo Elec as it existed prior to XingKe, this order will refer to XingKe.

# I.     LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.[2]

# II.     SINCO'S MOTION FOR PARTIAL SUMMARY JUDGMENT

SinCo moves for summary judgment on the following claims: (1) trademark infringement; (2) common law trademark infringement and unfair competition; and (3) false designation of origin. Docket No. 248 ("SinCo Mot.") at 10–11. SinCo argues that "Defendants' lawful use of the 'SinCo' marks ended when they used the marks for their own ends in competition with SinCo, which is acknowledged by Defendants' conduct in concealing their use of SinCo's employees in using the marks in the U.S. against SinCo's interest and by filing multiple trademark applications on matter[s] previously rejected by the PTO." *Id.* at 12. SinCo argues: (1) it meets the *Sleekcraft* factors of trademark infringement articulated in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003); and (2) because infringement exists, the safe-distance rule applies with regard to XingKe's use of the trademark "XINGKE." SinCo Mot. at 23.

However, SinCo concedes that it provided XingKe with an oral agreement amounting to a

---

[2] Evidence may be presented in a form that is not admissible at trial so long as it could ultimately be capable of being put in admissible form. *See* Fed. R. Civ. P. 56(c)(2) (providing that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"). *See, e.g., Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) (stating that "[e]ven the declarations that do contain hearsay are admissible for summary judgment purposes because they 'could be presented in an admissible form at trial'").

2

geographically-limited license to use the trademark. *Id*. at 3. This oral license was never reduced to a written contract. There are genuine issues of disputed material fact including: (1) the nature and restrictions of the oral agreement; and (2) representations of any restrictions or agreements in 2016 when SinCo Elec was sold to Mr. Tjoa, the CEO of XingKe. Moreover, XingKe opposes summary judgment on the grounds that disputed material facts exist as to whether a naked license issued based on SinCo's history of permitting use of its marks without restriction, which includes the dispute of whether Mr. Ng and Mr. Liew were hired by SinCo and embedded at XingKe factories in China by SinCo to police the trademarks. As discussed below, there are disputed issues of fact as to that assertion.

The Court **DENIES** SinCo's motion for partial summary judgment.

### III. XINGKE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

XingKe's cross-motion is predicated on affirmative defenses. First, it argues that SinCo gave it a naked license to use the trademarks. Second, XingKe argues that SinCo is equitably estopped from enforcing the marks based on its conduct throughout the past decade.

A. <u>Naked License</u>

While it is undisputed that XingKe had a license to use the trademark, XingKe argues that SinCo had a duty to control the quality of its trademark lest it be deemed to have abandoned the mark. "It is well-established that '[a] trademark owner may grant a license and remain protected provided quality control of the goods and services sold under the trademark by the licensee is maintained.'" *Barcamerica*, 289 F.3d at 595–96 (quoting *Moore Bus. Forms, Inc. v. Ryu*, 960 F.2d 486, 489 (5th Cir.1992)). However, "where the licensor fails to exercise adequate quality control over the licensee, 'a court may find that the trademark owner has abandoned the trademark, in which case the owner would be estopped from asserting rights to the trademark.'" *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 516 (9th Cir. 2010) (quoting *Moore*, 690 F.2d at 489). To determine whether a naked license exists, the Ninth Circuit looks to whether (1) the license contained express contractual control over the licensee's operations, (2) the licensor had actual control over the licensee's quality control measures, and (3) the licensor was unreasonable in relying on the licensee's own quality control measures. *See FreecycleSunnyvale*,

3

626 F.3d at 512.

XingKe cites to two Ninth Circuit cases that analyze the naked-license affirmative defense to trademark infringement: (1) *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509 (9th Cir. 2010); and (2) *Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589 (9th Cir. 2002). In response, SinCo relies on a *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085 (9th Cir. 2013) for its argument that a naked license did not issue. All these cases are distinguishable because of the unique, long-standing relationship SinCo and XingKe had throughout the past decade.

Both *FreecycleSunnyvale* and *Barcamerica* are distinguishable to the case at bar because of XingKe's allegation that it and SinCo participated in a joint venture, which resulted in a long and close working relationship in which they shared profits and ownership interest in the joint venture. SinCo presumably received the goods manufactured by XingKe and could see and monitor the quality.[3] It is undisputed that a significant majority of XingKe's business consisted of manufacturing products for SinCo's customers. This relationship is different than the relationship between the licensor and licensee in *Barcamerica*, where the only connection was the fact that the parties had a license. *See Barcamerica*, 289 F.3d at 592. In *FreecycleSunnyvale*, there was no relationship at all between the licensor and licensee—not even a commercial contract. *See FreecycleSunnyvale*, 626 F.3d at 519.

On the other hand, SinCo's reliance on *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085 (9th Cir. 2013) is likewise misplaced. *Hokto* is distinguishable because the Ninth Circuit relied on a close working relationship, and there was sufficient evidence of ***actual*** quality control. *Id*. at 1098. Hokto involved two Japanese companies that were directly related—*i.e.*, one was the parent company of the other. *Id*. at 1090. Because of this close working relationship and evidence of the parent company's involvement with developing its subsidiary's factory for quality-control purposes, the Ninth Circuit concluded that the parent company reasonably relied on its subsidiary's efforts to control the quality of the products. *Id*. 1098.

---

[3] However, at the hearing, SinCo represented that XingKe could—and often did—send the manufactured products directly to SinCo's customers, without SinCo seeing the products.

4

Genuine issues of disputed material fact preclude this Court from issuing summary judgment regarding XingKe's naked-license affirmative defense. For instance, it is disputed whether Section 5 of the "SINCO TECHNOLOGIES PTE LTD PURCHASE AGREEMENT & PURCHASE ORDER TERMS AND CONDITIONS" provides SinCo with a contractual right to inspect and enforce quality. Whether SinCo *actually* controlled the quality of XingKe's products is contested. Likewise, it is up to the jury to decide if SinCo's reliance on XingKe's quality control was reasonable. *See Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1121 (5th Cir. 1991), *aff'd sub nom. Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992) ("While the parties dispute the actual level of quality control, the jury's finding—that [the licensor] exercises adequate supervision and control over [the licensee] to ensure that the quality of [the licensee's] goods and services are not inferior to [licensor's]—enjoys adequate record support."). As discussed below, the role of (and who employed) SinCo's alleged embedded employees (Mr. Ng and Mr. Liew) is also disputed.

The Court **DENIES** XingKe's motion for summary judgement on its naked-license defense.

B. Equitable Estoppel

XingKe's second affirmative defense for equitable estoppel also involves factual disputes. In order to demonstrate the affirmative defense of equitable estoppel, the proponent must demonstrate three elements:

> [1] The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. [2] The other relies upon that communication. [3] And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct.

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992), *abrogated by SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954 (2017). A jury must determine whether SinCo had knowledge (whether through Mr. Ng and Mr. Liew as embedded employees or via-a-vis Mr. Lim as the then-shareholder of SinCo Elec) of XingKe's independent usage of the mark in the United States market. It is also for the jury to decide whether the 2007 e-mail—in which a SinCo representative informs individuals in the "SinCo

1  group" to use certain new logos, fonts, colors, etc.—was a separate and new contract that
2  superseded the oral license, which, according to XingKe led it to believe it could use the mark
3  without restrictions.

4  The Court **DENIES** XingKe's motion for summary judgment regarding its equitable
5  estoppel affirmative defense.

### IV. MR. NG AND MR. LIEW'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants Mr. Ng and Mr. Liew (the "Individual Defendants") separately move for summary judgment on the grounds that they cannot be individually liable for trademark infringement in their roles as engineers. Docket No. 319 ("Ng's Mot.") at 5. SinCo appears to argues two theories for liability: (1) if Individual Defendants were employees of SinCo, they are liable for trademark infringement for traveling to the United States and convincing SinCo's customers to buy from XingKe (Docket No. 328 ["SinCo's Opp. to Ng's Mot."] at 17); or (2) if Individual Defendants were employees of XingKe, then they are liable as officers or directors. *Id*. at 18. Individual Defendants respond that (1) if the claim is regarding poaching customers, then that is the trade-secret claim being litigated in a parallel state court action; (2) they are not directors or officers within the meaning of a company's Board of Directors for the purposes of personal liability; and (3) they were at all times acting under the orders of their supervisors (whether XingKe supervisors or SinCo supervisors, depending on the theory pursued by SinCo). Docket No. 329 ("Reply ISO Ng's Mot.") at 5–6.

As discussed above, whether Mr. Ng and Mr. Liew were employees of SinCo or XingKe—or jointly employed—is a contested question of fact. Moreover, the parties have not squarely briefed or addressed what law applies regarding the Individual Defendants' employment status. *See* Docket No. 332 ("February 6, 2020 Joint Case Management Conference") at 13 (Defendants represent that legal issues exist as to "whether the law of Singapore, China or the US governs" employee status.). SinCo's opposition relies on the California Workers' Compensation Code and the Labor Code's definition of an employee. However, it has not demonstrated why California law applies to define the relationship between these Asia-based companies and their agents.

The Court **DENIES** Mr. Ng and Mr. Liew's motion for summary judgment.

This Court will not hear a motion for summary judgment from Mr. Tjoa. This matter is set to proceed to trial on June 22, 2020. The parties are strongly urged to settle this case.[4]

This order disposes of Docket Nos. 248, 299, and 319.

**IT IS SO ORDERED**.

Dated: February 25, 2020

_____
EDWARD M. CHEN
United States District Judge

---

[4] Defense counsel raised the issue of their clients' present inability to travel from Mainland China to the United States because of the temporary, emergency travel ban related to the novel coronavirus. However, there is no renewed motion to continue trial on this ground at this time. Any future request to continue the trial date must be based on cause with adequate evidentiary support.