LAEL D. ANDARA (SBN 215416)
DANIEL E. GAITAN (SBN 326413)
ROPERS MAJESKI PC
1001 Marshall Street, 5th Floor
Redwood City, CA 94063
Telephone:    650.364.8200
Facsimile:    650.780.1701
Email:        lael.andara@ropers.com
              daniel.gaitan@ropers.com

Attorneys for Plaintiff
SINCO TECHNOLOGIES PTE LTD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SINCO TECHNOLOGIES PTE LTD, | Case No. 3:17CV5517 EMC |
| Plaintiff, | The Honorable Edward M. Chen |
| v. | **PLAINTIFF SINCO TECHNOLOGIES PTE LTD'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF ITS *DAUBERT* MOTION TO STRIKE THE EXPERT REPORT OF DEFENDANTS' DAMAGES EXPERT HENRY KAHRS AND TO PRECLUDE MR. KAHRS AND ADRIAN FLEISSIG FROM TESTIFYING AT TRIAL** |
| SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS TECHNOLOGY CO., LTD.; SINCO ELECTRONICS TECHNOLOGY CO., LTD.; MUI LIANG TJOA (an individual); NG CHER YONG aka CY NG (an individual); and LIEW YEW SOON aka MARK LIEW (an individual), | |
| Defendants. | |
| AND RELATED ACTION. | Date:        TBD<br>Time:        TBD<br>Courtroom:    5<br>Judge:       Hon. Edward M. Chen |

1

**TABLE OF CONTENTS**

2

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ............................................................................... 2

   A.  Overview of the Parties Relationship ........................................................ 2

   B.  XINGKE's Damages Experts ...................................................................... 3

   C.  Mr. Kahrs' Expert History .......................................................................... 3

III.  LEGAL ARGUMENT ....................................................................................... 5

   A.  Standard for Admissibility of Expert Testimony ...................................... 5

      1.  The Trial Judge is to Protect the Jury from Improper Expert Testimony—is the expert qualified to give opinion testimony. ...................................................... 7

      2.  The Trial Judge is to Protect the Jury from Improper Expert Testimony—is the testimony helpful or is it misleading and confusing to the jury. ................................. 9

      3.  The Trial Judge is to Protect the Jury from Improper Expert Testimony—is the testimony based on specialized knowledge, skill, or training? ........................................ 10

   B.  The Court Should Preclude Mr. Kahrs' Opinions As Beyond The Scope of Expert Opinion and as Not Being His Opinion ........................................... 14

      1.  Mr. Kahrs' Regression Analysis Should be Excluded as he is Not Qualified to Form Such Opinions, Nor did He, Rather he Relies on Mr. Fleissig's Analysis ..................... 15

      2.  Mr. Kahrs' testimony on an outlier of sales is incomplete, not helpful, and contradicted by deposition testimony ........................................................ 17

      3.  Mr. Kahrs Is Not Qualified as A Consumer Behavior Expert ........................... 18

      4.  Mr. Kahrs' opinion is based on law that does not apply in the 9th Circuit .................. 19

      5.  Exclusion of expert testimony is necessary when the "expert lacks the 'good grounds' for his or her conclusion." ................................................................ 20

      6.  Mr. Kahrs' discussion of increased costs is not based on facts or data .......................... 21

      7.  Mr. Kahrs' unjust enrichment opinion is not founded on data and usurps the role of the jury .......................................................................................... 21

      8.  Mr. Kahrs' disgorgement testimony usurps the role of the jury ............................ 22

IV.  CONCLUSION ............................................................................................. 22

ROPERS MAJESKI
A Professional Corporation
Redwood City

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Allen v. Brown Clinic, P.L.L.P.,*
531 F.3d 568 (8th Cir. 2008)............................................................................6

*Applied Info. Scis. Corp. v. eBay, Inc.,*
511 F.3d 966 (9th Cir.2007)............................................................................11

*Bekaert Corp. v. City of Dyersburg,*
256 F.R.D. 573 (W.D. Tenn. 2009) ...............................................................16

*City of Pomona v. SQM North America Corp.,*
750 F.3d 1036 (9th Cir. 2014)......................................................................7, 8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
43 F.3d 1318 (9th Cir.1995)............................................................................8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
509 U.S. 579 (1993) ........................................................................................2

*Eclipse Associates Ltd. v. Data Gen. Corp.,*
894 F.2d 1114 (9th Cir.1990).........................................................................11

*Ellis v. Costco Wholesale Corp.,*
657 F.3d 970 (9th Cir.2011).............................................................................7

*Grodzitsky v. American Honda Motor Co., Inc.*
957 F.3d 979 (9th Cir. 2020)............................................................................8

*Hangarter v. Provident Life and Acc. Ins. Co.,*
373 F.3d 998. (9th Cir. 2004.).......................................................................11

*In re: TMI Litigation,*
193 F.3d 613 (3d Cir. 1999)...........................................................................21

*Intermedics, Inc. v. Ventritex, Inc.,*
139 F.R.D. 384 (N.D. Cal. 1991)....................................................................13

*Jinro Am. Inc. v. Secure Investments, Inc.,*
266 F.3d 993 (9th Cir. 2001)............................................................................9

*Jones v. Lincoln Elect. Co.,*
188 F.3d 709 (7th Cir. 1999)............................................................................8

*Kannankeril v. Terminix Int'l, Inc.,*
128 F.3d 802 (3d Cir. 1997)...........................................................................21

ROPERS
MAJESKI

A Professional Corporation
Redwood City

*Kumho Tire Co., Ltd. v. Carmichael,*
  526 U.S. 137 (1999)................................................................6, 8

*Lucido v. Nestle Purina Petcare Co.,*
  217 F. Supp. 3d 1098 (N.D. Cal. 2016)................................6

*Mattel Inc. v. Walking Mt. Prods.,*
  353 F.3d 792 (9th Cir.2003)..................................................11

*Messick v. Novartis Pharmaceuticals Corp.,*
  747 F.3d 1193 (9th Cir. 2014)................................................7

*Milward v. Rust-Oleum Corp.,*
  820 F.3d 469 (1st Cir. 2016)..................................................6

*Mukhtar v. Cal. State Univ.,*
  299 F.3d 1053 (9th Cir. 2002)................................................6

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.,*
  523 F.3d 1051 (9th Cir. 2008)............................................5, 15

*Network Appliance, Inc. v. Bluearc Corp.,*
  374 F. Supp. 2d 825 (N.D. Cal. 2005)................................21

*Owen v. Kerr–McGee Corp.,*
  698 F.2d 236 (5th Cir.1983)..................................................13

*Pages-Ramirez v. Ramirez-Gonzalez,*
  605 F.3d 109 (1st Cir. 2010)..................................................6

*Playboy Enterprises, Inc. v. Terri Welles, Inc.,*
  78 F. Supp. 2d . (S.D.Cal.1999)..........................................11

*Sanderson v. International Flavors and Fragrances, Inc.,*
  950 F. Supp. 981,993 (C.D. Cal. 1996)..............................8, 21

*Southland Sod Farms v. Stover Seed Co.,*
  108 F.3d 1134 (9th Cir. 1997)............................................10, 19

*U.S. v. Hankey,*
  203 F.3d 1160,1168 (9th Cir. 2000)......................................8

*U.S. v. Lukashov,*
  694 F.3d 1107 (9th Cir. 2012)................................................13

*U.S. v. Rincon,*
  28 F.3d 921 (9th Cir. 1994)............................................9, 10, 17

*United Food Mart, Inc. v. Motiva Enterprises, LLC,*
  404 F. Supp. 2d 1344 (S.D. FL, 2005)................................18

ROPERS
MAJESKI

A Professional Corporation
Redwood City

*United States v. Diaz*
   876 F.3d 1194 (9th Cir. 2017)................................................................5, 11

*United States v. Hankey*,
   203 F.3d 1160 (9th Cir. 2000)....................................................................9

*United States v. Ingredient Technology Corp.*,
   698 F.2d 88 (2d Cir.)............................................................................5, 15

*United States v. Pena-Santo*,
   809 F.3d 686 (1st Cir. 2015)........................................................................6

*United States v. Sandoval–Mendoza*,
   472 F.3d 645 (9th Cir.2006)........................................................................7

*United States v. Valencia-Lopez*,
   971 F.3d 891, 897–898(9th Cir. 2020)........................................................6

*United States v. Weitzenhoff*,
   35 F.3d 1275 (9th Cir.1993)........................................................................5

*United States v. Winters*,
   729 F.2d 602 (9th Cir. 1984)......................................................................10

*Wilson v. Woods*,
   163 F.3d 935,937 (5th Cir. 1999)..........................................................8, 18

**FEDERAL STATUTES**

*Lanham Act* ................................................................................................9, 19

Federal Rule of Evidence 702 ..............................................1, 2, 6, 7, 11, 14, 17

FRCP Rule 26 ........................................................................2, 3, 13, 16

FRE 703 ....................................................................................................1

FRE 104(a) ............................................................................................1, 8

FRE Rule 403 ........................................................1, 6, 7, 9, 11, 13, 14, 17

FRE 704(a) ..............................................................................................11

ROPERS
MAJESKI

A Professional Corporation
Redwood City

I. **INTRODUCTION**

At trial, Defendants Sinco Electronics (Dongguan) Co., Ltd., doing business as Xingke Electronics (Dongguan) Co., Ltd.; Mui Liang Tjoa; Ng Cher Yong; and Liew Yew Soon (herein "XINGKE") will offer "expert" damages opinions and testimony of Henry J. Kahrs and Adrian Fleissig, where XINGKE has designated only Mr. Kahrs to testify to SINCO TECHNOLOGIES PTE LTD.'s ("PLAINTIFF" or "SINCO") damages.  This motion is made on the grounds that Mr. Kahrs' opinions: (1) are not premised on an objective and reliable evidentiary basis that is appropriate for an expert opinion on the matters presented; (2) are not directed to damages but as to liability with a determination of the ultimate legal issue; and (3) create a danger of unfair prejudice, confusion of the issues, and misleading of the jury, all of which would outweigh the probative value of the testimony. Federal Rule of Evidence ("FRE") 104, 401 - 403, 702, and 703.

This Court should exclude any opinions and/or testimony from Mr. Kahrs and Mr. Fleissig because 1.) Mr. Kahrs strays far from the field of his asserted expertise as to damages and asserts, as an opinion, Defendants' legal conclusion of non-infringement;[1] and 2.) methodology and analysis in Mr. Kahrs report is not his own and SINCO was unable to cross-examine the true author, Mr. Fleissig, on the portion of the report written by Mr. Fleissig.

The damages experts in this case should be limited to the evaluation of damages, upon the assumption that the jury ultimately finds trademark infringement. Mr. Kahrs' expert opinions assert that there was ***no consumer confusion***, and hence no trademark infringement, which is a fact question reserved for the Jury, based on his incomplete understanding of the law, which is a legal question for the Court to inform the Jury.  These opinions of non-infringement are legal conclusions that are not based on damages calculations or scientific principles. Mr. Kahrs ignores the possibility of trademark infringement to assert there was no damages, hence no analysis, which begs the question what is the purpose of his report?  Mr. Kahrs provides no mathematical damages calculation that would aid the Jury, his opinions do not aid the Jury and cloak Defendants' theory of the case as "Expert" opinions, to prejudice SINCO's case.  FRE 403.

---

[1] *Gaitan Decl.* Exh. B ████████████████████████████████████████

ROPERS MAJESKI | A Professional Corporation Redwood City

1   Mr. Kahrs' criticism of SINCO's Expert for not providing opinions of "customer

2   confusion," foreshadows the focus of his conclusion[1] of no trademark infringement, for which he

3   is not qualified. Mr. Kahrs states that he ***analyzed the existence of customer confusion or the***

4   ***lack thereof***.  (*Declaration of Daniel Gaitan in Support of this Motion "Gaitan Decl." at Exh. B*

5   *pg. 12-13.*)   Mr. Kahrs completely hijacks the role of the Jury by determining, absent any

6   mathematical calculation or special knowledge, to arrive at the opinion that there was no

7   customer confusion, pp. 12-20, guided only by the cherry-picked facts that XINGKE provided out

8   of context and incomplete. *Id.* at pg. 12-20.

9   The only actual damages analysis in Mr. Kahrs' report was that of Mr. Cox and Mr.

10   Fleissig, not Mr. Kahrs. XINGKE failed to provide the required disclosures under Federal Rule of

11   Civil Procedure ("FRCP") Rule 26 (a)(2) as to Mr. Fleissig prior to **February 6, 2020**, which was

12   the close of Expert discovery. This Court should exclude any opinions Mr. Kahrs' refers to as

13   "the regression stuff," authored by Mr. Fleissig. *Gaitan Decl.* at Exhibit C 155:14-24. The fact

14   that Mr. Flessig's opinions are not those of Mr. Kahrs, was also evidenced by the email

15   XINGKE's counsel emailed SINCO's counsel (in support of Mr. Kahrs report), during the

16   deposition, in the afternoon, entitled "Fleissig Analysis.xls." *Gaitan Decl.* at Exh. J pg.2.

17   Mr. Kahrs testimony and opinions should be stricken and excluded on the grounds that

18   they do not comport with the requirements of FRE 702 and the standards set forth by the Supreme

19   Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ("Daubert"). Mr.

20   Kahrs has failed to support his purported expert opinions with the type of quantifiable and

21   defensible data required under Federal law and procedure

22   **II.**   **FACTUAL BACKGROUND**

23   **A.**   **Overview of the Parties Relationship**

24   SINCO is a company organized under the laws of Singapore, with its headquarters in

25   Singapore.  SINCO provides a wide selection of designed-and-made to order items such as rubber

26   keypads, keypads with chrome and electro-plated, metal to rubber bonding, engineering rubber

27   components, and plastic buttons. SINCO also develops the tooling to make these unique parts.

28   SINCO develops the original tooling and dies for the requested item, and when approved

ROPERS MAJESKI
A Professional Corporation
Redwood City

SINCO issues a Purchase Order to a contract manufacturer, such as XINGKE to have the item mass produced using SINCO's tooling and dies. XINGKE would thereafter be subject to the terms and conditions upon accepting the Purchase Order. *Gaitan Decl.* Exh. C at 48:18-25.  (Mr. Kahrs did not review the terms and conditions to purchase orders. *Id.*) Until about 2017 defendant XINGKE was a contract manufacturer supplying to SINCO pursuant to SINCO's specifications. There is no transaction directly between the contract manufacturer[2] and SINCO's customer— until XINGKE began soliciting directly using SINCO trademarks. Defendants Mark Liew and Cy Ng were employees of SINCO stationed to oversee the manufacturing process for SINCO and communicate with SINCO's customers in the United States during the process. Defendant Defendants Sinco Electronics (Dongguan) Co., Ltd. had a limited license to use SINCO trademarks on products manufactured for SINCO, pursuant to the terms and conditions of the Purchase Orders that XINGKE accepted from SINCO.  XINGKE had no rights to use the SINCO trademarks in the U.S. In or about 2016 XINGKE began directly soliciting customers in the U.S. using the SINCO trademarks and SINCO employees, without the knowledge or consent of SINCO.  SINCO has alleged damages as a result of said conduct.

## B.    XINGKE's Damages Experts

On **January 16, 2020**, XINGKE disclosed Mr. Kahrs as a testifying Expert.  *Gaitan Decl.* Exh. O. On **January 23, 2020**, XINGKE disclosed Mr. Fleissig as a non-testifying Expert ("he is "staff"… However, he will not be offering any reports or opinions in this case") followed by his resume on **January 29, 2020**. *Gaitan Decl.* Exh. N. The following day, **January 30, 2020**, SINCO received a link to Mr. Kahrs FRCP Rule 26 report.  *Gaitan Decl.* Exh. M.  On **February 4, 2020**, SINCO's counsel deposed Mr. Kahrs. *Id.* at Exh. C.

## C.    Mr. Kahrs' Expert History

Mr. Kahrs has been a damages expert since 1985. During the first 15 years of his career he worked mostly for insurance carriers on first-party loses. *Id. at Exh. C* 39:2-8.  In the first 15 years he handled no intellectual property cases. *Id.* at 39:14-16. For the last 20 years he transitioned into litigation support, wherein he has worked on an estimated 10-12 trademark

---

[2]  Customers may visit the contract manufacturer facility to inspect quality and the like.

ROPERS
MAJESKI

A Professional Corporation
Redwood City

1  cases. *Id.* at 39:24-40:2. Mr. Kahrs estimates that three – four of those trademark cases were in

2  Federal Court. *Id.* at 40:20-23.

3        On **July 19, 2007**, Judge George Schiavelli excluded the expert testimony of Mr. Kahrs as

4  to copyright infringement damages based on the argument that "the methodology used by Mr.

5  Kahrs is riddled with unsupported assumptions and is, at best, unscientific." *Id.* at Exh. A.  A

6  similar concern is the subject of this motion as XINGKE proposes to allow the following

7  testimony be presented to the Jury from Mr. Kahrs:



8  *Kahrs.*

11  *Q.*     You said that no damages; right?

12  *Kahrs.*

14  Q.     So you're assuming that there was no infringement based on that?

15  *Kahrs.*

15  Q.     There could be infringement, but no damages?

16  *Kahrs.*

17  Q.     How come?

18  *Kahrs.*

22  Exh. C 82:11-83:9. While factual inaccurate it is also not the state of the law and would not be

23  helpful to the Jury. Later, Mr. Kahrs testified:

24  *Kahrs.*



26  *Id.* at 85:18-21.  Ironically the only time Mr. Kahrs opinion provides a calculation as to potential

27  damages, it is the calculation of SINCO's expert who determined a 14% margin. *Id.* at 210:5-12.

28

ROPERS
MAJESKI

A Professional Corporation
Redwood City

## III.   LEGAL ARGUMENT

Mr. Kahrs expert report and proposed testimony are anchored in the legal conclusion[3] that there was no consumer confusion and no trademark infringement, which would serve to do nothing more than tell the jury what result it should reach. The law would be in a curious state if jurors received their instructions on the law from an expert witness as well as from the trial judge. *United States v. Ingredient Technology Corp.,* 698 F.2d 88, 97 (2d Cir.). Resolving doubtful questions of law is the distinct and exclusive province of the trial judge. *United States v. Weitzenhoff,* 35 F.3d 1275, 1287 (9th Cir.1993).  Expert testimony here would have been not only superfluous but mischievous. *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.,* 523 F.3d 1051, 1059 (9th Cir. 2008).

### A.   Standard for Admissibility of Expert Testimony

Expert testimony may only be admitted in a manner consistent with the FRE, Daubert, and more recent appellate court cases. First and foremost, expert testimony is not to tell the jury how it (the jury) is to decide an ultimate issue.  *United States v. Diaz* 876 F.3d 1194, 1197 (9th Cir. 2017). It is fundamental that opinion testimony is permitted in order to aid and assist the jury. A plain reading of FRE 702 says the role of the expert is to assist the jury to understand the evidence, not to tell the jury what to conclude from the evidence.

FRE 702 specifically provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

That applies to all expert testimony, not just scientific testimony.  *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 148-149 (1999) (applying *Daubert* to all expert testimony).  And it applies to rebuttal experts.  *Allen v. Brown Clinic, P.L.L.P.,* 531 F.3d 568, 573-74 (8th Cir. 2008).

ROPERS
MAJESKI

A Professional Corporation
Redwood City

---

3 ▪ ███████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████ ." *Gaitan Decl.* at Exh B 19:15-19.

1   Thus, while Mr. Kahrs may be a rebuttal expert his testimony must nevertheless qualify under

2   FRE 702 and *Daubert*; and not be excluded by FRE 403.

3       In *Daubert*, the Supreme Court listed factors that a court may consider in

4       determining whether expert testimony is sufficiently reliable to be admitted into
    evidence, including: (1) whether the scientific theory or technique can be (and has

5       been) tested, (2) whether the theory or technique has been subjected to peer review
    and publication, (3) whether there is a known or potential error rate, and (4) whether

6       the theory or technique is generally accepted in the relevant scientific community.

7   *Lucido v. Nestle Purina Petcare Co.*, 217 F. Supp. 3d 1098, 1109 (N.D. Cal. 2016), citing

8   *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1064 (9th Cir. 2002). These factors are not

9   exhaustive. Indeed, the Supreme Court emphasized that "whether Daubert's specific factors are,

10  or are not, reasonable measures of reliability in a particular case is a matter that the law grants the

11  trial judge broad latitude to determine." *Kumho Tire Co., Ltd.* at 153.

12      In *Daubert*, the Supreme Court "established that a trial judge has the obligation to ensure

13  that expert evidence is relevant and reliable[.]" *Milward v. Rust-Oleum Corp.*, 820 F.3d 469, 473

14  (1st Cir. 2016), *citing Daubert*, 509 U.S. at 591; *see also Kumho Tire Co. v. Carmichael*, 526

15  U.S. 137, 148 (1999). For expert testimony to be admissible, it must "be relevant to the task at

16  hand and helpful to the jury." *United States v. Pena-Santo*, 809 F.3d 686, 694 (1st Cir. 2015).

17      Under FRE 702, before admitting expert testimony, "the district court must perform a

18  'gatekeeping role' [to] ensur[e] that the testimony is both 'relevant' and 'reliable.'" *United States*

19  *v. Valencia-Lopez*, 971 F.3d 891, 897–898(9th Cir. 2020); *Kumho Tire*, 526 U.S.137.  "A district

20  court enjoys substantial discretion to decide whether to admit or exclude relevant expert

21  testimony." *Pages-Ramirez v. Ramirez-Gonzalez*, 605 F.3d 109, 115 (1st Cir. 2010).

22      A trial court must be sure that its review of expert testimony focuses "solely on principles

23  and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 592-94, 596.

24  Here, Mr. Kahrs' testimony and proposed opinions should be excluded because they do not meet

25  the requirements imposed by FRE 702, as it is not assistive or reliable, but rather seeks to usurp

26  the role of the jury and improperly lend credibility to Defendants case. FRE 403.

27  Expert testimony that may confuse or mislead the jury or the probative value of which is

28  outweighed by risk of unfair prejudice should nevertheless be excluded.  FRE 403. Such

ROPERS
MAJESKI

A Professional Corporation
Redwood City

testimony does not assist the jury.   Accordingly, Mr. Kahrs cannot give opinion testimony unless

it qualifies under FRE 702 *and* it will **assist** and not confuse the jury.

**1.   The Trial Judge is to Protect the Jury from Improper Expert Testimony—is the expert qualified to give opinion testimony.**

Under Daubert, the district judge is "a gatekeeper, not a fact finder." *Daubert*, 509 U.S. at

592-94, 596 (citing *United States v. Sandoval–Mendoza*, 472 F.3d 645, 654 (9th Cir.2006).  The

courts "acknowledged the district court's duty to 'act as a 'gatekeeper' to exclude junk science

that does not meet Federal Rule of Evidence 702's reliability standards." *Messick v. Novartis*

*Pharmaceuticals Corp*, 747 F.3d 1193, 1197 (9th Cir. 2014). (*citing Ellis v. Costco Wholesale*

*Corp.*, 657 F.3d 970, 982 (9th Cir.2011).  FRE 702 establishes a "gate-keeping" function, by

which "the trial judge [has] the task of ensuring that an expert's testimony both rests on a reliable

foundation and is relevant to the task at hand."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S.

at 597.

First, the court first determines if the proposed expert testimony is reliable.  Second, <u>if the

expert testimony is reliable</u> the court then determines if the proposed expert testimony is 'fit' to

advance a material aspect of the case.  *Id. at* 590-591.  Even if it may pass the initial test, expert

testimony may be excluded if the reasoning or methodology underlying the testimony is invalid

or irrelevant to the issues in the case.  *Id.* (trial judge must ensure that any and all testimony or

evidence admitted is not only relevant, but reliable).  "Expert opinion testimony is relevant if the

knowledge underlying it has a valid connection to the pertinent inquiry and it is reliable if the

knowledge underlying it has a reliable basis in the knowledge and experience of the relevant

discipline." *City of Pomona v. SQM North America Corp*. 750 F.3d 1036, 1043–1044 (9th Cir.

2014). This "'gate-keeping' obligation applies not only to testimony based on 'scientific'

knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." See

*Kumho Tire*, 526 U.S. at 141.

An expert's bald assertion is not admissible. Indeed, the current version of FRE 702 was

adopted in 2000, and was intended to be specifically "in response to *Daubert*." See FRE  702,

Advisory Comm. Notes to 2000 Amendments. "The amendment affirms the trial court's role as

ROPERS
MAJESKI

A Professional Corporation
Redwood City

1  gate-keeper and provides some general standards that the trial court must use to assess the

2  reliability and helpfulness of proffered expert testimony." *Id.* Further, because the "admissibility

3  of all expert testimony is governed by the principles of FRE 104(a), ... the proponent has the

4  burden of establishing that the pertinent admissibility requirements are met by a preponderance of

5  the evidence." *Id.*; *Daubert v. Merrell Dow Pharms., Inc.* (Daubert II), 43 F.3d 1311, 1378 (9th

6  Cir. 1995).  The expert's findings must be based on objective, independent validation of the

7  expert's methodology.  *Sanderson v. International Flavors and Fragrances, Inc.,* 950 F. Supp.

8  981,993 (C.D. Cal. 1996).

9         The expert must have appropriate qualifications-special knowledge, skill, training

10  experience, or education on the subject matter.  FRE 702; *U.S. v. Hankey*, 203 F.3d 1160,1168

11  (9th Cir. 2000), citing *Jones v. Lincoln Elect. Co.*, 188 F.3d 709, 723 (7th Cir. 1999) (opinion

12  must be an opinion informed by the witness' expertise rather than simply an opinion broached by

13  a purported expert); *Wilson v. Woods*, 163 F.3d 935,937 (5th Cir. 1999) (court should refuse to

14  allow an expert to testify if he is not qualified in a particular field or on a particular subject).

15         "The test 'is not the correctness of the expert's conclusions but the soundness of his

16  methodology,' and when an expert meets the threshold established by FRE 702." *City of Pomona*

17  *v. SQM North America Corp.* 750 F.3d 1036, 1044 (9th Cir. 2014) (citing *Daubert v. Merrell*

18  *Dow Pharmaceuticals, Inc.*, 43 F.3d 1318 (9th Cir.1995). "The focus of the district court's

19  analysis must be solely on principles and methodology, not on the conclusions that they

20  generate," and "the court's task is to analyze not what the experts say, but what basis they have

21  for saying it." *Grodzitsky v. American Honda Motor Co., Inc.* 957 F.3d 979, 984–985 (9th Cir.

22  2020).

23         Mr. Kahrs recites select evidence and usurps the role of the jury, evaluating and stating his

24  conclusion from the evidence.  For example,



25                                                                        ," *Id.* at pg. 12;

26  "

27

28                                                                        *Id.* at pg.

ROPERS
MAJESKI

A Professional Corporation
Redwood City

1    19.  Mr. Kahrs' deposition testimony is no different.  For example: "███████████

2    ████████████████████"  *Exh.* C at 216:25-217:1.

3    **2.  The Trial Judge is to Protect the Jury from Improper Expert Testimony—is the**
     **testimony helpful or is it misleading and confusing to the jury.**

4

5            While expert testimony can be helpful to the jury, the powerful nature of expert testimony

6    has a potential to mislead the jury. *U.S. v. Rincon*, 28 F.3d 921, 925 (9th Cir. 1994).

7    *Daubert* reiterates that the district court may exclude relevant expert evidence pursuant to FRE

8    403 "if its probative value is substantially outweighed by the danger of unfair prejudice, *confusion*

     *of the issues,* or misleading the jury." *Daubert,* 509 U.S. at 595; *Rincon,* 28 F.3d at 926. To guard

9    against the risk that jurors will accept an expert's testimony simply because he or she is an expert,

10   a district court must ensure that all expert testimony is "not only relevant, but reliable." *Daubert,*

11   509 U.S. at 589, (1993).  *Daubert* invoked an important constraint on expert testimony that is

12   particularly relevant here:

13

14           Rule 403 permits the exclusion of relevant evidence 'if its probative value is
             substantially outweighed by the danger of unfair prejudice, confusion of the issues, or
15           misleading the jury....' Judge Weinstein has explained: 'Expert evidence can be both
             powerful and quite misleading because of the difficulty in evaluating it. Because of
16           this risk, the judge in weighing possible prejudice against probative force under Rule
             403 ... exercises more control over experts than lay witnesses.' *Daubert,* 509 U.S. at
17           595, quoting 138 F.R.D. 631, 632 (1991).

18   *Jinro Am. Inc. v. Secure Investments, Inc.,* 266 F.3d 993, 1005 (9th Cir. 2001), opinion amended

19   on denial of reh'g, 272 F.3d 1289 (9th Cir. 2001).  "[U]nfair prejudice means 'undue tendency to

20   suggest decision on an improper basis, commonly, though not necessarily, an emotional

21   one.'" *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (quoting FRE 403 advisory

22   committee's note).

23           In *U.S. v. Rincon*, 28 F.3d 921 (9th Cir. 1994), Rincon proffered Dr. Pezdk's expert

24   testimony about eye witnesses. The 9th Circuit held that the district court did not abuse its

25   discretion when it "found that Dr. Pezdek's testimony would not assist the trier of fact and that it

26   would likely confuse or mislead the jury." *Id.* at 925.  "Given the powerful nature

27   of expert testimony, coupled with its potential to mislead the jury, we cannot say that the district

28

ROPERS
MAJESKI
A Professional Corporation
Redwood City

1    court erred in concluding that the proffered evidence would not assist the trier of fact and that it

2    was likely to mislead the jury." *Id.* at 926.

3    **3.  The Trial Judge is to Protect the Jury from Improper Expert Testimony—is the**
     **testimony based on specialized knowledge, skill, or training?**

4

5        Expert testimony is limited to matters that require specialized knowledge, skill,

6    experience, training.  FRE 702. Testimony is admissible under FRE 702 if the subject matter at

7    issue is beyond the common knowledge of the average layman.  *United States v. Winters,* 729

8    F.2d 602, 605 (9th Cir. 1984).  A determination if there was consumer confusion is not beyond

9    the common knowledge of the average layman, and does not require testimony from a damages

10   expert. There is no special skill involved in reading emails, seeing demonstrative evidence

11   (business card, meeting agenda, etc.), or listening to non-technical testimony about sales meetings

12   to determine if customers were confused.  Mr. Kahrs' "expert" testimony relating to customers

13   may be excluded on that basis alone—it does not require special knowledge, skill, experience,

14   training, or education. *Id.*

15       Mr. Kahrs' rebuttal to the Cox damages report and his "opinion" on lost profits is founded

16   on *his* conclusions from what was said in meetings and emails, which were incomplete and

17   explained by XINGKE. In Mr. Kahrs' report, and in deposition explaining the basis for his

18   opinion, Mr. Kahrs asserts customers were not confused and proceeds to opine there are no

19   trademark damages.  *Gaitan Decl.* at Exh. B at pp. 14 and 16-20; Exh. C at 85:9-21;105:19-

20   106:23; 108:18-109:4; 100:7-23; 111:1-4;113:8-12;114:13-115:9;121:25-123:8; 125:5-13;

21   125:18-126:21; 213:21-214:6; 216:17-217:1;217:16-22; and 229:20- 230:2. Putting aside for now

22   that actual confusion is not required for damages, *Southland Sod Farms v. Stover Seed Co.*, 108

23   F.3d 1134, 1146 (9th Cir. 1997), whether customers were confused is the jury's role.

24       "Generally, the use of expert testimony is not permitted if it will usurp either the role of

25   the trial judge in instructing the jury as to the applicable law or the role of the jury in applying

26   that law to the facts before it.  When an expert undertakes to tell the jury what result to reach, this

27   does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment

28   for the jury's." *United States v. Diaz* 876 F.3d 1194, 1197 (9th Cir. 2017) [internal citations

ROPERS
MAJESKI

A Professional Corporation
Redwood City

1  omitted]; *see* FRE 702(a).

2  　　　　Indeed, FRE 704(a) provides that expert testimony that is "otherwise admissible is not

3  objectionable because it embraces an ultimate issue to be decided by the trier of fact." That said,

4  "an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an

5  ultimate issue of law." *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1016. (9th

6  Cir. 2004.) Mr. Kahrs opinion of *no confusion so no damage* is an ultimate legal conclusion for

7  the jury to make. *Gaitan Decl.* at Exh. B pp 9-11.

8  　　　　Confusion, like likelihood of confusion, is a mixed question of fact and law for the jury to

9  decide. The determination of the state of affairs (a 'foundational fact') is a finding of fact, but the

10  further determination of confusion based on those factors is a legal conclusion. See *Playboy*

11  *Enterprises, Inc. v. Terri Welles, Inc.*, 78 F. Supp. 2d at 1081–82. (S.D.Cal.1999). Mr. Kahrs

12  acknowledged that confusion was for the jury to decide.

13  　　　*Q.*　　You understand that it's up to the jury to determine whether or not there
14  　　　　　　was trademark infringement?[4]

14  　　　*Kahrs.* ████████████████

15  *Gaitan Decl.* at Exh. C at 77:6-9. But it didn't dissuade him from determining there was no

16  confusion.

17  　　　　For example, Mr. Kahrs states:

18  　　　*Kahrs.* █████████████████████████



21  *Id.* at 27:19-24. Mr. Kahrs incomplete opinion was, "████████████████

22  ████████████████ *Id.* at 216:23-217:1. Mr.

23  Kahrs basis this decision on a single email, and concludes that ████ made his decisions

24  based on the capabilities of both companies, and was not confused by his decision, despite not

---

[4] "Trademark law aims to protect trademark owners from a false perception that they are associated with or endorse a product." *Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792, 806 (9th Cir.2003). The traditional elements of a claim for trademark infringement are ownership of a protectable mark and likelihood of confusion arising from defendant's use of the mark. *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir.2007) The failure to prove instances of actual confusion is not dispositive against a trademark plaintiff, because actual confusion is hard to prove; difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy. *Eclipse Associates Ltd. v. Data Gen. Corp.*, 894 F.2d 1114, 1118–19 (9th Cir.1990)

4827-1098-2356.22

- 11 -

MPA ISO PLAINTIFF'S *DAUBERT* MOTION
TO EXCLUDE TESTIMONY
3:17CV5517 EMC

1  speak1ing to him or anyone at ███████ Mr. Kahrs failed to consider the evidence of confusion

2  that SINCO has repeatedly asserted in this litigation in Motion Practice and otherwise, as

3  apparently XINGKE failed to provide such information to Mr. Kahrs. *Id.* at Exhs. D- L.

4        In regards to ██████ Mr. Kahrs states "██████████████████████████████

5  ██████████████████████████████████████████████████████████████

6  ██████████" *Id.* 107:12-14. Again, without full context to all evidence. *Id.* at Exh. I.

7        Mr. Kahrs opines, "██████████████ which again is outside the scope of his report,

8  despite the overwhelming evidence presented regarding Mr. Tjoa's meeting in December with

9  ████ and other evidence as to confusion. *Id.* 108:25-113:12. Again without full context to all

10  evidence. *Id.* at Exhs. D-F.

11        Even more concerning was Mr. Kahrs provided this inappropriate legal conclusion after

12  conducting the following review: Mr. Kahrs reviewed **zero** of Defendants sales, and profit and

13  losses (*Id.* at Exh. C 18:21-20:1 and 35:4-9), **zero** of SinCo's purchase orders (*Id.* at 19:24-20:4),

14  and cherry picked from Cox's Appendix B of what he felt was most pertinent after his staffed

15  culled them out. *Id.* 43:10-15. Moreover, Mr. Kahrs testified:

16        *Kahrs.* ████████████████████████████████████████████████████

17  ███████████████████████████

18  *Id.* at. 28:4-7. (Emphasis Added)

19        In addition to his lack of review,  Mr. Kahrs came to these inappropriate legal conclusions

20  that there was no infringement with ██████ and ██████ despite SINCO producing evidence

21  of Mui Liang Tjoa's presentation to ████ on **December 10, 2016,** the audio recording of Mr.

22  Tjoa's presentation to ████ on **December 10, 2016,** the transcript of audio recording of Mr.

23  Tjoa's presentation to ████ on **December 10, 2016,** the email communication between ████████

24  of ██████ and Mr. Tjoa confirming that the ██████ email communications between ████████ of

25  ██████ and Mr. Tjoa with ████████ email communications between Bryan Lim and Xu Shugong

26  where Mr. Lim discusses Yiming and Mark Liew's mistake of telling SINCO customers that

27  SINCO HQ and Humen are different companies, and a copy of the 'Public' Office Action refusals

28  issued by USPTO based on likelihood of confusion for Trademark Applications No. 87307929

ROPERS
MAJESKI

A Professional Corporation
Redwood City

1   and No. 87307939, owned by SINCO. *Gaitan Decl*, Exh. D-I, and M.

2            Paradoxically, Mr. Kahrs states that he has no evidence of lack of confusion anywhere,

3   that he can base his personal knowledge on, which illustrates the lack of basis for concluding

4   there is no infringement. *Id.* at Exh. C at 221:25-222:4. Allowing an expert to give his opinion on

5   the legal conclusions to be drawn from the evidence both invades the court's province and is

6   irrelevant." *Owen v. Kerr–McGee Corp.*, 698 F.2d 236, 240 (5th Cir.1983). This Circuit has

7   stated that "[e]xpert testimony should be excluded 'if it concerns a subject improper for expert

8   testimony, for example, one that invades the province of the jury.'" *U.S. v. Lukashov*, 694 F.3d

9   1107, 1116 (9th Cir. 2012). An expert should not be permitted to give opinions that reiterate what

10  the lawyers offer in argument.[5] *Intermedics, Inc. v. Ventritex, Inc.*, 139 F.R.D. 384, 390 (N.D.

11  Cal. 1991).[6]

12           Mr. Kahrs rebuts the Cox report by telling the jury what to find from the evidence by

13  deciding the ultimate conclusion of law ███████████████████████████████████████████

14  ███████"). *Gaitan Decl.* Exh. B pg. 19. Mr. Kahrs, report is internally inconsistent claiming in

15  one section that SINCO's lost business was because XINGKE no longer manufactured for

16  SINCO, and in another section that the sales were open competition between SINCO and

17  XINGKE not related to confusion.  That is a prototypical example expert testimony that should be

18  excluded because its probative value is substantially outweighed by the danger of unfair

19  prejudice, confusion of the issues, or misleading the jury."  FRE 403; *Daubert*, 509 U.S. at 579

20  and 595.

21           Mr. Kahrs does not rely on stated assumptions—he states the conclusion that the jury is to

22  reach. XINGKE cannot use Mr. Kahrs as a vehicle for reiterating its factual conclusions to the

23  jury under the guise of "expert opinion." Mr. Kahrs' expert analysis consists of little more than

24  reviewing cherry picked documentation provided by counsel in addition to calls with named

25

26  [5] See *Gaitan Decl.* Exh. C at 75:7-25, 90:17-23, and 124:8-126:21.
27  [6] See the Advisory Committee's Notes accompanying the 1970 amendments to Rule 26. What the Committee sought
    to promote was a fair opportunity to expose whatever weaknesses, unreliabilities, or biases might infect the opinions
    of testifying experts called by adverse parties. Pursuit of such fairness would have been thoroughly frustrated if the
28  rule prohibited a party from showing that the opinions an expert was presenting at trial as his own had in fact been
    spoon fed to him and written for him by the lawyer who retained him.

4827-1098-2356.22

MPA ISO PLAINTIFF'S *DAUBERT* MOTION
TO EXCLUDE TESTIMONY
3:17CV5517 EMC

ROPERS
MAJESKI

A Professional Corporation
Redwood City

1   Defendants that leads to his opining as to consumer confusion based on a one-sided presentation

2   of the evidence, without having performed any factual verification, testing, or hands-on review of

3   the evidence asserted by SINCO to confirm his opinions of infringement. Of course, this assumes

4   that these are opinions reasonably within the scope of his expertise had he applied some scientific

5   measure to confirm his theory to form his opinion, which SINCO asserts he did not.

### B.   The Court Should Preclude Mr. Kahrs' Opinions As Beyond The Scope of Expert Opinion and as Not Being His Opinion

8       With these principles in mind, this Court should preclude Mr. Kahrs' opinions and/or

9   testimony—not because he disagrees with SINCO's expert Cox or he would analyze differently,

10  but because his analyses do not pass muster under *Daubert* and FRE 702 and 403.

11      Mr. Kahrs' report claims to address four topics: lost profits, increased costs, unjust

12  enrichment, and disgorgement.  To formulate his opinions and/or testimony, Mr. Kahrs relies

13  exclusively on dubious, if not outright wrong, assumptions—he assumes the jury will decide as

14  he tells them and he assumes incorrect law.  Similarly, Mr. Kahrs reports have been excluded for

15  the same types of unsupported assumptions that we find in his report in this action. *Gaitan Decl.*

16  at Exh. A. The methodology used by Mr. Kahrs is riddled with unsupported assumptions and is,

17  at best, unscientific. Ironically, when Mr. Kahrs opinion provides a calculation as to potential

18  damages, it is the calculation of SINCO's expert who determined a 14% margin. *Id.* at 210:5-12.

19  Mr. Kahrs' report adopts the regression analysis of Mr. Fleissig, who is not properly disclosed as

20  a testifying expert, in fact he was explicitly disavowed as an Expert. *Id.* Exh. N.

21      Mr. Kahrs' opinions are anchored in the legal conclusion[7] that there was no consumer

22  confusion and no trademark infringement, which would serve to do nothing more than tell the

23  jury what result it should reach. The law would be in a curious state if jurors received their

24  instructions on the law from an expert witness as well as from the trial judge. *United States v.*

25  *Ingredient Technology Corp.,* 698 F.2d 88, 97 (2d Cir.). Expert testimony here would have been

26  not only superfluous but mischievous. *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.,* 523 F.3d

---

27  [7]

28  [black redaction bar]

*Gaitan Dec* at Exh. B at 19:15-19.

- 14 -

MPA ISO PLAINTIFF'S *DAUBERT* MOTION
TO EXCLUDE TESTIMONY
3:17CV5517 EMC

ROPERS
M A J E S K I

A Professional Corporation
Redwood City

1051, 1059 (9th Cir. 2008).

This motion is not because SINCO disagrees with Mr. Kahrs' opinions. Rather, it is because Mr. Kahrs' "opinions" are not expert opinion at all. Rather, he purports to tell the jury what it should conclude from the evidence, as he was instructed by Defendants. To make matters worse, Mr. Kahrs asserts incorrect law.

**1. Mr. Kahrs' Regression Analysis Should be Excluded as he is Not Qualified to Form Such Opinions, Nor did He, Rather he Relies on Mr. Fleissig's Analysis**

Beginning on page 21 of Mr. Kahrs' report and continuing through page 23 is a discussion of statistical regression, in rebuttal to Cox's regression. *Gaitan Decl.* Exh. B at pp. 21-23. A lucid analysis and discussion by Mr. Kahrs of statistical regression would likely aid the jury and qualify as expert testimony, <u>but it was not written by Mr. Kahrs</u>. Mr. Fleissig—<u>alone</u>—*did all the work on regression*:

> *Kahrs.* ████████████████████████████████████████
> ███████████████████████

*Id.* at Exh. C at 55:25-56:2.

> *Q.* … who ran the regressions?
> *Kahrs.* █████████████████
> . . .
> *Q.* What did Dr. Adrian Fleissig help you with?
> *Kahrs.* ███████████████████
> . . .
> Q. Anyone help Adrian on the regressions?
> *Kahrs.* ████
> Q. That's definitive?
> *Kahrs.* ██████████
> . . .
> *Kahrs.* … █████████████
> Q. So Dr. Fleissig ran all of the regressions … that were used in your report?
> *Kahrs.* ██████

*Id.* at 155:14-21; 156:18-21; 158:5-10 (Emphasis Added). As admitted, Mr. Fleissig, not Mr. Kahrs, is the person that worked on the methodologies. *Id.* at 258:24-259:5. Mr. Fleissig did not

ROPERS MAJESKI
A Professional Corporation
Redwood City

1   submit a report, nor was he disclosed as a testifying expert. Exh. N.

2          Failure to furnish a report prepared by [the expert] constitutes a violation of FRCP

3   26(a)(2).  A court may permit an expert to testify about an expert report even if that report was

4   not drafted entirely by him, if the expert "substantially participated" in the preparation of his

5   report.[8]  *Bekaert Corp. v. City of Dyersburg*, 256 F.R.D. 573, 579 (W.D. Tenn. 2009).  This is not

6   such a case.  Mr. Kahrs' "participation" in the statistical regression portion of the Report was to

7   take what Mr. Fleissig wrote and put it in the report:

8          *Kahrs.* ██████████████████████████████████████████

9   ████████████████████████

10  *Gaitan Decl.* Exh. C at 160:24-161:2. That hardly qualifies as substantial participation.  In

11  *Bekaert*, the court granted the motion to strike the expert designation of defendant's expert, Mr.

12  Hynes.

13          Here, the Court is presented with evidence that Mr. Hynes' report was originally

14          prepared by Defendant's counsel.  When questioned about this, Mr. Hynes could not

15          actually point to any portion of the declaration, which could be said to have been

            his testimony.  As such, the present set of facts is more akin to the situation in

16          which testimony was wholly prepared by counsel with Mr. Hynes participation

            amounting to his signature after reviewing the document.  Mr. Hynes' declaration

17          fail[ed] to comport with the expert reporting requirements." under Rule 26(a)(2)(B).

18  256 F.R.D. at 579-580.  Distinguishing *Bekaert* on the basis that Mr. Kahrs' report was prepared

19  by a Ph.D rather than Defendants' lawyer is a distinction without a difference.

20          Mr. Kahrs' deposition testimony is to be contrasted with a small but very significant

21  statement in his report: ██████████████████████" *Gaitan Decl.* Exh. B pg. 23. That is a patent

22  falsehood.  *Fleissig ran the regressions.*  Exh. C 155:14-21; 156:18-21; 158:5-10.

23          As noted above, and stated in FRE 702, expert testimony is to *assist* the jury to understand

24  evidence.  There are two limited areas in Mr. Kahrs' report that could be helpful for the jury, but

25  Mr. Kahrs should not be permitted to testify as to either because his testimony would be

26

27  _____
    [8]  In this regard, Plaintiff submits that "substantial participation" is measured by the extent of input on each specific
28  subject matter, not the total number of pages.  For example, Mr. Kahrs prepared all 23 pages evaluating evidence and
    determining the issue of confusion, but he had 0 participation in the 3 pages of regression analysis.

MPA ISO PLAINTIFF'S *DAUBERT* MOTION
TO EXCLUDE TESTIMONY
3:17CV5517 EMC

ROPERS
M A J E S K I
A Professional Corporation
Redwood City

confusing and mislead the jury.  FRE Rule 403; *Daubert,* 509 U.S. at 595; *Rincon,* 28 F.3d at 926

An explanation of regression is something that would aid the jury, if Mr. Kahrs was well versed on the subject and had written that part of Mr. Kahrs report. However, Mr. Kahr's explanation, as evident from his report and his deposition, is far from lucid or helpful to the jury. *Gaitan Decl.* at Exh. B pp. 22-23; Exh. C at pp. 139:1-12; 143:25-146:1; 153:21-155:21; and 158:6-23.

Confusing expert testimony is to be excluded for being not helpful.  FRE Rules 702 and 403. No doubt Mr. Kahrs' explanation was strained and confusing because he did not write that part of the report.

**2.  Mr. Kahrs testimony on an outlier of sales is incomplete, not helpful, and contradicted by deposition testimony.**

There is one limited area in Mr. Kahrs' report, written by Mr. Kahrs, that may be within his expertise: the effect of a large increase in sales in November and December—what Mr. Kahrs terms an outlier—that Mr. Kahrs contends affects the projection of future sales.  Testimony on that subject could be helpful for the jury **if** it were complete and consistent. Mr. Kahrs' testimony on that subject is neither.  His opinion that a one-time spike in sales affects future predicted sales is very superficial; it says no more than that.  Without more, there is no methodology.

For his report, Mr. Kahrs stops his analysis at October (*Gaitan Decl.* Exh. B pg. 21; Exh. C 186:13-17) which eliminates altogether the later sales in November-December.  A reasonable jury would be left to wonder what about those sales, what would the projection be if those sales occurred in other months or were spread over 2-3 months.

Those sales did occur and Mr. Kahrs does acknowledge the sales occurred. However, Mr. Kahrs does not account for them; in his report he simply pretends they did not occur.  The report, which disregards those sales, is contradicted by his deposition: "It could that these [November-December sales] were late invoices."  Id. at C at 137:17-18.  His analysis, disregarding those sales entirely, is not based on a valid methodology.

Moreover, when explaining the regression of Mr. Fleissig, Mr. Kahrs states:

- 17 -

ROPERS MAJESKI

A Professional Corporation
Redwood City

[REDACTED]

Exh. C at Pg. 171:23-172:3. However, SinCo's counsel explained that these documents were

provided, and bates labeled and sent to XINGKE's Counsel. *Id.* at 172:4:12. He then states, "**I** [REDACTED]" and [REDACTED]" which illustrates the lack

of review and preparation for this report which explains his speculative conclusions and that

Defendants Counsel was spoon feeding him documents only beneficial to XINGKE. *Id.*

### 3.  Mr. Kahrs Is Not Qualified as A Consumer Behavior Expert

Mr. Kahrs' report is founded on his interpretation of what customers thought from certain

statements.  By his interpretation customers were not confused and took their business to

Defendant for non-trademark reasons. That is an opinion on consumer behavior, not damages.

Mr. Kahrs has no qualifications to opine on what consumers would think and/or how they

would react to various stimuli. To give opinion testimony the witness must be qualified as an

expert by specialized knowledge, skill, experience, training or education **in the particular field**

**or subject** on the subject of his proposed testimony.  FRE Rule 702; *Wilson v. Woods*, 163 F.3d

935,937 (5th Cir. 1999) (court should refuse to allow an expert to testify if he is not qualified in a

particular field or on a particular subject).  Mr. Kahrs has no qualifications in the field of

consumer behavior.

A good example of a purported expert not qualified in a particular field is *United Food*

*Mart, Inc. v. Motiva Enterprises, LLC*, 404 F. Supp. 2d 1344 (S.D. FL, 2005). There, a consumer

behavior expert was not qualified to render an opinion on whether two business were in the same

competitive relevant market. Although he was an expert in consumer behavior, which is one

aspect of economics, he was not an expert in all fields of economics.

The opinion on what motivated end users to purchase from one source or another is not

within the scope of Mr. Kahrs' experience or special knowledge (he has no training or education

in the field of consumer behavior).  His experience is accounting. *Gaitan Dec*. Exh. C at 35:15-

17- 36:21-25.) Mr. Kahrs cannot offer an opinion on customers' purchasing decisions as a non-

expert.  Witnesses not testifying as experts may only give opinions rationally based on their

- 18 -

MPA ISO PLAINTIFF'S *DAUBERT* MOTION
TO EXCLUDE TESTIMONY
3:17CV5517 EMC

ROPERS
M A J E S K I

A Professional Corporation
Redwood City

1  perception and not based on technical or other specialized knowledge within the scope of FRE

2  702. There is no evidence that Mr. Kahrs observed any of the matter on which his report is

3  founded.

4  **4. Mr. Kahrs' opinion is based on law that does not apply in the 9th Circuit**

5       To compound his take-over of the role of the jury, Mr. Kahrs takes over the role of the

6  judge and the lawyers by stating propositions of law which are inconsistent with law applicable in

7  the 9th Circuit. That is not helpful to the jury. Instead, it is *misleading* and likely to confuse the

8  jury.

9       More than once Mr. Kahrs' report incorrectly asserts that actual confusion is required for

10  an award of lost profits. *Gaitan Decl.* Exh. B at pp 9-11. Contrary to what Mr. Kahrs says, actual

11  confusion and actual damage, i.e. actual lost sales, is not required. In this Circuit. *Southland Sod*

12  *Farms v. Stover Seed Co.* 108 F.3d 1134, 1146 (9th Cir. 1997).[9]

13       Mr. Kahrs then bases his rebuttal on that incorrect assertion of applicable law:

14

15

16  *Gaitan Decl.* at Exh. B at pp. 9, 11. That erroneous proposition of law undermines Mr. Kahr's

17  criticism of SINCO's expert. Moreover, *it misleads the jury*.

18       Mr. Kahrs also asserts conclusions of law.



19                                            *Id.* at Exh. C at 59:8-10.

20  This again is in willful ignorance of the Supply Agreement between SINCO and XINGKE and

21  related Purchase Orders, which each create an obligation by XINGKE, but do not support his

22  conclusions of law.

23       Mr. Kahrs lack of "expertise" in the law further shows itself in his testimony contradicting

24  _____

25  [9] ... "an inability to show actual damages does not alone preclude a recovery under section 1117." Under Lindy
    Pen, the preferred approach allows the district court in its discretion to fashion relief, including monetary relief, based

26  on the totality of the circumstances; ... even if a plaintiff is unable to demonstrate damages resulting from the
    defendant's § 43(a) violation, § 1117 allows the district court to award the plaintiff any just monetary award so long

27  as it constitutes "compensation" for the plaintiff's losses or the defendant's unjust enrichment and is not simply a
    "penalty" for the defendant's conduct ... Additionally, when, as in this case, a § 43(a) claim involves false
    advertising rather than 'palming off,' courts have been more willing to allow monetary damages even without a

28  showing of actual consumer confusion." [internal citations omitted].

ROPERS MAJESKI
A Professional Corporation
Redwood City

1   his report.  The report says trademarks ████████████" *Id.* at Exh. B pg. 10.  But his

2   deposition testimony correctly states that trademarks protect the name and brand.  *Id.* at Exh. C at

3   76:17-19.

4        According to his resume, Mr. Kahrs has no expertise in the law and is not qualified to

5   opine on it.  Here he has usurped the role of lawyers (as well as having usurped the role of the

6   jury).  Mr. Kahrs may correctly repeat what is stated in a treatise, (which he admitted he did not

7   personally review in drafting this report (*Id.* at Exh. C at 67:10-19)) but the treatise does not state

8   the controlling law in this circuit.  Basing an opinion on incorrect or inapplicable information

9   does not save an expert's testimony.

10  **5.  Exclusion of expert testimony is necessary when the "expert lacks the 'good grounds' for his or her conclusion."**

11

12       Mr. Kahrs' opinion on no lost profits is admittedly not based on sound methodology, as

13  required.  ████████████████████████████████████████████

14  ████████████████████████████████████████." *Id.* at Exh. C pg. 62:8-12.

15       From his deposition testimony it is seen that Mr. Kahrs' "opinions" (improper as they are)

16  are rife with speculation.  █████ and "██████████ and "██████████ is <u>not sound a</u>

17  <u>methodology</u>."  "*I*████████████████████████████████████

18  ██████████████████." *Id.* 77:22-78:2.  "███████████████████

19  ████████ *Id.* at 101:13.  █████████ ...." *Id.* at 247:1-3.

20       Bald assertions based on speculation and not validated by facts or methodology are not

21  admissible opinion.  "███████████████████████████████████████

22  ██████████████████." *Id.* at 82:15-18.  The "supplier"—

23  Defendant—is a contract manufacturer that uses tooling and dies designed and made by SINCO.

24  There is no analysis to support that assertion.  Neither Mr. Kahrs' report or his deposition

25  testimony analyzes alternate contract manufacturers or SINCO itself. *Gaitan Dec* at Exh. K.

26       *Q.*    What was SinCo Singapore's production output? What could it produce?

    *Kahrs.* ███████████.

27       ...

28       *Kahrs.* ████████████████████████████████████████

ROPERS MAJESKI
A Professional Corporation
Redwood City

[REDACTED]."

*Gaitan Decl.* Exh. C at 218:7-10 and 218: 21-23.

The expert's findings must be based on objective, independent validation of the expert's methodology. *Sanderson v. International Flavors and Fragrances, Inc.,* 950 F. Supp. 981, 993 (C.D. Cal. 1996). Mr. Kahrs could base his opinion on information from XINGKE—if he had validated the information. But he did not validate information, but rather remained willfully ignorant to claim plausible deniability to explain his incomplete review. For example, stating he was told Defendant could provide better quality products:

Q.      Did you see any products maybe next to each other for comparison?

*Kahrs.* [REDACTED].

Q.      Did you touch the products?

*Kahrs.* [REDACTED].

*Gaitan Decl.* at Exh. C at 252:5-10.

Opinions must be based on valid reasoning and reliable methodology. *In re: TMI Litigation*, 193 F.3d 613, 665 (3d Cir. 1999). They cannot be based on "subjective belief or unsupported speculation." *Kannankeril v. Terminix Int'l, Inc.,* 128 F.3d 802, 806 (3d Cir. 1997). And, the opinion must be validated. *Sanderson*, 950 F.Supp. 993.

**6.  Mr. Kahrs discussion of increased costs is not based on facts or data**

Mr. Kahrs criticism of Cox's cost analysis is incomplete and lacks reliable information. For example, "Cox ignores inflation" but Kahrs does not inform what the rate of inflation has been; "… there have been changes in technology…" but Kahrs does not inform what those changes are or how they might affect SINCO's expert report. Without giving underlying data for his assertion, his testimony is not based upon sufficient facts or data and is not founded on a sound methodology, as required by *Daubert*, 509 U.S. at 579, 592-593 and FRE 702. The testimony would be *misleading*, rather than helpful.

**7.  Mr. Kahrs' unjust enrichment opinion is not founded on data and usurps the role of the jury**

Reciting an IRS Revenue Ruling is not an opinion. *Cf. Network Appliance, Inc. v.*

ROPERS
MAJESKI
A Professional Corporation
Redwood City

1 | *Bluearc Corp.*, 374 F. Supp. 2d 825, 844 (N.D. Cal. 2005) ("Dr. Faillace merely recites the
2 | applicable legal standard, concluding that numerous features of the claimed invention are neither
3 | expressly nor inherently present in the Sandberg reference").  Mr. Kahrs' opinion on the topic is
4 | devoid of data and methodology. And it is based on speculation: "Dr. Cox fails to consider
5 | material factors which **likely** influenced the sales price… [emphasis added]."  *Gaitan Decl.* at
6 | Exh. B. at pg. 26.  Further, as with his analysis of lost profits, Mr. Kahrs usurps the jury's
7 | function of deciding the evidence and concluding there is no link of the increase in value to the
8 | trademarks. *Id.* at pg. 29.

**8.  Mr. Kahrs' disgorgement testimony usurps the role of the jury**

As with his Lost Profits" opinion, Mr. Kahrs' opinion on disgorgement, (*Id.* at pg. 30),
also asserts his conclusion that certain customers were not confused and Defendant was chosen
due to its capabilities.  Again, those are stated as ultimate conclusions of the jury, not as
assumptions.

**IV.  CONCLUSION**

At best Mr. Kahr's testimony is marginally helpful to the jury as to what he would
consider if giving the opinion on costs and unjust enrichment.  At worst his testimony replaces the
jury's fact-finding role and is highly prejudicial.  In either situation the Court must enforce its
gatekeeping function to protect the process.

Dated:  March 26, 2021                    ROPERS MAJESKI PC

By: _____
LAEL D. ANDARA
DANIEL E. GAITAN
Attorneys for Plaintiff
SINCO TECHNOLOGIES PTE LTD