**WHGC, P.L.C.**
Jeffrey C.P. Wang (SBN 144414)
*JeffreyWang@WHGCLaw.com*
Michael G. York (SBN 89945)
*MichaelYork@WHGCLaw.com*
Kathleen E. Alparce (SBN 230935)
*KathleenAlparce@WHGCLaw.com*
Jessica A. Crabbe (SBN. 263668)
*JessicaCrabbe@WHGCLaw.com*
1301 Dove Street, Suite 1050
Newport Beach, CA 92660
Tel. (949) 833-8483; Fax: (866) 881-5007

Edwin K. Prather (SBN 190536)
*edwin@pratherlawoffices.com*
**PRATHER LAW OFFICES**
245 Fifth Street, Suite 103
San Francisco, CA 94103
Tel. (415) 881-7774

*Attorneys for Defendants and Counterclaimants*
XINGKE ELECTRONICS (DONGGUAN) CO.,
LTD., formerly known as SINCO ELECTRONICS
(DONGGUAN) CO., LTD., LIEW YEW SOON
aka, MARK LIEW, NG CHER YONG. aka CY
NG, and MUI LIANG TJOA aka ML TJOA

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SINCO TECHNOLOGIES PTE LTD., <br><br> Plaintiff, <br><br> vs. <br><br> SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS TECHNOLOGY CO., LTD.; SINCOO ELECTRONICS TECHNOLOGY CO., LTD.; MUI LIANG TJOA (an individual); NG CHER YONG aka CY NG (an individual); and LIEW YEW SOON aka MARK LIEW (an individual), <br><br> Defendants. | Case No. 3:17-CV-05517-EMC <br><br> Action Filed: September 22, 2017 <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFF SINCO TECHNOLOGIES PTE LTD'S MOTION TO STRIKE THE EXPERT REPORT OF DEFENDANTS' DAMAGES EXPERT HENRY KAHRS AND TO PRECLUDE MR. KAHRS AND ADRIAN FLEISSIG FROM TESTIFYING AT TRIAL** <br><br> Date: May 6, 2021 <br> Time: 1:30 pm <br> Place: Courtroom 5, 17th Floor (via Zoom) <br><br> **Judge:   Honorable Edward M. Chen** |

PUBLIC REDACTED VERSION

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.      INTRODUCTION AND SUMMARY OF ARGUMENT .................................................. 1

II.     BACKGROUND ................................................................................................................ 2

III.    LEGAL STANDARD ......................................................................................................... 7

IV.     ARGUMENT ...................................................................................................................... 8

        A.      Kahrs' Opinion is Consistent with Ninth Circuit Law. ............................................. 8

        B.      SinCo's Remaining Challenges to Kahrs' Testimony Are Without
                Merit. ........................................................................................................................ 11

                1.      Kahrs Directed and Substantially Participated in the Regression
                        Analysis. ......................................................................................................... 11

                2.      Kahrs' Opinion on the Significance of Outlier Sales Is Proper
                        Rebuttal Testimony. ....................................................................................... 15

                3.      Kahrs Does Not Intend to Testify as an Expert in "Consumer
                        Behavior" ....................................................................................................... 16

                4.      Kahrs' Opinion Is Consistent With the Law of the Ninth
                        Circuit. ............................................................................................................ 18

                5.      Kahrs Need Not Be Certain About All Facts to Provide An
                        Opinion Based on Sound Methodology. ......................................................... 18

                6.      Kahrs' Opinion on Increased Costs Is Proper Rebuttal
                        Testimony ....................................................................................................... 18

                7.      Kahrs' Opinion on Unjust Enrichment Is Proper Rebuttal
                        Testimony ....................................................................................................... 19

                8.      Kahrs' Opinion on Disgorgement Is Proper Rebuttal
                        Testimony ....................................................................................................... 20

V.      CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accentra Inc. v. Staples, Inc.*,
    No. 07-cv-5862-ABC, 2010 WL 11459205 (C.D. Cal. Oct. 7, 2010) ........................................ 12

*Am. Auto. Ass'n of N. Cal., Nev. & Utah v. Gen. Motors, LLC*,
    367 F. Supp. 3d 1072 (N.D. Cal. 2019) .............................................................. 9, 10, 16

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*,
    829 F. Supp. 2d 802 (D. Minn. 2011) ........................................................................ 18

*Bailey v. Cremach Tech., Inc.*,
    No. G054026, 2019 WL 1551731 (Cal. App. 4th Dist. April 10, 2019) ..................................... 3

*Baker v. SeaWorld Entm't, Inc.*,
    423 F. Supp. 3d 878 (S.D. Cal. 2019) ......................................................................... 8

*Bekaert Corp. v. City of Dyersburg*,
    256 F.R.D. 573 (W.D. Tenn. 2009) .................................................................... 13, 14

*Bioriginal Food & Sci. Corp. v. Biotab Nutraceuticals, Inc.*,
    No. 2:13-cv-5704-CAS, 2015 WL 10733384 (C.D. Cal. Aug. 25, 2015) ..................................... 3

*BladeRoom Grp. Ltd. v. Facebook Inc.*,
    No. 5:15-cv-1370, 2018 WL 1611835 (N.D. Cal. April 3, 2018)........................................... 14

*Blau v. YMI Jeanswear, Inc.*,
    No. 02-cv-9511-FMC, 2004 WL 5313967 (C.D. Cal. Jan. 2, 2004) ................................. 9, 10, 17

*Claar v. Burlington N.R. Co.*,
    29 F.3d 499 (9th Cir. 1994)................................................................................... 17

*Coquina Invs. v. Rothstein*,
    No. 10-cv-60786, 2011 WL 4949191 (S.D. Fla. Oct. 18, 2011)................................................ 19

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ....................................................................................... 2, 7

*Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*,
    285 F.3d 609 (7th Cir. 2002)........................................................................... 11, 14

*Estate of Bud Hill v. ConAgra Poultry Co.*,
    No. 4:94-cv-198, 1997 WL 538887 (N.D. Ga. Aug. 25, 1997) ................................................ 15

*Hendricks v. Physicians Skin & Weight Ctrs., Inc.*,
    No. 12-cv-2169-AG, 2014 WL 12561621 (C.D. Cal. Feb. 24, 2014) ......................................... 3

*Hewlett-Packard Co. v. Quanta Storage, Inc.*,
   961 F.3d 731 (5th Cir. 2020).................................................................................................. 17

*Huawei Techs., Co. v. Samsung Elecs. Co.*,
   340 F. Supp. 3d 934 (N.D. Cal. 2018) ..................................................................................... 8

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*,
   442 F. Supp. 3d 1329 (D. Or. 2020) ....................................................................................... 15

*In re REMEC Inc. Sec. Litig.*,
   702 F. Supp. 2d 1202 (S.D. Cal. 2010)..................................................................................... 8

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod.*
   *Liab. Litig.*,
   978 F. Supp. 2d 1053 (C.D. Cal. 2013)................................................................................... 18

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) .................................................................................................................. 7

*Lindy Pen Co. v. Bic Pen Corp.*,
   982 F.2d 1400, 1405 (9th Cir. 1993)................................................................................... 9, 10

*Lust v. Merrell Dow Pharm., Inc.*,
   89 F.3d 594 (9th Cir. 1996).................................................................................................... 20

*Manning v. Crockett*,
   No. 95 C 3117, 1999 WL 342715 (N.D. Ill. May 18, 1999)................................................... 12

*McClaran v. Plastic Indus., Inc.*,
   97 F.3d 347 (9th Cir. 1996)...................................................................................................... 9

*Navelski v. Int'l Paper Co.*,
   244 F. Supp. 3d 1275 (N.D. Fla. 2017)................................................................................... 15

*Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*,
   No. 09-cv-61490, 2011 WL 2295269 (S.D. Fla. June 8, 2011) .............................................. 19

*Perez v. State Farm Mut. Auto. Ins. Co.*,
   No. C 06-1962-JW, 2011 WL 8601203 (N.D. Cal. Dec. 7, 2011)............................................ 3

*Primiano v. Cook*,
   598 F.3d 558 (9th Cir. 2010).................................................................................................... 7

*S.E.C. v. Johnson*,
   525 F. Supp. 2d 70 (D.D.C. 2007) ......................................................................................... 16

*S.E.C. v. Leslie*,
   No. C 07-3444-JR, 2010 WL 2991038 (N.D. Cal. July 29, 2010) .......................................... 16

*Sansi N. Am., LLC v. LG Elecs. USA, Inc.*,
   No. 18-cv-3541-PSG, 2019 WL 8168069 (C.D. Cal. Nov. 14, 2019)................................. 10, 11

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997)................................................................................... 12

*Sumotext Corp. v. Zoove, Inc.*,
    No. 16-cv-1370-BLF, 2020 WL 264701 (N.D. Cal. Jan. 17, 2020) ............................ 8

*Sun Earth, Inc. v. Sun Earth Solar Power Co.*,
    839 F.3d 1179 (9th Cir. 2016)................................................................................... 9

*TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*,
    No. 15-cv-2370-JVS, 2016 WL 7042085 (C.D. Cal. Aug. 17, 2016)........................... 8

*Trepel v. Roadway Exp., Inc.*,
    194 F.3d 708 (6th Cir. 1999)................................................................................... 17

*United States v. Hankey*,
    203 F.3d 1160 (9th Cir. 2000)................................................................................... 7

*United States v. Sandoval-Mendoza*,
    472 F.3d 645 (9th Cir. 2006)..................................................................................... 7

*United States v. Vallejo*,
    237 F.3d 1008 (9th Cir. 2001)................................................................................... 7

*Universal-Prods. Int'l, LLC v. Omega Prods. Int'l, Inc.*,
    No. E065096, 2017 WL 1506742 (Cal. App. 4th Dist. April 27, 2017)....................... 3

**Statutes and Rules**

15 U.S.C. § 1117(a) ...................................................................................................... 9

Fed. R. Civ. P.
    26(a)(2)(D)(ii) ........................................................................................................ 8

Fed. R. Evid.
    702................................................................................................................................ 7
    702(a)........................................................................................................................... 7
    702(b)-(d)..................................................................................................................... 7
    703.............................................................................................................................. 17

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff SinCo Technologies Pte Ltd. ("SinCo" or "Plaintiff") seeks to preclude the testimony of Defendants' rebuttal damages expert, Henry J. Kahrs.  SinCo seeks to prevent Defendants[1] from offering evidence drawn from Kahrs' specialized knowledge and experience, without which the jury will not be able to properly evaluate whether SinCo has proven damages with reasonable certainty and the extent of such damages, if any.  If Kahrs were excluded, Defendants would be left materially prejudiced in their ability to critique the significant flaws in the analysis and methodology employed by SinCo's affirmative damages expert, Alan J. Cox.

As set forth in Defendants' previously filed motion to strike (Dkt. 386), Plaintiff's motion is improper, as it fails to comply with this Court's pretrial order (Dkt. 80) and is untimely and exceeds page limitations set forth in the pretrial order.  Should the Court consider Plaintiff's motion, it should be heard contemporaneously with the motion that Defendants intend to file to exclude Cox's many flawed opinions.  Notwithstanding, Defendants file this opposition at this time in an abundance of caution to demonstrate how Plaintiff's arguments fail.

SinCo argues a hodgepodge of theories as its claimed basis for keeping Kahrs' critique from the jury.  All of these arguments fail: (1) Kahrs' opinion is consistent with the law in this Circuit that, to obtain damages for trademark infringement in the form of lost profits, SinCo carries the burden of proving with "reasonable certainty" that the alleged lost profits were caused by the alleged trademark infringement; (2) Kahrs directed and substantially participated in the preparation of the regression analyses included within his report, and his use of an assistant to conduct calculations is therefore no barrier to his testimony concerning those specific calculations; (3) SinCo's disagreement with some of Kahrs' assertions regarding outlier sales is properly the subject of cross-examination, rather than a basis for exclusion; (4) Kahrs does not intend to testify as a "consumer behavior expert" and does not purport to be qualified as such; (5) as an expert rebuttal witness, Kahrs is permitted to criticize Cox and identify flaws in Cox's methodologies; (6)-

---

[1] The Defendants include: Xingke Electronics (Dongguan) Co., Ltd (formerly SinCo Electronics (Dongguan) Co., Ltd.) ("Xingke"), Mui Lian Tjoa, Ng Cher Yong aka Cy Ng, and Liew Yew Soon aka Mark Liew.

1   (8) Kahrs' criticism of Cox's increased costs analysis, unjust enrichment calculations, and

2   disgorgement analysis, is proper rebuttal testimony and any purported "deficiencies" in Kahrs'

3   testimony go to weight, not admissibility.

4       For all of these reasons, and those further set forth below, SinCo's motion to strike the

5   expert report of Kahrs and preclude his testimony should be denied.[2]

6   **II.   BACKGROUND**

7       Cox was retained by SinCo to ███████████████████████████████

8   ████████████████████████████████████████████████████ Declaration

9   of Kathleen E. Alparce ("Alparce Decl.") Ex. A (Expert Report of Alan J. Cox ("Cox Report")) at

10  4, ¶ 6.  In other words, he is SinCo's affirmative damages expert.  In his report, Cox opines that

11  SinCo's actual damages arising from Defendants' alleged trademark infringement are

12  approximately ████████.  *Id.* at 5, ¶ 11.  This amount is comprised of the following: (1) lost

13  profits on lost sales of ████████; (2) lost profits due to lower margins on SinCo's remaining

14  sales of ████████; and (3) increased expenses incurred as a result of mitigating the impact of

15  Xingke's alleged misappropriation of ████████.  *Id.*  Cox also opines that SinCo is entitled to

16  ████████ of Xingke's sales under a disgorgement theory.  *Id.* at 6, ¶ 11.  Last, Cox opines that

17  SinCo is entitled to ████████████ under the theory of unjust enrichment.  *Id.* at 32, ¶ 70.

18      Defendants retained Kahrs as a rebuttal expert.  He issued his report on January 30, 2020

19  and was deposed on February 4, 2020. Declaration of Daniel E. Gaitan in Support of SinCo's

20  *Daubert* Motion, Ex. B (Expert Report of Henry J. Kahrs ("Kahrs Report")) (Dkt. 384-3) at 4.

21      Kahrs is a Partner with Baker Tilly Virchow Krause LLP ("Baker Tilly"), which provides

22  financial forensics services to a variety of professionals in insurance, legal, corporate and public

23  sectors.  Kahrs Report at 4.  He has a Bachelor of Science degree in Accounting from Rochester

24  Institute of Technology and a Masters of Business Administration degree in Finance from

25  California State University, Fullerton, California.  *Id.*  He also holds the following certifications:

26  Certified Public Accountant (CPA); Accredited in Business Valuation (ABV); Certified

27  _____

28  [2] SinCo also moved to exclude the testimony of Kahrs' assistant, Adrian Fleissig.  SinCo, however, has known for more than a year that Defendants do not intend to call him to testify at trial.  Motion at 3.

Management Accountant (CMA); Certified Fraud Examiner (CFE); and Certified in Financial Forensics (CFF).  *Id.*

Kahrs has over 30 years of experience conducting damages and forensics accounting analyses in hundreds of matters, including numerous breach of contract, partnership and corporate dissolutions and intellectual property matters.  Declaration of Henry J. Kahrs in Support of Defendants' Opposition ("Kahrs Decl.") ¶ 3.  He has been retained as an expert in hundreds of cases and testified at dozens of trials and arbitrations, where he has been qualified as an expert regarding the issue of damages.  Kahrs Report, Ex. 3.[3]  He has long history of speaking engagements and publication of articles related to the issues of damages, intellectual property, and forensic accounting issues.  *Id.* at Ex.2.

Kahrs' qualifications and experience demonstrates that he is amply qualified to serve as a rebuttal witness on the issue of damages.[4]  In his expert report, Kahrs demonstrated that each of Cox's theories is flawed.  Kahrs Report at 9-24.  These criticisms fall squarely within the realm of admissible rebuttal testimony, and to the extent relevant to this motion, are briefly summarized here:

*Lost Profits Due to Lost Sales.*  As support for his "lost sales" theory, Cox employed a regressions analysis.  Alparce Decl. Ex. A (Cox Report) at 19-27.  Under his analysis, Cox used

[REDACTED]

*Id.,* Ex. 3

---

[3] *See also, e.g.*, *Bailey v. Cremach Tech., Inc.*, No. G054026, 2019 WL 1551731, at *12 (Cal. App. 4th Dist. April 10, 2019) ("The court found credible and persuasive Kahrs' expert testimony, who opined BAMRI suffered no damage because Celerity and Brooks were different companies[.]"); *Universal-Prods. Int'l, LLC v. Omega Prods. Int'l, Inc.*, No. E065096, 2017 WL 1506742, at *8 (Cal. App. 4th Dist. April 27, 2017) (holding that Kahrs "made a reasonable computation of Universal's damages and, as a result, it was proper to allow him to testify"); *Bioriginal Food & Sci. Corp. v. Biotab Nutraceuticals, Inc.*, No. 2:13-cv-5704-CAS, 2015 WL 10733384, at *3 (C.D. Cal. Aug. 25, 2015) (denying plaintiffs' motion *in limine* to exclude Kahrs' testimony regarding damages arising from lost profits); *Hendricks v. Physicians Skin & Weight Ctrs., Inc.*, No. 12-cv-2169-AG, 2014 WL 12561621, at *1-2 (C.D. Cal. Feb. 24, 2014) (denying defendants' motion to exclude Kahrs' testimony about damages relating to defendants' profits).

[4] *See Perez v. State Farm Mut. Auto. Ins. Co.*, No. C 06-1962-JW, 2011 WL 8601203, at *8 (N.D. Cal. Dec. 7, 2011) (over thirty years of experience as an actuary is an "acceptable means of determining the reliability" of an expert's testimony).

1 & Table 1. ████████████████████████████████

2 ████████████████████████████████████ *See id.*, Figure

3 2 & ¶ 42 ████████████████████████████████

4 ████████████████████████████████████████████

5 ██████████████████.

6          As Kahrs explains in his rebuttal report, however, Cox's reliance on the ██████

7 ████████████████████████. First, Cox's assumption that the ████████████

8 ██████ is a key indicator of █████████████████████████

9 ████████ Kahrs Decl. ¶ 7; Alparce Decl. Ex. B (February 4, 2020 Deposition Transcript of

10 Kahrs ("Kahrs Depo.")) at 17-19. ████████████████████████████

11 ████████████████████████████████████████████

12 ████████ *Id*. ████████████████████████. Kahrs Report at 21. Kahrs

13 testified to this during his deposition:

14 ████████████████████████████████

15 ████████████████████████████████

16 ████████████████████████████████

17 ████████████████████████████████

18 ████████████████████████████████

19 ████████████████████████████████

20

21 Alparce Decl. Ex. B (Kahrs Depo.) at 18:2-17.

22          Second, even if the ██████████████ was a reliable measure of predictive sales

23 here, Cox's regression analysis was itself methodologically flawed in multiple regards.  For

24 example, it did not properly account ██████████████████████ Alparce

25 Decl. Ex. B (Kahrs Depo.) at 138:6-15; Kahrs Decl. ¶¶ 6, 10.  Moreover, although Cox asserts that

26 the regression model he prefers █████████████████████████

27 ████████████████████████████████████████

28 ██████████████████████ Alparce Ex. A (Cox Report) at 19-27; Kahrs Report at

1 | 22; Kahrs Decl. ¶ 10.

2 |   *Lost Profits Due to Increased Costs.*  Kahrs also critiques Cox's opinion about the

3 | calculation of "costs" associated with mitigating harm due to Defendants' alleged trademark

4 | infringement.  Kahrs opines that Cox improperly overstated what these costs should be and explains

5 | the flaws with the conclusory analysis performed by Cox:



11 | Kahrs Report at 24.

12 |   Kahrs further explains, that to properly measure increased costs and expenses, an expert

13 | should ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14 | ▮▮▮▮▮▮▮▮▮▮▮ *See* Kahrs Report at 24. ▮▮▮▮▮▮▮▮▮▮▮▮▮

15 | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16 | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17 | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. at 24-25; Alparce Decl. Ex. B. (Kahrs Depo.)

18 | at 227:11-13; 228:11-23. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19 | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20 | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Kahrs Report at 24-25.

21 |   *Disgorgement Theory.*  Cox also opines that SinCo is entitled to ▮▮▮▮▮ under a

22 | disgorgement theory.  Alparce Decl. Ex. A. (Cox Report) ¶ 11.  He arrived at this conclusion by

23 | taking Xingke's sales to U.S. customers ▮▮▮▮▮ from ▮▮▮▮▮ and applying a ▮▮▮

24 | margin to ▮▮▮▮▮▮▮ Alparce Ex. A (Cox Report) at 5, ¶ 11; Kahrs Report at

25 | 30.  But, as Kahrs explains, this includes sales to ▮▮▮▮▮▮, despite evidence suggesting that

26 | these two customers were well aware that SinCo and Xingke were separate companies.  Kahrs

27 | Report at 17-18, 30.  In other words, Cox simply assumes that SinCo should recover for any

28 | opportunity ▮▮▮▮▮▮ even if customers chose Xingke over SinCo for reasons unrelated

1   to any alleged trademark infringement.  Alparce Decl. Ex. A (Cox Report) ¶ 11; Kahrs Report at 30

2   ██████████████████████████████████████████████████████████████████.

3        *Unjust Enrichment.*  Cox also opined that SinCo is entitled to about ████████ in unjust

4   enrichment.  The theory of recovery of ████████████████████████████████████████

5   ████████ is that SinCo in entitled to the difference between two sales prices – as encapsulated in a

6   single paragraph:

7   

8   ████████████████████████████████████████

9   

10  

11  

12  Alparce Decl. Ex. A (Cox Report) at 12.  From this bare factual predicate, Cox concludes that Xingke

13  was unjustly enriched by the increase in value of ████████ He confirmed this at his deposition.

14  *See* Alparce Decl. Ex. C (February 5, 2020 Deposition Transcript of Alan J. Cox ("Cox Depo.")) at

15  83:15-17 ████████████████████████████████████████████████████

16  ████████████████████████████████████.

17       However, Kahrs reveals that Cox's conclusion is flawed for at least two reasons.  First, Cox

18  applied basic subtraction without considering any other factors.  ████████████████████

19  ████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████

21  ████████████  Kahrs Report at 26-27; Alparce Decl. Ex. B (Kahrs Depo.) at 242-

22  243.  These factors include: ████████████████████████████████

23  ████████████████████████████████████████████████████

24  ████████████████████████████████████.  *See* Kahrs Report at

25  26-28.  At his deposition, Kahrs confirmed ████████████████████████████

26  ████████████████████████  Alparce Decl. Ex. B (Kahrs Depo.) at 242:3-

27  245:17.

28

*Id.* at 243:19-25.  Because Cox's opinion failed to consider multiple factors ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓ Kahrs will testify that the ▓▓▓▓▓▓▓▓▓▓ used by Cox was inconsistent with the appropriate valuation professional standard.  Kahrs Report at 26.

Second, Cox's calculation is improper to the extent it considers all the revenue Xingke generated from every single U.S. customer without addressing the issue of causation (i.e., whether these profits would have ever been recognized by SinCo).  For example, ▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Kahrs Report at 28-29 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

### III.    LEGAL STANDARD

Federal Rule of Evidence 702 permits the Court to admit as evidence the opinion of a qualified expert if his "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  Expert testimony must therefore be "relevant and reliable."  *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001); *see also* Fed. R. Evid. 702(b)-(d).

However, the "test of reliability is 'flexible'…."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993), and holding that factors such as testing, peer review, error rate, and general acceptance "neither necessarily nor exclusively appl[y] to all experts or in every case"); *see also United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) ("[J]udges are entitled to broad discretion when discharging their gatekeeping function.").  "When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony."  *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)).

Rebuttal testimony "is intended solely to contradict or rebut evidence on the same subject

1   matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii); *see also Huawei Techs., Co. v.*

2   *Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 996 (N.D. Cal. 2018) ("The proper function of rebuttal

3   evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse

4   party.") (citation omitted).  A "defendant may present expert rebuttal of the plaintiff's expert by 'by

5   putting forth its own expert who either claims that (1) the plaintiff's expert's methodology was

6   conducted improperly in some way; or (2) the ultimate conclusion the plaintiff's expert makes is

7   flawed because a superior methodology provides a different result.'" *Sumotext Corp. v. Zoove, Inc.*,

8   No. 16-cv-1370-BLF, 2020 WL 264701, at *3 (N.D. Cal. Jan. 17, 2020) (quoting *TCL Commc'ns*

9   *Tech. Holdings Ltd. v. Telefonaktebologet LM Ericsson*, No. 15-cv-2370-JVS, 2016 WL 7042085,

10   at *5 (C.D. Cal. Aug. 17, 2016)).

11        Accordingly, courts in this Circuit regularly admit rebuttal testimony that criticizes or

12   contradicts other expert witnesses on the same subject matter.  *See, e.g.*, *Baker v. SeaWorld Entm't,*

13   *Inc.*, 423 F. Supp. 3d 878, 897 (S.D. Cal. 2019) (denying defendants' motion to exclude the

14   testimony of plaintiff's rebuttal expert because "Feinstein's criticisms contradict Dirks' opinion on

15   the same subject matter—i.e., whether Defendants' misstatements and omissions were material.");

16   *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1220 (S.D. Cal. 2010) (overruling objection to

17   expert's rebuttal report because "Regan's analysis contradicts Holder's opinion on the same subject

18   matter, specifically, whether REMEC used assumptions, estimates, and forecasts to evaluate

19   goodwill that complied with GAAP.").

20   **IV.   ARGUMENT**

21        **A.   Kahrs' Opinion is Consistent with Ninth Circuit Law.**

22        SinCo contends that Kahrs "incorrectly asserts that actual confusion is required for an award

23   of lost profits."  Motion at 19.  This mischaracterizes Kahrs' opinion.  Kahrs does not predicate his

24   opinion on the assertion that "actual confusion" is *always* required to obtain a recovery of lost

25   profits; rather, his opinion in this regard is based on the principle that recovery of lost profit

26   damages must be proven with "reasonable certainty."  Kahrs Report at 11; Alparce Decl. Ex. B

27   (Kahrs Depo.) at 117.  And for this element of causation, evidence of actual confusion and diverted

28   sales "may" or is "often" required to demonstrate that a sale made by the alleged infringer was one

1   that otherwise would have been made by the plaintiff.[5]  In other words, while evidence of actual

2   confusion is not required to prove causation, evidence of the absence of confusion disproves

3   causation.

4          This is consistent with the law in this Circuit.  "Section 35 of the Lanham Act, 15 U.S.C. §

5   1117(a), governs the award of monetary remedies in trademark infringement cases and provides for

6   an award of … any damages sustained by the plaintiff."  *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d

7   1400, 1405 (9th Cir. 1993), *abrogated on other grounds*, *Sun Earth, Inc. v. Sun Earth Solar Power

8   Co.*, 839 F.3d 1179 (9th Cir. 2016).  "Damages are typically measured by any direct injury which a

9   plaintiff can prove, as well as any lost profits which the plaintiff would have earned *but for* the

10  infringement."  *Id*. at 1407 (emphasis added).  Although "damages are not rendered uncertain

11  because they cannot be calculated with absolute exactness, a reasonable basis for computation must

12  exist."  *Id*. (internal quotation marks omitted).  In other words, "[c]ompensatory damages must be

13  established with 'reasonable certainty' and not based on speculation or conjecture."  *Am. Auto.

14  Ass'n of N. Cal., Nev. & Utah v. Gen. Motors, LLC*, 367 F. Supp. 3d 1072, 1105 (N.D. Cal. 2019)

15  (citing *McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 361 (9th Cir. 1996)).

16         Thus, to establish actual damages in an infringement action, a plaintiff must identify at least

17  some measurable loss arising from the alleged trademark infringement.  *Blau v. YMI Jeanswear,

18  Inc.*, No. 02-cv-9511-FMC, 2004 WL 5313967 (C.D. Cal. Jan. 2, 2004) is instructive.  Blau was the

19  plaintiff in a trademark action concerning its registered mark "U.B.U." for certain apparel.  *Id*. at

20  *1.  Notwithstanding evidence that consumers mistakenly purchased Defendant YMI's apparel also

21  referencing "U.B.U.," the court granted summary judgment in favor of the defendant: "[T]here is no

22  evidence that the mistaken purchase of [Defendant] YMI jeans damaged [plaintiff], only that it

23  benefitted Defendant YMI.  This is not a situation where the customer intended to purchase U.B.U.

24

25  [5] In his report, Kahrs states the following:

26  ████████████████████████████████████████████

27  ████████████████████████████████████████████

28  ████████████████████████████████████████  *Id*. at 11
    (emphasis added).

jeans, but instead was induced to purchase YMI jeans." *Id*. at \*4.  Thus, because Blau failed to identify specific customers that were lost due to YMI's alleged trademark infringement, the court granted summary adjudication on the issue of actual damages in favor of the defendant.  *Id.*

The plaintiff in *American Automobile Association*, also had the same problem in proving actual damages.  That case concerned two competing car share services with similar sounding names.  Plaintiff launched a car share service called "GIG" and defendant developed a similar service called "MAVEN GIG."  Despite the similar sounding names, the court concluded that the plaintiff's witnesses could not identify any specific damages.  Although the plaintiff identified a few examples of consumer confusion, there was no evidence that consumers selected the defendant's service out of confusion.  *Id., 367 F. Supp. 3d at 1106-08.  The court thus granted summary judgment in favor of defendant.  *Id.* at 1108.

At the heart of these holdings is the principle that a trademark holder is not entitled to a windfall merely because there was unauthorized use of its trademark.  If the trademark holder seeks damages in the form of lost profits, it carries the burden of proving causation with "reasonable certainty."  That is, "any lost profits which the plaintiff would have earned *but for* the infringement."  *Lindy Pen Co.*, 982 F.2d at 1407 (emphasis added).  Courts in this Circuit, therefore, do not hesitate to dispose of claims for damages under the Lanham Act when "the Plaintiff has not presented any admissible evidence that it in fact has been injured or damage calculations to support actual damages."  *See Sansi N. Am., LLC v. LG Elecs. USA, Inc.*, No. 18-cv-3541-PSG, 2019 WL 8168069, at \*10-11 (C.D. Cal. Nov. 14, 2019) (collecting cases and granting summary judgment in favor of defendants on the issue of damages under the Lanham Act).

Kahrs' opinion is therefore faithful to the law in this Circuit concerning causation.  In his report, Kahrs states that, ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████  Kahrs Report at 10.  He properly criticizes Cox ███████████████ ████████████████████████████████████████ ████████████████████████████████████████

1      ██████████████████████ *Id.* at 11; Alparce Decl. Ex. B (Kahr Depo.) at 144:10-12.

2          To illustrate this point, Kahrs highlights that Cox ████████████████████████████████

3 ████████████████████████████████████████████████████████████████████████

4 ████████████████████████████████████ Kahrs Report at 19; Alparce Decl. Ex. B

5 (Kahr Depo.) at 101.  Whereas Cox ████████████████████████████████████

6 ████████████████████████████████████████████ Kahrs considered that

7 evidence and should therefore be permitted to provide an opinion on how the failure to consider that

8 evidence impacts the reliability of Cox's conclusions regarding damages.[6]  The jury will make the

9 ultimate determination as to confusion, and to the extent it concludes that there was confusion,

10 Kahrs' testimony will directly aid them in addressing the question whether SinCo has proven that it

11 suffered actual damages *caused* by such confusion.

12        **B.**      **SinCo's Remaining Challenges to Kahrs' Testimony Are Without Merit.**

13            **1.**      **Kahrs Directed and Substantially Participated in the Regression Analysis.**

14          SinCo first objects that Kahrs had a member of his staff, Dr. Adrian Fleissig, assist him with

15 calculations included in his report.  Motion at 15.  This objection is without merit.  In this Circuit,

16 Courts routinely allow experts to employ staff and others to assist them with gathering data and

17 conducting analyses, provided that the expert substantially participated in the analysis and is an

18 expert with respect to such analysis.  Kahrs' use of assistance from Dr. Fleissig easily meets this

19 criteria.  Further, SinCo knew that Fleissig had conducted the regression analysis, but for more than

20 a year never sought to depose him or otherwise seek additional discovery; had it done either it could

21 have dispelled any uncertainty as to these facts without the need for a meritless motion.

22          It is black letter law that "[a]n expert witness is permitted to use assistants in formulating his

23 expert opinion, and normally [the assistants] need not themselves testify."  *Dura Auto. Sys. of*

24 *Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 612 (7th Cir. 2002).  Experts may rely on facts or data

25

---

26 [6]  Consider one example where SinCo's own witness admitted that certain business was ████████
      ████████████████ Minh Chi Nguyen, SinCo's North American Corporate Vice President,

27 testified in his deposition ████████████████████████████████████████████████████
                                        Kahrs Report at

28 18-19.  As another example: ████████████████████████████
                                               *Id.* at 18.

1   provided by others.  *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1142 (9th Cir.

2   1997) (the "fact that [an expert's] opinions are based on data collected by others is immaterial").

3   Use of assistant is proper as long as the expert also "substantially participate[s] in the preparation of

4   his report."  *Accentra Inc. v. Staples, Inc.*, No. 07-cv-5862-ABC, 2010 WL 11459205, at *4 (C.D.

5   Cal. Oct. 7, 2010) (quoting *Manning v. Crockett*, No. 95 C 3117, 1999 WL 342715, at *3 (N.D. Ill.

6   May 18, 1999)).

7        Here, SinCo cherry picks quotations without context from Kahrs' deposition to misleadingly

8   paint him as an absent witness who merely adopted another's findings.  That was not the case.

9   Instead, a more careful reading of Kahrs' deposition and report—and the actual facts, had plaintiff

10   sought to elicit them—reveal that Kahrs directed Fleissig's work and consulted with him during this

11   process, as he noted in his expert report, where Kahrs disclosed that ████████████████

12   ████████████████████████████████ and that staff members ████████████████

13   ████████████ Kahr Report at 5.

14        After reviewing Cox's regression analysis, Kahrs identified four flaws: ████████████

15   ████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████ Kahrs Decl. ¶ 10.

22        Because SinCo failed to avail itself of the opportunity to inquire into Kahrs' use of Fleissig

23   in discovery, it has failed to show that Kahrs' use of Fleissig was improper.  Nonetheless, to dispel

24   any uncertainty about that, Defendants submit a short Declaration from Kahrs with this brief to

25   confirm those facts.  Kahrs Decl. ¶¶ 11-13.  Under Kahrs' "direction and supervision," Fleissig,

26   who was an employee on Kahrs staff at that time, conducted regression analyses to assess the

27   impact of the above flaws.  *Id.*  As background, a regression analysis is a method by which to

28   estimate the correlation (or absence thereof) between variables.  Such analyses are commonly used

1   in statistical analysis, and employ well defined formulas.  *Id*.  Microsoft Excel includes among its

2   embedded functions at least five functions that automatically perform regression analyses, similar to

3   how Excel can also be used to sum numbers, calculate present value, and perform a wide-range of

4   other similar calculations.  *Id*.

5           Thus, for example, Fleissig quantified and illustrated the extent to which use of outlier sales

6   data overstated SinCo's projected sales.  Kahrs Decl. ¶ 11.  He did the same with the other flaws

7   that Kahrs had identified.  *Id*.  The results reflected what Kahrs had anticipated: ████████

8   ████████████████████████████████████████████████████

9   ████████████████████   *Id*.

10          At the time, Fleissig and Kahrs were working in the same office spaces.  Kahrs Decl. ¶ 12.

11  And it was Kahrs' standard practice to regularly consult with his assistants whenever they assisted

12  him on a matter pertaining to an expert report.  *Id*.  Kahrs reviewed Fleissig's regression analyses

13  with him in the office, and Fleissig presented to Kahrs the underlying spreadsheets.  *Id*.  Kahrs also

14  had the opportunity to review the raw data from Cox's spreadsheet and Fleissig simply conducted

15  different regression formulas.  *Id*.  Kahrs also reviewed the subsequent graphs, all of which were

16  generated using standard Excel processes.  *Id*.

17          In fact, Kahrs could have completed the same regression analyses that Fleissig completed at

18  his direction based on Kahrs' own education and experience.  Kahrs Decl. ¶ 13.  Kahrs has studied

19  statistics, including on the subject of regression analyses, while completing his accounting degree

20  and pursing a Master of Business Administration.  *Id*.  He is also a Certified Management

21  Accountant, the examination for which includes statistics and regression analyses.  *Id*.  For the last

22  36 years, he has practiced as a forensic accountant and fraud examiner, completing nearly 4,000

23  profits and damages analyses, and over a hundred of these cases have involved the use of a

24  regression analysis.  *Id*.  In the cases in which he has been retained as an expert witness, he has

25  personally completed scores of regression analyses.  *Id*.

26          SinCo's attempt to analogize this case to *Bekaert Corp. v. City of Dyersburg*, 256 F.R.D.

27  573 (W.D. Tenn. 2009) therefore fails.  *Bekaert* involved a purported "expert"—Mr. Hynes—who

28  merely rubber-stamped a declaration with which he had no involvement at all.  Rather, the

declaration was "originally prepared by Defendant's counsel," not the expert's staff or another

subject matter expert. *Id*. at 579. Indeed, it was prepared "prior to even identifying" the expert,

with Hynes being selected as the signatory only after the fact. *Id*. The expert's participation

therefore "amount[ed] to [applying] his signature after reviewing the document." *Id*. Still more

damning was that these facts were inconsistent with the expert's testimony that he was "involved in

the preparation of this document[.]" *Id*. This lack of candor extended also to counsel, with the

court finding it "noteworthy" that defendant "failed to address the issue of who prepared the

document in either their response or in their supplement response." *Id*. at 579 n.26. At bottom, that

case represents an incredible example where the proponent of the evidence provided evasive

answers to the court and where it turned out the purported "author" was only identified after the

declaration's creation.

This case is nothing like that. Not only was Kahrs substantively involved at all phases,

Defendants have been fully transparent about Fleissig's involvement with Kahrs' report. On

January 23, 2020, Defendants disclosed Fleissig as "staff" for "Kahrs at the same organization and

may assist." Motion at 3; Gaitan Decl. Ex. N (Dkt. 384-3). Moreover, Defendants provided SinCo

with Fleissig's resume on January 29, 2020 (*id.*), and SinCo had an opportunity to question Kahrs

about Fleissig during his deposition on February 4, 2020, during which time Kahrs consistently

testified that Fleissig completed the regression analysis. Alparce Decl. Ex. B at 157:22-158:8. Had

SinCo been unsure about the details of Fleissig's involvement, it could have sought further

discovery at that time—and indeed it *should* have done so rather than waiting a year and filing a

motion to exclude.

*BladeRoom Grp. Ltd. v. Facebook Inc.*, No. 5:15-cv-1370, 2018 WL 1611835 (N.D. Cal.

April 3, 2018), provides guidance in this regard. There, BladeRoom sought to exclude two expert

reports, arguing that these were "ghostwritten" by a third party. The court rejected that relief:

"Instead of seeking exclusion of the reports as 'ghost written' by others, BladeRoom could have

solicited discovery from Keystone employees who assisted Facebook's experts in accordance with

this court's order permitting a deposition by written questions." *Id.* at *4. *See also Dura Auto. Sys.*,

285 F.3d at 613 (observing that "opposing party can depose [an expert's assistant] in order to make

1   sure they performed their tasks competently).  Here too, SinCo could have sought discovery about

2   Fleissig but failed to pursue such recourse.  The Court should not reward SinCo's failure in this

3   regard with exclusion.

### 2.     Kahrs' Opinion on the Significance of Outlier Sales Is Proper Rebuttal Testimony.

6        SinCo next requests that the Court exclude Kahrs' opinion that SinCo's sales in late 2015

7   were an outlier that should be excluded from future sales projections.  Motion at 17.  But an

8   understanding of how outliers affect data is of course helpful to the jury.  Indeed, economic and

9   damages experts are frequently *excluded* from testifying for basing their testimony on unreliable

10  data, such as outlier data points (like those included by Cox in reaching his opinions).

11       "An 'outlier' is an extreme data point that lies far from a regression line [that fits] the

12  remaining data points."  *Estate of Bud Hill v. ConAgra Poultry Co.*, No. 4:94-cv-198, 1997 WL

13  538887, at *8 (N.D. Ga. Aug. 25, 1997).  In fact, "[o]utliers can significantly impact the slope of the

14  regression line, and ultimately, distort the results of an otherwise accurate regression analysis."

15  *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1299 (N.D. Fla. 2017).  An "usually high"

16  variable number can constitute an "outlier."  *See ICTSI Or., Inc. v. Int'l Longshore & Warehouse*

17  *Union*, 442 F. Supp. 3d 1329, 1360 (D. Or. 2020) ("January 2012, however, was an 'outlier' month,

18  a month with unusually high [twenty-foot equivalent units] volume.").  For example, in *Navelski*,

19  the court excluded an expert's testimony on the decline in real-estate values, which was based on a

20  regression analysis with one significant outlier data point.  244 F. Supp. 3d at 1298.  The court

21  deemed a data point representing a sale of a home for $64,500 to be an "outlier" because this price

22  differed "markedly from all other transactions during the relevant time period," which ranged from

23  "$160,000 to $248,000."  *Id*. at 1299.  Because the expert there *failed* to omit the outlier month, his

24  testimony was excluded.  *Id*. at 1301.

25       Here, Kahrs provided multiple regression models—including one that excludes the months

26  of ███████████████████ as outliers that would ████████████████████

27  ████████████  Kahrs Report at 21; Alparce Decl. Ex. B (Kahrs Depo.) at 186:13-17.  This was

28  because the ████████████████████████████████████████

1   SinCo reported from ███████████████████, which regularly ranged anywhere from

2   █████████████████  *See* Kahrs Report, Graph 3.  Kahrs' exclusion of this outlier

3   was therefore reasonable and appropriate.  Moreover, Kahrs actually includes an alternative

4   regression model in his report, that *do* include the months of ███████████████

5   (for the purpose of illustrating the impact of the outlier).  Thus, there is no merit to SinCo's assertion

6   that Kahrs' expert report is "incomplete" or "not helpful."  *See id.*, Graph 3.

7        SinCo's related argument that Kahrs failed to review certain documents that purportedly

8   substantiate the outlier data point also misses the mark.  The dispute here is not whether the sales

9   actually occurred; but rather, whether those sales should be included in the analysis—given their

10  distorting effect.  To the extent that SinCo takes the position that other evidence supports the

11  inclusion of that data, that sort of criticism should go to the weight of the evidence, not the

12  admissibility of Kahrs' opinion.  *See S.E.C. v. Leslie*, No. C 07-3444-JR, 2010 WL 2991038, at *9

13  (N.D. Cal. July 29, 2010) ("Indeed, Seidler admits that he did not review all the documentary

14  evidence.  However, 'failing to review all relevant evidence is not a ground for excluding an

15  expert's testimony; rather it provides subject matter for cross-examination.'") (quoting *S.E.C. v.*

16  *Johnson*, 525 F. Supp. 2d 70, 75-76 (D.D.C. 2007)).

17             **3.      Kahrs Does Not Intend to Testify as an Expert in "Consumer Behavior".**

18       SinCo seeks exclusion because Kahrs is not a "consumer behavior expert."  Motion at 18.

19  This is a red herring—Kahrs has never claimed to be a consumer behavior expert and Defendants

20  do not intend to qualify him as one.  He is not opining on the science of how consumers "would

21  react" to "stimuli," as SinCo argues without any support in the record.  *Id.*  Nor are the customers in

22  this case traditional "consumers" such as one would expect to find in a mass market trademark

23  case—they are sophisticated business entities doing substantial commercial transactions.

24       What Kahrs does intend to do is provide opinions concerning *how damages may or may not*

25  *be affected by the existence of confusion or lack of confusion* by relevant customers.  As discussed

26  above at length, that confusion is relevant to damages.  *See* Section IV.A, *infra*; *see also Am. Auto.*

27  *Ass'n of N. Cal., Nev. & Utah*, 367 F. Supp. 3d at 1107 ("To the extent he mentions instances of

28  confusion, Mr. Haight provides no details as to who specifically was confused, when the instance

occurred, or how many times that type of confusion occurred."); *Blau*, 2004 WL 5313967, at *4

("Neither Plaintiff nor Koral, testifying as to their lay opinions, could identify specific accounts or

customers that were lost due to Defendants' alleged infringement of Plaintiff's mark.").

Further, it is not improper for Kahrs to base his damages opinion on the evidence concerning

customer confusion.  As a rebuttal expert on the issue of damages, Kahrs can rely on hearsay

statements from SinCo's customers and other out-of-court statements to provide a factual predicate

for his opinion.  Federal Rule of Evidence 703 "relaxes, for experts, the requirement that witnesses

have personal knowledge of the matter to which they testify."  *Claar v. Burlington N.R. Co.*, 29

F.3d 499, 501 (9th Cir. 1994).  Experts may therefore offer opinions based on otherwise

inadmissible hearsay if "experts in the particular field would reasonably rely on those kinds of facts

or data in forming an opinion on the subject."  Fed. R. Evid. 703.  *See also Hewlett-Packard Co. v.*

*Quanta Storage, Inc.*, 961 F.3d 731, 739-40 (5th Cir. 2020) (even though sales data on which

damages expert relied upon might have been hearsay, expert could rely on such facts and sales data,

including information about which entity made which purchases in price-fixing action); *Trepel v.*

*Roadway Exp., Inc.*, 194 F.3d 708, 717 (6th Cir. 1999) (trial court erred by not allowing experts to

testify regarding basis for their opinions as to value of damaged carvings, including their reliance on

hearsay statements by owner of similar carving that she had turned down offers of $2 million and

$2.5 million for her woodcarving).

Part of Kahrs' role at trial will be identifying flaws in Cox's "lost profits" opinion and

methodology, namely, that he failed to provide details as to which U.S. customers were specifically

confused and when these instances occurred.  Kahrs' Report at 14-19.  Cox ████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ *Id.* at 11-12.

Thus, as noted above, Kahrs should be entitled to explain *why* he thinks this was material flaw in

Cox's model based on the state of the record evidence.

Kahrs' opinion will illustrate how Cox's damages analysis did not adequately address the

causal connection between any purported infringement and lost profits.  This testimony will assist

the jury in determining whether Cox employed a reasonable methodology or rather disregarded

1   certain material facts.  *See Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802,

2   834 (D. Minn. 2011) (holding it is the proper role of a rebuttal expert to critique plaintiffs' expert's

3   methodologies and point out potential flaws in experts' reports).

### 4.       Kahrs' Opinion Is Consistent With the Law of the Ninth Circuit.

5       In Section IV.A, *infra*, Defendants responded to SinCo's arguments concerning the legal

6   standards for damages in the Ninth Circuit.

### 5.       Kahrs Need Not Be Certain About All Facts to Provide An Opinion Based on Sound Methodology.

9       SinCo makes a brief argument that Kahrs' opinion on lost profits is not based on "sound

10  methodology."  Motion at 20.  This argument is based almost entirely on clipped-off depositions

11  quotations that do not even include full sentences.  But the substance of the argument seems to be

12  that if Kahrs reasonably and justifiably concedes that he does not know all of the conceivably

13  relevant facts concerning why SinCo lost customer with absolute certainty, then he is "speculating."

14      Not so.  A review of the full context of Kahrs' report and deposition testimony makes clear

15  that he is evaluating the evidence based on years of experience and properly identifying how areas

16  of uncertainty affect both his opinion and Cox's.  SinCo mischaracterizes Kahrs' proffered role at

17  trial: as a rebuttal witness, he is entitled to respond to the opinion from Cox and point out potential

18  flaws in Cox's methodology.  *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales*

19  *Practices, & Prod. Liab. Litig.*, 978 F. Supp. 2d 1053, 1069 (C.D. Cal. 2013) ("Dr. Burton's

20  opinions are not impermissibly speculative.  As a rebuttal witness, he may rely largely on other

21  expert reports, as he does, and point out flaws in the methodologies or conclusions.").

### 6.       Kahrs' Opinion on Increased Costs Is Proper Rebuttal Testimony.

23      SinCo' arguments that Kahrs' critique of Cox's cost analysis is "incomplete and lacks

24  reliable information" also fails.  Motion at 21.  Kahrs properly criticizes Cox's opinion concerning

25  increased costs as ███████████ (Kahrs Report at 24), and explains the foundation of his

26  opinion: ████████████████████████████████████████

27  ████████████████████████████████████████████████

28  ████████████████████████████████████████████████

1

2

3

4 ▬▬▬▬▬▬ Kahrs Report at 24-25.

5     To illustrate, Kahrs points out that Cox simply concluded that ▬▬▬▬▬▬▬▬

6 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

7 ▬▬▬▬▬▬▬▬ Kahrs Report at 24-25; Alparce Decl. Ex. B (Kahrs Depo.) at

8 101:7-17. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

9 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

10 ▬▬▬▬▬. Kahrs Report at 25.  In other words, ▬▬▬▬▬▬▬

11 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

12 ▬▬▬▬

13     As a rebuttal witness, Kahrs should be able to "testify as to the flaws that []he believe[s] are

14 inherent in another expert's report that implicitly assumes or ignores certain facts." *Coquina Invs.*

15 *v. Rothstein*, No. 10-cv-60786, 2011 WL 4949191, at *5 (S.D. Fla. Oct. 18, 2011) (citation

16 omitted); *see also Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, No. 09-cv-61490, 2011

17 WL 2295269, at *6 (S.D. Fla. June 8, 2011) (admitting a rebuttal expert who "merely provides other

18 factors that [the plaintiff's expert] should have considered in his report, based on her economic

19 expertise," explaining that "[h]ighlighting such factors will be helpful for the jury to weigh the

20 evidence presented at trial").  Thus, like his opinions, Kahrs' critiques of Cox's opinion on

21 increased costs are based on his years of experience and well supported by consideration of the

22 record and sound methodology.

23     **7.**    **Kahrs' Opinion on Unjust Enrichment Is Proper Rebuttal Testimony.**

24     In another rote argument, SinCo next says that Kahrs' opinion on unjust enrichment is

25 "devoid of data and methodology," "based on speculation," and "usurps the jury's function" in

26 determining causation between any alleged trademark infringement and value to the trademarks.

27 Motion at 22.  Again, this argument ignores that Kahrs' testimony properly identifies the flaws in

28 Cox's theory that SinCo is entitled to ▬▬▬▬▬ under the theory of unjust enrichment.

1    As stated above, Kahrs has explained that in arriving at this number, Cox simply subtracted

2  the ███████████████████████████████████████████████████████████████████

3  ██████████████████████████████ Kahrs Report at 26.  The difference between the

4  two numbers was around ████████, and thus Cox concluded that Xingke was unjustly enriched in

5  the same amount.  Alparce Decl. Ex. A at 8; *id.*, Ex. C at 83:14-17.

6    Kahrs explained that Cox's unjust enrichment calculation is unreliable.  Cox applied basic

7  subtraction without considering any other factors.  But a legitimate market approach to the valuation

8  of Xingke should have considered other variables, █████████████████████████████████

9  ██████████████████████████████████████████████████████████████████████

10 ████████████ Kahrs Report at 26.  Thus, in Kahrs' opinion, Cox's failure to consider multiple

11 factors such as those outlined ██████████████████████████████████████████

12 ████████████████████████████.  *See Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594,

13 598 (9th Cir. 1996) (holding that, when an expert purports to apply principles and methods in

14 accordance with professional standards, yet reaches a conclusion that other experts in the field of

15 work would not reach, one may fairly suspect that the principles and methods have not been

16 faithfully applied).

17    The fact that Kahrs did not undertake a full-blown valuation analysis does not mean that he

18 should not be entitled to point out that Cox failed to conduct a proper valuation and therefore Cox's

19 claimed specific monetary valuation is unreliable.

20         **8.      Kahrs' Opinion on Disgorgement Is Proper Rebuttal Testimony.**

21    Lastly, SinCo contends that Kahrs' opinion on disgorgement "asserts his conclusion that

22 certain customers were not confused and Defendant was chosen due to its capabilities."  Motion at

23 22.  For reasons previously addressed, this argument is meritless.  A damages expert may consider

24 evidence reflecting the absence of actual customer confusion in assessing a plaintiff's claim for

25 disgorgement, just as with other categories of damages.

26 **V.    CONCLUSION.**

27    For the foregoing reasons, Xingke respectfully requests that SinCo's motion to strike the

28 expert report of Henry Kahrs and motion to preclude his testimony be denied.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED:  April 9, 2021

Respectfully submitted,

**WHGC, P.L.C.**

By:   */s/ Kathleen E. Alparce*
Jeffrey C.P. Wang
Kathleen E. Alparce
Jessica A. Crabbe

*Attorneys for Defendants and Counterclaimants*
XINGKE ELECTRONICS (DONGGUAN) CO.,
LTD., formerly known as SINCO ELECTRONICS
(DONGGUAN) CO., LTD., LIEW YEW SOON aka,
MARK LIEW, NG CHER YONG. aka CY NG, and
MUI LIANG TJOA aka ML TJOA

1

**CERTIFICATE OF SERVICE**

2     I hereby certify that all counsel of record who are deemed to have consented to electronic

3    service are being served a copy of the foregoing DEFENDANTS' OPPOSITION TO PLAINTIFF

4    SINCO TECHNOLOGIES PTE LTD'S MOTION TO STRIKE THE EXPERT REPORT OF

5    DEFENDANTS' DAMAGES EXPERT HENRY KAHRS AND TO PRECLUDE MR. KAHRS

6    AND ADRIAN FLEISSIG FROM TESTIFYING AT TRIAL via the Court's CM/ECF system on

7    April 9, 2021.

8                  /s/ Martha Valenzuela

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28