1  LAEL D. ANDARA (SBN 215416)
   DANIEL E. GAITAN (SBN 326413)
2  ROPERS MAJESKI PC
   1001 Marshall Street, 5th Floor
3  Redwood City, CA  94063
   Telephone:    650.364.8200
4  Facsimile:    650.780.1701
   Email:        lael.andara@ropers.com
5                daniel.gaitan@ropers.com

6  Attorneys for Plaintiff
   SINCO TECHNOLOGIES PTE LTD
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11

12 | SINCO TECHNOLOGIES PTE LTD, | Case No. 3:17CV5517

13 | Plaintiff, | **PLAINTIFF SINCO TECHNOLOGIES PTE LTD'S REPLY IN SUPPORT OF ITS *DAUBERT* MOTION TO STRIKE THE EXPERT REPORT OF DEFENDANTS' DAMAGES EXPERT HENRY KAHRS AND TO PRECLUDE MR. KAHRS AND ADRIAN FLEISSIG FROM TESTIFYING AT TRIAL**

14 | v. |

15 | SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGLE ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS TECHNOLOGY CO., LTD.; SINCOO ELECTRONICS TECHNOLOGY CO., LTD.; MUI LIANG TJOA (an individual); NG CHER YONG aka CY NG (an individual); and LIEW YEW SOON aka MARK LIEW (an individual), |

17 | | Judge:   Edward M. Chen

18 | | Trial Date:    11/01/2021
   | | Date Action Filed: 9/22/2017

19 |

20 | Defendants. |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

   A.   If Fleissig's Involvement was Proper, it Would be in the report ......................... 2

   B.   XINGKE Opposition is Internally Inconsistent .................................................... 3

   C.   Kahrs Declaration Attempts to Justify The Report's Deficiencies ...................... 5

II.  CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Appalachian Power Co. v. E.P.A.*,
    135 F.3d 791 (D.C. Cir. 1998) ................................................................................................9

*Bekaert Corp. v. City of Dyersburg*,
    256 F.R.D. 573 (W.D. Tenn. 2009) ..........................................................................................2

*Griffin v. Board of Regents*,
    795 F.2d 1281 (7th Cir.1986) .................................................................................................11

*Luke v. Family Care & Urgent Med. Clinics*,
    323 F. App'x 496 (9th Cir. 2009) .............................................................................................5

*Medtronic Vascular, Inc. v. Abbot Cardiovascular Systems, Inc.*,
    2008 U.S. Dist. LEXIS 112148 .................................................................................................5

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    980 F.3d 157 (1st Cir. 2020) ....................................................................................................9

**FEDERAL STATUTE**

Federal Rule of Civil Procedure 26 ..................................................................................................5

Plaintiff SinCo Technologies PTE LTD., ("SINCO") respectfully submits this reply brief in support of it Daubert Motion to Strike the Expert Report of Defendants Sinco Electronics (Dongguan) Co., Ltd., doing business as Xingke Electronics (Dongguan) Co., Ltd.; Mui Liang Tjoa; Ng Cher Yong; and Liew Yew Soon (herein "XINGKE") and the expert testimony of Henry J. Kahrs and Adrian Fleissig. Redactions are subjected to Orders to file under seal [ECF 390 & 393].

I. **INTRODUCTION**

XINGKE's opposition ignores a critical principle of damages law- Mr. Kahrs' analysis must be tied to the relevant facts of this case, facts the opposition also ignores but then attempts to use to justify admission. Mr. Kahrs' repeatedly acknowledges that SINCO lost sales, but rather than provide an analysis of the cause, concludes in a vacuum that it wasn't associated with Trademark Infringement. XINGKE's opposition is self-contradicting in claiming at the outset that SINCO's motion is premature, to then later claiming that SINCO improperly delayed "for more than a year" in bringing this motion. As anticipated, XINGKE asserts that SINCO, "*mischaracterizes Kahrs' opinions*," and "*cherry picks quotations without context*," which is the very reason SINCO provided the full report and full deposition testimony. (*Declaration of Daniel Gaitan in Support of SinCo's Motion to Strike* "*Gaitan Decl.*" *at* Exhs. A and B.*)* SINCO would invite the Court to presume both parties are biased and review Mr. Kahrs full report and deposition testimony and evaluate if it rests on a ***reliable*** foundation and is ***relevant*** to the task at hand as is consistent with the judgment of *Daubert*. The testimony cited by SINCO was Mr. Kahrs', and reading the full transcript will illustrate SINCO's concern that such testimony is inappropriate for the Jury. A substantial portion of Mr. Kahrs' report is anchored on a determination of non-infringement, a fact wholly ignored in the opposition which devotes pages of time reiterating the legal theories that Mr. Kahrs has already echoed. However, the Court must determine if Mr. Kahrs opinions will unfairly influence the Jury as presented as fact more than opinion. FRE 403. XINGKE's opposition devotes much of its time discussing SINCO's expert so as to advocate that simply criticizing him is sufficient, absent an actual alternative damages calculation, assuming that the Jury were to find infringement. SINCO believes a full reading of the cases XINGKE cites further confirms Mr. Kahrs report is neither reliable nor relevant as it fails to apply econometric principles to the analysis.

### A. If Fleissig's Involvement was Proper, it Would be in the report

XINGKE's opposition[1] asserts, "*Defendants have been fully transparent about Fleissig's involvement with Kahrs' report.*" *XingKe Opp.* at 14:13. However, a search for the term "Fleissig" in Kahrs' report, results in no references. *Declaration of Daniel Gaitan in Support of this Motion* "*Gaitan Decl."* at Exh. B. Actions speaking louder than words and if Defendants' were so transparent, why was any reference to Fleissig absent from the report? *Id*. Only when this fact was discovered at Mr. Kahrs' deposition did opposing counsel provide the information by email, over six hours into Mr. Kahrs's deposition. *Id*. at Exh. J at Pg. 2 (referring to Fleissig Analysis.xls.) By contrast, Mr. Kahrs's report lists several SINCO bates numbered excel sheets in his **January 30, 2020**, Report. *Id*. at Exh. B at DOCUMENTS RECEIVED 43. Secreting Mr. Fleissig's involvement until SINCO's counsel asked the right question at the deposition is more in line with *Bekaert Corp. v. City of Dyersburg*, 256 F.R.D. 573, 579 (W.D. Tenn. 2009). As Mr. Kahrs' testified, Mr. Fleissig—<u>alone</u>—*did all the work on regression*:

*Id.* at Exh. C at 55:25-56:2.

---

[1] XINGKE provided an unredacted copy of their **April 9, 2021** filing to SINCO on **April 12, 2021** at 5:40 p.m., after SINCO's counsel sent an email showing SINCO provided unredacted copies of their Motion to Strike within an hour of filing with the Court.

1  *Id.* at 155:14-21; 156:18-21; 158:5-10 (Emphasis Added). Further evidence of XINGKE's lack of transparency is Kahrs Declaration of, a day unknown in April 2021, which was required to supplement Kahrs' prior report and deposition testimony a year after the close of expert discovery. *Decl. of Henry J. Kahrs ISO Opp. to Mot. to Strike* ("*Kahrs Decl.*"). Mr. Kahrs' 2021 Declaration fails to explain the absence of the document "*Fleissig Analysis.xls*," in his report. Moreover, neither the Kahrs Declaration nor the opposition provides the Court any facts to substantiate the claim that Kahrs "substantially participated" in preparing the                        ," authored by Mr. Fleissig. *Gaitan Decl.* at Exhibit C 155:14-24. To the contrary, his own declaration tends to prove SINCO's assertion he did not substantially participate in creating the regressions:

> 11. Under my direction and supervision,

### B. XINGKE Opposition is Internally Inconsistent

In XINGKE's opposition, they repeat the claim that SINCO's motion to strike is premature, as they also asserted in a separate administrative motion. [ECF 386.] The opposition then argues in the legal argument that SINCO delayed in bringing this motion for over a year and failed to conduct discovery on Fleissig. *XingKe Opp.* at FN2; 11:20; and 14:20. XINGKE's arguments require this Court to disregard its **June 13, 2019**, Case Management & Pretrial Order [ECF 225] that set the close of Expert discovery for **February 6, 2020**, when they falsely state:

> *SinCo knew that Fleissig had conducted the regression analysis, but for more than a year never sought to depose him or otherwise seek additional discovery; had it done either it could have dispelled any uncertainty as to these facts without the need for a meritless motion. XingKe Opp.* at 11:19-21.

So rather than having a year, as XINGKE asserts, SINCO had **two days** from Mr. Khars **February 4, 2020** deposition to depose Fleissig.[2] XINGKE's opposition followed the words of Mark Twain, "never let the truth get in the way of a good story."

XINGKE's opposition claims that regression analysis is very simple and easy to do:

---

[2] On **January 10, 2020**, the Court denied XINGKE's motion to modify the Case Management Order of June 13, 2019, to extend fact discovery and Expert disclosures to July 2020. [ECF 326]

> *Microsoft Excel includes among its embedded functions at least five functions that automatically perform regression analyses, similar to how Excel can also be used to sum numbers, calculate present value, and perform a wide-range of other similar calculations.*

*XingKe Opp.* 13:1-4. Another reference:

> *Kahrs also reviewed the subsequent graphs, all of which were generated using standard Excel processes.*

*XingKe Opp.* 13:15-16. No where in the report, declaration, or XINGKE's opposition was it evidenced that Mr. Kahrs was involved in any way in creating the "*Fleissig Analysis.xls*," that he testified to relying on to create his report and related graphs. Furthermore, contrary to his deposition, Mr. Kahrs declaration claimed:

> *In fact, Kahrs could have completed the same regression analyses that Fleissig completed at his direction based on Kahrs' own education and experience. Kahrs Decl. ¶ 13.*

*XingKe Opp.* 13:17-18.

However, at his deposition Kahrs revealed that he could not duplicate this simple regression, using a single variable:



*Gaitan Decl.* at Exhibit C 139: 1-5.



*Id*. at Exhibit C 140: 17-21.



*Id*. at Exhibit C 163: 1-5. This inability by Mr. Kahrs to recreate a simple, single variable, regression in excel was how the disclosure of Mr. Fleissig's analysis came to light. *Id*. at 153:2-155:16.

1   XINGKE and Kahrs admittedly never provided SINCO with Mr. Fleissig's analysis excel
2   document prior to the deposition, nor did they ever disclose Fleissig as an Expert that would provide
3   testimony or an opinion. *Id*. at Exhibit N and C 178:1-5. In fact, SINCO had to stop the deposition
4   so that Dr. Fleissig could email the excel sheet he created during the deposition of Mr. Kahrs. *Id*.
5   at 178:22-179:29. The reason for the failure for Mr. Kahrs to provide the Fleissig analysis, in part
6   likely due to the fact that the data actually provided similar results to Dr. Cox, and supported the
7   use of the Singapore Index, which is inconsistent with Mr. Kahrs report. The information provided
8   in the "*Fleissig Analysis.xls*," evidences that the regression analysis actually contradicts Mr. Kahrs'
9   statements in his report [and his deposition].  Possibly the most egregious misstatement is his claim
10  that "A regression also shows that monthly sales are negatively related to the Singapore Production
11  Index."  To prove this he refers only to Graph 5, which provides no information on the measured
12  relationship between the Singapore Production Index and SinCo's sales.  His Excel backup work
13  book, in the tab labelled "Regression Result" shows the following result.

### C.  Kahrs Declaration Attempts to Justify The Report's Deficiencies

Mr. Kahrs' Declaration, attempt to add or supplement his prior expert report and deposition testimony. However, as the Japanese Proverb goes, "When you are thirsty, it's too late to think of digging the well." This issue has previously been presented to this Court in another case, were this Court held that "a party may not rely on supplementation 'as a way to remedy a deficient expert report or as a means of getting in, in effect, a brand new report.'" *Medtronic Vascular, Inc. v. Abbot Cardiovascular Systems, Inc.*, 2008 U.S. Dist. LEXIS 112148 at *6, 2008 WL 4601038(N.D.Cal. Oct. 15, 2008). Federal Rule of Civil Procedure 26(e) does not "create a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed." *Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 500 (9th Cir. 2009).

In his declaration, Mr. Kahrs claims to have demonstrated, by means of his own purported "regression analysis," that Dr. Cox's regressions are incorrect. *Kahrs Decl. at* ¶7. Mr. Kahrs claims in ¶7 of his declaration, for example, that:

> 7. As a means of quantifying and illustrating these flaws, I directed that regression analyses be conducted. Among other things, these analyses established

Although Mr. Kahrs claims that this trend and sales correlation, "among other things, these analyses established that the Index actually had a decreasing trend and that Sinco's actual sales are negatively correlated to the Index," he fails to show the supporting analysis. *Kahrs Decl.* at ¶7. Mr. Kahrs does not show that the index had a decreasing trend. *Gaitan Decl.* at Exh. B *supra*. Mr. Kahrs' report claims that " ██████████████████████████████████████████████████

██████████████████████████ *Gaitan Decl.* at Exhibit B at Pg. 23. There is no regression result in Exhibit 8, Graph 5. Mr. Kahrs does not provide the mathematical formula that comes out of a regression nor does he provide the results of any statistical tests on a regression. The results of any statistical tests on a regression are required to determine whether there is a correlation or not. Mr. Kahrs claim that Sinco's sales are negatively correlated to the index are merely *ipse dixit*, and inconsistent with Fleissig's results.

Most of what Mr. Kahrs describes as a regression analysis is not regression at all. *Kahrs Decl. at* ¶8. The graphs merely show trends through time. Mr. Kahrs arbitrarily imposes a straight line in the trends and shows these trends using cherry picked data. See graphs 2, 3 and 4 where he splits the data into two time periods, deletes some observations and then plots his straight-line trend:

4845-6804-6821.4

SINCO TECH. PTE LTD'S REPLY ISO *DAUBERT* MOTION
3:17CV5517

1   Rather than an even-handed presentation of rigorous analysis, Mr. Kahrs chooses data and imposes a straight-line time trend to provide the results. There is no attempt to undertake a multivariate analysis that simultaneously accounts for all relevant variables that have an impact on Sinco sales. *Gaitan Decl.* at Exhibit B. The use of a single variable, time, is simply not reliable or relevant to show a correlation, which is the purpose of doing a regression.

In contrast, SINCO's Expert, Dr. Cox did account for all relevant variables that have an impact on Sinco sales. Dr. Cox's regression in his report at para 47, does account for these variables:



*Decl. of Kathleen E. Alparce ISO Opp. to Mot. to Strike* ("*Alparce Decl.*") at Exh. A, Pg. 22.

In contrast, all that Mr. Kahrs does is make sketches illustrating the following equation:

That is, the analysis or claimed: "regression" (actually, simple-minded graphs) only takes time into account. In other words, the analysis does not simultaneously take into account the impact of critical variables: 1) economic conditions (as accounted for in the Singapore Production Index);

1  2) the impact of end-of-year sales on fourth-quarter demand; and 3) the impact, of DG's activities.

Mr. Kahrs exclusion of variables that explain the pattern of SinCo's sales allow for his self-fulfilling prophecy to come true, however it is unreliable and unscientific. *Gaitan Decl.* at Exh. A. This incomplete analysis is not based on sufficient data commonly accounted for by statistical or regression analysis. FRE 702. Mr. Kahrs testimony is not the product of reliable principles and methods, and he fails to report the size of the trends that he is measuring, (that is, the slope of the lines). In other words, an expert in this field could not rely on Mr. Kahr's analysis since it did not apply the appropriate scientific method, which would require, at the very minimum, that Mr. Kahrs present the value of $\alpha$ and $\beta_3$. Furthermore, Mr. Kahrs does not provide any statistical significance tests, (that is, the reliability of the estimate of $\alpha$ and $\beta_3$, the parameters of that slope). This is in sharp contrast to the standard presentation of such results as displayed in Exhibits 3 and 4 of Dr. Cox's report. *Alparce Decl.* at Exh. A.

1    Mr. Kahrs occasionally reports the R-squared ("R2") for some of his results. Mr. Kahrs use
2    of R2 is also problematic. First is Mr. Kahrs describing the R2 in his report as "the amount of linear
3    variation." *Gaitan Decl.* at Exhibit B at Pg. 23. In fact, the R2 value "is a statistic that measures
4    the percentage of variation in the dependent variable that is accounted for by all the explanatory
5    variables." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.,* 980 F.3d
6    157, 200 (1st Cir. 2020) and Rubinfeld, Daniel L. "*Reference guide on multiple regression.*"
7    Reference manual on scientific evidence 179 (2000): 425-469. P. 345. Relying solely on R2 as a
8    test statistic and measure of reliability is almost universally regarded as an error. "As a general rule,
9    courts should be reluctant to rely solely on a statistic such as R2 to choose one model over another."
10   *Appalachian Power Co. v. E.P.A.,* 135 F.3d 791, 806 (D.C. Cir. 1998), citing Rubinfeld, supra, at
11   457. In effect, Mr. Kahrs is asking the Court to do exactly that.

   Mr. Kahrs claims that two observations are outliers and should therefore be removed from any statistical analysis. Mr. Kahrs does not provide any basis for that removal. Mr. Kahrs does not provide any statistical analysis of the impact of removing those outliers. The information provided in the "*Fleissig Analysis.xls*," demonstrate that the regression analysis actually contradicts Kahrs' report [and his deposition]. Possibly the most egregious misstatement in Kahrs' report is that a "regression also shows that monthly sales are negatively related to the Singapore Production Index," referring to Graph 5 (At page 23.) Graph 5 provides no information on the measured relationship between the Singapore Production Index and SinCo's sales. The "*Fleissig Analysis.xls*," however, in the tab labelled "Regression Result," shows the result of a regression of SinCo's seasonally adjusted sales on the seasonally adjusted Singapore Production Index.

The estimated coefficient on the seasonally adjusted Singapore Production Index, 46,300,

1  as calculated by Fleissig shows the relationship between the Singapore Production Index and
2  SinCo's sales, both seasonally adjusted.  The fact that Fleissig's calculation provides a positive
3  number directly contradicts Mr. Kahrs' claim that there is a negative relationship.  It shows that for
4  a one-point increase in the Index, SinCo's sales tend to increase by          .  That is a positive
5  relationship, contrary to Mr. Kahrs' claim.    Furthermore, his data demonstrate that this is a
6  statistically very reliable estimate of a positive relationship, as indicated by the P-value (or
7  probability value) which can be found in the lower right-hand corner of the table.  That value is less
8  than 0.000.  In fact, due to rounding, it is actually lower than 0.0005, or .05 percent.  The
9  interpretation of the P-value is that it is the probability that we would observe such a positive
10 relationship between sales and the Index if there was actually no relationship or a negative
11 relationship between these two variables.  What this P-value is telling us is that there is only a 0.05
12 percent probability (5 in 10,000) that there is no relationship between these two variables.  Put
13 another way, there is only a .05 percent probability that Mr. Kahrs' claim is correct.

## II.  CONCLUSION

Based on Mr. Kahrs failure to sufficiently consider all the facts, and not just those that benefit XINGKE, the Court should exclude his testimony as unreliable.  Based on Mr. Kahrs opinions failing to properly apply reliable principles and methods the Court should exclude his testimony as not relevant.  Based on the prejudicial effect of the presentation of Mr. Kahrs's opinions as to confusion and XINGKE's admission that "Mr. Kahrs does not intend to testify as a consumer behavior expert and does not purport to be qualified as such," his testify as to consumer confusion should be barred. For example, when faced with evidence of confusion, Mr. Kehrs redefines the facts on behalf of XINGKE, referring to an email from Google on August 20, 2016, that stated:

*Gaitan Decl. at Exh. G.* Mr. Kahrs testimony as to this email demonstrated mental gymnastics in his interpretation of the lack of confusion:

This testimony illustrates that Mr. Kahrs is providing testimony far beyond the scope of his expertise. It also evidences that Mr. Kahrs is not making an independent analysis of the evidence for the benefit of the Jury but has willfully ignored facts in his report, that he admitted in his deposition. For example his assertion in his Report that Google was not a customer of SINCO. *Gaitan Decl. at Exh. B.at pg.28 and FN50*. Separate from the prejudicial effect of Kahrs' opinions, SINCO has further identified several defects that affect the analysis probativeness, not its admissibility. *Griffin v. Board of Regents*, 795 F.2d 1281, 1290 n. 16 (7th Cir.1986) ("Multiple regression analysis is likely to be inappropriate ... unless the model includes all of the major variables likely to have an effect on the dependent variable.")

Dated: April 15, 2021

Respectfully submitted,

ROPERS MAJESKI PC

By: _____
LAEL D. ANDARA
DANIEL E. GAITAN
Attorneys for Plaintiff
SINCO TECHNOLOGIES PTE LTD