ROPERS MAJESKI PC
LAEL D. ANDARA (SBN 215416)
lael.andara@ropers.com
ROBIN M. PEARSON (SBN 146704)
robin.pearson@ropers.com
DANIEL E. GAITAN (SBN 326413)
daniel.gaitan@ropers.com
545 Middlefield Road, Suite 175
Menlo Park, CA 94025
Telephone:    650.364.8200

*Attorneys for Plaintiff*
SINCO TECHNOLOGIES PTE LTD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SINCO TECHNOLOGIES PTE LTD,<br><br>Plaintiff,<br><br>v.<br><br>SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGLE ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS TECHNOLOGY CO., LTD.; SINCOO ELECTRONICS TECHNOLOGY CO., LTD.; MUI LIANG TJOA (an individual); NG CHER YONG aka CY NG (an individual); and LIEW YEW SOON aka MARK LIEW (an individual),<br><br>Defendants. | Case No. 3:17CV5517<br><br>**PLAINTIFF SINCO TECHNOLOGIES PTE LTD'S MOTION IN LIMINE No. 1 TO EXCLUDE DEFENDANTS FROM OFFERING EXPERT DAMAGES OPINIONS AND TESTIMONY OF HENRY J. KAHRS**<br><br>PRETRIAL HEARING<br>Date: October 5, 2021<br>Time: 2:30 p.m.<br>Place: Courtroom 5 – 17th Floor<br>Hon. Edward M. Chen<br><br>TRIAL DATE<br>November 1, 2021 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiff, SINCO TECHNOLOGIES, PTE, LTD., moves pursuant to Federal Rules of Evidence Rules (FRE) 104, 702, 703; 401-403, 104(a) and Federal Rules of Civil Procedure (FRCP) Rule 26(a)(2), *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993), and any legal authority this Court sees fit, for a ruling excluding the Defendants from offering expert damages opinions and testimony from Henry J. Kahrs. This motion is noticed to be heard on October 5, 2021, in Courtroom 5 located on the 17th Floor, before the Honorable Judge Edward M. Chen, or as early as possible thereafter.

## **MOTION *IN LIMINE* No. 1**

Now comes Plaintiff, SINCO TECHNOLOGIES Pte Ltd. ("SINCO) and files this Motion *In Limine* respectfully moving this Court to bar Defendants Sinco Electronics (Dongguan) Co., Ltd., doing business as Xingke Electronics (Dongguan) Co., Ltd.; Mui Liang Tjoa; Ng Cher Yong; and Liew Yew Soon (herein "XINGKE") from offering "expert" damages opinions and testimony of Henry J. Kahrs where XINGKE has designated only Mr. Kahrs to testify to SINCO damages. This motion is based upon the facts that Mr. Kahrs' are barred by FRE 104, 401–403 and 702–703 as the opinions: (1) are not premised on an objective and reliable evidentiary basis that is appropriate for an expert opinion on the matters presented; (2) are not directed to damages but as to liability with a determination of the ultimate legal issue; and (3) create a danger of unfair prejudice, confusion of the issues, and misleading of the jury, all of which would outweigh the probative value of the testimony. Federal Rule of Evidence ("FRE") 104, 401 - 403, 702, and 703.

This Court should exclude any opinions and/or testimony from Mr. Kahrs because 1.) Mr. Kahrs strays far from the field of his asserted expertise as to damages and asserts, as an opinion, Defendants' legal conclusion of non-infringement;[1] and 2.) the methodology and analysis in his report is not his own and SINCO was unable to cross-examine the true author, Mr. Fleissig, on the portion of the report written by Mr. Fleissig. The grounds for this motion are presented in the attached Memorandum and the Declaration of Daniel Gaitan filed on **March 26, 2021**, herein after "*Gaitan Decl.*" [ECF 384-2 and Exhibits at ECF 384-3]

*[the remainder of this page intentionally left blank]*

---

[1] *Gaitan Decl.* Exh. B "*This conclusion is further substantiated by a telephone conference conducted on January 28, 2020 with Mr. Cy Ng and Mr. Deqiang Liu. Mr. Liu, the General Manager of the DG facility.*"

**MEMORANDUM IN SUPPORT OF POINTS AND AUTHORITIES**

**I.  PROCEDURAL AND FACTUAL BACKGROUND**

SINCO is a company organized under the laws of Singapore, with its headquarters in Singapore. It provides a wide selection of designed-and-made to order items such as rubber keypads, keypads with chrome and electro-plated, metal to rubber bonding, engineering rubber components, and plastic buttons. SINCO develops the original tooling and dies for the requested item, and when approved SINCO issues a Purchase Order to a contract manufacturer, such as XINGKE to have the item mass produced using SINCO's tooling and dies. XINGKE would thereafter be subject to the terms and conditions upon accepting the Purchase Order. *Gaitan Decl.* Exh. C at 48:18-25.  (Mr. Kahrs did not review the terms and conditions to purchase orders. *Id.*) Until about 2017 XINGKE was a contract manufacturer supplying to SINCO pursuant to SINCO's specifications. There is no transaction directly between the contract manufacturer[2] and SINCO's customer until XINGKE began soliciting directly using SINCO trademarks and employees with SINCO'S U.S. customers.

Defendants Mark Liew and Cy Ng were employees of SINCO stationed to oversee the manufacturing process for SINCO and communicate with SINCO's customers in the United States during the process. Defendant Sinco Electronics (Dongguan) Co., Ltd. had a limited license to use SINCO trademarks on products manufactured for SINCO, pursuant to the terms and conditions of the Purchase Orders that XINGKE accepted from SINCO.  XINGKE had no rights to use the SINCO trademarks in the U.S. In or about 2016 XINGKE began directly soliciting customers in the U.S. using the SINCO trademarks and SINCO employees, without the knowledge or consent of SINCO.  SINCO has alleged damages as a result of said conduct.

On **January 16, 2020**, XINGKE disclosed Mr. Kahrs as a testifying Expert.  *Gaitan Decl.* Exh. O. On **January 23, 2020**, XINGKE disclosed Dr. Fleissig as a non-testifying Expert ("he is "staff.  However, he will not be offering any reports or opinions in this case") followed by his resume on **January 29, 2020**. *Gaitan Decl.* Exh. N. The following day, **January 30, 2020**, SINCO received a link to Mr. Kahrs FRCP Rule 26 report. *Gaitan Decl.* Exh. M.  On **February

---

[2] Customers may visit the contract manufacturer facility to inspect quality and the like.

1  **4, 2020**, SINCO's counsel deposed Mr. Kahrs. *Id*. at Exh. C.

2  Mr. Kahrs has been a damages expert since 1985. During the first 15 years of his career he worked mostly for insurance carriers on first-party loses and handled no intellectual property cases. *Id. at Exh. C* 39:2-8, and 39:14-16. For the last 20 years he transitioned into litigation support, wherein he has worked on an estimated 10-12 trademark cases. *Id*. at 39:24-40:2. Mr. Kahrs estimates that three – four of those trademark cases were in Federal Court. *Id*. at 40:20-23.

On **July 19, 2007**, Judge George Schiavelli excluded the expert testimony of Mr. Kahrs as to copyright infringement damages based on the argument that "the methodology used by Mr. Kahrs is riddled with unsupported assumptions and is, at best, unscientific." *Id*. at Exh. A**?**

## II.   LEGAL ARGUMENT

Mr. Kahrs expert report and proposed testimony are anchored in the legal conclusion[3] that there was no consumer confusion and no trademark infringement, which would serve to do nothing more than tell the jury what result it should reach. Resolving doubtful questions of law is the exclusive province of the trial judge. *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir.1993). Expert testimony here would have been not only superfluous but mischievous. *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.,* 523 F.3d 1051, 1059 (9th Cir. 2008).

### A.   STANDARD FOR ADMISSIBILITY OF EXPERT TESTIMONY

Expert testimony may only be admitted in a manner consistent with the FRE, Daubert, and more recent appellate court cases. Expert testimony is not to tell the jury how it is to decide an ultimate issue. *United States v. Diaz* 876 F.3d 1194, 1197 (9th Cir. 2017). It is fundamental that opinion testimony is permitted in order to aid and assist the jury. Under FRE 702 before admitting expert testimony, "the district court must perform a 'gatekeeping role' [to] ensur[e] that the testimony is both 'relevant' and 'reliable.'" *United States v. Valencia-Lopez,* 971 F.3d 891, 897–898(9th Cir. 2020); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S.137 (1999). It also applies to all expert testimony, not just scientific testimony. Id. at 148-149 (applying *Daubert* to all expert testimony). It applies to rebuttal experts. *Allen v. Brown Clinic, P.L.L.P.*, 531 F.3d 568, 573-74

---

[3] "*Sinco lost business due to competition from DG (not confusion), DG's alleged stealing of product designs, and DG's purported violations of various regulations, not customer confusion…These non-confusion related reasons for lost business are unrelated to the claims of relief in this case*." *Gaitan Decl*. at Exh B 19:15-19.

1  (8th Cir. 2008). While Mr. Kahrs may be a rebuttal expert his testimony must qualify under FRE
2  702, *Daubert*; and not be excluded by FRE 403.
3        The district judge is "a gatekeeper, not a fact finder." *Daubert*, 509 U.S. at 592-94, 596
4  (citing *United States v. Sandoval–Mendoza*, 472 F.3d 645, 654 (9th Cir.2006). The court must
5  determine if the expert testimony is reliable.  <u>If it's reliable</u> the court determines if the expert
6  testimony is 'fit' to advance a material aspect of the case. *Id. at* 590-591. Even if it passes the
7  initial test, expert testimony may be excluded if the reasoning underlying the testimony is invalid
8  or irrelevant to the issues in the case. *Id.* An expert's assertion is not admissible.
9        The powerful nature of expert testimony has a potential to mislead the jury. *U.S. v.*
10 *Rincon*, 28 F.3d 921, 925 (9th Cir. 1994). *Daubert* reiterates that the district court may exclude
11 relevant expert evidence pursuant to FRE 403 "if its probative value is substantially outweighed
12 by the danger of unfair prejudice, *confusion of the issues,* or misleading the jury." *Daubert,* 509
13 U.S. at 595; *Rincon,* 28 F.3d at 926. To guard against the risk that jurors will accept an expert's
14 testimony simply because he or she is an expert, a district court must ensure that all expert
15 testimony is "not only relevant, but reliable." *Daubert*, 509 U.S. at 589, (1993).
16       Expert testimony is limited to matters that require specialized knowledge, skill,
17 experience, training.  FRE 702. Testimony is admissible under FRE 702 if the subject matter at
18 issue is beyond the common knowledge of the average layman.  *United States v. Winters,* 729
19 F.2d 602, 605 (9th Cir. 1984).  A determination if there was consumer confusion is not beyond
20 the common knowledge of the average layman, and does not require testimony from a damage
21 expert. There is no special skill involved in reading emails, seeing demonstrative evidence, or
22 listening to non-technical testimony about sales meetings to determine if customers were
23 confused.  Mr. Kahrs' "expert" testimony relating to customers may be excluded on that basis
24 alone as it does not require special knowledge, skill, experience, training, or education. *Id.*

      **B.**    <u>**MR. KAHRS' OPINIONS AND/OR TESTIMONY SHOULD BE EXCLUDED BECAUSE HIS ANALYSES DO NOT PASS MUSTER UNDER DAUBERT AND FRE 702 AND 403.**</u>

26       Mr. Kahrs' opinions are anchored in the legal conclusion[4] that there was no trademark

---

[4] "Sinco lost business due to competition dfrom DG (not confusion), DG's alleged stealing of product designs, and DG's purported violations of various regulations, not customer confusion…These non-confusion related reasons for lost business are unrelated to the claims of relief in this case." *Gaitan Dec* at Exh. B at 19:15-19.

infringement, which would serve to do nothing more than tell the jury what result it should reach.

Beginning on page 21 of Mr. Kahrs' report and continuing through page 23 is a discussion of statistical regression, in rebuttal to Cox's regression. *Gaitan Decl.* Exh. B at pp. 21-23. An analysis and discussion by Mr. Kahrs of statistical regression would likely aid the jury and qualify as expert testimony, <u>but it was not written by Mr. Kahrs</u>. Mr. Fleissig—alone—*did all the work on regression*:

> Kahrs. *Dr. Fleissig is a Ph.D. in statistics, so I asked him to dig into the nuts and bolts of Dr. Cox's regression analysis.*

*Id.* at Exh. C at 55:25-56:2.

> Q. … who ran the regressions?
> Kahrs. **It's Dr. Adrian Fleissig.**
> . . .Q. Anyone help Adrian on the regressions?
> Kahrs. **No.**

*Id.* at 155:14-21; 156:18-21; 158:5-10 (Emphasis Added). As admitted, Dr. Fleissig, not Mr. Kahrs, is the person that worked on the methodologies. *Id.* at 258:24-259:5. Dr. Fleissig did not submit a report, nor was he disclosed as a testifying expert. Exh. N. A court may permit an expert to testify about an expert report even if that report was not drafted entirely by him, if the expert "substantially participated" in the preparation of his report.[5] *Bekaert Corp. v. City of Dyersburg*, 256 F.R.D. 573, 579 (W.D. Tenn. 2009). This is not such a case. Mr. Kahrs' "participation" in the statistical regression of the Report was to take what Dr. Fleissig wrote and put it in the report:

> Kahrs. *He only worked on the regression area and sent me kind of a draft of what he thought the key factors were. And then I went through his draft, edited it and put it in the report."*

*Gaitan Decl.* Exh. C at 160:24-161:2. That hardly qualifies as substantial participation. Further, Mr. Kahrs' deposition testimony is to be contrasted with a small but very significant statement in his report: "*I run various regressions.*" *Gaitan Decl.* Exh. B pg. 23. That is a falsehood.

Mr. Kahrs testimony on an outlier of sales is incomplete. His opinion that a one-time spike in sales affects future predicted sales is very superficial; it says no more than that. Without more, there is no methodology. his report, Mr. Kahrs stops his analysis at October (*Gaitan Decl.* Exh. B

---

[5] In this regard, Plaintiff submits that "substantial participation" is measured by the extent of input on each specific subject matter, not the total number of pages.

1    pg. 21; Exh. C 186:13-17) which eliminates altogether the later sales in November-December. A
2    reasonable jury would be left to wonder about those sales, what would the projection be if those
3    sales occurred in other months or were spread over 2-3 months.

4          Mr. Kahrs is not qualified as a consumer behavior expert. There is no evidence that Mr.
5    Kahrs has any qualifications to opine on what consumers would think and/or how they would
6    react to various stimuli. To give opinion testimony the witness must be qualified as an expert by
7    specialized knowledge, skill, experience, training or education **in the particular field or subject**
8    on the subject of his proposed testimony.  FRE Rule 702.

9          More than once Mr. Kahrs' report incorrectly asserts that actual confusion is required for
10   an award of lost profits. *Gaitan Decl.* Exh. B at pp 9-11. Contrary to what Mr. Kahrs says, actual
11   confusion and actual damage, i.e. actual lost sales, is not required.  In this Circuit. *Southland Sod*
12   *Farms v. Stover Seed Co.*  108 F.3d 1134, 1146 (9th Cir. 1997). He may correctly repeat what is
13   stated in a treatise, (which he admitted he did not personally review in drafting this report (*Id.* at
14   Exh. C at 67:10-19)) but the treatise does not state the controlling law in this circuit.  Basing an
15   opinion on incorrect or inapplicable information does not save an expert's testimony.

16         Mr. Kahrs' opinion on no lost profits is admittedly not based on sound methodology, as
17   required.  "*I didn't rely – I didn't review any specific documents. It's a very subjective issue is did*
18   *they know they were two companies.  Either they did or they didn't*."  *Id.* at Exh. C pg. 62:8-12.

### IV.    CONCLUSION

20         For all the reasons set forth above, SINCO respectfully moves the Court to bar XINGKE
21   from offering "expert" damages opinions and testimony of Henry J. Kahrs and Adrian Fleissig,
22   where XINGKE has designated only Mr. Kahrs to testify to SINCO damages.

Dated: September 2, 2021                    Respectfully submitted,

                                      ROPERS MAJESKI PC

                                      BY: */s/ Lael D. Andara*
                                           LAEL D. ANDARA
                                           ROBIN M. PEARSON
                                           DANIEL E. GAITAN
                                           *Attorneys for Plaintiff*
                                           SINCO TECHNOLOGIES PTE LTD

DOUGLAS A. WINTHROP (SBN 183532)
Douglas.Winthrop@arnoldporter.com
JEREMY T. KAMRAS (SBN 237377)
Jeremy.Kamras@arnoldporter.com
JOSEPH FARRIS (SBN 263405)
Joseph.Farris@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: 415.471.3100
Facsimile: 415.471.3400

WHGC, P.L.C.
Jeffrey C.P. Wang (SBN 144414)
*JeffreyWang@WHGCLaw.com*
Michael G. York (SBN 89945)
*MichaelYork@WHGCLaw.com*
Kathleen E. Alparce (SBN 230935)
*KathleenAlparce@WHGCLaw.com*
Jessica A. Crabbe (SBN. 263668)
*JessicaCrabbe@WHGCLaw.com*
1301 Dove Street, Suite 1050
Newport Beach, CA 92660
Tel. (949) 833-8483; Fax: (866) 881-5007

*Attorneys for Defendants* XINGKE ELECTRONICS (DONGGUAN) CO., LTD., formerly known as SINCO ELECTRONICS (DONGGUAN) CO., LTD., LIEW YEW SOON aka, MARK LIEW, NG CHER YONG. aka CY NG, and MUI LIANG TJOA aka ML TJOA

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| SINCO TECHNOLOGIES PTE LTD., <br><br> Plaintiff, <br><br> vs. <br><br> SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS TECHNOLOGY CO., LTD.; SINCOO ELECTRONICS TECHNOLOGY CO., LTD.; MUI LIANG TJOA (an individual); NG CHER YONG aka CY NG (an individual); and LIEW YEW SOON aka MARK LIEW (an individual), <br><br> Defendants. | Case No. 3:17-CV-05517-EMC <br><br> Action Filed: September 22, 2017 <br><br> **OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1** <br><br> Date: October 5, 2021 <br> Time: 3:00 p.m. <br> Place: Courtroom 5, 17th Floor <br><br> **Judge:   Honorable Edward M. Chen** <br><br> **Trial:   November 1, 2021** |

## I. SUMMARY OF OPPOSITION TO MOTION IN LIMINE NO. 1

In its Motion in Limine No. 1 ("Motion" or "Mot."), Plaintiff SinCo Technologies PTE Ltd. ("SinCo SG") repeats, in summary fashion, the same arguments it made in its previous and premature Motion to Strike the Expert Report of Mr. Kahrs. ECF 384 ("Motion to Strike"). Its arguments are just as faulty as before, and the Court should deny SinCo SG's Motion: (1) Kahrs' opinion is consistent with the law in this Circuit that, to obtain damages for trademark infringement in the form of lost profits, SinCo SG carries the burden of proving with "reasonable certainty" that the alleged lost profits were caused by the alleged trademark infringement; (2) Kahrs directed and substantially participated in the preparation of the regression analyses included within his report, and his use of an assistant to conduct calculations is therefore no barrier to his testimony concerning those specific calculations; (3) SinCo SG's disagreement with some of Kahrs' assertions regarding outlier sales is properly the subject of cross-examination, rather than a basis for exclusion; (4) Kahrs does not intend to testify as a "consumer behavior expert" and does not purport to be qualified as such (just as Plaintiff's expert Dr. Alan Cox also lacks such expertise); and (5) as an expert rebuttal witness, Kahrs is permitted to criticize Cox and identify flaws in Cox's methodologies.

## II. LEGAL STANDARD

Expert rebuttal testimony "is intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii); *see also Huawei Techs., Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 996 (N.D. Cal. 2018) ("The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party.") (citation omitted). A "defendant may present expert rebuttal of the plaintiff's expert 'by putting forth its own expert who either claims that (1) the plaintiff's expert's methodology was conducted improperly in some way; or (2) the ultimate conclusion the plaintiff's expert makes is flawed because a superior methodology provides a different result.'" *Sumotext Corp. v. Zoove, Inc.*, No. 16-cv-1370-BLF, 2020 WL 264701, at *3 (N.D. Cal. Jan. 17, 2020) (quoting *TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, No. 15-cv-2370-JVS, 2016 WL 7042085, at *5 (C.D. Cal. Aug. 17, 2016)).

### III. ARGUMENT

#### A. Kahrs' opinion is consistent with Ninth Circuit law.

SinCo SG contends that Kahrs' opinions "are anchored in the legal conclusion that there was no trademark infringement" and "incorrectly assert[] that actual confusion is required for an award of lost profits." Mot. at 5-6. This mischaracterizes Kahrs' opinion. Kahrs' opinion is based on the simple and incontrovertible legal principle that recovery of lost profit damages must be proven with "reasonable certainty." Farris Decl., Ex. A ("Kahrs Report") at 11; *id.*, Ex. B ("Kahrs Depo.") at 117:6-12. And while evidence of actual confusion may not in all cases be required to prove causation, evidence of the absence of confusion certainly disproves causation.

This is consistent with the law in this Circuit. "Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), governs the award of monetary remedies in trademark infringement cases and provides for an award of … any damages sustained by the plaintiff." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir. 1993), *abrogated on other grounds*, *Sun Earth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016). "Damages are typically measured by any direct injury which a plaintiff can prove, as well as any lost profits which the plaintiff would have earned *but for* the infringement." *Id*. at 1407 (emphasis added). Although "damages are not rendered uncertain because they cannot be calculated with absolute exactness, a reasonable basis for computation must exist." *Id*. (internal quotation marks omitted). In other words, "[c]ompensatory damages must be established with 'reasonable certainty' and not be based on speculation or conjecture." *Am. Auto. Ass'n of N. Cal., Nev. & Utah v. Gen. Motors, LLC*, 367 F. Supp. 3d 1072, 1105 (N.D. Cal. 2019) (citing *McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 361 (9th Cir. 1996)).

Thus, to establish actual damages in an infringement action, a plaintiff must identify at least some measurable loss arising from the alleged trademark infringement. *Blau v. YMI Jeanswear, Inc.*, No. 02-cv-9511-FMC, 2004 WL 5313967 (C.D. Cal. Jan. 2, 2004) is instructive. Blau was the plaintiff in a trademark action concerning its registered mark "U.B.U." for certain apparel. *Id.* at *1. Notwithstanding evidence that consumers mistakenly purchased Defendant YMI's apparel also referencing "U.B.U.," the court granted summary judgment in favor of the defendant: "[T]here is no evidence that the mistaken purchase of [Defendant] YMI jeans damaged

1  [Plaintiff], only that it benefitted Defendant YMI.  This is not a situation where the customer
2  intended to purchase U.B.U. jeans, but instead was induced to purchase YMI jeans." *Id*. at *4.
3  Thus, because Blau failed to identify specific customers that were lost due to YMI's alleged
4  trademark infringement, the court granted summary adjudication on the issue of actual damages in
5  favor of the defendant.  *Id*.; *see also*, *Am. Auto. Ass'n of N. Cal., Nev. & Utah,* 367 F. Supp. 3d at
6  1106-08 (granting summary judgment in favor of defendant; although the plaintiff identified a few
7  examples of consumer confusion, there was no evidence that consumers selected the defendant's
8  service out of confusion).

9      At the heart of these holdings is the principle that a trademark holder is not entitled to a
10 windfall merely because there was unauthorized use of its trademark.  If the trademark holder
11 seeks damages in the form of lost profits, it carries the burden of proving causation with
12 "reasonable certainty."  That is, "any lost profits which the plaintiff would have earned *but for* the
13 infringement."  *Lindy Pen Co.*, 982 F.2d at 1407 (emphasis added).  Courts in this Circuit,
14 therefore, do not hesitate to dispose of claims for damages under the Lanham Act when "the
15 Plaintiff has not presented any admissible evidence that it in fact has been injured or damage
16 calculations to support actual damages."  *See Sansi N. Am., LLC v. LG Elecs. USA, Inc.*, No. 18-
17 cv-3541-PSG, 2019 WL 8168069, at *10-11 (C.D. Cal. Nov. 14, 2019) (collecting cases and
18 granting summary judgment in favor of defendants on the issue of damages under the Lanham
19 Act).

20     Kahrs' opinion is therefore faithful to the law in this Circuit concerning causation.  In his
21 report, Kahrs states that, "in order to establish it is entitled to lost profits, SinCo [SG] must prove
22 that (1) it actually lost profits; (2) there is a causal connection between the Defendants' alleged
23 wrongful actions and the lost profits; and, (3) the amount of lost profits can be determined with
24 reasonable certainty." Kahrs Report at 10.  He properly criticizes Cox for neither basing his
25 opinion on evidence of customer confusion nor calculating SinCo SG's alleged lost profits by
26 customer, thus leaving the jury unable to disaggregate damages to the extent that it concludes
27 certain customers were not confused by the alleged trademark infringement. *Id.* at 11; Kahrs
28 Depo. at 144:10-12.

To illustrate this point, Kahrs highlights that Cox failed to even consider the possibility that SinCo SG lost business to XingKe not due to confusion—but due to legitimate competition or other reasons unrelated to any alleged trademark infringement. Kahrs Report at 19; Kahrs Depo at 101. Whereas Cox disregarded evidence in the record suggesting that SinCo SG's customers were well aware that SinCo SG and XingKe were separate companies, Kahrs considered that evidence and should therefore be permitted to provide an opinion on how the failure to consider that evidence impacts the reliability of Cox's conclusions regarding damages.[1] The jury will make the ultimate determination as to confusion, and Kahrs' testimony will aid them in addressing whether SinCo SG has proven that it suffered actual damages *caused* by any such confusion.

### B. Kahrs directed and substantially participated in the regression analysis.

SinCo SG also objects that Kahrs had a member of his staff, Dr. Adrian Fleissig, assist him with calculations included in his report. Mot. at 5. This objection is without merit. It is black letter law that "[a]n expert witness is permitted to use assistants in formulating his expert opinion, and normally [the assistants] need not themselves testify." *Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 612 (7th Cir. 2002). Experts may rely on facts or data provided by others. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1142 (9th Cir. 1997) (the "fact that [an expert's] opinions are based on data collected by others is immaterial"). Use of assistants is proper as long as the expert also "substantially participate[s] in the preparation of his report." *Accentra Inc. v. Staples, Inc.*, No. 07-cv-5862-ABC, 2010 WL 11459205, at *4 (C.D. Cal. Oct. 7, 2010) (*quoting Manning v. Crockett*, No. 95 C 3117, 1999 WL 342715, at *3 (N.D. Ill. May 18, 1999)).

Here, Kahrs' use of assistance from Dr. Fleissig easily meets this criteria. SinCo SG cherry picks quotations without context from Kahrs' deposition to misleadingly paint him as an absent witness who merely adopted another's findings, but that was not the case. Instead, a simple

---

[1] Consider one example where SinCo SG's own witness admitted that certain business was not lost as the result of confusion: Minh Chi Nguyen, SinCo SG's North American Corporate Vice President, testified in his deposition SinCo SG lost the Lenovo/Motorola account, not due to any confusion, but because XingKe directly approached Lenovo and "gave better pricing" than SinCo. Kahrs Report at 18-19. As another example: Intel has been on express notice that XingKe and SinCo were "completely separate[]" since at least 2013 because XingKe told it that expressly. *Id.* at 18. *See also* Defendants' Motion in Limine No. 1 (setting forth additional, similar examples).

reading of Kahrs' deposition and report reveals that Kahrs directed Fleissig's work and consulted with him during this process, as he noted in his expert report, where Kahrs disclosed that "[t]he professional staff at Baker Tilly assisted me with this assignment" and that staff members "worked at my direction and under my supervision." Kahrs Report at 5.

Further, SinCo SG ignores entirely the supplemental Kahrs declaration Defendants submitted in opposition to SinCo SG's prior Motion to Strike in an abundance of caution, which confirmed that Fleissig, who was an employee on Kahrs' staff at that time, conducted regression analyses under Kahrs' "direction and supervision." Farris Decl., Ex. C ("Kahrs Supplemental Declaration"), ¶¶ 11-13. The Kahrs Supplemental Declaration further confirmed that it was Kahrs' standard practice to regularly consult with his assistants whenever they assisted him on a matter pertaining to an expert report, and that Kahrs reviewed Fleissig's regression analyses with him in the office, including reviewing the raw data from Cox's underlying spreadsheets and the subsequent graphs that were generated using standard Excel processes. *Id*. For these reasons, SinCo SG's attempt to analogize this case to *Bekaert Corp. v. City of Dyersburg*, 256 F.R.D. 573 (W.D. Tenn. 2009) also fails. Unlike that case, where the expert merely rubber-stamped a declaration that was prepared entirely by the defendant's counsel, Kahrs was substantially involved and reviewed all of Fleissig's work. Additionally, whereas the defendant and expert in *Bekaert* "failed to address the issue of who prepared [the expert declaration]," (*Id.* at 579), here Defendants have been fully transparent about Fleissig's involvement with Kahrs' report. *See* Kahrs Depo. at 157:22-158:8.

Finally, SinCo SG knew that Fleissig had conducted the regression analysis, but for more than a year never sought to depose him or otherwise seek additional discovery; had it done either it could have dispelled any uncertainty as to these facts without the need for a meritless motion. *See BladeRoom Grp. Ltd. v. Facebook Inc.,* No. 5:15-cv-1370, 2018 WL 1611835, at *4 (N.D. Cal. April 3, 2018) ("Instead of seeking exclusion of the reports as 'ghost written' by others, BladeRoom could have solicited discovery from Keystone employees who assisted Facebook's experts in accordance with this court's order permitting a deposition by written questions.").

**C.    Kahrs' opinion on the significance of the outlier sales is proper rebuttal testimony.**

In critiquing Cox's own regression analysis, pursuant to which he calculates lost profits, Kahrs notes that SinCo SG's sales in late 2015 should be excluded as an outlier. SinCo SG argues this opinion is "incomplete" or lacks methodology. Not so. Outliers are extreme datapoints and "can significantly impact the slope of the regression line, and ultimately, distort the results of an otherwise accurate regression analysis." *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1299 (N.D. Fla. 2017). Indeed, economic and damages experts are frequently *excluded* from testifying for basing their testimony on unreliable data, such as outlier data points (like those included by Cox in reaching his opinions). *Navelski*, 244 F. Supp. 3d at 1298 (excluding an expert's testimony on the decline in real-estate values for including outlier sale of a home for $64,500 because this price differed "markedly from all other transactions during the relevant time period," which ranged from "$160,000 to $248,000").

Here, Kahrs explicitly accounts for the potential impact of outliers by providing multiple regression models—including one that excludes the months of November and December 2015 as outliers that would "severely distort[] the underlying trend in the sales data." Kahrs Report at 21; Kahrs Depo. at 186:13-17. This was because the $11 million sales figure for November 2015 sharply deviated from the typical sales SinCo SG reported from January 2010 through September 2015, which regularly ranged anywhere from $1 million to a little over $7 million. *See* Kahrs Report, Graph 3. Kahrs' exclusion of this outlier was therefore reasonable and appropriate. Moreover, SinCo SG's argument that Kahrs' exclusion of the November and December 2015 sales would leave the jury to "wonder about those sales" ignores the fact that Kahrs provided multiple regression models, including an alternative regression model that *does* include the months of November and December 2015. Thus, there is no merit to SinCo SG's assertion that Kahrs' expert report is "incomplete." *See* Kahrs Report., Graph 3.

**D.    Kahrs does not intend to testify as an expert in "consumer behavior".**

SinCo SG seeks to exclude some (unspecified) portion of Kahrs' testimony because Kahrs is not a "consumer behavior expert." Mot. at 6. This is a red herring—Kahrs has never claimed to

be a consumer behavior expert, and Defendants do not intend to qualify him as one. He is not opining on the science of how consumers "would react" to "stimuli," as SinCo SG argues without any support in the record. *Id*. Indeed, Kahrs would have no reason to render such opinions because the customers in this case are not traditional "consumers" such as one would expect to find in a mass market trademark case—they are sophisticated business entities doing substantial commercial transactions.

What Kahrs does intend to do is provide opinions concerning how damages may or may not be affected by the existence of confusion or lack of confusion by relevant customers. As discussed above at length, that confusion is relevant to damages, and is therefore certainly based on a review of evidence and "sound methodology." *See* Section III.A, *infra*; *see also Am. Auto. Ass'n of N. Cal., Nev. & Utah*, 367 F. Supp. 3d at 1107 (excluding opinion of expert in trademark infringement case where opinion provided "no details as to who specifically was confused, when the instance occurred, or how many times that type of confusion occurred."); *Blau*, 2004 WL 5313967, at *4 (excluding opinion of expert in trademark infringement case where expert failed to "identify specific accounts or customers that were lost due to Defendants' alleged infringement of Plaintiff's mark."); *see also See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 978 F. Supp. 2d 1053, 1069 (C.D. Cal. 2013) ("Dr. Burton's opinions are not impermissibly speculative. As a rebuttal witness, he may rely largely on other expert reports, as he does, and point out flaws in the methodologies or conclusions.").

IV.  **CONCLUSION**

Defendants respectfully requests that the Court deny Plaintiff's Motion in Limine No. 1.

Dated:  September 13, 2021.                 ARNOLD & PORTER KAYE SCHOLER LLP

By:  /s/ *Douglas A. Winthrop*
DOUGLAS A. WINTHROP

*Attorneys for Defendants*
XINGKE ELECTRONICS (DONGGUAN) CO., LTD., formerly known as SINCO ELECTRONICS (DONGGUAN) CO., LTD., LIEW YEW SOON aka, MARK LIEW, NG CHER YONG. aka CY NG, and MUI LIANG TJOA aka ML TJOA