**ROPERS, MAJESKI, KOHN & BENTLEY**
LAEL D. ANDARA (SBN 215416)
lael.andara@ropers.com
ROBIN PEARSON (SBN 146704)
robin.pearson@ropers.com
DANIEL E. GAITAN (SBN 326413)
daniel.gaitan@ropers.com
545 Middlefield Road, Suite 175
Menlo Park, CA 94025
Telephone:    (650) 364-8200
Facsimile:    (650) 780-1701

*Attorneys for Plaintiff*
SINCO TECHNOLOGIES PTE LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SINCO TECHNOLOGIES PTE LTD, <br><br> Plaintiff, <br><br> v. <br><br> SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGLE ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS TECHNOLOGY CO., LTD.; SINCOO ELECTRONICS TECHNOLOGY CO., LTD.; MUI LIANG TJOA (an individual); NG CHER YONG aka CY NG (an individual); and LIEW YEW SOON aka MARK LIEW (an individual), <br><br> Defendants. | Case No. 3:17CV5517 <br><br> **PLAINTIFF SINCO TECHNOLOGIES PTE LTD'S MOTION FOR EXCLUDING EXTRINSIC EVIDENCE** <br><br> PRETRIAL HEARING <br> Date: October 5, 2021 <br> Time: 2:30 p.m. <br> Place: Courtroom 5 – 17th Floor <br> Hon. Edward M. Chen <br><br> TRIAL DATE <br> November 1, 2021 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiff, SINCO TECHNOLOGIES PTE LTD ("SINCO"), moves, pursuant to Rules 26 (d), 26 (e), and 37(c) of the Federal Rules of Civil Procedure, for an Order excluding extrinsic evidence, and purported testimony produced by Defendants XINGKE ELECTRONICS (DONGGUAN) CO., LTD formerly known as SINCO ELECTRONICS DONGGUAN) CO. LTD., MUI LIANG TJOA aka ML TJOA, NG CHER YONG aka CY NG, and LIEW YEW SOON aka MARK LIEW (hereinafter "Defendants") and Xu Shugong and Gao Bingyi (hereinafter "Non-Parties") _to contradict the January 2, 2012 signed written Supply Agreement_ ("Written Agreement") and subsequent written purchase Orders. _Declaration of Daniel Gaitan In Support of this Motion (Gaitan Decl.)_ Exhibit 1. This motion is noticed to be heard on October 2, 2021, in Courtroom 5 located on the 17th Floor, before the Honorable Judge Edward M. Chen, or as early as possible thereafter.

**MOTION IN *Limine* No. 3**

Now comes Plaintiff SINCO and files this Motion in *Limine* ("Motion") respectfully moving this Court for an Order excluding extrinsic evidence, and purported testimony produced by Defendants and Non-Parties *to contradict an express written agreement*. The facts at issue in this Motion are very straightforward. The Written Agreement was clear and unambiguous as to the Defendants scope of use of SINCO's intellectual property. Article 7.1(7.1.1-7.1.5) and 7.2 of the Written Agreement identifies SINCO's "Intellectual Property Rights". *Id*. at Exh. 1. Moreover, SINCO's standard terms of agreements at provision 10 further substantiates Defendants use of SINCO trademarks. Id. at Exh. 8. For example, it states: "[e]xcept as otherwise provided in this Purchase Order no use of any Confidential Information is permitted, and no grant under any Intellectual Property Rights of SINGO is given or intended, including any license implied or otherwise." Exh. 2. Thus, the agreements are clear and unambiguous and in directly contradict with Defendants claim that, Plaintiff permitted them to "*use the "Sinco" name, trademarks (or "marks"), colors, and references for all internal and external purposes, freely and without any restrictions*." Such a claim is a violation of the parol evidence rule and should be excluded.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff SINCO a Singaporean company initiated this lawsuit in September 2017, a year after filing a related lawsuit in State Court. [ECF 1] At trial, Defendants will attempt to offer purported testimony to confuse and mislead the jury, testimony that occurred prior to the January 2, 2012 Written Agreement and subsequent Purchase Orders ("POs") signed by XINGKE. *(Gaitan Decl. Exh. 1)*

The uncontested Written Agreement and subsequent POs are consistent with Bryan Lim **April 5, 2019** deposition testimony as to the pre-2012 factory use being limited to use of the "SINCO" trademarks as it related to support the SINCO's projects and employees stationed on site. However, any purported hearsay testimony regarding oral agreements[1] or communications prior to this date became moot as any alleged agreements became trumped by the Written Agreements XINGKE agreed to, which expressly embodied the party's intent. *Id.* Again, the previous dispute about an oral agreement is neither here nor there, because the Written Agreement superseded any oral communications. *Id.*

It is undisputed that on **January 2, 2012**, XINGKE signed an express written Supply Agreement with SINCO. *Id.* Moreover, upon entering into the Written Agreement, SINCO and XINGKE entered into a series of written Purchase Orders for the provision of goods from XINGKE, as seller, to SINCO, as buyer subject to written terms and conditions. *Id.* Ex. 2-7 and 8. Again, the above Written Agreement defined the party's contractual rights and acknowledged the use of additional written agreements in the form of purchase agreements, which XINGKE continued to legally accept, by its corporate stamp of SINCO's purchase Orders and likewise expected and received hundreds of millions of dollars in payment for such work through 2017. *Id. at Exh. 1.* Moreover, *Article 7.6 and 3.3* expressly says any amendment or modification must be done in writing. *Id.*

---

[1] SINCO has a seperate *In Limine* motion to exclude the Hearsay basis to support Defendants self-serving claims.

## II. LEGAL STANDARD

### A. EXTRINSIC EVIDENCE CONCERNING A CONTRACTUAL AGREEMENT IS INADMISSIBLE UNDER THE PAROL EVDIENCE RULE

The standard governing whether extrinsic evidence can be admissible at trial is well-settled: The parol evidence rule "generally prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to the terms of an integrated written instrument." Kentwool Company v. NetSuite Inc (N.D. Cal., Feb. 18, 2015, No. 14-CV-05264-JST) citing Casa Herrera, Inc. v. Beydoun, 32 Cal.4th 336, 343 (2004); Riverisland Cold Storage, Inc. v. Fresno–Madera Prod. Credit Ass'n, 55 Cal.4th 1169, 1174 (2013) ("[W]hen the parties put all the terms of their agreement in writing, the writing itself becomes the agreement. The written terms supersede statements made during the negotiations ... to ensure that the parties' final understanding, deliberately expressed in writing, is not subject to change.").

The "threshold integration issue" referred to in Royal Industries v. St. Regis Paper Co., 420 F.2d 449, 452 (9th Cir. 1969), need only be resolved in order to decide whether or not the parol evidence rule precludes admission of oral evidence that would add to or vary the terms of a written agreement. Enrico Farms, Inc. v. H. J. Heinz *Co.* 629 F.2d 1304, 1306(9th Cir. 1980)

The Court held that when a writing is not intended to embody the complete agreement of the parties, parol evidence may be admitted to prove a matter "on which the document is silent and which is not inconsistent with its terms." Id. There, they found no support for and reject Palladino's contention that, absent an integration, parol evidence may be admitted to directly contradict a written agreement. *Id.*

In *Maljack,* the court reaffirmed both the California and Federal rule as to excluding evidence that contradicts a fully integrated agreement. Maljack Productions, Inc. v. GoodTimes Home Video Corp. 81 F.3d 881, 886 (9th Cir. 1996). In *Maljack,* the court stated cited *Jones–Hamilton Co. v. Beazer Materials & Servs., Inc.,* 973 F.2d 688, 692 (9th Cir.1992) (applying California rule) (…may exclude evidence which tends to prove a meaning of the contract to which the language "is not reasonably susceptible"); United States v. Triple A Mach. Shop, Inc.,

857 F.2d 579, 585 (9th Cir.1988) (applying federal rule) (parol evidence cannot contradict contract that is fully integrated and unambiguous).

Thus, "[u]nder [the] rule[,] the act of executing a written contract ... supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." (BMW of North America, Inc. v. New Motor Vehicle Bd. 162 Cal. App. 3d 980, 990(1984).);see also Hoston v. J. R. Watkins Co. 300 F.2d 869, 872 (9th Cir. 1962) The result of these settled rules is that "**[e]xtrinsic evidence cannot be admitted to prove what the agreement was**, not for any of the usual reasons for exclusion of evidence, but because as a matter of law the agreement is the writing itself. [Citation.]" (Id. (emphasis added).) Because it cannot be admitted, "[s]uch evidence is legally irrelevant and cannot support a judgment." (Marani v. Jackson (1986) 183 Cal.App.3d 695, 701.)

Moreover, "California courts have consistently held that '[t]he parties' undisclosed intent or understanding is irrelevant to contract interpretation.'" (Microsoft Corporation v. Hon Hai Precision Industry Co., Ltd. (N.D. Cal., Aug. 25, 2020, No. 19-CV-01279-LHK) 2020 WL 5080319, at *11 (quoting Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc., 109 Cal. App. 4th 944, 956 (2003)); San Pasqual Band of Mission Indians v. State of California, 241 Cal. App. 4th 746, 757 (2015).  That is because California recognizes the objective theory of contracts. (Newport Beach Country Club, supra, 109 Cal. App. 4th at 956.) Under that theory, "it is the outward manifestation or expression of assent that is controlling." (Berman v. Bromberg 56 Cal.App.4th 936, 948(1997) (citing Titan Group, Inc. v. Sonoma Valley County Sanitation Dist. 164 Cal.App.3d 1122, 1127(1985).) Thus, in interpreting a contract, "'[t]he true, subjective, but unexpressed intent of a party is immaterial and irrelevant.'" (Id. (quoting Vaillette v. Fireman's Fund Ins. Co. 18 Cal.App.4th 680, 690(1993))

Courts have routinely refused to admit evidence of a contracting party's undisclosed intent subjective (San Pasqual Band of Mission Indians v. State of California 241 Cal.App.4th 746 (2015) (finding that testimony by the chairperson of a party that the party did not intend to waive any right to obtain damages in agreeing to a contractual provision was irrelevant to interpretation of the contract); Iqbal v. Ziadeh 10 Cal.App.5th 1, 12(2017)  (finding testimony by counsel for a

party that his intent in drafting a release was that it would apply to the defendant was irrelevant, as there was "no evidence counsel expressed this intention to anyone").)

Thus, under the parol evidence rule the Defendants cannot be permitted to admit any evidence, oral or documentary, by the Defendants or Non-Parties to contradict or vary the terms of the uncontested **January 2, 2012** Written Agreement in any way and any such testimony or evidence should be excluded completely. *Gaitan Decl.* at Exh. 1

### B. EXCEPTIONS TO THE PAROL EVIDENCE RULE DO NOT PERMIT TESTIMONY OF SUBJECTIVE INTENT OR UNDERSTANDING

XINGKE is barred to offer purported evidence of a prior oral agreement, which is inconsistent and superseded by the Written Agreement and subsequent purchase orders. *Id.* "Unless the contract otherwise expressly provides, a contract in writing may be modified by an oral agreement supported by new consideration." *Halvorsen v. Aramark Uniform Services, Inc.* (1998), 65 Cal.App.4th 1383, 1388–89. The parties intended there to be no confusion, which is why they created an express Written Agreement to supersede any prior oral agreements or communications. *Gaitan Decl* at Exh. 1. While the law may permit modification of a written contract by an oral agreement, the facts presented here do not rise to the level of an agreement to modify the contract.

This is further illustrated by the fact that SINCO and XINGKE included provisions emphasizing that any modification must be in writing. The Written Agreement specifically states at Article 7.6:

> *Any amendment or modification to this Agreement shall become effective only when made with **written consent signed by duly authorized representatives of each party**. Id.*

Moreover, Pursuant to the Supply Agreement Article 3.3:

> *No oral or written additional or different provisions proposed by Seller in any acceptance, confirmation or acknowledgement of a P/O or a D/N **shall apply unless agreed to by Buyer in writing**. Id.*

Thus, for these purposes, Defendants may not claim there was an oral agreement prior to that changed the fundamental terms of their written agreement. Defendants may not argue that there was an implied-in-fact agreement. California law is that "factors supporting an implied-in-

fact agreement are irrelevant" when, as here, there is an express agreement. *Halvorsen v. Aramark Uniform Services, Inc.* (1998) 65 Cal.App.4th 1383, 1388–89. It is well-settled that an action based on an implied-in-fact contract cannot lie where there exists between the parties a valid express contract covering the same subject matter. *Lance Camper Manufacturing Corp. v. Republic Indemnity Co.* (1996) 44 Cal.App.4th 194, 203.

Notably, the limited exception to the application of the parol evidence rule occurs when the express contractual language is ambiguous, meaning it is "susceptible to more than one reasonable interpretation." (Pacific Gas & Electric Co., supra, 69 Cal. 2d at 39-40.) In such situations, the trial court may, in appropriate circumstances, admit some extrinsic evidence for the limited purpose of interpreting the contract. (*Id.*)

Even if the Court finds that the uncontested Written Agreement is reasonably susceptible to XINGKE's proposed interpretation, the scope of extrinsic evidence that can properly be admitted at trial is nevertheless limited. See Hollywood Foreign Press Assoc. v. Red Zone Capital Partners II, 870 F. Supp. 2d 881, 917 (C.D. Cal. 2012) ("The use of extrinsic evidence is limited."). "Admissible extrinsic evidence includes: (1) the circumstances, under which it was made and the matter to which it relates; (2) the parties' statements during negotiations and communicated intent; (3) the parties' 'course of dealing' and 'course of performance,' including pre-dispute conduct; and (4) usage of trade. Id. at 917. Any extrinsic evidence offered outside of what can properly be admitted should be excluded.

The limited scope of extrinsic evidence that could possibly be admitted does not include a party's testimony as to its undisclosed subjective intent in entering an agreement or its subjective understanding of the written agreement that is objectively material different that the party's unspoken understanding. As discussed above, courts routinely disregard such testimony as "'irrelevant to determining the meaning of contractual language.'" (San Pasqual, supra, 241 Cal. App. 4th at 757 (quoting Berman, supra, 56 Cal.App.4th at p. 948).) This means that such evidence cannot support the first step of the analysis of disputed contractual language to determine whether there is any ambiguous language. Specifically, in San Pasqual, the California appellate court confirmed that proffered evidence of subjective intent "fails, under the first step of

our analysis, to qualify as relevant evidence." (Id.) Accordingly, testimony of subjective intent or understanding of an agreement is not relevant or admissible, whether for purposes of determining whether a contractual ambiguity exits, or the interpretation of the same. All such testimony should thus be excluded completely.

To the extent XINGKE seeks to present appropriately limited extrinsic evidence regarding the uncontested January 2, 2012 Written Agreement, such evidence must first be presented as a proffer to the Court, only, not to the jury for the Court to determine whether, in light of such proffered extrinsic evidence, the Court determines there is any contractual ambiguity. Only if (and after) the Court determines any contractual ambiguity exists should the Court admit such extrinsic evidence into evidence, along with proper instruction to the jury reaffirming that such extrinsic evidence cannot change or vary the content of the applicable agreement, but may only be used to assess the intent of the parties in entering into the agreement.

### C. Extrinsic Evidence is Irrelevant and Prejudicial

The Federal Rules of Evidence ("FRE") provides that only relevant evidence is admissible. FRE 402; compare with Cal. Evid. Code § 352.) Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FRE 401. FRE 403 permits the court to exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or needless presentation of cumulative evidence. FRE 403.

Here, evidence, including testimony and exhibits regarding a prior oral agreement is irrelevant because (1) extrinsic evidence cannot be used to contradict the express terms of the Written Agreement, and (2) evidence of the alleged prior oral agreement regarding the Written Agreement will unnecessarily confuse and mislead the jury as the damages sought are all after the 2012 Supply Agreement. Evidence regarding an alleged oral agreement, which is founded o hearsay statements purportedly made by witnesses Defendants have excluded from this litigation, would not make the Written Agreement more or less probable. *Gaitan Decl.* at Exh. 1. The fact is, SINCO and Defendant XINGKE expressly signed the June 2, 2021 Written Agreement, which

they were obligated to follow:



*Gaitan Decl.* at Exh. 1. Moreover, the probative value of Defendants and the Non-Parties purported testimony is not strong, as proffered testimony has the potential of confusing the jury by unduly emphasizing on a non-issue, which as illustrated throughout this motion as having been superseded by a Written Agreement and subsequent POs.

### III. CONCLUSION

Based on the foregoing Defendants and Non-Parties cannot be permitted to admit any evidence, oral or documentary, prior to the Written Supply Agreements to contradict or vary the terms of the Written Supply Agreements and subsequent Purchase Orders. *Id.* at 1 -8. Again, any discussion regarding the alleged oral agreement became moot after **January 2, 2012,** when the parties entered into this Written Agreement, which is a further justification as to why the purported evidence regarding this prior oral agreement would be distracting, confusing, and irrelevant to the court.

Dated: September 3, 2021                    Respectfully submitted,

                                            ROPERS MAJESKI PC


                                            By:  */s/ Lael Andara*
                                                 LAEL D. ANDARA
                                                 ROBIN PEARSON
                                                 DANIEL E. GAITAN
                                                 Attorneys for Plaintiff
                                                 SINCO TECHNOLOGIES PTE LTD

| | |
|---|---|
| DOUGLAS A. WINTHROP (SBN 183532)<br>Douglas.Winthrop@arnoldporter.com<br>JEREMY T. KAMRAS (SBN 237377)<br>Jeremy.Kamras@arnoldporter.com<br>JOSEPH FARRIS (SBN 263405)<br>Joseph.Farris@arnoldporter.com<br>**ARNOLD & PORTER KAYE SCHOLER LLP**<br>Three Embarcadero Center, 10th Floor<br>San Francisco, CA 94111-4024<br>Telephone: 415.471.3100<br>Facsimile: 415.471.3400 | **WHGC, P.L.C.**<br>Jeffrey C.P. Wang (SBN 144414)<br>*JeffreyWang@WHGCLaw.com*<br>Michael G. York (SBN 89945)<br>*MichaelYork@WHGCLaw.com*<br>Kathleen E. Alparce (SBN 230935)<br>*KathleenAlparce@WHGCLaw.com*<br>Jessica A. Crabbe (SBN. 263668)<br>*JessicaCrabbe@WHGCLaw.com*<br>1301 Dove Street, Suite 1050<br>Newport Beach, CA 92660<br>Tel. (949) 833-8483; Fax: (866) 881-5007 |

*Attorneys for Defendants* XINGKE ELECTRONICS (DONGGUAN) CO., LTD., formerly known as SINCO ELECTRONICS (DONGGUAN) CO., LTD., LIEW YEW SOON aka, MARK LIEW, NG CHER YONG. aka CY NG, and MUI LIANG TJOA aka ML TJOA

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SINCO TECHNOLOGIES PTE LTD.,<br><br>　　　　　Plaintiff,<br><br>　　　vs.<br><br>SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS TECHNOLOGY CO., LTD.; SINCOO ELECTRONICS TECHNOLOGY CO., LTD.; MUI LIANG TJOA (an individual); NG CHER YONG aka CY NG (an individual); and LIEW YEW SOON aka MARK LIEW (an individual),<br><br>　　　　　Defendants. | Case No. 3:17-CV-05517-EMC<br><br>Action Filed: September 22, 2017<br><br>**OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 3**<br><br>Date:　　　October 5, 2021<br>Time:　　　3:00 p.m.<br>Place:　　　Courtroom 5, 17th Floor<br><br>**Judge:　Honorable Edward M. Chen**<br><br>**Trial:　November 1, 2021** |

## I. SUMMARY OF OPPOSITION TO MOTION IN LIMINE NO. 3

Plaintiff SinCo Technologies PTE Ltd. ("SinCo SG") has long taken the position that there was a verbal agreement enforceable over many years that permitted XingKe to use the name "SinCo" subject to alleged restrictions. In Motion in Limine No. 3, SinCo SG attempts to erase its prior position and seeks the exclusion of all "extrinsic evidence" that allegedly "contradicts" the written January 2, 2012 Supply Agreement ("2012 Supply Agreement") entered by the parties. This Motion suffers from multiple fatal deficiencies:

*First*, it is an improper motion for summary judgment in disguise based on a new theory of contract interpretation and not a proper motion in limine. The Motion should be denied for that reason alone. *Second*, it is contrary to the position that SinCo SG has taken throughout the case that there is an oral agreement—for which extrinsic evidence is relevant. Indeed, it is expressly contrary to Plaintiff's Motion for Partial Summary Judgment (ECF 248), which the Court denied, finding that there was an "oral license [that] was never reduced to a written contract" and that there were genuine issues of material fact, including as to the "nature and restrictions of the oral agreement." ECF 348 (Order Denying Partial Summary Judgment) at 3, attached hereto as Exhibit A to the Farris Declaration in Opposition to SinCo's Motion in Limine No. 3 ("Farris Decl."). *Third*, even if all of this were not true, SinCo SG's novel interpretation of 2012 Supply Agreement lacks any support in the contract—as that contract is not integrated and does not reference the oral agreement, exclusive dealing, restrictions on selling to customers in geographic areas, or any other terms that would unambiguously define the parties' relevant obligations with respect to trademark rights. *Finally*, the 2012 Supply Agreement *expired in 2013*. See 2012 Supply Agreement § 7.8. For any and all these reasons, the Motion should be denied.

## II. ARGUMENT

### A. The scope of relief requested by SinCo SG is inappropriate on a motion in limine.

"A motion in limine is not the proper vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing such motions has passed." *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013). Rather, "[a] motion in limine is a procedural mechanism to

1

1  limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d
2  1108, 1111 (9th Cir. 2009).  Generally, "[t]o exclude evidence on a motion in limine, the evidence
3  must be 'clearly inadmissible on all potential grounds.'" *Matrix Int'l Textile, Inc. v. Monopoly*
4  *Textile, Inc.*, No. CV 16-0084 FMO (AJWx), 2017 WL 2929377, at *1 (C.D. Cal. May 14, 2017)
5  (quoting *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004)).

6        Here, SinCo SG improperly seeks a dispositive ruling through a motion in limine.  For the
7  Court to grant SinCo SG's Motion, it would have to resolve multiple hotly disputed issues of fact,
8  including (i) whether there was an oral agreement *restricting* Defendants' use of SinCo SG's
9  trademarks, (ii) what the scope of that agreement was, (iii) whether that oral agreement was ever
10 reduced to an integrated written agreement, (iv) if so, whether that agreement expired, and (v) how
11 the alleged written agreement relates to the alleged oral agreement.  Indeed, the Court would have
12 to make findings of fact that are directly contrary to its Order on summary judgment—in which it
13 found that the scope of any agreement was subject to disputed factual issues.  *See* ECF 348; Farris
14 Decl., Ex. A.

15       This request to resolve factual disputes and weigh evidence concerning an oral agreement
16 is improper on a motion in limine, as it would essentially result in a dispositive ruling on the scope
17 of Defendants' rights with respect to the SinCo SG trademarks.  *See, e.g.*, *Peter B, Inc. v. P.*
18 *Schantz*, No. C 09-00360 JW, 2010 WL 11591775, at *3 (N.D. Cal. Nov. 5, 2010) (denying
19 motion in limine to preclude evidence of oral promises under parol evidence rule when the motion
20 was "premature, as the issue of whether the contract was fully integrated is a question of fact
21 better suited for determination by the jury at trial").

22       **B.**    **Extrinsic evidence concerning the alleged oral agreement is relevant and**
23             **admissible.**

24       SinCo SG has always taken the position that the parties entered an oral agreement wherein
25 Defendants were provided a license to use SinCo SG's trademarks.  *See, e.g.*, ECF No. 248–1 at
26 2:5–6, 5:2–4 (SinCo SG's motion for partial summary judgment, which asserts that "Defendants
27 were provided a limited oral license" and that "SinCo's owner, Bryan Lim, provided XingKe with
28 a geographically-limited license. . ."); Farris Decl., Ex. B at 52:4–8 (Deposition of Bryan Lim

describing the "handshake agreement" between XingKe and SinCo SG), Ex. A (Order Denying Partial Summary Judgment: "SinCo concedes that it provided XingKe with an oral agreement amounting to a geographically-limited license to use the trademark.  This oral license was never reduced to a written contract.  There are genuine issues of disputed material fact including . . . the nature and restrictions of the oral agreement . . ." (internal citation omitted)).  The scope of the license is thus central to resolution of SinCo SG's claims at trial.  The parties will need to rely on extrinsic evidence to establish facts relating to the terms of the license and, because the license was provided in an oral agreement and not a fully integrated written agreement, there is no bar on the introduction of parol evidence.  *In re Ankeny*, 184 B.R. 64, 71 (9th Cir. 1995) ("If a contract is not integrated, the parol evidence rule does not apply and the court can admit all evidence relevant to the parties' intent, including negotiations and prior agreements.").

Nor is there any support for SinCo SG's suggestion that Defendants intend to rely on extrinsic evidence of "undisclosed subjective intent" of the terms of the oral license.  *See* Mot. at 5.  Rather, Defendants intend to introduce properly admissible extrinsic evidence, such as objective evidence of course of dealing, admissions of SinCo SG, and other non-hearsay statements to support its contentions with respect to the scope of the oral license.  *See, e.g.*, Farris Decl., Ex. C (2007 email in which SinCo SG urges XingKe to use the "SinCo" logo), Ex. D (2013 email in which the parties dispute how XingKe should represent the relationship between the companies when making independent sales to Intel).  Such evidence is all relevant to the terms of any oral agreement and should be admitted.

    **C.**    **The 2012 Supply Agreement was not an integrated and unambiguous agreement on trademark rights and did not extinguish any prior oral agreement.**

SinCo SG's Motion asks the Court to find that the 2012 Supply Agreement was an integrated, unambiguous agreement concerning the scope of any trademark rights—such that it extinguished any prior oral agreement on trademark rights.  Mot. at 2 (deeming this a "threshold integration issue"); *see also Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 176 F.Supp.3d 949, 963 (E.D. Cal. 2016) ("The parol evidence rule applies only to an integrated written agreement . . . Contract law allows admission of extrinsic evidence to resolve an ambiguity, even when the contract is an integrated agreement.")

3

(internal quotations omitted).  There is no support for the premise that the 2012 Supply Agreement was an integrated agreement concerning trademark rights.

*First*, the 2012 Supply Agreement contains no integration clause—express or implied.  Nor does SinCo SG even argue that it does.  *See, e.g.*, *Rutherford v. Palo Verde Health Care Dist.*, No. ED CV13–01247 JAK (OPx), 2014 WL 12637902, at *6 (C.D. Cal. Nov. 25, 2014) ("Under California law, the factors to consider when determining whether a contract is integrated are: (i) the presence of an integration clause, (ii) the language and completeness of a written agreement, (iii) the terms of any alleged oral agreement and whether they contradict the terms of a written agreement, and (iv) whether the oral agreement might naturally be made as a separate agreement.").

*Second*, the 2012 Supply Agreement is not an unambiguous and complete agreement related to the parties' business relationship or any associated trademark rights.  Rather, the 2012 Supply Agreement provides specific terms to govern transactions between a "Buyer" (SinCo SG) and a "Seller" (XingKe) with respect to purchase orders issued by SinCo SG to XingKe during the agreed-upon one-year term, which expired on January 3, 2013.  It does not set forth the complete terms of the scope of any rights to use trademarks or make reference to extinguishing or modifying any prior agreements.  Nor does the 2012 Supply Agreement contain any more general recitals explaining how it was intended to apply with respect to the parties' years-long prior relationship.  In fact, it is apparent that it is a standard form to be used between a "Buyer" and "Seller," and there is no evidence it was written in contemplation of the existence of any prior oral agreements on trademark rights.  *See* 2012 Supply Agreement (header with blanks for "Buyer" and "Seller" with the parties' names filled in).  The only terms at all that even references a "trademark" are in Section 7.1.4, which states only that "Buyer shall remove Seller's company name, trademark, nameplate, part no., symbol and/or descriptive designs on the Product or the packaging which are rejected or returned by Buyer, or not products ordered or customized by Buyer."  The 2012 Supply Agreement is therefore silent on the scope of any trademark license or, at *most*, it temporarily modified the parties' alleged oral agreement as to the procedures for rejected goods—an issue that is irrelevant to the claims in this proceeding.

Accordingly, extrinsic evidence relating to the alleged oral agreement is properly admissible. *See, e.g.*, *Clark v. United States*, 341 F.2d 691, 694 n.4 (9th Cir. 1965) ("Where a portion only of the

contract between the parties has been reduced to writing it is proper to allow parol evidence as to the portion of the agreement not included in the writing."); *Priority Pharmaceuticals, Inc. v. Gulf Cost Pharmaceuticals*, No. 09-CV-1583-H (WMC), 2011 WL 13356075, at *2 (S.D. Cal. Mar. 8, 2011) (denying motion in limine to exclude extrinsic evidence of oral agreement where writing was not complete with respect to all the terms of the agreement); *U.S. ex rel. Prime Waterproofing Associates, Inc. v. Taylor*, No. CV 01-03460 DDP (BQRx), 2003 WL 25667622, at *1 (C.D. Cal. Jan. 15, 2003) (denying motion in limine to exclude all evidence referencing oral agreement where nature of oral and written agreement were "separate and distinct" and requesting party had "not established that the evidence sought to be excluded would contradict the terms" of the writing).

### D. The 2012 Supply Agreement expired by its express terms on January 3, 2013 and was not extended by the purchase orders.

***Finally***, even assuming, *arguendo*, that the 2012 Supply Agreement modified some part of the oral agreement, it did so only for a limited time. This is because the 2012 Supply Agreement ***expired*** under its own express terms and was only enforceable for a period of one year. *See* 2012 Supply Agreement § 7.8 ("This Agreement shall be effective for a term of one (1) year from the both parties' execution"). The Supply Agreement therefore expired on January 3, 2013. *Id.* Consequently, any argument by SinCo SG with respect to terms allegedly imposed under the 2012 Supply Agreement would apply only to the limited period of January 2, 2012 to January 3, 2013—a period in which SinCo SG is not even claiming harm or seeking damages. *See, e.g.*, Farris Decl., Ex. E (excerpt from Expert Report of SinCo SG's damages expert, Alan J. Cox, describing Defendants alleged harmful acts as "starting in 2015"). Thus, the period in which the 2012 Supply Agreement was enforceable is not even directly relevant to the claims at issue, unlike the oral license that remained even after the expiration of the 2012 Supply Agreement.

Inexplicably, SinCo SG ignores this provision entirely in its Motion and gives no reason or explanation for why the Court should issue an Order finding that a contract which expired under its express term is still enforceable. There is no such reason, and this too is an independent basis to deny the Motion.

## III. CONCLUSION

For the reasons given, Defendants respectfully request that the Court deny Plaintiff's Motion in Limine No. 3.

Dated: September 13, 2021.　　　　　　　ARNOLD & PORTER KAYE SCHOLER LLP

　　　　　　　　　　　　　　　　　　　By: /s/ *Douglas A. Winthrop*
　　　　　　　　　　　　　　　　　　　　　DOUGLAS A. WINTHROP

　　　　　　　　　　　　　　　　　　　*Attorneys for Defendants*
　　　　　　　　　　　　　　　　　　　XINGKE ELECTRONICS (DONGGUAN) CO., LTD., formerly known as SINCO ELECTRONICS (DONGGUAN) CO., LTD., LIEW YEW SOON aka, MARK LIEW, NG CHER YONG. aka CY NG, and MUI LIANG TJOA aka ML TJOA