1    LAEL D. ANDARA (SBN 215416)
     DANIEL E. GAITAN (SBN
2    326413) ROPERS MAJESKI PC
     1001 Marshall Street, 5th Floor
3    Redwood City, CA  94063

4    Telephone:    650.364.8200
     Facsimile:    650.780.1701
5    Email:        lael.andara@ropers.com
                   daniel.gaitan@ropers.com
6

7

8    Attorneys for Plaintiff
     SINCO TECHNOLOGIES PTE LTD

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12   SINCO TECHNOLOGIES PTE LTD,              Case No. 3:17CV5517

13                   Plaintiff,               **DECLARATION OF DANIEL E.
                                              GAITAN IN SUPPORT OF PLAINTIFF
14          v.                                SINCO TECHNOLOGIES PTE LTD'S**
                                              ***DAUBERT* MOTION TO STRIKE THE
15   SINCO ELECTRONICS (DONGGUAN) CO.,        EXPERT REPORT OF DEFENDANTS'**
     LTD.; XINGLE ELECTRONICS                 **DAMAGES EXPERT HENRY KAHRS**
16   (DONGGUAN) CO., LTD.; XINGKE             **AND TO PRECLUDE MR. KAHRS**
     ELECTRONICS TECHNOLOGY CO., LTD.;        **AND ADRIAN FLEISSIG FROM**
17   SINCOO ELECTRONICS TECHNOLOGY            **TESTIFYING AT TRIAL**
     CO., LTD.; MUI LIANG TJOA (an
18   individual); NG CHER YONG aka CY NG (an  Date:      TBD
     individual); and LIEW YEW SOON aka       Time:      TBD
19   MARK LIEW (an individual),               Courtroom: 5
                                              Judge:     Hon. Edward M. Chen
20                   Defendants.              Date Action Filed: 9/22/2017

21

22   I, Daniel E. Gaitan, declare:

23          1.     I am an attorney licensed to practice law in the State of California and an associate

24   with the law firm of Ropers Majeski, PC, and counsel for Plaintiff SINCO TECHNOLOGIES

25   PTE LTD. ("SinCo") in this action. I have personal knowledge of the facts stated herein and am

26   familiar with the documents attached hereto as **Exhibits A - O** referred to below and incorporated

27   by reference.

28

2. If called as a witness, I would competently testify to the following facts, all of which are within my own personal knowledge.

3. Attached is a true and correct copy of Defendant's Motion in Limine To Exclude Expert Testimony of Henry J. Kahrs in the case Classic Concepts, Inc. vs. Linen Source, Inc. filed on **April 3, 2006**, attached hereto as **Exhibit A**.

4. Attached is a true and correct copy of Henry J. Kahrs' Expert Report dated **January 30, 2020,** attached hereto as **Exhibit B**.

5. Attached is a true and correct copy of excerpts of Henry J. Kahrs' deposition testimony taken on **February 4, 2020**, along with a true and correct excerpt of the email communication by Defendants Counsel with SinCo Counsel on Deposition Designations dated **March 24, 2020,** attached hereto as **Exhibit C**.

6. Attached is a true and correct copy of email correspondence between Mui Liang Tjoa and Cy Ng and Tjoa's presentation to ███ on **December 10, 2016** attached hereto as **Exhibit D**.

7. Attached is a true and correct copy of the audio recording of Mui Liang Tjoa's presentation to ███ on **December 10, 2016** attached hereto as **Exhibit E.**

8. Attached is a true and correct copy of transcript of audio recording of Mui Liang Tjoa's presentation to ███ on **December 10, 2016** attached hereto as **Exhibit F.**

9. Attached is a true and correct copy of email communication between Andy Lim of ███ and Mui Liang Tjoa confirming that the ███ project was originally SINCO's dated **August 20, 2016,** attached hereto as **Exhibit G.**

10. Attached is a true and correct copy of email communication between Andy Lim of ███ and Mui Liang Tjoa with ███ where they inquire about the litigation between SINCO and XINGKE dated **March 08, 2018** through **March 16, 2018** attached hereto as **Exhibit H.**

11. Attached is a true and correct copy of email communication between Bryan Lim and Xu Shugong dated **October 17, 2013,** attached hereto as **Exhibit I**.

12. Attached is a true and correct copy of email communication between Adrian

ROPERS
MAJESKI
A Professional Corporation
Redwood City

Flessig and John Giust during the deposition dated **February 4, 2020**, attached hereto as **Exhibit J.**

13.     Attached is a true and correct copy of Purchase Order between SinCo Technologies Pte Ltd., and Sinco Electronics (Dongguan) Co., Ltd for the years 2015, 2016 and 2017 attached hereto as **Exhibit K.**

14.     Attached is a true and correct copy of Office Actions issued by USPTO based on likelihood of confusion for Trademark Applications No. 87307929 and No. 87307939 attached hereto as **Exhibit L.**

15.     Attached is a true and correct copy of email correspondence between SinCo's Counsel and Defendant's Counsel regarding Mr. Kahr's Expert Report designations dated January 20, 2020 attached hereto as **Exhibit M.**

16.     Attached is a true and correct copy of email correspondence between Defendants' Counsel and SinCo's Counsel regarding Mr. Adrian Fleissig not providing any reports or opinions in the case dated **January 29, 2020**, attached hereto as **Exhibit N.**

17.     Attached is a true and correct copy of email correspondence between Defendants' Counsel and SinCo's Counsel regarding disclosures of Defendant's Experts dated **January 16, 2020**, attached hereto as **Exhibit O.**

| EXHIBIT | DOCUMENTS | BATES NUMBER |
|---------|-----------|--------------|
| **Exhibit A** | Defendant's Motion in Limine To Exclude Expert Testimony of Henry J. Kahrs in the case Classic Concepts, Inc. vs. Linen Source, Inc. filed on **April 3, 2006**. | N/A |
| **Exhibit B** | Henry J. Kahrs' Expert Report dated **January 30, 2020**. | N/A |
| **Exhibit C** | Excerpts of Henry J. Kahrs' deposition testimony taken on **February 4, 2020** and Email communications between | N/A |

DECLARATION ISO MOTION TO
EXCLUDE TESTIMONY OF KAHRS
3:17CV5517

ROPERS
MAJESKI

A Professional Corporation
Redwood City

| EXHIBIT | DOCUMENTS | BATES NUMBER |
|---------|-----------|--------------|
| | counsels. | |
| Exhibit D | PowerPoint Slide to welcome a Massachusetts Based Corporation dated **December 10, 2016**. | DEFS_0010583-84 & SINCO575083 |
| Exhibit E | Audio File of ML Tjoa dated **December 10, 2016**. | SINCO575082 |
| Exhibit F | Audio Transcript of ML Tjoa dated **December 10, 2016**. | SINCO575082 |
| Exhibit G | Email Communication between KOTL and United States customers dated **August 20, 2016**. | ML0000455 |
| Exhibit H | Email communication of ML Tjoa dated **March 16, 2018**. | ML0000472 |
| Exhibit I | Email communication of Bryan Lim dated **October 17, 2013**. | SINCO000972000-2002 |
| Exhibit J | Email communication of Adrian Fleissig dated **February 4, 2020**. | N/A |
| Exhibit K | 2015 Purchase Order | SINCO032408 |
| | 2016 Purchase Order | SINCO032580 |
| | 2017 Purchase Order | SINCO001821243 & SINCO032777 |
| | SINCO Purchase Order Terms and Conditions | SINCO000109-110 |
| Exhibit L | Office Actions Issued by USPTO | N/A |
| Exhibit M | Email communication of SinCo's Counsel dated **January 30, 2020**. | N/A |

DECLARATION ISO MOTION TO
EXCLUDE TESTIMONY OF KAHRS
3:17CV5517

ROPERS
MAJESKI

A Professional Corporation
Redwood City

| EXHIBIT | DOCUMENTS | BATES NUMBER |
|---------|-----------|--------------|
| **Exhibit N** | Email communication of Defendants' Counsel dated **January 29, 2020**. | N/A |
| **Exhibit O** | Email communication of Defendants' Counsel dated **January 16, 2020**. | N/A |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and if called to testify, I could and would competently do so.

Executed on this 26th day of March, 2021, in Arcadia, California.

_Daniel Gaitan_
_____

Daniel E. Gaitan

EXHIBIT A

UNITED STATES DISTRICT COURT                    Send
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION
CIVIL MINUTES - GENERAL

Case No.   CV 04-8088 GPS(MANx)        Date:  July 19, 2007
           CV 04-8457 GPS(MANx)

Title:   *Classic Concepts, Inc. v. Linen Source, Inc.*
         *Classic Concepts, Inc. v. Hellenic Rug Imports, Inc.*
=================================================================
PRESENT:   **THE HONORABLE GEORGE P. SCHIAVELLI,**   JUDGE

           Jake Yerke                         Rosalyn Adams
         Courtroom Clerk                     Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:     ATTORNEYS PRESENT FOR DEFENDANTS:

Danton Richardson                     Dennis Ellis
Surjit Soni                           Geoffrey Stover

PROCEEDINGS: Defendants' Motion to Exclude the Expert Testimony of Henry J.
             Kahrs;
             Final Pretrial Conference

   On July 19, 2007, the Court held a *Daubert* hearing to determine whether
to admit or exclude any expert testimony offered by Henry J. Kahrs.  Having
carefully considered the matter, the Court   **GRANTS** Defendants' Motion to
Exclude the Expert Testimony of Henry J. Kahrs.

     The Court also held the Final Pretrial Conference on July 19, 2007.  At
this hearing, the parties requested a written order detailing the Court's
April 24, 2006 rulings on the parties' respective motions *in limine*.  The
Court decided as follows:

     (1)   Plaintiff's motion to exclude all evidence and/or witnesses not
           identified during discovery (**DENIED**);
     (2)   Plaintiff's motion to preclude Defendant's witnesses from
           introducing improper lay opinion (**DENIED**);
     (3)   Plaintiff's motion to exclude documents which either constitute or
           contain inadmissible hearsay (**DENIED**);
     (4)   Plaintiff's motion to preclude any evidence contrary to Defendant's
           admissions in this case (**GRANTED**);
     (5)   Defendant Hellenic's motion to exclude evidence of prior lawsuits
           (**GRANTED**);
     (6)   Defendant Hellenic's motion to preclude evidence of statutory
           damages (**DENIED**);
     (7)   Defendant Hellenic's motion to exclude expert testimony of Walter

MINUTES FORM 11                       Initials of Deputy Clerk _JY_
CIVIL - GEN

DOCKETED ON CM
JUL 25 2007
BY              014

1   DENNIS S. ELLIS (SB# 178196)
2   JOSHUA G. HAMILTON (SB# 199610)
    GEOFFREY T. STOVER (SB# 211715)
3   PAUL, HASTINGS, JANOFSKY & WALKER LLP
    515 South Flower Street
    Twenty-Fifth Floor
4   Los Angeles, CA 90071-2228
    Telephone: (213) 683-6000
5   Facsimile: (213) 627-0705

6   Attorneys for Defendants
    Linen Source, Inc. and Hellenic Rug Imports, Inc.

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  CLASSIC CONCEPTS, INC., a New Mexico Corporation, | CASE NO. CV 04-8088 GPS (MANx) |
| 12           Plaintiff, | **DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY OF HENRY J. KAHRS; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF GEOFFREY T. STOVER IN SUPPORT THEREOF** |
| 13     vs. | |
| 14 | |
| 15  LINEN SOURCE, INC., a Florida Corporation; and DOES 1 through 10, | |
| 16         Defendants. | **MOTION IN LIMINE NO. 2** |
| 17 | |
| 18 | Trial Date:   May 23, 2006 |
| 19 | Pretrial Conf.:  April 24, 2006<br>Time:       11:00 a.m. |
| 20         and | |
| 21  CLASSIC CONCEPTS, INC., a New Mexico Corporation, | |
| 22 | |
| 23         Plaintiff, | |
| 24  vs. | |
| 25  HELLENIC RUG IMPORTS, INC., a New York Corporation; and DOES 1 through 10, | |
| 26 | |
| 27         Defendants. | |
| 28 | |

FILED
CLERK, U.S. DISTRICT COURT
APR - 3 2006
CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

DOCKETED ON CM
APR 11 2006
BY      002

ORIGINAL

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

At trial, Plaintiff Classic Concepts, Inc. ("Classic Concepts" of "Plaintiff") may attempt to offer the purported "expert" opinions and testimony of Henry J. Kahrs, whom Plaintiff has designated to testify on the issue of damages. Specifically, Plaintiff retained Mr. Kahrs to calculate the supposed profits that Linen Source, Inc. ("Linen Source") derived from its alleged infringement of Plaintiffs' copyright.  This Court should exclude any opinions and/or testimony from Mr. Kahrs, however, because the methodology used by Mr. Kahrs is riddled with unsupported assumptions and is, at best, unscientific.

Mr. Kahrs' ultimate opinion was that the "inclusion of [allegedly infringing] items in [Linen Source's catalogue] added revenue to Linen Source through convoy sales."  (Declaration of G. Stover ("Stover Decl."), ¶ 3 and Exh. A thereto.)  Mr. Kahrs' report urged that Plaintiff is entitled to a share of the profits earned by Linen Source from any and all products featured in Linen Source's catalogue, <u>even if</u> such products were non-infringing.  (*Id.*)

Plaintiff acknowledges that only 23 units of the allegedly infringing products were sold by Linen Source, and asserts that Linen Source earned a total profit of $1,510.[1]  (*Id.*)  Nonetheless, Mr. Kahrs concluded that Linen Source's profits through "convoy sales" equaled $27,077.  (*Id.*)  Mr. Kahrs reached this amount by employing an unreliable methodology, a brief description of which is as follows.

In calculating the so-called convoy sales, Mr. Kahrs expressed the value of the allegedly infringing products as a percentage of the total catalogue sales, *i.e.* .85% of $5,000,000 in total catalogue sales.  (*Id.*)  Mr. Kahrs reached this

---

[1] Profits were calculated by multiplying the number of allegedly infringing products sold by the price of each unit, less any direct costs incurred by Linen Source.  (Stover Decl., ¶ 3 and Exh. A thereto.)  Mr. Kahrs did not account for indirect costs.

figure by making a number of unsupported assumptions, including:  (1) there were 88 pages in the catalogue; (2) that 4 products were placed on each page, amounting to a total of 352 products in the catalogue; (3) of the 352 total products in the catalogue, three were allegedly infringing products; (4) the three allegedly infringing products comprised .85% of the catalogue (by dividing 3 into 352); (5) the three allegedly infringing products made the non-infringing 349 products more appealing to consumers; (6) that consumers actually purchased the non-infringing 349 products because of their attraction to the three allegedly infringing products; and (7) if the allegedly infringing products somehow made the non-infringing products more appealing, then a portion of the proceeds from the sale of non-infringing products should be calculated as convoy sales.  (*See id.*)

In short, Mr. Kahrs' assumptions are farfetched and lack a scientific basis.  As such, this Court should exclude his opinions and/or testimony.

## II.   THE COURT MAY PRECLUDE MR. KAHRS' OPINIONS AND/OR TESTIMONY RELATED TO CONVOY SALES.

A party may preclude or limit the introduction of evidence by presenting a motion in limine to the trial court. *See Ohler v. United States*, 529 U.S. 753, 758 (2000); *United States v. Cook*, 608 F.2d 1175, 1186 (9th Cir. 1979).  Moreover, a court may instruct opposing counsel to avoid <u>any mention</u> of the evidence in question during trial, or in argument to the jury. *See Luce v. United States*, 469 U.S. 38, 41 (1984) (court has inherent power to make any order to manage the course of trials).  As set forth herein, this Court should enter an order precluding Plaintiffs' expert, Mr. Kahrs, from offering any opinions and/or testimony on convoy sales.

### III. MR. KAHRS' OPINIONS AND/OR TESTIMONY DO NOT SATISFY THE FOUNDATIONAL REQUIREMENTS OF THE FEDERAL RULES OF EVIDENCE FOR "EXPERT" TESTIMONY.

This Court should exclude Mr. Kahrs' opinions and/or testimony because such opinions and/or testimony are based on unreliable methodology. Expert testimony may be excluded if the reasoning or methodology underlying the testimony is invalid or irrelevant to the issues in the case. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993) (trial judge must ensure that any and all testimony or evidence admitted is not only relevant, but reliable); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148-49 (1999) (applying *Daubert* to all expert testimony).

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Essentially, Rule 702 establishes a "gate-keeping" function, by which "the trial judge [has] the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *See Daubert*, 509 U.S. at 597. This "'gate-keeping' obligation applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *See Kumho Tire*, 526 U.S. at 141.

Indeed, the current version of Rule 702 was adopted in 2000, and was intended to be specifically "in response to *Daubert*." *See* Fed. R. Evid. 702, Advisory Comm. Notes to 2000 Amendments. "The amendment affirms the trial court's role as gate-keeper and provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony." *Id.*

-3-

1    (emphasis added).  Further, because the "admissibility of all expert testimony is

2    governed by the principles of Rule 104(a), … the proponent has the burden of

3    establishing that the pertinent admissibility requirements are met by a

4    preponderance of the evidence." *Id.*; *Daubert v. Merrell Dow Pharms., Inc.*

5    *(Daubert II)*, 43 F.3d 1311, 1378 n. 10 (9th Cir. 1995).  As argued below, Plaintiff

6    cannot show, by a preponderance of the evidence, that Mr. Kahr's opinions and/or

7    testimony are based on reliable methodology.

8         A.      **Mr. Kahrs' Opinions And/Or Testimony Are Based On Unreliable**

9                 **And Unscientific Methodology.**

10              To formulate his opinions and/or testimony, Mr. Kahrs relies

11   exclusively on dubious, if not outright wrong, assumptions.  (*See* Stover Decl., ¶ 3

12   and Exh. A thereto.)  Under Rule 702, "the party presenting the expert must show

13   that the expert's findings are based on sound science, and this will require some

14   objective, independent validation of the expert's methodology." *Daubert (II)*, 43

15   F.3d at 1316.  At a minimum, the expert should be able to point to some evidence

16   that the "research has been subject to peer review" or to "some [other] objective

17   source [like] a learned treatise, the policy statement of a professional association, a

18   published article in a reputable scientific journal or like[.]" *Id.* at 1318-19 n. 10.

19              Here, Mr. Kahrs' analysis hinges on the mistaken belief that the

20   "popularity" of the three allegedly infringing products contained in Linen Source's

21   catalogue somehow contributed to the commercial magnetism of the catalogue's

22   349 non-infringing products.  (Stover Decl., ¶ 3 and Ex. "A" thereto.)  Mr. Kahrs

23   further assumed that the display of the three allegedly infringing products in the

24   catalogue so captivated consumers that such consumers purchased the 349 non-

25   infringing products.  (*Id.*)  Significantly, Mr. Kahrs' report concluded that the

26   supposed popularity of all three allegedly infringing products translated to the

27   convoy sales in the amount of $27,077.  (*Id.*)

28

LEGAL_US_W # 53106205.1

Mr. Kahrs' assumptions are flawed and utterly without support. There is no basis for his belief that the mere display of the three allegedly infringing products enhanced the appeal of the catalogue's 349 non-infringing products. If anything, the supposed popularity of the three allegedly infringing should have increased the popularity (and in turn, sales) of <u>those</u> three allegedly infringing products. That did not occur. Consumers purchased only 23 units of the allegedly infringing products. (*See* Stover Decl., ¶ 3 and Exh. A thereto.) These products were a commercial failure.

Even if Mr. Kahrs was correct in assuming that the display of the three allegedly infringing products contributed to the popularity of the catalogue's non-infringing products, his opinion is still unreliable because Mr. Kahrs failed to take into account other variables that may have explained the phenomenon. For instance, the popularity of the non-infringing products may have increased due to seasonal changes, holiday gifting, or perhaps because of a special promotion or discount sponsored by Linen Source. In any event, Mr. Kahrs should have discussed and/or controlled for such variables in his report; Mr. Kahrs' failure to do so further underscores the unreliability of his methodology. Absent some objective standard or reliable paradigm, Mr. Kahrs' findings simply lack a proper foundation and must be excluded under Rule 702 and *Daubert*.

**B.**    <u>**Mr. Kahrs' Opinions And/Or Testimony Are Not Based On A Solid Factual Foundation.**</u>

Mr. Kahrs concluded that Plaintiff should recover profits from Linen Source's purported convoy sales. (Stover Decl., ¶ 3 and Exh. A thereto.) As set forth above, Mr. Kahrs' findings are premised on unsound and unsubstantiated assumptions. Thus, Mr. Kahrs' opinions and/or testimony are inadmissible at trial.

LEGAL_US_W # 53106205.1

1  IV.   **CONCLUSION**

2         For the foregoing reasons, Defendants respectfully request that this

3  Court enter an order excluding the opinions and testimony of Plaintiff's designated

4  expert witness, Henry J. Kahrs, in particular any testimony from him regarding

5  purported convoy sales.

6

7  DATED:  April 3, 2006         DENNIS S. ELLIS

8                               JOSHUA G. HAMILTON
                                GEOFFREY T. STOVER

9                               PAUL, HASTINGS, JANOFSKY & WALKER LLP

10

11                             By:_____
                                      GEOFFREY T. STOVER

12

13                             Attorneys for Defendant
                               Linen Source, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEGAL_US_W # 53106205.1

MOTION IN LIMINE NO. 2

# EXHIBIT B

The Redacted Version of This Exhibit is Not Provided as the Whole
Expert Report is Filed Under Seal

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SINCO TECHNOLOGIES PTE, LTD. | Case No.: 3:17CV5517 EMC |
|                Plaintiff, | |
|      vs. | |
| SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS (DONGGUAN) CO., LTD; XINGKE ELECTRONICS TECHNOLOGY CO., LTD; SINCO ELECTRONICS TECHNOLOGY CO., LTD; MUI LANG TJOA (an individual); NG CHER YONG aka CY NG (an individual) and Liew Yew Soon aka MARK LIEW (an individual) | |
|               Defendants. | |

EXPERT REPORT OF HENRY J. KAHRS, CPA/ABV/CFF, CFE, CMA

January 30, 2020



## Table of Contents

I. List of Baker Tilly Exhibits ............................................................................................  3

II. Introduction.................................................................................................................  4

III. Qualifications.............................................................................................................  4

IV. Compensation and Information Considered.............................................................  5

V. Background................................................................................................................  5

VI. Lost Profits ...............................................................................................................  9

VII. Increased Costs ...................................................................................................... 24

VIII. Unjust Enrichment ................................................................................................. 25

IX. Disgorgement........................................................................................................... 30

X. Exhibits..................................................................................................................... 30

XI. Summary and Signature........................................................................................... 30

Baker Tilly Virchow Krause, LLP trading as Baker Tilly is a member of the global network of Baker Tilly International Ltd., the members of which are separate and independent legal entities. © 2018 Baker Tilly Virchow Krause, LLP

# EXHIBIT C

The Redacted Version of This Exhibit is Not Provided as the Whole
Deposition Transcript is Filed Under Seal

# In the Matter Of:

## SINCO TECH PTE LTD. vs SINCO ELECTRONICS

Case No. 3:17CV5517

# HENRY JOHN  KAHRS

*February 04, 2020*

*Attorneys Eyes Only*



800.211.DEPO (3376)
EsquireSolutions.com

1                UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3

    SINCO TECHNOLOGIES PTE LTD.,
4
                        Plaintiff,
5
          vs.                        CASE NO. 3:17CV5517
6                                         EMC
    SINCO ELECTRONICS (DONGGUAN)
7   CO., LTD.; et al.,

8                       Defendants.
    ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
9

10

11          CONFIDENTIAL - ATTORNEY'S EYES ONLY

12            VIDEOTAPED DEPOSITION OF EXPERT

13                 HENRY JOHN KAHRS

14

15

16                 February 4, 2020

17                    9:30 a.m.

18

19

20            1301 Dove Street, Suite 1050

21             Newport Beach, California

22

23

24       Reported by Terri Bradley, CSR No. 5600

25



# EXHIBIT D

## DECLARATION OF DANIEL E. GAITAN

## REDACTED VERSION

**From:** ML KOTL <mltjoa@kgchn.com>
**Sent:** Sat, 10 Dec 2016 17:37:03 +0800
**To:** cyng <cyng@sincocn.cn>
**CC:** eng_liudeqiang@sincocn.cn, Gouki <eng_gaohuiyun@sincocn.cn>,
eng_wanggaohai@sincocn.cn, chlim <chlim@sincocn.cn>
**Subject:** RE: ▮▮▮ customer, Dec 10th and follow up actions

---

Thanks CY.


Great job to you and team!

---

**From:** cyng [mailto:cyng@sincocn.cn]
**Sent:** Saturday, 10 December 2016 1:37 PM
**To:** ML KOTL <mltjoa@kotl.com.cn>
**Cc:** eng_liudeqiang@sincocn.cn; 'Gouki' <eng_gaohuiyun@sincocn.cn>; eng_wanggaohai@sincocn.cn;
'chlim' <chlim@sincocn.cn>
**Subject:** ▮▮▮ customer, Dec 10th and follow up actions


hi ML,

the attached are the things for engineering/factory to do during ▮▮▮▮▮ customer meeting today.


The urgent outstanding issues are on the 'big' speaker. The smaller one is ok


issues:

a/ read thru (shadow mark) is an issue for light color (black color is ok).

ID is coming on Monday and discuss again. The white board minutes contain information on improvements/ideas


b/ eyelet damaged: this is resolved and able to re-start molding in the afternoon.

note:

è comolding activities stopped for 2 days to resolve the issue, and is ok now. Res-start in the afternoon)

è there are stocks of ~50k and to re-sort it out and advise customer on **waiver qty** for those deem acceptable


c/ flashings: customer aware of tool limitation and requesting ID to 'loosen' a little more.

DEFS_0010583
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

At the same time, factory/engineering is re-looking at other improvement methods.


Thanks





Thank you,

rgds, cyng

DEFS_0010584
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

# Welcome ███

agenda – 12/10

Plastic Commodity Lead
Manager - Corporate Plastics Engineering
R&D Engineer, Headstart Capability Group
GSE
GSE
BOC Tool Manager
BOC GSM

**SinCo** attendees:
1. ML Tjoa (**President**)
2. CY Ng (VP Engineering)
3. DQ Liu (VP Engineering)
4. Gould (Director, Marketing/Sales)
5. CH Lim (PM)
6. GH Wang (PM)
7. Cheryl Eu (VP Sales)
8. LC Tay (Manager Sales)

agenda
8.00am   —   9.00am
9.00am   —   9.30am
9.30am   —   10.30am
10.30am  —   11.30am

███

Outstanding issues
Transport back to Shenzhen

11.30pm  —

Factory tour (45-60 mins)
1   plastic injection          1st Floor
2   compression moulding       1st Floor
3   Tool Room                  1st Floor
4   pad / silkscreen printing  3rd Floor
5   Laser Etching              4th Floor
6   Spray paint                5th Floor
7   Assemblies line            4th Floor
8   Quality Inspection         2nd Floor
9   return to meeting room     2nd Floor

CONFIDENTIAL

SINCO575083

# EXHIBIT E

## DECLARATION OF DANIEL E. GAITAN

## REDACTED VERSION

**Exhibit E**:       Audio with Massachusetts
**Date of Audio**:      Company December 10, 2016



# EXHIBIT F

## DECLARATION OF DANIEL E. GAITAN

## REDACTED VERSION

2018-01-12-AUDIO-00000111
Transcript

| | |
|---|---|
| **[00:00:00]** | **MALE 1:** It also took two years before I could [INDISCERNIBLE]. |
| **[00:00:05]** | I was at ▮▮▮▮▮▮ for a couple of years and then [INDISCERNIBLE]. I'm the president and CEO of the company. |
| **[00:00:10]** | I will share with you, we have four business units. So SinCo is one of the business unit. In fact, until early this month, we owned 70%. Now we own 100% of SinCo [INDISCERNIBLE]. So thanks again for your support [INDISCERNIBLE]. |
| **[00:00:40]** | Jinlong Machinery & Electronics. It's listed in Shenzhen stock exchange. [INDISCERNIBLE] U.S. right now. |
| **[00:00:56]** | "Jinlong" in Chinese is "golden dragon." So I think that we know that well that our motto in the company is like golden quality, dragon spirit. So we want to achieve the standard in golden quality standard. And in Chinese dragon spirit is like [INDISCERNIBLE] so it's the best in the model. |
| **[00:01:23]** | And I think you can see here why this table [INDISCERNIBLE]. So founder [INDISCERNIBLE] and it's not [INDISCERNIBLE]. And it's the first [INDISCERNIBLE]. The P&L [INDISCERNIBLE]. Okay. |
| **[00:01:54]** | So the company was started in 1996. So [INDISCERNIBLE] in the U.S. I am the president and CEO. Last year we [INDISCERNIBLE] in the U.S., a net profit of about 15 million. |
| **[00:02:09]** | So [INDISCERNIBLE]. Number of employees is about 11 to 12,000 plus [INDISCERNIBLE] and very popular in 2009. |
| **[00:03:01]** | Along the way we setup some [INDISCERNIBLE]. And in 2014, we acquired a company [INDISCERNIBLE] got employed. It's an LCM company. Basically what it does is [INDISCERNIBLE]. |
| **[00:03:25]** | And 2015 [INDISCERNIBLE]. And people are wondering why did we acquire a cash payout because a cash payout basically is a decline. [INDISCERNIBLE]. But the reason for that is because we want to get into non [INDISCERNIBLE]. For example, automotive, industry devices, household appliances [INDISCERNIBLE] because of the limitations [INDISCERNIBLE]. |
| **[00:03:50]** | So I think [INDISCERNIBLE]. And they're quite happy for [INDISCERNIBLE]. |
| **[00:04:11]** | And this year in fact we acquired SinCo [INDISCERNIBLE] 70%. But until earlier this month we [INDISCERNIBLE] 100%. So it's a wholly owned of the company now. [INDISCERNIBLE]. |
| **[00:04:28]** | in early October [INDISCERNIBLE]. Basically this company [INDISCERNIBLE]. They are not only good in automation as are we, but they also are good in testing [INDISCERNIBLE]. So right now [INDISCERNIBLE] of the business is 800, a customer. |
| **[00:04:50]** | **MALE 2:** So will Sinco keep the name or will you change it? |
| **[00:04:54]** | **MALE 1:** Right now we keep the name. But of course in the transition we can use Jinlong if there's a need for future customers. |
| **[00:05:00]** | Because we are opened up our business model [INDISCERNIBLE] in China. Because now we have [INDISCERNIBLE] U.S. [INDISCERNIBLE]. So [INDISCERNIBLE] organization. Okay. |

**2018-01-12-AUDIO-00000111**
**Transcript**

**[00:05:23]**  So this is the open structure. Of course this is not consolidated, so starting next month [INDISCERNIBLE] operation. For example, [INDISCERNIBLE] Sinco is not consolidated right now, but we'll continue to expand the new technologies, new processes.

**[00:05:44]**  In fact, we're looking at possibly the CIM, MIM, DVD all stuffs. [INDISCERNIBLE], it's a new materials [INDISCERNIBLE]. And [INDISCERNIBLE].

**[00:06:10]**  So just to put this perspective, I think in China it's probably about five, but many serving in domestic market, some Asian, definitely in Korean. [INDISCERNIBLE]. Automation, so the factory [INDISCERNIBLE] 40 minutes from here. They just consolidated their factory from Shenzhen, Dongguan [INDISCERNIBLE]. In fact, it's pretty nice actually. So they are [INDISCERNIBLE] and we are [INDISCERNIBLE] a couple hundred people. And in [INDISCERNIBLE] two additions, but I think we consolidated one. So [INDISCERNIBLE] customers, in fact, a customer, ███████████ [INDISCERNIBLE]. And of course [INDISCERNIBLE].

**[00:07:13]**  And the D.C., the [INDISCERNIBLE] in fact we were the sole supplier to ████ ███████████ and [INDISCERNIBLE]. And of course on the , [INDISCERNIBLE] model, we've coming back standard. In fact, [INDISCERNIBLE].

**[00:07:41]**  And for corporate development, in fact, this will impact our [INDISCERNIBLE].

**[AUDIO LOST]**

# EXHIBIT G

**DECLARATION OF DANIEL E. GAITAN**

**REDACTED VERSION**

**From:** ML KOTL <mltjoa@kgchn.com>
**Sent:** Sat, 20 Aug 2016 09:10:07 +0800
**To:** [redacted].com>
**Subject:** Re: Regarding Sinco Dongguan

Hi [redacted],

It is ok to open up with them. It will not affect SinCo China's relationship with SinCo Singapore.

Can we have a call?

Thanks & regards,

ML

On 20 Aug 2016, at 1:17 AM, [redacted] wrote:

Hi ML,

I would like to bring to your attention regarding the project [redacted] which your team are working on getting samples for us. As you know, Sinco Singapore had started off with this project and are still having ongoing development work with our PD. They have not completed any tools or samples for us yet, and they have things in progress.

Our ID team are interested in having a similar look and feel like what Sinco is doing for your customers, and I had get your team to send some samples, with the colour they want. Our PD also had requested for samples from Sinco Singapore, which I found out they are getting from your DG plant and send them to US.

I think this has caused confusion among the PD as they thought the [redacted] team are having duplicate efforts. I really think I should clarify all this. My proposal is that I will open up to the Singapore Sinco team that we know about the working relationship between them and Sinco DG. I would want to treat both as separate companies, and would like both to show their own capabilities independently.

I want to give you a heads up on this. Will doing this impact any relationship, or any ongoing business or negotiation between Sinco Singapore and KOTL? If you would like to have a chat on this, please feel free to call me.



EXHIBIT
118
Planet Depos, LLC

ML0000455
Confidential - Attorney Eyes Only

Thank you and best regards,

███

ML0000456
Confidential - Attorney Eyes Only

# EXHIBIT H

## DECLARATION OF DANIEL E. GAITAN

## REDACTED VERSION

**From:** "ML KOTL"
**Sent:** Fri, 16 Mar 2018 10:21:43 +0800
**To:** ███████████████
**CC:** Eric KOTL <eric.pang@kotl.com.cn>, ghy@xingkecn.com
**Subject:** Re: Sinco and Xinke

Hi ███

We will translate the ownership document and send to you next week.

On the court hearing, both parties will submit evidence next week to the court. The hearing schedule is yet to be scheduled.

Thanks & regards,

ML

On 16 Mar 2018, at 7:50 AM, ████████████████████ wrote:

> HI ML,
>
> Was the China case heard this week, or later part of this month? If it is, what is the outcome?
>
> And also, are you preparing the documents to show that full ownership of Xingke under KOTL, to send to us?
>
> Thanks,
>
> ███
>
> On Fri, Mar 9, 2018 at 12:28 AM, ML KOTL <mltjoa@kotl.com.cn> wrote:
>
>> FYI!
>>
>> **From:** ML KOTL
>> **Sent:** Friday, 9 March 2018 12:31 AM
>> **To:** ████████████████
>> **Subject:** RE: Sinco and Xinke



**EXHIBIT**
**120**
Planet Depos, LLC

ML0000472
Confidential - Attorney Eyes Only

Hi ▓▓▓

You are right! There is a legal dispute between Xingke & Sinco Singapore. Sinco Singapore is filing legal action against Xingke on the following:

1. 1. Loss of business due to unsuccessful qualification for one of the customers
2. 2. Sinco trademark in China

We (Xingke) believe Sinco Singapore's allegation is completely without merit for the following reasons:

1. 1. As you might know, Sinco Singapore was just a trading house (middle man). Sinco Singapore was just one of Xingke's trading partners. There was no contract/agreement signed to indicate that Xingke must get qualification for project managed via Sinco Singapore. It is just like any other project from other trading partners, if the project is not qualified, Xingke will not go into production for that particular project
2. 2. Sinco Singapore claims that Sinco trademark in China is owned by Sinco Singapore. The fact is Xingke was the one to register the trademark in China. It is lawfully owned by Xingke. However, I have instructed the Xingke team to stop using Sinco to avoid confusion with other Sinco entities. Xingke had done so since mid last year. You might notice that even we have changed our English name to Xingke in the factory including the logo and email domain touser@xingkecn.com.

There will be court hearing in second half of this month in China. Our legal has indicated that our probability of winning the case is very high.

I will be happy to setup a call to share with you more detailed/background info if this is of interest to you.

I will keep you informed as and when there is new update.

Best regards,

ML

**From:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
**Sent:** Thursday, 8 March 2018 11:33 AM
**To:** ML KOTL <mltjoa@kotl.com.cn>
**Subject:** Sinco and Xinke

ML0000473
Confidential - Attorney Eyes Only

Hi ML,

I am hearing about some potential legal disputes between Sinco and Xinke.  Can you please let me know what the situation is?

Thanks,

███

--

Thank you and best regards,

███

ML0000474
Confidential - Attorney Eyes Only

# EXHIBIT I

## DECLARATION OF DANIEL E. GAITAN

## REDACTED VERSION

**From:** "Bryan Lim" <bryanlim@sinco.com.sg>
**To:** "'xushugong'" <xushugong@sincocn.cn>
**Cc:** '许总' <xushugong@china.com>, '高总' <gby@sincocn.cn>
**Subject:** RE: RE: FW: China vs. Singapore Sinco Companies
**Date:** Fri, 18 Oct 2013 15:31:40 +0800

---

Hi Shugong,

Thank you for your reply and your thorough investigation and we would like to put a close to this matter.

I have also feedback to ███████████████ on our investigation and he was rather puzzle .... Any way will leave it as it is only Mark, Yiming and ████ will know the truth.

As far as we are concern both you and me has taken steps to ensure it will not happen again.

Have a great week end.

Thanks & Regards
Bryan Lim

---

**From:** xushugong [mailto:xushugong@sincocn.cn]
**Sent:** Thursday, 17 October 2013 6:13 PM
**To:** Bryan Lim
**Cc:** 'Thomas'; 'Barry'; '许总'; '高总'
**Subject:** Re: RE: FW: China vs. Singapore Sinco Companies

Dear Bryan Lim,
林堇，您好!

1.For this thing, the first day of the receipt of your mail, I had made   a detailed and comprehensive investigation.
对于此事，在第一天收到您的邮件后，我就已做了详细、全面的调查。

2.The survey results show that these words: " Sinco HQ and Humen are different company - the tooling and piece part will be more expensive if they deal with Singapore ", No one has ever said anything like this, including Mark and Yiming, their original words are not said so, please refer to the attachment, thank you!
从未没有人这样说过，包括Mark 和Yiming，他们的原话也不是这样说的，请参考附件，谢谢!

3.About this thing, I have once again highlighted to senior the relationship of Singapore Sinco and Humen Sinco. And to let staff for communicate with the outside attention to their verbalize.
针对此事，我已经向公司高层再次强调了新加坡兴科和虎门兴科的关系，以及让对外沟通人员注意他们的言语表述。

Thank you!
以上请知悉，谢谢!

Best regards,
Shugong
2013-10-17

---

发件人：Bryan Lim
发送时间：2013-10-17 17:01:20
收件人：'xushugong'
抄送：'Thomas'; 'Barry'; '许总'; '高总'
主题：RE: FW: China vs. Singapore Sinco Companies

Dear Shugong –

The key issue here is not about this ███ account belongs to Singapore or Humen?
重点不是讨论英特尔这个客户属于新加坡还是虎门

The key point to address is who authorized Yiming and Mark to tell customer that Sinco HQ and Humen are different company - the tooling and piece part will be more expensive if they deal with Singapore
重点是：是谁授权给Yiming 和Mark 跟客户说： "新科新加坡和兴科虎门不是同一个公司，要是通过新加坡合作，模具和零件成本会更高"

We need to know if Yiming and Mark are acting under instructions to say that we are different company or they actually based on their own initiative.
我们必须知道 Yiming 与Mark 是奉命行事，还是他们自己主动对客户说我们不是同一个公司

---

SINCO000972000

Please investigate and let me know the outcome
请您调查并让我知道结果

We，as the owner and senior management of Sinco Group, it is important for us to get to the bottom of this issue to ensure that all our staff that represents Sinco Group in future will not make the same mistake
我们身为新科集团的高层及集团董事，我们必须慎重的看待并彻底理解问题的源头。这是为了避免公司其他员工在为新科集团待言时不会犯同样的错

As owner of the company we have to take full responsibilities and ownership of whatever committed and mistake made by our employee. This is a misrepresentation of Sinco to the customer and needs to be seriously deal with!
我们身为公司董事，我们必须为公司每个员工的行为包括承诺上及失误方面全全负责。我们必须对这次误导性行为加以严厉的对待！

Thank You！
谢谢！

Regards
Bryan LIm

---

**From:** xushugong [mailto:xushugong@sincocn.cn]
**Sent:** Wednesday, 16 October 2013 4:56 PM
**To:** Bryan Lim
**Cc:** Thomas; Barry; 许总; 高总
**Subject:** Re: FW: China vs. Singapore Sinco Companies

Hi BryanLim,
Sorry so late to reply you!
1. Last year, October 13, 2012, the Domestic Marketing Department, General manager Mr. Zhu, His BYD project, the customer
  of BYD visit the Humen factory together with ███████ requires communication with Humen Sinco directly.
2. After that, Humen Sinco arranges the marketing staff approached related matters with ████
3. After the quotation passed, ██ is specified by Humen Sinco production deliveries to Taiwan Compal.
4. Compal consider has other providers, at the beginning, they do not want to deal with the Humen Sinco,they consent orders to Humen
  Sinco by confirmed with ████
5. Compal requires payment condition is OA 105 days, reference to Singapore Sinco terms of cooperation.
6. After confirmation with Tommy that Compal now with no transaction terms and Prior to the terms is OA 105 days, Humen
  accepted the terms of the transaction with ██████
7. On May 2013, by confirmed that the start cooperation projects with ██████
8. At present, this is already the third project in partnership with ████l, has been there-contact with ████, the recent intervention of ██████l,
  and the message is copied to Singapore Sinco Barry, Thomas Etc, and return assessments offer.
9. In order to reply to the customer, Humen plant on October 15 evening(due to limited domestic engineering English), Ask Mark & Yiming
  give a call to ███████████ communicate the following points:
   A.██ project cooperation and ████████ is slightly different, will be determined by Humen factory directly related to personnel coordinate with ████
   B. In order to service and feedback quickly, we arranged a factory Humen corresponding service window.
   C. Humen sinco can supplier to the ██████ or designated vendor directly.
   D. Follow-up of the project cooperation can be directly related to Humen Sinco personnel.
10. After telephone communications, but also gives a brief summary of messages sent out for the content of the talk.
   (refer to e-mail 23:31 on October 15, 2013)
Thank you very much!

1. 去年2012年10月13日，国内市场部朱总的BYD项目，BYD客户参█参观工厂█要求虎门兴科直接沟通。
2. 之后工厂安排市场部人员与█Eric接洽相关事宜。
3. 报价通过后█指定由虎门兴科生产交货给台湾█l。
4. █有其他供应商考虑，开始并不愿意与虎门兴科交易，同█确认后才同意下单给虎门兴科。
5. █要求付款条件为OA 105天，参考新加坡兴科之前的合作条款。
6. 经与Tommy确认█之前的条款是OA 105天，虎门█的交易条款。
7. 2013年5月█确认开始项目合作。
8. 目前已经是第三个项目合作，且曾直接接触过█，最近█的介入，当前信息抄送给新加坡兴科Barry、Thomas等人，并返回评估、报价。
9. 为了回复客户，虎门工厂10月15日晚（因国内工程英文限制），请Mark与Yiming给█Gabriel打了一个电话，沟通以下几点：
   A.█的项目合作和█稍有不同，将会由虎门工厂工厂█相关人员配合。
   B.为了快速服务和反馈，我们安排了虎门工厂对应的服务窗口。
   C.虎门工厂可以直接供应█或指定厂商。
   D.后续的项目合作都可以直接和虎门工厂相关人员联系。
10. 在电话沟通后，又对所谈的内容作了一个简要的邮件发发送出。（详见2013年10月15日23:31的邮件）
谢谢！

Best regards,
Shugong
2013.10.16

发件人：Bryan Lim
发送时间：2013-10-16 09:40:05
收件人：'Sinco-许总（新）'; '高总'
抄送：bryanlim@sinco.com.sg
主题：FW: China vs. Singapore Sinco Companies

Hi Shugong & Gao Bingyi,

**I'm extremely disappointed and embarrass with how Yiming & Mark who call up our customer to say we are 2 different companies. Please see email below from ████████ of Engineering whom I have work with for 22 years.**

I'm a shareholder and Director of SinCo Humen and who gave this 2 engineers the authorities to call the customer to say  that we are 2 different companies and don't work with SinCo Singapore.

Is this the way our engineers in China work and you should also be embarrass when our customer come back with the remarks below.

Please explain why they have done so as I need to know why before I call ████ Director to explain later.

It's so shameful for me to explain the situation as a Director and Shareholder of both companies who have employees calling customer to say we are separate companies.

Please discipline our employees.

Please reply.

Regards
Bryan Lim

---

**From:** ████████████████████
**Sent:** W
**To:** Barry Ong; thomasyap@sinco.com.sg
**Cc:** bryanlim@sinco.com.sg
**Subject:** China vs. Singapore Sinco Companies

Thomas and/or Barry,

This morning, I got a call from Yiming and Mark from your China Sinco company. I was told not to work with Sinco Singapore or through you guys as the two companies are completely separated. If do work through you the tooling cost and piece part cost would be higher.

Can one of you please call me and explain to me properly Sinco's structure and how you want me to interact with you.

Thank you,

████████

SINCO000972002

# EXHIBIT J

## DECLARATION OF DANIEL E. GAITAN

## REDACTED VERSION

# Christie Noble

| | |
|---|---|
| **From:** | John Giust |
| **Sent:** | Tuesday, February 4, 2020 4:11 PM |
| **To:** | Christie Noble |
| **Subject:** | FW: Forecast |

Please print

**From:** Fleissig, Adrian [mailto:Adrian.Fleissig@bakertilly.com]
**Sent:** Tuesday, February 4, 2020 4:04 PM
**To:** John Giust <JohnGiust@WHGCLaw.com>; Kahrs, Hank <Hank.Kahrs@bakertilly.com>
**Subject:** Re: Forecast

Hank and John,

Regression models

Exhibit A1
SinCo's DG Sales of US Product for Month t = a + B1x Time(month t)
Period Jan 2010-October 2015

Exhibit A2
SinCo's DG Sales of US Product for Month t = a + B1x Time(month t)
Period Jan 2010-December 2015

Exhibit A3
SinCo's DG Sales of US Product Seasonally adjusted for Month t = a + B1x SinCo's DG Sales of US Product Seasonally adjusted for Month t-1
Period Jan 2010-December 2015

Exhibit A4
SinCo's DG Sales of US Product Seasonally adjusted for Month t = a + D1*B1x SinCo's DG Sales of US Product Seasonally adjusted for Month t-1 + D2* B2x SinCo's DG Sales of US Product Seasonally adjusted for Month t-1
Period Jan 2010-December 2015
D1 is dummy variable to account for months Jan 2010-October 2015
D2 is dummy variable to account for months November and December 2015

Exhibit A5
Production Index = a + B1xTime
Period Jan 2010-December 2015

Exhibit A6
SinCo's DG Sales of US Product for Month t = a + B1xProduction Index
Period Jan 2010-December 2015

Exhibit
Exhibit No.: 16
Name: Kahrs
Date: 2-4-20
ESQUIRE

16.1

**From:** Fleissig, Adrian <Adrian.Fleissig@bakertilly.com>
**Sent:** Tuesday, February 4, 2020 3:49 PM
**To:** John Giust <JohnGiust@WHGCLaw.com>
**Subject:** Re: Forecast

John,

Here you go. It is also at the bottom of the email.

Cheers, Adrian

**From:** John Giust <JohnGiust@WHGCLaw.com>
**Sent:** Tuesday, February 4, 2020 3:48 PM
**To:** Fleissig, Adrian <Adrian.Fleissig@bakertilly.com>
**Subject:** RE: Forecast

Nothing attached?

**From:** Fleissig, Adrian [mailto:Adrian.Fleissig@bakertilly.com]
**Sent:** Tuesday, February 4, 2020 3:14 PM
**To:** Kahrs, Hank <Hank.Kahrs@bakertilly.com>; John Giust <JohnGiust@WHGCLaw.com>
**Subject:** Re: Forecast

Hi Hank and John,

Sorry forgot John's email.

Cheers, Adrian

**From:** Fleissig, Adrian <Adrian.Fleissig@bakertilly.com>
**Sent:** Tuesday, February 4, 2020 3:10 PM
**To:** Kahrs, Hank <Hank.Kahrs@bakertilly.com>
**Subject:** Re: Forecast

Hank and John,

Attached is what I sent to Hank.

(1) Go to Fleissig Analysis.xls
(2) Tab: Regression Estimates

e.g. Exhibit A1

Model is: Sales = c  + b*Time

Parameters c and b are to be estimated.

The parameter estimates are in cells C12 and C13

16.2

For Exhibit 1 the estimated model would be

Estimated Model: Sales = ██████████ Time

Note that Cox thought that time would be a positive number for an increasing trend ... the estimate is negative ██████ so a decreasing trend.

Best to text or call me if you have questions.

Cheers, Adrian

---

**From:** Fleissig, Adrian
**Sent:** Thursday, January 30, 2020 3:28 PM
**To:** Kahrs, Hank <Hank.Kahrs@bakertilly.com>
**Subject:** Forecast

Hank,

Here you go!

Adrian

Baker Tilly Virchow Krause, LLP Confidentiality Notice: This message is being sent by Baker Tilly Virchow Krause, LLP. It is intended exclusively for the individuals and entities to which it is addressed. This communication, including any attachments, may contain information that is proprietary, privileged, confidential, including information that is protected under the HIPAA privacy rules, or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by email and delete all copies of this message. This message is protected by applicable legal privileges and is confidential. Tax advice, if any, contained in this communication was not intended or written to be used by any taxpayer for the purpose of avoiding penalties.

16.3

----- Forwarded Message -----
**From:** John Giust <johngiust@whgclaw.com>
**To:** tlbradley39@yahoo.com <tlbradley39@yahoo.com>
**Cc:** Iskander, Mario A. <mario.iskander@ropers.com>
**Sent:** Tuesday, February 4, 2020, 7:50:45 PM PST
**Subject:** 2 exhibits attached

John,

Here you go. It is also at the bottom of the email.

Cheers, Adrian

**From:** John Giust <JohnGiust@WHGCLaw.com>
**Sent:** Tuesday, February 4, 2020 3:48 PM
**To:** Fleissig, Adrian <Adrian.Fleissig@bakertilly.com>
**Subject:** RE: Forecast

Nothing attached?

**From:** Fleissig, Adrian [mailto:Adrian.Fleissig@bakertilly.com]
**Sent:** Tuesday, February 4, 2020 3:14 PM
**To:** Kahrs, Hank <Hank.Kahrs@bakertilly.com>; John Giust <JohnGiust@WHGCLaw.com>
**Subject:** Re: Forecast

Hi Hank and John.

Sorry forgot John's email.

Cheers, Adrian

**From:** Fleissig, Adrian <Adrian.Fleissig@bakertilly.com>
**Sent:** Tuesday, February 4, 2020 3:10 PM



Exhibit

ESQUIRE

**To:** Kahrs, Hank <Hank.Kahrs@bakertilly.com>
**Subject:** Re: Forecast

Hank and John,

Attached is what I sent to Hank.

(1) Go to Fleissig Analysis.xls

(2) Tab: Regression Estimates

e.g. Exhibit A1

Model is: Sales $= c + b*Time$

Parameters c and b are to be estimated.

The parameter estimates are in cells C12 and C13

For Exhibit 1 the estimated model would be

Estimated Model: Sales = ███████████ *Time

Note that Cox thought that time would be a positive number for an increasing trend ... the estimate is negative ████████ a decreasing trend.

Best to text or call me if you have questions.

Cheers. Adrian

---

**From:** Fleissig, Adrian
**Sent:** Thursday, January 30, 2020 3:28 PM
**To:** Kahrs, Hank <Hank.Kahrs@bakertilly.com>
**Subject:** Forecast

Hank,

Here you go!

Adrian

Baker Tilly Virchow Krause, LLP Confidentiality Notice: This message is being sent by Baker Tilly Virchow Krause, LLP. It is intended exclusively for the individuals and entities to which it is addressed. This communication, including any attachments, may contain information that is proprietary, privileged, confidential, including information that is protected under the HIPAA privacy rules, or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by email and delete all copies of this message. This message is protected by applicable legal privileges and is confidential. Tax advice, if any, contained in this communication was not intended or written to be used by any taxpayer for the purpose of avoiding penalties.





# EXHIBIT K

## DECLARATION OF DANIEL E. GAITAN

## REDACTED VERSION

# SINCO TECHNOLOGIES PTE LTD

2 Woodlands Sector 1, #01-23 Woodlands Spectrum, Singapore 738068
Phone +65 6482 7227 Fax +65 6482 3447 Email: sinco@sinco.com.sg
GST Reg. No. M2-8922138-X Co. Reg. No. 199507772H

**EMAILED**
**0 2 MAR 2015**
BY: ....................

# PURCHASE ORDER

The following P.O. number must appear on all related
correspondence, shipping papers, invoices and etc.:

TO:
SINCO GROUP HOLDINGS PTE. LTD.
LEVEL 2, LOTEMAU CENTRE
VAEA STREET, APIA,
SAMOA
TEL:                   FAX:

SHIP:
SINCO ELECTRONICS (DONGGUAN) CO., LTD
SINCO INDUSTRIAL PARK, HUAI BEI STREET,
HUAI DE DISTRICT HUMEN
DONGGUAN, GUANGDONG, CHINA 523926

| | |
|---|---|
| P.O. NUMBER | SPO4-15020008 |
| P.O. DATE | 25/02/2015 |
| PAYMENT TERM | 90 Days (TT) |
| CURRENCY | USD |
| BUYER | Jenny Gan |
| REQUESTOR | ▮▮▮▮▮ |
| SHIPPING TERM | CIF |
| DELIVERY MODE | AIR |

| NO | PART NUMBER | DESCRIPTION | QUANTITY | UNIT PRICE | TOTAL | DELIVERY DATE |
|---|---|---|---|---|---|---|
| 1 | MISCT-050145 | ▮▮ | ▮▮ ▮▮ | ▮▮ | ▮▮ | ▮▮ |
| | ▮▮ | ▮▮ | | ▮▮ | ▮▮ | ▮▮ |
| | | ▮▮ | | ▮▮ | ▮▮ | ▮▮ |
| | MISCT-▮▮ | ▮▮ | | ▮▮ | ▮▮ | ▮▮ |
| | ▮▮ | ▮▮ | | ▮▮ | ▮▮ | ▮▮ |

Your Purchase Order given is hereby acknowledged and accepted
SINCO GROUP HOLDINGS PTE. LTD.
興科集團股份有限公司

Vendor signature and company stamp *Authorized Signature*

ADD GST:
@    0.00%        0.00

PR No.SPR4-15020011

| TOTAL | ▮▮▮ | ( in USD ) |

**IMPORTANT NOTICE**
1. Please acknowledge within 3 days, otherwise this purchase order will be deemed accepted.
2. Please notify us immediately if you are unable to ship as specified.
3. This purchase order is subject to Sinco's Purchase Order Terms & Conditions, which may be attached, or supplied on request.
4. This purchase order is not valid without authorized signature from Sinco.
5. Sinco objects to all additional or different terms that Seller has proposed or may propose.
6. Delivery date indicate on this purchase order is for planning purposes, actual delivery date please follow communication from our buyer when sending acknowledgment via email.
7. Our purchase order number must appear on all related correspondence.

SINCO TECHNOLOGIES PTE LTD

Authorized Signature

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

SINCO032408

# SINCO TECHNOLOGIES PTE LTD

2 Woodlands Sector 1, #01-23 Woodlands Spectrum, Singapore 738068
Phone +65 6482 7227 Fax +65 6482 3447 Email: sinco@sinco.com.sg
GST Reg. No. M2-8922136-X Co. Reg. No. 199507772H



## PURCHASE ORDER

The following P.O. number must appear on all related
correspondence, shipping papers, invoices and etc.:

**TO:**

SINCO GROUP HOLDINGS PTE. LTD.
LEVEL 2, LOTEMAU CENTRE
VAEA STREET, APIA,
SAMOA
TEL:                    FAX:

**SHIP:**

SINCO ELECTRONICS (DONGGUAN) CO., LTD
SINCO INDUSTRIAL PARK, HUAI BEI STREET,
HUAI DE DISTRICT HUMEN
DONGGUAN, GUANGDONG, CHINA 523926

| | |
|---|---|
| P.O. NUMBER | SPO4-16010009 |
| P.O. DATE | 14/01/2016 |
| PAYMENT TERM | 90 Days (TT) |
| CURRENCY | USD |
| BUYER | Jenny Gan |
| REQUESTOR | ███████ |
| SHIPPING TERM | CIF |
| DELIVERY MODE | AIR |

| NO | PART NUMBER | DESCRIPTION | QUANTITY | UNIT PRICE | TOTAL | DELIVERY DATE |
|---|---|---|---|---|---|---|
| 1 | MISCT-751350 | ████████ | 1.0 SET | ████ | ████ | 14/01/2016 |

Your Purchase Order given is hereby acknowledged and accepted
*For and on behalf of*
**SINCO GROUP HOLDINGS PTE. LTD.**
興科集團股份有限公司

Vendor signature and company stamp...........................
*Authorized Signature(s)*

**PR No.SPR4-16010010**

| | | |
|---|---|---|
| | | 0.00 |
| **TOTAL** | ████ | ( in USD ) |

**IMPORTANT NOTICE**

1. Please acknowledge within 3 days, otherwise this purchase order will be deemed accepted
2. Please notify us immediately if you are unable to ship as specified.
3. This purchase order is subject to Sinco's Standard Terms & Conditions of Purchase attached.
4. This purchase order is not valid without authorized signature from Sinco.
5. Sinco objects to all additional or different terms that Seller has proposed or may propose.
6. Delivery date indicate on this purchase order is for planning purposes, actual delivery date please follow
   communication from our buyer when sending acknowledgment via email.
7. Our purchase order number must appear on all related correspondence.

**SINCO TECHNOLOGIES PTE LTD**

Authorized Signature

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

SINCO032580

# SINCO TECHNOLOGIES PTE LTD

2 Woodlands Sector 1, #01-23 Woodlands Spectrum, Singapore 738068
Phone +65 6482 7227 Fax +65 6482 3447 Email: sinco@sinco.com.sg
GST Reg. No. M2-8922136-X Co. Reg. No. 199507772H



EMAILED
2 0 SEP 2017
BY: ...........................

## PURCHASE ORDER

The following P.O. number must appear on all related
correspondence, shipping papers, invoices and etc.:

**TO:**

XINGKE ELECTRONICS (HONGKONG) CO., LIMITED
FLAT/RM A 20/F KIU FU COMM BLDG
300 LOCKHART RD WAN CHAI HK

TEL: (86)0769-89819999 FAX: (86)0769-89819000

| | |
|---|---|
| P.O. NUMBER | SPO2-17090049 |
| P.O. DATE | 19/09/2017 |
| PAYMENT TERM | 45 Days (TT) |
| CURRENCY | USD |
| BUYER | Loh Sat Khuen |
| REQUESTOR | ▬▬▬▬▬ |
| SHIPPING TERM | CIF |
| DELIVERY MODE | AIR |

**SHIP:**

2 WOODLANDS SECTOR 1 #01-23
WOODLANDS SPECTRUM
SINGAPORE 738068

| NO | PART NUMBER | DESCRIPTION | QUANTITY | UNIT PRICE | TOTAL | DELIVERY DATE |
|---|---|---|---|---|---|---|
| 1 | ▬▬ | ▬▬ | ▬▬ | ▬▬ | ▬▬ | |
| | ▬▬ | ▬▬ | ▬▬ | ▬▬ | ▬▬ | |
| ▬ | ▬▬ | ▬▬ | ▬▬ | ▬▬ | ▬▬ | |
| ▬ | ▬▬ | ▬▬ | ▬▬ | ▬▬ | ▬▬ | |
| ▬ | ▬▬ | ▬▬ | ▬▬ | ▬▬ | ▬▬ | |
| ▬ | ▬▬ | ▬▬ | ▬▬ | ▬▬ | ▬▬ | 19/09/2017 |

Your Purchase Order given is hereby acknowledged and accepted

ADD GST:
@    0.00%            0.00

*Vendor signature and company stamp*

PR No.SPR2-17090049

| TOTAL | ▬▬ | ( in USD ) |

### IMPORTANT NOTICE

1. Please acknowledge within 3 days, otherwise this purchase order will be deemed accepted.
2. Please notify us immediately if you are unable to ship as specified.
3. This purchase order is not valid without authorized signature from Sinco.
4. Sinco objects to all additional or different terms that Seller has proposed or may propose.
5. Delivery date indicate on this purchase order is for planning purposes, actual delivery date please follow
   communication from our buyer when sending acknowledgement via email.
6. Our purchase order number must appear on all related correspondence.

SINCO TECHNOLOGIES PTE LTD

Authorized Signature

1

Highly Confidential - AEO

SINCO001821243

# SINCO TECHNOLOGIES PTE LTD

2 Woodlands Sector 1, #01-23 Woodlands Spectrum, Singapore 738068
Phone +65 6482 7227 Fax +65 6482 3447 Email: sinco@sinco.com.sg
GST Reg. No. M2-8922136-X Co. Reg. No. 199507772H



EMAILED
2 3 JAN 2017
BY:

## PURCHASE ORDER

The following P.O. number must appear on all related
correspondence, shipping papers, invoices and etc.:

TO:
SINCO GROUP HOLDINGS PTE. LTD.
LEVEL 2, LOTEMAU CENTRE
VAEA STREET, APIA,
SAMOA
TEL:                    FAX:

| | |
|---|---|
| P.O. NUMBER | SPO4-17010003 |
| P.O. DATE | 20/01/2017 |
| PAYMENT TERM | 90 Days (TT) |
| CURRENCY | USD |
| BUYER | Jenny Gan |
| REQUESTOR | ▬▬▬▬ |
| SHIPPING TERM | CIF |
| DELIVERY MODE | AIR |

SHIP:
SINCO ELECTRONICS (DONGGUAN) CO., LTD
SINCO INDUSTRIAL PARK, HUAI BEI STREET,
HUAI DE DISTRICT HUMEN
DONGGUAN, GUANGDONG, CHINA 523926



| NO | PART NUMBER | DESCRIPTION | QUANTITY | UNIT PRICE | ▬ | ▬ |
|---|---|---|---|---|---|---|
| 1 | MISCT-MOT-0597A | | 1.0 SET | | | 20/01/2017 |

Your Purchase Order is hereby acknowledged and accepted
SINCO GROUP HOLDINGS PTE. LTD.
興 科 集 團 股 份 有 限 公 司
2/7-17

Vendor signature and company stamp/Authorized Signature(s)

0.00

PR No.SPR4-17010007

| TOTAL | ▬ | ( in USD ) |

IMPORTANT NOTICE
1. Please acknowledge within 3 days, otherwise this purchase order will be deemed accepted
2. Please notify us immediately if you are unable to ship as specified
3. This purchase order is subject to Sinco's Standard Terms & Conditions of Purchase attached
4. This purchase order is not valid without authorized signature from Sinco.
5. Sinco objects to all additional or different terms that Seller has proposed or may propose.
6. Delivery date indicate on this purchase order is for planning purposes, actual delivery date please follow
   communication from our buyer when sending acknowledgment via email
7. Our purchase order number must appear on all related correspondence.

SINCO TECHNOLOGIES PTE LTD

Authorized Signature

1

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY                SINCO032777

# SINCO TECHNOLOGIES PTE LTD PURCHASE AGREEMENT & PURCHASE ORDER TERMS AND CONDITIONS

THIS PURCHASE AGREEMENT (the "Agreement") sets forth the terms and conditions that apply to all purchases of goods and services by SINCO from Seller by means of a purchase order (a "PO") issued by SINCO to Seller. As used in this Agreement, "Seller" means the entity identified on the face of a PO as "Seller" and its subsidiaries and affiliates, and "SINCO" means SINCO TECHNOLOGIES PTE LTD and its subsidiaries and affiliates. Seller and SINCO hereby agree as follows:

**1. ACCEPTANCE AND AGREEMENT.** Seller agrees to perform the services ("Services") and/or provide the goods or deliverables described in a PO (collectively referred to as "Goods"), in accordance with the terms and conditions in this Agreement and the terms and conditions on the face of the PO, which terms are incorporated herein by reference. Upon acceptance of a PO, shipment of Goods or commencement of Services, Seller shall be bound by the provisions of this Agreement, whether Seller acknowledges or otherwise signs this Agreement or the PO, unless Seller objects to such terms in writing prior to shipping Goods or commencing Services. A PO does not constitute a firm offer and may be revoked at any time prior to acceptance. This Agreement may not be added to, modified, superseded, or otherwise altered, except by a writing signed by an authorized SINCO representative. Any terms or conditions contained in any acknowledgment, invoice, or other communication of Seller which are inconsistent with the terms and conditions of this Agreement, are hereby rejected. To the extent that a PO might be treated as an acceptance of Seller's prior offer, such acceptance is expressly made on condition of assent by Seller to the terms hereof and shipment of the Goods or beginning performance of any Services by Seller shall constitute such assent. SINCO hereby reserves the right to reschedule any delivery or cancel any PO issued at any time prior to shipment of the Goods or prior to commencement of any Services. SINCO shall not be subject to any charges or other fees as a result of such cancellation.

**2. DELIVERY.** Time is of the essence in this PO. Delivery of the Goods and Services shall be made pursuant to the schedule, via the carrier, and to the place specified on the face hereof unless changed by written instructions from SINCO prior to shipment. Seller shall promptly inform SINCO of any anticipated delay in shipment. SINCO reserves the right to return, shipping charges collect, all Goods received more than three business days in advance of the specified delivery date or after the specified delivery date. If this PO calls for delivery in installments and Seller fails to deliver an installment on the designated delivery date, SINCO may decline to accept subsequent installments and terminate the balance of this PO. If no delivery schedule is specified, the PO shall be filled promptly and delivery will be made by the most expeditious form of transportation by air, land or sea. If no carrier is specified in the PO, Seller shall consult SINCO to determine the carrier. In the event Seller fails to deliver the Goods within the time specified, SINCO may, at its option, decline to accept the Goods and cancel the PO without liability or may demand its allocable fair share of Seller's available Goods and cancel the balance of the PO without liability. Seller shall package all items in suitable containers to permit safe transportation and handling. Each delivered container must be labeled and marked to identify contents without opening and all boxes and packages must contain packing sheets listing contents. SINCO's PO number must appear on all shipping containers, packing sheets, delivery tickets, and bills of lading. Seller will clearly identify the country of origin of all Goods delivered and will indemnify SINCO with respect to any expenses, duties, penalties, damages, settlements, costs or attorney's fees incurred by SINCO in connection with Seller's failure to identify or misidentification of the country of origin. If the Seller fails to deliver the Products or Services in accordance with the Delivery Terms specified by SINCO, SINCO shall be entitled, without prejudice to its accrued rights against the Seller for failure of or later delivery, to obtain such Products  or Services from other sources and in such event to reject late delivery of the Seller's Products or Services in favor of delivery by such substitute source, and all additional costs in obtaining such Products or Services from such alternative sources, including SINCO' economic and administrative costs and any positive price differential for the Products or Services or such generic substitute or alternatives thereto accepted by the Company, shall be borne by the Seller.

**3. PRICE AND PAYMENT.** The price of the Goods and Services are as indicated on the face of this PO, in US dollars unless other currency is indicated, and Price is inclusive of all of Seller's costs (including labeling, packaging, taxes, duties, insurance and handling). If the Price is omitted from the PO, the Price will be the lower of a) the lowest prevailing market price, and b) the lowest price paid for similar Goods/Services under prior SINCO PO. Seller hereby guarantees that the Price is Seller's best price to any customer for the same or similar Goods/Services and is competitive with any other seller's price for similar Goods and/or services ("Price Guarantee"). SINCO may terminate this PO in whole or in part without liability if Seller breaches its Price Guarantee and has no obligation to pay any amount in excess of the Price Guarantee. Seller shall keep appropriate records to demonstrate compliance with this Section. Payment terms shall be net ninety (90) days from SINCO receipt of invoice unless otherwise specified on the face hereof.

**4. WARRANTIES.** Seller warrants to SINCO and its customers that the Goods shall be free of liens, new and unused, and perform in accordance with their published specifications and be free from defects in materials, workmanship and design for a period of two (2) years from SINCO's receipt of such Goods. Goods not meeting this warranty may be returned to Seller for credit or replacement, and Seller will be responsible for governmental fines levied for failure to meet Seller's environmental specifications. Should Goods shipped in any 90-day period to SINCO or should all Goods received by SINCO experience a failure rate of more than 3% from the same defect or more than 5% from cumulative defects during the warranty period, Seller will be responsible for all reasonable costs incurred in rectifying such failures, including testing and field-recovery costs.

**5. INSPECTION.** SINCO shall have thirty (30) days from the date of receipt of the Goods or Services deliverables and before payment to inspect them for conformity to the PO and applicable specifications and any statements of work signed by an authorized representative of SINCO, and Goods received prior to inspection shall not be deemed accepted until SINCO has run adequate tests to determine whether the Goods conform thereto. Use of a portion of the Goods for the purpose of testing shall not constitute an acceptance of the Goods. If Goods tendered do not wholly conform to the provisions hereof, SINCO shall have the right to reject such Goods. Nonconforming Goods will be returned to Seller freight collect and risk of loss will pass to Seller upon SINCO's delivery to the common carrier.  Any Goods not rejected after 30-day period shall be deemed accepted.

**6. TITLE AND RISK OF LOSS.** Unless otherwise specified on this PO, Goods shall be delivered DDP SINCO's location designated on the face hereof (Incoterms 2010), at which time title and risk of loss on the Goods shall pass to SINCO. If any of the Ordered Goods are destroyed prior to the time risk of loss passes to SINCO, SINCO may cancel this PO as to the destroyed Goods or require the prompt delivery of substitute Goods of equal quantity and quality.

**7. CHANGES.** SINCO may, by PO amendment issued to Seller, change (a) the method of shipment or packing, (b) the drawings, designs, or specifications, (c) the place of delivery, (d) the shipment date, (e) the quantity or (f) the delivery date. Seller shall promptly inform SINCO of any modifications to the delivery schedule necessitated by the changes within three (3) days from receipt of a PO amendment, Seller shall notify SINCO in writing of any increase or decrease in the cost of performance caused by a PO amendment and provide supporting documentation. SINCO shall make an equitable adjustment in the PO to reflect valid cost variances by the requested SINCO changes. Seller shall advise SINCO in writing of any foreseeable part shortages, and shall advise SINCO in writing six (6) months in advance of obsolescence and/or end-of-life situations that could prevent Seller from supporting SINCO ability to order Goods.

**8. ITEMS FURNISHED BY SINCO.** Unless otherwise specified by SINCO in writing, all designs, tools, patterns, drawings, data, materials, and equipment supplied or paid for by SINCO to Seller shall remain the property of SINCO, shall be used only for making the Goods for SINCO, shall be insured by Seller at replacement value, and shall be returned to SINCO in good condition upon completion of this PO. Seller assumes all responsibility for the accuracy of tooling used in the production of the Goods, whether such tooling is fabricated by Seller or furnished by SINCO.

**9. INDEMNITY.** Seller shall indemnify, hold harmless, and at SINCO's request, defend SINCO, its officers, directors, customers, agents and employees, against all claims, liabilities, damages, losses, and expenses, including attorneys' fees and cost of suit arising out of or in any way connected with the Goods or Services provided pursuant to a PO, including, without limitation, (i) any claim based on the death or bodily injury to any person, destruction or damage to property, or contamination of the environment and any associated cleanup costs, (ii) Seller failing to satisfy the guidelines for an independent contractor, (iii) any claim based on the negligence, omissions, or willful misconduct of Seller or any of Seller's Affiliates, (iv) Seller failing to satisfy its obligations with regard to the protection of Confidential Data as described in Section 10 below, (v) Seller failing to comply with a requirement of applicable law, and (vi) any claim by a third party against SINCO alleging that the Goods or Services, the results of such Services, or any other Goods or processes provided pursuant to a PO, infringe a patent, copyright, trademark, trade secret, or other proprietary right of a third party, whether such are provided alone or in combination with other products, software, or processes. Seller shall not settle any such suit or claim without SINCO's prior written approval. Seller agrees to pay or reimburse all costs that may be incurred by SINCO in enforcing this indemnity, including attorneys' fees. Should the use of any Goods or Services by SINCO, its distributors, subcontractors, or customers be enjoined, be threatened by injunction, or be the subject of any legal proceeding, Seller shall, at its sole cost and expense, either (a) substitute fully equivalent non-infringing Goods or Services; (b) modify the Goods or Services so that they no longer infringe but remain fully equivalent in functionality; (c) obtain for SINCO, its distributors, subcontractors, or customers the right to continue using the Goods or Services; or (d) if none of the foregoing is possible, refund all amounts paid for the infringing Goods or Services.

CONFIDENTIAL

**SINCO000109**

Sinco Technologies Pte Ltd | Version: 21 March 2014

**10. CONFIDENTIAL INFORMATION.** Seller shall not, without first obtaining SINCO written permission, advertise, publish, or disclose the terms, details, or specifications of this PO, the amount of revenue generated or to be generated from this PO, or the fact that is has furnished or has contracted to furnish SINCO with the Goods. Confidential Information means confidential or proprietary data, materials or information disclosed by SINCO to Seller: (i) in written, graphic, machine recognizable, electronic, sample, or any other tangible or visually perceptible form, which is clearly designated as "confidential" or "proprietary" at the time of disclosure; and (ii) in oral form, if it would be reasonable given the circumstances surrounding disclosure to conclude that SINCO considered such orally disclosed information confidential or proprietary ("Confidential Information"). Notwithstanding the foregoing, all SINCO information delivered by SINCO relating to this PO, including product specifications, prototypes, designs, samples, testing processes and results, quality and manufacturing procedures and requirements, customer information, software and related documentation, product or technology roadmaps, cost or price information, demand or volume information, market share, market or financial projections and other similar information, and the existence of this PO and its terms and conditions, is Confidential Information without regard to designation or written confirmation as "confidential" or "proprietary". Confidential Information is at at all times will remain the property of SINCO and SINCO's ability to use or disclose the Confidential Information is not and will not be restricted in any way. Seller shall: (i) maintain the confidentiality of Confidential Information and not disclose it to any third party, except as authorized by SINCO in writing; (ii) restrict disclosure of, and access to, Confidential Information to its employees, contractors and agents who a) have a "need to know" in order for Seller to perform its obligations under this PO, and b) are bound to maintain the confidentiality of the Confidential Information by terms of nondisclosure no less restrictive than contained herein; (iii) handle Confidential Information with the same degree of care as Seller uses for its own confidential information, but in no event less than reasonable care; (iv) use Confidential Information only for the purpose of performing and, to the extent necessary, to fulfill its obligations under this PO; and (v) promptly notify SINCO upon discovery of any unauthorized use, access or disclosure of the Confidential Information, take all necessary steps to regain possession and protection of the Confidential Information and prevent further unauthorized actions or breach of this PO. Except as otherwise provided in this PO, no use of any Confidential Information is permitted, and no grant under any Intellectual Property Rights of SINCO is given or intended, including any license implied or otherwise. Seller shall not directly or indirectly export or re-export any Confidential Information to any country for which any applicable government, at the time of export or re-export, requires an export license or other governmental approval, without first obtaining the license or approval. Seller shall not reverse engineer, de-compile, or disassemble any Confidential Information. If Seller is required to access SINCO computer resources, systems or premises, Seller shall, and shall cause any person who may require access on Seller's behalf to, first execute and deliver to SINCO, an information protection and security/confidentiality agreement. Upon fulfillment, expiration, or termination of this PO or receipt of SINCO's written request, Seller shall immediately stop using and return to SINCO all Property of SINCO and Confidential Information including without limitation all items that contain any Confidential Information, all SINCO-consigned inventory, all types of SINCO Property, all SINCO software and all other SINCO materials in Seller's possession. Seller acknowledges that Confidential Information contains information that is proprietary and valuable to SINCO and unauthorized dissemination or use of the Confidential Information will cause irreparable harm to SINCO. Seller's obligation to keep confidential the Confidential Information will survive for 5 years following the later of fulfillment, expiration or termination of this PO or Seller's return or destruction of the Confidential Information and certification of such return or destruction. The provisions of this Clause shall survive the termination of this Agreement but the restrictions contained above shall cease to apply to any information which may come into the public domain otherwise than through unauthorized disclosure by the Seller or its employees.

**11. TERMINATION.** SINCO may terminate all or any part of this PO immediately at any time for its convenience, without liability to Seller, even Goods designated as non-cancelable/nonreturnable, upon written notice to Seller. Seller will thereupon immediately (a) stop work on the cancelled Goods (b) notify its subcontractors to do likewise, (c) cancel orders for components for the cancelled Goods, (d) return unneeded components for cancelled Goods to their Sellers or divert such components to jobs for other customers, and (e) broker nonreturnable unneeded components for cancelled Goods. In addition to all remedies provided elsewhere in this PO and at law or in equity, SINCO also may terminate this PO immediately, without liability to Seller upon written notice if Seller: (a) fails to comply with any provision of this PO; (b) delivers a Goods or Service late; (c) provides a Goods or Service that fails to meet SINCO's requirements; (d) delivers a Goods or Service which is defective or which does not conform to this PO; (e) fails to perform as agreed or to provide reasonable assurances of future performance upon request; (f) provides a Goods or Service that infringes or misappropriates any Intellectual Property Right. Upon fulfillment, expiration or termination of this PO, at SINCO's request, Seller will transfer all records that pertain to this PO to SINCO, but retain a copy of any records required to be kept by law, rule, regulation, or in connection with any legal process or proceeding, subject at all times to applicable confidentiality obligations.

**12. General**

<u>12.1 FORCE MAJEURE.</u> Neither party will be liable for any failure to perform, including failure to accept performance of Services or take delivery of the Goods as provided, caused by circumstances beyond its reasonable control, but not limited to, acts of God, acts of war, government action or accident, provided it promptly notifies the other party and uses reasonable efforts to correct its failure to perform.

<u>12.2 Severability.</u> If any provisions of this Agreement or any document made in connection with this Agreement is determined by any court, tribunal or administrative body of a competent jurisdiction to be wholly or partly unenforceable for any reason, that unenforceability shall not affect the rest of this Agreement, the unenforceable part being deemed severed and deleted and the remainder continuing in full force and effect.

<u>12.3 Legal and Regulatory Approvals.</u> The Seller shall be responsible for ascertaining and obtaining the necessary legal and regulatory approvals required for its employees and/or agents as may be required to be present at the Site to perform the Seller's obligations under this Agreement.

<u>12.4 Governing Law and Jurisdiction.</u> This Agreement is governed by and is to be construed in accordance with Singapore law and the parties agree to submit to the non-exclusive jurisdiction of the courts of Singapore. The application of the United Nations Convention on Contracts for the International Sale of Goods 1980 to this Contract is hereby expressly excluded.

<u>12.5 Third Parties.</u> A person who is not a party to this Agreement herein shall have no rights under the Contracts (Rights of Third Parties) Act (Cap. 53B).

<u>12.6 Counterparts.</u> This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and together shall constitute one document.

<u>12.7 Exclusions.</u> Nothing in this Agreement shall exclude or limit liability for death or personal injury resulting from the negligence of party or their servants, agents or employees.

<u>12.8 Reliance.</u> The Seller accepts that SINCO will be relying and relies on, *inter alia*, the skill and judgment of the Seller in relation to the design, description, manufacturing, quality, reliability, function, suitability and performance of the Products or Services to be provided, and that any supply of samples of the Products by the Seller to SINCO shall not in any way prejudice or affect the reliance placed by SINCO on the Seller as such.

<u>12.9 Notices.</u> Any notice to be served on either of the parties shall be sent to the address as stated herein or to such change of address as notified by the other party by registered post, facsimile transmission or by electronic mail and shall be deemed to have been received by the addressee within seven (7) days of posting or within twenty-four (24) hours if sent by fax or electronic mail with correct answerback.

<u>12.10 Service of Process.</u> Where the Seller does not have a presence in Singapore, it shall irrevocably authorize and appoint an agent who is resident in the Republic of Singapore as the Seller may by writing to SINCO inform, to accept service of all legal process arising out of or connected with this Agreement and service on such agent or such substitute shall be deemed to be service on the Seller. The Seller hereby undertakes to furnish SINCO with the name and particulars of such agent in the Republic of Singapore within seven (7) days from the   date of this Agreement and further undertakes to inform SINCO of a substitute in the event the appointed agent no longer resides in Singapore or is no longer the Seller's agent for  the  purposes hereunder within fourteen (14) days of the agent no longer residing in Singapore or no longer being the Seller's agent for the purposes hereunder.

<u>12.11 Variation.</u> This Agreement shall not be varied, modified, supplemented, amended or cancelled in any respect unless such variation, modification, supplement, amendment or cancellation is expressly agreed in writing by each party or a duly authorized representative of such party. In addition to obligations of the Seller set out in the Purchase Order, the parties shall agree any other variations in writing hereto, including without limitation, such specifications with regards to printing and numbering on the Products or Services and identification of the cartons and such other documents identifying and/or listing the contents of each delivery or shipment.

<u>12.12 Reasonableness.</u> The Seller acknowledges that the provisions of the Agreement herein are fair and reasonable, and that the Seller accepts the same on an informed basis after having (where it deemed to be necessary by the Seller) consulted its own legal advisers.

<u>12.13 SURVIVAL OF OBLIGATIONS.</u> Any obligations and duties that by their nature extend beyond the expiration or termination of this Agreement shall survive the expiration or termination of this Agreement.

CONFIDENTIAL

**SINCO000110**

Sinco Technologies Pte Ltd | Version: 21 March 2014



# EXHIBIT L



Generated on: This page was generated by TSDR on 2019-08-21 14:09:54 EDT

Mark: SINCO

US Serial Number: 87307929

Filed as TEAS Yes
Plus:

Register: Principal

Mark Type: Service Mark

Application Filing Jan. 20, 2017
Date:

Currently TEAS Yes
Plus:

TM5 Common Status
Descriptor:



DEAD/APPLICATION/Refused/Dismissed or Invalidated

This trademark application was refused, dismissed, or invalidated by the Office
and this application is no longer active.

Status: Abandoned after an inter partes decision by the Trademark Trial and Appeal Board. For further information, see TTABVUE on the
Trademark Trial and Appeal Board web page.

Status Date: Jan. 17, 2018

Publication Date: Sep. 12, 2017

Date Abandoned: Jan. 17, 2018

## Mark Information

Mark Literal SINCO
Elements:

Standard Character No
Claim:

Mark Drawing 5 - AN ILLUSTRATION DRAWING WITH WORD(S) /LETTER(S)/ NUMBER(S) INSTYLIZED FORM
Type:

Description of The mark consists of the stylized wording "SINCO".
Mark:

Color(s) Claimed: Color is not claimed as a feature of the mark.

## Goods and Services

Note:
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

For: Authenticating works of art; Chemical research; Electronic data storage; Physics research; Consulting services in the field of cloud
computing; Research in the field of energy

International 042 - Primary Class
Class(es):

U.S Class(es): 100, 101

Class Status: ABANDONED

Basis: 1(b)

## Basis Information (Case Level)

Filed Use: No

Filed ITU: Yes

Filed 44D: No

Filed 44E: No

Filed 66A: No

Filed No Basis: No

Currently Use: No

Currently ITU: Yes

Currently 44E: No

Currently 66A: No

Currently No Basis: No

# Current Owner(s) Information

| | |
|---|---|
| **Owner Name:** | SinCo Electronics (Dongguan) Co.,Ltd. |
| **Owner Address:** | SinCo Industrial Park,HuaiBei St. |
| | HuaiDe District Humen |
| | Dongguan, Guangdong CHINA |
| **Legal Entity Type:** | limited company (ltd.) |
| **State or Country Where Organized** | CHINA |

# Attorney/Correspondence Information

### Attorney of Record - None

### Correspondent

| | |
|---|---|
| **Correspondent Name/Address:** | HUANG JUE |
| | 4C 4/F JIUZHOU DIANQI BLDG |
| | NO 7 KEJINAN 12TH RD NANSHAN DIST |
| | SHENZHEN GUANGDONG CHINA 518000 |

### Domestic Representative - Not Found

# Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Jan. 17, 2018 | ABANDONMENT NOTICE MAILED - INTER PARTES DECISION | |
| Jan. 17, 2018 | ABANDONMENT - AFTER INTER PARTES DECISION | |
| Jan. 17, 2018 | OPPOSITION TERMINATED NO. 999999 | 237005 |
| Jan. 17, 2018 | OPPOSITION SUSTAINED NO. 999999 | 237005 |
| Oct. 03, 2017 | OPPOSITION INSTITUTED NO. 999999 | 237005 |
| Sep. 30, 2017 | OPPOSITION PAPERS RECEIVED AT TTAB | |
| Sep. 13, 2017 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Sep. 12, 2017 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED | |
| Sep. 12, 2017 | PUBLISHED FOR OPPOSITION | |
| Aug. 23, 2017 | NOTIFICATION OF NOTICE OF PUBLICATION E-MAILED | |
| Aug. 05, 2017 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Aug. 04, 2017 | TEAS/EMAIL CORRESPONDENCE ENTERED | 88889 |
| Aug. 04, 2017 | CORRESPONDENCE RECEIVED IN LAW OFFICE | 88889 |
| Aug. 04, 2017 | TEAS RESPONSE TO OFFICE ACTION RECEIVED | |
| Apr. 17, 2017 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | 6325 |
| Apr. 17, 2017 | NON-FINAL ACTION E-MAILED | 6325 |
| Apr. 17, 2017 | NON-FINAL ACTION WRITTEN | 83187 |
| Apr. 10, 2017 | ASSIGNED TO EXAMINER | 83187 |
| Jan. 27, 2017 | NOTICE OF PSEUDO MARK E-MAILED | |
| Jan. 26, 2017 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM | |
| Jan. 24, 2017 | NEW APPLICATION ENTERED IN TRAM | |

# TM Staff and Location Information

### TM Staff Information

| | | | |
|---|---|---|---|
| **TM Attorney:** | HACK, ANDREA R | **Law Office Assigned:** | LAW OFFICE 108 |

### File Location

| | | | |
|---|---|---|---|
| **Current Location:** | TTAB | **Date in Location:** | Jan. 17, 2018 |

# Proceedings

### Summary

| | |
|---|---|
| **Number of Proceedings:** | 1 |

**Type of Proceeding: Opposition**

| | |
|---|---|
| **To:** | SinCo Electronics (Dongguan) Co.,Ltd. (weiyumm05@163.com) |
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 87307929 - SINCO - N/A |
| **Sent:** | 4/17/2017 12:02:35 PM |
| **Sent As:** | ECOM108@USPTO.GOV |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |
| | Attachment - 8 |
| | Attachment - 9 |
| | Attachment - 10 |
| | Attachment - 11 |
| | Attachment - 12 |
| | Attachment - 13 |
| | Attachment - 14 |
| | Attachment - 15 |
| | Attachment - 16 |
| | Attachment - 17 |
| | Attachment - 18 |

**UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)**

**OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION**

**U.S. APPLICATION SERIAL NO.** 87307929

**MARK:** SINCO

**CORRESPONDENT ADDRESS:**
HUANG JUE; SINCO ELECTRONICS (DONGGUAN)
HUAIDE DISTRICT HUMEN
SINCO INDUSTRIAL PARK,HUAIBEI ST.
DONGGUAN, GUANGDONG
CHINA

**APPLICANT:** SinCo Electronics (Dongguan) Co.,Ltd.

**CORRESPONDENT'S REFERENCE/DOCKET NO :**
N/A

**CORRESPONDENT E-MAIL ADDRESS:**
weiyumm05@163.com

**\*87307929\***

**CLICK HERE TO RESPOND TO THIS LETTER:**
http://www.uspto.gov/trademarks/teas/response_forms.jsp

VIEW YOUR APPLICATION FILE

**OFFICE ACTION**

# STRICT DEADLINE TO RESPOND TO THIS LETTER

THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW. A RESPONSE TRANSMITTED THROUGH THE TRADEMARK ELECTRONIC APPLICATION SYSTEM (TEAS) MUST BE RECEIVED BEFORE MIDNIGHT **EASTERN TIME** OF THE LAST DAY OF THE RESPONSE PERIOD.

**ISSUE/MAILING DATE:** 4/17/2017

The referenced application has been reviewed by the assigned trademark examining attorney. Applicant must respond timely and completely to the issue(s) below. 15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

Specifically, applicant must address the following Section 2(d) refusal.

---

**Refusal – Likelihood of Confusion**

Registration of the applied-for mark is refused because of a likelihood of confusion with the marks in U.S. Registration Nos. 4524165 and 4524172. Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.* See the attached registrations, which are owned by the same entity.

---

**NOTE: This refusal applies only to the following services listed in the application:**

> **Computer system design services; Construction drafting; Consultancy in the design and development of computer hardware; Industrial design; Mechanical research; Scientific research; Surveying; Technical research in the field of aeronautics; Technical research in the field of pharmaceutical studies; Product quality evaluation.**

In any likelihood of confusion determination, two key considerations are similarity of the marks and similarity or relatedness of the goods and/or services. *In re Fat Boys Water Sports LLC*, 118 USPQ2d 1511, 1516 (TTAB 2016) (citing *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103, 192 USPQ 24, 29 (C.C.P.A. 1976)); *see* TMEP §1207.01. That is, the marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression. *In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (quoting *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973)); TMEP §1207.01(b)-(b)(v). Additionally, the goods and/or services are compared to determine whether they are similar or commercially related or travel in the same trade channels. *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369-71, 101 USPQ2d 1713, 1722-23 (Fed. Cir. 2012); *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1165, 64 USPQ2d 1375, 1381 (Fed. Cir. 2002); TMEP §1207.01, (a)(vi).

*Comparing the Marks*

Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression. *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar." *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014) (citing *In re 1st USA Realty Prof'ls, Inc.*, 84 USPQ2d 1581, 1586 (TTAB 2007)); *In re White Swan Ltd.*, 8 USPQ2d 1534, 1535 (TTAB 1988)); TMEP §1207.01(b).

When comparing marks, the test is not whether the marks can be distinguished in a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their overall commercial impression that confusion as to the source of the goods and/or services offered under the

respective marks is likely to result. *Midwestern Pet Foods, Inc. v. Societe des Produits Nestle S.A.*, 685 F.3d 1046, 1053, 103 USPQ2d 1435, 1440 (Fed. Cir. 2012); *In re Bay State Brewing Co.*, 117 USPQ2d 1958, 1960 (TTAB 2016) (quoting *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012)); TMEP §1207.01(b). The proper focus is on the recollection of the average purchaser, who retains a general rather than specific impression of trademarks. *In re Bay State Brewing Co.*, 117 USPQ2d at 1960 (citing *Spoons Rests. Inc. v. Morrison Inc.*, 23 USPQ2d 1735, 1741 (TTAB 1991), *aff'd per curiam*, 972 F.2d 1353 (Fed. Cir. 1992)); *In re C.H. Hanson Co.*, 116 USPQ2d 1351, 1353 (TTAB 2015) (citing *Joel Gott Wines LLC v. Rehoboth Von Gott Inc.*, 107 USPQ2d 1424, 1430 (TTAB 2013)); TMEP §1207.01(b).

> Here, applicant's mark is "SINCO" in stylized characters; registrant's marks are "SINCO" in standard characters (Reg. No. 4524165) and "SINCO" in stylized characters with a round design behind the wording (Reg. No. 4524172).

The stylization of the characters in applicant's mark and in Reg. No. 4524172 is nearly identical if not identical. The only difference between these two marks is the round design appearing behind the wording. This design element is not as significant as the wording itself in conveying the source of the services to consumers. For a composite mark containing both words and a design, the word portion may be more likely to indicate the origin of the goods and/or services because it is that portion of the mark that consumers use when referring to or requesting the goods and/or services. *Bond v. Taylor*, 119 USPQ2d 1049, 1055 (TTAB 2016) (citing *In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908, 1911 (Fed. Cir. 2012)); TMEP §1207.01(c)(ii). Thus, although such marks must be compared in their entireties, the word portion is often considered the dominant feature and is accorded greater weight in determining whether marks are confusingly similar, even where the word portion has been disclaimed. *In re Viterra Inc.*, 671 F.3d at 1366-67, 101 USPQ2d at 1911 (citing *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1570-71, 218 USPQ2d 390, 395 (Fed. Cir. 1983)).

Similarly, a mark in standard characters may be displayed in any lettering style; the rights reside in the wording or other literal element and not in any particular display or rendition. *See In re Viterra Inc.*, 671 F.3d 1358, 1363, 101 USPQ2d 1905, 1909 (Fed. Cir. 2012); *In re Mighty Leaf Tea*, 601 F.3d 1342, 1348, 94 USPQ2d 1257, 1260 (Fed. Cir. 2010); 37 C.F.R. §2.52(a); TMEP §1207.01(c)(iii). Thus, a mark presented in stylized characters, such as applicant's, generally will not avoid likelihood of confusion with a mark in standard characters, such as Reg. No. 4524165, because the marks could be presented in the same manner of display. *See, e.g.*, *In re Viterra Inc.*, 671 F.3d at 1363, 101 USPQ2d at 1909; *Squirtco v. Tomy Corp.*, 697 F.2d 1038, 1041, 216 USPQ 937, 939 (Fed. Cir. 1983) (stating that "the argument concerning a difference in type style is not viable where one party asserts rights in no particular display").

Thus, when comparing the marks as a whole, the overall impression is that of highly similar marks.

### *Comparing the Services*

The services of the parties need not be identical or even competitive to find a likelihood of confusion. *See On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 1086, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000) ("[E]ven if the goods in question are different from, and thus not related to, one another in kind, the same goods can be related in the mind of the consuming public as to the origin of the goods."); TMEP §1207.01(a)(i).

The respective services need only be "related in some manner and/or if the circumstances surrounding their marketing [be] such that they could give rise to the mistaken belief that [the services] emanate from the same source." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1724 (TTAB 2007)); TMEP §1207.01(a)(i).

Here, applicant's services are:

International Class 042:  Authenticating works of art; Chemical research; Computer system design services; Construction drafting; Consultancy in the design and development of computer hardware; Electronic data storage; Industrial design; Mechanical research; Physics research; Scientific research; Surveying; Technical research in the field of aeronautics; Technical research in the field of pharmaceutical studies; Consulting services in the field of cloud computing; Product quality evaluation; Research in the field of energy.

The cited registrations both list goods and/or services in multiple classes, but the significant services listed in both registrations are "Design engineering; industrial engineering design services" in International Class 042.

Attached evidence shows that the field of industrial engineering encompasses many of the services listed by the applicant. Specifically, it

encompasses and includes these services listed by the applicant:

> Computer system design services; Construction drafting; Consultancy in the design and development of computer hardware; Industrial design; Mechanical research; Scientific research; Surveying; Technical research in the field of aeronautics; Technical research in the field of pharmaceutical studies; Product quality evaluation.

When analyzing an applicant's and registrant's services for similarity and relatedness, that determination is based on the description of the services stated in the application and registration at issue, not on extrinsic evidence of actual use. *See Octocom Sys. Inc. v. Hous. Computers Servs. Inc.*, 918 F.2d 937, 942, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990); *see also Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 1267, 62 USPQ2d 1001, 1004 (Fed. Cir. 2002).

Absent restrictions in an application and/or registration, the identified services are presumed to travel in the same channels of trade to the same class of purchasers. *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1356, 98 USPQ2d 1253, 1261 (Fed. Cir. 2011); *Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d at 1268, 62 USPQ2d at 1005. Additionally, unrestricted and broad identifications are presumed to encompass all services of the type described. *See In re Jump Designs*, 80 USPQ2d 1370, 1374 (TTAB 2006); *In re Linkvest S.A.*, 24 USPQ2d 1716, 1716 (TTAB 1992).

In this case, the identification set forth in the registration has no restrictions as to nature, type, channels of trade, or classes of purchasers. Therefore, it is presumed that these services travel in all normal channels of trade, and are available to the same class of purchasers. Further, the registrations use broad wording to describe the services and this wording is presumed to encompass all services of the type described, including those in applicant's more narrow identification.

Thus, applicant's services are highly related to registrant's services.

*Conclusion*

In sum, for the reasons stated above, registration is refused because of a likelihood of confusion with the registered marks for the services indicated.

Although applicant's mark has been refused registration, applicant may respond to the refusal by submitting evidence and arguments in support of registration.

**Response Guidelines**

**If applicant does not respond to this Office action within the six-month period for response, the following services will be deleted from the application:**

> Computer system design services; Construction drafting; Consultancy in the design and development of computer hardware; Industrial design; Mechanical research; Scientific research; Surveying; Technical research in the field of aeronautics; Technical research in the field of pharmaceutical studies; Product quality evaluation.

The application will then proceed with the following services only:

> Authenticating works of art; Chemical research; Electronic data storage; Physics research; Consulting services in the field of cloud computing; Research in the field of energy.

*See* 37 C.F.R. §2.65(a)-(a)(1); TMEP §718.02(a).

If applicant has questions about the application or this Office action, please contact the assigned trademark examining attorney at the telephone

number or email address below.  Applicant is encouraged to contact the examining attorney via email or telephone to make required changes to the application through an examiner's amendment.

To expedite prosecution of the application, applicant is encouraged to file its response to this Office action online via the Trademark Electronic Application System (TEAS), which is available at http://www.uspto.gov/trademarks/teas/index.jsp.  If applicant has technical questions about the TEAS response to Office action form, applicant can review the electronic filing tips available online at http://www.uspto.gov/trademarks/teas/e_filing_tips.jsp and e-mail technical questions to TEAS@uspto.gov.

 **TEAS PLUS OR TEAS REDUCED FEE (TEAS RF) APPLICANTS – TO MAINTAIN LOWER FEE, ADDITIONAL REQUIREMENTS MUST BE MET, INCLUDING SUBMITTING DOCUMENTS ONLINE:**  Applicants who filed their application online using the lower-fee TEAS Plus or TEAS RF application form must (1) file certain documents online using TEAS, including responses to Office actions (see TMEP §§819.02(b), 820.02(b) for a complete list of these documents); (2) maintain a valid e-mail correspondence address; and (3) agree to receive correspondence from the USPTO by e-mail throughout the prosecution of the application.  *See* 37 C.F.R. §§2.22(b), 2.23(b); TMEP §§819, 820.  TEAS Plus or TEAS RF applicants who do not meet these requirements must submit an additional processing fee of $125 per class of goods and/or services.  37 C.F.R. §§2.6(a)(1)(v), 2.22(c), 2.23(c); TMEP §§819.04, 820.04.  However, in certain situations, TEAS Plus or TEAS RF applicants may respond to an Office action by authorizing an examiner's amendment by telephone or e-mail without incurring this additional fee.

/Andrea Hack/

Trademark Examining Attorney

U.S. Patent & Trademark Office

Law Office 108

571-272-5413 (ph.)

andrea.hack@uspto.gov

**TO RESPOND TO THIS LETTER:**  Go to http://www.uspto.gov/trademarks/teas/response_forms.jsp.  Please wait 48-72 hours from the issue/mailing date before using the Trademark Electronic Application System (TEAS), to allow for necessary system updates of the application.  For *technical* assistance with online forms, e-mail TEAS@uspto.gov.  For questions about the Office action itself, please contact the assigned trademark examining attorney.  **E-mail communications will not be accepted as responses to Office actions; therefore, do not respond to this Office action by e-mail.**

**All informal e-mail communications relevant to this application will be placed in the official application record.**

**WHO MUST SIGN THE RESPONSE:**  It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants).  If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:**  To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using the Trademark Status and Document Retrieval (TSDR) system at http://tsdr.uspto.gov/.  Please keep a copy of the TSDR status screen.  If the status shows no change for more than six months, contact the Trademark Assistance Center by e-mail at TrademarkAssistanceCenter@uspto.gov or call 1-800-786-9199.  For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:**  Use the TEAS form at http://www.uspto.gov/trademarks/teas/correspondence.jsp.

| To: | SinCo Electronics (Dongguan) Co.,Ltd. (weiyumm05@163.com) |
| Subject: | U.S. TRADEMARK APPLICATION NO. 87307929 - SINCO - N/A |
| Sent: | 4/17/2017 12:02:37 PM |
| Sent As: | ECOM108@USPTO.GOV |
| Attachments: | |

### UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)

## IMPORTANT NOTICE REGARDING YOUR
## U.S. TRADEMARK APPLICATION

### USPTO OFFICE ACTION (OFFICIAL LETTER) HAS ISSUED
### ON 4/17/2017 FOR U.S. APPLICATION SERIAL NO. 87307929

Your trademark application has been reviewed. The trademark examining attorney assigned by the USPTO to your application has written an official letter to which you must respond. Please follow these steps:

**(1) READ THE LETTER** by clicking on this link or going to http://tsdr.uspto.gov/, entering your U.S. application serial number, and clicking on "Documents."

The Office action may not be immediately viewable, to allow for necessary system updates of the application, but will be available within 24 hours of this e-mail notification.

**(2) RESPOND WITHIN 6 MONTHS** (*or sooner if specified in the Office action*), calculated from 4/17/2017, using the Trademark Electronic Application System (TEAS) response form located at http://www.uspto.gov/trademarks/teas/response_forms.jsp. A response transmitted through TEAS must be received before midnight **Eastern Time** of the last day of the response period.

**Do NOT hit "Reply" to this e-mail notification, or otherwise e-mail your response** because the USPTO does NOT accept e-mails as responses to Office actions.

**(3) QUESTIONS** about the contents of the Office action itself should be directed to the trademark examining attorney who reviewed your application, identified below.

/Andrea Hack/

Trademark Examining Attorney

U.S. Patent & Trademark Office

Law Office 108

571-272-5413 (ph.)

andrea.hack@uspto.gov



**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA 22313-1451
www.uspto.gov

Jan 17, 2018

## NOTICE OF ABANDONMENT

TM108

HUANG JUE
4C 4/F JIUZHOU DIANQI BLDG NO 7 KEJINAN
12TH RD NANSHAN DIST
SHENZHEN GUANGDONG , 518000 CHINA

ATTORNEY
REFERENCE
NUMBER:

**SERIAL NUMBER:**  87/307929
**MARK:**  SINCO
**APPLICANT:**  SinCo Electronics (Dongguan) Co.,Ltd.

THE ABOVE IDENTIFIED TRADEMARK APPLICATION WAS ABANDONED ON 01/17/2018 FOR THE FOLLOWING REASON:

AS A RESULT OF THE TRADEMARK TRIAL AND APPEAL BOARD PROCEEDINGS, THE ABOVE IDENTIFIED APPLICATION STANDS ABANDONED.

Generated on: This page was generated by TSDR on 2019-08-21 14:13:55 EDT

Mark: SINCO



| US Serial Number: | 87307939 | Application Filing Date: | Jan. 20, 2017 |
|---|---|---|---|
| Filed as TEAS Plus: | Yes | Currently TEAS Plus: | Yes |
| Register: | Principal | | |
| Mark Type: | Service Mark | | |
| Status: | Abandoned after an inter partes decision by the Trademark Trial and Appeal Board. For further information, see TTABVUE on the Trademark Trial and Appeal Board web page. | | |
| Status Date: | Jan. 17, 2018 | | |
| Publication Date: | Sep. 12, 2017 | | |
| Date Abandoned: | Jan. 17, 2018 | | |

# Mark Information

| Mark Literal Elements: | SINCO |
|---|---|
| Standard Character Claim: | No |
| Mark Drawing Type: | 5 - AN ILLUSTRATION DRAWING WITH WORD(S) /LETTER(S)/ NUMBER(S) INSTYLIZED FORM |
| Description of Mark: | The mark consists of the stylized wording "SINCO". |
| Color(s) Claimed: | Color is not claimed as a feature of the mark. |

# Goods and Services

Note:
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| For: | Air purification; Bookbinding; Embroidery services; Firing pottery; Production of energy; Rental of heating boilers; Treatment of materials in the nature of Chemical reagents | | |
|---|---|---|---|
| International Class(es): | 040 - Primary Class | U.S Class(es): | 100, 103, 106 |
| Class Status: | ABANDONED | | |
| Basis: | 1(b) | | |

# Basis Information (Case Level)

| Filed Use: | No | Currently Use: | No | Amended Use: | No |
|---|---|---|---|---|---|
| Filed ITU: | Yes | Currently ITU: | Yes | Amended ITU: | No |
| Filed 44D: | No | Currently 44D: | No | Amended 44D: | No |
| Filed 44E: | No | Currently 44E: | No | Amended 44E: | No |
| Filed 66A: | No | Currently 66A: | No | Amended 66A: | No |
| Filed No Basis: | No | Currently No Basis: | No | | |

# Current Owner(s) Information

| Owner Name: | SinCo Electronics (Dongguan) Co.,Ltd. |
|---|---|
| Owner Address: | SinCo Industrial Park,HuaiBei St. HuaiDe District Humen |

Dongguan, Guangdong
CHINA

Legal Entity Type: limited company (ltd.)  State or Country  CHINA
Where Organized:

## Attorney/Correspondence Information

### Attorney of Record - None

### Correspondent

Correspondent  HUANG JUE
Name/Address:  4C 4/F JIUZHOU DIANQI BLDG
NO 7 KEJINAN 12TH RD NANSHAN DIST
SHENZHEN GUANGDONG 518000
CHINA

### Domestic Representative - Not Found

## Prosecution History

| Date | Description | Proceeding Number |
|------|-------------|-------------------|
| Jan. 17, 2018 | ABANDONMENT NOTICE MAILED - INTER PARTES DECISION | |
| Jan. 17, 2018 | ABANDONMENT - AFTER INTER PARTES DECISION | |
| Jan. 17, 2018 | OPPOSITION TERMINATED NO. 999999 | 237005 |
| Jan. 17, 2018 | OPPOSITION SUSTAINED NO. 999999 | 237005 |
| Oct. 03, 2017 | OPPOSITION INSTITUTED NO. 999999 | 237005 |
| Oct. 04, 2017 | OPPOSITION PAPERS RECEIVED AT TTAB | |
| Sep. 13, 2017 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Sep. 12, 2017 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED | |
| Sep. 12, 2017 | PUBLISHED FOR OPPOSITION | |
| Aug. 23, 2017 | NOTIFICATION OF NOTICE OF PUBLICATION E-MAILED | |
| Aug. 05, 2017 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Aug. 04, 2017 | TEAS/EMAIL CORRESPONDENCE ENTERED | 88889 |
| Aug. 04, 2017 | CORRESPONDENCE RECEIVED IN LAW OFFICE | 88889 |
| Aug. 04, 2017 | TEAS RESPONSE TO OFFICE ACTION RECEIVED | |
| Apr. 17, 2017 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | 6325 |
| Apr. 17, 2017 | NON-FINAL ACTION E-MAILED | 6325 |
| Apr. 17, 2017 | NON-FINAL ACTION WRITTEN | 83187 |
| Apr. 10, 2017 | ASSIGNED TO EXAMINER | 83187 |
| Jan. 27, 2017 | NOTICE OF PSEUDO MARK E-MAILED | |
| Jan. 26, 2017 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM | |
| Jan. 24, 2017 | NEW APPLICATION ENTERED IN TRAM | |

## TM Staff and Location Information

### TM Staff Information

TM Attorney:  HACK, ANDREA R  Law Office  LAW OFFICE 108
Assigned:

### File Location

Current Location:  TTAB  Date in Location:  Jan. 17, 2018

## Proceedings

### Summary

Number of  1
Proceedings:

### Type of Proceeding: Opposition

Proceeding  91237005  Filing Date:  Sep 29, 2017
Number:

Status:  Terminated  Status Date:  Jan 17, 2018

| To: | SinCo Electronics (Dongguan) Co.,Ltd. (weiyumm05@163.com) |
|---|---|
| **Subject:** | U.S. TRADEMARK APPLICATION NO. 87307939 - SINCO - N/A |
| **Sent:** | 4/17/2017 12:03:59 PM |
| **Sent As:** | ECOM108@USPTO.GOV |
| **Attachments:** | Attachment - 1 |
| | Attachment - 2 |
| | Attachment - 3 |
| | Attachment - 4 |
| | Attachment - 5 |
| | Attachment - 6 |
| | Attachment - 7 |

**UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)**

**OFFICE ACTION (OFFICIAL LETTER) ABOUT APPLICANT'S TRADEMARK APPLICATION**

**U.S. APPLICATION SERIAL NO.** 87307939

**MARK:** SINCO

**\*87307939\***

**CORRESPONDENT ADDRESS:**
    HUANG JUE; SINCO ELECTRONICS (DONGGUAN)
    HUAIDE DISTRICT HUMEN
    SINCO INDUSTRIAL PARK,HUAIBEI ST.
    DONGGUAN, GUANGDONG
    CHINA

**CLICK HERE TO RESPOND TO THIS LETTER:**
http://www.uspto.gov/trademarks/teas/response_forms.jsp

**VIEW YOUR APPLICATION FILE**

**APPLICANT:** SinCo Electronics (Dongguan) Co.,Ltd.

**CORRESPONDENT'S REFERENCE/DOCKET NO :**
    N/A

**CORRESPONDENT E-MAIL ADDRESS:**
    weiyumm05@163.com

# OFFICE ACTION

## STRICT DEADLINE TO RESPOND TO THIS LETTER

THE USPTO MUST RECEIVE APPLICANT'S COMPLETE RESPONSE TO THIS LETTER **WITHIN 6 MONTHS** OF THE ISSUE/MAILING DATE BELOW.  A RESPONSE TRANSMITTED THROUGH THE TRADEMARK ELECTRONIC APPLICATION SYSTEM (TEAS) MUST BE RECEIVED BEFORE MIDNIGHT **EASTERN TIME** OF THE LAST DAY OF THE RESPONSE PERIOD.

**ISSUE/MAILING DATE: 4/17/2017**

The referenced application has been reviewed by the assigned trademark examining attorney.  Applicant must respond timely and completely to the issue(s) below.  15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

Specifically, applicant must address the following Section 2(d) refusal.

**Refusal – Likelihood of Confusion**

Registration of the applied-for mark is refused because of a likelihood of confusion with the marks in U.S. Registration Nos. 4524165 and 4524172.  Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.*  See the attached registrations, which are owned by the same entity.

**NOTE:  This refusal applies only to the following services listed in the application:**

> **Material treatment services in connection with recycling; Metal casting; Metal plating; Metal treating; Optical glass grinding; Printing; Soldering; Woodworking; Treatment of materials for the manufacture of ceramic goods; Treatment of materials in the nature of metals, stones, plastics.**

In any likelihood of confusion determination, two key considerations are similarity of the marks and similarity or relatedness of the goods and/or services.  *In re Fat Boys Water Sports LLC*, 118 USPQ2d 1511, 1516 (TTAB 2016) (citing *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103, 192 USPQ 24, 29 (C.C.P.A. 1976)); *see* TMEP §1207.01.  That is, the marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression.  *In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012) (quoting *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973)); TMEP §1207.01(b)-(b)(v).  Additionally, the goods and/or services are compared to determine whether they are similar or commercially related or travel in the same trade channels.  *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369-71, 101 USPQ2d 1713, 1722-23 (Fed. Cir. 2012); *Herbko Int'l, Inc. v. Kappa Books, Inc.* , 308 F.3d 1156, 1165, 64 USPQ2d 1375, 1381 (Fed. Cir. 2002); TMEP §1207.01, (a)(vi).

*Comparing the Marks*

Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression.  *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v).  "Similarity in any one of these elements may be sufficient to find the marks confusingly similar."  *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014) (citing *In re 1st USA Realty Prof'ls, Inc.* , 84 USPQ2d 1581, 1586 (TTAB 2007)); *In re White Swan Ltd.*, 8 USPQ2d 1534, 1535 (TTAB 1988)); TMEP §1207.01(b).

When comparing marks, the test is not whether the marks can be distinguished in a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their overall commercial impression that confusion as to the source of the goods and/or services offered under the respective marks is likely to result.  *Midwestern Pet Foods, Inc. v. Societe des Produits Nestle S.A.*, 685 F.3d 1046, 1053, 103 USPQ2d 1435, 1440 (Fed. Cir. 2012); *In re Bay State Brewing Co.*, 117 USPQ2d 1958, 1960 (TTAB 2016) (quoting *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1368, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012)); TMEP §1207.01(b).  The proper focus is on the recollection of the average purchaser, who retains a general rather than specific impression of trademarks.  *In re Bay State Brewing Co.*, 117 USPQ2d at 1960 (citing *Spoons Rests. Inc. v. Morrison Inc.*, 23 USPQ2d 1735, 1741 (TTAB 1991), *aff'd per curiam* , 972 F.2d 1353 (Fed. Cir. 1992)); *In re C.H. Hanson Co.*, 116 USPQ2d 1351, 1353 (TTAB 2015) (citing *Joel Gott Wines LLC v. Rehoboth Von Gott Inc.*, 107 USPQ2d 1424, 1430 (TTAB 2013)); TMEP §1207.01(b).

Here, applicant's mark is "SINCO" in stylized characters; registrant's marks are "SINCO" in standard characters (Reg. No. 4524165) and "SINCO" in stylized characters with a round design behind the wording (Reg. No. 4524172).

The stylization of the characters in applicant's mark and in Reg. No. 4524172 is nearly identical if not identical.   The only difference between these two marks is the round design appearing behind the wording.  This design element is not as significant as the wording itself in conveying the source of the services to consumers.  For a composite mark containing both words and a design, the word portion may be more likely to

indicate the origin of the goods and/or services because it is that portion of the mark that consumers use when referring to or requesting the goods and/or services. *Bond v. Taylor*, 119 USPQ2d 1049, 1055 (TTAB 2016) (citing *In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908, 1911 (Fed. Cir. 2012)); TMEP §1207.01(c)(iii). Thus, although such marks must be compared in their entireties, the word portion is often considered the dominant feature and is accorded greater weight in determining whether marks are confusingly similar, even where the word portion has been disclaimed. *In re Viterra Inc.*, 671 F.3d at 1366-67, 101 USPQ2d at 1911 (citing *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1570-71, 218 USPQ2d 390, 395 (Fed. Cir. 1983)).

Similarly, a mark in standard characters may be displayed in any lettering style; the rights reside in the wording or other literal element and not in any particular display or rendition. *See In re Viterra Inc.*, 671 F.3d 1358, 1363, 101 USPQ2d 1905, 1909 (Fed. Cir. 2012); *In re Mighty Leaf Tea*, 601 F.3d 1342, 1348, 94 USPQ2d 1257, 1260 (Fed. Cir. 2010); 37 C.F.R. §2.52(a); TMEP §1207.01(c)(iii). Thus, a mark presented in stylized characters, such as applicant's, generally will not avoid likelihood of confusion with a mark in standard characters, such as Reg. No. 4524165, because the marks could be presented in the same manner of display. *See, e.g.*, *In re Viterra Inc.*, 671 F.3d at 1363, 101 USPQ2d at 1909; *Squirtco v. Tomy Corp.*, 697 F.2d 1038, 1041, 216 USPQ 937, 939 (Fed. Cir. 1983) (stating that "the argument concerning a difference in type style is not viable where one party asserts rights in no particular display").

Thus, when comparing the marks as a whole, the overall impression is that of highly similar marks.

### *Comparing the Services*

The services of the parties need not be identical or even competitive to find a likelihood of confusion. *See On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 1086, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000) ("[E]ven if the goods in question are different from, and thus not related to, one another in kind, the same goods can be related in the mind of the consuming public as to the origin of the goods."); TMEP §1207.01(a)(i).

The respective services need only be "related in some manner and/or if the circumstances surrounding their marketing [be] such that they could give rise to the mistaken belief that [the services] emanate from the same source." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1724 (TTAB 2007)); TMEP §1207.01(a)(i).

Here, applicant's services are:

> International Class 040:   Air purification; Bookbinding; Embroidery services; Firing pottery; Material treatment services in connection with recycling; Metal casting; Metal plating; Metal treating; Optical glass grinding; Printing; Production of energy; Soldering; Woodworking; Refinement of fuel materials; Rental of heating boilers; Treatment of materials for the manufacture of ceramic goods; Treatment of materials in the nature of metals, stones, plastics; Treatment of materials in the nature of Chemical reagents.

The cited registrations both list goods and/or services in multiple classes, but the significant services listed in both registrations are:

> International Class 040:   Spray paint laser etching for plastic, rubber and metal material; pattern printing; silkscreen printing; custom fabricating, making or manufacturing of rubber and plastic keyboards to the order and specification of others; custom assembling of rubber and plastic keyboards to the order and specification of others; custom manufacture of components for electronic devices and telecommunications devices.

Here, both parties list services involving the treatment of materials. Applicant's metal treatment is listed broadly and would include the spray paint laser etching services listed by the applicant. *See Octocom Sys. Inc. v. Hous. Computers Servs. Inc.*, 918 F.2d 937, 942, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990); *see also Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 1267, 62 USPQ2d 1001, 1004 (Fed. Cir. 2002). Registrant's custom manufacture of components would include the soldering, woodworking, casting, and plating services listed by the applicant. Both parties are listing printing services. In sum, as written, the services overlap.

When analyzing an applicant's and registrant's services for similarity and relatedness, that determination is based on the description of the services stated in the application and registration at issue, not on extrinsic evidence of actual use. *See Octocom Sys. Inc. v. Hous. Computers Servs. Inc.*, 918 F.2d 937, 942, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990); *see also Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 1267, 62 USPQ2d 1001, 1004 (Fed. Cir. 2002).

Absent restrictions in an application and/or registration, the identified services are presumed to travel in the same channels of trade to the same class of purchasers. *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1356, 98 USPQ2d 1253, 1261 (Fed. Cir. 2011); *Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d at 1268, 62 USPQ2d at 1005.  Additionally, unrestricted and broad identifications are presumed to encompass all services of the type described.  *See In re Jump Designs*, 80 USPQ2d 1370, 1374 (TTAB 2006); *In re Linkvest S.A.*, 24 USPQ2d 1716, 1716 (TTAB 1992).

Thus, applicant's services are highly related to registrant's services.

*Conclusion*

In sum, for the reasons stated above, registration is refused because of a likelihood of confusion with the registered marks for the services indicated.

Although applicant's mark has been refused registration, applicant may respond to the refusal by submitting evidence and arguments in support of registration.

**Response Guidelines**

**If applicant does not respond to this Office action within the six-month period for response, the following services will be deleted from the application:**

    Material treatment services in connection with recycling; Metal casting; Metal plating; Metal treating; Optical glass grinding; Printing; Soldering; Woodworking; Treatment of materials for the manufacture of ceramic goods; Treatment of materials in the nature of metals, stones, plastics.

The application will then proceed with the following services only:

    Air purification; Bookbinding; Embroidery services; Firing pottery; Production of energy; Rental of heating boilers; Treatment of materials in the nature of Chemical reagents.

*See* 37 C.F.R. §2.65(a)-(a)(1); TMEP §718.02(a).

If applicant has questions about the application or this Office action, please contact the assigned trademark examining attorney at the telephone number or email address below.  Applicant is encouraged to contact the examining attorney via email or telephone to make required changes to the application through an examiner's amendment.

To expedite prosecution of the application, applicant is encouraged to file its response to this Office action online via the Trademark Electronic Application System (TEAS), which is available at http://www.uspto.gov/trademarks/teas/index.jsp.  If applicant has technical questions about the TEAS response to Office action form, applicant can review the electronic filing tips available online at http://www.uspto.gov/trademarks/teas/e_filing_tips.jsp and e-mail technical questions to TEAS@uspto.gov.

**TEAS PLUS OR TEAS REDUCED FEE (TEAS RF) APPLICANTS – TO MAINTAIN LOWER FEE, ADDITIONAL REQUIREMENTS MUST BE MET, INCLUDING SUBMITTING DOCUMENTS ONLINE:**  Applicants who filed their application online using the lower-fee TEAS Plus or TEAS RF application form must (1) file certain documents online using TEAS, including responses to Office actions (see TMEP §§819.02(b), 820.02(b) for a complete list of these documents); (2) maintain a valid e-mail correspondence address; and (3) agree to receive correspondence from the USPTO by e-mail throughout the prosecution of the application.  *See* 37 C.F.R. §§2.22(b), 2.23(b); TMEP §§819, 820.  TEAS Plus or TEAS RF applicants who do not meet these requirements must submit an additional processing fee of $125 per class of goods and/or services.  37 C.F.R. §§2.6(a)(1)(v), 2.22(c), 2.23(c); TMEP §§819.04, 820.04.  However, in certain situations, TEAS Plus or TEAS RF applicants may respond to an Office action by authorizing an examiner's amendment by telephone or e-mail without incurring this additional fee.

/Andrea Hack/

Trademark Examining Attorney

U.S. Patent & Trademark Office

Law Office 108

571-272-5413 (ph.)

andrea.hack@uspto.gov

**TO RESPOND TO THIS LETTER:** Go to http://www.uspto.gov/trademarks/teas/response_forms.jsp. Please wait 48-72 hours from the issue/mailing date before using the Trademark Electronic Application System (TEAS), to allow for necessary system updates of the application. For *technical* assistance with online forms, e-mail TEAS@uspto.gov. For questions about the Office action itself, please contact the assigned trademark examining attorney. **E-mail communications will not be accepted as responses to Office actions; therefore, do not respond to this Office action by e-mail.**

**All informal e-mail communications relevant to this application will be placed in the official application record.**

**WHO MUST SIGN THE RESPONSE:** It must be personally signed by an individual applicant or someone with legal authority to bind an applicant (i.e., a corporate officer, a general partner, all joint applicants). If an applicant is represented by an attorney, the attorney must sign the response.

**PERIODICALLY CHECK THE STATUS OF THE APPLICATION:** To ensure that applicant does not miss crucial deadlines or official notices, check the status of the application every three to four months using the Trademark Status and Document Retrieval (TSDR) system at http://tsdr.uspto.gov/. Please keep a copy of the TSDR status screen. If the status shows no change for more than six months, contact the Trademark Assistance Center by e-mail at TrademarkAssistanceCenter@uspto.gov or call 1-800-786-9199. For more information on checking status, see http://www.uspto.gov/trademarks/process/status/.

**TO UPDATE CORRESPONDENCE/E-MAIL ADDRESS:** Use the TEAS form at http://www.uspto.gov/trademarks/teas/correspondence.jsp.

| To: | SimCo Electronics (Dongguan) Co.,Ltd. (weiyumm05@163.com) |
|---|---|
| Subject: | U.S. TRADEMARK APPLICATION NO. 87307939 - SINCO - N/A |
| Sent: | 4/17/2017 12:04:00 PM |
| Sent As: | ECOM108@USPTO.GOV |
| Attachments: | |

## UNITED STATES PATENT AND TRADEMARK OFFICE (USPTO)

## <u>IMPORTANT NOTICE REGARDING YOUR</u>
## <u>U.S. TRADEMARK APPLICATION</u>

### USPTO OFFICE ACTION (OFFICIAL LETTER) HAS ISSUED
### ON 4/17/2017 FOR U.S. APPLICATION SERIAL NO. 87307939

Your trademark application has been reviewed.  The trademark examining attorney assigned by the USPTO to your application has written an official letter to which you must respond.  Please follow these steps:

**(1) READ THE LETTER** by clicking on this link or going to http://tsdr.uspto.gov/, entering your U.S. application serial number, and clicking on "Documents."

The Office action may not be immediately viewable, to allow for necessary system updates of the application, but will be available within 24 hours of this e-mail notification.

**(2) RESPOND WITHIN 6 MONTHS** (*or sooner if specified in the Office action*), calculated from 4/17/2017, using the Trademark Electronic Application System (TEAS) response form located at http://www.uspto.gov/trademarks/teas/response_forms.jsp.  A response transmitted through TEAS must be received before midnight **Eastern Time** of the last day of the response period.

**Do NOT hit "Reply" to this e-mail notification, or otherwise e-mail your response** because the USPTO does NOT accept e-mails as responses to Office actions.

**(3) QUESTIONS** about the contents of the Office action itself should be directed to the trademark examining attorney who reviewed your application, identified below.

/Andrea Hack/

Trademark Examining Attorney

U.S. Patent & Trademark Office

Law Office 108

571-272-5413 (ph.)

andrea.hack@uspto.gov



**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Trademarks
P.O. Box 1451
Alexandria, VA  22313-1451
www.uspto.gov

Jan 17, 2018

## NOTICE OF ABANDONMENT

TM108

HUANG JUE
4C 4/F JIUZHOU DIANQI BLDG NO 7 KEJINAN
12TH RD NANSHAN DIST
SHENZHEN GUANGDONG , 518000 CHINA

ATTORNEY
REFERENCE
NUMBER:

| | |
|---|---|
| **SERIAL NUMBER:** | 87/307939 |
| **MARK:** | SINCO |
| **APPLICANT:** | SinCo Electronics (Dongguan) Co.,Ltd. |

THE ABOVE IDENTIFIED TRADEMARK APPLICATION WAS ABANDONED ON 01/17/2018 FOR THE FOLLOWING REASON:

AS A RESULT OF THE TRADEMARK TRIAL AND APPEAL BOARD PROCEEDINGS, THE ABOVE IDENTIFIED APPLICATION STANDS ABANDONED.

# EXHIBIT M

| | |
|---|---|
| **From:** | Andara, Lael D. |
| **To:** | Kathleen Alparce; Iskander, Mario A.; Gaitan, Daniel; Huang, Henry; Shah, Manali; MacNerland, Morgan |
| **Cc:** | Jeffrey Wang; Michael York; John Giust; Jessica Crabbe; edwin@pratherlawoffices.com; Christie Noble |
| **Subject:** | RE: SinCo v. XingKe |
| **Date:** | Thursday, January 30, 2020 9:37:00 PM |
| **Attachments:** | CONFIDENTIAL - Kahrs Rule 26 Report - REDACTED AND ABRIDGED.pdf |

Counsel,

We have received the Rebuttal Expert report and thank you for providing it five hours earlier than indicated. My client has contacted me to determine if they can review and I have advised that it has been unilaterally marked as Confidential Attorney's Eyes Only. We note that substantially all of the report is based on SinCo's information in the form of documents, depositions and pleadings and believe that it is more properly designated at Confidential and request you modify the designation under section 5.1 of the January 14, 2019 protective Order.

Pursuant to the protective Order we challenge the designation of the complete report as Confidential Attorney's Eyes Only, pursuant to section 6 of the Protective order. Our inability to allow our client to consult with us as to financial issues associated with SinCo damages is substantially unfair and prevents us from adequately cross examining these opinion through deposition.

We have in the last several weeks expedited the process allowed under the protective order to allow disclosure on five separate occasions to help allow you to complete Expert discovery and request likewise and expedited response if we are to meet the deadline set by the Court's Scheduling Order.

In an effort to avoid any potential issues we have abridged and redacted the report of material we believe is confidential but anticipate Defendants may assert as AEO so that we can submit a redacted copy of the report to our client while the parties meet and confer over the designations under section 6 of the Protective Order, and to allow us to at least proceed with the deposition on Tuesday.

We will agree to treat the redacted version as CONFIDENTIAL if you allow us leave to disclose only to our client to prepare for the Rebuttal Expert deposition. Please review and advise as to whether we have you agreement to provide the redacted and abridged version of the report to our client so that we may confer with them accordingly. If we do not have a written response from you by 1 p.m. tomorrow, at least as to the redacted version, we will seek emergency relief from the Court given the looming Expert Discovery cut-off. It is currently Friday morning in Singapore and we will have limited access to the account department on Saturday morning so have a very small window to prepare this weekend assuming we can discuss the Rebuttal report, regardless of its form.

We appreciate your attention to this matter and request you make best efforts to cooperate to resolve this issue.

Regards,

**Lael D. Andara**
**Ropers Majeski Kohn & Bentley PC**
Partner
Office: (650) 364-8200 • Direct: (650) 780-1714
Fax: (650) 780-1701 • Email: lael.andara@rmkb.com • Web Site: www.rmkb.com • My Profile

---

San Francisco • Redwood City • San Jose • Los Angeles • New York • Boston

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).
CONFIDENTIALITY NOTICE: This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 USC 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This communication may contain confidential and privileged material for the sole use of the intended recipient and receipt by anyone other than the intended recipient does not constitute a loss of the confidential or privileged nature of the communication. Any review or distribution by others is strictly prohibited. If you are not the intended recipient please contact the sender by return electronic mail and delete all copies of this communication.

---

**From:** Kathleen Alparce <KathleenAlparce@WHGCLaw.com>
**Sent:** Thursday, January 30, 2020 6:51 PM
**To:** Andara, Lael D. <lael.andara@rmkb.com>; Iskander, Mario A. <mario.iskander@Ropers.com>; Gaitan, Daniel <daniel.gaitan@Ropers.com>; Huang, Henry <henry.huang@Ropers.com>; Shah, Manali <manali.shah@rmkb.com>; MacNerland, Morgan <morgan.macnerland@Ropers.com>
**Cc:** Jeffrey Wang <JeffreyWang@WHGCLaw.com>; Michael York <michaelYork@WHGCLaw.com>; John Giust <JohnGiust@WHGCLaw.com>; Jessica Crabbe <JessicaCrabbe@WHGCLaw.com>; edwin@pratherlawoffices.com; Christie Noble <ChristieNoble@WHGCLaw.com>
**Subject:** SinCo v. XingKe

Counsel:

The following link is being provided to you for download of the Expert Report of Henry J. Kahrs pursuant to FRCP Rule 26: https://bakertillyglobalforensics.sharefile.com/d-s5d8827b29e144c8b. The report is also being provided to you via mail.

Thank you,

Kathleen

**Kathleen E. Alparce**
**Of Counsel**
**Complex Litigation Practice Group**
**Employment Law Practice Group**
**WHGC, P.L.C.**
Tel. (949) 833-8483   Fax. (866) 881-5007   Email KathleenAlparce@WHGCLaw.com
1301 Dove Street, Suite, 1050, Newport Beach, CA 92660
Visit us on the web: www.WHGCLaw.com
Follow us: Facebook, LinkedIn, Twitter, and Google+




**Kathleen E. Alparce**
Of Counsel
Complex Litigation Practice Group
Employment Law Practice Group

Tel: 1-949-833-8483
Fax: 1-866-881-5007

KathleenAlparce@WHGCLaw.com

1301 Dove Street, Suite 1050
Newport Beach, California 92660






**PLEASE CONSIDER THE ENVIRONMENT BEFORE PRINTING THIS E-MAIL.**

**CONFIDENTIAL INFORMATION**
This email is intended only for the use of the person or entity to whom it is addressed and contains information that may be subject to the attorney-client privilege, the work-product protection, and/or may be restricted from disclosure by applicable state and federal law. If you are not the intended recipient of this email, be advised that any disclosure, copy, distribution or use of the contents of this message is strictly prohibited. If you are not the intended recipient of this email, please notify the sender that you have received this in error by replying to this message. Then, please delete it from your system. Thank you.

# EXHIBIT N

| | |
|---|---|
| **From:** | John Giust |
| **To:** | Andara, Lael D.; Gaitan, Daniel; Jeffrey Wang; Michael York; Jessica Crabbe; Kathleen Alparce; Christie Noble; Edwin Prather |
| **Cc:** | Huang, Henry; Shah, Manali; MacNerland, Morgan; Iskander, Mario A.; Edwin Prather |
| **Subject:** | RE: SinCo v. XingKe |
| **Date:** | Wednesday, January 29, 2020 1:06:02 PM |
| **Attachments:** | Fleissig, Adrian Jan 2020.pdf |

CV attached.

**From:** John Giust
**Sent:** Wednesday, January 29, 2020 12:13 PM
**To:** Andara, Lael D. <lael.andara@rmkb.com>; Gaitan, Daniel <daniel.gaitan@Ropers.com>; Jeffrey Wang <JeffreyWang@WHGCLaw.com>; Michael York <MichaelYork@WHGCLaw.com>; Jessica Crabbe <JessicaCrabbe@WHGCLaw.com>; Kathleen Alparce <KathleenAlparce@WHGCLaw.com>; Christie Noble <ChristieNoble@WHGCLaw.com>; Edwin Prather <edwin@pratherlawoffices.com>
**Cc:** Huang, Henry <henry.huang@Ropers.com>; Shah, Manali <manali.shah@rmkb.com>; MacNerland, Morgan <morgan.macnerland@Ropers.com>; Iskander, Mario A. <mario.iskander@Ropers.com>; Edwin Prather <edwin@pratherlawoffices.com>
**Subject:** RE: SinCo v. XingKe

We will try to get you one by the end of the day, some of the other individuals we have disclosed have become very much less available in the last week, so he is needed to fill in for the very short time that is remaining.   Note that he is "staff" just assisting Mr. Kahrs.

In the meantime where and when would you like the Cox deposition to be held?

Please note we still have not received any signed protective order from any of Mr. Cox's "staff" despite the fact that he states on page 8 of his report:  "In the preparation of my report and analyses, I, along with NERA staff, have  reviewed and analyzed documents produced in the course of this litigation."

For all we know Mr. Cox had any number of [undisclosed] people assisting him, so the handful that we have disclosed is not unreasonable given the short timeframe.

-John

**From:** Andara, Lael D. [mailto:lael.andara@rmkb.com]
**Sent:** Wednesday, January 29, 2020 11:14 AM
**To:** John Giust <JohnGiust@WHGCLaw.com>; Gaitan, Daniel <daniel.gaitan@Ropers.com>; Jeffrey Wang <JeffreyWang@WHGCLaw.com>; Michael York <michaelYork@WHGCLaw.com>; Jessica Crabbe <JessicaCrabbe@WHGCLaw.com>; Kathleen Alparce <KathleenAlparce@WHGCLaw.com>; Christie Noble <ChristieNoble@WHGCLaw.com>; Edwin Prather <edwin@pratherlawoffices.com>
**Cc:** Huang, Henry <henry.huang@Ropers.com>; Shah, Manali <manali.shah@rmkb.com>; MacNerland, Morgan <morgan.macnerland@Ropers.com>; Iskander, Mario A. <mario.iskander@Ropers.com>
**Subject:** RE: SinCo v. XingKe

Counsel,

We have reviewed his materials, and are awaiting a final approval from the client who has requested his CV.  We sent over his Linkedin.com profile, but if you can provide a CV that may expedite the process. Also the client wanted to know what his need to review SinCo's documents is if he is not offering a written report or opinions?  This question came up as we have already cleared 4 staff from this company, and this seems excessive (client's word).

Regards,


**Lael D. Andara**
**Ropers Majeski Kohn & Bentley PC**
Partner
Office: (650) 364-8200 • Direct: (650) 780-1714
Fax: (650) 780-1701 • Email: lael.andara@rmkb.com • Web Site: www.rmkb.com • My Profile

San Francisco • Redwood City • San Jose • Los Angeles • New York • Boston

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).
CONFIDENTIALITY NOTICE: This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 USC 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This communication may contain confidential and privileged material for the sole use of the intended recipient and receipt by anyone other than the intended recipient does not constitute a loss of the confidential or privileged nature of the communication. Any review or distribution by others is strictly prohibited. If you are not the intended recipient please contact the sender by return electronic mail and delete all copies of this communication.


**From:** John Giust <JohnGiust@WHGCLaw.com>
**Sent:** Thursday, January 23, 2020 10:13 AM
**To:** Gaitan, Daniel <daniel.gaitan@Ropers.com>; Jeffrey Wang <JeffreyWang@WHGCLaw.com>; Michael York <michaelYork@WHGCLaw.com>; Jessica Crabbe <JessicaCrabbe@WHGCLaw.com>; Kathleen Alparce <KathleenAlparce@WHGCLaw.com>; Christie Noble <ChristieNoble@WHGCLaw.com>; Edwin Prather <edwin@pratherlawoffices.com>
**Cc:** Andara, Lael D. <lael.andara@rmkb.com>; Huang, Henry <henry.huang@Ropers.com>; Shah, Manali <manali.shah@rmkb.com>; MacNerland, Morgan <morgan.macnerland@Ropers.com>; Iskander, Mario A. <mario.iskander@Ropers.com>
**Subject:** RE: SinCo v. XingKe

Daniel, further to your email, please see the signed protective order of Adrian Fleissig.  Pursuant to section 7.4(a)(6) of the protective order he is "staff" for Wisehart/Kahrs at the same organization and may assist.  However, he will not be offering any reports or opinions in this case.

-John


**From:** Gaitan, Daniel [mailto:daniel.gaitan@Ropers.com]

**Sent:** Tuesday, January 21, 2020 3:57 PM
**To:** John Giust <JohnGiust@WHGCLaw.com>; Jeffrey Wang <JeffreyWang@WHGCLaw.com>;
Michael York <michaelYork@WHGCLaw.com>; Jessica Crabbe <JessicaCrabbe@WHGCLaw.com>;
Kathleen Alparce <KathleenAlparce@WHGCLaw.com>; Christie Noble
<ChristieNoble@WHGCLaw.com>; Edwin Prather <edwin@pratherlawoffices.com>
**Cc:** Andara, Lael D. <lael.andara@rmkb.com>; Huang, Henry <henry.huang@Ropers.com>; Shah,
Manali <manali.shah@rmkb.com>; MacNerland, Morgan <morgan.macnerland@Ropers.com>;
Iskander, Mario A. <mario.iskander@Ropers.com>
**Subject:** RE: SinCo v. XingKe

Hello Counsel,

Please See attached.

Best,
Daniel

**Daniel Gaitan**
**Ropers Majeski Kohn & Bentley PC**
**Associate**
1001 Marshall Street, Suite 500 • Redwood City • CA • 94063-2052
Office: (650) 364-8200 • Direct: (650) 780-1721
daniel.gaitan@Ropers.com



**From:** Iskander, Mario A.
**Sent:** Friday, January 17, 2020 10:39 AM
**To:** John Giust <JohnGiust@WHGCLaw.com>; Jeffrey Wang <JeffreyWang@WHGCLaw.com>;
Michael York <michaelYork@WHGCLaw.com>; Jessica Crabbe <JessicaCrabbe@WHGCLaw.com>;
Kathleen Alparce <KathleenAlparce@WHGCLaw.com>; Christie Noble
<ChristieNoble@WHGCLaw.com>; Edwin Prather <edwin@pratherlawoffices.com>
**Cc:** Andara, Lael D. <lael.andara@rmkb.com>; Gaitan, Daniel <daniel.gaitan@Ropers.com>; Huang,
Henry <henry.huang@Ropers.com>; Shah, Manali <manali.shah@rmkb.com>; MacNerland, Morgan
<morgan.macnerland@Ropers.com>
**Subject:** SinCo v. XingKe

Counsel:

Please see attached.

Best,

Mario

**Mario Iskander**
**Ropers Majeski Kohn & Bentley PC**
<span style="color:orange">**Associate**</span>
1001 Marshall Street, Suite 500 • Redwood City • CA • 94063-2052
Office: (650) 364-8200 • Direct: (650) 780-1614
mario.iskander@Ropers.com

# EXHIBIT O

| From: | John Giust |
|---|---|
| To: | Andara, Lael D.; Michael York; Iskander, Mario A.; Gaitan, Daniel; Huang, Henry; Shah, Manali; Acheson, Jennifer E.; MacNerland, Morgan; Edwin Prather |
| Cc: | Jeffrey Wang; Elaine Wu; Kathleen Alparce; Jessica Crabbe; Christie Noble |
| Subject: | RE: Disclosures 2 |
| Date: | Thursday, January 16, 2020 7:35:50 PM |

Given the short timeframe either or both Frank A. Wisehart, and Hank Kahrs may be testifying experts each with a report. They might for example split up the rebuttal. In addition, should you have an issue with one of them it is possible the other may be clear.

But yes the others are assistants within their organization and will not be submitting reports or testifying.

I hope this clears things up, please let me know if you have any more questions.

-John

**From:** Andara, Lael D. [mailto:lael.andara@rmkb.com]
**Sent:** Thursday, January 16, 2020 5:14 PM
**To:** John Giust <JohnGiust@WHGCLaw.com>; Michael York <michaelYork@WHGCLaw.com>; Iskander, Mario A. <mario.iskander@Ropers.com>; Gaitan, Daniel <daniel.gaitan@Ropers.com>; Huang, Henry <henry.huang@Ropers.com>; Shah, Manali <manali.shah@rmkb.com>; Acheson, Jennifer E. <jennifer.acheson@rmkb.com>; MacNerland, Morgan <morgan.macnerland@Ropers.com>; Edwin Prather <edwin@pratherlawoffices.com>
**Cc:** Jeffrey Wang <JeffreyWang@WHGCLaw.com>; Elaine Wu <ElaineWu@WHGCLaw.com>; Kathleen Alparce <KathleenAlparce@WHGCLaw.com>; Jessica Crabbe <JessicaCrabbe@WHGCLaw.com>; Christie Noble <ChristieNoble@WHGCLaw.com>
**Subject:** RE: Disclosures 2

John,

I don't want to assume anything, but these disclosures appear to overlap the prior testifying Expert. Are these support staff? Who is the testifying Expert, we want to research as to clear objections as to the testifying Expert who will be submitting the written report first, as support staff who is not testifying is less of a risk assuming they are unrelated to your clients. If we are required to assume any one of these individuals will be testifying we will need more time.

Regards,

**Lael D. Andara**
**Ropers Majeski Kohn & Bentley PC**
Partner
Office: (650) 364-8200 • Direct: (650) 780-1714
Fax: (650) 780-1701 • Email: lael.andara@rmkb.com • Web Site: www.rmkb.com • My Profile

San Francisco • Redwood City • San Jose • Los Angeles • New York • Boston

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment). CONFIDENTIALITY NOTICE: This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 USC 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This communication may contain confidential and privileged material for the sole use of the intended recipient and receipt by anyone other than the intended recipient does not constitute a loss of the confidential or privileged nature of the communication. Any review or distribution by others is strictly prohibited. If you are not the intended recipient please contact the sender by return electronic mail and delete all copies of this communication.

**From:** John Giust <JohnGiust@WHGCLaw.com>
**Sent:** Thursday, January 16, 2020 5:11 PM
**To:** Andara, Lael D. <lael.andara@rmkb.com>; Michael York <michaelYork@WHGCLaw.com>; Iskander, Mario A. <mario.iskander@Ropers.com>; Gaitan, Daniel <daniel.gaitan@Ropers.com>; Huang, Henry <henry.huang@Ropers.com>; Shah, Manali <manali.shah@rmkb.com>; Acheson, Jennifer E. <jennifer.acheson@rmkb.com>; MacNerland, Morgan <morgan.macnerland@Ropers.com>; Edwin Prather <edwin@pratherlawoffices.com>
**Cc:** Jeffrey Wang <JeffreyWang@WHGCLaw.com>; Elaine Wu <ElaineWu@WHGCLaw.com>; Kathleen Alparce <KathleenAlparce@WHGCLaw.com>; Jessica Crabbe <JessicaCrabbe@WHGCLaw.com>; Christie Noble <ChristieNoble@WHGCLaw.com>
**Subject:** Disclosures 2

Thank you.  Please see the signed protective order and disclosures of Hank Kahrs.
This should be it unless other assistants are necessary.

The 7.4 disclosures are:

(1)  Henry John Kahrs, IV
     Tustin, California
(2)  Resume/ CV Please see attached
(3)  Current Employer – Baker Tilly Virchow Krause, LLP
(4)  Previous Employer – RGL Forensics
(5)  Case List attached
(6)  Signed protective order attached

Note that a signed protective order of Aurora Marquez is attached (an assistant at Baker Tilly)

John

**From:** Andara, Lael D. [mailto:lael.andara@rmkb.com]
**Sent:** Thursday, January 16, 2020 11:20 AM
**To:** John Giust <JohnGiust@WHGCLaw.com>; Michael York <michaelYork@WHGCLaw.com>; Iskander, Mario A. <mario.iskander@Ropers.com>; Gaitan, Daniel <daniel.gaitan@Ropers.com>;

Huang, Henry <henry.huang@Ropers.com>; Shah, Manali <manali.shah@rmkb.com>; Acheson, Jennifer E. <jennifer.acheson@rmkb.com>; MacNerland, Morgan <morgan.macnerland@Ropers.com>
**Cc:** Jeffrey Wang <JeffreyWang@WHGCLaw.com>; Elaine Wu <ElaineWu@WHGCLaw.com>; Kathleen Alparce <KathleenAlparce@WHGCLaw.com>; Jessica Crabbe <JessicaCrabbe@WHGCLaw.com>; Christie Noble <ChristieNoble@WHGCLaw.com>
**Subject:** RE: Disclosures 1

Received. We will evaluate immediately and make all effort to respond within 24 hours, rather than the 14 days set forth in the Protective Order.

**Lael D. Andara**
**Ropers Majeski Kohn & Bentley PC**
Partner
Office: (650) 364-8200 • Direct: (650) 780-1714
Fax: (650) 780-1701 • Email: lael.andara@rmkb.com • Web Site: www.rmkb.com • My Profile

San Francisco • Redwood City • San Jose • Los Angeles • New York • Boston

IRS CIRCULAR 230 NOTICE: To ensure compliance with requirements imposed by the Internal Revenue Service, we inform you that any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).
CONFIDENTIALITY NOTICE: This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 USC 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This communication may contain confidential and privileged material for the sole use of the intended recipient and receipt by anyone other than the intended recipient does not constitute a loss of the confidential or privileged nature of the communication. Any review or distribution by others is strictly prohibited. If you are not the intended recipient please contact the sender by return electronic mail and delete all copies of this communication.

**From:** John Giust <JohnGiust@WHGCLaw.com>
**Sent:** Thursday, January 16, 2020 10:08 AM
**To:** Andara, Lael D. <lael.andara@rmkb.com>; Michael York <michaelYork@WHGCLaw.com>; Iskander, Mario A. <mario.iskander@Ropers.com>; Gaitan, Daniel <daniel.gaitan@Ropers.com>; Huang, Henry <henry.huang@Ropers.com>; Shah, Manali <manali.shah@rmkb.com>; Acheson, Jennifer E. <jennifer.acheson@rmkb.com>; MacNerland, Morgan <morgan.macnerland@Ropers.com>
**Cc:** Jeffrey Wang <JeffreyWang@WHGCLaw.com>; Elaine Wu <ElaineWu@WHGCLaw.com>; Kathleen Alparce <KathleenAlparce@WHGCLaw.com>; Jessica Crabbe <JessicaCrabbe@WHGCLaw.com>; Christie Noble <ChristieNoble@WHGCLaw.com>
**Subject:** Disclosures 1

Attached is the signed protective order and disclosures of Frank Wisehart.

The 7.4 disclosures are:

    (1)  Frank A. Wisehart,
        San Francisco, California

    (2)  Resume (CV)- attached
    (3)  Current Employer – Baker Tilly Virchow Krause, LLP
    (4)  Previous Employer – RGL Forensics
    (5)  Case list- attached
    (6)  Signed protective order attached

Note that a signed protective order of Mark Pedigo is attached (he also works for Baker Tilly and  will be an assistant to Frank Wisehart)