| | |
|---|---|
| DOUGLAS A. WINTHROP (SBN 183532)<br>Douglas.Winthrop@arnoldporter.com<br>JEREMY T. KAMRAS (SBN 237377)<br>Jeremy.Kamras@arnoldporter.com<br>JOSEPH FARRIS (SBN 263405)<br>Joseph.Farris@arnoldporter.com<br>**ARNOLD & PORTER KAYE SCHOLER LLP**<br>Three Embarcadero Center, 10th Floor<br>San Francisco, CA 94111-4024<br>Telephone: 415.471.3100<br>Facsimile: 415.471.3400 | **WHGC, P.L.C.**<br>Jeffrey C.P. Wang (SBN 144414)<br>*JeffreyWang@WHGCLaw.com*<br>Michael G. York (SBN 89945)<br>*MichaelYork@WHGCLaw.com*<br>Kathleen E. Alparce (SBN 230935)<br>*KathleenAlparce@WHGCLaw.com*<br>Jessica A. Crabbe (SBN. 263668)<br>*JessicaCrabbe@WHGCLaw.com*<br>1301 Dove Street, Suite 1050<br>Newport Beach, CA 92660<br>Tel. (949) 833-8483; Fax: (866) 881-5007 |

*Attorneys for Defendants*
XINGKE ELECTRONICS (DONGGUAN) CO., LTD., formerly known as SINCO ELECTRONICS (DONGGUAN) CO., LTD., LIEW YEW SOON aka, MARK LIEW, NG CHER YONG. aka CY NG, and MUI LIANG TJOA aka ML TJOA

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SINCO TECHNOLOGIES PTE LTD.,<br><br>Plaintiff,<br><br>vs.<br><br>SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS TECHNOLOGY CO., LTD.; SINCOO ELECTRONICS TECHNOLOGY CO., LTD.; MUI LIANG TJOA (an individual); NG CHER YONG aka CY NG (an individual); and LIEW YEW SOON aka MARK LIEW (an individual),<br><br>Defendants. | Case No. 3:17-CV-05517-EMC<br><br>Action Filed: September 22, 2017<br><br>**MOTION IN LIMINE NO. 2**<br><br>**Judge:**  Honorable Edward M. Chen<br><br>**Trial:**  November 1, 2021 |

**I.      SUMMARY OF MIL NO. 2**

Defendants file this Motion in Limine No. 2 for an order excluding Plaintiff SinCo Technologies Pte. Ltd. ("SinCo SG") from **referencing or offering any evidence of official records of trademark proceedings in China and the United States, and related evidence concerning trademark application, opposition, or cancellation proceedings.** Those trademark proceedings are irrelevant to the ultimate legal issues, or, even if minimally probative, are substantially prejudicial such that they would confuse the issues and mislead the jury, and therefore should be excluded under Federal Rules of Evidence 402 and 403. The records further are rife with statements and declarations from persons that will not appear as witnesses at trial and should therefore also be excluded as hearsay under Federal Rule of Evidence 802.

SinCo SG has repeatedly emphasized evidence relating to two registered (and presently invalidated) design marks in China owned by XingKe and sixteen trademark applications to register word and design marks in the United States filed by XingKe or its agents. The Chinese trademark proceedings are altogether irrelevant to SinCo SG's rights in its trademarks in the United States—and are currently subject to pending appeals. The United States trademark applications all have either been abandoned, suspended or stayed, predominately as a result of XingKe's decision not to respond to an office action or to answer an opposition, and because of the pending of this later-filed proceeding.  That is, none of the proceedings have resulted in an administrative finding of fact based on well-developed records.

None of these proceedings are final and they involve overlapping issues with this case that could create substantial risk that the jury would be confused by the issues and give those proceedings undue weight. To expose the jury to this evidence at any point in the trial not only would confuse the jury—given the volume of the applications and complicated procedural posture of each proceeding in multiple jurisdictions—but would carry a severe risk of giving the jury the false impression that a federal agency or foreign government has already resolved issues such as likelihood of confusion in SinCo SG's favor.  Further, SinCo SG has repeatedly made allegations of fraud concerning those proceedings that would add particular risk that the introduction of any evidence concerning those matters would confuse the jury and cause unfair prejudice.

1  As such, XingKe seeks exclusion of the following: (1) trademark applications for registration filed by XingKe or its agents with the USPTO and the Trademark Review and Adjudication Board of the State Administration for Industry and Commerce of the People's Republic of China; (2) oppositions, cancellations, requests for nullification, office actions, declarations, specimens, statements of use, and any other filings or proceedings conducted in connection with or relating to the aforementioned applications; (3) testimony, documentary evidence, references, inquiry, argument, or any other exposure of the jury to the same, at any time; and (4) testimony, documentary evidence, references, inquiry, argument, or any other exposure of the jury to evidence concerning Mariam Paton, the 2005 Design Contract, or any other evidence related to allegations of fraud, falsification of documents, or bad acts in connection with trademark proceedings in the United States or China.[1]

## II.   ARGUMENT

### A.   The Court should exclude evidence relating to the United States and Chinese trademark proceedings under FRE 402 and FRE 403

#### 1.   Evidence relating to the Chinese trademark proceedings is irrelevant to SinCo SG's trademark rights in the United States

SinCo SG asserts causes of action for, among other things, trademark infringement and trademark dilution based on its ownership of four design and word marks, all registered with the USPTO.  However, under the well-established territoriality principle, evidence relating to Chinese trademark proceedings are irrelevant to these claims. *See, e.g.*, *Vanity Fair Mills, Inc. v. The T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956) ("[W]hen trademark rights within the United States are being litigated in an American court, the decisions of foreign courts concerning the respective trademark rights of the parties are irrelevant and inadmissible."); *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 599 (5th Cir. 1985) (same); *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, No. CV-15-04950, 2017 WL 10434404, at *3 (C.D. Cal. Jan. 20, 2017) ("Central to trademark law is the territoriality principle—'trademark rights exist in each country

---

[1] Although Defendants seek exclusion of *all* evidence, references, inquiry, or argument relating to the United States and Chinese trademark proceedings, Defendants have attached to this Motion a sample of such evidence for the Court's review. *See* Declaration of Joseph Farris in Support of Defendants Motion in Limine No. 2 ("Farris Decl.").

1  solely according to that country's statutory scheme.'" (quoting *Person's Co. v. Christman*, 990 F.2d
2  1565, 1568–1569 (Fed. Cir. 1990)). In *Pinkette Clothing*, the plaintiff sought to exclude evidence
3  relating to a Canadian trademark proceeding involving an identical mark as that at issue in the
4  immediate action. 2017 WL 10434404, at *2. The court granted the motion to preclude any
5  evidence, reference or argument relating to the Canadian proceeding, finding that "[t]he crux of this
6  action is whether there is a likelihood of confusion regarding the parties' use of the LUSH mark in
7  the U.S. . . . Thus, trademark-related events outside the U.S. are irrelevant to this action and thus not
8  admissible." *Id.* at *3, *affirmed Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015,
9  1029 (9th Cir. 2018) ("Evidence of the LUSH mark in Canada was not relevant to the infringement-
10 related questions for which the jury was the sole trier of fact."). Similarly, in the instant action,
11 evidence relating to Chinese trademark proceedings are irrelevant to SinCo SG's claims regarding its
12 U.S. trademark rights and thus is inadmissible under FRE 402.

        **2.    Evidence relating to both the US and Chinese trademark proceedings has minimal probative value and is likely to confuse the jury and result in undue prejudice.**

15       It is undisputed in this case that Defendants possessed a license to use SinCo SG's
16 trademarks—the scope of that license is central to resolution of SinCo SG's claims at trial. Evidence
17 relating to the proceedings before the USPTO—which concern only the *registrability* of separate
18 marks filed by XingKe—has minimal, if any, probative value in connection with SinCo SG's claims.
19 In contrast, the admission of this evidence would cause a danger of unfair prejudice, confusion of the
20 issues, and potentially usurp the role of the jury. *See, e.g.*, *Coryn Group II, LLC v. O.C. Seacrets,*
21 *Inc.*, No. WDQ-08-2764, 2011 WL 862729, at *2 (D. Md. Mar. 10, 2011) ("[I]ntroduction of the
22 TTAB decision is likely to confuse the jury and encourage a decision on an improper basis.
23 Admitting evidence of the decision will likely cause the jury to deliberate on the correctness of the
24 previous fact finding, rather than retaining the open-minded, first impression approach to the issues
25 our system prefers. The jury is likely to give undue weight to the TTAB's findings, undermining its
26 ability to reach its own determinations of the issues." (internal quotations and citations omitted)).
27 These factors far outweigh any probative value of the records, rendering the evidence inadmissible
28 under FRE 403. *Id.* (finding the probative value of TTAB decision was substantially outweighed by

1  danger of unfair prejudice and confusion and granting defendant's motion to exclude the evidence);
2  *see also Innovation Ventures, LLC v. NVE, Inc.*, 90 F.Supp.3d 703, 713 (E.D. Mich. 2015) (granting
3  motion to exclude evidence of prior USPTO proceedings under FRE 403 and noting that "[e]ven
4  with a limited instruction, proof that the USPTO had repeatedly denied Plaintiff a trademark could
5  carry definitive weight with the jury"); *Minemyer v. B-Roc Representatives, Inc.,* No. 07 C 1763,
6  2012 WL 346621, at *4 (N.D. Ill. Feb. 2, 2012) (excluding USPTO office actions as "gravid with
7  unfair prejudice and the potential for jury confusion and for wasting time" and finding that "limiting
8  instruction is pointless" to mitigate the "intolerably high risk that the jury will engage in . . .
9  hindsight analysis").

10      The probative value of the USPTO proceedings is further reduced by the fact that none of the
11  proceedings involved findings of fact based upon well-developed records, and because the last
12  pending applications were ultimately stayed due to the pendency of this action. The other XingKe
13  applications were either abandoned or suspended, and no proceeding resulted in the issuance of
14  anything more comprehensive than a tentative opinion or judgment by default. *See, e.g.,* Farris Decl.,
15  Ex. A (suspension notice), Ex. B (office action), Ex. C (judgment by default); *see also Everest*
16  *Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 393 F.3d 755, 764 (8th Cir. 2005) (affirming district
17  court's refusal to admit evidence of USPTO's suspension of application for registration of plaintiff's
18  mark, finding the suspension notice had "little probative value because it stated a tentative opinion,
19  not an administrative finding of fact based upon an adequate record"). However, a jury almost
20  certainly would be unlikely to grasp that distinction, and a USPTO record has the "potential to
21  unfairly prejudice the defendants if the jury mistakenly view[] it as an official government position
22  on the critical confusion issue." *Id.* The likelihood that the jury may be tempted to defer to the
23  USPTO's perceived position on the infringement claim is far too prejudicial given the minimal
24  probative value of the USPTO records in these proceedings.

25      Here, if evidence regarding the trademark proceedings, or references relating thereto, are
26  permitted before the jury, the jury's assessment of the facts regarding SinCo SG's trademark
27  infringement and dilution claims will undoubtedly be tainted by the USPTO's findings, which were
28  based on a different (underdeveloped) record and focused exclusively on the issue of registrability,

1   not on the use of the mark(s) at issue or the scope of a license possessed by XingKe to use SinCo

2   SG's marks. The evidence would thus impermissibly prejudice XingKe by causing confusion among

3   the jury and encouraging the jury to substitute the judgement of the agency for its own. For this

4   reason, exclusion of the evidence is appropriate under FRE 403. *See, e.g.*, *Finjan, Inc. v. Sophos,*

5   *Inc.*, No. 14-CV-01197-WHO, 2016 WL 4560071, at *14 (N.D. Cal. Aug. 22, 2016) (granting

6   motion to exclude evidence of USPTO proceedings as it would take a "significant amount of time

7   and effort to adequately explain the relevance and limitations of the PTO proceedings to the jury"

8   and there was "a substantial risk that the jury will improperly substitute its own judgement for the

9   PTO decisions").

### 3. Allegations of fraud in the United States and Chinese trademark proceedings are highly prejudicial

12   What's more, SinCo SG has further made specific allegations that there were acts of fraud

13   and bad faith by Defendants in connection with the United States and Chinese trademark

14   proceedings that reveal its intent to use these sideshow allegations to create undue prejudice and

15   distract the jury from the fundamental issues in the case.  At a minimum, the Court should exclude

16   all references or offering of evidence from the trademark proceedings in the United States and China

17   concerning allegations of fraud, falsification of documents, or bad faith, as this evidence is highly

18   prejudicial to the Defendants. *See, e.g.*, *Flir Systems, Inc. v. Fluke Corporation*, 2012 WL 13054267,

19   at *3 (D. Or. Nov. 19, 2012) (granting motion in limine to prohibit any exposure of the jury to

20   evidence, statements or implications that party committed fraud on PTO).

21   In the United States proceedings, SinCo SG has repeatedly made inflammatory and

22   unjustified allegations of fraud based the fact that one of XingKe's applications filed by its Chinese

23   trademark agent improperly used the name of a Canadian patent agent named Miriam Paton.  SinCo

24   SG has improperly and without justification characterized that as "fraud" and, via other salacious

25   descriptions, made the outrageous claim that this is a case of "stolen identity." *See id.*, Ex. J (excerpt

26   of SinCo SG's Opposition to Defendants' Motion for Summary Adjudication in the State Action).

27   The truth is that XingKe itself was one of many *victims* of a widespread fraud apparently perpetrated

28   by the Chinese trademark agency that used Ms. Paton's name on "hundreds" of applications that

1  were unrelated to XingKe. *See id.*, Ex. G (USPTO Notice Concerning Mariam Paton Declaration and declaration of patent agent Miriam Paton concerning alleged fraudulent use of her name in "several hundred trademark applications before the USPTO"); Ex. H (article published in Corporate Counsel describing how Miriam Paton's signature was "forged on hundreds of U.S. trademark applications").

Likewise, in the Chinese proceeding, SinCo SG has levied inflammatory allegations of "fraudulent applications" and suggested that there was a finding by the Chinese court supporting that. *See id.*, Ex. J. Again, this is false and highly misleading. SinCo SG's accusations are *not* based on a Chinese court finding that there was fabricated evidence, but on the declaration of SinCo SG's own Chinese lawyer. *See,* Farris Decl., Ex. I (affidavit from Guanglei Zhang, partner at the law firm of Jingtian & Gongcheng, concerning allegedly inauthentic documents in Chinese proceeding). To be clear—there was no finding of fraud by the court at all—this is just SinCo SG's lawyer's argument. *See id.*, Ex. D at 5 (decision by Chinese trademark review board noting only that respondent "failed to submit the original version [of the Design Contract] for authenticity check" and therefore "the actual performance of the contract cannot be evidenced"). What's more, those general invalidation proceedings are under appeal and ongoing, and XingKe has submitted substantial evidence in China that SinCo SG submitted false evidence in that proceeding. *See* Ex. F (XingKe's petition to appeal Chinese trademark proceeding invaliding its registration).

The prejudice caused by the introduction of such evidence is particularly substantial compared with its minimal probative effect. Should SinCo SG be permitted to introduce evidence concerning allegations of fraud in the trademark proceedings, it would be highly prejudicial to Defendants. Moreover, as to the Chinese proceeding, it also would force XingKe to submit its own evidence concerning SinCo SG's fraud on the Chinese trademark authorities—creating a trial within a trial about the conduct of foreign proceeding subject to different trademark laws and evidentiary proceedings. All of this would create an unnecessary and complicated sideshow that would only confuse and distract from the real issues—namely, was any customer ever confused by XingKe's use of the name "SinCo" before it changed its name.

**B.      This Court should exclude evidence relating to the United States and Chinese trademark proceedings under FRE 802**

In addition to the exclusion of the trademark proceedings pursuant to FRE 402 and FRE 403, the Court should exclude evidence of the trademark proceedings on the grounds that the records are rife with statements and declarations by witnesses not appearing in court. *See, e.g.,* Farris Decl., Ex. G (declaration of Miriam Paton), Ex. I (affidavit of Guanglei Zhang). This evidence is impermissible hearsay and must be excluded pursuant to FRE 802. *See, e.g.*, *In re Outsidewall Tire Litigation*, 748 F.Supp.2d 553, 555 (E.D. Va. 2010) (finding plaintiffs' file from USPTO was appropriately excluded at trial because it contained impermissible hearsay).

## III.     CONCLUSION

For the foregoing reasons, the Motion In Limine to Exclude Evidence of Official Records of Trademark Proceedings in the United States and China and Related Evidence Concerning Trademark Application, Opposition, or Cancellation Proceedings should be granted as set forth in the Proposed Order.

Dated:  September 3, 2021.                              ARNOLD & PORTER KAYE SCHOLER LLP

By:  /s/ *Douglas Winthrop*
DOUGLAS WINTHROP

*Attorneys for Defendants*

XINGKE ELECTRONICS (DONGGUAN) CO., LTD., formerly known as SINCO ELECTRONICS (DONGGUAN) CO., LTD., LIEW YEW SOON aka, MARK LIEW, NG CHER YONG. aka CY NG, and MUI LIANG TJOA aka ML TJOA

LAEL D. ANDARA (SBN 215416)
DANIEL E. GAITAN (SBN 326413)
ROBIN M. PEARSON (SBN 146704)
ROPERS MAJESKI PC
545 Middlefield Road, Suite 175
Menlo Park, CA 94025
Telephone:   650.364.8200
Facsimile:   650.780.1701
Email:       lael.andara@ropers.com
             robin.pearson@ropers.com
             daniel.gaitan@ropers.com

Attorneys for Plaintiff
SINCO TECHNOLOGIES PTE LTD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SINCO TECHNOLOGIES PTE LTD,<br><br>Plaintiff,<br><br>v.<br><br>SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGLE ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS TECHNOLOGY CO., LTD.; SINCOO ELECTRONICS TECHNOLOGY CO., LTD.; MUI LIANG TJOA (an individual); NG CHER YONG aka CY NG (an individual); and LIEW YEW SOON aka MARK LIEW (an individual),<br><br>Defendants. | Case No. 3:17CV5517<br><br>**PLAINTIFF SINCO TECHNOLOGIES PTE LTD'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 2 RE TRADEMARK PROCEEDINGS**<br><br>PRETRIAL HEARING<br>Date: October 5, 2021<br>Time: 3:00 p.m.<br>Place: Courtroom 5 – 17th Floor<br>Hon. Edward M. Chen<br><br>TRIAL DATE<br>November 1, 2021 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The paradox of Defendants' Motion to exclude their conduct in China conflicts with their affirmative defense of abandonment, which is anchored on their conduct in China. Defendants' motion speaks in generalities[1] to avoid culpability, but ultimately those specifics will likely be decisive of this case. Defendants' motion states, "*Defendants possessed a license to use SinCo Technologies Pte. Ltd.,'s ("SINCO") trademarks*," but their conduct in filing China and U.S. trademark applications evidences something different, in that, they claim to be the exclusive owner of the mark. Defendants rely heavily on the principle – "trade rights exist in each country solely according to that country's statutory scheme," which is an obstacle to their legal theory of abandonment, and in no way justification to ignore their actions as to the "SinCo" marks.

## II. BACKGROUND OF FACTS

Since 2012, SINCO and its contract manufacturer had operated under a written agreement. Gaitan Declaration (G. Decl.) *Ex. 1*. In that time SINCO's employees, Defendant Mark Liew and Cy Ng never traveled to the U.S., until they did so to introduce representatives of Xingke Electronics (Dongguan) Co., Ltd.'s ("XINGKE") to SINCO's customers. On **October 28, 2016**, SINCO filed suit against Defendants in Superior Court for what they thought was misappropriation of their trade secrets and breach of contract by their contract manufacturer in China. However, through the discovery process they learned that XINGKE had secretly been claiming to be SINCO and had not only registered the "SINCO" trademark as their own in China, but within weeks of the action in the U.S., began asserting ownership of the "SINCO" trademark in the U.S. by filing multiple trademark applications.[2] Ex. 2-3. SINCO brought this action to enforce and protect its U.S. trademark rights.[3] Ex. 3 and 5. On **October 24, 2017**, having already filed 14 trademark applications, XINGKE filed two more applications using the name "Miriam Paton," yet Miriam Paton's work had nothing to do with trademarks. Ex. 2-3. SINCO learned of

---

[1] *Plexxikon Inc. v. Novartis Pharmaceuticals Corporation,* 2021 WL 1164749 at *1 (N.D. Cal., Mar. 26, 2021).(Plaintiff's requested blanket exclusion [was] unwarranted," and the motion was DENIED.)
[2] Filed on September 6, 2016; five more on January 13, 2017; another five on January 20, 2017; and again on February 23, 2017 and On September 28, 2017.
[3] (U.S. Registration Nos. 3188537, 4524165, 4524172, and 4524173.)

this having attempted to communicate with her on an Opposition it filed against XINGKE on August 16, 2018. Ex. 6. In that same Opposition XINGKE used the forged signature of "Xu Shugong," on **September 26, 2018**. Ex. 7. XINGKE had an explanation in the form of a Declaration submitted by Chen Yueliang, that stated: *"Because of the time pressure in trademark application matters, my company often asked for the authorization from clients to sign on their behalf to save time. In this case, the client company did give us the authorization. That is why I signed on behalf of Xu Shugong."* Ex. 8. Defendant Tjoa submitted a Declaration relating to that Opposition to the TTAB on **November 20, 2018,** Ex. 9, where Mr. Tjoa testified that he did not have personal knowledge as to a declaration filed in his name with the USPTO. *(Ex. 10 at 281:19-25.)*[4] See also as examples Office Actions dated **November 6, 2016**, **April 17, 2017**, and **August 8, 2017**. Ex. 4. The owner the USPTO referenced is in fact "SINCO." Ex. 4. As Defendants' motion admits on **April 26, 2018** and **May 4, 2018,** SinCo Electronics (Dongguan) Co.'s PRC marks (Registration Nos. 8607396 and 8607476) were invalidated for use of "SINCO."

### III.     LEGAL ARGUMENT

#### A.     Trademark Proceeding Doesn't Grant Immunity for XingKe's Actions.

Defendants' motion does not deny the conduct that they anticipate SINCO will try to present to the Jury, they openly admit to the "*two registered (and presently invalidated) design Marks in China owned by XingKe and sixteen trademark applications,*" filed in the USPTO, but assert their related conduct is too prejudicial, albeit true. The Court's finding in *Newmark Realty Capital, Inc. v. BGC Partners, Inc.*, No. 16-cv-01702-BLF, 2018 U.S. Dist. LEXIS 207265 at *2-3 (N.D. Cal., Dec. 7, 2018), directly spoke to the issue of the probative value of PTO responses:

> As discussed on the record at the pretrial conference, ***the Court finds the USPTO responses may be submitted as Defendants' admissions regarding services they offered and when Defendants offered those services***. Moreover, the ***Court finds that under FRE 403, the probative value of the PTO responses is not substantially outweighed by danger of confusing or misleading the jury…The jury is capable of assessing the PTO responses and giving them the weight, they deserve.*** In addition,

---

[4] In response to those trademark applications filed by XINGKE the trademark examiners issued office actions rejecting their claim to the "SINCO" trademark stating: *Registration of the applied-for mark is refused because of a* ***likelihood of confusion with the marks in U.S. Registration Nos. 3188537, 4524165, 4524173, and 4524172 (PLAINTIFFS MARKS)***. *Ex. 4*. Trademark Act Section 2(d), 15 U.S.C. §1052(d); see TMEP §§1207.01 et seq. *See the attached registrations, all of which are owned by the same owner.* **Ex. 5**.

the Court denies Defendants' request that the jury be instructed that Plaintiff was not aware of the PTO actions/responses.

*Id.* at 5. SINCO would be prejudiced if this Court excluded evidence of XINGKE's conduct, simply because it occurred in trademark proceeding. The jury is more than capable of categorizing these actions that Defendants are attempting to broadly exclude, under the guise of inaccurate claims of fraud. Moreover, the issue of Fraud that SINCO wishes to reveal to the jury and this Court relates to Defendants' specific actions. XINGKE's dishonest acts provide the Jury insight into Defendants behavior, supporting trademark infringement, punitive damages, and fees.

### B. Determinations of Likelihood of Confusion by USPTO are Admissible

Defendants assert that "n*one of the proceedings have resulted in an administrative finding*," but ignore the Office Actions that cited SINCO's U.S. registrations. Defendants advocate to ignore the precedent of showing deference to the USPTO, as to do so might hurt their case and disclose **all** of their actions. In *Hyuk Suh v. Choon Sik Yang*, 987 F. Supp. 783, 791 (N.D. Cal. 1997), the Court stated "[w]hile the USPTO's refusal to register a trademark term is not conclusive, it is entitled to '***great weight***.'"[5] The USPTO's refusal to register defendant's mark because of confusion with plaintiff's registration is '***entitled to serious consideration***' and **helps prove both likelihood of confusion** and defendant's bad faith continued use." *National Customer Engineering v. Lockheed Martin Corp.*, 43 U.S.P.Q.2d 1036 (C.D. Cal. 1997).

The USPTO's Office Action of **November 6, 2016**, **April 17, 2017**, and **August 8, 2017** highlight that, despite Defendants' applications, SINCO has a protectible mark—for both the SINCO word mark and logos, which was recognized in the U.S. market. Ex. 4. Again, these applications were filed after the initiation of litigation, and XINGKE had every reason to know it would be part of these proceedings. Ex. 2-3.  Just as in *Newmark Realty Capital*, both the <u>Chinese and United States</u> trademark proceedings here illustrate the specific goods and services Defendants used in association with their admitted use of SINCO's marks. XINGKE's admission of use in the trademark applications and their continued use of the SINCO mark after the USPTO

---

[5] Notably, the "***Court affords a degree of deference to the PTO's decision***" and . . . [a] finding that that the PTO's refusal to register a mark is entitled to **substantial weight**. *MedAmerica, Inc. v. Med Staff Am., Inc.*, No. C-10-2896 EMC, 2011 WL 13258235 at *5 (N.D. Cal. Feb. 28, 2011).

office actions are essential to evidence the likelihood of confusion, willfulness, and understanding of a purported "license"—the central issues in this action. *Newmark Realty Capital, Inc.*, 207265.

Furthermore, Defendants' use of the phonetic equivalent to SINCO's mark, **SinCo**, "XingKe"— **XingKe** while maintaining the same color and caps variation—would not be nearly as visually evident without refence to the specimens that XINGKE submitted to the USPTO, thereby prejudicing SINCO in its inability to display the notable similarity of the marks. Which is further evidence of use of SINCO's good will and reputation. Ex. 2-5. Most importantly, these applications go directly to Defendants 'intent', another factor in likelihood of confusion analysis.[6] Here, the evidence shows that XINGKE chose the disputed marks at issue to directly target SINCO's U.S. customers, to displace projects, and acquire business.

Further, Courts have found that it is the jury's role to determine whether infringement was intentional or willful. Such analysis requires consideration of actions in both the pending litigation and **in both the Chinese and U.S. trademark proceedings**. In *Globefill Incorporated* the jury found Defendants' infringement to be intentional or willful. *Globefill Incorporated v. Elements Spirits, Inc.* (C.D. Cal., Sept. 8, 2017) 2017 WL 6520589, at *3, aff'd (9th Cir. 2019). The jury's finding led the court to determine if it was "exceptional" under the Lanham Act. *Id.*

Additionally, SINCO has a claim for punitive damages which directly correlates with its common law claim for unfair competition, Cal. Civ. Code § 3294(a), and passing off claims. As stated in this circuit, "[a]lthough under some circumstances, punitive damages may be recoverable under a California common law claim, in California common law unfair competition claims are limited to cases in which a party passes off their goods as another." *Groupion, LLC v. Groupon, Inc.* 859 F.Supp.2d 1067, 1083 (N.D. Cal. 2012). Further, this court has stated "[w]e are aware of no authority which suggests that this provision may not be applied to common law unfair competition claims. *Duncan v. Stuetzle*, 76 F.3d 1480, 1490 (9th Cir. 1996).

To prove punitive damages, SINCO needs the opportunity to bring forth evidence of oppression, fraud or malice, which mainly derives from the Chinese and U.S. trademark proceedings. Moreover, XINGKE's actions in these proceeding as established go to the

---

[6] The Ninth Circuit has found that "[w]hen the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the Defendant can accomplish his purpose: that is, that the public will be deceived." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979).

protectability of the mark, likelihood of confusion, willful and intentional conduct, and attorney fees. The importance of this evidence is why Defendants attempt a broad exclusion in an attempt to avoid the specific conduct attributable to their actions. Lastly, these documents illustrate that Defendants are not entitled to the rights of federal trademark registration, despite their attempts. Once cancellation occurs, the owner "is no longer entitled to the rights that flow from federal registration, including the presumption that the mark is valid." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th Cir. 2013).

### C. Defendants' Case Law Is Distinguishable To These Facts.

Defendants' reliance on *Coryn Group II, LLC.*, is misplaced. In that case, the Court excluded the TTAB's final decision as, "the TTAB did not apply all likelihood of confusion factors used by the Fourth Circuit".[7] Instead, the probative value of the evidence at issue is to display the identity theft that occurred via Miriam Paton, the forgery of Xu Shugong signature, and the perjury of Mr. Tjoa, which together were all directed at the acquisition of the "SINCO," mark in the USPTO, which creates a higher level of culpability. Ex. 7-12. Defendants next introduce a string of cases that relate to **patent proceedings** in attempts to illustrate that USPTO finding will confuse or mislead the jury. In *San Diego Comic Convention*, the court found "[t]he present matter involves three incontestable trademarks—trademarks DFP knew were registered with the USPTO—and **there is no patent in play**," and thus did not entertain the purported case law. *San Diego Comic Convention v. Dan Farr Prods.*, 2018 WL 4078639 at *7 (S.D. Cal. Aug. 23, 2018). Defendants' reliance on *Minemyer v. B-Roc Representatives* is similarly misplaced. In that case, the court excluded evidence of patent reexamination proceedings which it stated was a routine thing to do in patent jury trials. This is not analogous to this trademark action.

In *Fluke Corporation*, it was **undisputed** that the parties would not be bringing in evidence of fraud regarding who coined the term "IR Fusion." *Flir Systems, Inc. v. Fluke Corporation*, 2012 WL 13054267 at *3 (D. Or. Nov. 29, 2012). Even more concerning was, the Court made no such determinative ruling on the merits of this issue "to prohibit any exposure of

---

[7] Notably, in *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 135 (2015), the US Supreme Court noted that "it does not matter that registration and infringement are governed by different statutory provisions . . . [n]either does it matter that the TTAB and the Eighth Circuit use different factors to assess likelihood of confusion."

the jury to evidence, statements or implications that party committed fraud on PTO", **as represented by Defendants.** Instead, the Court **conditionally** granted the undisputed motion in limine contingent upon FLIR providing "the court with its best case on the issue" and further stated that it "is willing to consider revisiting this issue before trial." *Id.* [8]

### D. Further Reasons Chinese trademark proceedings are relevant

Defendants argue that their conduct as to trademark proceeding in foreign countries are irrelevant to this action, unless their actions support abandonment. Defendants suggest that SINCO is attempting to counter American law through these trademark proceedings. Defendants' cite to *Vanity Fair Mills, Inc.* which held that remedies provided by the Lanham Act, should not be given an extraterritorial application against foreign citizens acting under 'presumably' valid trade-marks in a foreign country. The present case is different as shown: **First**, XINGKE's position in the PRC trademark invalidation proceeding runs counter to its position in the U.S. proceeding. In the PRC proceeding, XINGKE argues that it "designed" and "created" the "SinCo & Device" trademark, and claims exclusive ownership of the "SinCo & Device" trademark. In this case XINGKE acknowledges SINCO was the original owner, but that it gave them an open-ended and free license to pillage SINCO's trade name as it sees fit. XINGKE is estopped from arguing in diametrically opposed position in China and before the USPTO, as it is before this Court. **Second**, Defendants assert that SINCO abandoned its worldwide trademarks due to lack and adequate control XINGKE's use of the trademark in both China. XINGKE advocates the Court reward their trademark infringement and ignore their trademark claims. The trademark proceedings in China highlight that if Defendants believed there to be an oral license, they would not have asserted that they created and owned the mark. A licensee's use inures to the benefit of the licensor-owner of the mark and the licensee acquires no ownership rights in the mark itself as codified in Lanham Act § 5.3. **Third**, as stated in the first section, these documents go to the protectability of the mark, likelihood of confusion, willful and intentional conduct, attorney fees, and punitive damages, which is why Defendants attempt to inappropriately broadly exclude these

---

[8] Similarly, Defendants reliance on *Innovation Ventures* is misplaced as the court specifically prevented USPTO findings, because it contradicted the Sixth Circuit's prior ruling that the "5–Hour ENERGY" mark is protectable. "Thus, obviating the need to present this evidence."

trademark proceedings. Moreover, Defendants cited both the Chinese and USPTO proceedings in their cross complaint and answer, and have evidence of the same in their trial exhibits.

### E. The Paton and Zhang Declarations are Relevant/Meet An Exception.

Notably, in contradiction to Defendants claims, Miriam Paton and Guanglei Zhang are named testifying witnesses. Defendants again make a broad request for exclusion without giving the court an accurate accounting of the Declarations submitted to the USPTO and CTO. For example, Defendants failed to include Miriam Declaration which discussed Defendants independents acts, not China as a whole. Ex. 11-12. Additionally, Defendants failed to mention that these Declarations were submitted to the government which qualifies as an exception to hearsay.[9] Ex. 11-13 In *Brighton*, plaintiff attempted to excluded any evidence of **its own interaction** with the USPTO; however, it was held to be relevant to plaintiff's trademark claims and **qualified under an exception to the hearsay rule**. *Brighton Collectibles*, 2009 WL 10674074, at *2, Citing FRE 803. To the contrary, courts regularly consider such documents when construing claims **for the purposes of infringement and validity analyses**.[10] *Id*. As shown in *United States v. Anderson*, 532 F.2d 1218, 1225 (9th Cir. 1976), the 9th Circuit approved the admission of a directory of a foreign city to establish identity and telephone numbers.

For the forgoing reasons, Defendants' motion should be denied. Arguendo, SINCO reserves to right to have this evidence submitted in camera outside the presence of the jury.

Dated: September 13, 2021              Respectfully submitted,

ROPERS MAJESKI PC


By: */s/ Daniel Gaitan*
LAEL D. ANDARA
ROBIN PEARSON
DANIEL E. GAITAN
Attorneys for Plaintiff
SINCO TECHNOLOGIES PTE LTD

---

[9] The English translations of the determinations of **April 26, 2018** and **May 4, 2018,** by the Trademark Review and Adjudication Board (the "TRAB") in the Trademark Office of the State Administration for Industry & Commence of the PRC of XINGKE's Registration Nos. 8607396 and 8607476 pursuant to Article 31, Paragraphs 1 and 2 of Article 45 and Article 46 of the PRC pre-amended Trademark Law are admissible as a government document.

[10] See also *Farouk Systems, Inc. v. Chi Nail Franchises*, LLC (C.D. Cal., Nov. 19, 2015) 2015 WL 12781705, at *2 (Plaintiff's contention, that documents created during the course of trademark proceeding should be excluded as hearsay, was unpersuasive.)