DOUGLAS A. WINTHROP (SBN 183532)
Douglas.Winthrop@arnoldporter.com
JEREMY T. KAMRAS (SBN 237377)
Jeremy.Kamras@arnoldporter.com
JOSEPH FARRIS (SBN 263405)
Joseph.Farris@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: 415.471.3100
Facsimile: 415.471.3400

*Attorneys for Defendants*
XINGKE ELECTRONICS (DONGGUAN) CO.,
LTD., formerly known as SINCO
ELECTRONICS (DONGGUAN) CO., LTD.,
LIEW YEW SOON aka, MARK LIEW, NG
CHER YONG. aka CY NG, and MUI LIANG
TJOA aka ML TJOA

**WHGC, P.L.C.**
Jeffrey C.P. Wang (SBN 144414)
*JeffreyWang@WHGCLaw.com*
Michael G. York (SBN 89945)
*MichaelYork@WHGCLaw.com*
Kathleen E. Alparce (SBN 230935)
*KathleenAlparce@WHGCLaw.com*
Jessica A. Crabbe (SBN. 263668)
*JessicaCrabbe@WHGCLaw.com*
1301 Dove Street, Suite 1050
Newport Beach, CA 92660
Tel. (949) 833-8483; Fax: (866) 881-5007

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SINCO TECHNOLOGIES PTE LTD., | Case No. 3:17-CV-05517-EMC |
| Plaintiff, | Action Filed: September 22, 2017 |
| vs. | **MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE REGARDGING THE COMPANY SINCOO** |
| SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS TECHNOLOGY CO., LTD.; SINCOO ELECTRONICS TECHNOLOGY CO., LTD.; MUI LIANG TJOA (an individual); NG CHER YONG aka CY NG (an individual); and LIEW YEW SOON aka MARK LIEW (an individual), | **Judge:    Honorable Edward M. Chen** |
| | **Trial:    November 1, 2021** |
| Defendants. | |

# I.      SUMMARY OF MIL NO. 3

Defendants file this Motion in Limine No. 3 for an order excluding Plaintiff SinCo Technologies Pte. Ltd. ("SinCo SG") from **referencing or offering any evidence concerning Sincoo Electronics Technology Co., Ltd. ("Sincoo") (a now-defaulted Defendant) and SinCo SG's allegation that this is "the same" entity as Defendant XingKe, or from making arguments concerning an unpleaded claim that Sincoo is XingKe's alter ego**. This evidence is irrelevant to any pleaded cause of action against a non-defaulted Defendant.  Further, even assuming, *arguendo*, that such evidence and argument were minimally probative of SinCo SG's pleaded claims against the un-defaulted Defendants, it is highly prejudicial and misleading to the jury. Exclusion of the evidence is therefore appropriate pursuant to Federal Rules of Evidence ("FRE") 402 and 403.

At no point during this proceeding has SinCo SG pleaded an alter ego theory with respect to XingKe and Sincoo. Rather, SinCo SG's Complaint—twice amended—contains no allegations regarding alter ego liability or the purported fact that XingKe and Sincoo are "the same" entity. *See* Second Amended Complaint, ECF No. 23, ¶ 27 (alleging, without more, that XingKe and Sincoo are "under common ownership and management").  SinCo SG instead chose to plead that Sincoo was a separate defendant, and then sought entry of default against that company, which was entered in 2018.  (ECF No. 110)  However, following this, SinCo SG did not move for a default judgment under Fed. R. Civ. Pr. 55(b), and did nothing to indicate that it was pivoting to seek a finding of alter ego liability for XingKe.  In fact, it did the opposite—in subsequent discovery it first stated that it had "no information" about Sincoo, and then in an amended response stated that Sincoo was a separate subsidiary of "Jinlong Machine & Electronics Co. Ltd." Farris Decl., Exs. A & B (SinCo Response and Amended Response to Interrogatory No. 8).  It was not until days ago in initial pretrial exchanges that SinCo SG provided XingKe with a draft Verdict Form that listed the defaulted Defendant Sincoo and contained a proposed Finding in **Question No. 1**, in which it would ask the jury to find that XingKe and Sincoo are "the same." *Id.*, Ex. C.  Given that SinCo SG has failed to plead allegations or state facts supporting that theory, it is irrelevant.  Moreover, allowing references to SinCoo and this theory would be impose

1  substantial risk of undue prejudice to XingKe and confusion of the central issue in the case—

2  likelihood of confusion—by suggesting to the jury that XingKe was responsible for the acts of a

3  company that *used a different name more similar to SinCo* despite XingKe having no control over

4  that company.  As such, XingKe seeks exclusion of the following: testimony, documentary

5  evidence, references, inquiry, argument, or any other exposure of the jury to evidence concerning

6  Sincoo and SinCo SG's theory that it is "the same" entity as XingKe, that Sincoo is XingKe's alter

7  ego, or any other unpleaded theory of piercing the corporate veil, presented at any time during the

8  course of the trial.

9  **II.    FACTS**

10      **A.    Sinco SG Failed to Allege Its Alter Ego Theory Prior to Trial.**

11          SinCo SG had numerous opportunities during this proceeding to properly allege its intent

12  to prove an alter ego theory with respect to XingKe and Sincoo, yet it never did.  SinCo SG named

13  Sincoo as a defendant in the initial Complaint (ECF No. 1) and in its two Amended Complaints,

14  but never once stated in those pleadings that it would seek a finding that SinCo SG and Sincoo

15  were the "same" company or were alter egos.  *See generally* Complaint (ECF No. 1); First

16  Amended Complaint (ECF No. 14) and Second Amended Complaint (ECF No. 23).  Rather, in

17  relevant part, it made only allegations that XingKe and Sincoo were "under the same ownership

18  and management."  SAC ¶ 27; *see also* SAC ¶¶ 22, 28 (also alleging that XingKe "uses 'Sincoo'

19  as its English name and operates www.sincoocn.com").  Further, it also made (totally

20  unsubstantiated) allegations that Sincoo was XingKe's "primary customer"—which directly

21  contradict the idea that the companies would somehow be the same.  SAC ¶ 28.

22          In 2018, SinCo SG made a request to the Court that it enter default against Sincoo based

23  on its attempts to serve a Mr. Tom Chen of Sincoo (who is also not a Defendant), and

24  communications by counsel for Plaintiff with Chen.  (ECF Nos. 104 and 107).  Accordingly, on

25  December 17, 2018, this Court entered default against Sincoo.  (ECF No. 110).  Following that

26  entry of default, SinCo SG did not file a Motion for Default Judgment against Sincoo under Fed.

27  R. Civ. P. 55(b), and it did not seek to amend its pleading to add alter ego allegations.

28

**B.      In discovery, SinCo SG disclaimed knowledge of Sincoo and did not state facts supporting an alter ego theory**

In January 2019, following the entry of default against Sincoo, XingKe appeared in this case for the first time when it filed its Answer to the Second Amended Complaint.  (ECF 136). Shortly thereafter, XingKe propounded written discovery on SinCo SG in which it asked, via Interrogatory No. 8, for SinCo SG to identify the support for its allegation that XingKe was "under common ownership and management" as "XingKe Electronics Technology Co. Ltd" [Sincoo].  In response, SinCo SG suggested—without evidence—that XingKe and Sincoo were subsidiaries of the same parent company, but otherwise disclaimed knowledge of Sincoo.  *See, e.g.*, Farris Decl, Ex. A ("The term 'parent company,' when read in the context of the whole of the Second Amended Complaint is referring to JINLONG MACHINERY & ELECTRONICS CO., Ltd. and [SinCo SG] **has had no involvement or knowledge of Sincoo.**").  On May 9, 2019, SinCo SG amended this response, but again stated only allegations about Jinlong.  *See id.*, Ex. B.  No documents were cited either time.  And in response to a Request for Production of Documents served at the same time asking it to produce documents concerning allegation that XingKe and Sincoo are "under common ownership and management," SinCo SG stated that it had "**no responsive information**."  *See id.*, Ex. D.

Further, via depositions, the evidence has established that Sincoo is a separate company that was leasing space from XingKe at the same industrial complex that occasionally did business at arm's length with XingKe (including during the time when XingKe was working with SinCo SG in 2014).  *See., e.g.,* Farris Decl. Ex. E (testimony of Deqiang Liu that Sincoo was "another company" leasing space at the factory); Ex. F (Ex. 283 of Liu Deposition - 2014 Lease between XingKe [under old name SinCo Electronics (Dongguan Co. Ltd.)] and Sincoo [Sincoo Electronics Technology Co.]); Ex. G (testimony of CY Ng that Sincoo was in "a building next to us" at the industrial complex).

## III.     ARGUMENT

**A.      Evidence regarding Sincoo is irrelevant to any pleaded alter ego allegation under FRE 402.**

1   Following all of this, on the eve of trial, SinCo SG has now made clear that it intends to

2   introduce evidence and argument concerning an irrelevant and unpleaded alter ego theory before

3   the jury.  SinCo SG's initial exchanged Proposed Jury Verdict Form includes the following as

4   Question No. 1: "Did [SinCo SG] prove by a preponderance of the evidence that [XingKe] is the

5   same as [Sincoo].").  Farris Decl., Ex. C.  The Verdict Form continues to request findings against

6   Sincoo as a separate defendant on each count—notwithstanding that Sincoo is in default and will

7   not be appearing at trial.

8   It is well-established that two conditions must be met before the alter ego doctrine will be

9   invoked: (1) there must be "such unity of interest and ownership that the separate personalities of

10  the two entities no longer exists; and (2) the "failure to disregard their separate identities would

11  result in fraud or injustice." *Florists' Mutual Ins. Co. v. Floricultura Pacific, Inc.*, 19-cv-05793-

12  WHO, 2020 WL 6550039, at *7 (N.D. Cal. Apr. 3, 2020) (quoting *Williams v. Yamaha Motor Co.*

13  *Ltd.*, 851 F.3d 1015, 1021 (9th Cir. 2017)).  SinCo SG's conclusory allegation that XingKe and

14  Sincoo are "under common ownership and management" is insufficient to plead a unity of

15  ownership and interest or to set forth allegations concerning how that would result in a fraud or

16  injustice. *See, e.g.*, *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) ("Total ownership and

17  shared management personnel are alone insufficient to establish the requisite level of control.").

18  Whether Sincoo and XingKe are "the same" entity—or any theory requiring a finding of alter ego

19  liability or a piercing of the corporate veil—is thus not at issue in this trial.

20  Moreover, it would be fundamentally unfair to XingKe to allow SinCo SG to try to make

21  this argument to the jury given that this theory was never fairly disclosed.  *See, e.g.*, *U.S. Fidelity*

22  *and Guar. Co. v. Lee Investments LLC*, 641 F.3d 1126, 1138 (9th Cir. 2018) (finding that the

23  district court did not abuse its discretion in granting motions in limine that precluded plaintiff from

24  arguing at trial that defendants were agents of one another; "The district court held that this theory

25  was not disclosed in discovery, that the defendants had not had an opportunity to conduct

26  discovery on the theory or develop a defense, and that the defendants would be unfairly prejudiced

27  if the court allowed the [plaintiff] to present a new theory at trial."); *see also Wady v. Provident*

28  *Life and Accident nIs. Co. of America*, 216 F.Supp.2d 1060 (C.D. Cal. 2002) (noting, in summary

- 4 -

judgment context, that pleadings lacked any substantive allegations relating to alter ego theory; "None alleges that UnumProvident treats the assets of Provident as its own, that it commingles funds with Provident, that it controls the finances of Provident, that it shares officers or directors with Provident, that Provident is undercapitalized, or that the separateness of the subsidiary has ceased. Without such allegations, the issue is not adequately raised, and UnumProvident was not put on notice that this was a theory against which it should be prepared to defend.").

Any evidence relating thereto is therefore not relevant to the claims being litigated and should be excluded under FRE 402.

### B. Any probative value of evidence regarding Sincoo would be substantially outweighed by its prejudicial effect and tendency to confuse the jury.

To the extent the Court were to allow evidence and argument concerning Sincoo to be heard by the jury, the confusion of issues that inevitably would result would substantially risk tainting the entire outcome of the trial. Indeed, there is a high risk that the jury would erroneously conclude that XingKe is responsible for the actions of a separate company over which it has no control based on innuendoes and suggestions from SinCo SG that the companies are the "same." XingKe is in a far different position from that company, such that requiring it to defend the actions of that company would be substantially unfair. For example, it is undisputed that XingKe was: (i) at a minimum, a legitimate former licensee of the term "SinCo" that worked with SinCo SG for years (as SinCo SG fully admits), (ii) changed its English name in January 2017 to stop using the disputed term "SinCo," thus fully re-branding the company, and (iii) has appeared in this litigation and will be defending itself at trial. In contrast, Sincoo is (i) not a former licensee (at least not admitted by SinCo SG to be one), (ii) did not change its name when XingKe did, and (ii) is not appearing for trial. Moreover, that separate company uses the name "Sincoo"—a term that is *significantly more similar* to "SinCo" than the term "XingKe." In fact, the name of that company is different by only *one letter*—in contrast to XingKe which is markedly different. While XingKe was able to change its own name to distance itself from Sinco, it had no ability to force that third party company to change its name. And, while no witnesses from Sincoo will be at trial, SinCo SG is nonetheless seeking to put that company on trial *via XingKe as a proxy* based on argument that companies are "the same." To allow that would cause an inordinate amount of prejudice to

- 5 -

1    XingKe, substantially confuse the issues, and, ultimately, deprive XingKe of its right to fair trial

2    on the real issues in this case.

3    **IV.    CONCLUSION**

4          For the foregoing reasons, Motion in Limine No. 5 to Exclude Evidence Concerning

5    Sincoo should be granted as set forth in the Proposed Order.

6

7    Dated:  September 3, 2021.                    ARNOLD & PORTER KAYE SCHOLER LLP

8                                                 By:   /s/ Douglas A. Winthrop
9                                                       DOUGLAS A. WINTHROP

10                                                     *Attorneys for Defendants*
                                                       XINGKE ELECTRONICS (DONGGUAN) CO.,
11                                                     LTD., formerly known as SINCO
                                                       ELECTRONICS (DONGGUAN) CO., LTD.,
12                                                     LIEW YEW SOON aka, MARK LIEW, NG
                                                       CHER YONG. aka CY NG, and MUI LIANG
13                                                     TJOA aka ML TJOA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  LAEL D. ANDARA (SBN 215416)
   DANIEL E. GAITAN (SBN 326413)
2  ROBIN M. PEARSON (SBN 146704)
   ROPERS MAJESKI PC
3  545 Middlefield Road, Suite 175
   Menlo Park, CA 94025
4  Telephone:    650.364.8200
   Facsimile:    650.780.1701
5  Email:        lael.andara@ropers.com
                 robin.pearson@ropers.com
6                daniel.gaitan@ropers.com

7  Attorneys for Plaintiff
   SINCO TECHNOLOGIES PTE LTD

8

9               UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11

12  SINCO TECHNOLOGIES PTE LTD,              Case No. 3:17CV5517

13              Plaintiff,                   **PLAINTIFF SINCO TECHNOLOGIES
                                             PTE LTD'S OPPOSITION TO
14       v.                                  DEFENDANTS' MOTION IN LIMINE
                                             NO. 3 TO EXCLUDE EVIDENCE
15  SINCO ELECTRONICS (DONGGUAN) CO.,        REGARDGING THE COMPANY
    LTD.; XINGLE ELECTRONICS                 SINCOO**
16  (DONGGUAN) CO., LTD.; XINGKE
    ELECTRONICS TECHNOLOGY CO., LTD.;        PRETRIAL HEARING
17  SINCOO ELECTRONICS TECHNOLOGY            Date: October 5, 2021
    CO., LTD.; MUI LIANG TJOA (an            Time: 3:00 p.m.
18  individual); NG CHER YONG aka CY NG (an  Place: Courtroom 5 – 17th Floor
    individual); and LIEW YEW SOON aka       Hon. Edward M. Chen
19  MARK LIEW (an individual),
                                             TRIAL DATE
20              Defendants.                   November 1, 2021

21

22

23

24

25

26

27

28

4812-5705-6762.4

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.      INTRODUCTION

3

Plaintiff SINCO TECHNOLOGIES PTE LTD ("SINCO") hereby files this opposition to

4

Defendants Motion in Limine to Exclude evidence regarding SinCoo. Defendants refers to

5

Defendants SinCo Electronics (Dongguan) Co., Ltd.; XingKe Electronics (Dongguan) Co., Ltd.

6

("XINGKE"); Mui Liang Tjoa; Ng Cher Yong; and Liew Yew Soon ("Mark Liew") (collectively,

7

"Defendants"). Defendants take the position that a finding concerning XingKe and Sincoo's

8

relationship in this case is not relevant and is highly prejudicial and misleading to the jury. Yet,

9

throughout the course of this litigation, Defendants have taken varying positions as it relates to

10

the nature of the relationship between the two

11

entities, and a factual determination of fact on this

12

matter would be necessary to hold XINGKE

13

accountable for its conduct if it was the actor,

14

regardless of the label. SINCOO has the same

15

address of XINGKE.

16

## II.     FACTS

17

On **December 17, 2018,** SINCO obtained a Default against SinCoo Technology Co.,

18

LTD. [ECF 110]. In 2015, a US Customer had conducted an Audit on the factory identifying that

19

XINGKE did not properly maintain an anodizing license.  Gaitan Declaration of MIL 3 (G Dec.)

20

Ex. 399. On **November 19, 2015,** SINCO again requested XINGKE provide evidence of an

21

anodizing license along with other documents so that it could evaluate the purchase of XINGKE.

22

Ex. 331.  Nowhere in these communication with SINCO did XINGKE ever reference SinCoo as a

23

tenant. Yet, Defendants produced a 2014 lease agreement with SinCoo. Defendants -Ex. 558.

24

Mr. Quek Seow Eng testified:

25

Q.      Let me hand you what's been marked as Exhibit 116.
(Exhibit 116, as previously marked - Document with Bates numbers

26

SINCO0962164 through SINCO0962203)

27

Q.      Have you seen this document before?
A.      Document? *No.*

28

Q.      Well, it's a printout of a webpage. Have you seen this webpage before?

ROPERS
MAJESKI

A Professional Corporation
Menlo Park

PLAINTIFF'S OPP TO DEF'S MIL#3
3:17CV5517

4812-5705-6762.4

1  A.   *Yes*.
   Q.   And when did you see this webpage?
2  A.   Probably during the introduction.
   Q.   When was that?
3  A.   In company's meetings.
   Q.   So during the company meetings, SinCoo would also be part of the presentation?
4  A.   *SinCoo? No -- no idea.*
   Q.   Sorry, so you're not familiar with this webpage?
5  A.   *I'm not familiar with this.*
   Q.   Okay, but at the bottom it makes reference to XingKe, X-i-n-g-K-e, official
6       website. You're familiar with that company; correct?
7  A.   *XingKe, yes.*
   Q.   But the company that's under the date January 7th, 2019, S-i-n-C-o-o, you're not
8       familiar with that company?
9  A.   *No*. …
   Q.   So looking at the fourth page of the webpage, Exhibit 116, it's SINCO962167, it
10      says "About SinCoo", S-i-n-C-o-o.
11 A.   Mm, yes.
   Q.   Do you see that picture of the building?
12 A.   *Yes.*
   Q.   Do you see where it says SinCoo on the building?
13 A.   *Yes.*
   Q.   What's the actual sign that's on that building?
14 A.   *SinCoo. C -- S-i-n-C-o-o.*
   Q.   But that, that building exists in the real world; correct?
15
   A.   No. I think this is a photo image.
16 Q.   So that building does not exist in the real world?
   A.   No.
17 Q.   It just -- it doesn't contain a different sign?
18 A.   Yes.
   Q.   So does this building resemble the building that has the sign XingKe, X-i-n-g-K-e?
19 A.   *Yes.*
   Q.   It does?
20 A.   *Yes.*
   Q.   So basically they've taken the building that exists and switched out a different
21      name?
22 A.   *Yes.*
   Q.   But that's not where they're operating?
23 A.   *No*.

24 (Ex. A at 107:9-111:3.)

25 Gouki Gao Testified:

26      Q. So, looking at the document that I showed you previously, that's in front of you, that
        company, SinCoo -- S-I-N-C-O-O -- are you familiar with that company?

27      A. **Not familiar…**

28      Q. And are you aware that your uncle has an ownership interest in this company?

PLAINTIFF'S OPP TO DEF'S MIL#3
3:17CV5517

4812-5705-6762.4

1    A. **I don't know.**

2    Q. Are you aware that they do anodizing at

3    that facility?

4    A. **I don't know.**

     Q. Are you aware that the anodizing license they operate under is held by your employer?

5    A. I don't know.

6    (Ex. B at 27:13-29:25.)

7    Defendant Tjoa testified:

8    Q.    But on this website, it says: "2007, Humen DongGuan branch industrial park
             completed and put into operation, covers an area of 70,000 square meters,

9            construction area of 180,000 square meters."
             Do you recall that language from the prior exhibit?

10   A.    Yes.
     Q.    Did you authorize Sincoo to use the same description as DG?

11   A.    *No*.
     Q.    Would this have been a violation of your copyrights?

12   A.    *This, yes*.
     Q.    Do you understand that your website has a copyright on it? The DG website?

13   A.    I believe so.
     Q.    And if you found out somebody was using that, you would enforce that. Correct?

14   A.    *Yes*.

15   (Ex. C at 200:11-201:17.)

16   Q.    Now, is any of the information we've disclosed to you relating to Sincoo and its
             use of your copyrights and using of your information and images, is that a surprise

17           to you?

18   A.    *I need to figure out what exactly they are up to. For this. Yeah. It's -- kind of
             surprise me.*

19   Q.    I mean, if you confirmed that they are competing with you for the same customers,
             is this something you would evict them for?

20   A.    *They are not really competing with us on the same parts. They do metals.*
     Q.    Even if it's the same customers?

21   A.    *Yes.* That's okay.
     Q.    Do you understand that they are working on the same end product? They are just

22           providing different parts to that end product for the same customer?

23   A.    Yes.
     Q.    Do you understand that?

24   A.    They do metal. We do plastic and silicons. I think that's fine.

25   (*Id*. at 215:21-216:19.)
     Q.    Did you buy any anodizing equipment?
     A.    No, we did not.

26   Q.    Do you do anodizing at that factory?
     A.    Anodizing was done by the other company.

27   Q.    Sincoo?
     A.    Yes.

28

- 3 -

4812-5705-6762.4

| | |
|---|---|
| 1 | Q.      So the license, and all that, would have been held by Sincoo? |
| 2 | A.      The license has been held, I believe it's under -- oh, I need to check who has that license. |
| 3 | Q.      Isn't it true that the license is held by Jinlong? |
| | A.      I think we do have the license for that. |

(Id. at 348:11-23.) The SINCOO website claims it is part of XINGKE. Ex. 134 and 135.  The

website content is identical for XINGKE and SINCOO. Ex. 136. The XINGKE website contains

the same tooling images. Ex. 136.

## III.    LEGAL ARGUMENT

If SINCOO is, in fact, one and the same as XINGKE, the likelihood of confusion amongst

consumers become much greater due to the phonetic equivalence between the "SinCo" and

"Sincoo" marks. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 633 (9th Cir.2005)

(treating "survivor" and "surfvivor" as phonetically "nearly identical" weighing in favor of a

finding of likely confusion.) Therefore, the extent and nature of the relationship between

SINCOO and XINGKE is highly relevant to this case, especially, because of the similarity

between the two entities' marks and Defendants' improper use amplifies the likelihood of

confusion amongst consumers.

Defendants attempt to absolve XINGKE of its infringement of SinCo's marks through

alleging that SinCo did not properly plead its "alter ego" theory. In reality, whether the alter ego

theory is applicable or even necessary in this case is secondary to SINCO supporting its

allegations that XINGKE has authorized induced or acted as SINCOO and they are one and the

same. Defendants' ask for a blanket exclusion of "all allegations that Sincoo Electronics

Technology Co., Ltd. ("Sincoo") is the same entity as Defendant XingKe, **or** from making

arguments concerning an unpleaded claim that SINCOO is XINGKE's alter ego." *Defs' MIL No.

3. 1:3-6.* This is an improper and, if permitted, would greatly prejudice SINCO's case by

stripping it of presenting to the jury evidence of XINGKE's phonetic equivalent infringement.

**B.      XingKe and SinCoo's relationship is relevant as it illustrates the extent of Defendants' infringement in this matter.**

PLAINTIFF'S OPP TO DEF'S MIL#3
3:17CV5517

4812-5705-6762.4

ROPERS
MAJESKI

A Professional Corporation
Menlo Park

1.      **Defendants' inconsistent positions re: relationship with Sincoo.**

Defendants have taken multiple positions throughout the course of this litigation as it relates to the relationship between XINGKE and SINCOO. Should the jury find that a relationship between these two entities exists, and SINCOO's infringing acts can be attributed to XINGKE, it would have a large impact on the central issue in this case: the likelihood of confusion amongst consumers. The jury should be presented with evidence illustrating the relationship between the parties to hold XINGKE accountable for its infringing use when they maintained control over SINCOO's anodizing and metal machining "CNC" factory, as stated by Mr. Tjoa's deposition testimony. XINGKE's control and direction of the factory is further demonstrated on the respective companies' websites where images of the CNC factory are used as marketing materials naming XingKe's use of metal machining and an anodizing line of assembly.  Tjoa testified on January 17, 2019 (Ex. C at 219:10-200:8):

| | | |
|---|---|---|
| Q. | Okay. Let me see. I don't think so, no. This is Sincoo. | |
| Q. | Do they have a sign on their building? | |
| A. | ***No***. | |
| Q. | They do not? | |
| A. | ***This is the same building.*** The name is Sincoo. | |
| Q. | So it looks like somebody just went in and photoshopped a name on a building? | |
| A. | I don't know. | |
| Q. | You've seen that building but not with that name? | |
| A. | ***I've never come across this name on the building.*** | |
| Q. | But does that accurately represent the building with the factory; just not with that sign? | |
| A. | ***Yes***. | |

Tjoa testified on June 3, 2019:

| | |
|---|---|
| Q. | Okay. And I think you had indicated last time that Jin Long Equipment & Machinery had an anodizing license? Is that correct? |
| A. | ***That was owned by the tenants, in fact.*** |
| Q. | So -- |
| A. | When I checked. |
| Q. | So you -- |
| A. | ***Anodizing was owned by the tenants.*** |
| Q. | And who are the tenants? |
| A. | It's another company. I don't really deal with them. |
| Q. | Where were they located? |
| A. | ***It's in XingKe factory, in the same complex.*** |
| Q. | Let me show you what's previously been marked as Exhibit 236. And I'm turning it to page XK000117. Do you see the diagram -- |
| A. | Yes. |
| Q. | -- on the top page that is a layout of the facilities in DongGuan? |

A.    Yes.
Q.    Where is the tenant that you were just referring to located?
**A.    *Oh. The CNC here --***
Q.    Yes?
A.    -- is owned by the tenants.
Q.    And how long have they been a tenant?
A.    I don't know. Because they were there ***when we acquired them.***
Q.    They were already there when you acquired them?
**A.    *Yeah*.**
Q.    And that's the block that's referenced as "CNC?"
**A.    *Yes*.**
Q.    Are there any other tenants in this facility other than the one you just referenced?
A.    Not that I know of.
Q.    And is that tenant the one we discussed, referring to a SinCoo -- S-I-N --
**A.    *Yes. Something like that, I think. S-I-N-C-O-O.* Something like that.**
**A.    *All the CNC, in fact, when we took over, I asked the team to change all those CNC owned and anodizing owned by partners instead of owned by XingKe.***
Q.    So that's beginning at ML17007 –
A.    Yeah.



Q.    -- to 17051?[1]
A.    Yeah. I asked them to put all my partners. That's a factual case. Actual facts.
Q.    Which partners had that capability?
**A.    *That's the tenants.***
Q.    The SinCoo?
**A.    *Yeah. The tenants*.**
Q.    So this was something that you would show customers to show you could do anodizing, but it was actually your partner who did the anodizing?
**A.    *Yes; yes.***
Q.    And that's -- because that goes to the metal part?

---

[1] Notably, these same images are found on XINGKE's website under their tooling section. Ex. 136.

PLAINTIFF'S OPP TO DEF'S MIL#3
3:17CV5517

4812-5705-6762.4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROPERS
MAJESKI

A Professional Corporation
Menlo Park

A.      *Yes.*
Q.      So you had a partner that did the metal parts, but XingKe, itself, did the plastic parts.
A.      Plastic and rubber.
Q.      But it was represented to customers that you had the capability to do anodizing and metal parts?
A.      *Yes*.

(Ex. D at 171:1-172:25 and 182:1-183:3.) When read in light of the position that Defendants have taken on this issue in their discovery responses, it becomes clear that inconsistencies exist that need to be introduced to the jury for further evaluation.

> **2.      The relationship between XingKe and Sincoo is directly relevant to SinCo's trademark infringement claims**

The relationship of the parties is relevant because it unveils the nature and extent of XINGKE's infringement in this action; more so, as the parties' marks are identical. "SinCo," is substantially the same as to "SinCoo," with the addition of only one letter and the phonetically equivalent as to "XingKe." *Gao 2019 Deposition at 46:17.* ("Q. Is that S-I-N-C-O or X-I-N-G-K-E? A. If you are just talking about the Chinese character, the Pinyin is "X-I-N-G-K-E."). Ex. B. The greater the similarity between the two marks at issue, the greater the likelihood of confusion. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1144 (9th Cir.2002).

## IV.      <u>CONCLUSION</u>

If XINGKE used the "Sinco" mark and the "SinCoo," mark, the Jury should be allowed to make that determination, as it goes to intent and wilfulness, but fundamentally they are two different infringments that Tjoa tetified were both being used with customers on the same projects, the only differnce was if it was for metal parts or plastic ones.

Dated: September 13, 2021              ROPERS MAJESKI PC

By: */s/ Daniel E. Gaitan*
_____
       LAEL D. ANDARA
       DANIEL E. GAITAN
       Attorneys for Plaintiff
       SINCO TECHNOLOGIES PTE LTD

4812-5705-6762.4