DOUGLAS A. WINTHROP (SBN 183532)
Douglas.Winthrop@arnoldporter.com
JEREMY T. KAMRAS (SBN 237377)
Jeremy.Kamras@arnoldporter.com
JOSEPH FARRIS (SBN 263405)
Joseph.Farris@arnoldporter.com
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: 415.471.3100
Facsimile: 415.471.3400

*Attorneys for Defendants*
XINGKE ELECTRONICS (DONGGUAN) CO.,
LTD., formerly known as SINCO
ELECTRONICS (DONGGUAN) CO., LTD.,
LIEW YEW SOON aka, MARK LIEW, NG
CHER YONG. aka CY NG, and MUI LIANG
TJOA aka ML TJOA

**WHGC, P.L.C.**
Jeffrey C.P. Wang (SBN 144414)
*JeffreyWang@WHGCLaw.com*
Michael G. York (SBN 89945)
*MichaelYork@WHGCLaw.com*
Kathleen E. Alparce (SBN 230935)
*KathleenAlparce@WHGCLaw.com*
Jessica A. Crabbe (SBN. 263668)
*JessicaCrabbe@WHGCLaw.com*
1301 Dove Street, Suite 1050
Newport Beach, CA 92660
Tel. (949) 833-8483; Fax: (866) 881-5007

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SINCO TECHNOLOGIES PTE LTD., | Case No. 3:17-CV-05517-EMC |
| Plaintiff, | Action Filed: September 22, 2017 |
| vs. | **MOTION IN LIMINE NO. 4 TO EXCLUDE REFERENCE TO PRELIMINARY INJUNCTIONS AND CONTEMPT** |
| SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS TECHNOLOGY CO., LTD.; SINCOO ELECTRONICS TECHNOLOGY CO., LTD.; MUI LIANG TJOA (an individual); NG CHER YONG aka CY NG (an individual); and LIEW YEW SOON aka MARK LIEW (an individual), | **Judge:**   **Honorable Edward M. Chen** <br> **Trial:**   **November 1, 2021** |
| Defendants. | |

1   **I.      SUMMARY OF MOTION IN LIMINE NO. 4**

2          Defendants hereby file Motion in Limine No. 4 seeking an order excluding Plaintiff SinCo

3   Technologies Pte. Ltd. ("SinCo SG") from **referencing or offering any evidence concerning: (1)**

4   **the preliminary injunction orders ("PIs") issued by the Superior Court of California, Santa**

5   **Clara County on June 1, 2017, and this Court on October 30, 2018 (ECF 86); and (2)**

6   **Defendant Mark Liew's stipulation to a violation of the state court's PI that resulted in the**

7   **"Order of Contempt Re Contempt of Defendant Mark Liew.** *See* Farris Decl. Ex. A,

8   ("Contempt Order").  This evidence is not relevant to the merits of the claims that will be tried in

9   this case (FRE 401) and, were there any probative value from this evidence, it is substantially

10  outweighed by a danger of unfair prejudice, confusion of the issues, and the potential to mislead the

11  jury.  The danger is not only to Defendant Liew, but also to the remaining Defendants who were

12  never found to have violated either PI (FRE 403).

13  **II.     BACKGROUND**

14         The June 2017 preliminary injunction against Liew in the State Action, in part, prohibited

15  Liew from contacting SinCo SG customers and portraying himself as a SinCo SG employee.  Farris

16  Decl. Ex. B, ("State PI").  The preliminary injunction against Liew in this action, issued on October

17  2018, and well after Defendants had ceased use their former corporate name that used the term

18  "SinCo," prohibited Defendants from using the term "SinCo" to identify themselves or their

19  products or services, while permitting them to use the word "XingKe," so long as they included a

20  disclaimer in their communications with customers.  Farris Decl. Ex. C, ("Federal PI").

21         During the discovery process, Liew produced certain emails with Google for a period

22  covered by the State PI.  Farris Decl. Ex. D.[1]  All but one of these emails revealed that, in a few

23  instances after June 2017, Liew *responded to* emails sent to his former "sincocn.cn" email address

24  by Google.[2]  Farris Decl. Ex. D.  In response to this evidence, Plaintiff brought a contempt

---

[1] For example, Liew responded to e-mails sent from Google to him on June 2, 2017 (Exhibit D-1), June 9, 2017 (Exhibit D-2), June 15, 2017 (Exhibit D-4), June 20, 2017 (Exhibit D-6), July 5, 2017 (Exhibit D-7), and August 2, 2017 (Exhibits D-8 and D-9). On June 10, Liew sent a follow-up e-mail (Exhibit D-3) regarding a discussion that was initiated by Google on June 9 (Exhibit D-2).

[2] On June 19, Liew sent an e-mail to Google discussing a project that was already underway. (Exhibit D-5).

1   proceeding against Liew for violating the State PI.  The state court recognized that holding a

2   contempt proceeding would require up to five days of testimony and likely result in both sides

3   submitting briefs on both factual and legal issues.  Farris Decl. Ex. A, at 5.  To avoid "the

4   substantial costs both sides would incur" in litigating the contempt proceeding, the court proposed

5   that the parties enter into a stipulation to bring the contempt hearing to a resolution.  *Id.* The parties

6   agreed, and the court issued an order, fining Liew $1,000 for this violation of the State PI.  *Id.*

7        At trial, whether Google chose Xingke over SinCo SG due to confusion will be a crucial

8   factual issue for the jury to decide—but one thing will be clear: Google knew that the difference

9   between the companies *long before* these emails were sent in 2017.  Rather, the evidence will show

10  that—a year before Liew emailed with Google—Google had entered into a Master Purchase

11  Agreement with Liew's employer, SinCo DG Dongguan (now Xingke) on October 20, 2016.  Farris

12  Decl. Ex. E, ("SinCo DG Master Purchase Agreement").  Moreover, Google's Global Supply

13  Manager, Andy Lim, knew that Xingke and SG were two distinct entities as early as August 2016.

14  Lim's email with Defendant ML Tjoa reveals that Lim desired "to treat [SinCo SG and Xingke] as

15  separate companies" and was fully aware that XingKe (then known as SinCo Electronics

16  Dongguan) was competing with SinCo SG as a separate company at that time.  Farris Decl. Ex. F.

17  **III.    ARGUMENT.**

18      **A.    The Court should exclude evidence relating to the State and Federal**

19          **Preliminary Injunctions under FRE 401, 403, and 404.**

20       Courts regularly preclude the admission of preliminary injunction evidence, or any reference

21  to such proceedings, due to the inevitable risk of undue influence on a jury.  *See Newmark Realty*

22  *Capital, Inc. v. BGC Partners, Inc.*, No. 16-cv-01702-BLF, 2018 WL 6439133, at *6 (N.D. Cal.

23  Dec. 7, 2018); *Park W. Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 323-24 (S.D.N.Y.

24  2009); s*ee also King Lombardi Acquisitions, Inc. v. Troop Real Estate, Inc.*, No. 09-cv-3672-DSF,

25  2011 WL 13213918, at *1 (C.D. Cal. Jan. 10, 2011) (excluding evidence of a stipulated preliminary

26  injunction).  *Newmark Realty Capital, Inc*, 2018 WL 6439133, at *6 (N.D. Cal. Dec. 7, 2018), also

27  a trademark case, is instructive.  There, the court excluded evidence under Rule 403 of any

28  reference to the court's prior preliminary injunction order.  It reasoned that "the jury is likely to

1  determine that the judge has already decided the factual issues and thus the jury need not re-weigh

2  the evidence." *Id.*  It also concluded that a limiting instruction would be insufficient to mitigate the

3  prejudicial effect of the evidence, "[g]iven the complexity of the issues and the unavoidable

4  deference a jury is likely to give a judge's written order." *Id.*  Likewise, in *Park*, the court excluded

5  evidence under Rule 403 of both the preliminary injunction ruling as well as any reference to the

6  making of the motion due to the risk of unduly influencing the jury.  *Park W. Radiology*, 675 F.

7  Supp. 2d at 323-24.

8        The same result is required here.  Any mention of the multiple preliminary injunctions

9  barring Liew and the other Defendants, respectively, from using the terms "SinCo" to identify

10  themselves or their products likely would cause the jury to determine that both courts have already

11  decided that such use was unlawful or likely to cause SinCo SG actual harm.  In fact, this case

12  presents an even greater risk of unfair prejudice than the typical case because there were multiple

13  PIs in place, and as stated above, whether Google was a legitimate customer of Liew's employer

14  remains an issue for the jury to decide—and there is strong evidence showing that his stipulated

15  violation of the PI with respect to that conduct was irrelevant to any confusion.

16        Moreover, allowing any evidence regarding Liew's violation of the preliminary injunction

17  will substantially prejudice the jury against the other Defendants who did not stipulate to having

18  violated the state PI.  There is a substantial risk that the jury will attribute the fact that Liew

19  stipulated to having violated the state PI to all Defendants—his colleague and employer—thereby

20  causing further prejudice by mere association.  Given the dramatic narrative that Plaintiff hopes to

21  convey at trial, including focusing primarily on Liew's allegedly "secret" visits to customers in July

22  2016, a contempt finding arising from Liew's emails with Google will cause unfair prejudice to

23  Defendants where they might not otherwise even perceive that the evidence has any evidentiary

24  value.  The threshold question of whether Google was actually confused at any point when it

25  awarded various projects to SinCo Electronics (Dongguan) has yet to be decided. Therefore,

26  evidence relating or referring to either the state or federal PIs, as well as Liew's violation of the

27  state PI, should be excluded under Rules 402, 403, and 404.

28

1

**B.      This Court should exclude evidence of Liew's stipulation to the Contempt**

2

**Order.**

3        In the alternative, at least Liew's stipulation to the Contempt Order should be excluded

4    under Federal Rule of Evidence 408.  The rule proscribes, to prove or disprove validity, the

5    admission of furnishing, promising, or offering valuable consideration to compromise a claim.

6    Here, the state court recognized that holding a contempt proceeding would require significant

7    testimony and cross-examination and likely result in both sides incurring substantial legal fees.  To

8    avoid significant litigation fees, the court encouraged the parties to bring the contempt hearing to a

9    resolution.  In other words, Plaintiff avoided incurring up to five days of attorneys' fees and

10    additional costs associated with the submission of a written brief because Liew agreed to accept an

11    entry of the contempt order to forego his right to present evidence and cross-examine witnesses at

12    the contempt hearing.   Liew's good faith decision to accept a compromise is the exact conduct that

13    Rule 408 was meant to encourage.  Now, Plaintiff seeks to use such evidence as a sword as

14    circumstantial evidence of Liew's liability that would create undue degree of prejudice.

15    **IV.      CONCLUSION.**

16        For the foregoing reasons, the Motion In Limine to Exclude Evidence of the State Court

17    Preliminary Injunction, Liew's Stipulation of the Related Contempt Order, and Liew's Violation

18    of the State Court Preliminary Injunction should be granted as set forth in the Proposed Order.

19    Dated:  September 3, 2021.                    ARNOLD & PORTER KAYE SCHOLER LLP

20                                                        By:   /s/ Douglas A. Winthrop
21                                                              Douglas A. Winthrop

22                                                              *Attorneys for Defendants* XINGKE
                                                              ELECTRONICS (DONGGUAN) CO., LTD.,
23                                                              formerly known as SINCO ELECTRONICS
                                                              (DONGGUAN) CO., LTD., LIEW YEW SOON
24                                                              aka, MARK LIEW, NG CHER YONG. aka CY
                                                              NG, and MUI LIANG TJOA aka ML TJOA

25

26

27

28

1   LAEL D. ANDARA (SBN 215416)
    DANIEL E. GAITAN (SBN 326413)
2   ROBIN M. PEARSON (SBN 146704)
    ROPERS MAJESKI PC
3   545 Middlefield Road, Suite 175
    Menlo Park, CA 94025
4   Telephone:    650.364.8200
    Facsimile:    650.780.1701
5   Email:        lael.andara@ropers.com
                  robin.pearson@ropers.com
6                 daniel.gaitan@ropers.com

7   Attorneys for Plaintiff
    SINCO TECHNOLOGIES PTE LTD

8

9                   UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12  SINCO TECHNOLOGIES PTE LTD,              Case No. 3:17CV5517

13                    Plaintiff,             **PLAINTIFF SINCO TECHNOLOGIES
                                             PTE LTD'S OPPOSITION TO
14        v.                                 DEFENDANTS' MOTION IN LIMINE
                                             NO. 4 TO EXCLUDE REFERENCE TO
15  SINCO ELECTRONICS (DONGGUAN) CO.,        PRELIMINARY INJUNCTIONS AND
    LTD.; XINGLE ELECTRONICS                 CONTEMPT**
16  (DONGGUAN) CO., LTD.; XINGKE
    ELECTRONICS TECHNOLOGY CO., LTD.;        PRETRIAL HEARING
17  SINCOO ELECTRONICS TECHNOLOGY            Date: October 5, 2021
    CO., LTD.; MUI LIANG TJOA (an            Time: 3:00 p.m.
18  individual); NG CHER YONG aka CY NG (an  Place: Courtroom 5 – 17th Floor
    individual); and LIEW YEW SOON aka       Hon. Edward M. Chen
19  MARK LIEW (an individual),
                                             TRIAL DATE
20                    Defendants.            November 1, 2021

21

22

23

24

25

26

27

28

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.**   <u>**INTRODUCTION**</u>

3

Defendants' Motion *in Limine* No. 4 should be denied as the documents sought to be

4

excluded are relevant related to Defendants actions as to the trademark and unfair competition

5

claims.  Defendant LIEW YEW SOON ("Liew")'s stipulation reflects his signed admission to

6

specific facts.  Furthermore, the evidence sought to be excluded are probative on the issue of

7

whether Defendants' failure to use a disclaimer in their emails after this Court's Order of

8

**October 30, 2018** supports a finding of willful infringement.

9

**II.**   <u>**PROCEDURAL AND FACTUAL BACKGROUND**</u>

10

Plaintiff SinCo Technologies Pte. Ltd., ("SINCO") filed its Complaint [ECF 1] in this

11

action on **September 22, 2017**, asserting causes of action for, *inter alia*, trademark infringement

12

and for unfair competition in the form of passing off.  (Declaration of Daniel E. Gaitan ("*Gaitan*

13

*Decl.*"), at ¶ 2.) Plaintiff's Second Amended Complaint ["SAC"] [ECF 23] was filed on

14

**February 23, 2018**. (*Gaitan Decl.* at ¶3.)

15

The SAC sets forth a chronology of the events upon which Plaintiff's allegations against

16

Defendants SinCo Electronics (Dongguan) Co., Ltd., XingKe Electronics (Dongguan) Co., Ltd.,

17

Sincoo Electronics Technology Co., Ltd., Mui Liang Tjoa; Ng Cher Yong Aka Cy Ng, and Liew

18

Yew Soon Aka Mark Liew (collectively, "XINGKE"), are based, including XINGKE's

19

"deliberate and intentional actions in misrepresenting themselves as SinCo through their admitted

20

infringement of SinCo's registered trademarks by the use of the Marks in the United States . . . in

21

person in California and throughout the United States . . . in an effort to steal SinCo's goodwill

22

and status as a qualified electronics supplier . . . ." (SAC, ECF 23, at ¶1.)  SINCO's SAC

23

expressly cites to that State Court Action for the proposition that despite the pending state

24

litigation between the parties in the Superior Court of California, several of the Defendants

25

continue to willfully engage in acts detrimental to Plaintiff in disregard of the applicable laws

26

prohibiting such conduct. (Second Amended Complaint, ECF 23, at ¶6, ["Defendants Mr. Liew

27

and Mr. Ng were SinCo's employees and continued to act against SinCo's interest even after the

28

state action was filed against them personally . . . ."])  The SAC further alleges Defendant Mr.

ROPERS
M A J E S K I

A Professional Corporation
Menlo Park

1    Liew intentionally violated not only his employment agreement, but the **June 2, 2017** preliminary

2    injunction.  (SAC, ECF 23, at ¶8.)

3          A.        **Defendant Mark Liew- Admitted Passing Off**

4          Mark Liew informed SinCo on **June 26, 2016** by email and a telephone call to Cynthia

5    Chua of SINCO that he was planning a personal trip to Disneyland. *Gaitan Decl.* at Ex. 21.

6    However, in his **June 24, 2016**, VISA application to the U.S. Department of State he indicated he

7    was traveling to the U.S. to meet a customer Apple Inc., for his employer SINCO. *Id.* Ex. B. Mr.

8    Liew had admittedly never been to the U.S. in the years that he worked for SINCO.  Mr. Liew

9    intentionally secreted his intentions from SINCO after already filing a VISA indicating his true

10   intentions. Thereafter, Mr. Liew was personally served in the State action at the house XINGKE

11   recently purchased in San Jose, after SINCO learned of his unauthorized customer visits with

12   XINGKE personnel.  *Id.* Ex. C.  On **June 2, 2017**, the State Court issue a Preliminary Injunction

13   to Mr. Liew which prohibited him from passing himself off as a current employee of SinCo

14   Technologies PTE Ltd, which is relevant to SINCO's unfair competition claim in this matter. *Id.*

15   Ex.D.  On **January 2, 2019**, the State Court entered an Order of Contempt, based on the

16   Stipulation of Mark Liew signed on **December 28, 2019**.  *Id.* ¶7 and Ex. E. The Superior Court's

17   **January 2, 2019** order reflects that during a hearing on **December 14, 2019**, the Superior Court

18   found "substantial evidence regarding the alleged contempt" but noted that a live hearing would

19   need to be held before sanctions could be issued. *Id.*  Instead of proceeding with a hearing,

20   Defendant Liew stipulated to the entry of an order finding him in violation of the **June 2, 2017**

21   preliminary injunction. *Id.*  In that Stipulation Mr. Liew admitted that between **June 2, 2017** to

22   **August 2, 2017**, he had sent nine emails to Google from a @sincocn.com email address, three

23   months after it had changed its name to XINGKE, and Mr. Liew had access to the email address

24   @xingkecn.com. *Id.* Ex. F.  The Superior Court's **January 2, 2019** order reflects that during a

25   hearing on **December 14, 2019**, the Superior Court found "substantial evidence regarding the

26   alleged contempt" but noted that a live hearing would need to be held before sanctions could be

27   issued.  *Id.* at Ex. E.

28

ROPERS MAJESKI

A Professional Corporation
Menlo Park

4821-8264-7290.8

- 2 -

SINCO'S OPP. TO DEFS' MIL NO. 4
3:17CV5517

ROPERS

MAJESKI

A Professional Corporation
Menlo Park

### B.  Defendants Fail to Use Court Ordered Disclaimer

On **March 15, 2017**, SinCo Electronics (Dongguan) Co., Ltd., ("XINGKE") informed its customers it was changing its name to "XingKe." *Id*. Ex. G.  On **October 30, 2018,** this Court Ordered Defendants, in addition to those acting in concert with them to include a disclaimer. *Id*. ¶6 and Ex. H.  Defendants have produced emails and deposition testimony to show they did not consistently use the disclaimer required on Tjoa- **November 8, 2017** and Liew- **December 13, 2017**, which goes directly to willfulness. *Id*. Ex. I

Defendants admit that, "The June 2017 preliminary injunction against Liew in the State Action, in part, prohibited Liew from contacting SinCo SG customers and portraying himself as a SinCo SG employee." 2:14-15. The unfair competition claim asserted by SINCO relates to this issue, and there is no longer an unfair competition claim in the state action, based on this case. Defendants' assert, "Google knew that the difference between the companies long before these emails were sent in 2017," why did Mr. Liew violate the preliminary injunction? 3:8-9. Defendants' assumption that Andy Lim accounts for all employees in Google is not supported by the facts. Defendants' assert that Andy Lim had no confusion "as early as August 2016," but Andy Lim stated on August 20, 2016 that there was confusion amongst the PD.  Ex. 118. What Andy Lim knows is not the same as Google as an organization, as he himself evidenced.

### III.  LEGAL STANDARD

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *Hana Fin., Inc. v. Hana Bank,* 735 F.3d 1158, 1162 (9th Cir. 2013), aff'd, 574 U.S. 418, 135 (2015).  In the case of a jury trial, a court's ruling "at the outset" gives counsel advance notice of the scope of certain evidence so that admissibility is settled before attempted use of the evidence before the jury. *United States v. Heller*, 551 F.3d 1108, 1111–12 (9th Cir. 2009) All decisions on motions in limine are subject to reevaluation at trial. *See* Fed. R. Evid. 103 advisory committee's note to 2000 amendment ("Even where the court's ruling is definitive, nothing . . . prohibits the court from revisiting its decision when the evidence is to be offered."); *Luce v. United States*, 469 U.S. 38, 41–42 (1984) ("[E]ven if nothing unexpected happens at trial, the judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").

**IV.    ARGUMENT**

    **A.    The Preliminary Injunction Orders and Order Re: Contempt Are Directly Relevant to Plaintiff's Claims in this Action**

    All relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if it has "any tendency to make a fact [that is of consequence in determining the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. Even if relevant, evidence may be excluded "if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules." *United States v. Abel*, 469 U.S. 45, 54 (1984). Nevertheless, "[i]n making a determination under Rule 403, the balance in close cases is in favor of admission" of the evidence. *United States v. Crosby*, 75 F.3d 1343, 1347 (9th Cir. 1996) (*quoting United States v. Payne*, 805 F.2d 1062, 1066 (D.C. Cir. 1986).

    In the present case, SINCO alleges Defendants knowingly and willfully used its trademarks in direct competition with its own business. (*See e.g.* SAC, ECF 23, at ¶¶ 2, 5, 7, 11, 95, 186, 187, 197, 221.)  Defendants' knowledge that they were engaged in unlawful conduct which would result in harm to Plaintiff is an essential element of several of the causes of action asserted in the SAC, and Plaintiff's right to certain relief. For example, under 15 U.S.C. § 1117 (a) Defendants' failure to comply with the preliminary injunctions at issue reflects their willful violation of SINCO's rights which enables SINCO to pursue such additional remedies as recovery of their lost profits, damages, costs, and attorneys' fees. Further, SINCO's 'Safe Distance' theory is predicated on known infringers, applying to Defendants' Cy Ng and Liew, as illustrated through the orders at issue. This rule was created to prevent known infringers from using trademarks whose use by non-infringers would not necessarily be actionable. See *Broderick & Bascom Rope Co. v. Manoff*, 41 F.2d 353 (6th Cir.1930).  This is why the absence of the Court ordered disclaimer is critical to SINCO's claims.

    Exclusion of Mr. Liew's actions would severely handicap SINCO's ability to provide evidence as to Defendants' intent, use, and likelihood of confusion. Mr. Liew's violation of the

1   contempt order powerfully illustrates multiple elements of the likelihood of confusion analysis,

2   including the "intent" 'similarity of marks' and 'actual confusion'. *AMF Inc. v. Sleekcraft Boats*,

3   599 F.2d 341 (9th Cir. 1979), abrogated on other grounds by *Mattel, Inc. v. Walking Mountain*

4   *Prods.*, 353 F.3d 792 (9th Cir. 2003). Mr. Liew's use of SINCO's mark—while having express

5   knowledge of the prohibited act's, and an alternate email address, demonstrates Defendants'

6   intent to trade on SINCO's good will and reputation.

7       Most importantly, these actions go directly to Defendants 'intent', another factor in

8   likelihood of confusion analysis. The Ninth Circuit has found that "[w]hen the alleged infringer

9   knowingly adopts a mark similar to another's, reviewing courts presume that the Defendant can

10  accomplish his purpose: that is, that the public will be deceived." *Id.* This evidence is even more

11  compelling being that there was a preliminary injunction put him on notice.

12      In addition to being relevant to the analysis of the *Sleekcraft* factors, Courts have found that

13  it is the jury's role to determine whether infringement was intentional or willful. In *Globefill*

14  *Incorporated* the jury found Defendants' infringement to be intentional or willful. *Globefill*

15  *Incorporated v. Elements Spirits, Inc.* (C.D. Cal., Sept. 8, 2017, No. 210CV02034CBMPLAX)

16  2017 WL 6520589, at *3, aff'd (9th Cir. 2019) 756 Fed.Appx. 764. The jury's finding led the court

17  to determine whether the case was "exceptional" within the meaning of the Lanham Act. *Id*. Under

18  the Lanham Act, "[t]he courts in exceptional cases may award reasonable attorney fees to the

19  prevailing party." 15 U.S.C. § 1117. An "exceptional" case "is simply one that stands out from

20  others with respect to the substantive strength of a party's litigating position (considering both the

21  governing law and the facts of the case) or the unreasonable manner in which the case was

22  litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 134 S. Ct. 1749, 1756 (2014). This

23  evidence goes directly to his willful and intentional acts despite their being an injunction in place,

24  showing his utter disregard for the authority of the United State justice system.

25      The preliminary injunction and stipulation sought to be excluded are probative on the

26  question of whether Defendants knew their conduct was wrongful yet continued unabated.  The

27  preliminary injunctions, at a minimum, prevent Defendants' from claiming they acted innocently

28  and without intent.

ROPERS
MAJESKI

A Professional Corporation
Menlo Park

**B.** **Defendants Will Suffer No Prejudice if the Preliminary Injunction Orders and Order Re: Contempt Are Admitted into Evidence**

The probative value of the preliminary injunction orders and order re: contempt plainly outweighs the potential for undue prejudice to result under a balancing test conducted pursuant to Fed. R. Evid. 403.  In this instance, the orders would not be admitted to demonstrate the underlying facts occurred, but that Defendants *knew* such conduct was wrongful and persisted despite that knowledge.  The relevance is not the legal import of the Orders, but that Defendants willfully ignored the Court Orders. Any potential for prejudice can be mitigated by properly instructing the jury as what those orders are, and the scope of matters for which the orders may be considered.

For example, should Defendants testify at trial that they had no idea that holding themselves out as SINCO and contacting SINCO's customers was wrongful, the preliminary injunction orders and order re: contempt serve as evidence to reflect that Defendants were in fact aware of the harm which would result to Plaintiff when they committed the acts alleged, yet persisted in spite of their being enjoined from continuing with those acts.

**C.** **Federal Rule of Evidence 408 is Not Applicable**

Defendants' assertion that the contempt order should be excluded because it represents a compromise under Fed. R. Evid. 408 is incorrect and represents a misapplication of that rule of evidence. Fed. R. Evid. 408 pertains to compromises *of a disputed claim*, not a situation where a party accepts liability for their conduct and takes mitigating actions to avoid a greater sanction, such as jail time in this instance.  The stipulation entered into by Mr. Liew did not represent an offer to compromise any of Plaintiff's claims against him.  Instead, it amounted to a procedural maneuver to avoid further proceedings on a collateral issue, namely Mr. Liew's violation of a court order. Again, this did not contain evidence "furnishing or offering or promising to furnish ... valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount," *Wall Data Inc. v. Los Angeles County Sheriff's Dept.* 447 F.3d 769, 784 (9th Cir. 2006).

ROPERS MAJESKI
A Professional Corporation
Menlo Park

ROPERS
MAJESKI

A Professional Corporation
Menlo Park

Defendants attempt to paint false premise that SINCO was rewarded with less attorney fees, it would have occurred, by Mr. Liew admitting to his behavior. In reality, there was no compromise here. Mr. Liew knew he was going to be found in violation of the preliminary injunction. Again, Mr. Liew violated a preliminary injunction and harmed SINCO by passing himself off as them at a time when the name apparently had no value to his employer. There was no agreement that this stipulation would remain confidential or that his admission of guilt would not be inadmissible. "A stipulation is treated as a conclusive admission by the parties to the stipulation unless otherwise permitted by the court or agreed upon by those parties." *Olsen v. Comm'r, 2 F. App'x* 795, 796 (9th Cir. 2001).  This was not a settlement agreement. That notion is just ridiculous. This case relates to trademark infringement, which is the conduct Mr. Liew was furthering with his willful and intentional conduct. Moreover, this was a public court order.

### D.    The Court Should Reserve the Option to Consider the Orders at Issue Even if the Instant MIL is Granted

Under its inherent powers, a court may impose sanctions where a party has willfully disobeyed a court order, or where the party has "acted in bad faith, vexatiously, or for oppressive reasons." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 134 S. Ct. 1749, 1757 (2014). The bad-faith requirement sets a "high threshold," *Primus Auto. Fin. Servs.*, *Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997), which may be met by willful misconduct, or recklessness that is coupled with an improper purpose. *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001).

### V.    CONCLUSION

For the foregoing reasons, Defendants' Motion in Limine to Exclude Evidence of the State Court Preliminary Injunction, Liew's Stipulation of the Related Contempt Order, and Liew's Violation of the State Court Preliminary Injunction should be denied. Assuming *arguendo* the Court decides to grant the instant motion in limine, it should nevertheless retain the option to review the orders at issue *in camera* and consider the evidence outside of the presence of the jury.

Dated: September 13, 2021               ROPERS MAJESKI PC

                                        By: */s/ Daniel E. Gaitan*
                                        _____
                                            LAEL D. ANDARA
                                            DANIEL E. GAITAN
                                            Attorneys for Plaintiff
                                            SINCO TECHNOLOGIES PTE LTD