| | |
|---|---|
| DOUGLAS A. WINTHROP (SBN 183532) | **WHGC, P.L.C.** |
| Douglas.Winthrop@arnoldporter.com | Jeffrey C.P. Wang (SBN 144414) |
| JEREMY T. KAMRAS (SBN 237377) | *JeffreyWang@WHGCLaw.com* |
| Jeremy.Kamras@arnoldporter.com | Michael G. York (SBN 89945) |
| JOSEPH FARRIS (SBN 263405) | *MichaelYork@WHGCLaw.com* |
| Joseph.Farris@arnoldporter.com | Kathleen E. Alparce (SBN 230935) |
| ARNOLD & PORTER KAYE SCHOLER LLP | *KathleenAlparce@WHGCLaw.com* |
| Three Embarcadero Center, 10th Floor | Jessica A. Crabbe (SBN. 263668) |
| San Francisco, CA 94111-4024 | *JessicaCrabbe@WHGCLaw.com* |
| Telephone: 415.471.3100 | 1301 Dove Street, Suite 1050 |
| Facsimile: 415.471.3400 | Newport Beach, CA 92660 |
| | Tel. (949) 833-8483; Fax: (866) 881-5007 |

*Attorneys for Defendants*
XINGKE ELECTRONICS (DONGGUAN) CO., LTD., formerly known as SINCO ELECTRONICS (DONGGUAN) CO., LTD., LIEW YEW SOON aka, MARK LIEW, NG CHER YONG. aka CY NG, and MUI LIANG TJOA aka ML TJOA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| SINCO TECHNOLOGIES PTE LTD., | Case No. 3:17-CV-05517-EMC |
| Plaintiff, | Action Filed: September 22, 2017 |
| vs. | **MOTION IN LIMINE NO. 6 TO EXCLUDE IRRELEVANT CHARACTER EVIDENCE OF ML TJOA AND JINLONG MACHINERY & ELECTRONICS CO. LTD.** |
| SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS TECHNOLOGY CO., LTD.; SINCOO ELECTRONICS TECHNOLOGY CO., LTD.; MUI LIANG TJOA (an individual); NG CHER YONG aka CY NG (an individual); and LIEW YEW SOON aka MARK LIEW (an individual), | **Judge:** Honorable Edward M. Chen |
| Defendants. | **Trial:** November 1, 2021 |

## I.     SUMMARY OF MIL NO. 6

Defendants move to exclude evidence and argument regarding **improper character evidence and other acts by Defendant Mui Liang Tjoa and Jinlong Machinery & Electronics Co. Ltd. ("Jinlong Electronics")** that are neither relevant to trademark infringement nor bear on a potential witness's credibility.  *See* Fed. R. Evid. 404(a) and 404(b).

During Tjoa's deposition, SinCo SG's counsel inquired into the circumstances under which Jinlong Electronics, Defendant XingKe's parent company, allegedly removed Tjoa from his position at Jinlong Electronics in April 2019.  Declaration of Joseph Farris in Support of Motion in Limine No. 6 ("Farris Decl."), Ex. A.  Further, SinCo SG introduced another deposition exhibit that contained unrelated allegations about the company: (1) some of its shares were under "judicial freezing"; (2) how Jinlong Electronics allegedly had failed to fulfill legal obligations; and (3) how the Shenzhen Nanshan District People's Court issued an enforcement judgment against Jinlong Electronics.  *See* Declaration of Joseph Farris in Support of Motion in Limine No. 6 ("Farris Decl."), Exs. A-C.

These subjects should not be broached during the trial.  They relate to Jinlong Electronics' corporate governance and affairs and there has been no demonstrable connection between these events and the facts of the case.  Defendants therefore move to preclude Plaintiff from introducing evidence or asserting arguments that prejudicially portray Defendants as bad actors.  *See* Fed. R. Evid. 403.

## II.     ARGUMENT

### A.     The evidence concerning Tjoa and Jinlong Electronics is not relevant and would be highly prejudicial

Evidence is relevant if it either has a tendency to make one fact more or less probable than it would be without the evidence or if the fact is of consequence in determining the action. Fed. R. Evid. 401.  Under Fed. R. Evid. 404(a), evidence of a person's character or character trait is inadmissible to prove that on a particular occasion that person acted in accordance with the character or trait.  As such, the Court should prohibit irrelevant evidence of employment decisions concerning these individuals. *See Crawford v. City of Bakersfield*, No. 1:14-CV-01735-SAB, 2016

WL 5870209, at *6 (E.D. Cal. Oct. 6, 2016) (excluding evidence of defendant's termination from employment because it "d[id] not make any fact at issue in this action more or less probable"). Even if this Court finds any of this evidence relevant, its probative value is "substantially outweighed by the danger" of "misleading the jury." Fed. R. Evid. 403; *see also Unicolors, Inc. v. Urb. Outfitters*, Inc., No. CV1401029SJOVBKX, 2015 WL 12758841, at *3 (C.D. Cal. Feb. 23, 2015), *aff'd*, 686 F. App'x 422 (9th Cir. 2017) (excluding evidence concerning corporate party's other lawsuits on the grounds that it would be unfairly prejudicial, cause delay, and waste time under Rule 403).

Here, the allegation that Jinlong Electronics removed Tjoa as its general manager has no bearing on whether Defendants committed trademark infringement, especially since there is no evidence that Tjoa's departure was due to misconduct bearing on his credibility. Nor is evidence regarding Jinlong Electronics' purported business decisions and practices relevant to the instant dispute between the parties here. Similarly, allegations that the company's stock was "judicially frozen" and that it failed to full its "legal obligations" would only unduly suggest to the jury that the company suffered from irrelevant enforcement or regulatory issues (*i.e.*, is not a "law-abiding" company), thereby inviting the factfinder to infer that parties in this action associated with it are more capable of infringing upon another company's trademark. Because there is no permissible probative value behind such an inquiry, such evidence or argument should be excluded under Federal Rule of Evidence 403.

**B.     These prior bad acts do not satisfy Federal Rule of Evidence 404(b)**

Fed. R. Evid. 404(b) bars "[e]vidence of other crimes, wrongs, or acts ... to prove the character of the person in order to show action in conformity therewith." However, evidence of earlier behavior can sometimes be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Boyd v. City & Cty of San Francisco*, 576 F.3d 938, 947 (9th Cir. 2009) (quotation omitted). This is not the case here.

The Ninth Circuit has held that evidence is admissible under Fed. R. Evid. 404(b) if the following criteria are  satisfied: "(1) there must be sufficient proof for the jury to find that the

defendant committed the other act; (2) the other act must not be too remote in time; (3) the other act must be introduced to prove a material issue in the case; and (4) the other act must, in some cases, be similar to the offense charged." *Duran v. City of Maywood*, 221 F.3d 1127, 1132-33 (9th Cir. 2000). "Even if all four conditions are met, the evidence may still be excluded if under Rule 403, the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *Id.*; *see, e.g.*, *Holland v. City of San Francisco*, No. C10-2603 TEH, 2013 WL 1632661, at *2 (N.D. Cal. Apr. 16, 2013) (excluding evidence of plaintiff's arrest for drunk driving as irrelevant under Rule 401, impermissible character evidence under Rule 404(b), and prejudicial under Rule 403); *Hill v. Arnold*, No. 09-CV-05434-TEH, 2015 WL 3523199, at *2 (N.D. Cal. June 4, 2015), *aff'd*, 689 F. App'x 552 (9th Cir. 2017) (excluding "evidence and argument regarding complaints, grievances, and other incidents relating to Defendants as inadmissible character evidence under Rules 402, 403, and 404(b)" when plaintiff failed to show "how evidence of a small number of other complaints against Defendants will go to Defendants' intent in any way other than improper character evidence suggesting that Defendants acted in conformity with a character trait").

If Plaintiff claims to seek to introduce evidence concerning Tjoa's ultimate departure from the general manager position for a non-propensity purpose under the foregoing rule, the argument would be meritless because his departure occurred on April 25, 2019, and thus its probative value of Tjoa's actions from August 2016 through December 2017 is too far remote in time. Furthermore, these acts also do not go toward Defendants' alleged intent to commit trademark infringement between 2016 through 2018. Finally, there is no nexus between Tjoa's removal and any material issue in this case.

### III. CONCLUSION

For the foregoing reasons, the Motion in Limine No. 6 to exclude evidence of other unrelated allegations against Tjoa and Jinlong Electronics should be granted as set forth in the Proposed Order.

Dated:  September 3, 2021.                    ARNOLD & PORTER KAYE SCHOLER LLP

By:  /s/ *Douglas A. Winthrop*
       DOUGLAS A. WINTHROP

*Attorneys for Defendants*
XINGKE ELECTRONICS (DONGGUAN) CO., LTD., formerly known as SINCO ELECTRONICS (DONGGUAN) CO., LTD., LIEW YEW SOON aka, MARK LIEW, NG CHER YONG. aka CY NG, and MUI LIANG TJOA aka ML TJOA

LAEL D. ANDARA (SBN 215416)
DANIEL E. GAITAN (SBN 326413)
ROBIN M. PEARSON (SBN 146704)
ROPERS MAJESKI PC
545 Middlefield Road, Suite 175
Menlo Park, CA 94025
Telephone:  650.364.8200
Facsimile:  650.780.1701
Email:  lael.andara@ropers.com
robin.pearson@ropers.com
daniel.gaitan@ropers.com

Attorneys for Plaintiff
SINCO TECHNOLOGIES PTE LTD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SINCO TECHNOLOGIES PTE LTD,<br><br>Plaintiff,<br><br>v.<br><br>SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGLE ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS TECHNOLOGY CO., LTD.; SINCOO ELECTRONICS TECHNOLOGY CO., LTD.; MUI LIANG TJOA (an individual); NG CHER YONG aka CY NG (an individual); and LIEW YEW SOON aka MARK LIEW (an individual),<br><br>Defendants. | Case No. 3:17CV5517<br><br>**PLAINTIFF SINCO TECHNOLOGIES PTE LTD'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 6**<br><br>PRETRIAL HEARING<br>Date: October 5, 2021<br>Time: 3:00 p.m.<br>Place: Courtroom 5 – 17th Floor<br>Hon. Edward M. Chen<br><br>TRIAL DATE<br>November 1, 2021 |

## MEMORANDUM OF POINTS AND AUTHORITIES

I.  **INTRODUCTION**

Defendants' motion argues that the evidence regarding Mui Liang Tjoa and Jinlong Machinery & Electronics Co. Ltd (JINLONG) are neither relevant or admissible under Fed. R. Evid. 401, 404(a) and 404(b). The conduct of the "president" of XINGLE ELECTRONICS (DONGGUAN) CO., LTD., ("XINGKE") as presented to SINCO's U.S. customers is highly relevant and his motivation and management of XINGKE goes to intent and willfulness. The relevance of JINLONG, who Tjoa directed and served as the general manager is likewise necessary for SINCO's case.

II.  **STATEMENT OF FACTS**

SINCO had been awaiting due diligence documents from XINGKE, to evaluate the possibility of purchasing the factory when they were informed the factory was to be sold to JINLONG on or about **November 6, 2015**. Ex. 331.  SINCO objected and pointed out the issues that a US customer had identified in their audit of the factory earlier in 2015. Ex. 23. Tjoa and the other XINGKE board members ignored SINCO, as Mr. Tjoa had already traveled with Mr. Liew to the U.S. to meet with SINCO's customers prior to the **August 16, 2016** board meeting. *Id*. Within a few weeks SINCO learned of the travels to the U.S. and initiated a law suit in the California Court. On **December 10, 2016**, SINCO had obtained evidence that Tjoa and JINLONG were claiming to be SINCO and owners of the name. Ex. 67.  Mr. Tjoa presented himself as XINGKE's new president. Ex. 68, 70, and 293. As demonstrated by Defendants' Exhibit B to MIL No. 6, on April 25, 2019 the board of JINLONG decided to remove Mr. Tjoa as the general manager of JINLONG.  However, the MIL NO. 6 fails to discuss what they are most concerned about, which is why Mr. Tjoa was removed, or that he was paid over 1m RMB more than his salary in 2019, for four months of work.  Three months before his dismissal, Mr. Tjoa obtained an indemnification agreement, not from JINLONG, but from XINGKE on **January 23, 2019**. Ex. 363.

Defendants' greater concern and primary motivation for this motion to exclude relates to the following documents on SINCO's exhibit lists, which were public and translated for use at trial.

| Exh. No. | DATE | DESCRIPTION |
|---|---|---|
| 306 | 10/10/2019 | Announcement on Disciplinary Sanction Against Jinlong Machinery & Electronics Co., Ltd. and Related Parties-20191009 |
| 307 | 7/31/2018 | Announcement on Forced Reduction of Shares Owned by Controlling Shareholder-20180731 |
| 308 | 11/20/2018 | Announcement on Freezing in Sequence of Part of Shares Owned by Controlling Shareholder and Judicial Freezing of Part of Shares Owned by Persons Acting in Concert-20181120 |
| 309 | 8/24/2018 | Announcement on Freezing in Sequence of Part of Shares Owned by Controlling Shareholder-20180824 |
| 310 | 9/6/2018 | Announcement on Freezing of Part of Funds in Bank Account-20180906 |
| 311 | 9/14/2018 | Announcement on Involvement of Dongguan Branch in a Legal Proceeding-20180914 |
| 312 | 7/23/2018 | Announcement on Judicial Freezing of Part of Shares Owned by Controlling Shareholder-20180723 |
| 313 | 7/26/2018 | Announcement on Judicial Freezing of Part of Shares Owned by Controlling Shareholder-20180726 |
| 314 | 8/13/2018 | Announcement on Judicial Freezing of Part of Shares Owned by Controlling Shareholder-20180813 |
| 315 | 4/24/2019 | Announcement on New Freezing in Sequence of Part of Shares Owned by Controlling Shareholder and Judicial Freezing of Part of Shares Owned by Person Acting in Concert-20190424 |
| 316 | 3/22/2018 | Announcement on Overdue Default for Part of Pledged Shares Owned by Controlling Shareholder-20180322 |
| 317 | 4/13/2018 | Announcement on Overdue Default for Part of Pledged Shares Owned by Controlling Shareholder-20180413 |
| 318 | 7/25/2018 | Announcement on Proposed Initiation of the Default Disposal Procedures for Part of the Pledged Shares Owned by Controlling Shareholder-20180725 |
| 319 | 3/13/2018 | Announcement on Proposed Initiation of the Default Disposal Procedures in Relation to Part of the Pledged Shares Owned by Controlling Shareholder-20180313 |
| 320 | 2/28/2019 | Announcement on Receipt of Notice from Wenzhou Intermediate People's Court-20190228 |
| 321 | 12/21/2018 | Announcement on Receipt of Warning Letter from Zhejiang Regulatory Bureau of CSRC by the Company and the Actual Controller-20181221 |
| 322 | 4/27/2019 | Announcement on Removal and Appointment of Company's General Manager-20190427 |
| 323 | 4/27/2019 | Announcement on Resignation of a Director-20190427 |
| 324 | 4/26/2018 | Announcement on the Completion of Debt Repayment by Controlling Shareholder Concerning Overdue Default in the Pledged Shares Deal-20180426 |
| 325 | 12/3/2018 | Announcement on the Progress of Judicial Freezing and Freezing in Sequence of Part of Shares Owned by Controlling Shareholder-20181203 |
| 326 | 4/9/2018 | Announcement on the Progress of the Proposed Default Disposal Procedures for Part of the Pledged Shares Owned by Controlling Shareholder-20180409 |

| 327 | 10/22/2018 | Decision to Impose Disciplinary Sanction on Jinlong Machinery & Electronics Co., Ltd. and Related Parties-20181022 |
| --- | --- | --- |
| 328 | 5/25/2018 | Pre-announcement on Possible Forced Reduction of Shares Owned by Controlling Shareholder-20180525 |
| 329 | 6/5/2018 | Pre-announcement on Possible Forced Reduction of Shares Owned by Controlling Shareholder-20180605 |
| 330 | 4/16/2018 | Jinlong Machinery and Electronics Co. Ltd. Stock Code 300032 Supplementary Correction Announcement-20180416 |

<u>These documents will evidence the following:</u>

- Mr. Tjoa was dismissed as General Manager on **April 26, 2019**, and on that same date he resigned as Director.

- **October 2018**, Shenzhen The Shenzhen Stock Exchange gave the general manager Tjoa Mui Liang, a disciplinary sanction.

- **October 2019**, The Shenzhen Stock Exchange gave Tjoa Mui Liang, then director and general manager, a notice of criticism.

- The remuneration of Tjoa ML in 2019 was RMB1.35 million, which was much higher than RMB0.36 million, the amount he should have been paid as approved by the board meeting and shareholder meeting of Jinlong.

- The remuneration of Tjoa ML was only RMB0.24 million in 2015 and RMB0.36 million per year in 2016-2018.

The primary role of Mr. Tjoa from 2016 to 2019 was to operate and manage XINGKE. Mr. Tjoa was the one who directed Mr. Tjoa and Mr. Ng to travel to the U.S. to meet customers, even though in their years of employment they had never been to the U.S.  Mr. Tjoa was the one who changed the name from SINCO to XINGKE as he stated at his deposition:

Q. But the Chinese factory – the entity that had the name in Chinese, it was the same entity using "SinCo" and then later using X-I-N-G-K-E?
A. That's correct. T**he Chinese name is the same**.
Q. I see. And when you said you told the team you should change the name, when did you tell the team that?
A. **2016**.
Q. Was that prior to the acquisition?
A. ***After the acquisition.***
Q. Do you recall approximately when? Is it May?
A. No. After the second phase.

> Q. And you said the second phase was?
> A. *November 2016*. We acquired the remaining 29.34 percent.

Ex. A. 37:2-18

Tjoa's business conduct is highly relevant to his decisions in this case and his credibility and motivation to use the "SINCO," mark. Recall after all that Mr. Tjoa admitted that XINGKE never knew the prices SINCO was getting from U.S. customers, because when he asked SINCO they did not provide.

## III. <u>LEGAL ARGUMENT</u>

### A. <u>Relevance</u>

The subject matter of Defendants' motion to exclude goes directly to the subject matter of this case. To start, Defendants' employment with KOTL supports the heart of the infringement in this matter.

In TJOA's special interrogatory responded he stated (Ex. B at SROG 5 and 7):

*Responding Party is CEO of Jinlong Machinery & Electronics, a publicly traded company in China, which fully owns Xingke Electronics (Dongguan). Responding Party's duties and responsibilities is similar to the CEO of a Chinese publicly traded company would generally have, including but not limited to: leading the development of the company's business strategy; creating and implementing the company or organization's vision and mission, communicating (on behalf of the company) with shareholders, government entities, business partners, business customers, the public, and etc. Responding Party is not involved in Xingke Electronics (Donguan)'s daily operation. Responding Party's responsibilities with regard to Xingke Electronics (Dongguan) include: evaluating and approving major business strategies and decisions for Xingke Electronics (Dongguan); developed and maintained relations with important customers/partners of Xingke Electronic (Dongguan) and its parent company KOTL; and making decisions on and evaluating the performance of executive leaders of Xingke Electronic.*

*KOTL is the parent company of Sinco Electronic (Dongguan) or Xingke Electronic (Dongguan), and as the CEO of KOTL, Responding Party has the right to use the Sinco mark because Sinco Electronic (Dongguan) or XingkeElectronic (Dongguan) is also an owner of the Sinco mark because of the following:*

*• Since Electronic (Dongguan) had used the Sinco mark openly and extensively for many years without any objection from Sinco Technologies PTE LTD, and Sinco Technologies PTE LTD has abandoned and/or diluted its alleged ownership of the Sinco mark.*

*• Sinco Technologies PTE LTD expressly allowed and encouraged members of the Sinco Group, including Sinco Electronic (Dongguan), to use the Sinco mark.*

- *Sinco Technologies PTE LTD represented to outsiders, especially U.S. companies, that Sinco Electronic (Dongguan) was part of Sinco Group or the manufacturing arm of Sinco Technologies PTE LTD.*
- *Sinco Electronic (Dongguan) is the registered owner of the Sinco mark in China.*
- *Prior to this litigation, Sinco Technologies PTE LTD never objected to the use of the Sinco mark by Sinco Electronic (Dongguan).*
- *When Sinco Technologies PTE LTD knew that Sinco Electronic (Dongguan) was available for sale, Sinco Technologies PTE LTD took no actions regarding any intellectual property rights it might have concerning the "Sinco" mark.*

KOTL, XINGKE, and TJOA's relationship goes directly to Defendants' 'intent', another factor in likelihood of confusion analysis. Here, the evidence supports the allegations that Defendants KOTL, TJOA and XINGKE conspired to target SINCO's U.S. customers, to displace projects, and acquire business.  In addition to being relevant to the analysis of the *Sleekcraft* factors, Courts have found that it is the jury's role to determine whether infringement was intentional or willful. Such analysis requires consideration of actions in both the pending litigation and **in both the Chinese and U.S. trademark proceedings**. In *Globefill Incorporated* the jury found Defendants' infringement to be intentional or willful. *Globefill Incorporated v. Elements Spirits, Inc.* (C.D. Cal., Sept. 8, 2017, No. 210CV02034CBMPLAX) 2017 WL 6520589, at *3, aff'd (9th Cir. 2019) 756 Fed.Appx. 764. The jury's finding led the court to determine whether the case was "exceptional" within the meaning of the Lanham Act. *Id.* Under the Lanham Act, "[t]he courts in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117. An "exceptional" case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).

Thus, the evidence of Tjoa's departure of KOTL, goes directly to heart of this action and should be given to the jury to determine whether said conduct was intentional or willfull, and

whether the Court can award attorneys' fees based on those actions. Without these trademark proceedings, the Court will seriously prejudice SINCO's ability to demonstrate intentional, willful acts and its ability to recover attorneys' fees.

Additionally, SINCO has a claim for punitive damages which directly correlates with its common law claim for unfair competition, Cal. Civ. Code § 3294(a), and passing off claims. As stated in this circuit, "[a]lthough under some circumstances, punitive damages may be recoverable under a California common law claim, in California common law unfair competition claims are limited to cases in which a party passes off their goods as another." *Groupion, LLC v. Groupon, Inc.* 859 F.Supp.2d 1067, 1083 (N.D. Cal. 2012). Further, this court has stated "[w]e are aware of no authority which suggests that this provision may not be applied to common law unfair competition claims. *Duncan v. Stuetzle*, 76 F.3d 1480, 1490 (9th Cir. 1996) (citing *Cf. Kelley Blue Book v. Car–Smarts, Inc.*, 802 F.Supp. 278, 289 (C.D.Cal.1992) (declining to award punitive damages under § 3294(a) to a claimant alleging common law unfair competition solely because the plaintiff did not prove oppression, fraud or malice by clear and convincing evidence).

To prove punitive damages, SINCO needs the opportunity to bring forth evidence of oppression, fraud or malice, which mainly derives from the Chinese and U.S. trademark proceedings. Moreover, these proceeding as established go to the protectability of the mark, likelihood of confusion, willful and intentional conduct, and attorney fees. The importance of these documents is why Defendants attempt to broadly exclude them. Lastly, these documents illustrate that Defendants are not entitled to the rights of federal trademark registration, despite their attempts. Once cancellation occurs, the owner "is no longer entitled to the rights that flow from federal registration, including the presumption that the mark is valid." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th Cir. 2013).

According to the information disclosed in the public announcements of Jinlong Electronic & Machinery ("Jinlong"), the ESOP was adopted by the shareholder meeting of Jinlong on **August 21, 2015** and had been completely exercised and terminated as of **March 3, 2017**. The scope of eligible participants of the ESOP included the then directors (excluding the independent directors), the supervisors and the senior management personnel of Jinlong. Tjoa ML was granted the shares of the ESOP based on his position as one of the then directors and the Executive

President of Jinlong. However, we noticed that there might be some anomalies regarding the remuneration of Tjoa ML in 2019, based on the remuneration of Tjoa ML in 2019 was RMB1.35 million, which was an order of magnitude 3 to 4 times his yearly salary and he had just been fired after working four months. The Jury should be able to hear Mr. Tjoa explain how the value of XINGKE increased 100M RMB in 8 months and why he was paid 1m RMB more than his salary in 2019.

## IV. **CONCLUSION**

The Court should deny Defendants motion to exclude public records that show Mr. Tjoa's business practices during the time in question and as it relates to XINGKE. If JINLONG and Tjoa purchased XINGKE with the intent and plan to use it as a vehicle to steal SINCO's trademark and steal its U.S. business by passing itself off as SINCO, using SINCO's employees and existing projects, that is highly relevant to the Jury. The anomalies of the purchase price of XINGKE, underperformance and financial reporting by Tjoa is highly informative of why XINGKE was acquired, when the only asset it had was not its to sell.

Dated: September 13, 2021

Respectfully submitted,

ROPERS MAJESKI PC

By: /s/ *Lael D. Andara*
LAEL D. ANDARA
DANIEL E. GAITAN
Attorneys for Plaintiff
SINCO TECHNOLOGIES PTE LTD