UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SINCO TECHNOLOGIES PTE LTD., | Case No. 17-cv-05517-EMC |
| Plaintiff, | |
| v. | **FINAL PRETRIAL CONFERENCE ORDER** |
| SINCO ELECTRONICS (DONGGUAN) CO. LTD., et al., | |
| Defendants. | |

## I.     TRIAL DATE & LENGTH OF TRIAL

Jury selection shall take place on November 1, 2021.  Counsel shall be present in the Courtroom at 8:15 a.m.

The jury trial shall begin on November 1, 2021, following jury selection.  Other than the first day of trial, trial shall last from 8:30 a.m. to 1:30 p.m. on each day, except for Thursdays, which are dark.  On all trial days, counsel shall be present in the courtroom at 8:15 a.m. to discuss any matters requiring resolution prior to commencement of trial at 8:30 a.m.  The Court reserves the authority to run past 1:30 p.m. if necessary.

The trial shall last for no longer than ten (10) court days.  *See* Docket No. 380 (Order at 1). The Court is limiting each side to seventeen (17) hours each; this time limit includes opening statements and closing arguments as well as time on direct and cross.  It also includes time for reading any testimony into the record or playing video (*e.g.*, for videotaped deposition testimony). The Court reserves the authority to shorten time limits with reasonable notice.

United States District Court
Northern District of California

United States District Court
Northern District of California

## II.   WITNESSES

A.   Plaintiff

SinCo has identified the following individuals as witnesses it may call in its case-in-chief.

(1)   Minh Nguyen.

(2)   Mui Liang ("ML") Tjoa.

(3)   Gouki Gao (by deposition only).

(4)   Bryan Lim (by deposition only).[1]

(5)   Guanglei Zhang.

(6)   Quek Seow Eng (by deposition only).

(7)   Mark Liew.

(8)   Jerry Yang Da Rui (by deposition only).

(9)   Cy Ng.

(10)   Eric Pang (by deposition only).

(11)   Jonathan Chee.

(12)   Alan Cox (expert).

The Court has granted Defendants' motion to exclude the testimony of Miriam Paton.

B.   Defendants

Defendants have identified the following individuals as witnesses they may call in their case-in-chief.

(1)   Cy Ng.

(2)   Mark Liew.

(3)   Mui Liang ("MGL") Tjoa.

(4)   Deqiang Liu (by deposition only).

(5)   Jerry Yang Da Rui (by deposition only).

(6)   Gouki Gao (by deposition only).

(7)   Andy Lim/Google.

---

[1] Defendants have withdrawn their objection to Bryan Lim testifying via deposition.

2

1    (8)    Allison Chen/Google.

2    (9)    Paul Carter/Apple. (by deposition only).

3    (10)    Hank Kahrs (expert).

4    ### III.    MOTIONS IN LIMINE

5    A.    Plaintiff's Motion in Limine No. 1

6    SinCo has moved to exclude the testimony of Defendants' damages expert, Mr. Kahrs.

7    The motion is granted in part and denied in part.

8    Neither party's damages expert may opine about whether there was trademark

9    infringement or opine as to the facts which support or weigh against trademark infringement since

10    that is not a matter within his expertise and would invade the province of the jury.  Each expert

11    may only refer to the existence of a dispute between the parties on the issue and then state any

12    assumptions that the expert is making in forming his opinion.  Each expert is allowed to criticize

13    the other for any assumptions that are being made – *e.g.*, Mr. Kahrs may criticize Dr. Cox for

14    assuming that all of SinCo's lost profits are attributable to trademark infringement and show why

15    Dr. Cox's analysis fails if that assumption is removed.

16    Mr. Kahrs is permitted to rely on "number crunching" (*e.g.*, regressive analysis) done by

17    Dr. Fleissig.  It is permissible for Mr. Kahrs to have used an assistant to prepare his report so long

18    as the work is supervised, reviewed, and adopted.  *See, e.g.*, *Dura Auto. Sys. of Indiana, Inc. v.*

19    *CTS Corp.*, 285 F.3d 609, 612 (7th Cir. 2002) (stating that "[a]n expert witness is permitted to use

20    assistants in formulating his expert opinion, and normally they need not themselves testify";

21    adding that "[t]he opposing party can depose [the assistant] to make sure they performed their

22    tasks competently[,] and the expert witness can be asked at his deposition whether he supervised

23    them carefully and whether his relying on their assistance was standard practice in his field").  In

24    his deposition, Mr. Kahrs made clear that he was supervising and reviewing Dr. Fleissig's work.

25    He also submitted a declaration confirming his deposition testimony.

26    Finally, Mr. Kahrs is permitted to testify about why he deems certain sales made by SinCo

27    (*e.g.*, in November 2015) are outliers as part of his criticism of Dr. Cox's analysis.  This is a

28    matter within his expertise and is based on a reasonable and logical methodology.  It is permissible

United States District Court
Northern District of California

3

1   under *Daubert*.

2   B.      Plaintiff's Motion in Limine No. 2

3            SinCo has moved to exclude testimony by Google and Apple employees on the basis that

4   they were not formally disclosed as witnesses until after the close of fact discovery in January

5   2020.[2]  The motion is denied.

6            The probative value of the customer testimony is substantial.  Moreover, this evidence

7   comes with no surprise.  The information related to the customers has been the subject of

8   discovery between the parties.  Though the witnesses were formally designated late, the Court has

9   alleviated any prejudice to SinCo by allowing it to take the depositions of the Google and Apple

10  employees.  Finally, to further address any prejudice to SinCo, the Court will allow SinCo to

11  designate a rebuttal witness or two so long as it promptly identifies those witnesses and discloses

12  the substance of their testimony.

13           SinCo has further moved to exclude documents produced after the close of fact discovery.

14  The Court defers ruling on this request.  SinCo's motion is lacking in specifics.  SinCo shall

15  provide specificity as to how it would be prejudiced if specific documents produced after the close

16  of fact discovery were admitted at trial.  SinCo shall file its identification of those documents and

17  prejudice thereby by October 8, 2021; Defendants shall provide their response by October 12,

18  2021.  Again, the Court will be open to counter-designations in rebuttal by SinCo as a means of

19  mitigating prejudice.

20  C.      Plaintiff's Motion in Limine No. 3

21           SinCo has moved to exclude evidence of any alleged oral license between the companies

22  prior to the written Supply Agreement of 2012 and the subsequent Purchase Orders.  The motion

23  is denied.

24           Both parties have proceeded with the assumption that California law applies to this issue.

25  Under California law, the Court must first consider whether the Supply Agreement and Purchase

26  Orders are integrated agreements – *i.e.*, whether each document is intended to be a final, complete,

27  _____

28  [2] At the pretrial conference, SinCo indicated that, with respect to the Google employees, its main
    objection was to Mr. Lim, and not Ms. Chen.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    and exclusive statement of the parties' agreement.  *See Alling v. Universal Mfg. Corp.*, 5 Cal. App.

2    4th 1412, 1434 (1992) (also stating that the determination of whether an agreement is integrated is

3    question of law to be determined by the court).  Here, there is some indication that the Supply

4    Agreement and Purchase Orders are intended to be final expressions of the parties' agreements

5    because the documents each contain a provision stating that the agreement cannot be modified or

6    amended except in writing.  However, there is no indication that the documents are intended to be

7    *complete* and *exclusive* statements of the parties' agreement as to the full scope of permitted uses

8    of the marks.  The alleged oral license is not clearly contradictory to either the Supply Agreement

9    or the Purchase Orders.  The language in the Supply Agreement is, at most, ambiguous, a fact

10   which provides an additional basis for parol evidence under California law.  *See Wolf v. Walt*

11   *Disney Pics. & Tel.*, 162 Cal. App. 4th 1107, 1126 (2008) ("Extrinsic evidence is admissible,

12   however, to interpret an agreement when a material term is ambiguous.").

13   D.    Plaintiff's Motion in Limine No. 4

14         SinCo has moved to exclude evidence of the prior conviction of Dr. Chee.  Dr. Chee was

15   convicted back in 2004.  The conviction concerned "cheating" under Singapore law.  The motion

16   is denied.

17         The motion turns on Federal Rule of Evidence 609.  Rule 609 provides that evidence of a

18   prior conviction "must be admitted" – "regardless of the punishment" – "if the court can readily

19   determine that establishing the elements of the crime required proving – or the witness' admitting

20   – a dishonest act or false statement."  Fed. R. Evid. 609(a)(2).  But, if more than ten years have

21   passed since the conviction (as here), "[e]vidence of the conviction is admissible only if: . . . its

22   probative value, supported by specific facts and circumstances, substantially outweighs its

23   prejudicial effect."  Fed. R. Evid. 609(b)(1).  Judge Koh's decision in *United States v. Mercado*,

24   No. 18-CR-00549-LHK-3, 2020 WL 999842 (N.D. Cal. Mar. 2, 2020), is useful in providing

25   factors for a court to consider in deciding whether to admit a conviction older than ten years.

26   Taking into account those factors, the Court shall permit evidence of the prior conviction.  It is

27   true that the conviction took place more than fifteen years ago, and it appears that, since the

28   conviction, Dr. Chee has a "clean record," one factor against admission.  However, the other

factors favor inclusion.  The impeachment value of the prior crime is high, as Dr. Chee was convicted of a scheme intended to defraud people, resulting in a loss to them of $1,000,000.  This was a deliberate, planned *scheme*, not a singular spontaneous act.  And the fraud is more probative of truthfulness than, *e.g.*, a conviction for grand theft.  *See, e.g.*, *Mims v. Fed. Express Corp.*, No. CV 13-03947-AB (SSx), 2015 U.S. Dist. LEXIS 192586 (C.D. Cal. Jan. 15, 2015).  Moreover, Dr. Chee's testimony will be centrally important as he is the main SinCo witness.  In addition, credibility is clearly a central issue in this case, with each side charging the other with making misrepresentations and Dr. Chee's testimony will likely be key to the battle over credibility.  Finally, as cases cited by Defendants point out, it is not uncommon to allow evidence of pertinent convictions which are more than ten years old.  To mitigate any prejudicial effect, SinCo, of course, may rehabilitate Dr. Chee, demonstrating his subsequent rehabilitation.

E.      Plaintiff's Motion in Limine No. 5

SinCo has moved to exclude testimony by Mr. Tjoa that Xu Shugong and/or Gao Bingyi told him that Bryan Lim/SinCo gave XingKe an oral license to use the "SinCo" mark.  The motion is granted in part and denied in part.

There are two levels of hearsay.  What Brian Lim/SinCo told Xu Shugong and/or Gao Bingyi is not hearsay because Brian Lim's statement constitutes a statement of a party-opponent.  Bryan Lim's statement also constitutes a verbal act.  However, what Xu Shugong and/or Gao Bingyi then told Mr. Tjoa about what Bryan Lim said *is* hearsay to the extent it is offered for the truth of the matter asserted (*i.e.*, that there was an oral license granted by Bryan Lim).  *See, e.g.*, *Elia v. Roberts*, No. 1:16-cv-0557 AWI EPG, 2017 U.S. Dist. LEXIS 177116, at *89 (E.D. Cal. Oct. 25, 2017) (noting that verbal acts "are different than evidence in the form of statements which shed light on the existence of underlying legal obligations but do not create them"; "[i]n this case, the statements Plaintiff wish to offer do not have the independent legal effect of creating a partnership but must rather be considered evidence of a partnership[:] Alan Elia telling someone that he is in a business partnership with Roberts does not create the partnership [but rather] adds to the body of evidence that suggest the partnership exists").

That being said, Defendants may rely on any statement allegedly made by Xu Shugong

6

1   and/or Gao Bingyi to Mr. Tjoa for a limited, nonhearsay purpose – *i.e.*, to show that Mr. Tjoa (and

2   therefore XingKe) could not have acted willfully in using the "SinCo" mark.  SinCo may ask for a

3   limiting instruction at trial.

4   F.      Plaintiff's Motion in Limine No. 6

5          SinCo has moved to exclude testimony by three defense witnesses currently in China

6   (Jerry Yang Da Rui, Gouki Gao, and Deqiang Liu) if the only way that they will be testifying is

7   remotely (*e.g.*, via Zoom).  The motion is denied.

8          Defendants have agreed to take the depositions of the three witnesses in Macau.  The

9   deposition testimony may be used in lieu of live testimony at trial.  Defendants have cited federal

10  cases which have approved the taking of depositions in Macau.  The taking of a deposition as

11  opposed to presenting live testimony at trial will not involve the invocation of sovereign power

12  which could complicate the matter.  Moreover, as discussed at the hearing, SinCo is not required

13  to participate in the depositions in Macau should counsel so decide and may use instead the

14  depositions of the witnesses that were previously taken for trial.  SinCo's counsel indicated at the

15  hearing that it has sufficient testimony from the prior depositions.

16  G.      Defendants' Motion in Limine No. 1

17         Defendants have moved to exclude the testimony of Dr. Cox, SinCo's damages expert.

18  The motion is granted in part and denied in part.

19         As indicated above, Dr. Cox may not opine about whether there was trademark

20  infringement or opine about the facts which support trademark infringement.  In addition, Dr. Cox

21  may not testify about whether the nature of the industry at issue in this case creates unique

22  relationships between suppliers (such as SinCo) and its customers (such as Google and Apple).

23  He does not have experience and expertise in that area and relies solely on deposition testimony of

24  SinCo witnesses for that point, not on any research or body of information that he has

25  independently consulted.  Moreover, this fact (describing the nature of business relationships in

26  this industry) does not inform his statistical/regressive models.  It is therefore not material to his

27  expert opinion.  Likewise, Dr. Cox may not testify about the costs to SinCo of mitigating harm

28  allegedly caused by the trademark infringement because, again, he offers no expertise in that area.

United States District Court
Northern District of California

7

Once again, he essentially repeats what SinCo witnesses say without any independent analysis or demonstration of any particular experience or expertise.  Furthermore, the cost calculation is a matter about which SinCo fact witnesses may testify, not Dr. Cox.

However, Dr. Cox may provide testimony about his calculations done for SinCo's lost profits and Defendants' profits that should be disgorged (the latter based on information from Defendants and estimated profit margin for which he has identified a methodology).  Dr. Cox should make clear what assumptions he has made for his calculations.  *Daubert* is satisfied.

Finally, Dr. Cox may not testify about his "unjust enrichment" theory based on the putative increase in market value of XingKe over a six-month period.  He has failed to show how a change in the market value of XingKe is an accurate measure of XingKe's profits from the alleged trademark infringement.  Valuation of a company is complex and informed by many factors, including market conditions present and projected, present value discount and capitalization rates, etc. which may be independent of a particular profit flow.  Dr. Cox's analysis takes none of that into account.  Nor has SinCo cited any case that defines "profits" of the defendant in a trademark infringement case as the increase in market or capitalized value of the entire enterprise of the defendant.

H.     Defendants' Motion in Limine No. 2

Defendants have moved to exclude evidence related to the trademark proceedings in the United States and China.  The motion is granted in part and denied in part.

SinCo may introduce evidence that XingKe filed applications for the "SinCo" mark but how the U.S. and Chinese authorities adjudicated those applications is not admissible under Rule 403.  The course of administrative adjudication has little if any probative value and evidence about those proceedings will cause jury confusion.

To the extent SinCo wishes to introduce testimony by Miriam Paton related to a U.S. trademark application or to introduce evidence related to an alleged "forged" signature of Xu Shugong tendered in support of a U.S. trademark application, the evidence is excluded, also on Rule 403 grounds.  There is no showing that XingKe knowingly engaged a fraud and thus it has no probative value.

However, SinCo may use Mr. Tjoa's declaration submitted in support of a U.S. trademark application to show that he has provided inconsistent testimony.  In addition, SinCo may present evidence related to the Design Contract, which was presented as evidence in the Chinese trademark proceedings.  SinCo has asserted that XingKe fabricated the contract because information presented therein was fundamentally inconsistent with other facts, and therefore the evidence is relevant to XingKe's credibility.  The Court notes that sponsoring witness Guanglei Zhang, who was SinCo's lawyer during the Chinese trademark proceedings, is not to make any "lawyer arguments" in testifying about the Design Contract.  Rather, he is permitted to provide testimony about facts within his personal knowledge – *e.g.*, that the Design Contract was submitted during the trademark proceedings.

I.    Defendants' Motion in Limine No. 3

Defendants have moved to exclude evidence concerning the company known as "SinCoo."  The motion is denied as moot.  SinCo has agreed not to seek liability against Defendants based on "SinCoo" (*e.g.* reference to "SinCoo" has been removed from SinCo's proposed verdict form).  SinCo will not suggest to the jury that Defendants are complicit in any alleged trademark infringement by "SinCoo."

J.    Defendants' Motion in Limine No. 4

Defendants have moved to exclude evidence related to the preliminary injunction orders issued by this Court and the state court, as well as Mr. Liew's stipulation to a violation of the state court's preliminary injunction order, which resulted in a contempt finding.  The motion is granted.

The evidence is not admissible under Rule 403.  The danger of unfair prejudice is high as the jury is likely to give undue weight to the preliminary injunction orders (even though it was only a *preliminary* determination).  And the stipulated contempt finding is also inadmissible under Rule 408.  Moreover, the information adds little probative value because SinCo will be able to make its willfulness argument: the Court will allow a statement to be read to the jury about the state court action (*i.e.*, that SinCo filed the action against Defendants, which included a claim that XingKe was passing itself off as SinCo).  *See* Defs.' MIL No. 5.  Thus, SinCo may assert that Mr. Liew's use of the "SinCo" mark after the state court action (which provided notice of SinCo's

9

assertions) was filed constituted willful infringement.

K.     Defendants' Motion in Limine No. 5

Defendants have moved to exclude all evidence related "exclusively" to legal claims that SinCo has asserted in the state court action.  The Court does not find Defendants' framing of the issue helpful because the question is ultimately what evidence is relevant to this case.  In any event, the Court defers ruling on the motion because the parties seemed amenable to reaching a resolution on the motion.  That resolution would involve providing a statement to the jury about the state court action.  The Court directed the parties to meet and confer to reach agreement about the contents of such a statement.  The parties shall report back by October 12, 2021.  If they are not able to reach agreement, they shall file (in a joint submission) each side's proposed statement and a brief explanation as to why the other side's proposed statement is improper.

L.     Defendants' Motion in Limine No. 6

Defendants have moved to exclude evidence of "bad acts" by Mr. Tjoa and/or KOTL (*e.g.*, the circumstances related to Mr. Tjoa's removal from his position at KOTL, sanctions/criticisms issued by the Shenzhen Stock Exchange against Mr. Tjoa and/or KOTL, and judicial freezing of KOTL shares).  The motion is granted.  The allegations have no direct relevance to this case.

The evidence is not admissible under Rules 403 and 608(b).  SinCo does not need to use any of the evidence to argue that Mr. Tjoa had an incentive to pass XingKe off as SinCo – *i.e.*, to "steal" SinCo's customers and thereby increase the value of XingKe so as to get increased compensation and/or a bonus.  That key point as to Mr. Tjoa's motive can be proven by more direct evidence.

### IV.     BELLWETHER EXHIBITS

The Court shall issue a separate order addressing the bellwether exhibits.

### V.     EXHIBIT LISTS & DISCOVERY DESIGNATIONS

In light of the Court's rulings above on the motions in limine, as well as the new time limits, the parties shall (for the third time) submit new exhibit lists and discovery designations.  The Court emphasizes that it needs realistic assessments from the parties because it intends to make as many advance rulings as possible, particularly given the difficulties in having sidebars

United States District Court
Northern District of California

1   because of COVID-19 measures.  New narrowed exhibit lists and discovery designations shall be

2   filed by October 12, 2021.

3                          **VI.    JURY INSTRUCTIONS & JURY VERDICT FORM**

4           The Court shall issue a separate order addressing jury instructions.  However, it notes that,

5   per representations made at the final pretrial conference, (1) SinCo is withdrawing its trade

6   dilution claim; (2) Defendants are not disputing ownership or validity of the "SinCo" mark[3]; (3)

7   SinCo is not making any claim of indirect infringement/induced infringement; and (4) SinCo is

8   seeking statutory damages only as to the individual defendants (not XingKe).

9           Once jury instructions are finalized, the Court shall issue a separate order addressing the

10  jury verdict form.

11                                      **VII.    MISCELLANY**

12  A.    Abandonment

13          According to SinCo, Defendants should not be able to assert that "SINCO's lack of

14  adequate control in CHINA over XINGKE resulted in abandonment of SINCO's U.S. trademark

15  rights."  Pl.'s Tr. Br. at 8; *see also* Docket No. 477-9, at 6 (Pl.'s Obj. to Def.'s Disco. Desig. at 1)

16  ("SINCO objects to the Defendants['] unsupported legal theory that if the SINCO mark had

17  become abandoned in CHINA, it would be abandoned worldwide.  As a matter of logic, there is

18  no reason why trademarks cannot be abandoned only in a given trade area.").  SinCo's argument

19  lacks merit.  Whether SinCo abandoned the mark in the United States can be informed by SinCo's

20  actions or inactions wherever they took place, whether in China, the United States, or Singapore.

21  ///

22  ///

23  ///

24  ///

25  ///

26

27  ---
    [3] Defendants did ask that SinCo be barred from using the term "incontestable."  SinCo did not
28  object.  The Court agrees.  The Court also acknowledges that strength of the mark if a factor in the
    *Sleekcraft* analysis.

United States District Court
Northern District of California

B.      Pronunciation of "XingKe"

        The Court shall not impose any restrictions as to how Defendants should pronounce the term "XingKe."  However, the Court shall allow SinCo to point out any differences in pronunciation by defense fact witnesses (to the extent there are any).

        **IT IS SO ORDERED**.

Dated: October 8, 2021

_____
EDWARD M. CHEN
United States District Judge