UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SINCO TECHNOLOGIES PTE LTD,

                    Plaintiff,

        v.

SINCO ELECTRONICS (DONGGUAN)
CO., LTD., *et al*,

                    Defendants.

Case No.  17-cv-05517-EMC

**ORDER RE COURT'S PROPOSED
JURY INSTRUCTIONS**

        The Court has modified its proposed jury instructions based on the parties' comments. Where there are changes, the Court notes that fact expressly.  The Court has preserved its prior comments but has added "New Court Notes" (in yellow highlight).  The parties are to report back on certain issues as described in the New Court Notes by **5:00 p.m., October 27, 2021**.

        **IT IS SO ORDERED**.

Dated: October 26, 2021

_____
EDWARD M. CHEN
United States District Judge

**PRELIMINARY JURY INSTRUCTIONS**

**(GIVEN AT THE BEGINNING OF TRIAL)**


**JURY INSTRUCTION NO. 1**

**DUTY OF JURY**

**(COURT READS INSTRUCTIONS AT THE BEGINNING OF TRIAL BUT DOES**

**NOT PROVIDE WRITTEN COPIES)**

Jurors:  You now are the jury in this case, and I want to take a few minutes to tell you something about your duties as jurors and to give you some preliminary instructions.  At the end of the trial, I will give you more detailed instructions that will control your deliberations.

When you deliberate, it will be your duty to weigh and to evaluate all the evidence received in the case and, in that process, to decide the facts.  To the facts as you find them, you will apply the law as I give it to you, whether you agree with the law or not.  You must decide the case solely on the evidence and the law before you.

Perform these duties fairly and impartially.  You should not be influenced by any person's race, color, religious beliefs, national ancestry, sexual orientation, gender identity, likes or dislikes, sympathy, prejudice, fear, public opinion, or biases, including unconscious biases.  Unconscious biases are stereotypes, attitudes, or preferences that people may consciously reject but may be expressed without conscious awareness, control, or intention.  Like conscious bias, unconscious bias can affect how we evaluate information and make decisions.

Do not be afraid to examine any assumptions you or other jurors have made which are not based on the evidence presented at trial.  Please do not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be – that is entirely up to you.


[Court Notes: 9th Cir. Model Instruction No. 1.3.  The Court has modified the instruction.]

United States District Court
Northern District of California

2

**JURY INSTRUCTION NO. 2**

**IMPLICIT/UNCONSCIOUS BIAS**

We all have feelings, assumptions, perceptions, fears, and stereotypes about others.  Some biases we are aware of, and others we might not be fully aware of, which is why they are called implicit or unconscious biases.  No matter how unbiased we think we are, our brains are hard-wired to make unconscious decisions. We look at others and filter what they say through our own personal experience and background.  Because we all do this, we often see life and evaluate evidence in a way that tends to favor people who are like ourselves, or who have had life experiences like our own.  We can also have biases about people like ourselves. One common example is the automatic association of male with career and female with family. Bias can affect our thoughts, how we remember what we see and hear, whom we believe or disbelieve, and how we make important decisions.

As jurors, you are being asked to make an important decision in the case.  You must one, take the time you need to reflect carefully and thoughtfully about the evidence.

Two, think about why you are making the decision you are making and examine it for bias. Reconsider your first impressions of the people and the evidence in this case.  If the people involved in this case were from different backgrounds, for example, richer or poorer, more or less educated, older or younger, or of a different gender, gender identity, race, religion or sexual orientation, would you still view them, and the evidence, the same way?

Three, listen to one another.  You must carefully evaluate the evidence and resist, and help each other resist, any urge to reach a verdict influenced by bias for or against any party or witness. Each of you have different backgrounds and will be viewing this case in light of your own insights, assumptions and biases.  Listening to different perspectives may help you to better identify the possible effects these hidden biases may have on decision making.

And four, resist jumping to conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes, or unconscious biases.

United States District Court
Northern District of California

3

The law demands that you make a fair decision based solely on the evidence, your individual evaluations of that evidence, your reason and common sense, and these instructions.

[Court Notes: The Court has independently proposed this instruction.]

United States District Court
Northern District of California

1
2

United States District Court
Northern District of California

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JURY INSTRUCTION NO. 3**

**CLAIMS AND DEFENSES**

To help you follow the evidence, I will identify the parties for you and give you a brief summary of their respective positions.

The plaintiff in the case is SinCo Technologies Pte Ltd.  You may hear the parties refer to the plaintiff as "SinCo Technologies" or "SinCo Singapore."  "SinCo" is used throughout these instructions.

The defendants in the case are XingKe Electronics (Dongguan) Co., Ltd. and three individuals: Mui Liang Tjoa; Cher Yong; and Liew Yew Soon.  XingKe Electronics (Dongguan) Co., Ltd. previously did business as Sinco Electronics (Dongguan) Co., Ltd.  Cher Yong is also known as Cy Ng.  Liew Yew Soon is also known as Mark Liew.

The plaintiff asserts the following claims against each of the defendants: trademark infringement, false advertising, and passing off.  The plaintiff has the burden of proving these claims.

The defendants denies the claims and also asserts defenses.  If there is a defense for which the defendants have the burden of proof, it is known as an affirmative defense.  If a defense is an affirmative defense, it will be identified as such in the jury instructions.

The plaintiff denies the affirmative defenses.

Please note that there is a separate lawsuit among some of the same parties pending in a California state court that was filed on October 28, 2016.  On September 22, 2017, SinCo filed this federal lawsuit asserting claims for trademark infringement and other violations of federal law.  In the state lawsuit, SinCo asserts claims against the defendants under different legal theories, and the defendants assert claims against SinCo.  You should not speculate about the law that applies to that case or how the outcome of that case impacts or does not impact this case.  Your job is only to decide the case presented to you here based solely on the law I instruct you to apply.

[Court Notes: 9th Cir. Model Instruction No. 1.5.  The parties have submitted competing versions of the instruction.  *See* Disp. Instructions at 5-9 (Nos. 100-100A).  The Court has

1    provided its own instruction, taking elements from each party's proposal but rejecting other

2    elements.  The Court has also incorporated the statement on the state action stipulated to by the

3    parties.  *See* Docket No. 512 (statement as to state action).

4           The Court acknowledges that, in the operative SAC, SinCo asserted additional causes of

5    action – namely, false designation of origin, common law trademark infringement, and violation

6    of § 17200.  However, the Court intends to exclude the claims for false designation of origin and

7    common law trademark infringement because the parties agreed that the jury instructions for these

8    claims would simply refer back to the jury instruction for the trademark infringement claim.  *See*

9    Agreed Instructions at 22 (stating that "[t]he test for infringement of a common law trademark is

10   the same as the test for infringement of a federally registered mark" and that a claim for false

11   designation of origin "requires proof of the same elements as a claim for trademark

12   infringement").  Including the claims for false designation of origin and common law trademark

13   infringement would likely be more confusing to the jury.  As for the § 17200 claim, the Court

14   shall not include a reference to that claim because it will not be submitted to the jury.  *See Grace*

15   *v. Apple, Inc.*, No. 17-CV-00551-LHK, 2020 U.S. Dist. LEXIS 7883, at *12 n.3 (N.D. Cal. Jan.

16   15, 2020) (stating that plaintiffs' § 17200 "claim is 'equitable in nature' and is therefore for the

17   Court to decide, not the jury"); *Netlist, Inc. v. Diablo Techs., Inc.*, No. 13-cv-5962 YGR, 2015

18   U.S. Dist. LEXIS 54109, at *8 (N.D. Cal. Apr. 24, 2015) (stating that, "[b]ecause a UCL claim is

19   equitable in nature, the Court, rather than a jury, must decide whether there was a UCL violation,"

20   although adding that, "where legal claims are tried by a jury and equitable claims are trade by a

21   judge, and the claims are based on the same facts, in deciding the equitable claims the Seventh

22   Amendment requires the trial judge to follow the jury's implicit or explicit factual

23   determinations") (internal quotation marks omitted).  For the same reason, the Court does not give

24   SinCo's proposed instruction on § 17200.  *See* Disp. Instructions at 95 (No. 134).]

25          [New Court Notes: The Court agrees with SinCo that a claim for common law passing off

26   should be included and has added language to reflect such.  Contrary to what Defendants argued at

27   the hearing, the claim for common law trademark infringement and unfair competition, as pled in

28   the operative complaint, sufficiently includes a passing off theory.  *See* SAC ¶ 216 ("[T]he use of

United States District Court
Northern District of California

6

the Infringing Marks by Defendants constitutes passing off, unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices wherein Defendants' conduct is likely to cause confusion in the trade as to the source of Defendants' goods and services, and/or is likely to lead the public to believe that Defendants and their goods and services are in some way connected with SinCo's when, in fact, they are not, all to the detriment of SinCo and in violation of the common law of the State of California.").

In addition, the passing off claim is not preempted by the Lanham Act.  *See, e.g.*, *Seasalt Del Mar, LP v. Five Greeks LLC*, No. 16cv00601 JAH-KSC, 2017 U.S. Dist. LEXIS 186677 (S.D. Cal. Mar. 29, 2017) (noting that "Defendant cites to no controlling Ninth Circuit authority supporting its contention that the Lanham Act preempts *non-conflicting* state law") (emphasis added).

Finally, there is a reason to include the passing off claim because the remedies available for the claim are not the same as the remedies available for the federal trademark infringement claim; specifically, punitive damages are available for the former but not the latter.  *See Smith & Hawken, Ltd. v. Gardendance, Inc.*, No. C 04-1664 SBA, 2004 U.S. Dist. LEXIS 22934, at *31-32 (N.D. Cal. Nov. 5, 2004) (noting that punitive damages may be available for a claim of common law unfair competition); *cf. Levine v. Apparel*, No. CV 21-3668-MWF (SKx), 2021 U.S. Dist. LEXIS 198270, at *11 (C.D. Cal. Aug. 16, 2021) (stating that "[i]t is well-established that punitive damages are available for common law trademark infringements").  Because the passing off claim is not preempted by the Lanham Act, the Court rejects Defendants' attempt to argue that remedies under the state law claim can still be preempted.  Defendants cite no direct authority to support this proposition, and SinCo has cited at least one case to support its position.  *See JCW Investments, Inc. v. Novelty, Inc.*, No. 02 C 4950, 2003 WL 742184, at *3 (Mar. 4, 2003) (stating that, "[i]f Congress wanted to prohibit punitive damages under state law claims that mirror Lanham causes of action, this would be expressed in either the plain language of the statute or in the legislative history"; thus, declining to hold that the Lanham Act does not preempt the state common law but nevertheless preempts remedies under state law).]

United States District Court
Northern District of California

## JURY INSTRUCTION NO. 4

### BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

[Court Notes: 9th Cir. Model Instruction No. 1.6.]

**JURY INSTRUCTION NO. 5**

**BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

[Court Notes: 9th Cir. Model Instruction No. 1.7.  As indicated *infra*, the Court is using the clear and convincing standard for the issue of abandonment.]

[New Court Notes: The Court acknowledges Defendants' statement that they are preserving their objection to the clear and convincing standard for the issue of abandonment.  *See* Docket No. 527 (Resp. at 1).]

United States District Court
Northern District of California

**JURY INSTRUCTION NO. 6**

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

(1) the sworn testimony of any witness;

(2) the exhibits that are admitted into evidence;

(3) any facts to which the lawyers have agreed; and

(4) any facts that I may instruct you to accept as proved.


[Court Notes: 9th Cir. Model Instruction No. 1.9.]

**JURY INSTRUCTION NO. 7**

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered.  In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

[Court Notes: 9th Cir. Model Instruction No. 1.10.]

United States District Court
Northern District of California

# JURY INSTRUCTION NO. 8

## EVIDENCE FOR LIMITED PURPOSE

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

[Court Notes: 9th Cir. Model Instruction No. 1.11.]

United States District Court
Northern District of California

**JURY INSTRUCTION NO. 9**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk.  Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense.

[Court Notes: 9th Cir. Model Instruction No. 1.12.]

**JURY INSTRUCTION NO. 10**

**RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  If I overrule the objection, the question may be answered or the exhibit received.  If I sustain the objection, the question cannot be answered, and the exhibit cannot be received.  Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence.  That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

[Court Notes: 9th Cir. Model Instruction No. 1.13.]

# JURY INSTRUCTION NO. 11

## CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

    (1) the opportunity and ability of the witness to see or hear or know the things testified to;

    (2) the witness's memory;

    (3) the witness's manner while testifying;

    (4) the witness's interest in the outcome of the case, if any;

    (5) the witness's bias or prejudice, if any;

    (6) whether other evidence contradicted the witness's testimony;

    (7) the reasonableness of the witness's testimony in light of all the evidence; and

    (8) any other factors that bear on believability.

You must avoid bias, conscious or unconscious, based on a witness's race, color, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances in your determination of credibility.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of

United States District Court
Northern District of California

witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

[Court Notes: 9th Cir. Model Instruction No. 1.14.  The Court has modified the instruction.]

**JURY INSTRUCTION NO. 12**

**CONDUCT OF THE JURY**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty.  Thus, until the end of the case or unless I tell you otherwise:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media.  This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last.  But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

> Because you will receive all the evidence and legal

United States District Court
Northern District of California

1    instruction you properly may consider to return a verdict: do not

2    read, watch or listen to any news or media accounts or commentary

3    about the case or anything to do with it, although I have no

4    information that there will be news reports about this case; do not do

5    any research, such as consulting dictionaries, searching the Internet,

6    or using other reference materials; and do not make any

7    investigation or in any other way try to learn about the case on your

8    own.  Do not visit or view any place discussed in this case, and do

9    not use Internet programs or other devices to search for or view any

10   place discussed during the trial.  Also, do not do any research about

11   this case, the law, or the people involved – including the parties, the

12   witnesses or the lawyers – until you have been excused as jurors.  If

13   you happen to read or hear anything touching on this case in the

14   media, turn away and report it to me as soon as possible.

15        These rules protect each party's right to have this case decided only on evidence that has

16   been presented here in court.  Witnesses here in court take an oath to tell the truth, and the

17   accuracy of their testimony is tested through the trial process.  If you do any research or

18   investigation outside the courtroom, or gain any information through improper communications,

19   then your verdict may be influenced by inaccurate, incomplete or misleading information that has

20   not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial

21   jury, and if you decide the case based on information not presented in court, you will have denied

22   the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very

23   important that you follow these rules.

24        A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a

25   mistrial could result that would require the entire trial process to start over.  If any juror is exposed

26   to any outside information, please notify the court immediately.

27

28        [Court Notes: 9th Cir. Model Instruction No. 1.15.  Defendants have objected to the

language in the last paragraph related to a mistrial.  *See* Disp. Instructions at 11 (contending that "Plaintiff's threatening the prospect of a mistrial is unduly prejudicial, risks confusing the jury, and is an unnecessary change to an instruction that otherwise states the applicable Model Instruction verbatim").  However, that language comes from the model instruction, although admittedly the model instruction indicates that the language is optional as it is set aside in brackets.  The Court is inclined to include the language because it simply informs what consequences there are to the jury and, if anything, gives the jury an incentive to proceed carefully and fairly.]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## JURY INSTRUCTION NO. 13

## NO TRANSCRIPT AVAILABLE TO JURY

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

[Court Notes: 9th Cir. Model Instruction No. 1.17.]

**JURY INSTRUCTION NO. 14**

**TAKING NOTES**

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the jury room. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

[Court Notes: 9th Cir. Model Instruction No. 1.18.]

United States District Court
Northern District of California

**JURY INSTRUCTION NO. 15**

**BENCH CONFERENCES AND RECESSES**

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess.  Please understand that while you are waiting, we are working.  The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum.  I may not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

[Court Notes: 9th Cir. Model Instruction No. 1.20.]

United States District Court
Northern District of California

22

**JURY INSTRUCTION NO. 16**

**OUTLINE OF TRIAL**

Trials proceed in the following way: First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine.  Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

[Court Notes: 9th Cir. Model Instruction No. 1.21.  SinCo has offered a different instruction, modeled after the N.D. Cal. Model Patent Jury Instructions (No. A.5).  *See* Disp. Instructions at 33 (No. 109).  The Court finds the more detailed approach suggested by SinCo unnecessary in this case; indeed, that approach is potentially more confusing to the jury given what is at issue in this case.]

United States District Court
Northern District of California

1

**INSTRUCTIONS DURING TRIAL**

2

3

**JURY INSTRUCTION NO. _____**

4

**PRELIMINARY INSTRUCTION – TRADEMARK AND TRADE NAME**

5

The plaintiff seeks damages against the defendants for trademark infringement and other

6

related conduct. The defendant denies the plaintiff's claims and also asserts defenses. To help you

7

understand the evidence that will be presented in this case, I will explain some of the legal terms

8

you will hear during this trial.

9

10

DEFINITION AND FUNCTION OF A TRADEMARK

11

A trademark is any word, name, symbol, device, or any combination thereof, used by a

12

person to identify and distinguish that person's goods or services from those of others and to

13

indicate the source of the goods or services, even if that source is generally unknown.

14

The owner of a trademark has the right to exclude others from using that trademark or a

15

similar mark that is likely to cause confusion in the marketplace.  The main function of a

16

trademark is to identify and distinguish goods or services as the product of a particular

17

manufacturer or merchant and to protect its goodwill.

18

19

TRADEMARK REGISTRATION

20

After the owner of a trademark has obtained the right to exclude others from using the

21

trademark, the owner may obtain a certificate of registration issued by the United States Patent and

22

Trademark Office.  Thereafter, when the owner brings an action for infringement, the owner may

23

rely solely on the registration certificate to prove that the owner has the right to exclude others

24

from using the trademark or a similar mark that is likely to cause confusion in the marketplace in

25

connection with the type of goods specified in the certificate.

26

27

DEFINITION AND FUNCTION OF A TRADE NAME

28

A trade name is any word or words, a symbol, or combination of words and symbol, used

United States District Court
Northern District of California

by a person to identify that person's business and to distinguish it from the business of others. A trade name symbolizes the reputation of a person's business as a whole.

If a person owns a trade name, then that person has the exclusive right to use the name or to control the use of confusingly similar variations of the name by others in the market.

While a trademark can be registered with the United States Patent and Trademark Office, trade names are not registered.

For purposes of this lawsuit, the parties may use the term "trademark" (or "mark") interchangeably with the term "trade name."

## TRADEMARK INFRINGEMENT – LIKELIHOOD OF CONFUSION

One of the plaintiff's claims in this case is trademark infringement. To prove infringement, the plaintiff must prove, by a preponderance of the evidence, that the defendants, without the plaintiff's consent, used in commerce a reproduction, copy, counterfeit or colorable imitation of plaintiff's mark in connection with the distribution or advertisement of goods, such that the defendants' use of the mark is likely to cause confusion as to the source of the goods. It is not necessary that the mark used by the defendants be an exact copy of the plaintiff's mark. Rather, the plaintiff must demonstrate that, viewed in its entirety, the mark used by the defendants is likely to cause confusion in the minds of reasonably prudent purchasers or users as to the source of the product in question.

[Court Notes: 9th Cir. Model Instruction Nos. 15.1, 15.4. The Court has modified the instructions. The parties have a series of disputes about, *e.g.*, what parts of the model instruction should be included and whether the model instruction should be supplemented with other model instructions given at the end of the case. *See* Disp. Instructions at 12-32 (Nos. 102-108A).

As a general matter, the Court is not inclined to supplement the instruction with other model instructions given at the end of the case. The model instruction is a preliminary instruction only. Its purpose is simply to ground the jury with some basics; it is not intended to be exhaustive in nature.

United States District Court
Northern District of California

1  The Court has not included all parts of Model Instruction No. 15.1 because, *e.g.*, the jury

2  has already been given a general instruction that the plaintiff has the burden of proving its claims

3  and that the defendants have the burden of proving any affirmative defenses.  Also, it is

4  unnecessary to instruct on trademark interests because this case does not involve a person or entity

5  other than the owner of the trademark asserting a claim for trademark infringement.

6  The Court has included references to both trademark and trade name.  Even though this

7  case in many ways seems to be more about the trade name (*i.e.*, XingKe allegedly passing itself

8  off as SinCo), SinCo is seeking statutory damages, which is dependent on there being a trademark

9  and a counterfeit mark.

10  Finally, the Court rejects Defendants' objection to the reference to "reasonably prudent

11  purchasers" as used in the section on likelihood of confusion.  *See* Disp. Instructions at 18 (No.

12  106) (arguing that both SinCo and XingKe "sell their products exclusively to sophisticated, well-

13  informed, and well-resourced technology corporations, not to ordinary individual purchasers";

14  "[t]he summary reference to 'reasonably prudent purchasers' without" the qualification that

15  "sophisticated purchasers are expected to be more careful and discriminating" is "likely to mislead

16  the jury").  That language is commonly used in the case law.  *See Ironhawk Techs., Inc. v.*

17  *Dropbox, Inc.*, 994 F.3d 1107, 1123 (9th Cir. 2021) ("Under the sixth *Sleekcraft* factor, we assess

18  the sophistication of the customers and ask 'whether a "reasonably prudent consumer" would take

19  the time to distinguish between the two product lines.'  'When the buyer has expertise in the field,'

20  or 'the goods are expensive, the buyer can be expected to exercise greater care in his

21  purchases.'"); *Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1060 (9th Cir.

22  1999) ("Likelihood of confusion is determined on the basis of a 'reasonably prudent consumer.'

23  What is expected of this reasonably prudent consumer depends on the circumstances.  We expect

24  him to be more discerning – and less easily confused – when he is purchasing expensive items.").

25  Furthermore, nothing prevents Defendants from highlighting for the jury the subsequent jury

26  instruction on likelihood of confusion, which includes as one factor the purchaser's degree of

27  care.]

28

United States District Court
Northern District of California

26

1

~~JURY INSTRUCTION NO. ____~~

2

~~DEFINITION – TRADE NAME~~

3      ~~A trade name is any word or words, a symbol, or combination of words and symbol, used~~

4  ~~by a person to identify that person's business and to distinguish it from the business of others.  A~~

5  ~~trade name symbolizes the reputation of a person's business as a whole.  By comparison, a~~

6  ~~trademark identifies a person's goods.~~

7      ~~Any person who uses the trade name of another may be liable for damages.~~

8      ~~If a person owns a trade name, then that person has the exclusive right to use the name or~~

9  ~~to control the use of confusingly similar variations of the name by others in the market.~~

10

11      [Court Notes: 9th Cir. Model Instruction No. 15.4.  The Court has incorporated a modified

12  version of this instruction into the instruction immediately above.]

1

2

**JURY INSTRUCTION NO. _____**

**PRELIMINARY INSTRUCTION – LICENSE**

3

4

5

The owner of a trademark may enter into an agreement that permits another person to use the trademark.  This type of agreement is called a license, and the person permitted to use the trademark is called a licensee.  A license can be written or oral.

6

7

8

9

10

11

12

13

[Court Notes: 9th Cir. Model Instruction No. 15.16.  The parties agree in principle that there should be an instruction on a licensee.  *See* Disp. Instructions at 38.  Defendants, however, ask that the instruction include a reference to an oral license, as that is consistent with the comment for the model instruction.  *See* 9th Cir. Model Instruction No. 15.16, Comment ("Although 15 U.S.C. § 1060 requires that assignments be written, a license can be oral.").  The Court finds Defendants' request reasonable given the facts in this case, although it has modified their proposed language.]

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. _____**

**STIPULATIONS OF FACT**

The parties have agreed to certain facts (listed below).  You must therefore treat these facts as having been proved.

[Court Notes: 9th Cir. Model Instruction No. 2.2.  The Court is including this instruction for the time being, although it recognizes that the parties are still considering whether they can agree to any stipulated facts.  *See* Jt. PTC St. at 5.  The Court expects the parties to be reasonable regarding stipulations – *e.g.*, SinCo has four registered trademarks, SinCo owns the marks, the marks are valid, etc.  *See* Disp. Instructions at 37.]

[New Court Notes: The Court is still awaiting stipulations from the parties regarding SinCo's trademark registrations, the fact that XingKe applied for trademark registrations for the "SinCo" mark, etc.]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. \_\_\_\_**

**JUDICIAL NOTICE**

The court has decided to accept as proved the fact that [state fact].  You must accept this fact as true.

[Court Notes: 9th Cir. Model Instruction No. 2.3.]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. ___**

**DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

[Court Notes: 9th Cir. Model Instruction No. 2.4.]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. \_\_\_\_**

**TRANSCRIPT OF RECORDING IN ENGLISH**

You are about to [hear] [watch] a recording that has been received in evidence.  Please listen to it very carefully.  Each of you has been given a transcript of the recording to help you identify speakers and as a guide to help you listen to the recording.  However, bear in mind that the recording is the evidence, not the transcript.  If you hear something different from what appears in the transcript, what you heard is controlling.  After the recording has been played, the transcript will be taken from you.

[Court Notes: 9th Cir. Model Instruction No. 2.5.]

1

2

**JURY INSTRUCTION NO. _____**

**USE OF INTERROGATORIES**

3        Evidence will now be presented to you in the form of answers of one of the parties to

4   written interrogatories submitted by the other side.  These answers were given in writing and

5   under oath before the trial in response to questions that were submitted under established court

6   procedures.  You should consider the answers, insofar as possible, in the same way as if they were

7   made from the witness stand.

8

9        [Court Notes: 9th Cir. Model Instruction No. 2.11.]

10

11

12

United States District Court
Northern District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**JURY INSTRUCTION NO. _____**

**USE OF REQUESTS FOR ADMISSION**

3

4

5

Evidence will now be presented to you in the form of admissions to the truth of certain facts.  These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures.  You must treat these facts as having been proved.

6

7

[Court Notes: 9th Cir. Model Instruction No. 2.12.]

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. _____**

**EXPERT OPINION**

You are about to hear testimony from [name] who will testify to opinions and the reasons for [his] [her] opinions.  This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

[Court Notes: 9th Cir. Model Instruction No. 2.13.]

**FINAL JURY INSTRUCTIONS**

**(GIVEN AT THE END OF THE CASE)**

**JURY INSTRUCTION NO. _____**

**(COURT READS AND PROVIDES**

**WRITTEN INSTRUCTIONS AT END OF CASE)**

Members of the jury: Now that you have heard all the evidence, it is my duty to instruct you on the law that applies to this case.  A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to weigh and to evaluate all the evidence received in the case and, in that process, to decide the facts.  It is also your duty to apply the law as I give it to you to the facts as you find them, whether you agree with the law or not.  You must decide the case solely on the evidence and the law.  Do not allow personal likes or dislikes, opinions, prejudices, sympathy, or bias, including unconscious biases, influence you.  Unconscious biases are stereotypes, attitudes, or preferences that people may consciously reject but may be expressed without conscious awareness, control, or intention.  Like conscious bias, unconscious bias, too, can affect how we evaluate information and make decisions.  You should also not be influenced by any person's race, color, religion, national ancestry, or gender, sexual orientation, profession, occupation, celebrity, economic circumstances, or position in life or in the community.  Do not be afraid to examine any assumptions you or other jurors have made which are not based on the evidence presented at trial.  You will recall that you took an oath promising to do so at the beginning of the case.

You must follow all these instructions and not single out some and ignore others; they are all important.  Please do not read into these instructions or into anything I may have said or done any suggestion as to what verdict you should return – that is a matter entirely up to you.

[Court Notes: 9th Cir. Model Instruction No. 1.4.  The Court has modified the instruction.]

United States District Court
Northern District of California

**JURY INSTRUCTION NO. \_\_\_\_**

**BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

[Court Notes: 9th Cir. Model Instruction No. 1.6.]

**JURY INSTRUCTION NO. \_\_\_\_**

**BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.


[Court Notes: 9th Cir. Model Instruction No. 1.7.  As indicated *infra*, the Court is using the clear and convincing standard for the issue of abandonment.]

**JURY INSTRUCTION NO. _____**

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

    (1) the sworn testimony of any witness;

    (2) the exhibits that are admitted into evidence;

    (3) any facts to which the lawyers have agreed; and

    (4) any facts that I have instructed you to accept as proved.


[Court Notes: 9th Cir. Model Instruction No. 1.9.]

**JURY INSTRUCTION NO. \_\_\_\_**

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1) Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

[Court Notes: 9th Cir. Model Instruction No. 1.10.]

**JURY INSTRUCTION NO. \_\_\_\_**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

[Court Notes: 9th Cir. Model Instruction No. 1.12.]

United States District Court
Northern District of California

**JURY INSTRUCTION NO. _____**

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

      (1) the opportunity and ability of the witness to see or hear or know the things testified to;

      (2) the witness's memory;

      (3) the witness's manner while testifying;

      (4) the witness's interest in the outcome of the case, if any;

      (5) the witness's bias or prejudice, if any;

      (6) whether other evidence contradicted the witness's testimony;

      (7) the reasonableness of the witness's testimony in light of all the evidence; and

      (8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

Your evaluation of witness testimony should not be influenced by any prejudice or bias,

42

1    including unconscious bias.

2

3          [Court Notes: 9th Cir. Model Instruction No. 1.14.  The Court has modified the

4    instruction.]

United States District Court
Northern District of California

**JURY INSTRUCTION NO. ____**

**STIPULATIONS OF FACT**

The parties have agreed to certain facts (listed below).  You must therefore treat these facts as having been proved.

[Court Notes: 9th Cir. Model Instruction No. 2.2.  The Court is including this instruction for the time being, although it recognizes that the parties are still considering whether they can agree to any stipulated facts.  *See* Jt. PTC St. at 5.]

[New Court Notes: The Court is still awaiting stipulations from the parties regarding SinCo's trademark registrations, the fact that XingKe applied for trademark registrations for the "SinCo" mark, etc.]

1

**JURY INSTRUCTION NO. \_\_\_\_**

2

**JUDICIAL NOTICE**

3   The court has decided to accept as proved the fact that [state fact].  You must accept this

4 fact as true.

5

6   [Court Notes: 9th Cir. Model Instruction No. 2.3.]

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. ___**

**DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

[Court Notes: 9th Cir. Model Instruction No. 2.4.]

United States District Court
Northern District of California

46

1

2

**JURY INSTRUCTION NO. \_\_\_\_**

**IMPEACHMENT EVIDENCE – WITNESS**

The evidence that a witness has been convicted of a crime, lied under oath on a prior occasion, or gave different testimony may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

[Court Notes: 9th Cir. Model Instruction No. 2.9.  The parties have two disputes related to this instruction: (1) whether reference to a prior conviction should be included and (2) whether reference to a witness giving different testimony should be included.  *See* Disp. Instructions at 36 (No. 110).  The Court includes both.]

**JURY INSTRUCTION NO. \_\_\_\_**

**USE OF INTERROGATORIES**

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

[Court Notes: 9th Cir. Model Instruction No. 2.11.]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. ____**

**USE OF REQUESTS FOR ADMISSION**

Evidence was presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures.  You must treat these facts as having been proved.

[Court Notes: 9th Cir. Model Instruction No. 2.12.]

**JURY INSTRUCTION NO. \_\_\_\_**

**EXPERT OPINION**

You have heard testimony from expert witnesses who testified to opinions and the reasons for his or her opinions.  This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

[Court Notes: 9th Cir. Model Instruction No. 2.13.]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## JURY INSTRUCTION NO. _____

## LIABILITY OF CORPORATIONS AND LIABILITY OF CORPORATE OFFICERS

Under the law, a corporation is considered to be a person.  It can only act through its employees, agents, directors, or officers.  Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

A corporate officer or director can be held personally liable for torts that he authorizes, directs, or otherwise participates in, even if he was acting as an agent of the corporation and not on his own behalf.

[Court Notes: 9th Cir. Model Instruction No. 4.2.  The parties stipulated to part this instruction (*i.e.*, the first paragraph which represents No. 4.2).

SinCo offered an instruction along the lines of the second paragraph; Defendants objected to the instruction.  *See* Disp. Instructions at 94 (No. 133).  The Court finds that it is appropriate to give an instruction but has modified the instruction so that Defendants will suffer no prejudice.]

**JURY INSTRUCTION NO. ____**

**PLAINTIFF'S CLAIMS**

The plaintiff has asserted the following claims:

    (1)  Trademark infringement.

    (2)  False advertising.

    (3)  Passing off.


[Court Notes: The Court has included this instruction as a "road map" for the jury.  To the extent SinCo has asked for additional instructions that provide "guidelines" for the jury, *see* Disp. Instructions at 48 (No. 116) ("Summary of Contentions"); Disp. Instructions at 49 (No. 117) ("Trademark Liabilities – Policies"), the Court deems those instructions unnecessary.  The instructions may also overcomplicate matters for the jury given the specific facts of this case.  No. 117 is based on a model instruction – 9th Cir. Model Instruction No. 15.5.]

[New Court Notes: As noted above, the Court is including an instruction for the common law passing off claim.]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. ____**

**TRADEMARK INFRINGEMENT – ELEMENTS AND BURDEN OF PROOF**

On the plaintiff's claim for trademark infringement, the plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1. the "SinCo" mark is a valid, protectable trademark;

2. the plaintiff owns the "SinCo" mark as a trademark; and

3. the defendants used the "SinCo" mark or a similar mark without the consent of the plaintiff in a manner that is likely to cause confusion with respect to a reasonably prudent purchaser as to the source, sponsorship, affiliation, or approval of the goods.

If you find that each of the elements on which the plaintiff has the burden of proof has been proved, your verdict on the claim for trademark infringement should be for the plaintiff. If, on the other hand, the plaintiff has failed to prove any of these elements, your verdict on the claim for trademark infringement should be for the defendant.

The parties agree that the plaintiff owns the "SinCo" mark as a trademark and that the mark is valid (elements (1) and (2) above).

Note that there are technically four "SinCo" marks at issue: one word mark and three design marks. For convenience, the Court refers generally to a "SinCo" mark in these instructions.

[Court Notes: 9th Cir. Model Instruction No. 15.6. The parties have a dispute regarding the instruction. *See* Disputed Instructions at 51 (No. 118). SinCo has offered the model instruction; Defendants ask that the model instruction be modified.

The Court has modified the instruction. First, the Court has made reference to "the 'SinCo' mark" instead of "the word mark SinCo." This is because the trademarks at issue include a word mark and three design marks.

Second, the Court has included language to explain that there are four marks at issue.

Third, the Court has changed the language of the model instruction to address Defendants'

53

1    concerns.  The Court has made clear that, if the jury finds each of the elements, then it should

2    render a verdict on the claim for trademark infringement specifically (as opposed to the entire

3    case).  Second, while the model instruction uses the term "ordinary consumers," the Court has

4    replaced that term with "reasonably prudent purchaser."  The Court acknowledges Defendants still

5    take issue with the phrase "reasonably prudent purchaser," *see* Disp. Instructions at 18 (No. 106)

6    but, as stated above, the Court rejects that position.

7        Finally, the Court has included a statement about ownership and validity because

8    Defendants have indicated that they do not contest such.]

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. ____**

**TRADEMARK INFRINGEMENT – ELEMENTS – CONSENT**

The owner of a trademark may enter into an agreement that permits another person to use the trademark.  This type of agreement is called a license, and the person permitted to use the trademark is called a licensee.  A license can be written or oral.  If a license is given, there is consent and thus no trademark infringement for any use covered by the license.


[Court Notes: 9th Cir. Model Instruction No. 15.16.  The parties agree in principle that there should be an instruction on a licensee.  *See* Disp. Instructions at 38-39.  Defendants, however, ask that the instruction include a reference to an oral license, as that is consistent with the comment for the model instruction.  *See* 9th Cir. Model Instruction No. 15.16, Comment ("Although 15 U.S.C. § 1060 requires that assignments be written, a license can be oral.").  The Court does not include all of the language suggested by Defendants in their proposed instruction No. 112A.  *See* Disp. Instructions at 39 (No. 112A).  The Court has added clarifying language so it is clear to the jury the relationship of this instruction to the elements of trademark infringement.]

United States District Court
Northern District of California

1

## JURY INSTRUCTION NO. ____

2

## ~~TRADEMARK INFRINGEMENT – ELEMENTS – PRESUMED VALIDITY –~~

3

## ~~REGISTERED TRADEMARK~~

4      ~~I gave you instruction number [insert number of instruction regarding Trademark Elements~~

5  ~~and Burden of Proof, e.g., 15.6] that requires the plaintiff to prove by a preponderance of the~~

6  ~~evidence that the trademark is valid and protectable.  A valid trademark is a word, name, symbol,~~

7  ~~device, or any combination of these, that indicates the source of goods and distinguishes those~~

8  ~~goods from the goods of others.  A trademark becomes protectable after it is used in commerce.~~

9      ~~One way for the plaintiff to prove trademark validity is to show that the trademark is~~

10  ~~registered.  An owner of a trademark may obtain a certificate of registration issued by the United~~

11  ~~States Patent and Trademark Office and may submit that certificate as evidence of the validity and~~

12  ~~protectability of the trademark covered by that certificate.~~

13      ~~Exhibits 1-4 are certificates of registration from the United States Patent and Trademark~~

14  ~~Office.  They were submitted by the plaintiff as proof of the validity of each.~~

15      ~~The defendant alleges that the certificates cannot be considered proof of validity of the~~

16  ~~trademark because the trademarks have been abandoned.  See Instruction [xxx].~~

17      ~~Unless the defendants prove by a preponderance of the evidence that the trademarks were~~

18  ~~abandoned, you must consider the trademarks to be conclusively proved as valid.  However, if the~~

19  ~~defendants show that the trademarks were abandoned by a preponderance of the evidence, then the~~

20  ~~certificates are no longer conclusively presumed to be correct.  You should then consider whether~~

21  ~~all of the evidence admitted in this case, in addition to the certificates of registration, shows by a~~

22  ~~preponderance of the evidence that the trademarks are valid, as I explain in Instruction [insert~~

23  ~~number of instruction regarding Trademark Elements and Burden of Proof, e.g., 15.6].~~

24

25      [Court Notes: 9th Cir. Model Instruction No. 15.8.  SinCo has essentially proposed that the

26  model instruction be given.  Defendants have objected to the instruction.  The instruction is not

27  necessary because Defendants conceded validity of the trademark at the final pretrial conference.

28  The Court addresses the issue of the burden of proof on abandonment below.]

1

~~JURY INSTRUCTION NO. _____~~

~~TRADEMARK INFRINGEMENT – ELEMENTS – OWNERSHIP – GENERALLY~~

~~The law entitles the trademark owner to exclude others from using that trademark.  A person acquires the right to exclude others from using a trademark by being the first to use it in the marketplace or by using it before the alleged infringer.  A person also acquires the right to exclude others from using a trademark if industry or public usage creates, for a majority of relevant purchasers, an association between the person and the mark prior to the alleged infringer's use.~~

~~If you find the plaintiff's trademark to be valid (that is, inherently distinctive), you must consider whether the plaintiff used the trademark as a trademark for the plaintiff's goods before the defendants began to use the trademark to market their goods in the area where the plaintiff sells its goods.~~

~~If the plaintiff's trademark is not inherently distinctive, but the plaintiff has shown that the trademark is descriptive and that the trademark has acquired secondary meaning, the plaintiff has the burden of showing by a preponderance of the evidence that the plaintiff's trademark had gained secondary meaning before the defendant first began to use the trademark.~~

[Court Notes: 9th Cir. Model Instruction No. 15.13 and comment.  SinCo has proposed a version of the model instruction.  *See* Disp. Instructions at 47 (No. 115).  However, because Defendants are not contesting ownership, it is not necessary to give the instruction.]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

~~JURY INSTRUCTION NO. ____~~

~~TRADEMARK OWNERSHIP – MERCHANT OR DISTRIBUTOR~~

~~A company may own a trademark that identifies products the company sells even though the products are manufactured by someone else.~~

[Court Notes: 9th Cir. Model Instruction No. 15.17.  SinCo has proposed a version of the model instruction.  *See* Disp. Instructions at 42 (No. 113).  However, as above, because Defendants are not contesting ownership, it is not necessary to give the instruction.]

**JURY INSTRUCTION NO. ____**

**TRADEMARK INFRINGEMENT – ELEMENTS – LIKELIHOOD OF**

**CONFUSION – FACTORS –** *SLEEKCRAFT* **TEST**

You must consider whether the defendants' use of the trademark is likely to cause confusion about the source of the plaintiff's or the defendant's goods.

Confusion may be at the point of sale, or it may be what is known as initial interest confusion. Initial interest confusion means to capture the initial attention of the purchaser, even though no actual sale is finally completed as a result of the confusion. However, the initial interest confusion must last long enough to give the defendant some competitive advantage over the trademark owner.

I will suggest some factors you should consider in deciding whether there is a likelihood of confusion. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

(1) Strength or Weakness of the Plaintiff's Mark. The more the relevant purchasers recognize the plaintiff's trademark as an indication of origin of the plaintiff's goods, the more likely it is that the purchasers would be confused about the source of the defendants' goods if the defendants use a similar mark.

(2) Defendants' Use of the Mark. If the defendants and plaintiff use their trademarks on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

(3) Similarity of Plaintiff's and Defendants' Marks. If the overall impression created by the plaintiff's trademark in the marketplace is similar to that created by the defendants' trademark in appearance, sound, or meaning, there is a greater chance that purchasers are likely to be confused by defendants' use of a mark.

(4) Actual Confusion. If use by the defendants of the plaintiff's trademark has led to instances of actual confusion, this strongly suggests a likelihood of confusion.

However actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, the defendants' use of the trademark may still be likely to cause confusion.  As you consider whether the trademark used by the defendants creates for purchasers a likelihood of confusion with the plaintiff's trademark, you should weigh any instances of actual confusion against the opportunities for such confusion.  If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

(5)  Defendants' Intent.  Knowing use by the defendants of the plaintiff's trademark to identify similar goods may strongly show an intent to derive benefit from the reputation of the plaintiff's mark, suggesting an intent to cause a likelihood of confusion.  On the other hand, even in the absence of proof that the defendants acted knowingly, the use of plaintiff's trademark to identify similar goods may indicate a likelihood of confusion.

(6)  Marketing/Advertising Channels.  If the plaintiff's and defendants' goods are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

(7)  Consumer's/Purchaser's Degree of Care.  The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be.  They may be less likely to be confused by similarities in the plaintiff's and defendants' trademarks.

(8)  Product Line Expansion. When the parties' products differ, you may consider how likely the plaintiff is to begin selling the products for which the defendants are using the plaintiff's trademark.  If there is a strong possibility of expanding into the other party's market, there is a greater likelihood of confusion.

[Court Notes: 9th Cir. Model Instruction No. 15.18.  The parties have offered competing instructions on likelihood of confusion.  *See* Disp. Instructions at 18-2 (Nos. 106-106A). Defendants' version is closer to the model instruction.  SinCo indicates that it is not, in principle, opposed to the model instruction but it does oppose Defendants' modifications.  The Court, for the most part, adheres to the language used in the model instruction but generally refers to purchasers instead of consumers or the consuming public given the circumstances of this case.

In addition, the Court incorporates the concept of initial interest confusion into the model instruction.  The Court finds it appropriate to incorporate the concept into the *Sleekcraft* instruction instead of having a separate freestanding instruction because, the concept is, in essence, part of the *Sleekcraft* analysis, as noted by Defendants (*e.g.*, informing the fourth and seventh factors).  However, Defendants' proposed language, *see* Docket No. 517 (Resp. at 53), is lacking in that it does not explain the concept of initial interest confusion.  On the other hand, SinCo's proposed instruction is also problematic, containing prejudicial language and also going into the issue of post-sale confusion which does not appear to be an issue in the instant case.  The language used by the Court above is based on case authority, including the following:

- *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 n.2 (2d Cir. 2005) (stating that "[t]he Lanham Act protects against several types of consumer confusion, including point-of-sale confusion, initial interest confusion, and post-sale confusion").

- *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 946 (9th Cir. 2015). (stating that "'[i]nitial interest confusion is customer confusion that creates initial interest in a competitor's product[;] [a]lthough dispelled before an actual sale occurs, initial interest confusion impermissibly capitalizes on the goodwill associated with a mark and is therefore actionable trademark infringement'").

- *Network Automation, Inc. v. Adv. Sys. Concepts*, 68 F.3d 1137, 1149 (9th Cir. 2011) (stating that, "because the *sine qua non* of trademark infringement is consumer confusion, when we examine initial interest confusion, the owner of the

United States District Court
Northern District of California

mark must demonstrate likely confusion, not mere diversion").

- *Epic Sys. Corp. v. YourCareUniverse, Inc.*, 244 F. Supp. 3d 878, 902-03 (W.D. Wis. 2017) (stating that, if "the purchasing decisions . . . involve sophisticated consumers making expensive purchases often over a long period of time after acquiring much information[,] . . . these factors counsel against the possibility that initial interest confusion is at all likely"; "the doctrine *can* apply to more expensive items and more sophisticated customers, [but] the confusion [must have] lasted long enough to give the defendant some competitive advantage over the trademark owner, suggesting that there must be some basis from which to infer that the defendant has influenced a customer's decision to make a purchase") (emphasis in original).

- *Tobinick v. Scripps Clinic Med. Grp.*, No. CV 00-06137 RJK, 2002 U.S. Dist. LEXIS 9042, at *30 (C.D. Cal. May 6, 2002) (using the following language in a jury instruction: "A finding of initial interest confusion can be a basis for finding likelihood of confusion.  Initial interest confusion means to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion").]

~~**JURY INSTRUCTION NO. ____**~~

~~**TRADEMARK INFRINGEMENT – ELEMENTS – LIKELIHOOD OF**~~

~~**CONFUSION – FACTOR – STRENGTH  OF TRADEMARK**~~

~~**Strength as a Factor for Evaluating Likelihood of Confusion**~~

~~How strongly the plaintiff's trademark indicates that the goods or services  come from a particular source is an important factor to consider in determining whether the trademark used by the defendant is likely to create confusion with the plaintiff's mark.~~

~~**The Strength of Marks**~~

~~The more distinctive and strong a trademark is, the greater the scope of protection the law provides. The law measures trademark strength by considering two prongs:~~

~~1.   Commercial Strength: This is the amount of marketplace recognition of the mark; and~~

~~2.    Conceptual Strength: This is  the placement of the mark on the spectrum of marks.~~

~~**Commercial Strength:** What is "commercial strength?"  Not all marks are equally well known.  Trademark strength is somewhat like the renown of people.  Only a few very famous people are widely known and recognized around the world.  Most people are known and recognized only by a small circle of family and friends.~~

~~Some trademarks are relatively "strong," in the sense they are widely known and recognized.  A few trademarks are in the clearly "famous" category.  These "famous" marks are those like "Apple" for computers and mobile phones, "Google" for a search engine, "Coca-Cola" for beverages and "Toyota" for vehicles.  Some trademarks may be strong and well known only in a certain market niche such as mountain climbing gear, plumbing supplies, or commercial airplane electronics equipment, but relatively weak outside that field.~~

~~**Conceptual Strength:** What is "conceptual strength?" All trademarks are grouped into two categories: either inherently distinctive or not inherently distinctive.  If a mark is inherently distinctive it is immediately protected when first used.  If it is not inherently distinctive, to become a legally protected mark, a designation must acquire distinctiveness in people's minds by becoming known as an indication of source of goods or services. The law calls this "secondary meaning."~~

United States District Court
Northern District of California

For determining the conceptual strength of a mark, trademarks are grouped on a spectrum according to the nature of the mark.  In the spectrum, there are three categories of word marks that the law regards as being inherently distinctive: coined, arbitrary and suggestive.  Descriptive word marks are regarded as not being inherently distinctive and require a secondary meaning to become a valid trademark.

**Coined** and arbitrary words are regarded as being relatively strong marks. A coined word mark is a word created solely to serve as a trademark.  For example, "Clorox" for cleaning products and "Exxon" for gasoline are coined marks.

**Arbitrary** marks are words that in no way describe or suggest the nature of the goods or services it is used with.  For example, "apple" is a common word, but it does not describe or suggest anything about the nature of "Apple" brand computers or smart phones.  It is an arbitrary word when used as a mark on those products and is said to be conceptually strong as a mark.

**Suggestive** word marks are regarded as not being as conceptually strong as coined or arbitrary marks.  Suggestive trademarks suggest some characteristic or quality of the goods or services with which they are used.  If the consumer must use her imagination or think through a series of steps  to understand what the trademark is telling about the product, then the trademark does not directly describe the product's features, but merely suggests them.  For example, the trademark "Tail Wagger" for dog food merely suggests that your dog will like the food.  As another example, when "apple" is used in the mark "Apple-A-Day" for vitamins, it is being used as a suggestive trademark.  "Apple" does not describe what the vitamins are.  However, it suggests the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple-A-Day" vitamins.

**Descriptive** word marks are not inherently distinctive.  These marks directly describe some characteristic, or quality of the goods or services with which they are used in a straightforward way that requires no exercise of imagination.  For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice.  It directly describes one of ingredients of the juice.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

[Court Notes: 9th Cir. Model Instruction No. 15.19.  Defendants have proposed this instruction; SinCo objects that it is duplicative of 9th Cir. Model Instruction No. 15.18.  *See* Disp. Instructions at 23-24 (No. 106B).  Although it is not duplicative, the Court finds it will likely confuse the jury by needlessly complicating the issues.  The primary issue here is not similarity of trademarks – the marks in question are identical.  Strength of the mark and the subtleties of its evaluation to the degree set forth in the instructions is a far less important factor than in typical trademark cases.  On the other hand, the lengthy detailed instruction on this point will likely sidetrack and confuse the jury.]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

~~**JURY INSTRUCTION NO. ____**~~

~~**TRADEMARK INFRINGEMENT – DERIVATIVE LIABILITY – INDUCING**~~

~~**INFRINGEMENT**~~

~~A person is liable for trademark infringement by another if the person intentionally induced another to infringe the trademark.~~

~~The plaintiff has the burden of proving each of the following by a preponderance of the evidence:~~

~~1.   Mr. Ng or Mr. Liew infringed the plaintiff's trademark;~~

~~2.   XingKe intentionally induced Mr. Ng or Mr. Liew to infringe plaintiff's trademark; and~~

~~3.   the plaintiff was damaged by the infringement.~~

~~If you find that each of the elements on which the plaintiff has the burden of proof has been proved, your verdict on the trademark infringement claim should be for the plaintiff.  If, on the other hand, the plaintiff has failed to prove any of these elements, your verdict on the trademark infringement claim should be for the defendant.~~

[Court Notes: 9th Cir. Model Instruction No. 15.20.  SinCo initially asked for the instruction, *see* Disp. Instructions at 54 (No. 120), but, at the final pretrial conference, indicated that it was not seeking the instruction.]

United States District Court
Northern District of California

United States District Court
Northern District of California

**JURY INSTRUCTION NO. \_\_\_\_**

**TRADEMARK INFRINGEMENT – AFFIRMATIVE DEFENSE –**

**ABANDONMENT**

The owner of a trademark cannot exclude others from using the trademark if it has been abandoned.

The defendants contend that the trademark has become unenforceable because the plaintiff abandoned it. The defendants have the burden of proving abandonment by clear and convincing evidence.

The owner of a trademark abandons the right to exclusive use of the trademark when the owner fails to exercise adequate quality control over the goods sold under the trademark by a licensee. It need not be shown that the trademark owner had any subjective intent to abandon the mark.


[Court Notes: 9th Cir. Model Instruction No. 15.22. The parties have provided competing instructions. *See* Disp. Instructions at 30-32 (No. 108A); Disp. Instructions at 55 (No. 121). SinCo indicates that, in principle, it is unopposed to Defendants' instruction (except on the burden of proof) but challenges Defendants' modifications to the instruction. *See* Disp. Instructions at 30-32 (No. 108A). The Court agrees with Defendants that it is unnecessary to include other means of abandonment when Defendants' only theory of abandonment is based on failure to exercise adequate quality control. However, the Court shall not include all of the additional paragraph suggested by Defendants. *See* Disp. Instructions at 30 (No. 108A) ("Abandonment is 'purely an "involuntary" forfeiture of trademark rights.'").

To the extent Defendants have offered a separate instruction on a "license" defense, *see* Disp. Instructions at 39 (No. 112A), the Court does not give the instruction because it is unnecessary in light of the general instruction on trademark infringement (which refers to "consent").

To the extent Defendants have offered a separate instruction on a "naked license" affirmative defense, *see* Disp. Instructions at 41 (No. 112C), the Court finds it unnecessary

67

because there is already the abandonment instruction.  Defendants are free to argue to the jury that "[t]he absence of an agreement with provisions restricting or monitoring the quality of goods or services produced under a trademark supports a finding of naked licensing."  Disp. Instructions at 41 (No. 112C).

As to the issue of burden of proof, the Court finds clear and convincing standard applies.

In prior cases, the Ninth Circuit has referred to a "high burden of proof" and a "stringent standard of proof."  *See, e.g.*, *Edwin K. Williams & Co., Inc. v. Edwin K. Williams & Co.-East*, 542 F.2d 1053, 1059 (9th Cir. 1976) (stating that "[a] tradename licensor must maintain control over the quality of the finished product or service to guarantee to the public that the goods or services are of the same, pre-license quality," and, "[b]ecause a finding of insufficient control essentially works a forfeiture, a person who asserts insufficient control must meet a high burden of proof"); *Barcamerica Int'l USA Tr. v. Tyfield Imps., Inc.*, 289 F.3d 589, 596 (9th Cir. 2002) (stating that "abandonment 'is purely an "involuntary" forfeiture of trademark rights' for it need not be shown that the trademark owner had any subjective intent to abandon the mark[;] [a]ccordingly, the proponent of a naked license theory 'faces a stringent standard' of proof").  However, it has never clarified what that means, in particular, whether that means a clear or convincing standard should apply or instead a preponderance of the evidence standard.

In *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949 (9th Cir. 2007) (per curiam), the two concurrences reached different conclusions on the burden of proof.  Judge Wallace stated that the clear and convincing standard should apply.  He noted first that "pre-Lanham Act courts [federal and state] required clear and convincing evidence to establish a forfeiture.  And at least one court expressly required clear and convincing evidence of abandonment of a trademark [citing a D.C. Circuit case from 1910]."  *Id.* at 952 (Wallace, J. concurring).  As for some courts' use of the term "strict proof," that "was no different than clear and convincing evidence[;] they were the same burden.  Unsurprisingly, when the Court of Appeals of New York required 'strict proof' of trademark abandonment [in a 1938 decision], it relied on [*e.g.*, the 1910 D.C. Circuit case]."  *Id.* Because the traditional standard was clear and convincing evidence, and "nothing in the Lanham Act indicat[es] that Congress relaxed this burden," he concluded that the clear and convincing

68

standard should apply.  *Id.* at 952-53.  He added: the "only plausible translation of strict proof and high burden" is clear and convincing, and Judge McKeown, in her competing concurrence, offered no other plausible translation.  *Id.* at 953.

Judge McKeown, in her concurrence, noted that prior Ninth Circuit cases had referred to "strict proof " or "high burden" but had not elaborated what that meant (declining to address the issue even).  In her view,

> the language of 15 U.S.C. § 1127 [which defines terms, including "abandonment"] does not support an elevated standard of "clear and convincing." The statute does not impose a burden beyond the traditional preponderance of the evidence standard applicable in civil matters.  Nor is there any evidence that Congress intended to raise the bar to clear and convincing evidence . . . . The federal courts of appeals that have considered the issue are in accord and have consistently applied the preponderance of the evidence standard in the trademark abandonment context.  *See Emergency One, Inc. v. Am. FireEagle, Ltd.*, 228 F.3d 531, 536 (4th Cir. 2000) (applying preponderance of the evidence standard); *Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 938 (7th Cir. 1989) (same); *Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1023-24 (Fed. Cir. 1989) (same, in appeal from trademark cancellation proceeding before Trademark Trial and Appeal Board).  These cases are predicated on the statutory language of the Lanham Act, not on the common law or some judicially-created hybrid standard.
>
> In addressing the Lanham Act's changes from the common law with respect to the law of abandonment, the Federal Circuit noted that
>
>> [a]t common law there was no similar presumption of abandonment of a mark simply from proof of nonuse. A challenger had to prove not only nonuse of the mark but also that the former user intended to abandon the mark.  However, with respect to rights under the Lanham Act, proof of abandonment was facilitated by the creation of the . . . statutory presumption.
>
> *Imperial Tobacco, Ltd., Assignee of Imperial Group PLC v. Philip Morris, Inc.*, 899 F.2d 1575, 1579 (Fed. Cir. 1990) (appeal from trademark cancellation proceeding before TTAB) (citations omitted).  Thus, the Federal Circuit cautioned that "statements from opinions under the common law of abandonment concerning the nature of the element of intent and who had the burden of proof cannot be applied indiscriminately to an abandonment case under the Lanham Act."  *Id.*  Although the vacuum in our circuit with respect to a square holding on the burden of proof in abandonment cases may cause some litigants and judges to fall back on pre-Lanham Act cases, we are bound by the statute, not the common law.

*Id.* at 953-54.

Although Judge McKeown cited in support of her position three circuit court cases, the McCarthy treatise states that, "[s]ince abandonment results in a forfeiture of rights, the courts are reluctant to find an abandonment," and "[t]he majority of courts have interpreted the 'strictly proved' rule to mean that evidence of the elements of abandonment must be clear and convincing."  3 McCarthy on Trademarks and Unfair Competition § 17:12 (5th ed.).  While the McCarthy treatise cited primarily district court opinions, *see also FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 515 (9th Cir. 2010) (noting that "[m]ost published lower court decisions that have reached [the] issue appear to have interpreted the 'strictly proven standard to require 'clear and convincing evidence"), two circuit courts – post-*Grocery Outlet* – do fall within this camp: the Fifth and the Eighth.  *See Perry v. H.J. Heinz Co. Brands, L.L.C.*, 994 F.3d 466, 474 (5th Cir. 2021) (relying primarily on the McCarthy treatise); *Lawn Mgrs., Inc. v. Progressive Law Mgrs., Inc.*, 959 F.3d 903, 908 (8th Cir. 2020) (stating that, "[b]ecause a finding of naked licensing results in involuntary trademark abandonment and the forfeiture of trademark rights, the party claiming insufficient control must prove it by clear and convincing evidence"); *Cmty. Of Christ Copyright Corp. v. Devon Park Restor. Branch of Jesus Christ's Church*, 634 F.3d 1005, 1010 (8th Cir. 2011) (8th Cir. 2011) (stating that defendant "has the burden of proving abandonment by clear and convincing evidence"; citing the McCarthy treatise in support).

The Court agrees with the majority of courts and finds that the clear and convincing evidence standard applies.]

[New Court Notes: Defendants have asked the instruction to include the following statement: "The absence of an agreement with provisions restricting or monitoring the quality of goods or services produced under a trademark supports a finding of abandonment."  Docket No. 527 (Resp. at 1).  Defendants are correct that there is support for the statement in *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 516 (9th Cir. 2010) ("When deciding summary judgment on claims of naked licensing, we first determine whether the license contained an express contractual right to inspect and supervise the licensee's operations.  The absence of an agreement with provisions restricting or monitoring the quality of goods or services produced

70

1    under a trademark supports a finding of naked licensing.").  However, the Court shall not include

2    the statement.  It is a departure from the Ninth Circuit instruction on the concept of naked

3    licensing.  *See* 9th Cir. Model Instruction No. 15.22.  Also, Defendants are not prejudiced because

4    they are still free to argue to the jury that the absence of provisions weighs in their favor.]

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

1

~~JURY INSTRUCTION NO. ____~~

2

~~EXISTENCE OF ORAL CONTRACT~~

3

~~Plaintiff SinCo Singapore alleges that the parties entered into an oral contract—a license~~

4

~~governing the defendants' use of SinCo Singapore's trademark.  An oral contract is just as valid as~~

5

~~a written one.~~

6

~~To prove that a contract was created, SinCo Singapore must prove all of the following:~~

7

~~(1)  That the contract terms were clear enough that the parties could understand what~~

8

~~each was required to do;~~

9

~~(2)  That the parties agreed to give each other something of value—either a benefit to~~

10

~~the recipient or a prejudice to the promisor—which induced the exchange of~~

11

~~contractual promises;~~

12

~~(3)  That the parties agreed to the terms of the contract.~~

13

~~When you examine whether the parties agreed to the terms of the contract, ask yourself if,~~

14

~~under the circumstances, a reasonable person would conclude, from the words and conduct of each~~

15

~~party, that there was an agreement.  You may not consider the parties' hidden intentions.~~

16

~~If SinCo Singapore did not prove all of the above, then a contract was not created.~~

17

18

[Court Notes: Defendants have proposed this instruction.  *See* Disp. Instructions at 40 (No.

19

112B).  The instruction seems unnecessary given that it addresses what SinCo is trying to prove.

20

Now, if anything it is Defendants who are trying to prove that there was a license.]

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. _____**

**TRADEMARK INFRINGEMENT – AFFIRMATIVE DEFENSE –**

**ABANDONMENT – EMPLOYER OF THE INDIVIDUAL DEFENDANTS**

The parties dispute which of the corporate parties was the employer of defendants Mr. Ng and/or Mr. Liew. The plaintiff has claimed that Mr. Ng and/or Mr. Liew were employees of the plaintiff and that it "embedded" them to work at the XingKe factory, on the plaintiff's behalf, so as to provide quality control over the goods manufactured there. The defendants deny the claim and assert that Mr. Ng and/or Mr. Liew were employees of XingKe and also deny that they were "embedded" to provide quality control on the plaintiff's behalf regardless of their employment status.

I am providing you with this instruction as to the legal principles that determine whether a company is or is not the employer of an individual. While no single factor is dispositive, you may consider the following factors:

    (1) which company had a greater degree of control over the person's performance of his job;

    (2) which company bore the financial burden of compensating the person;

    (3) which company bore the financial burden of providing other employment benefits, such as payments to Singapore's Central Provident Fund on behalf of the person; and

    (4) which company had the power to dismiss the person from his service; and

    (5) for which company did the person perform work integral to the company's business.

Court Notes: Defendants have proposed this instruction. *See* Disp. Instructions at 73-74 (No. 124G).

The instruction is modified so as to include an introductory paragraph as to why the issue is being contested (*i.e.*, the "embedded" employee theory). *See* Pl.'s Tr. Br. at 9; Docket No. 348 (SJ Order at 3).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    However, the parties have not established what law is controlling here.  Defendants have

2  cited to federal law on employment status (*e.g.*, Title VII, FLSA).  SinCo argues that Singapore

3  law governs – either because that is provided under their employment agreements, *see* Pl.'s Tr. Br.

4  at 1 n.1, or because Defendants stated that Singapore law governs at the time they opposed

5  SinCo's motion for summary judgment.  *See generally* Docket No. 268 (opposition).  Neither

6  parties have briefed the issue in any substantive way here.  Also, it is not clear what factors would

7  be considered even if Singapore law were to apply (*e.g.*, are they different from federal or even

8  California law considerations?).  The parties shall meet and confer and provide supplemental

9  briefing and proposed instruction on this point.]

10    [New Court Notes: The parties agree that Singapore law controls the issue of whether Mr.

11  Ng and/or Mr. Liew were employees of SinCo.  To the extent the parties have not already done so,

12  they shall **immediately** file copies of the underlying authorities they cited in their respective

13  papers.  *See* Docket No. 538 (citing Ravi Chandran, Employment Law in Singapore (LexisNexis,

14  6th Ed, 2019); Public Prosecutor v. Jurong Country Club [2019] 5 SLR 554 ¶¶ 47-49; BNM v.

15  Nat'l Univ. of Singapore [2014] 4 SLR 931 ¶ 24); Docket No. 42 (also citing Chandran treatise as

16  well as National University Hospital (Singapore) Pte Ltd v. Cicada Cube Pte Ltd [2017] SGHC 53

17  ¶ 84).  For the time being, the Court has largely used Defendants' factors.]

18

19

20

21

22

23

24

25

26

27

28

1

~~**JURY INSTRUCTION NO. ____**~~

2

~~**TRADEMARK INFRINGEMENT—AFFIRMATIVE DEFENSE – CONTINUOUS**~~

3

~~**PRIOR USE WITHIN REMOTE GEOGRAPHIC AREA (15 U.S.C. § 1115(b)(5))**~~

4

~~An owner of a registered trademark may not exclude others who began using a confusingly~~

5

~~similar trademark in a geographic area, without knowledge of the owner's prior use of the~~

6

~~trademark elsewhere, and before the owner had applied for registration of the trademark.~~

7

~~The defendants contends that XingKe had the right to use the trademark within the United~~

8

~~States.~~

9

~~The defendants have the burden of proving each of the following by a preponderance of~~

10

~~the evidence:~~

11

~~1.   the defendants continuously used the trademark, without interruption, in the United~~

12

~~States;~~

13

~~2.   the defendants began using the trademark without knowledge of the plaintiff's prior~~

14

~~use elsewhere; and~~

15

~~3.   the defendants used the trademark before the plaintiff applied for registration of the~~

16

~~trademark.~~

17

18

[Court Notes: 9th Cir. Model Instruction No. 15.23.  SinCo has submitted a version of the

19

model instruction; Defendants oppose.  *See* Disp. Instructions at 56 (No. 122).  The Court agrees

20

that the instruction is unnecessary as Defendants are not asserting this specific affirmative

21

defense.]

22

23

24

25

26

27

28

United States District Court
Northern District of California

### ~~JURY INSTRUCTION NO. ____~~

### ~~FALSE DESIGNATION OF ORIGIN – ELEMENTS AND BURDEN OF PROOF~~

~~The plaintiff has brought a claim for false designation of origin pursuant to 15 U.S.C. § 1125(a).  Such a claim requires proof of the same elements as a claim for trademark infringement under 15 U.S.C. § 1114, which I explained to you earlier.~~

[Court Notes: The parties stipulated to this instruction.  However, the Court is not inclined to give the instruction because, as indicated above, the Court is not inclined to mention the claim for false designation of origin.]

**JURY INSTRUCTION NO. ____**

**FALSE ADVERTISING – ELEMENTS AND BURDEN OF PROOF**

The plaintiff has brought a claim for false advertising in this case.  In order to find for the plaintiff on this claim, you must first find that XingKe has made commercial advertisements.  In order for XingKe's statements to be commercial advertisements, you must find:

(1) that XingKe's statements were commercial speech;

(2) that XingKe was in commercial competition with SinCo;

(3) that XingKe's statements were for the purpose of influencing consumers to buy XingKe's goods or services; and

(4) that XingKe's statements were disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion with that industry.

If you find that XingKe made commercial advertisements, in order to find false advertising, you must find each of the following factors to be true by a preponderance of the evidence:

(5) a false statement of fact was made by the defendants in a commercial advertisement about their own product or another's product;

(6) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;

(7) the deception is material, in that it is likely to influence the purchasing decision;

(8) the defendants caused their false statement to enter interstate commerce; and

(9) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendants or by a lessening of the goodwill associated with its products.

[Court Notes: Defendants submitted the instruction; SinCo objects to only a portion of the instruction (essentially, the first four elements above).  *See* Disp. Instructions at 69-70 (No. 124D). The Court agrees with Defendants.  The Ninth Circuit has adopted those elements.  *See Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999) (noting that "the Fifth

United States District Court
Northern District of California

1   Circuit adopted these criteria as 'accurate and sound,' and we, too, adopt them"); *see also Tobinick*

2   *v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017) ("The Lanham Act prescribes liability for false

3   advertising to 'commercial advertising or promotion.'  Commercial advertising or promotion

4   includes '(1) commercial speech; (2) by a defendant who is in commercial competition with

5   plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services[;]' and

6   (4) 'the representations . . . must be disseminated sufficiently to the relevant purchasing public to

7   constitute "advertising" or "promotion" within that industry.'").]

8        [New Court Notes: Now that the Court is including an instruction on the passing off claim,

9   the Court asks the parties to consider whether it makes sense to drop the claim for false

10   advertising.  Both the passing off claim and the false advertising claim are about deceit/fraud.

11   There does not appear to be a difference regarding the compensatory damages sought under either

12   claim, and the false advertisement claim seems to add no benefit to SinCo since punitive damages

13   are available for the latter but not the former.  Given the number of defendants and SinCo's

14   election of statutory damages as to the individual defendants on the trademark infringement claim,

15   it would likely be less confusing to the jury (particularly with the verdict form) to have fewer

16   claims.  The parties shall report back on this issue by Wednesday October 27.]

United States District Court
Northern District of California

78

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

~~**JURY INSTRUCTION NO. ____**~~

~~**COMMON LAW TRADEMARK INFRINGEMENT**~~

~~The plaintiff has brought a claim for common law trademark infringement.~~

~~The test for infringement of a common law trademark is the same as the test for~~ ~~infringement of a federally registered mark.~~

[Court Notes: The parties stipulated to this instruction.  *See* Agreed Instructions at 22. However, the Court is not inclined to give the instruction because, as noted above, the Court is not inclined to reference the claim for common law trademark infringement.]

United States District Court
Northern District of California

United States District Court
Northern District of California

## JURY INSTRUCTION NO. _____

### PASSING OFF – ELEMENTS AND BURDEN OF PROOF

The plaintiff has brought a claim for passing off in this case.  In order to find for the plaintiff on this claim, you must find each of the following factors to be true by a preponderance of the evidence:

    (1) The defendants knowingly made a false representation(s) to purchasers that XingKe's goods were actually those of SinCo;

    (2) A reasonably prudent purchaser would likely have been deceived by the false representation(s); and

    (3) The plaintiff suffered a competitive injury as a result of the false representation(s).

[New Court Notes: SinCo has proposed an instruction.  *See* Docket No. 528 (Prop. Instructions at 3).  The Court has modified the proposed instruction.  *See, e.g.*, *Indus. Indem. Co. v. Apple Comp.*, 79 Cal. App. 4th 817, 829 (1999) ("According to the Restatement Third of Unfair Competition, '[t]he rules stated in this Chapter [on deceptive marketing] and in the following Chapter on the law of trademarks developed largely from English and American common law decisions imposing liability on a seller who diverted trade from another by fraudulently misrepresenting that the goods had been produced by the other.  Liability was originally imposed in an action variously denominated an "action in the nature of an action for deceit," an "action on the case for a deceit," or simply an "action for deceit."  The fraudulent conduct was frequently described as "passing off" or "palming off.""'); *see also* McCarthy on Trademark & Unfair Competition § 25:3 ("The terms 'palming off' and 'passing off' should usually be restricted to the situations where they were originally coined by the common law.  That is, they should be used where there is real proof that defendant subjectively and knowingly intended to confuse buyers of a competitive product."); *Fisher v. Deese*, 794 F.2d 432, 440 (9th Cir. 1986) ("Under California law, a plaintiff claiming unfair competition must 'prove a likelihood of confusion by purchasers as to source.'  Yet this confusion must be of a specific kind: the public must be misled into thinking that the defendant's product is actually the plaintiff's.  In other words, the defendant must be

guilty of 'passing off' his product as the plaintiff's."); *cf. Sinatra v. Goodyear Tire & Rubber Co.*, 435 F.2d 711, 714-15 (9th Cir. 1970) ("Dean Prosser defines the tort of 'passing-off' as involving the basic idea of competing for custom in the trade.  Thus it is: 'The making of some false representation to the public or to third persons, likely to induce them to believe that the goods or services of another are those of the plaintiff. * * * The test laid down in such cases has been whether the resemblance is so great as to deceive the ordinary customer  acting with the caution usually exercised in such transactions, so that he may mistake one for the other.'").

The Court orders the parties to meet and confer to determine whether any additional instructions should be included (*e.g.*, on affirmative defenses) now that the Court is including the passing off claim.  The parties shall report back by Wednesday October 27.]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

~~JURY INSTRUCTION NO. ____~~

~~DAMAGES – BURDEN OF PROOF~~

~~I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that XingKe infringed the asserted claim, you must then determine the amount of money damages to be awarded to compensate for that infringement.~~

~~The amount of those damages must be adequate to compensate SinCo Technologies for the infringement.  A damages award should put SinCo Technologies in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages award are meant to compensate SinCo Technologies and not to punish XingKe.~~

~~SinCo Technologies has the burden to persuade you, by a preponderance of the evidence, of the amount of its damages.  You should award only those damages that SinCo Technologies more likely than not suffered.  While SinCo Technologies is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  SinCo Technologies is not entitled to damages that are remote or speculative.~~

~~Mere difficulty in ascertaining damages is not fatal to SinCo Technologies.  You may base your evaluation of reasonable certainty on opinion evidence. Any doubts regarding the computation of the amount of damages should be resolved against XingKe and in favor of SinCo Technologies.~~

[Court Notes: SinCo has offered this instruction; Defendants object.  *See* Disp. Instructions at 75.  The Court declines to give this instruction.  It is modeled on the N.D. Cal. Model Patent Jury Instructions but the Ninth Circuit has model instructions on damages in trademark cases.]

**JURY INSTRUCTION NO. _____**

**DAMAGES – PROOF**

It is the duty of the Court to instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

For the trademark infringement claim, the plaintiff asks to be awarded the following damages:

      (1) As to XingKe, (a) the plaintiff's actual damages and (b) XingKe's profits.  For the plaintiff to be awarded damages, its actual damages must have been caused by XingKe's misconduct, and/or XingKe's profits must be attributable to its misconduct.

      (2) As to the individual defendants (Mr. Tjoa, Mr. Ng, and Mr. Liew), statutory damages.

For the false advertising claim, the plaintiff asks to be awarded, as to all defendants, (a) the plaintiff's actual damages and (b) XingKe's profits.  As above, for the plaintiff to be awarded damages, its actual damages must have been caused by the defendant's misconduct, and/or XingKe's profits must be attributable to its misconduct.

For the passing off claim, the plaintiff asks to be awarded, as to all defendants, (a) the plaintiff's actual damages, (b) XingKe's profits, and (c) punitive damages.  As above, for the plaintiff to be awarded damages, its actual damages must have been caused by the defendant's misconduct, and/or XingKe's profits must be attributable to its misconduct.


[Court Notes: 9th Cir. Model Instruction No. 5.1.  The Court has modified the instruction.]

[New Court Notes: The Court has modified this instruction because it is now including the passing off claim.  The Court has distinguished which damages are being sought for which claims and against which defendants.  As the Court noted above, this may be a reason to drop the false advertising claim.

No party has raised the issue of whether the jury needs to be instructed that damages

cannot be "double counted" – *e.g.*, if XingKe is held liable for both trademark infringement and passing off, SinCo cannot be awarded its actual damages and XingKe's profits twice.  The parties should address whether the jury needs to be instructed in double counting or whether this is something that could be addressed post-trial, if necessary.  The parties should also address whether there is an issue of double counting if the individual defendants were held liable both for trademark infringement (statutory damages) and passing off (compensatory-type damages).  The parties shall report back by October 27.]

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ~~JURY INSTRUCTION NO. ____~~

## ~~DAMAGES – TRADEMARK INFRINGEMENT – ACTUAL OR STATUTORY~~

## ~~NOTICE~~

~~In order for plaintiff to recover damages for the trademark infringement claim, the plaintiff has the burden of proving by a preponderance of the evidence that defendant had either statutory or actual notice that the plaintiff's trademark was registered.~~

~~The defendant had statutory notice if:~~

~~1.   the plaintiff displayed the trademark with the words "Registered in U.S. Patent and Trademark Office," or~~

~~2.   the plaintiff displayed the trademark with the words "Reg. U.S. Pat. & Tm. Off.," or~~

~~3.   the plaintiff displayed the trademark with the letter R enclosed within a circle, thus ®.~~

[Court Notes: 9th Cir. Model Instruction No. 15.26.  The Court is not inclined to give this instruction as Defendants do not argue that they did not know about the registration of the trademarks or that statutory notice was lacking.]

**JURY INSTRUCTION NO. ____**

**DAMAGES – PLAINTIFF'S ACTUAL DAMAGES – FACTORS**

As stated above, for some of the claims, the plaintiff asks to be awarded its actual damages caused by a defendant's misconduct.  The plaintiff has the burden of proving actual damages by a preponderance of the evidence.  Damages means the amount of money which will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant's violation of the law (*e.g.*, trademark infringement, false advertising, or passing off).

You should consider the following:

(1) The injury to the plaintiff's reputation;

(2) The injury to the plaintiff's goodwill, including injury to the plaintiff's general business reputation;

(3) The lost profits that the plaintiff would have earned but for XingKe's infringement.  Profit is determined by deducting all expenses from gross revenue;

(4) The expense of preventing customers from being deceived;

(5) The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement; and

(6) Any other factors that bear on plaintiff's actual damages.

When considering prospective costs (*e.g.*, cost of future advertising, expense of preventing customers from being deceived), you must not overcompensate.  Accordingly, your award of such future costs should not exceed the actual damage to the value of the plaintiff's mark at the time of the infringement by the defendant.


[Court Notes: 9th Cir. Model Instruction No. 15.27.  The parties have competing versions of this instruction.  *See* Disp. Instructions at 77-78, 83-84 (Nos. 125A, 127).  For the most part, SinCo has followed the model instruction.  The Court agrees that the model instruction should largely be followed.  (The Court has made some modifications.)

To the extent Defendants suggest that every factor above except for (3) should be excluded, the Court does not agree.  Although SinCo's damages expert did not provide testimony

United States District Court
Northern District of California

on the other factors, that does not mean that there will not be another witness who can testify as to such.

To the extent SinCo has asked the Court to include as a factor "The cost for the plaintiff to rebuild a replacement manufacturing facility," the Court has ruled on Defendants' MIL No. 1 excluding this aspect of the testimony of SinCo's expert, Dr. Cox.

To the extent SinCo has asked the Court to include as a factor "The cost of defending the plaintiff's trademarks in the United States Patent and Trademark Office in the form of oppositions to Defendants' trademark applications," this does not appear to be cognizable damages, and SinCo has presented no case law so stating.]

[New Court Notes: The Court has made a modification given that it is now including an instruction on the passing off claim.]

1

~~**JURY INSTRUCTION NO. \_\_\_\_**~~

2

~~**DAMAGES—PLAINTIFF'S ACTUAL DAMAGES—MITIGATION**~~

3

~~The plaintiff has a duty to use reasonable efforts to mitigate its actual damages.  To~~

4

~~mitigate means to avoid or reduce damages.~~

5

~~XingKe has the burden of proving by a preponderance of the evidence:~~

6

~~1. that the plaintiff failed to use reasonable efforts to mitigate damages; and~~

7

~~2. the amount by which damages would have been mitigated.~~

8

9

[Court Notes: 9th Cir. Model Instruction No. 5.3.  Defendants have offered the instruction;

10

SinCo objects.  *See* Disp. Instructions at 79-80 (No. 125B).

11

SinCo's first objection is that the instruction improperly

12

implied that if Defendants simply stopped suing the mark all sales

13

would return to SINCO.   The facts of this case and the type of products and related lifecycle demonstrate that once the contract for

14

mass production of these unique parts that are product specific, (i.e., only one customer in the world for each specific part).  If as alleged Defendants passed themselves off as SINCO and converted less than

15

a dozen critical accounts each forth tens of millions of dollars, resulting in SINCO losing all U.S. business with its previous

16

customers, how could SINCO have mitigated damages?

17

Disp. Instructions at 79.  The Court overrules the objection since this is a fact-based argument that

18

SinCo may make to the jury.

19

SinCo's second objection is that Defendants waived the affirmative defense.  But there is

20

no apparent prejudice to SinCo if the Court were to allow the defense; thus, the Court shall permit

21

it.]

22

[New Court Notes: The Court has reconsidered its preliminary ruling.  It shall not give the

23

instruction because Defendants did not assert the affirmative defense in their answers and thus

24

waived it.]

25

26

27

28

United States District Court
Northern District of California

**JURY INSTRUCTION NO. \_\_\_\_**

**DAMAGES – DEFENDANT'S PROFITS**

For some of the claims, the plaintiff is entitled, in addition to actual damages, to any profits earned by XingKe that are attributable to XingKe's violation of the law (*i.e.*, trademark infringement or false advertising), which the plaintiff proves by a preponderance of the evidence. You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting all expenses from gross revenue.

Gross revenue is all of XingKe's receipts from using the trademark in the sale of a product. The plaintiff has the burden of proving the XingKe's gross revenue by a preponderance of the evidence.

Expenses are all operating and production costs incurred in producing the gross revenue. XingKe has the burden of proving the expenses and the portion of the profit attributable to factors other than its violation of the law (*i.e.*, trademark infringement or false advertising) by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of the goods using the trademark is attributable to factors other than use of the trademark, you should find that the total profit is attributable to the infringement.


[Court Notes: 9th Cir. Model Instruction No. 15.29.  The parties have offered competing instructions.  *See* Disp. Instructions at 87-90 (Nos. 130-130A).  The Court adheres to the model instruction, with some modifications.

The Court acknowledges that the Seventh Amendment does not provide a right to a jury trial on a defendant's profits.  *See* 9th Cir. Model Instruction No. 15.29, Comment; *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1075 (9th Cir. 2015) ("A claim for disgorgement of profits under § 1117(a) is equitable, not legal.").  On the other hand, 15 U.S.C. § 1117(a) provides that "[t]he court shall assess such profits and damages *or* cause the same to be assessed under its direction."  15 U.S.C. § 1117(a) (emphasis added).  The Court is inclined to

allow the jury to opine on the issue (*i.e.*, provide an advisory opinion).  *See* Fed. R. Civ. P. 39(c) ("In an action not triable of right by a jury, the court, on motion or on its own: (1) may try any issue with an advisory jury; or (2) may, with the parties' consent, try any issue by a jury whose verdict has the same effect as if a jury trial had been a matter of right, unless the action is against the United States and a federal statute provides for a nonjury trial.").]

[New Court Notes: The Court has made a modification given that it is now including an instruction on the passing off claim.  The Court assumes that the only defendant who has allegedly made profits is XingKe (*i.e.*, Sinco's lost sales).]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ~~JURY INSTRUCTION NO. ____~~

## ~~DAMAGES – STATUTE OF LIMITATIONS~~

[Court Notes: The parties have effectively provided competing instructions.  *See* Disp. Instructions at 81-92 (Nos. 126-126A).  They also disagree as to whether the statute of limitations for a Lanham Act claim is three years or four years.  *Compare, e.g.*, *Karl Storz Endoscopy-Am., Inc. v. Surgical Techs., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002) (stating that the "Lanham Act claims are subject to a three-year statute of limitations which began to run upon [plaintiff's] actual or constructive knowledge of the wrong"; citing in support California Code of Civil Procedure § 338(d) which has a limitations period of three years for fraud claims), *with Internet Specialties West, Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 990 n.2 (9th Cir. 2009) (stating that "[n]either party disputes the imputation of the four-year limitations period from California trademark infringement law, and we agree that this was the correct period to use"), *with Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1189-90 (N.D. Cal. 2015) (indicating that another possible limitations period is two years under California Code of Civil Procedure § 339, given that trademark infringement sounds in tort).  The Court is inclined not to give any instruction on the statute of limitations because it appears SinCo is seeking damages for, *e.g.*, trademark infringement from January 1, 2016, and on, and it initiated this lawsuit on September 22, 2017.  *Cf. Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 837 (9th Cir. 2002) (indicating that, "'[u]sually, infringement is a continuing wrong, and the statute of limitations is no bar except as to damages beyond the statutory period'").]

**JURY INSTRUCTION NO. \_\_\_\_**

**DAMAGES – STATUTORY DAMAGES**

For the trademark infringement claim against the individual defendants (Mr. Tjoa, Mr. Ng, and Mr. Liew), the plaintiff seeks only statutory damages.  You must consider each individual defendant separately.

For statutory damages against an individual defendant, the plaintiff must first prove the following facts by a preponderance of the evidence:

      (1) the individual defendant intentionally used a counterfeit mark in commerce;

      (2) knowing the mark was counterfeit;

      (3) in connection with the sale, offering for sale, or distribution of goods; and

      (4) its use was likely to confuse or deceive.

A counterfeit mark is a copy that is identical or substantially indistinguishable from the plaintiff's trademark that is registered on the Principal Register of the United States Patent and Trademark Office.  A counterfeit mark does not include any mark used on or in connection with goods or services of which the manufacturer or producer was, at the time of the manufacture or production in question, authorized to use the mark for the type of goods or services so manufactured or produced, by the holder of the right to use such mark.

~~An infringement is considered willful when the plaintiff has proved both of the following elements by a preponderance of the evidence: (1) the defendant engaged in acts that infringed the trademark; and (2) the defendant knew that those acts infringed the trademark, or the defendant acted with reckless disregard for, or willful blindness to, the trademark holder's rights.~~

Regarding likelihood of confusion, you should refer to Instruction No. [xxx].

If you find that the plaintiff proved the elements above as to an individual defendant, then you must consider whether, and to what extent, statutory damages should be awarded.

Statutory damages are damages established by Congress in a law known as the Lanham Act.  The purpose of statutory damages is to: compensate the trademark owner, penalize the counterfeiter, and deter future trademark counterfeiting.  You may award statutory damages between $1,000 and $200,000 for each trademark that the plaintiff proves an individual defendant

1    used, for each type of goods sold, offered for sale, or distributed.

2          If the plaintiff proves that the individual defendant's use of the counterfeit trademark was

3    willful, then you may, but are not required to, increase the statutory damage award to a maximum

4    of $2,000,000 per type of goods sold, offered for sale, or distributed.  Willful means that the

5    individual defendant knew that his acts infringed the trademark, or acted with reckless disregard or

6    willful blindness to the trademark holder's rights.

7

8          [Court Notes: SinCo has offered an instruction; Defendants have objected.  *See* Disp.

9    Instructions at 85 (No. 128).  The Court has modified the instruction as SinCo's instruction is

10   essentially meaningless to the jury.  In its modification, the Court takes into account Defendants'

11   proposed instructions on counterfeit marks, to which SinCo objected.  *See* Disp. Instructions at 66-

12   68 (Nos. 124A-124C).  The modification is not duplicative because SinCo has indicated that it will

13   seek statutory damages.  The Court also takes into account the Eleventh Circuit's pattern jury

14   instruction on counterfeiting.  Finally, the Court has taken guidance from the Ninth Circuit Model

15   Instruction on willful copyright infringement (No. 17.37) in defining "willfulness."  (SinCo has

16   proposed an instruction on willful infringement, *see* Disp. Instructions at 86 (No. 129), which

17   provides similar content but which is a little more over the top.)  The parties do not dispute that

18   statutory damages are for the jury to decide.  *Cf. Feltner v. Columbia Pictures Tv*, 523 U.S. 340,

19   355 (1998) ("hold[ing] that the Seventh Amendment provides a right to a jury trial on all issues

20   pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the

21   amount itself").]

22         [New Court Notes: The Court has modified this instruction slightly to provide clarity as to

23   which claim and which defendants.]

24

25

26

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

**JURY INSTRUCTION NO. ____**

**PUNITIVE DAMAGES**

For the passing off claim only, if you decide that XingKe's or an individual defendant's conduct constituted passing off and caused the plaintiff harm, you must decide whether that conduct justifies an award of punitive damages.  The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against an individual defendant only if the plaintiff proves by clear and convincing evidence that the individual defendant engaged in that conduct with malice, oppression, or fraud.

You may award punitive damages against XingKe only if the plaintiff proves that XingKe acted with malice, oppression, or fraud. To do this, the plaintiff must prove one of the following by clear and convincing evidence:

(1) That the malice, oppression, or fraud was conduct of one or more officers, directors, or managing agents of XingKe, who acted on behalf of XingKe; or

(2) That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of XingKe; or

(3) That one or more officers, directors, or managing agents of XingKe knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

"Malice" means that a defendant acted with intent to cause injury or that a defendant's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another.  A defendant acts with knowing disregard when the defendant is aware of the probable dangerous consequences of the defendant's conduct and deliberately fails to avoid those consequences.

"Oppression" means that a defendant's conduct was despicable and subjected the plaintiff to cruel and unjust hardship in knowing disregard of its rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be

looked down on and despised by reasonable people.

"Fraud" means that a defendant intentionally misrepresented or concealed a material fact and did so intending to harm the plaintiff.

An employee is a "managing agent" if the employee exercises substantial independent authority and judgment in corporate decisionmaking such that the employee's decisions ultimately determine corporate policy.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors separately for each defendant in determining the amount:

    (a) How reprehensible was that defendant's conduct? In deciding how reprehensible a defendant's conduct was, you may consider, among other factors:

        1. Whether the conduct caused physical harm;

        2. Whether the defendant disregarded the health or safety of others;

        3. Whether the plaintiff was financially weak or vulnerable and the defendant knew the plaintiff was financially weak or vulnerable and took advantage of it;

        4. Whether the defendant's conduct involved a pattern or practice; and

        5. Whether the defendant acted with trickery or deceit.

    (b) Is there a reasonable relationship between the amount of punitive damages and the plaintiff's harm or between the amount of punitive damages and potential harm to the plaintiff that the defendant knew was likely to occur because of its or his conduct?

    (c) In view of that defendant's financial condition, what amount is necessary to punish it or him and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because a defendant has substantial financial resources. Any award you impose may not exceed that defendant's ability to pay.

Punitive damages may not be used to punish a defendant for the impact of its or his alleged misconduct on persons other than the plaintiff.

[Court Notes: SinCo has proposed this instruction; Defendants have objected.  The Court shall not give the instruction.  As Defendants note, the Ninth Circuit has stated: "punitive damages are not available under the Lanham Act."  *Duncan v. Stuetzle*, 76 F.3d 1480, 1490 (9th Cir. 1996). *See also ZAZU Designs v. L'Oreal S.A.*, 979 F.2d 499, 507 (7th Cir. 1992) ("Punitive damages are problematic because the Lanham Act, although providing for the trebling of compensatory damages [under § 1117(b) where there is a counterfeit mark], forbids other penalties.").  SinCo did not expressly ask for treble damages in the SAC.]

[New Court Notes: The Court is now including a punitive damages instruction because of the passing off claim.  However, the Court uses CACI 3947 as the base instruction for punitive damages given that the passing off claim is based on state law.]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### ~~JURY INSTRUCTION NO. ____~~

### ~~RECOVERY OF ATTORNEYS' FEES~~

~~If you find that Defendants committed trademark infringement, false advertising, or unfair competition, you must determine whether SinCo Technologies is entitled to attorneys' fees. The law permits a jury to award attorneys' fees in "exceptional cases." An "exceptional case" is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. There is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised.'~~

[Court Notes: SinCo has proposed this instruction; Defendants have objected. *See* Disp. Instructions at 91 (No. 131). The Court shall not give the instruction. This is a matter for the Court to decide, not the jury. *See* 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.").]

97

1

2

3

4

5

6

7

8

9

10

11

12

United States District Court
Northern District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY INSTRUCTION NO. ____**

**DUTY TO DELIBERATE**

When you begin your deliberations, elect one member of the jury as your foreperson who will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict, whether guilty or not guilty, must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Perform these duties fairly and impartially. Do not allow personal likes or dislikes, sympathy, prejudice, fear, public opinion, or biases, including unconscious biases, to influence you. You should also not be influenced by any person's race, color, religion, national ancestry, or gender, sexual orientation, profession, occupation, celebrity, economic circumstances, or position in life or in the community.

Do not be afraid to examine any assumptions you or other jurors have made which are not based on the evidence presented at trial. Please do not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be – that is entirely up to you.

It is your duty as jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement if you can do so. During your deliberations, you should not hesitate to reexamine your own views and change your opinion if you become persuaded that it is wrong.

1

2          [Court Notes: 9th Cir. Model Instruction No. 3.1.  The Court has modified the instruction.]

United States District Court
Northern District of California

**JURY INSTRUCTION NO. _____**

**CONSIDERATION OF EVIDENCE – CONDUCT OF THE JURY**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

> Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about

United States District Court
Northern District of California

this case, the law, or the people involved – including the parties, the witnesses or the lawyers – until you have been excused as jurors.  If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings[, and a mistrial could result that would require the entire trial process to start over].  If any juror is exposed to any outside information, please notify the court immediately.

[Court Notes: 9th Cir. Model Instruction No. 3.2.]

**JURY INSTRUCTION NO. \_\_\_\_**

**COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone – including me – how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

[Court Notes: 9th Cir. Model Instruction No. 3.3.]

**JURY INSTRUCTION NO. \_\_\_\_**

**RETURN OF VERDICT**

A verdict form has been prepared for you.  [Explain verdict form as needed.]  After you have reached unanimous agreement on a verdict, your [presiding juror] [foreperson] should complete the verdict form according to your deliberations, sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.

[Court Notes: See 9th Cir. Model Instruction No. 3.5.]