1  LAEL D. ANDARA (SBN 215416)
   ROPERS MAJESKI PC
2  545 Middlefield Road, Suite 175
   Menlo Park, CA 94025
3  Telephone:    650.364.8200
   Facsimile:    650.780.1701
4  Email:        lael.andara@ropers.com

5  *Attorney for Plaintiff*
   SINCO TECHNOLOGIES PTE LTD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SINCO TECHNOLOGIES PTE LTD,<br><br>Plaintiff,<br><br>v.<br><br>SINCO ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS (DONGGUAN) CO., LTD.; XINGKE ELECTRONICS TECHNOLOGY CO., LTD.; SINCOO ELECTRONICS TECHNOLOGY CO., LTD.; MUI LIANG TJOA (an individual); NG CHER YONG aka CY NG (an individual); and LIEW YEW SOON aka MARK LIEW (an individual),<br><br>Defendants. | Case No. 3:17CV5517<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>[Fed. Rules Civ. Proc. § 55(b)(2)]<br><br>Date:     TBD<br>Time:     TBD<br>Courtroom: 5<br>Judge:    Edward M. Chen<br><br>Trial Date:    11/01/2021<br>Date Action Filed: 9/22/2017 |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF FACTS .................................................................................................. 1

III. LEGAL ARGUMENT ........................................................................................................ 4

    A.  Analysis of the *Eitel* Factors Support Default Judgment ....................................... 4

    B.  Appropriateness of Remedy ..................................................................................... 7

        1.  Statutory Damages .......................................................................................... 7

        2.  Injunctive Relief ............................................................................................. 9

        3.  Plaintiff is Entitled to Costs .......................................................................... 10

IV. CONCLUSION ................................................................................................................. 10

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Amini Innovation Corp. v. KTY Int'l Mktg.*,
  768 F. Supp. 2d 1049 (C.D. Cal. 2011)..................................................................................10

*Century 21 Real Estate Corp. v. Sandlin*,
  846 F.2d 1175 (9th Cir. 1988)..................................................................................................9

*Craigslist, Inc. v. Naturemarket, Inc.*,
  694 F. Supp. 2d 1039 (N.D. Cal. 2010) ...................................................................................7

*Deckers Outdoor Corp. v. Ozwear Connection Pty, Ltd.*
  (C.D. Cal. Sep. 18, 2014) ......................................................................................................10

*E.I. Du Pont de Nemours and Co. v. Drabek*
  (C.D. Cal. 2013) ......................................................................................................................8

*Eitel v. McCool*,
  782 F.2d 1470 (9th Cir. 1986)........................................................................................4, 5, 7

*Elektra Entm't Grp., Inc. v. Crawford*,
  226 F.R.D. 388 (C.D. Cal. 2005) .............................................................................................4

*Fair Hous. of Marin v. Combs*,
  285 F.3d 899 (9th Cir. 2002)....................................................................................................6

*Herb Reed Enters., LLC v. Fla Entm't Mgmt., Inc.*,
  736 F.3d 1239 (9th Cir. 2013)..................................................................................................9

*Landstar Ranger, Inc. v. Parth Enters.*,
  725 F. Supp. 2d 916 (C.D. Cal. 2010) .....................................................................................6

*Lindy Pen Co. v. Bic Pen Corp.*,
  982 F.2d 1400 (9th Cir. 1993)..........................................................................................7, 10

*OtterBox v. Treefrog Developments*,
  2014 WL 1512189 (C.D. Cal. 2014) .......................................................................................8

*PepsiCo, Inc. v. Cal. Sec. Cans*,
  238 F. Supp. 2d 1172 (C.D. Cal. 2002) ...................................................................................6

*PepsiCo, Inc. v. Triunfo-Mex, Inc.*,
  189 F.R.D. 431 (C.D. Cal. 1999) .............................................................................................4

*Philip Morris U.S.A. Inc. v. Castworld Prods.*,
  219 F.R.D. 494 (D. Cal., 2003) ...............................................................................................8

*Polo Fashions v. Dick Bruhn*,
    793 F2d 1132 (9th Cir. 1986)...........................................................................................7

*Sigma Enters. v. Alluring Deals*,
    LLC, 2017 U.S. .........................................................................................................9, 10

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001)........................................................................................9

*TeleVideo Sys., Inc. v. Heidenthal*,
    826 F.2d 915 (9th Cir. 1987).........................................................................................4

*Wecosign, Inc. v. IFG Holdings, Inc.*,
    845 F. Supp. 2d 1072 (C.D. Cal. 2012).........................................................................6

*Winter v. NRDC, Inc.*,
    555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) ..................................................9

**STATUTES**

15 U.S.C. §1114 of the Lanham Act ......................................................................................4

15 U.S.C. §1116 of the Lanham Act ...................................................................................7, 9

15 U.S.C. §1117 of the Lanham Act .......................................................................... 1, 6 - 10

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 55 (b) ..............................................................................1, 4

I.  **INTRODUCTION**

Plaintiff SinCo Technologies Pte. Ltd., ("SINCO") brings this motion for default judgment against Defendant Sincoo Electronics Technology Co., Ltd. ("SINCOO") based on the claims set forth in Plaintiff's Second Amended Complaint. (ECF Dkt. No. 23).

Default was entered against SINCOO on **December 17, 2018.** (ECF Dkt. No. 110). SINCOO did not participate in this action thereafter. Plaintiff has satisfied the requirements of Federal Rules of Civil Procedure 55(a). Consequently, Plaintiff respectfully requests the Court grant Plaintiff's Application for Default Judgment barring SINCOO from using the "SinCo" and "Sincoo" (or "SinCoo") marks in commerce to avoid any present or future likelihood of confusion and statutory damages pursuant to 15 U.S.C. §1117(c) in the amount of $800,000.00[1].

II. **STATEMENT OF FACTS**

Founded in 1995, SINCO is a global market leader with recognized expertise in the development, design and sourcing of electronic components to United States ("U.S.") companies. SINCO has steadily gained a favorable reputation in the U.S. for delivering the best in technology, quality, research and development, service and delivery, and it holds several U.S. trademarks related to these offerings. SINCO has spent years developing goodwill and consumer recognition via supplying component parts for electronic devices designed and sold in the U.S. market. (ECF Dkt. No. 56 at p.12, ¶ 1).

SINCO is the owner of at least four design and word marks (collectively, the "SINCO Marks"), all registered with the United States Patent and Trademark Office ("USPTO") and appearing on the Principal Register. SINCO began using the SINCO Marks, and related symbol, font and colors on or before **May 1, 1996**. These marks include U.S. Trademark Registrations Nos. 3,188,537; 4,524,165; 4,524,172; and 4,524,173. (ECF Dkt. No. 23, p.4, ¶ 9).

Defendant Xingke Electronics Technology Co., Ltd., ("XINGKE") uses "Sincoo" as its English name and operates www.sincoocn.com. On that website, it displays the "SinCo"

---

[1] Per 15 U.S.C. § 1117(c)(1), SINCO's four federally registered marks entitle it to not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers.

1   trademark on awards issued by companies such as ZTE. In doing so, it represents the awards as
2   their own and asserts that they have been in operation since 2000. (*See* SINCO575129-
3   SINCO575150; and SINCO575158) (ECF Dkt. No. 23 at p.8-9, ¶ 22) *(Declaration of Lael*
4   *Andara in support of Motion for Default Judgment ("Andara Decl.") at Ex. 2).*



SINCOO is a company organized and existing in P.R.C. It is headquartered at Guangdong, Dongguan, Huai Bei Road, Huai De District, P.R.C. This allegation is based on SINCOO employee business cards distributed in the United States to SINCO customers as shown below:

 

(ECF Dkt. No. 23 at p.9-10, ¶ 24) (*Andara Decl.* at Ex. 1.)

Defendant Mui Liang Tjoa--who became the CEO of XINGKE after the acquisition by KOTL--established in his trial testimony that SINCOO is Defendant XINGKE's tenant.

> A. What I know the facility has a wastewater treatment and has a license.
> Q. Who holds the license?
> A. The license was hold by the tenants, a company called SinCoo.
> Q. How do you spell that?
> A. S-I-N-C-O-O.

(Nov. 8, 2021, Trial Transcript, 762: 15-21) (*Andara Decl.* at Ex. 5.) The SINCOO website indicates that it is in some way under the same ownership as XINGKE. (*Andara Decl.* at Ex. 2 at SINCO0962201 and Tjoa Testimony *Andara* Decl. at Ex. 7 at 198:1-6 and 348:13-23)

Plaintiff transmitted the Summons, First Amended Complaint with Exhibits A through R, and Chinese translations thereof, in the above entitled case by the only method allowed in the P.R.C., as provided for in the Convention on the Service Abroad of Judicial and Extrajudicial Documents in the Civil or Commercial Matters ("Hague Service Convention") on **May 9, 2018.** This is evidenced by the submission to the P.R.C. central authority. (ECF Dkt. No. 104 at p.2).

On **February 16, 2018**, via email, Mr. Andara emailed Tom Chen, Defendant SINCOO's Chief Operating Officer ("COO"), regarding the company's violation of SINCO's trademark rights in its "SinCo" trademark and directed them to cease and desist or be subject to legal penalty. (ECF Dkt. No. 104 at p.2) (*Andara Decl.* at Ex. 3). Mr. Chen responded on **February 27, 2018**. (*Id.* at Ex. 4.) A follow-up letter was sent to Mr. Chen on **March 8, 2018**, concerning Plaintiff's request to meet in person and discuss the matter before filing suit. (*Id.* at Ex. 6). On **April 25, 2018**, SINCO sent SINCOO the Summons, First Amended Complaint with Exhibits A through R, and Chinese translations thereof, with two copies of Waiver of Service of Summons and a Notice and Request to Waive Service of Summons via FedEx. The package was refused by the recipient. (ECF Dkt. No. 104 at p.2).

///

///

## III. LEGAL ARGUMENT

Federal Rule of Civil Procedure 55(b) authorizes the Court to enter a default judgment after a default is entered against a party. Default judgment by the court is required when the claim is for an amount that is not certain or capable of being made certain or made certain by computation. *Elektra Entm't Grp., Inc. v. Crawford*, 226 F.R.D. 388, 391 (C.D. Cal. 2005). The Court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." F.R.C.P. 55(b). The court, in exercising its discretion to grant entry of a default judgment, should consider the following factors: (1) the substantive merits of the plaintiff's claim; (2) the sufficiency of the complaint; (3) the amount of money at stake; (4) the possibility of prejudice to plaintiff if relief is denied; (5) whether default was the result of excusable neglect; and (6) the strong policy of the Federal Rules that favors decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999).

### A. Analysis of the *Eitel* Factors Support Default Judgment

The following analysis of the six *Eitel* factors weighs in favor of entering a default judgment against SINCOO in this matter.

***First***, Plaintiff will be prejudiced if relief is denied as SINCOO failed to participate in this action; thus, Plaintiff's only recourse is a default judgment against them. As to the ***second*** and ***third*** factors, SINCO presents a meritorious, sufficiently pleaded substantive claim and listed all the essential facts and elements as to each of its causes of action against SINCOO. Specifically, the Complaint includes a key cause of action for Federal Trademark Infringement under 15 U.S.C. § 1114 of the Lanham Act. (ECF Dkt. No. 23.) After a default has been entered by the court clerk, the well-pled factual allegations of the Complaint are taken as true, except for those allegations relating to damages. See *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Plaintiff properly alleges the necessary elements for a cause of action for trademark infringement in violation of section 32 of the Lanham Act. The Complaint identifies Plaintiff's

ownership of and exclusive rights to use the incontestable and registered SINCO Marks. (ECG Dkt. No. 23 at p.4, ¶ 9). SINCOO is liable for infringement of the SINCO Marks due to strikingly similar misuse as its lessor, XINGKE. As XINGKE's tenant, SINCOO used the SINCO marks—without SINCO's consent—in connection its U.S. customers.

For example, in his **January 17, 2019**, deposition, Mr. Tjoa confirmed that SINCOO and XINGKE were not competitors; instead, the two worked on different elements of the same projects—with the same end U.S. customers:

> Q. *I mean, if you confirmed that they are competing with you for the same customers, is this something you would evict them for?*
>
> A. **They are not really competing with us on the same parts. They do metals.**
>
> Q. *Even if it's the same customers?*
>
> A. **Yes**. *That's okay.*
>
> Q. *Do you understand that they are working on the same end product? They are just providing different parts to that end product for the same customer?*
>
> A. **Yes**.
>
> Q. *Do you understand that?*
>
> A. **They do metal. We do plastic and silicons.** *I think that's fine.*

(January 17, 2019, Tjoa Deposition, 216:3-19) (*Andara Decl.* at Ex.7.)

Defendants SINCOO and XINGKE worked in concert on the same projects that caused confusion in the relevant marketplace and amongst U.S. consumers, as evidenced through their own admissions. Plaintiff's Complaint is consistent with the fact that SINCOO's use of the SINCO Marks is likely to cause confusion, mistake, or to deceive customers and has thereby caused damage to Plaintiff. (ECF Dkt. No. 23 at p.44-45, ¶¶ 181-191.) Notably, this Court issued a preliminary injunction on **October 30, 2018**, against Defendants XINGKE and SINCOO from using "SinCo" and "Sincoo" (or "SinCoo"), as the terms are "extremely similar to 'SinCo,' both in spelling and phonetically. ("[T]he Court also [found] a reasonable likelihood of consumer confusion to justify a preliminary injunction"). (ECF Dkt. No. 86 at p.9, ¶¶ 16-23).

Accordingly, the second and third *Eitel* factors likewise favor of default judgment.

The *fourth* factor requires the Court to "consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). Pursuant to 15 U.S.C. §1117, the sum of $800,000 is at stake; while not an insignificant amount, it is small and certain enough to make this matter appropriate for resolution by default judgment, as compared to the $11million USDD the Jury found as to XINGKE. SINCO also requests a permanent injunction barring SINCOO from using "SinCo" and "Sincoo" (or "SinCoo") marks in U.S. commerce to avoid any present or future confusion.

The *fifth* factor involves a dispute concerning material facts. "Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012). Moreover, since the clerk of the court entered default against SINCOO on **December 17, 2018** (ECF Dkt. No. 110), there can be no possibility of dispute as to any material facts in the case. (*Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (once the Clerk of Court enters default, all well-pleaded allegations regarding liability are taken as true except as to the amount of damages).

The *sixth* factor considers whether the failure to respond was the result of excusable neglect. This factor favors a default judgment when the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit. *Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 921-22 (C.D. Cal. 2010) (concluding that this factor favored default judgment and the "possibility of excusable neglect is remote" where defendant had been properly served). There is no evidence the defaults resulted from excusable neglect as Defendant SINCOO have failed to file an answer or otherwise make an appearance in this case. Additionally, on **February 16, 2018**, via email, Mr. Andara emailed Tom Chen, Defendant SINCOO's Chief Operating Officer ("COO"), regarding the company's violation of SINCO's trademark rights in its "SinCo" trademark and directed them to cease and desist or be subject to legal penalty. (ECF Dkt. No. 104 at p.2) (*Andara Decl.* at Ex. 3). Mr. Chen responded to Mr. Andara's **February 16, 2018**, email on **February 27, 2018**. (*Andara Decl.* at Ex. 3.) A follow-up letter was sent to Mr. Chen on **March 8, 2018**, concerning Plaintiff's request to meet in person and discuss the matter before filing suit. (*Id.* at Ex. 6). On **April 25, 2018**, SINCO sent SINCOO the Summons, First

- 6 -

PLAINTIFF'S MPA ISO ITS MOTION FOR ATTORNEY FEES
3:17CV5517

Amended Complaint with Exhibits A through R, and Chinese translations thereof, with two copies of Waiver of Service of Summons and a Notice and Request to Waive Service of Summons via FedEx. The package was refused by the recipient. (ECF Dkt. No. 104 at p.2). Thus, the sixth factor weighs in favor of default judgment as Plaintiff's properly noticed and served SINCOO leaving no possibility for excusable neglect.

The ***seventh*** and final factor "examines whether the strong policy favoring deciding cases on the merits prevents a court from entering default judgment." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Notwithstanding the strong policy presumption in favor of a decision on the merits, SINCOO's failure to participate in this action makes that impossible and renders default judgment appropriate.

Thus, since the *Eitel* factors support a default judgment, the next question turns to the damages recoverable by SINCO.

### B. Appropriateness of Remedy

If Plaintiff prevailed on the merits of its claims against SINCOO, Plaintiff would have been entitled to treble damages, disgorgement of profits, and attorneys' fees and costs under the Lanham Act. 15 U.S.C. §1117(a); *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir. 1993). Yet, due to SINCOO's failure to participate, it did not provide a shred of evidence as to its sales and profits, either through discovery or otherwise. Thus, Plaintiff lacks information sufficient to determine the exact amount of SINCOO's profits or the amount of counterfeit goods actually sold by them.

#### 1. Statutory Damages

As an alternative form of relief, Plaintiff asks the Court to award it statutory damages pursuant to 15 U.S.C. §1117(c). "The purpose of section 1117 is to take all the economic incentives out of trademark infringement." *Polo Fashions v. Dick Bruhn*, 793 F2d 1132, 1135 (9th Cir. 1986). Moreover, section 1117(c) of the Lanham Act provides, in pertinent part:

> *In a case involving the use of a counterfeit mark (as defined in section 34(d) (15 U.S.C. 1116(d)) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with*

> *the sale, offering for sale, or distribution of goods or services in the amount of– (1) not less than $1,000 or more than $ 200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just*

(15 U.S.C. § 1117(c)).

Since the focus of the statutory damages provision under §1117(c) is one of deterrence, statutory damages do not need to equal the amount of a plaintiff's actual damages. *Philip Morris U.S.A. Inc. v. Castworld Prods*. ["*Phillip Morris*"], 219 F.R.D. 494, 501 (D. Cal., 2003) (Court entered default judgment against the defendant and awarded statutory damages to the plaintiff after the defendant failed to file any sort of response to the plaintiff's complaint. Plaintiff was awarded $2,000,000 in statutory damages based on the infringement of the plaintiff's two federally registered trademarks).

Statutory damages have been widely construed, usually resulting in awards between $25,000 and $2,000,000 per mark counterfeited. See *OtterBox v. Treefrog Developments*, 2014 WL 1512189 (C.D. Cal. 2014) (Awarding $35,000 for evidence of 11 counterfeit items sold); *E.I. Du Pont de Nemours and Co. v. Drabek*, (C.D. Cal. 2013) (awarding $25,000 per product bearing plaintiff's mark for a total of $525,000 where plaintiff failed to present evidence regarding the extent of sales and evidence that defendant sold infringing products to a wide market); See also *Sream v. T and H Investments*, 5:14-cv-00022-JGB-SP at DE 38 (awarding $157,000 for up to 6 products sold/displayed, vacated on other grounds); See also *Sream v. Reeves*, 5:14-cv-1321-JGB-SP at DE 20 (awarding $54,211 on evidence of one counterfeit product sold/displayed).

Consistent with the outcome in *Philip Morris*, Plaintiff seeks to discourage SINCOO to use the SINCOO name in any manner and stop them from taking the advantage of this substantially similar name to divert business from SINCO. Plaintiffs made several unsuccessful attempts to establish contact with Defendant—including sending a series of prelitigation demands—to no avail. See **February 16, 2018** and **March 8, 2018** emails to SINCOO representatives) (*Andara Decl.* at Exs. 3 and 6).

Due to Defendants blatant refusal of cooperation in this action, Plaintiffs hands are left tied, with no other recourse to remedy the harm caused. If the Defendants in this action are not required to pay statutory damages, their counterfeiting activities would likely expand, causing

further damage to both Plaintiff and its United States customers. SINCOO, was equally liable for Trademark Infringement. Accordingly, pursuant to 15 U.S.C. §1117, Plaintiff asks this Court for an award of up to $200,000 for SINCOO's trademark infringement of each of the four SINCO Marks, amounting to a total of $800,000. Moreover, Plaintiffs are seeking only a fraction of the actual losses to its business – calculated in the millions of dollars in the relevant time period – as a collective result of the infringing activities by Defendant SINCOO's use of the SINCO mark on products it manufactured in conjunction with XINGKE marketed and sold in the United States.

### 2. Injunctive Relief

Plaintiffs seek to permanently enjoin Defendant from infringing on the SINCO Marks in the future. Injunctive relief is authorized under 15 U.S.C. § 1116(a) to prevent violations under § 1125. Generally, "injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). (1) actual success on the merits; (2) a likelihood of irreparable injury if injunctive relief is not granted; (3) a balance of hardships favoring Plaintiff; and (4) that an injunction will advance the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). These factors are satisfied here.

As to the *first* element, a showing of entitlement to a default judgment satisfies the actual success on the merits prong. *Sigma Enters. v. Alluring Deals*, LLC, 2017 U.S. Dist. (C.D. Cal. Nov. 15, 2017). *Second*, SINCO alleges that allowing Defendant SINCOO to continue to use its SINCO Marks or confusingly similar marks in commerce, amongst U.S. Customers, and elsewhere has caused, and will continue to cause, irreparable harm to SINCO's business and goodwill. (ECF Dkt. No. 23, pg. 2, at ¶¶ 9-15). "Evidence of a loss of control over business reputation and damage to goodwill" may be sufficient to show irreparable harm. *Herb Reed Enters., LLC v. Fla Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013); see also *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."). As a result, an injunction is the only remedy available to Plaintiffs to limit

the potential of future injury.

***Third***, the balance of hardships also weighs in favor of Plaintiff SINCO as the injunction "will merely prohibit Defendants from engaging in future unlawful activity." *Sigma Enters*, 2017 U.S. Dist. "There is no hardship to a defendant when a permanent injunction would merely require the defendant to comply with the law." *Deckers Outdoor Corp. v. Ozwear Connection Pty, Ltd.*, (C.D. Cal. Sep. 18, 2014). Finally, the ***fourth*** prong, whether the injunction is in the public interest, also weighs in favor of issuing a permanent injunction. "In trademark cases, courts generally recognize the public has a right not to be deceived or confused." *SATA GmbH & Co. KG v. Wenzhou New Century Int'l*, Ltd., (C.D. Cal. Oct. 19, 2015) (quotation marks and citation omitted). Consequently, an injunction is appropriate to promote this interest as well as to protect intellectual property rights. See *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049 (C.D. Cal. 2011) (holding that the public has an interest in protecting intellectual property rights and preventing willful infringement). All four factors weigh in favor of the Court entering the injunction to protect SINCO's trademark rights from further infringement by SINCOO.

### 3. Plaintiff is Entitled to Costs

In addition to damages under the Lanham Act, Plaintiff is also entitled to its costs. 15 U.S.C. §1117(a); *Lindy Pen Co.,* 982 F.2d at 1405. Plaintiff will submit its Bill of Costs within 14 days of default judgment.

### IV. CONCLUSION

Based upon the foregoing, Plaintiff respectfully requests that this Court grant default judgment against the Defendant SINCOO in the amount of $800,000 and permanently enjoin Defendant SINCOO from infringing on the SINCO and SINCOO marks in the future. Plaintiff also requests this Court grant its costs in this action.

Dated: December 1, 2021              ROPERS MAJESKI PC

By: */s/ Lael D. Andara*
LAEL D. ANDARA
***Attorney for Plaintiff***
SINCO TECHNOLOGIES PTE LTD